UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re                                          :        **Chapter 11**
                                               :
**KABBAGE, INC. d/b/a KSERVICING**, *et al.*,  :        **Case No. 22-10951 (      )**
                                               :
                                               :
         **Debtors.**[1]                       :        **(Joint Administration Requested)**

---------------------------------------------------------- x

### APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. § 105(a) AND 28 U.S.C. § 156(c) FOR APPOINTMENT OF OMNI AGENT SOLUTIONS, INC. AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE

Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") and, together with their non-Debtor affiliates, the "**Company**"), respectfully represent as follows in support of this application (the "**Application**"):

### Relief Requested

1.      By this Application, pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of title 11 of the United State Code (the "**Bankruptcy Code**"), and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors request that the Court (i) authorize the appointment of Omni Agent Solutions, Inc. ("**Omni**") as claims and noticing agent ("**Claims and Noticing Agent**") for the Debtors in their chapter 11 cases, effective as of the Petition Date, including assuming full responsibility for the distribution of notices and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

the maintenance, processing, and docketing of proofs of claim and (ii) granting related relief.  In support of this Application, the Debtors submit the Declaration of Paul H. Deutch, Omni's Executive Vice President (the "**Deutch Declaration**"), a copy of which is annexed hereto as **Exhibit A**.

2.      A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit B** (the "**Proposed Order**").

3.      The Debtors' selection of Omni to act as the Claims and Noticing Agent has satisfied the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)* (the "**Claims Agent Protocol**") in that the Debtors have obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Omni's rates are competitive and reasonable given Omni's quality of services and expertise.  The terms of Omni's retention are set forth in the Engagement Agreement, dated September 16, 2022 (the "**Engagement Agreement**"), annexed hereto as **Exhibit C**.  The Debtors are seeking approval of Omni's retention solely on the terms and provisions as set forth in this Application and the Proposed Order.

4.      By separate application, the Debtors will seek authorization to retain and employ Omni as administrative agent in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code because the administration of these chapter 11 cases will require Omni to perform duties outside the scope of section 156(c) of title 28 of the United States Code.

### Jurisdiction and Venue

5.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding

pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent

to the entry of a final order by the Court in connection with this Application if it is later determined

that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with

Article III of the United States Constitution.   Venue is proper before the Court pursuant to

28 U.S.C. §§ 1408 and 1409.

### Background

6.       On October 3, 2022 (the "**Petition Date**"), the Debtors each commenced

with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11**

**Cases**").  The Debtors are authorized to continue operating their business and managing their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

No trustee, examiner, or statutory committee has been appointed in these Chapter 11 Cases.

7.       Contemporaneously herewith, the Debtors have filed a motion requesting

joint administration of their Chapter 11 Cases pursuant to Rule 1015(b) of the Bankruptcy Rules

and Rule 1015-1 of the Local Rules.

8.       Additional information regarding the Debtors' business, capital structure,

and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the

*Declaration of Deborah Rieger-Paganis In Support of Debtors' Chapter 11 Petitions and First*

*Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith.[2]

### Omni's Qualifications

9.       Omni is one of the country's leading chapter 11 administrators, with

experience in noticing, claims administration, solicitation, balloting, and the facilitation of other

administrative aspects of chapter 11 cases.  Omni has substantial experience in matters of similar

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

RLF1 28018179V.1

size and complexity and has acted as the official claims and noticing agent and/or administrative agent in many large bankruptcy cases in this District and other districts nationwide.  *See, e.g.*, *In re Gold Standard Baking, LLC*, No. 22-10559 (JKS) (Bankr. D. Del. June 23, 2022); *In re PWM Property Management LLC*, No. 21-11445 (MFW) (Bankr. D. Del. Dec. 1, 2021); *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (LSS) (Bankr. D. Del. Apr. 8, 2020); *In re Lucky's Market Parent Company, LLC*, No. 20-10166 (JTD) (Bank. D. Del. Jan. 28, 2020); *In re SFP Franchise Corporation*, No. 20-10134 (JTD) (Bank. D. Del. Jan. 24, 2020).[3]

10.     By appointing Omni as the Claims and Noticing Agent in these Chapter 11 Cases, the distribution of notices and the processing of claims will be handled efficiently and expeditiously.  Furthermore, Omni's appointment would relieve the Office of the Clerk of the Bankruptcy Court (the "**Clerk**") of the administrative burden of processing proofs of claims.

## Scope of Service

11.     Omni, in its role as Claims and Noticing Agent, may assist the Debtors with pre- and post-petition case administration matters, including data entry, preparation and management of the creditor matrix, preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs, claims management, noticing, the development and maintenance of an informational website, and any other services as may be requested by the Debtors or otherwise required by applicable law, governmental regulations, or other applicable court rules or orders (collectively, the "**Services**").  The Services will include the following:

(a)     prepare and serve required notices and documents in these Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including: (i) notice of the commencement of these Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

---

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this application. Copies of these orders are available upon request to the Debtors' proposed counsel.

