## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
:
In re                                                      :     **Chapter 11**
:
**KABBAGE, INC. d/b/a KSERVICING,** *et al,*              :     **Case No. 22-10951 (      )**
:
Debtors.[1]                                               :     **(Joint Administration Requested)**
---------------------------------------------------------- x

### MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS (A) TO PAY CERTAIN PREPETITION TAXES AND ASSESSMENTS AND (B) GRANTING RELATED RELIEF

Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**"), respectfully move and represent as follows in support of this motion (this "**Motion**"):[2]

### Relief Requested

1.     By this Motion, the Debtors request, pursuant to sections 105(a), 363(b), 507(a), and 541(d) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), that the Court (i) authorize the Debtors to pay certain prepetition Taxes and Assessments (as defined herein) due and owing to various local, state, and federal taxing and other governmental authorities

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] The facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration (as defined below) filed contemporaneously herewith.  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration (as defined below).

(collectively, the "**Taxing Authorities**") that arose prior to the Petition Date and (ii) grant related relief.

2.      The Debtors further request that the Court (a) authorize all applicable financial institutions (collectively, the "**Banks**") to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent directed by the Debtors in accordance with this Motion, and to the extent the Debtors have sufficient funds on deposit in their accounts with such Bank, whether such checks were presented or electronic requests were submitted before or after the date hereof, and (b) authorize all Banks to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

3.      A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **<u>Exhibit A</u>** (the "**Proposed Interim Order**"), and a proposed form of order granting the relief requested herein on a final basis is annexed hereto as **<u>Exhibit B</u>** (the "**Proposed Final Order**", and together with the Proposed Interim Order, the "**Proposed Orders**").

<u>**Jurisdiction and Venue**</u>

4.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* entered by the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

5.      On the date hereof (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of title 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in these Chapter 11 Cases.

6.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their Chapter 11 Cases pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015-1 of the Local Rules.

7.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Deborah Rieger-Paganis in Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith.

### Debtors' Prepetition Taxes and Assessments

8.      In the ordinary course of business, the Debtors are obligated to pay certain taxes and assessments, which generally fall into the following categories, each of which is discussed in more detail below: (i) franchise taxes, (ii) personal property taxes, (iii) income taxes, and (iv) other fees (collectively, the "**Taxes and Assessments**").

9.      In the 12 months prior to the Petition Date, the Debtors paid approximately $2,115,000 in the aggregate, in Taxes and Assessments, which are paid on a quarterly or annual basis, in each case as required by applicable law and regulation.  The Debtors estimate that approximately $321,500 in the aggregate of Taxes and Assessments relating to the prepetition

period will become due and payable after the Petition Date, with approximately $67,000 coming due within the 30 days following the Petition Date.  The following table provides an overview of the estimated prepetition amounts that the Debtors seek relief to pay (or use tax credits to offset):

| Category | Estimated Prepetition Amount | Estimated Prepetition Amount Coming Due in First 30 Days |
|---|---|---|
| Franchise Taxes | $93,500 | $0 |
| Personal Property Taxes | $38,500 | $0 |
| Income Taxes | $184,000 | $67,000 |
| Other Fees | $5,500 | $0 |
| **TOTAL** | $321,500 | $67,000 |

A.     **Franchise Taxes**

10.     In the ordinary course of business, the Debtors are required to pay state franchise taxes in the jurisdiction in which they operate, as well as the jurisdiction in which the Debtors were formed or incorporated, as applicable (the "**Franchise Taxes**").  The Franchise Taxes are typically assessed by Taxing Authorities against the Debtors in connection with operating their business within a particular jurisdiction.  As limited liability companies and incorporated companies organized under the laws of the State of Delaware, the Debtors are required to pay Franchise Taxes to continue operating as Delaware entities.  Franchise Taxes are remitted by the Debtors on an annual basis to the relevant Taxing Authorities.

11.     During the 12-month period prior to the Petition Date, the Debtors paid approximately $375,000 in state Franchise Taxes.  The Debtors estimate that they owe $93,500 in remaining prepetition Franchise Taxes to the Taxing Authorities, none of which will become due and payable during the first 30 days following the Petition Date.

RLF1 28018229v.1

B.    **Personal Property Taxes**

12.    The Debtors are required to pay ad valorem taxes on owned personal property in the jurisdiction in which they operate (collectively, the "**Personal Property Taxes**"). Personal Property Tax returns are typically filed with state or local assessing authorities at the beginning of the year.  At that time, a value is determined upon which the Personal Property Taxes will be based for the taxes owed at the end of that year, after which the Debtors timely remit their Personal Property Tax payments to the relevant Taxing Authorities by the tax due date.

