# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **KABBAGE, INC. d/b/a KSERVICING**, *et al.*, | : | **Case No. 22-10951 (      )** |
| | : | |
| | : | |
| **Debtors.**[1] | : | **(Joint Administration Requested)** |

---------------------------------------------------------- x

### MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, EMPLOYEE BENEFITS, AND OTHER COMPENSATION AND (B) MAINTAIN EMPLOYEE BENEFIT PROGRAMS AND PAY RELATED OBLIGATIONS AND (II) GRANTING RELATED RELIEF

Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**"), respectfully move and represent as follows in support of this motion (this "**Motion**"):[2]

### Relief Requested

1.      By this Motion, the Debtors request authority pursuant to sections 105(a), 363(b), and 507(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") but not direction, to (a) pay Employee Compensation Obligations and Employee Benefit Obligations

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] The facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration (as defined below) filed contemporaneously herewith.  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration (as defined below).

(each as defined below) (collectively, the "**Employee Obligations**"), and related expenses, fees and costs incident to the foregoing, and (b) maintain, continue to honor, and pay amounts with respect to the Debtors' business practices, programs, and policies for their employees as such were in effect as of the Petition Date, and as such may be modified or supplemented from time to time in the ordinary course of business.

2.      The Debtors further request that the Court (a) authorize all applicable financial institutions (collectively, the "**Banks**") to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent directed by the Debtors in accordance with this Motion and to the extent the Debtors have sufficient funds on deposit in their accounts with such Bank, whether such checks were presented or electronic requests were submitted before or after the date hereof, and (b) authorize all Banks to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion without any duty of further inquiry, and without liability for following the Debtors' instructions.

3.      A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**"), and a proposed form of order granting the relief requested herein on a final basis is annexed hereto as **Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**").

## Jurisdiction and Venue

4.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the

2

"**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

5.　　On the date hereof (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in these Chapter 11 Cases.

6.　　Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their Chapter 11 Cases pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015-1 of the Local Rules.

7.　　Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Deborah Rieger-Paganis In Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith.

**Debtors' Workforce**

8.　　As of the Petition Date, the Debtors collectively employ 18 full-time employees paid on a salaried basis (the "**Salaried Employees**") and 2 employees paid on an hourly basis, 1 of which is part time (the "**Hourly Employees**" and, together with the Salaried Employees, the "**Employees**").[3]  In addition, the Debtors utilize the services of approximately 163 independent

---

[3] Through this Motion, the Debtors do not seek authority to use funds from any Debtor entity to administer any foreign compensation or benefit program as their non-debtor foreign affiliates are dormant entities.

3

contractors, 159 of which are contracted out by the Employment Vendors (as defined below) and five (5) of which are contracted out and paid directly by the Debtors (individually a "**Contractor**" and collectively, the "**Contractor Workforce**").  The Employees and Contractor Workforce are critical to the success of the Debtors' business and are responsible for ensuring, among other things, that the Debtors' operations continue to run smoothly, and effectively.

9.    The monetary relief sought in the Proposed Orders is discussed in further detail below and summarized in the following chart:

| Prepetition Obligations | Interim Relief Requested | Total Relief Requested |
| --- | --- | --- |
| Employee Compensation Obligations | $1,046,000 | $1,066,000 |
| Employee Benefit Obligations | $4,800 | $4,800 |
| **Total Employee Obligations** | **$1,050,800** | $1,070,800 |

<u>**Employee Compensation Obligations**</u>

10.    The Debtors' outstanding prepetition obligations related to compensation of Employees and Contractors (collectively, the "**Employee Compensation Obligations**") are summarized in the following chart and described in further detail below.  By this Motion, the Debtors seek authority to continue the Employee Compensation Obligations in the ordinary course of business and to pay any prepetition obligations owed on account of the Employee Compensation Obligations (as set forth in the Proposed Orders).

| Employee Compensation Obligations | Interim Relief Requested | Total Relief Requested |
| --- | --- | --- |
| Administration Fees | $1,000 | $1,000 |
| Compensation | $35,000 | $35,000 |
| Employee Bonus Program | $0 | $0 |
| Employee Benefit Programs | $2,000 | $22,000 |

4

| Employee Compensation Obligations | Interim Relief Requested | Total Relief Requested |
|---|---|---|
| Employer Taxes | $3,000 | $3,000 |
| Deferred 2020 Payroll Tax | $600,000 | $600,000 |
| Reimbursement Programs | $5,000 | $5,000 |
| Contractor Workforce Compensation | $400,000 | $400,000 |
| Total Employee Compensation Obligations | 1,046,000 | $1,066,000 |

## A.    Employee Program Administration

11.    The Debtors utilize Insperity PEO Services, L.P. ("**Insperity**") to administer the Debtors' payroll processing system, distribute payroll, and ensure proper tax and benefit withholdings are made. Insperity also directs enrollment, contributions, and payment in connection with the Employee Benefit Programs (as defined below).  In exchange for these services, the Debtors pay Insperity administration fees (the "**Administration Fees**") of approximately $6,600 each month.  As of the Petition Date, the Debtors estimate owing approximately $1,000 to Insperity on account of Administration Fees.  The Debtors seek authority to pay all such Administration Fees on a post-petition basis, as they come due in the ordinary course of business.