(ii) notice of any claims bar date; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' chapter 11 plan, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan; and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 Cases;

(b)     maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules**"), listing the Debtors' known creditors and the amounts owed thereto;

(c)     maintain a (i) list of all potential creditors, equity holders, and other parties in interest and (ii) "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010, and update and make said lists available upon request by a party in interest or the Clerk;

(d)     furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify such potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     maintain a post office box or address for the purpose of receiving claims and returned mail and process all mail received;

(f)     for all notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven days of service, which includes: (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses; (iii) the manner of service; and (iv) the date served;

(g)     process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)     maintain the official claims register for each of the Debtors (the "**Claims Register**") on behalf of the Clerk, and upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register, and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the

amount asserted; (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(i)   implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

(j)   record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(k)   relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Omni, not less than weekly;

(l)   upon completion of the docketing process for all claims received to date, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

(m)   monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(n)   identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(o)   assist in the dissemination of information to the public and respond to requests for administrative information regarding these Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(p)   if these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk within three days of notice to Omni of entry of the order converting the cases;

(q)   30 days prior to the closing of these Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Omni as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these Chapter 11 Cases;

(r)   within seven days of notice to Omni of entry of an order closing these Chapter 11 Cases, provide to the Court the final version of the Claims Register as of the date immediately before the close of these Chapter 11 Cases; and

(s)   at the close of these Chapter 11 Cases: (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to

6

(A) the Philadelphia Federal Records Center, 14700 Townsend Road, Philadelphia, PA 19154 or (B) any other location requested by the Clerk's office; and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

12.     This Application only pertains to the work to be performed by Omni pursuant to the Clerk's delegation of duties permitted by section 156(c) of title 28 of the United States Code and Local Rule 2002-1(f).  Any work to be performed by Omni that falls outside of this scope is not covered by this Application or by the Proposed Order.

### **Omni's Compensation**

13.     The Debtors respectfully request that the undisputed fees and expenses incurred by Omni in the performance of the above-listed Services be treated as administrative expenses in the Chapter 11 Cases pursuant to section 156(c) of title 28 of the United States Code and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.  Omni agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee of unsecured creditors, and any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute.  If resolution is not achieved, the parties may seek resolution of the matter from the Court.

14.     The Services to be rendered by Omni will be billed at rates ranging from $52.50 to $187.50 per hour according to the rate structure set forth in **Exhibit A** to the Engagement Agreement.  Omni has also agreed to provide the Debtors with a $30,000 prepetition credit to be applied to Omni's prepetition fees only.  The Debtors agree to pay all of Omni's fees, charges, and out-of-pocket costs relating to the Services.

RLF1 28018179V.1

15. Prior to the Petition Date, the Debtors provided Omni a retainer in the amount of $25,000. Omni seeks to hold the retainer pursuant to the Engagement Agreement during these Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement. Except as stated in this paragraph, Omni has not received any payments from the Debtors in the 90 days prior to the Petition Date.

16. Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend and hold harmless Omni and its members, officers, employees, representatives, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Omni's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Proposed Order. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of Omni as the Claims and Noticing Agent in these Chapter 11 Cases.

## No Duplication of Services

17. The Debtors intend that the Services will complement, and not duplicate, the services being rendered by other professionals retained in these Chapter 11 Cases. Omni understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## Disinterestedness

18. Although the Debtors do not propose to employ Omni under section 327 of the Bankruptcy Code pursuant to this Application (such retention will be sought by separate application), Omni has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as may be disclosed in the Deutch

8

Declaration, Omni has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

19.    Moreover, in connection with its retention as Claims and Noticing Agent, Omni represents in the Deutch Declaration, among other things, that:

(a)    Omni is not a creditor of the Debtors;

(b)    Omni will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

(c)    By accepting employment in these Chapter 11 Cases, Omni waives any rights to receive compensation form the United States government in connection with these Chapter 11 Cases;

(d)    In its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, Omni will not be an agent of the United States and will not act on behalf of the United States;

(e)    Omni will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Chapter 11 Cases;

(f)    On October 16, 2019, Omni executed a contract with X-Claim Inc. ("**X-Claim**") whereby Omni agreed to provide X-Claim with publicly available claims register data in a downloadable format (the "**Agreement**").  Omni ceased providing services under the Agreement as of June 8, 2022 and, as confirmed to Omni by X-Claim, the Agreement was terminated as of June 9, 2022.

(g)    Other than the disclosed contract with X-Claim, Omni is not a party to any agreement where it receives consideration in exchange for transferring information derived from Omni's role as claims and noticing agent or as an administrative agent in cases in the District of Delaware or elsewhere to non-client third parties.

(h)    Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(i)    In its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Omni will not intentionally misrepresent any fact to any person;

(j)    Omni shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers;

(k)     Omni will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of section 156(c) of title 28 of the United States Code; and

(l)     None of the services provided by Omni as Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk's Office.