13.    During the 12 month period prior to the Petition Date, the Debtors paid approximately $0.00 in Personal Property Taxes for taxes assessed in the 2021 calendar year.  The Debtors estimate that they owe $38,500 in remaining prepetition Personal Property Taxes to the Taxing Authorities relating to the 2021 taxable year, none of which will become due and payable during the first 30 days following the Petition Date.[3] The Debtors estimate that they will have minimal liability on account of Personal Property Taxes relating to the 2022 and 2023 calendar years and do not believe any such amounts will become due and payable during the 30 days following the Petition Date.

C.    **Income Taxes**

14.    The Debtors also incur certain federal and state income taxes (collectively, the "**Income Taxes**") that are payable to various Taxing Authorities.  Income Taxes vary throughout the year in terms of timing and amounts.  For 2021, the Debtors' Income Tax returns

---

[3]  Certain Taxing Authorities have filed liens in the amount of $31,000 against 730 Peachtree Street NE, Suite 350, Atlanta, GA 30308 for unpaid 2021 Personal Property Taxes relating to office equipment.  The Debtors dispute that they owe these Personal Property Taxes because the office equipment was transferred to AmEx in 2020 as part of the sale transaction, pursuant to the Agreement and Plan of Merger, dated August 16, 2020. The AmEx transaction is further described in the First Day Declaration. Upon filing their 2021 tax returns, the Debtors will be able to show that following the AmEx Transaction, the Debtors downsized their workspace and transferred the previous lease with the office equipment to AmEx pursuant to the Agreement and Plan of Merger. The Debtors believe the liens will be extinguished because such liens were based on tax liability owed solely on account of the previous lease as it existed prior to the AmEx Transaction.

were due April 15, 2022, however, the Debtors received an extension of this deadline through October 15, 2022.  The Debtors intend to file their 2021 Income Tax returns by the October 15, 2022 deadline

16.    During the 12 month period prior to the Petition Date, the Debtors paid approximately $1,740,000 in Income Taxes.  As of the Petition Date, the Debtors estimate that they owe approximately $183,000 in Income Taxes and $1,000 in penalties and interest, of which the Debtors estimate $67,000 will become due and owing during the first 30 days following the Petition Date.

**D.    Other Fees**

16.    State and local laws require the Debtors to obtain and pay fees (collectively, "**Fees**") for a wide range of business licenses and permits from a number of local, state, and federal authorities.  The method for calculating Fees and the deadlines for paying such amounts vary by jurisdiction.  Certain states require the Debtors to pay annual reporting Fees to state governmental authorities to remain in good standing for purposes of conducting business within the state.  The Debtors estimate that, as of the Petition Date, they owe approximately $5,500 in prepetition Fees. Additionally, the Debtors estimate that approximately $0.00 of such Fees will become due and payable within the first 30 days following the Petition Date.

<u>**Relief Requested Should be Granted**</u>

**A.    Payment of Prepetition Taxes and Assessments is Warranted Under Section 363(b)(1) and 105(a) of the Bankruptcy Code and Doctrine of Necessity**

17.    A bankruptcy court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code. 11 U.S.C. § 363(b)(1).  Section 363(b) provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  To approve the use of

assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).

18.     In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (citations omitted); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

19.     Furthermore, in a long line of well-established decisions, courts consistently have permitted payment of prepetition obligations that are necessary to preserve or enhance the value of a debtor's estate.  *See, e.g.*, *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert. denied* 325

U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

20.    In addition, the Court may rely on its equitable powers under section 105(a) of the Bankruptcy Code and the doctrine of necessity to authorize the payment of prepetition claims when such payment is essential to the continued operation of a debtor's business. *See, e.g.*, *Just for Feet*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of Bankruptcy Code provides a statutory basis for payment of prepetition claims under the doctrine of necessity particularly when such payment is necessary for the debtor's survival during chapter 11); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is standard for enabling a court to authorize payment of prepetition claims before confirming a plan).

21.    Payment of the prepetition Taxes and Assessments is an exercise of sound business judgment and is necessary to ensure a smooth transition into chapter 11.  The Debtors seek to pay the prepetition Taxes and Assessments to, among other reasons, prevent the Taxing Authorities from taking actions that would interfere with the Debtors' continued business operations and potentially impose significant costs on the Debtors' estates.  Such actions may include asserting liens on estate assets or seeking to lift the automatic stay.  Additionally, failure to satisfy the prepetition Taxes and Assessments may jeopardize the Debtors' maintenance of good standing to operate in the jurisdiction in which they do business.