## B.    Unpaid Compensation

12.    In the ordinary course of business, the Debtors incur and pay salaries, wages, and related obligations (excluding reimbursable Business Expenses and Employee Leave Benefits, as defined below) to Employees ("**Compensation**").  Employees are paid in arrears on a semimonthly basis—on the 15th and the last day of each month (each, a "**Pay Day**" and the period between each Pay Day, a "**Pay Period**").  On average, the Debtors' gross payroll (including

5

amounts paid on account of taxes and other amounts, as set forth in more detail below) is approximately $131,000 per Pay Period.

13.     The Debtors calculate estimated payroll three (3) business days in advance of the applicable Pay Day and on such Pay Day, Insperity directly debits the funds from the Debtors' main operating account for disbursement to the Employees via direct deposit (electronic transfers of funds to the Employees' bank accounts).  Three business days prior to each Pay Day, the Debtors estimate, based on current workload, the amount of funds that will be owed to the Hourly Employees.  To the extent the estimated amounts are insufficient, or in excess of what is owed, the Debtors can resolve the discrepancy in the following Pay Period.  Importantly, to date, the Debtors have not had an instance where this was necessary.  Nevertheless, the Debtors request authority to make any appropriate adjustments based on any potential discrepancies between estimated and actual Compensation of the Hourly Employees for the respective Pay Period.

14.     As of the Petition Date, the Debtors estimate owing approximately $35,000 on account of unpaid Compensation.  No Employee is owed unpaid Compensation in excess of the $15,150 cap imposed by section 507(a)(4) of the Bankruptcy Code.  The Debtors seek authority to pay all prepetition and post-petition Compensation in the ordinary course of business during the Chapter 11 Cases.

C.      **Employee Bonus Program**

15.     As part of the Employee Compensation Obligations, Employees are eligible to receive (i) annual discretionary bonuses, and (ii) referral bonuses upon referring someone who is hired into a full-time position (the "**Employee Bonus Program**").  An Employee's annual bonus is determined based on performance, and further details regarding eligibility can be found in each respective Employee's offer letters.  Typically, bonuses are paid annually no later than the last Pay Period in March of the following year.   In addition to specifics detailed in each applicable

6

Employee offer letter, Employees must be employed prior to October 1st of the target year to be eligible to receive the bonus, and must also be employed on the day the bonus is paid without having provided formal departure or termination notice.  The amount of a referral bonus varies based on market demand, but generally ranges from $500-$2,000, and is paid to the referring individual in the Pay Period following the referred individual's 60th day of employment.

16.    For the current calendar year, the KERP (as defined below) has replaced the Employee Bonus Program for all Employees that are included in the KERP.  For Employees that are not included in the KERP, the Debtors seek authority pursuant to the Proposed Final Order to continue the Employee Bonus Program for the current calendar year with respect to those Employees.  Additionally, the Debtors also seek authority pursuant to the Proposed Final Order to pay any amounts under the Employee Bonus Program on a post-petition basis, as they come due in the ordinary course of business for subsequent calendar years.[4]

### D.    Additional Employee Benefit Programs

17.    Certain training and other benefits, including commuter benefit programs, nutrition counseling, and pet health insurance are also offered by the Debtors, in the ordinary course, through Insperity (the "**Insperity Development Program**").  The Insperity Development Program is at no additional cost to the Debtors and is covered in the Administration Fee.

18.    As part of their employment terms, the Debtors provide a one-time training allowance of $2,500 for certain Employees within the Debtors' operations division.  As of the

---

[4] For the avoidance of doubt, for the current calendar year, Employees will not receive the annual bonus they are otherwise entitled to under the Employee Bonus Program, and consideration for such amounts are instead provided for under the KERP (as defined below).  Through this Motion, the Debtors are seeking authority to pay annual bonuses in the ordinary course for subsequent calendar years.  However, the Debtors are not seeking authority to continue the Employee Bonus Program for insiders, as defined in section 101(31) of the Bankruptcy Code section 101.

Petition Date, to the best of the Debtors' knowledge, approximately $20,000 remains unused by applicable Employees (the "**Employee Training Program**").

19.    The Company also provides each Employee with a $60 monthly credit towards their cell phones to compensate for business related use, which is paid as part of the Employee Compensation (the "**Cell Phone Program**").  In previous years, the Debtors paid, in the aggregate, approximately $11,000 annually to eligible Employees under the Cell Phone Program.  Further, the Company pays for office parking for the Employees each month depending on usage directly to Lanier Parking Solutions ("**Office Parking**").  The cost of Office Parking ranges depending on use; however, on average, the monthly cost to the Debtors is approximately $1,000.

20.    As of the Petition Date, the Debtors owe approximately $2,000 of prepetition amounts  on account of the Cell Phone Program and Office Parking.  The Debtors seek authority to continue the Cell Phone Program, Employee Training Program, and Office Parking in the ordinary course of business during the Chapter 11 Cases.