20.     Omni will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## Basis for Relief

21.     Bankruptcy Rule 2002 generally governs what notices must be given to creditors and other parties in interest in bankruptcy cases.  Under Bankruptcy Rule 2002, the Court may direct that some person other than the Clerk of the Court give notice of the various matters described below.  *See* Fed. R. Bankr. P. 2002.

22.     Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of bankruptcy courts, authorizes the Court to use "facilities" or "services" other than the Clerk's Office for administration of bankruptcy cases.  It states:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

23.     In addition, Local Rule 2002-1(f) provides:

> Upon motion of the debtor or trustee . . . at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c).  In all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter.  The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. §

10

156(c) (which can be found on the Court's website) and shall perform the claims and noticing services.

24.    Further, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

25.    Accordingly, Bankruptcy Rule 2002 and section 156(c) of title 28 of the United States Code empower the Court to use outside agents and facilities for claims, noticing, and administrative purposes, provided that the Debtors' estates pay the cost of such services. Additionally, section 105(a) of the Bankruptcy Code provides the Court with the power to appoint Omni as the Claims and Noticing Agent in these Chapter 11 Cases, effective as of the Petition Date.

26.    Although the Debtors have not yet filed their Schedules, the Debtors anticipate that there will be hundreds of thousands of entities and individuals to be noticed in these Chapter 11 Cases.  In view of the number of anticipated claimants, the Debtors submit that the appointment of a claims and noticing agent is necessary, required by Local Rule 2002-1(f), and in the best interests of both the Debtors' estate and their creditors.  To relieve the Court and the Clerk's Office of the burdens associated with the anticipated number of claimants in these Chapter 11 Cases, the Debtors propose to engage Omni as claims and noticing agent.

27.    The Debtors submit that selection of Omni and this Application satisfy the requirements set forth in the Claims Agent Protocol.

## **Request for Waiver of Stay**

28.    Additionally, with respect to any aspect of the relief sought in this Application that constitutes a use of property under Bankruptcy Code section 363(b), the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h), which provides that "[a]n

order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Application is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

### Notice

29.     Notice of this Application will be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) the Federal Reserve Bank; (d) Customers Bank; (e) Cross River Bank; (f) the United States Department of Justice; (g) the Federal Trade Commission; (h) the Small Business Administration; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the United States Attorney's Office for the District of Delaware; and (l) any party that is entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**"). As this Application is seeking "first-day" relief, the Debtors will serve copies of this Application and any order entered in respect of this Application as required by Local Rule 9013-1(m). The Debtors believe that no further notice is required.

### No Prior Request

30.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  October 3, 2022
       Atlanta, Georgia

                     **KABBAGE, INC. d/b/a KSERVICING, _et al._**
                     (on behalf of itself and each of its affiliated Debtors)

                     _/s/ Holly Loiseau_
                     Name:  Holly Loiseau
                     Title:   General Counsel and Secretary