22.    Further, to the extent any prepetition Taxes and Assessments remain unpaid by the Debtors, the Debtors' officers, directors, and managers may be subject to lawsuits or criminal prosecution during the pendency of these Chapter 11 Cases.  The dedicated and active

participation of the Debtors' officers, directors and managers, and other employees is not only integral to the Debtors' continued, uninterrupted operations, but essential to the orderly administration of these Chapter 11 Cases.  The threat of a lawsuit or criminal prosecution, and any ensuing liability, would distract the Debtors and their personnel from important tasks, to the detriment of all parties in interest.

23.     The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is justified under sections 363(b) and 105(a) of the Bankruptcy Code.  Authorizing the Debtors to pay prepetition amounts related to Taxes and Assessments is in the best interests of the Debtors, their estates, and their economic stakeholders.

### B.     Failure to Pay Prepetition Taxes and Assessments May Increase Scope of Secured and Priority Claims Held by Taxing Authorities

24.     Payment of prepetition Taxes and Assessments is also warranted here because the Debtors' nonpayment may increase the amount of secured claims held by Taxing Authorities against the Debtors' estates.  Specifically, Taxing Authorities may assert liens against any property for which the Taxes and Assessments are due and owing.  Arguably, the relation back of a tax lien to the assessment or tax status date generally does not affect the enforceability of the tax lien against a debtor or violate the automatic stay imposed by section 362(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 362(b)(3).

25.     In fact, the creation and perfection of certain tax liens may not violate the automatic stay even if the lien arises under applicable law for taxes due after the Petition Date. *See* 11 U.S.C. § 362(b)(18) (automatic stay does not apply to "the creation or perfection of a statutory lien for an ad valorem property tax, or a special tax or special assessment on real property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment comes due

after the date of the filing of the petition[.]"); *see also In re Gifaldi*, 207 B.R. 54, 56 n.1 (Bankr. W.D.N.Y. 1997) (noting that section 362(b)(18) of the Bankruptcy Code reversed case law that had held that the creation of a statutory lien against ad valorem property taxes violated the automatic stay).

26.     Furthermore, to the extent the Taxing Authorities hold oversecured claims, if the prepetition Taxes and Assessments are not paid, post-petition interest, fees, penalties, and other charges may accrue.  *See* 11 U.S.C. § 506(b); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241-43 (1989) (holding that nonconsensual lienholders may receive interest on their claims under section 506(b) of the Bankruptcy Code).  Even if such Taxes and Assessments are not treated as secured claims, they may still, as discussed below, be entitled to priority treatment — as may any penalties assessed by the applicable Taxing Authorities on delinquent taxes owed by the Debtors.  *See* 11 U.S.C. § 507(a)(8).  The Debtors' failure to pay the prepetition Taxes and Assessments thus may increase the amount of priority claims held by the Taxing Authorities against the Debtors' estates.

27.     Paying the prepetition Taxes and Assessments now will avoid the potential imposition of liens and the accrual of interest charges and unnecessary fees and penalties on such claims, thereby preserving the value of the Debtors' estates and maximizing the distribution available for other creditors.

**C.      Payment of Prepetition Taxes and Assessments Will Affect Only Timing of Payments**

28.     Most of the Taxes and Assessments described herein may be afforded priority status pursuant to section 507(a)(8) of the Bankruptcy Code.  *See* 11 U.S.C. § 507(a)(8)(A) ("[A] tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition . . . ."); *id.* at (B) ("[A] property tax incurred before the

commencement of the case and last payable without penalty after one year before the date of the filing of the petition."); *id.* at (C) ("[A] tax required to be collected or withheld and for which the debtor is liable in whatever capacity."); *id.* at (E) ("[An] excise tax on . . . a transaction occurring before the date of the filing of the petition . . . ."); *id.* at (G) ("[A] penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.").  Thus, payment of such Taxes and Assessments would give the Taxing Authorities no more than that to which they otherwise would be entitled to under a chapter 11 plan, which will save the Debtors the potential interest expense, legal expense, and penalties that otherwise might accrue on, or be incurred in connection with, such Taxes and Assessments.

29.    Courts frequently authorize early payment of priority claims when such early payment is intended to prevent some harm or to procure some benefit for the estate.  *See, e.g.*, *In re CEI Roofing, Inc.*, 315 B.R. at 60-61 (finding that authorization of early payment of priority claims does not trigger concerns of either upsetting priority scheme of the Bankruptcy Code or of unfair discrimination); *In re CoServ, L.L.C.*, 273 B.R. at 493 (implying that the bankruptcy court may authorize early payment of prepetition priority claims in instances where nonpayment could impair the debtor's ability to operate); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) (stating that the court may authorize pre-plan payment of priority claims, including certain tax claims, because "the need to pay these claims in an ordinary course of business time frame is simple common sense").