E.    **Key Employee Retention Plan**

21.    To retain certain key Employees, and to focus their efforts during the Debtors' complex wind down process, the Debtors, with input from their advisors (including an independent compensation consultant), adopted and implemented a prepetition retention program for 15 critical Employees, including certain Executives, in lieu of any bonus and severance for the current calendar year (the "**KERP**").  The KERP was approved by the Debtors' board of directors following the recommendation of the Debtors' advisors.  The KERP payments total approximately $773,000, $527,000 of which was paid in a lump sum prepetition cash payment.  The remaining $246,000 will be paid to certain non-executives in four equal installments with the first installment having been paid on September 30, 2022, and the remaining installments to be paid on or as soon

8

as administratively practicable following each of: December 31, 2022, March 31, 2023, and June 30, 2023, subject to the terms of the KERP agreement, including continued employment with the Debtors.  Also to account for any special circumstances, the KERP provides for an additional discretionary pool of $63,000 to be used for non-insiders to satisfy any retention needs. For the avoidance of doubt, the Debtors are not seeking authority to make any payments under the KERP pursuant to this Motion, and any such authority will be sought pursuant to separate order of the Court.

**F.      Deductions and Withholding Obligations**

22.      For each applicable Pay Period, Insperity, on behalf of the Debtors, deducts certain amounts from each Employee's gross pay, including 401(k) contributions, and other pre- and after-tax deductions payable pursuant to certain Employee Benefit Programs discussed herein (collectively, the "**Deductions**").  In the aggregate, approximately $10,000 in payroll Deductions are made each Pay Period.

23.      In addition to the Deductions, federal and state laws require the Debtors to withhold amounts from each Employee's gross pay related to federal, state, and local income taxes, including Social Security and Medicare taxes, for remittance to the appropriate federal, state, or local taxing authorities (collectively, the "**Withholdings**").  Insperity, on behalf of the Debtors, collects the Withholdings from the Debtors' gross payroll.  The Debtors match, from their own funds, amounts for Social Security and Medicare taxes, and pay additional amounts for federal and state unemployment insurance based on a percentage of gross payroll (collectively, the "**Employer Payroll Taxes**" and, together with the Withholdings, the "**Payroll Taxes**") and remit such amount to Insperity.  Insperity, on behalf of the Debtors, then remits the Payroll Taxes to the relevant governmental authorities.  In the aggregate, the Payroll Taxes, including both the Employee and employer portions, total approximately $48,000 per Pay Period.

9

24.     In 2020, the Debtors deferred Employer Payroll Taxes as permitted by the Coronavirus Aid, Relief, and Economic Security Act.  In July 2022, the Debtors received notice from the Internal Revenue Service (the "**IRS**") regarding unpaid Employer Payroll Taxes of $301,348.03 for the period of the second financial quarter of 2020.  The Debtors are currently reviewing and reconciling whether additional funds are owed to the IRS, and based on information received to date, $1,208,000 was paid to the IRS for deferred payroll taxes in November, 2020. As of the Petition Date, the Debtors believe they may owe $600,000 on account of deferred Employer Payroll Taxes.  Further, as of the Petition Date, the Debtors owe approximately $3,000 on account of prepetition Employer Payroll Taxes.  Pursuant to this Motion, the Debtors seek authority to pay any outstanding and deferred prepetition Employer Payroll Taxes.  The Debtors also seek authority to pay Deductions and Payroll Taxes on a post-petition basis in the ordinary course of business during the Chapter 11 Cases.

## G.    Reimbursement Programs[5]

25.     In the ordinary course of business, certain Employees incur, and are reimbursed by the Debtors for, business expenses in connection with their employment duties. Such expenses include meal allowances, work related travel and lodging, local transportation, professional licenses and dues, and home office setup (the "**Business Expenses**").  These Business Expenses are incurred personally by the Employees and then submitted to their respective manager via email for approval.  After approval, the manager forwards the reimbursement request to the accounts payable supervisor who audits and approves such request before reimbursing the

---

[5] The Debtors also maintain a corporate credit card program in the ordinary course of business as further discussed in the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System, Bank Accounts, and Business Forms, (B) Implement Changes to Cash Management in the Ordinary Course of Business; and (II) Granting Related Relief* (the "**Cash Management Motion**").

10

respective Employee.  Employees must submit their expenses for reimbursement no later than the end of the month following the month in which the expenses were incurred.  Historically, over the course of the current calendar year, the monthly Business Expenses have ranged from $0 to $7,200 for a monthly average of $2,000.

26.    Accordingly, while it is difficult to determine the amount of Business Expenses outstanding at any given time, as of the Petition Date, the Debtors estimate that they may owe a nominal amount of $5,000 on account of the Business Expenses.  The Debtors seek authority to pay all pre and post-petition Business Expense reimbursements in the ordinary course of business during the Chapter 11 Cases.

**H.    Contract Workforce Compensation**

27.    In addition to their Employees, the Debtors rely significantly on their Contractor Workforce, which includes individuals who have expertise related to the Debtors' operations and provide services in specific areas, including: legal contract review, loan origination and risk, and data and reporting.  The Debtors contract with, and compensate, third party employment vendors and consultants, including: Vaco LLC, RSM US LLP, Morgan Franklin LLC, Vital Outsourcing Services, Inc., Option 1 Partners LLC, Libra Risk Management, URS Technologies Solutions LLC, Allegis Group Holdings Inc. and Moore Colson (collectively, the "**Employment Vendors**").  The Debtors remit approximately $1.4 million per month to the Employment Vendors, and in turn the Employment Vendors compensate the Contractor Workforce.