**Exhibit A**

**Deutch Declaration**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
In re                                     :    Chapter 11
                                          :
KABBAGE, INC. d/b/a KSERVICING, et al.,   :    Case No. 22-10951 (     )
                                          :
                                          :
          Debtors.¹                       :    (Joint Administration Requested)
-------------------------------------------------------- x
```

### DECLARATION OF PAUL H. DEUTCH IN SUPPORT OF
### APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. § 105(a) AND
### 28 U.S.C. § 156(c) FOR APPOINTMENT OF OMNI AGENT SOLUTIONS, INC.
### AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF PETITION DATE

I, Paul H. Deutch, under penalty of perjury, declare as follows:

1.     I am the Executive Vice President of Omni Agent Solutions, Inc. ("**Omni**"), a chapter 11 administrative services firm, whose offices are located at 5955 DeSoto Avenue, Woodland Hills, California 91367 and 1120 Avenue of the Americas, 4th Floor, New York, New York 10036.  Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called and sworn as a witness, I could and would testify competently thereto.[2]

2.     This declaration (this "**Declaration**") is made in support of the *Application of Debtors' Pursuant to 11 U.S.C. § 105(a) and 28 U.S.C. § 156(c) for Appointment of Omni Agent*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] Certain of the disclosures herein relate to matters within the knowledge of other professionals at Omni and are based on information provided by them.

*Solutions, Inc. as Claims and Noticing Agent Effective as of the Petition Date*, which was filed

contemporaneously herewith (the "**Application**").[3]

3.     Omni is one of the country's leading chapter 11 administrators, with

experience in noticing, claims administration, solicitation, balloting, and the facilitation of other

administrative aspects of chapter 11 cases.  Omni has substantial experience in matters of similar

size and complexity and has acted as the official claims and noticing agent and/or administrative

agent in many large bankruptcy cases in this District and other districts nationwide.  *See, e.g.*, *In*

*re Gold Standard Baking, LLC*, No. 22-10559 (JKS) (Bankr. D. Del. June 23, 2022); *In re PWM*

*Property Management LLC*, No. 21-11445 (MFW) (Bankr. D. Del. Dec. 1, 2021); *In re Boy Scouts*

*of America and Delaware BSA, LLC*, No. 20-10343 (LSS) (Bankr. D. Del. Apr. 8, 2020); *In re*

*Lucky's Market Parent Company, LLC*, No. 20-10166 (JTD) (Bank. D. Del. Jan. 28, 2020); *In re*

*SFP Franchise Corporation*, No. 20-10134 (JTD) (Bank. D. Del. Jan. 24, 2020).

4.     As agent and custodian of Court records pursuant to section 156(c) of title

28 of the United States Code, Omni will perform, at the request of the Clerk's Office, the services

specified in the Application and the Engagement Agreement and, at the Debtors' request, any

related administrative, technical, and support services as specified in the Application and the

Engagement Agreement.  In performing such services, Omni will charge the Debtors the rates set

forth in the Engagement Agreement, which is attached as **<u>Exhibit C</u>** to the Application.

5.     Prior to the Petition Date, the Debtors provided Omni a retainer in the

amount of $25,000.  Omni seeks to hold the retainer under the Engagement Agreement during

---

[3] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Application.

2

these Chapter 11 Cases as security for the payment of fees and expenses incurred under the

Engagement Agreement.  Omni represents, among other things, the following:

(a)     Omni is not a creditor of the Debtors;

(b)     Omni will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

(c)     By accepting employment in these Chapter 11 Cases, Omni waives any rights to receive compensation from the United States government in connection with these Chapter 11 Cases;

(d)     In its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, Omni will not be an agent of the United States and will not act on behalf of the United States;

(e)     Omni will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Chapter 11 Cases;

(f)     Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g)     In its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Omni will not intentionally misrepresent any fact to any person;

(h)     Omni shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers;

(i)     Omni will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of section 156(c) of title 28 of the United States Code; and

(j)     None of the services provided by Omni as Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk's Office.

6.     To the best of my knowledge and based solely upon information provided

to me by the Debtors, and except as provided herein, neither Omni, nor any employee thereof, has

any materially adverse connection to the Debtors, their creditors, or other relevant parties.  Omni

may have relationships with certain of the Debtors' creditors as a vendor or in connection with

cases in which Omni serves or has served in a neutral capacity as noticing, claims, and balloting agent for another chapter 11 debtor.

7.    Omni's personnel may have relationships with some of the Debtors' creditors or other parties in interest.  However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal nature and completely unrelated to these Chapter 11 Cases. Omni has and will continue to represent clients in matters unrelated to these Chapter 11 Cases.  In addition, Omni has had and will continue to have relationships in the ordinary course of its business with certain vendors, professionals, and other parties in interest that may be involved in the Debtors' cases in matters unrelated to these cases.  Omni may also provide professional services to entities or persons that may be creditors or parties in interest in these Chapter 11 Cases, which services do not directly relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.  To the best of my knowledge, neither Omni, nor any employees thereof, represents any interest materially adverse to the Debtors' estates with respect to any matter upon which Omni is to be engaged.

8.    Although the Debtors do not propose to retain Omni under section 327 of the Bankruptcy Code (such retention will be sought by separate application), Omni has nonetheless reviewed its electronic database to determine whether it has any relationships with the entities provided by the Debtors.  At this time, we are not aware of any relationship which would present a disqualifying conflict of interest.  Should Omni discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Omni will use reasonable efforts to file promptly a supplemental declaration.

9.    On October 16, 2019, Omni executed a contract with X-Claim Inc. ("**X-Claim**") whereby Omni agreed to provide X-Claim with publicly available claims register data in