30.    To the extent the prepetition Taxes and Assessments are priority claims, they must be paid in full before any general unsecured obligations of the Debtors may be satisfied. Accordingly, the proposed relief will affect only the timing of payment of the prepetition Taxes

and Assessments, and will not prejudice the rights of any general unsecured creditor or other party in interest.

31.     For the foregoing reasons, payment of the prepetition Taxes and Assessments is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these Chapter 11 Cases.  Accordingly, the Court should authorize the relief requested herein.

**D.     Cause Exists to Authorize Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers**

32.     The Debtors anticipate having sufficient funds to pay the amounts described herein in the ordinary course of business using expected cash flows from ongoing business operations.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify whether checks or wire transfer requests are payments authorized by the relief requested in this Motion.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that the Court should authorize the Banks, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the relief requested herein, to the extent the Debtors have sufficient funds on deposit in their accounts with such Banks, and such Banks may rely on the representations of the Debtors without any duty of further inquiry and without liability for following the Debtors' instructions.

**Reservation of Rights**

33.     Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a waiver of any claim or cause of action which may exist against any

creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### **Debtors Have Satisfied Bankruptcy Rule 6003(b)**

34.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before 30 days after filing of the petition.  Fed. R. Bankr. P. 6003(b).  As described above, and in the First Day Declaration, payment of prepetition amounts related to Taxes and Assessments is necessary, appropriate, and in the best interest of the Debtors.  Accordingly, the Debtors believe that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

### **Bankruptcy Rule 6004(a) and (h)**

35.     To implement the foregoing successfully, the Debtors request that the Court find that notice of this Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As described above, and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

RLF1 28018229v.1

## Notice

36.     Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (c)  the Federal Reserve; (d) Customers Bank; (e) Cross River Bank; (f) the United States Department of Justice; (g) the Federal Trade Commission; (h) the Small Business Administration; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the United States Attorney's Office for the District of Delaware; (l) the Banks; (m) Alabama Department of Revenue; (n) California Franchise Tax Board; (o) Delaware Department of Revenue; (p) Georgia Department of Revenue; (q) North Carolina Department of Revenue; (r) New York State Department of Finance; (s) New York City Department of Finance; (t) Pennsylvania Department of Revenue; and (u) any party that is entitled to notice pursuant to Local Rule 9013-1(m); (collectively, the "**Notice Parties**").  As this Motion is seeking "first-day" relief, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m).  The Debtors believe that no further notice is required.

## No Prior Request

37.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  October 3, 2022
       Wilmington, Delaware

*/s/ Zachary I. Shapiro*

RICHARDS, LAYTON & FINGER, P.A.
Daniel J. DeFranceschi (No. 2732)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
E-mail: defranceschi@rlf.com
       steele@rlf.com
       shapiro@rlf.com
       milana@rlf.com

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (*pro hac vice* admission pending)
Candace M. Arthur (*pro hac vice* admission pending)
Natasha S. Hwangpo (*pro hac vice* admission pending)
Chase A. Bentley (*pro hac vice* admission pending)
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8000
E-mail:     ray.schrock@weil.com
          candace.arthur@weil.com
          natasha.hwangpo@weil.com
          chase.bentley@weil.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

```
------------------------------------------------------- x
In re                                    :    Chapter 11
                                         :
KABBAGE, INC. d/b/a KSERVICING, et al.,  :    Case No. 22-10951 (    )
                                         :
                                         :
              Debtors.¹                  :    (Jointly Administered)
------------------------------------------------------- x
```

**INTERIM ORDER (I) AUTHORIZING DEBTORS**
**(A) TO PAY CERTAIN PREPETITION TAXES AND**
**ASSESSMENTS AND (B) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**"),[2] of Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession in the Chapter 11 Cases (collectively, the "**Debtors**"), for entry of an order (i) authorizing the Debtors to (a) pay certain prepetition Taxes and Assessments and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b), and the *Amended Standing Order of Reference* entered by the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

provided; and this Court having held a hearing to consider the interim relief requested in the Motion (the "**Hearing**"); and upon the First Day Declaration and the record of the Hearing; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Rule 6003 of the Federal Rules of Bankruptcy Procedure, and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a), 363(b), 507(a), and 541(d) of the Bankruptcy Code, to satisfy all Taxes and Assessments due and owing, in the ordinary course of business as such obligations become due, to the Taxing Authorities that arose prior to the Petition Date, including all Taxes and Assessments subsequently determined by audit or otherwise to be owed for periods prior to the Petition Date, in an aggregate amount not to exceed $67,000, absent further order of this Court.  Such Taxes and Assessments are summarized in further detail in the chart below.