28.    As of the Petition Date, the Debtors estimate owing approximately $400,000 in the aggregate to the Employment Vendors for unpaid prepetition services provided by the Contract Workforce.  The Debtors request the authority to pay this prepetition amount, and to continue to retain and pay the Contract Workforce through the Employment Vendors in the

11

ordinary course of business during the Chapter 11 Cases.  For avoidance of doubt, no Contractor is owed unpaid compensation in excess of the $15,150 cap imposed by section 507(a)(4) of the Bankruptcy Code.

### Employee Benefit Programs

29.    In the ordinary course of business, the Debtors offer certain Employees various benefit programs, including (i) paid time off (the "**Employee Leave Benefits**"); (ii) medical and prescription drug benefits, vision benefits, dental benefits (the "**Health Insurance Programs**"), (iii) a health savings account and flexible savings account program ("**HSA/FSA Program**"), (iv) life and disability insurance and certain voluntary insurance programs ("**Life Insurance and Disability Programs**"); and (v)  a 401(k) plan (the "**Retirement Benefit**") (each of (i)–(v), an "**Employee Benefit Program**" and together the "**Employee Benefit Programs**"). The Employee Benefit Programs are administered by Insperity and paid on a semimonthly basis together with Employee Compensation.  Insperity's fees in connection with the Employee Benefit Programs are all included in the Administration Fee.  By this Motion, the Debtors seek authority to continue the Employee Benefits Programs in the ordinary course of business, and to pay any prepetition obligations owed on account of the Employee Benefit Programs.

30.    The estimated outstanding prepetition Employee Benefit Obligations are summarized in the chart below.

| Employee Benefit Obligations | Interim Relief Requested | Total Relief Requested |
|---|---|---|
| Employee Leave Benefits | $0 | $0 |
| Health and Welfare Benefits | $2,800 | $2,800 |

| Employee Benefit Obligations | Interim Relief Requested | Total Relief Requested |
|---|---|---|
| Retirement Benefits | $2,000 | $2,000 |
| **Total Employee Benefit Obligations** | **$4,800** | **$4,800** |

A.      **Employee Leave Benefits**

31.      The Debtors provide Employee Leave Benefits, which include personal time off, sick leave, federal and state holidays, parental leave, and unlimited vacation provided that they obtain the requisite supervisory approvals and adhere to reasonable requests.  The Debtors incur Employee Leave Benefit obligations when Employees utilize these benefits by taking time off.  As of the Petition Date, the Debtors do not estimate owing any prepetition amounts on account of the Employee Leave Benefits.  The Debtors anticipate that their Employees will utilize any Employee Leave Benefit in the ordinary course of business, which will not create any material cash flow requirements beyond the Debtors' regular payroll obligations. By this Motion, the Debtors seek authority to pay all post-petition Employee Leave Benefits in the ordinary course of business during the Chapter 11 Cases.

B.      **Health and Welfare Benefits**

32.      The Debtors offer, through Insperity, several health and welfare benefits to eligible Employees, including (i)  the Health Insurance Programs, (ii) the HSA/FSA Program, (iii) the Life Insurance and Disability Programs, and (iv) COBRA (as defined below) (together the "**Health and Welfare Benefits**").

1.      Health Insurance Programs

33.      All Employees are eligible to participate in the Health Insurance Programs, including the Medical Plans, the Vision Plan, and the Dental Plans (each as defined below).  The Debtors cover 100% of the cost of the premiums for the Health Insurance Programs with the

13

Employees. However, in the event an Employee elects to include dependents on the Health Insurance Programs, the Employees cover a majority of the premiums, which are deducted from such Employee's paycheck on a pre-tax basis, with the Debtors covering the remaining balance.

34.     The Debtors offer medical and prescription drug benefit programs (the "**Medical Plans**") to Employees.  The Medical Plans are provided by United Healthcare ("**United**") and Kaiser Permanente ("**Kaiser**").  The coverage in the Medical Plans differs depending on the level of coverage an Employee elects to receive, and monthly health care premiums differ depending on the Medical Plan in which an Employee is enrolled, and whether the Employee has dependents covered by the applicable Medical Plan.  The total cost of the Medical Plans to the Debtors is approximately $15,000 per month.  As of the Petition Date, the Debtors estimate owing $2,000 on account of Medical Plan premiums.  The Debtors seek authority to pay all such Medical Plan premiums and post-petition premiums in the ordinary course of business during the Chapter 11 Cases.

35.     The Debtors offer Employees the option to participate in a supplemental vision insurance plan (the "**Vision Plan**"), which is provided by VSP Choice.  The Debtors also offer Employees the option to participate in supplemental dental insurance plans (the "**Dental Plans**") provided by United Dental.  The Debtors pay the cost for each Employee participant in the base Vision Plan and Dental Plan, and any additional coverage is at the Employee's expense. The total cost of the Vision Plan and Dental Plan to the Debtors is approximately $1,600 per month. As of the Petition Date, the Debtors estimate owing $500 on account of Vision Plan and Dental Plan premiums.  The Debtors seek authority to pay all Vision Plan and Dental Plan premiums and post-petition premiums in the ordinary course of business during the Chapter 11 Cases.