a downloadable format (the "**Agreement**").  Omni ceased providing services under the Agreement as of June 8, 2022 and, as confirmed to Omni by X-Claim, the Agreement was terminated as of June 9, 2022.

10.     Other than the disclosed contract with X-Claim, Omni is not a party to any agreement where it receives consideration in exchange for transferring information derived from Omni's role as an administrative agent in cases in the District of Delaware or elsewhere to non-client third parties.

11.     Based on the foregoing, I believe that Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: October 3, 2022
      New York, New York

*/s/ Paul H. Deutch*
Paul H. Deutch
Executive Vice President
Omni Agent Solutions, Inc.

**Exhibit B**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------------ x
In re                                            :        **Chapter 11**
                                                 :
**KABBAGE, INC. d/b/a KSERVICING,** *et al.,*    :        **Case No. 22-10951 (      )**
                                                 :
                                                 :
             Debtors.[1]                         :        **(Jointly Administered)**
------------------------------------------------------------ x

**ORDER PURSUANT TO 11 U.S.C. § 105(a) AND 28 U.S.C. § 156(c)**
**APPOINTING OMNI AGENT SOLUTIONS, INC. AS CLAIMS AND**
**NOTICING AGENT EFFECTIVE AS THE OF PETITION DATE**

Upon the application, dated October 3, 2022 (the "**Application**"),[2] of Kabbage, Inc.

d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to section

156(c) of title 28 of the United States Code, section 105(a) of the Bankruptcy Code, and Local

Rule 2002-1(f) (i) authorizing the appointment of Omni as Claims and Noticing Agent in the

Debtors' Chapter 11 Cases and (ii) granting related relief, all as more fully set forth in the

Application; and upon consideration of the First Day Declaration and the Deutch Declaration; and

this Court having jurisdiction to consider the Application and the relief requested therein pursuant

to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* entered by the

United States District Court for the District of Delaware, dated February 29, 2012; and

consideration of the Application and the requested relief being a core proceeding pursuant to 28

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Application; and this Court having held a hearing to consider the relief requested in the Application; and all objections, if any, to the Application having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and it appearing that the relief requested in the Application is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT

1.      The Application is granted as set forth herein.

2.      The Debtors are authorized pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of the Bankruptcy Code, and Local Rule 2002-1(f) to retain Omni as Claims and Noticing Agent effective as of the Petition Date under the terms of the Engagement Agreement, and Omni is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these Chapter 11 Cases, and all related tasks, all as described in the Application.

3.      Omni shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these Chapter 11 Cases and is authorized and directed to maintain official claims registers for each of the Debtors, to provide public access to every proof of claim (if any), and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

2

4.      Omni is authorized and directed to provide an electronic interface for filing proofs of claims and to obtain a post office box or address for the receipt of proofs of claims.

5.      Omni is authorized to take such other action to comply with all the duties set forth in the Application and this Order.

6.      The Debtors are authorized to compensate Omni in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Omni and the rates charged for each, and to reimburse Omni for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Omni to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      Omni shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

8.      Omni may apply its retainer to all prepetition invoices and Omni may hold its retainer under the Engagement Agreement during the Chapter 11 Cases as security for the payment of fees and expenses under the Engagement Agreement.

9.      Omni shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices.

3

10.     The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Engagement Agreement or monthly invoices; *provided, however*, that the parties may seek resolution of the matter from the Court if resolution is not achieved.

11.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Omni under this Order shall be an administrative expense of the Debtors' estates.

12.     The Debtors shall indemnify Omni under the terms of the Engagement Agreement, as modified pursuant to this Order, as modified pursuant to this Order.  Omni shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the Services provided under the Engagement Agreement, unless such services and the indemnification, contribution or reimbursement therefor are approved by the Court.

13.     Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify Omni, or provide contribution or reimbursement to Omni, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Omni's gross negligence, willful misconduct or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of Omni's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Omni should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order.

14.     To the extent applicable in the Engagement Agreement, all requests by Omni for the payment of indemnification shall be made by means of an application to the Court

4

and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation, dispute, or settlement in respect of which indemnity is sought.  In no event shall Omni be indemnified for its actions in these Chapter 11 Cases for its own gross negligence or willful misconduct.  All parties in interest shall retain the right to object to any demand by Omni for indemnification, contribution, or reimbursement.

15.     The limitation of liability provision contained in the Engagement Agreement shall have no force and effect during the pendency of these chapter 11 cases.

16.     In the event that Omni seeks reimbursement from the Debtors for attorneys' fees in connection with the payment of an indemnity claim, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Omni's own applications, both interim and final, but determined by this Court after notice and a hearing.

17.     In the event Omni is unable to provide the services set out in this Order, Omni will immediately notify the Clerk and the Debtors' counsel and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' counsel.

18.     Notwithstanding any term in the Engagement Agreement to the contrary, this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