| Category | Interim |
|:---:|:---:|
| Franchise Taxes | $0 |
| Personal Property Taxes | $0 |
| Income Taxes | $67,000 |
| Other Fees | $0 |
| **TOTAL** | $67,000 |

2

3.      Each of the Banks at which the Debtors maintain their accounts relating to the payment of the prepetition Taxes and Assessments are authorized to (a) receive, process, honor, and pay all checks presented for payment, and to honor all fund transfer requests made by the Debtors thereto, to the extent that sufficient funds are on deposit in those accounts and (b) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated before, on, or after the Petition Date, without any duty to inquire otherwise.

4.      The Debtors are authorized, but not directed, to issue new post-petition checks, or effect new electronic funds transfers, on account of payment of the prepetition Taxes and Assessments as set forth herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' Chapter 11 Cases.

5.      Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

6.      The requirements of Bankruptcy Rule 6003(b) have been satisfied.

7.      Under the circumstances of these Chapter 11 Cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

8.      Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

9.      The Debtors are authorized to take all action necessary to effectuate the relief granted in this Interim Order.

3

10.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

11.     The final hearing to consider the relief requested in the Motion shall be held on            , 2022 at _____ (Prevailing Eastern Time), and any objections or responses to the Motion shall be in writing, filed with the Court, and served on or prior to _____, 2022 at 4:00 p.m. (Prevailing Eastern Time).

4

**<u>Exhibit B</u>**

**Proposed Final Order**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------- x
In re                                          :     **Chapter 11**
                                               :
**KABBAGE, INC. d/b/a KSERVICING, *et al.*,**  :     **Case No. 22-10951 (      )**
                                               :
                                               :
                      **Debtors.**[1]          :     **(Jointly Administered)**
---------------------------------------------------------- x

## FINAL ORDER (I) AUTHORIZING DEBTORS
## (A) TO PAY CERTAIN PREPETITION TAXES
## AND ASSESSMENTS AND (B) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**"),[2] of Kabbage, Inc. d/b/a KServicing and its debtor

affiliates, as debtors and debtors in possession in the Chapter 11 Cases (collectively, the

"**Debtors**"), for entry of an order (i) authorizing the Debtors to (a) pay certain prepetition Taxes

and Assessments and (b) granting related relief, all as more fully set forth in the Motion; and this

Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28

U.S.C. §§ 157(a)-(b) and 1334(b), and the *Amended Standing Order of Reference* from the United

States District Court for the District of Delaware, dated February 29, 2012; and consideration of

the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper

notice of the Motion having been provided; and such notice having been adequate and appropriate

under the circumstances; and it appearing that no other or further notice need be provided; and this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

Court having held hearings to consider the relief requested in the Motion on an interim and, if necessary, final basis (the "**Hearings**"); and upon the First Day Declaration and the record of the Hearings, and all of the proceedings had before this Court; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT

1.      The Motion is granted on a final basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed pursuant to sections 105(a), 363(b), 507(a), and 541(d) of the Bankruptcy Code, to satisfy all Taxes and Assessments due and owing, in the ordinary course of business as such obligations become due, to the Taxing Authorities that arose prior to the Petition Date, including all Taxes and Assessments subsequently determined by audit or otherwise to be owed for periods prior to the Petition Date, in the aggregate amount not to exceed $321,500, absent further order of this Court.  Such Taxes and Assessments are summarized in further detail in the chart below.

| Category | Final |
|---|---|
| Franchise Taxes | $93,500 |
| Personal Property Taxes | $38,500 |
| Income Taxes | $184,000 |
| Other Fees | $5,500 |
| **TOTAL** | $321,500 |

3.      Each of the Banks at which the Debtors maintain their accounts relating to the payment of the prepetition Taxes and Assessments are authorized to (a) receive, process, honor,

RLF1 28018229v.1

and pay all checks presented for payment, and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts, and (b) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated before, on, or after the Petition Date, without any duty to inquire otherwise.

4.     The Debtors are authorized, but not directed, to issue new post-petition checks, or effect new electronic funds transfers, on account of payment of the prepetition Taxes and Assessments as set forth herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost, dishonored, or rejected as a result of the commencement of the Debtors' Chapter 11 Cases.

5.     Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

6.     Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

7.     Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

8.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Final Order.

9.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

3