14

36.    In sum, the Debtors spend approximately $16,600 per month on average in connection with the Health Insurance Programs.  As of the Petition Date, the Debtors estimate owing $2,500 on account of Health Insurance Programs.  The Debtors seek authority to pay all such Health Insurance Program obligations and post-petition obligations in the ordinary course of business during the Chapter 11 Cases.

2.    HSA/FSA Program

37.    The Debtors also provide the opportunity for eligible Employees to enroll in the HSA/FSA Program provided by Optum Bank.  Under the terms of the HSA/FSA Program, during the annual enrollment period, eligible Employees may choose to designate an amount of their pre-tax wages or salary to fund their HSA/FSA, which they can then use for eligible health care expenses incurred.   The Debtors do not incur a monthly cost for administering the HSA/FSA Program and therefore do not owe any amounts on account of the HSA/FSA Program.  However, the Debtors request authority to continue providing the HSA/FSA Program in the ordinary course of business during the Chapter 11 Cases.

3.    Life Insurance and Disability Programs

38.    The Debtors provide combined life and accidental death and disability insurance coverage (the "**Life and AD&D Insurance**") to Employees through New York Life Insurance Company ("**NY Life**").  For each Employee, the Life and AD&D Insurance provides coverage of one times the annual earnings of the Employee's annual salary up to $50,000 in the event of such Employee's death or dismemberment.   The Debtors also offer Employees the opportunity to purchase, at their own expense, supplemental Life and AD&D Insurance to cover themselves, their spouses, and their children through NY Life.  The total cost of the Life and AD&D Insurance program to the Debtors is approximately $200 each month.  As of the Petition Date, the Debtors estimate owing $100 on account of Life and AD&D Insurance premiums.  The

15

Debtors seek authority to pay all such Life and AD&D Insurance premiums and post-petition premiums in the ordinary course of business during the Chapter 11 Cases.

39.    The Debtors also provide long-term and short-term disability insurance ("**LTD STD Insurance**") to Employees through NY Life, with a maximum short term benefit of 60% of weekly earnings up to $2,308 per week and a maximum long term benefit of 60% of monthly earnings up to $10,000 per month.  The Debtors also offer Employees the opportunity to purchase, at their own expense, supplemental LTD STD Insurance to cover themselves, their spouses, and their children.  The total cost of the LTD STD Insurance to the Debtors is approximately $1,200 each month.  As of the Petition Date, the Debtors estimate owing $200 on account of LTD STD Insurance premiums.  The Debtors seek authority to pay all such LTD STD Insurance premiums and post-petition premiums in the ordinary course of business during the Chapter 11 Cases.

4.    COBRA

40.    Under the Consolidated Omnibus Budget Reconciliation Act ("**COBRA**"), Employees who are terminated have the right to continue to receive health benefits from their employer for a limited period of time and under certain circumstances.  COBRA benefits are provided by the Debtors to departing Employees as required by law.  As of the Petition Date, none of the Debtors' former Employees or covered family members are receiving claim payments on account of their participation in COBRA.  The Debtors' COBRA program is administered by Insperity.  The monthly cost for administering the COBRA program is included in the Administration Fee and therefore any amounts owed on account of the COBRA program are incorporated in the Administration Fee.  However, the Debtors request authority to continue providing the COBRA program in the ordinary course of business during the Chapter 11 Cases.

16

C.      **Retirement Benefits**

41.     The Debtors maintain a defined contribution plan meeting the requirements of section 401(k) of the Internal Revenue Code (the "**401(k) Savings Plan**"), which is managed by Massachusetts Mutual Life Insurance Company for the benefit of all eligible Employees. Approximately 11 Employees are active participants.  As part of the 401(k) Savings Plan, the Debtors match (i) 100% of an Employee's 401(k) contributions of 3% of the Employee's base salary and (ii) 50% of an Employee's 401(k) contributions of the next 2% of the Employee's base salary. The Debtors collect the Employee contributions through withholdings from participating Employees' paychecks throughout the year (these are described above as Deductions).  To satisfy the matching obligation, the Debtors make disbursements in advance of each Pay Period to Insperity, who in turn makes payments to a trust established under the 401(k) Savings Plan.  The Debtors make, on average, approximately $5,200 in matching contributions per month.  As of the Petition Date, the Debtors estimate owing $2,000 matching contributions pursuant to the 401(k) Savings Plan.  The Debtors seek authority to pay all such matching contributions and post-petition contributions pursuant to the 401(k) Savings Plan in the ordinary course of business during the Chapter 11 Cases.

<u>**Relief Requested Should be Granted**</u>

A.      **Payment of Employee Obligations is Warranted Under Sections 363(b) and 105(a) of the Bankruptcy Code**

42.     The Court may grant the relief requested herein pursuant to sections 363 and 105(a) of the Bankruptcy Code.

43.     A bankruptcy court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use,

17

sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also, e.g.*, *In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (finding that a sale of equipment was permissible under section 363(b) of the Bankruptcy Code because "there [wa]s a good business reason for completing the sale"). Moreover, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

44.     In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (applying section 105(a) to justify an order authorizing the payment of certain prepetition wages, salaries, medical benefits, and business-expense claims to the debtor's employees). Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest. *In*

18

*re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also In re Cybergenics Corp.*, 226 F.3d 237, 243 (3d Cir. 2000) (citing *In re Marvel Ent. Group, Inc.*, 140 F.3d 463, 474 (3d Cir. 1998) ("A paramount duty of a trustee or debtor in possession in a bankruptcy case is to act on behalf of the bankruptcy estate, that is, for the benefit of the creditors.")); *Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").  Courts consistently have permitted payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of [the] corpus").