19.     Omni shall not cease providing claims processing services during these Chapter 11 Cases for any reason, including nonpayment, without an order of this Court; *provided*, *however*, that Omni may seek such an order on expedited notice by filing a request with this Court

5

with notice of such request to be served on the Debtors, the Office of the United States Trustee, and any official committee of creditors appointed in these cases.

20.      After entry of an order terminating Omni's services as the Claims and Noticing Agent, upon the closing of these Chapter 11 Cases, or for any other reason, Omni shall be responsible for preparing all proofs of claim to be archived with the Federal Archives Record Administration, if applicable.

21.      The requirements of Bankruptcy Rule 6003(b) are satisfied and that the relief granted in this Order is necessary to avoid immediate and irreparable harm.

22.      Notice of the Application shall be deemed good and sufficient notice of such application, and the notice requirement of Bankruptcy Rule 6004(a) is satisfied.

23.      This Order is immediately effective and enforceable notwithstanding the provisions of Bankruptcy Rule 6004(h) or otherwise.

24.      In the event of any inconsistency between the Engagement Agreement, the Application and this Order, this Order shall govern.

25.      The Debtors and Omni are authorized to take all action necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

26.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementations, interpretations, or enforcement of this Order.

RLF1 28018179v.1

**Exhibit C**

**Engagement Agreement**

## **STANDARD SERVICES AGREEMENT**

This Agreement is entered into as of September 16, 2022, between (I) Omni Agent Solutions ("**Omni**") and (II) Kabbage, Inc. d/b/a KServicing ("**Kabbage**"), Kabbage Canada Holdings, LLC ("**Kabbage Canada**"), Kabbage Asset Securitization LLC ("**KAS**"), Kabbage Asset Funding 2017-A LLC ("**KAF2017**"), Kabbage Asset Funding 2019-A LLC ("**KAF2019**"), Kabbage Diameter, LLC ("**Diameter**"), and Kabbage Asset Funding 2020-A LLC ("**KAF2020**, and collectively with Kabbage, Kabbage Canada, KAS, KAF2017, KAF2019, and Diameter, the "**Company**"), in preparation of, and in connection with, the Company's potential chapter 11 cases. The parties hereto agree as follows:

## **Terms and Conditions**

I.    SERVICES

(a)    Omni will make itself available to the Company, as requested, for the purposes of assisting the Company with pre- and post-petition case administration matters including data entry, preparation and management of the creditor matrix, preparation of schedules of assets and liabilities and statements of financial affairs, claims management, noticing, plan solicitation and tabulation, distribution, the development and maintenance of a virtual data room, the development and maintenance of an informational website, and any other services as may be requested by the Company or otherwise required by applicable law, governmental regulations or court rules or orders (collectively, the "**Services**").

(b)    The Company acknowledges and agrees that Omni will often take direction from the Company's representatives, employees, agents and/or professionals (individually, a "**Company Party**") with respect to providing Services hereunder. The parties agree that Omni may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by a Company Party to the same extent as if such requests, advice or information were provided by the Company.

(c)    In no event shall Omni's Services constitute or contain legal advice or opinion, and neither Omni nor its personnel shall be deemed to practice law hereunder.

II.    RATES

(a)    Except as otherwise set forth herein, the services to be rendered by Omni will be billed at rates ranging from $52.50 to $187.50 per hour as per the rate structure attached hereto and incorporated herein by reference as **Exhibit "A"** (the "**Rate Structure**"). *In addition, Omni has agreed to provide the Debtors with (i) a $30,000 credit to be applied to Omni's prepetition fees only, and (ii) restructuring-related PR services (e.g., FAQ's, creditor letters) at no charge.* The Company agrees to pay all of Omni's fees, charges and out-of-pocket costs relating to the Services it provides on behalf of the Company pursuant to this Agreement.

(b)      Rates may be adjusted annually on January 2nd of each year and are subject to increases not to exceed ten (10%) percent per annum. Omni shall provide sixty (60) days prior written notice of any such proposed increases.

(c)      Omni shall be compensated on a monthly basis for services it performs on behalf of the Company during the preceding calendar month. Invoices are due and payable upon receipt. If any amount is unpaid as of thirty (30) days after delivery of an invoice, the Company agrees to pay a late charge equal to one and a half (1.5%) percent of the total amount unpaid every 30 days. Notwithstanding anything herein to the contrary, in the event of a chapter 11 filing, all payments to Omni will be in accordance with applicable bankruptcy law and any orders of the bankruptcy court.

(d)      Omni may require an advance or direct payment from the Company of an individual expense, or a group of related expenses, which are expected to exceed $7,500.

(e)      Upon execution of this Agreement, the Company shall pay Omni a retainer of $25,000 (the "**Retainer**"). Omni may use the Retainer against all prepetition fees and expenses, which Retainer shall then be replenished as promptly as practicable by the Company to its original amount. At Omni's discretion, the Retainer may then be applied to the payment of the final invoice from Omni under and pursuant to this Agreement (the "**Final Invoice**"), or to any other invoice. Except with respect to the Final Invoice, upon notice from Omni to the Company of the application of some or all of the Retainer, the Company shall replenish the Retainer as promptly as practicable to its original amount. Omni shall, as promptly as practicable, return to the Company any amount of the Retainer that remains following application of the Retainer to the payments of unpaid fees and expenses hereunder.

(f)      The Company shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Company, notwithstanding how such taxes may be designated, levied, or based. This provision is intended to include sales, use, and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Omni.

(g)      The Company shall pay to Omni any actual charges (including fees, costs and expenses as set forth in the Rate Structure) related to, arising out of, or resulting from, any error or omission of the Company. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Rate Structure.

(h)      Payments to Omni for services rendered under the terms of this Agreement may be remitted by the Company using either or both of the following methods:

(i)      **Wire Transmission**
(Omni's wire information will be included on each monthly invoice)

    **(ii)**    <u>**Check**</u>
             Omni Agent Solutions
             c/o Accounts Receivable
             5955 De Soto Avenue
             Suite 100
             Woodland Hills, CA 91367

## III.    RETENTION IN BANKRUPTCY CASE

(a)    If the Company commences one or more cases pursuant to the U. S. Bankruptcy Code (the "**<u>Code</u>**"), the Company shall timely file applications with the bankruptcy court to retain Omni as claims and noticing agent pursuant to 28 U.S.C. § 156(c), and, where applicable, as administrative agent pursuant to section 327(a) of the Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Omni.

(b)    If any of the Company's chapter 11 cases convert to a case or cases under chapter 7 of the Bankruptcy Code, Omni will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

## IV.    CONFIDENTIALITY

(a)    Each of Omni and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided under this Agreement; provided, however, that if any such information was (i) publicly available without a breach by the receiving party, (ii) already in the receiving party's possession or known to it and was received from a third party that, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party, (iii) independently developed, (iv) lawfully obtained from a third party who, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party or (v) required to be disclosed by law, then, subject to clause (b) below, a party shall bear no responsibility for publicly disclosing such information.

(b)    If either party reasonably believes that it is required to produce any confidential information pursuant to an order of any court, governmental agency or other regulatory body, it may, upon not less than five (5) business days written notice to the other party, release the required information.

## V.    PROPERTY RIGHTS

(a)    The parties understand that the software programs and other materials furnished by Omni pursuant to this Agreement and/or developed during the course of this Agreement by Omni are the sole property of Omni. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines and documentation. The Company agrees not to copy or permit others to copy the source

code from the support software or any other programs or materials furnished pursuant to this Agreement. The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or Omni's performance of its services developed during the course of its Agreement by Omni shall be the exclusive property of Omni. Fees and expenses paid by the Company do not vest in the Company any rights in Omni's property. Such property is only being made available for the Company's use during and in connection with the Services provided by Omni hereunder.

(b)     Upon the Company's request at any time while this Agreement is in effect, Omni shall immediately deliver to the Company and/or the Company's retained professionals, at the Company's expense, any or all of the non-proprietary data and records held by Omni pursuant to this Agreement, in the form requested by the Company.

VI.     BANK ACCOUNTS

At the request of the Company and its officers or authorized representatives, Omni is authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.

VII.    COMPANY DATA

(a)     The Company is responsible for, and Omni does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Omni and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, the "**<u>SOFAs and Schedules</u>**"). Omni bears no responsibility for the accuracy and content of the SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all of the SOFAs and Schedules filed on its behalf.

(b)     The Company agrees, represents and warrants to Omni that before delivery of any information to Omni: (i) the Company has full authority to deliver such information to Omni; and (ii) Omni is authorized to use such information to perform Services hereunder.

(c)     Any data, storage media, programs or other materials furnished to Omni by the Company may be retained by Omni until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Omni under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Omni. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company have not utilized Omni's Services for a period of ninety (90) days or more, Omni may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days written notice. The Company agrees to use commercially reasonable efforts to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Omni.

(d)      If Omni is retained pursuant to bankruptcy court order, disposal of any the Company's data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

VIII.    TERM AND TERMINATION

(a)      This Agreement shall remain in effect until terminated by either party: (i) on thirty (30) days prior written notice to the other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) bad faith, gross negligence, or willful misconduct of Omni that causes material harm to the Company' restructuring under chapter 11 of the Code, (ii) the failure of the Company to pay Omni's invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Omni where Omni reasonably believes in its sole discretion, following consultation with the Company and/or the Company's professionals, it will not be paid.

(b)      If this Agreement is terminated after Omni is retained pursuant to bankruptcy court order, the Company shall promptly seek entry of a bankruptcy court order discharging Omni of its duties under such retention, which order shall be in form and substance reasonably acceptable to Omni.

(c)      If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Omni hereunder and, following payment of such amounts, Omni shall promptly provide the Company with to all materials and deliverables that are in its then-current state of completion.

(d)      If this Agreement is terminated, Omni shall coordinate with the Company and, to the extent applicable, the clerk of the bankruptcy court, to maintain an orderly transfer of record keeping functions, and Omni shall provide the necessary staff, services and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Rate Structure.

IX.    NO REPRESENTATIONS OR WARRANTIES

Omni makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

X.    INDEMNIFICATION

(a)      To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (each, an "**Indemnified Party**," and collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or

indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of or related to Omni's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)     Omni and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the services provided under and pursuant to the Agreement.

(c)     The Company's indemnification of Omni hereunder shall exclude Losses resulting from Omni's gross negligence or willful misconduct.

(d)     The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