45.    The Court may also authorize the payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code and the doctrine of necessity when such payment is essential to the continued operation of a debtor's business.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is the

19

standard for enabling a court to authorize payment of prepetition claims prior to confirmation of a plan of reorganization).

46.     The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is justified under sections 105(a) and 363(b) of the Bankruptcy Code.  Authorizing the Debtors to pay prepetition wages, employee benefits, and similar items will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption.  Indeed, without the relief requested herein being granted, the Debtors are at the risk of significant Employee attrition, as the Debtors' Employees may seek alternative opportunities, which would put a significant strain on facilitating these Chapter 11 Cases and inhibit the Debtors' ability to service its loan portfolio, thereby impacting current stakeholders.  Further, employee attrition would hinder the Debtors' ability to meet borrower demands and comply with applicable law, particularly given the Debtors' lean staff.  Employee attrition would also cause the Debtors to incur additional expenses to find appropriate and experienced replacements, severely disrupting the Debtors' operations at a critical juncture and diminishing the Debtors' ability to carry out their chapter 11 strategy and successfully reorganize.

47.     In addition to Employee attrition, failure to satisfy certain prepetition obligations will likely jeopardize Employee morale and loyalty at a time when Employee support is critical to the Debtors' business.  The majority of the Debtors' Employees rely exclusively on their Compensation and benefits to satisfy their daily living expenses and needs.  These Employees will be exposed to significant financial difficulties and other distractions if the Debtors are not permitted to honor their employee-related obligations.  Similarly, if the Court does not authorize the Debtors to honor their various Health Insurance Programs, many Employees will lose access

20

to health coverage at a time when the Debtors need their Employees to perform their jobs at peak efficiency.  The loss in morale and potential distraction of Employees worrying about paying their bills and their healthcare costs (among other things) will harm the Debtors' ability to operate.

48.    Similarly, the Contractor Workforce is an important component of the Debtors' operations and ensures the completion of key operational tasks that are critical to the Debtors' business.  In particular, given the Debtors began winding down their operations prior to Petition Date, they maintain a large Contractor Workforce and rely on their services to maintain their daily operations.  Any interruption to the Contractor Workforce would cause significant additional strain on the Debtors' already limited resources and the ability of Employees to assist throughout the Chapter 11 Cases.  Further, failure to timely pay the Contractor Workforce would endanger the Debtors' prospects of a value maximizing transaction and would cause widespread negative effects throughout the Debtors' business.

## B.    Payment of Employee Obligations Would Not Prejudice Parties in Interest

49.    The Debtors believe that the vast majority of the prepetition Employee Obligations constitute priority claims under sections 507(a)(4) or (5) of the Bankruptcy Code.  As priority claims, the Employee Obligations are entitled to payment in full before any general unsecured claims asserted against the Debtors can be satisfied.  Thus, the relief requested largely affects only the timing of the payment of the priority prepetition Employee Obligations, and should not prejudice the rights of general unsecured creditors or other parties in interest.

## C.    Payment of Certain Employee Obligations Is Required by Law

50.    The Debtors also seek authority to remit certain Deductions and Payroll Taxes to the appropriate entities.  These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' paychecks.  Indeed, certain Deductions, including contributions to the Employee Benefit

21

Programs, and Withholdings are not property of the Debtors' estates because they have been withheld from Employees' paychecks on another party's behalf. *See* 11 U.S.C. § 541(b); *see Begier v. IRS*, 496 U.S. 53, 66–67 (1990) (concluding that withholding taxes are property held by a debtor in trust for another and are therefore not property of debtor's estate). Further, federal and state laws require the Debtors and their officers to make certain tax payments that have been withheld from their Employees' paychecks. *See* 26 U.S.C. §§ 6672 and 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *DuCharmes & Co., Inc. v. State of Mich.* (*In re DuCharmes & Co.*), 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because certain Deductions and Payroll Taxes are not property of the Debtors' estates, the Debtors request that the Court authorize them to transmit the Deductions and Payroll Taxes to the proper parties in the ordinary course of business.

51.    For the foregoing reasons, payment of the prepetition Employee Obligations is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these Chapter 11 Cases. Accordingly, the Court should authorize the relief requested herein.

## Reservation of Rights

52.    Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a waiver of any claim or cause of action which may exist against any

22

creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### Debtors Have Satisfied Bankruptcy Rule 6003(b)

53.    Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before 21 days after filing of the petition.  Fed. R. Bankr. P. 6003(b).  As described above, and in the First Day Declaration, the Debtors request authority to pay Employee Obligations and amounts with respect to their business practices, programs, and policies for their Employees.  Accordingly, the Debtors believe that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

### Bankruptcy Rules 6004(a) and (h)

54.    To implement the foregoing successfully, the Debtors request that the Court find that notice of this Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As described above, and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy

23

Rule 6004(a) have been satisfied, and to grant a waiver of the 14-day stay imposed by Bankruptcy

Rule 6004(h), to the extent such notice requirements and such stay apply.