XI.     LIMITATIONS OF LIABILITY

Except as expressly provided herein, Omni's liability to the Company for any Losses, unless due to Omni's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss. In no event shall Omni's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Omni for services provided under and pursuant to this Agreement. Moreover, in no event shall Omni be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the services provided under and pursuant to this Agreement.

XII.     SYSTEM IMPROVEMENTS

Omni reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time of accessibility, types of terminals and other equipment, and the Omni database serving the Company, so long as any such changes do not materially interfere with ongoing Services provided to the Company in connection with the Company's pending bankruptcy cases.

XIII.     CHOICE OF LAW

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

XIV.     ARBITRATION

Any dispute arising out of or relating to this Agreement, or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. There shall be one arbitrator

named in accordance with such rules. The arbitration shall be conducted in the English language in New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, during the pendency of any applicable chapter 11 case(s) of the Company, any disputes related to this Agreement shall be decided by the bankruptcy court with jurisdiction over the chapter 11 case(s).

XV.   GENERAL

(a)   <u>Complete agreement</u>. Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b)   <u>Severability</u>. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c)   <u>Modification</u>. This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Omni.

(d)   <u>Assignment</u>. This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that either party may assign this Agreement to a wholly-owned subsidiary or affiliate or to an entity which has succeeded to all or substantially all of the business or assets of a party without the other party's consent, provided that the assigning party provides adequate assurance of performance by the proposed assignee.

(e)   <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

(f)   <u>Force Majeure</u>. Whenever performance by Omni of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Omni's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

(g) <u>Location services</u>. The Company will use their best efforts to cooperate with Omni at the Company's facilities if any portion of the Services require Omni's physical presence.

(h)   <u>Non-solicitation</u>. Each party agrees that neither it nor any of its subsidiaries shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of the other party during the term of this

Agreement and for a period of six (6) months after termination thereof unless the other party provides prior written consent to such solicitation or retention; provided, however, that the foregoing provisions will not prevent either party from hiring or seeking to hire any such person who responds to general advertising or a general solicitation not targeted to the employees of the other party.

(i)    <u>Independent contractors</u>. The Company and Omni are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

(j)    <u>Attorney's fees</u>. In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

XVI.    NOTICING

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Omni:    Omni Agent Solutions
5955 De Soto Avenue
Suite 100
Woodland Hills, CA 91367
Tel: (818) 906-8300
Attn: Brian K. Osborne, Pres. & CEO
Email: bosborne@omniagnt.com

If to the Company: Kabbage, Inc. d/b/a KServicing
730 Peachtree Street NE, Suite 470,
Atlanta, GA 30308
Attn: Holly Loiseau, General Counsel
Email:    hloiseau@kservicecorp.com

With copies to:    Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn:   Candace Arthur, Esq.
candace.arthur@weil.com

*[The rest of this page intentionally left blank]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**OMNI AGENT SOLUTIONS**

By: _____
Name: Paul Deutch
Title:   Executive Vice President

Agreed and Accepted this _____ day of September, 2022.

**KABBAGE, INC. D/B/A KSERVICING**
**KABBAGE CANADA HOLDINGS, LLC**
**KABBAGE ASSET SECURITIZATION LLC**
**KABBAGE ASSET FUNDING 2017-A LLC**
**KABBAGE ASSET FUNDING 2019-A LLC**
**KABBAGE DIAMETER, LLC**
**KABBAGE ASSET FUNDING 2020-A LLC**

By: _____
Name:   Holly Loiseau
Title:    General Counsel

**EXHIBIT**

**"A"**

| Hourly Billing Rates | |
|---|---|
| **Administrative, Analysts, Clerks, Mailroom and Claims Control** | Waived |
| **Customer Service Representatives / Call Center Operators** | $52.50 - $150 |
| **Project Administrators / Case Managers** | $52.50 - $150 |
| **Project Supervisors** | $52.50 - $150 |
| **Systems, Programming, Graphic Support & Technology Staff/Consultants** | $52.50 - $139.50 |
| **Project Managers and Sr. Project Managers** | $52.50 - $150 |
| **Consultants** | $52.50 - $150 |
| **Directors / Vice-Presidents / Senior Managing Consultants** | $157.50 - $187.50 |
| **Senior Management** | No charge |
| **Solicitation Consultants & Executives** | $172.50 - $187.50 |

| Overtime Charges | No charge |
|---|---|
| **Printing and Noticing Services Rates** | |
| **Copying/Printing** | $0.10 per image |
| **Personalization, Labels, and Envelopes** | $0.035 each |
| **Postage, Courier, etc.** | Preferred Rates |
| **Electronic Noticing - Facsimile** | $0.10 per image |
| **Electronic Noticing - Email** | No charge |
| **Legal Notice Publishing** | Preferred Rates |
| **Electronic Solicitation Services** | N/A |
| **Call Center Rates** | |
| **Standard Call Center Setup** | No charge |
| **Voicemail Box** | No charge |
| **Interactive Voice Response** | Waived |
| **Monthly Maintenance Fee (Call Center Services)** | Waived |
| **Document Management Rates** | |
| **Database and System Access** | No charge |

| | |
|---|---|
| **Document Scanning** | $0.08 per image |
| **Document Storage - Paper** | No charge |
| **Document Storage - Electronic** | No charge |
| **Hosting Case-Specific Website** | No charge |
| **License Fees, Data Storage, Maintenance and Security** | Under 10,000 records - No Charge<br>Over 10,000 records - $.08 per record |
| **Virtual Data Room** | Quoted based on volume |
| **CD-ROM Creation** | $3.25 per CD |
| **Custom Client Reports** | Standard hourly rates |
| **Claims Administration Rates** | |
| **Claims Association** | Standard hourly rates |
| **Electronic Import of Creditor Data** | No charge |
| **Proofs of Claims Input** | Standard hourly rates |
| **Claim Acknowledgement Card** | No charge |
| **Processing Undeliverables** | Standard hourly rates |
| **Check Issuance** | Standard hourly rates |
| **Miscellaneous Disbursements and Costs** | |

| | |
|---|---|
| **Required Retainer** | $25,000 |
| **Travel Expenses** | At cost, if required |
| **Public Relations** | Certain PR/communications materials available upon request at no additional charge |
| **Other Anticipated Costs** | N/A |