## Notice

55.     Notice of this Motion will be provided to (a) the Office of the United States

Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the

Debtors on a consolidated basis; (c) the Federal Reserve Bank; (d) Customers Bank; (e) Cross

River Bank; (f) the United States Department of Justice; (g) the Federal Trade Commission; (h) the

Small Business Administration; (i) the Internal Revenue Service; (j) the Securities and Exchange

Commission; (k) the United States Attorney's Office for the District of Delaware; (l) the Banks;

(m) any party that is entitled to notice pursuant to Local Rule 9013-1(m); (n) the Employment

Vendors; and (o) Insperity, (p) NY Life, (q) United, (r) Kaiser, (s) VSP, and (t) Massachusetts

Mutual Life Insurance Company (collectively, the "**Notice Parties**").  As this Motion is seeking

"first-day" relief, the Debtors will serve copies of this Motion and any order entered in respect of

this Motion as required by Local Rule 9013-1(m).  The Debtors believe that no further notice is

required.

## No Prior Request

56.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.


*[Remainder of page intentionally left blank]*

24

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  October 3, 2022
       Wilmington, Delaware

*/s/ Zachary I. Shapiro*
RICHARDS, LAYTON & FINGER, P.A.
Daniel J. DeFranceschi (No. 2732)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro, Esq. (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
E-mail: defranceschi@rlf.com
       steele@rlf.com
       shapiro@rlf.com
       milana@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (*pro hac vice* admission pending)
Candace M. Arthur (*pro hac vice* admission pending)
Natasha S. Hwangpo (*pro hac vice* admission pending)
Chase A. Bentley (*pro hac vice* admission pending)
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8000
E-mail:    ray.schrock@weil.com
       candace.arthur@weil.com
       natasha.hwangpo@weil.com
       chase.bentley@weil.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

25

## **Exhibit A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- x

In re                                                                   :      **Chapter 11**
                                                                        :
**KABBAGE, INC. d/b/a KSERVICING**, *et al.*,      :      **Case No. 22-10951 (      )**
                                                                        :
                                                                        :
            **Debtors.**[1]                                          :      **(Joint Administration Requested)**

---------------------------------------------------------- x

## INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, EMPLOYEE BENEFITS, AND OTHER COMPENSATION AND (B) MAINTAIN EMPLOYEE BENEFIT PROGRAMS AND PAY RELATED OBLIGATIONS AND (II) GRANTING RELATED RELIEF

Upon the motion, dated October 3, 2022 (the "**Motion**")[2] of Kabbage, Inc. d/b/a/ KServicing and its debtor affiliates, as debtors and debtors in possession in the Chapter 11 Cases (collectively, the "**Debtors**"), for entry of an order pursuant to sections 105(a), 363(b), and 507(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (i) authorizing the Debtors to (a) pay the Employee Obligations and (b) maintain, continue to honor, and pay amounts with respect to the Debtors' business practices, programs, and policies for their employees as such were in effect as of the commencement of these Chapter 11 Cases and as such may be modified during the pendency of these Chapter 11 Cases and (ii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the Rieger-Paganis  Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

and 1334, and the *Amended Standing Order of Reference* entered by the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief requested in the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and upon the record of the hearing; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a), 363(b), and 507(a) of the Bankruptcy Code to (i) pay the prepetition Employee Obligations in an aggregate amount not to exceed, absent further order of this Court, $1,050,800, (ii) pay any related expenses, fees and costs incident to the foregoing, and (iii) maintain, honor, and continue the Employee Benefit Programs in the ordinary course of business, as summarized in further detail in the chart below:

| Employee Obligations | Interim Amount |
|---|---|
| Administration Fees | $1,000 |
| Compensation | $35,000 |
| Employee Bonus Program | $0 |
| Employee Benefit Programs | $2,000 |
| Employer Taxes | $3,000 |
| Deferred 2020 Payroll Tax | $600,000 |
| Reimbursement Programs | $5,000 |
| Contractor Workforce Compensation | $400,000 |
| Employee Leave Benefits | $0 |
| Health and Welfare Benefits | $2,800 |
| Retirement Benefits | $2,000 |
| *Total* | **$1,050,800** |

3.      Notwithstanding any other provision of this Interim Order nothing in this Interim Order shall authorize the Debtors to make any payment to, or on behalf of, any Employee or Contractor on account of prepetition wages and other compensation obligations or other prepetition obligations in excess of the statutory caps set forth in sections 507(a)(4) and (5) of the Bankruptcy Code.

4.      Nothing in the Motion or this Interim Order shall be deemed to (i) authorize the payment of any amounts in satisfaction of bonus or severance obligations, including but not limited to the KERP program or the Employee Bonus Program, or which are subject to section 503(c) of the Bankruptcy Code, including, for the avoidance of doubt, payment of any obligations

3

to or on behalf of any "insider" (as defined by section 101(31) of the Bankruptcy Code) of the Debtors or any non-Debtor affiliates, or violate or permit a violation of section 503(c) of the Bankruptcy Code; or (ii) authorize the Debtors to cash out unpaid vacation or leave time except upon termination of an employee, if applicable state law requires such payment.

5.      The Banks are authorized to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to such obligations, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payments.  The Banks are authorized to accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

6.      The Debtors are authorized, but not directed, to issue new post-petition checks, or effect new electronic funds transfers, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' Chapter 11 Cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Interim Order.

7.      Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order, is intended to be or shall be construed as an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

4

8.      Nothing in this Interim Order shall implicitly or expressly approve or sanction any current or prospective incentive bonus, key employee incentive or retention program, or any payment having been made in relation to or pursuant thereto.

9.      The requirements of Bankruptcy Rule 6003(b) have been satisfied.

10.     Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

11.     Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

12.     The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Interim Order.

13.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

14.     The final hearing to consider the relief requested in the Motion shall be held on **____, 2022 at _____** (Prevailing Eastern Time), and any objections or responses to the Motion shall be in writing, filed with the Court, and served so as to be actually received on or prior to **_____, 2022 at 4:00 p.m.** (Prevailing Eastern Time).

5

**<u>Exhibit B</u>**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------- x
In re                                          :       Chapter 11
                                               :
KABBAGE, INC. d/b/a KSERVICING, et al.,        :       Case No. 22-10951 (      )
                                               :
                                               :
              Debtors.¹                        :       (Joint Administration Requested)
----------------------------------------------------------- x
```

## FINAL ORDER (I) AUTHORIZING DEBTORS TO
## (A) PAY PREPETITION WAGES, SALARIES, EMPLOYEE BENEFITS, AND OTHER
## COMPENSATION AND (B) MAINTAIN EMPLOYEE BENEFIT PROGRAMS
## AND PAY RELATED OBLIGATIONS AND (II) GRANTING RELATED RELIEF

Upon the motion, dated October 3, 2022 (the "**Motion**")[2] of Kabbage, Inc. d/b/a/ KServicing and its debtor affiliates, as debtors and debtors in possession in the Chapter 11 Cases (collectively, the "**Debtors**"), for entry of an order pursuant to sections 105(a), 363(b), and 507(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (i) authorizing the Debtors to (a) pay the Employee Obligations and (b) maintain, continue to honor, and pay amounts with respect to the Debtors' business practices, programs, and policies for their employees as such were in effect as of the commencement of these Chapter 11 Cases and as such may be modified during the pendency of these Chapter 11 Cases and (ii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the Rieger-Paganis Declaration; and this Court having jurisdiction to consider the Motion, and the relief requested therein pursuant to 28 U.S.C. §§ 157

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

and 1334, and the *Amended Standing Order of Reference* entered by the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having entered an order granting the relief requested in the Motion on an interim basis; and this Court having held a hearing to consider the relief requested in the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT

1.      The Motion is granted to the extent set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a), 363(b), and 507(a) of the Bankruptcy Code, to (i) pay the prepetition Employee Obligations in an aggregate amount not to exceed, absent further order of this Court, $1,070,800 and any related expenses, fees and costs incident to the foregoing, and (ii) maintain, honor, and continue the Employee Benefit Programs in the ordinary course of business, as summarized in further detail in the chart below:

| Employee Obligations | Final Amount |
|---|---|
| Administration Fees | $1,000 |
| Compensation | $35,000 |

2

| Employee Obligations | Final Amount |
|---|---|
| Employee Bonus Program | $0 |
| Employee Benefit Programs | $22,000 |
| Employer Taxes | $3,000 |
| Deferred 2020 Payroll Tax | $600,000 |
| Reimbursement Programs | $5,000 |
| Contractor Workforce Compensation | $400,000 |
| Employee Leave Benefits | $0 |
| Health and Welfare Benefits | $2,800 |
| Retirement Benefits | $2,000 |
| *Total* | **$1,070,800** |

3.      Nothing in the Motion or this Final Order shall be deemed to (i) authorize the payment of any amounts in satisfaction of severance obligations, the KERP program, or which are subject to section 503(c) of the Bankruptcy Code, including, for the avoidance of doubt, payment of any obligations to or on behalf of any "insider" (as defined by section 101(31) of the Bankruptcy Code) of the Debtors or any non-Debtor affiliates or violate or permit a violation of section 503(c) of the Bankruptcy Code; or (ii) authorize the Debtors to cash out unpaid vacation or leave time except upon termination of an employee, if applicable state law requires such payment.

4.      The Banks are authorized to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to such obligations, to the extent that sufficient funds are on deposit and standing

3

in the Debtors' credit in the applicable bank accounts to cover such payments. The Banks are authorized to accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

5.      The Debtors are authorized, but not directed, to issue new post-petition checks, or effect new electronic funds transfers, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' Chapter 11 Cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Final Order.

6.      The Debtors are authorized to continue the Employee Bonus Program in the ordinary course provided for in the Motion.

7.      Nothing contained in the Motion or this Final Order, nor any payment made pursuant to the authority granted by this Final Order, is intended to be or shall be construed as an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

8.      Nothing in this Final Order shall implicitly or expressly approve or sanction any current or prospective incentive bonus, key employee incentive or retention program, or any payment having been made in relation to or pursuant thereto.

9.      Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

10.     Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

4

11.    The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Final Order.

12.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

5