## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | | |
|---|---|---|
| -------------------------------------------------------------- x | | |
| In re | : | **Chapter 11** |
| | : | |
| **KABBAGE, INC. d/b/a KSERVICING**, *et al.*, | : | **Case No. 22-10951 (      )** |
| | : | |
| | : | |
| **Debtors.[1]** | : | **(Joint Administration Requested)** |
| -------------------------------------------------------------- x | | |

### JOINT CHAPTER 11 PLAN OF LIQUIDATION
### KABBAGE, INC. (d/b/a KSERVICING) AND ITS AFFILIATED DEBTORS

**WEIL, GOTSHAL & MANGES LLP**
Ray C. Schrock, P.C. (*pro hac vice* admission pending)
Candace M. Arthur (*pro hac vice* admission pending)
Natasha S. Hwangpo (*pro hac vice* admission pending)
Chase A. Bentley (*pro hac vice* admission pending)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801

*Proposed Attorneys for Debtors
and Debtors in Possession*

Dated: October 3, 2022
         Wilmington, Delaware

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express.  The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

# TABLE OF CONTENTS

SECTION 1.    DEFINITIONS AND INTERPRETATION. ...................................................1

SECTION 2.    ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.....................11

    2.1.    Administrative Expense Claims........................................................................11
    2.2.    Fee Claims. .......................................................................................................12
    2.3.    Priority Tax Claims. ..........................................................................................12

SECTION 3.    CLASSIFICATION OF CLAIMS AND INTERESTS. ...............................13

    3.1.    Classification in General....................................................................................13
    3.2.    Grouping of Debtors for Convenience Only......................................................13
    3.3.    Summary of Classification.................................................................................13
    3.4.    Special Provision Governing Unimpaired Claims. ............................................14
    3.5.    Elimination of Vacant Classes. .........................................................................14
    3.6.    Voting Classes; Presumptions............................................................................14
    3.7.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
        Code ...................................................................................................................15
    3.8.    No Waiver. .........................................................................................................15

SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS. ......................................15

    4.1.    Priority Non-Tax Claims (Class 1). ...................................................................15
    4.2.    Other Secured Claims (Class 2).........................................................................15
    4.3.    Reserve Bank Claims (Class 3)..........................................................................16
    4.4.    General Unsecured Claims (Class 4). .................................................................17
    4.5.    Intercompany Claims (Class 5). .........................................................................17
    4.6.    Intercompany Interests (Class 6). ......................................................................17
    4.7.    Subordinated Securities Claims (Class 7)..........................................................18
    4.8.    KServicing Equity Interests (Class 8).................................................................18

SECTION 5.    MEANS FOR IMPLEMENTATION. ......................................................19

    5.1.    No Substantive Consolidation............................................................................19
    5.2.    Sources of Consideration for Plan Distribution. ...............................................19
    5.3.    Toggle Implementation ......................................................................................19
    5.4.    Plan Administrator. ............................................................................................21
    5.5.    GUC Trust...........................................................................................................23
    5.6.    Corporate Action................................................................................................25
    5.7.    Withholding and Reporting Requirements. ........................................................25
    5.8.    Effectuating Documents; Further Transactions. .................................................26
    5.9.    Preservation of Rights of Action. ......................................................................27
    5.10.    Certificate of Incorporation and By-Laws. .......................................................27
    5.11.    Cancellation of Existing Securities and Agreements .........................................27
    5.12.    Subordinated Claims..........................................................................................27
    5.13.    Nonconsensual Confirmation.............................................................................28
    5.14.    Closing of Chapter 11 Cases. ............................................................................28
    5.15.    Notice of Effective Date. ...................................................................................28
    5.16.    Corporate Form..................................................................................................28
    5.17.    Separability. .......................................................................................................28

**TABLE OF CONTENTS**
**(continued)**

SECTION 6.    DISTRIBUTIONS. ...................................................................................28

    6.1.    Distributions Generally. ..................................................................................28
    6.2.    Distribution Record Date. ...............................................................................28
    6.3.    Date of Distributions. ......................................................................................29
    6.4.    Disbursing Agent. ............................................................................................29
    6.5.    Rights and Powers of Disbursing Agent. .........................................................29
    6.6.    Expenses of Disbursing Agent. .......................................................................30
    6.7.    No Postpetition Interest on Claims. .................................................................30
    6.8.    Delivery of Distributions. ...............................................................................30
    6.9.    Distributions after Effective Date. ..................................................................30
    6.10.    Unclaimed Property. ......................................................................................30
    6.11.    Time Bar to Cash Payments. ..........................................................................31
    6.12.    Manner of Payment under Plan. .....................................................................31
    6.13.    Satisfaction of Claims. ...................................................................................31
    6.14.    Minimum Cash Distributions. ........................................................................31
    6.15.    Setoffs and Recoupments. ..............................................................................31
    6.16.    Allocation of Distributions between Principal and Interest. ...........................31
    6.17.    No Distribution in Excess of Amount of Allowed Claim. ...............................32

SECTION 7.    PROCEDURES FOR DISPUTED CLAIMS. ...............................................32

    7.1.    Objections to Claims. .......................................................................................32
    7.2.    Resolution of Disputed Claims. .......................................................................32
    7.3.    Payments and Distributions with Respect to Disputed Claims. .......................32
    7.4.    Distributions after Allowance. ........................................................................32
    7.5.    Estimation of Claims. ......................................................................................33
    7.6.    No Distributions Pending Allowance. ..............................................................33
    7.7.    Claim Resolution Procedures Cumulative. ......................................................33
    7.8.    Interest. ............................................................................................................33
    7.9.    Insured Claims. ................................................................................................33

SECTION 8.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES. .....................34

    8.1.    Rejection of Executory Contracts and Unexpired Leases. ...............................34
    8.2.    Determination of Assumption Disputes and Deemed Consent. .......................34
    8.3.    Rejection Damages Claims. .............................................................................35
    8.4.    Insurance Policies. ...........................................................................................35
    8.5.    Intellectual Property Licenses and Agreements. ..............................................36
    8.6.    Assignment. .....................................................................................................36
    8.7.    Modifications, Amendments, Supplements, Restatements, or Other Agreements. .........37
    8.8.    Reservation of Rights. .....................................................................................37

SECTION 9.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE. .....................37

    9.1.    Conditions Precedent to the Effective Date. ....................................................37
    9.2.    Waiver of Conditions Precedent. .....................................................................38
    9.3.    Effect of Failure of Conditions to Effective Date. ..........................................38

SECTION 10.    EFFECT OF CONFIRMATION. ..............................................................38

    10.1.    Vesting of Assets. ...........................................................................................38
    10.2.    Term of Injunctions or Stays. .........................................................................39
    10.3.    Injunction. ......................................................................................................39
    10.4.    Binding Effect. ...............................................................................................40

RLF1 28018297V.1

**TABLE OF CONTENTS**
**(continued)**

| | | |
|---|---|---|
| 10.5. | Releases by the Debtors. | 40 |
| 10.6. | Releases By Holders of Claims and Interests. | 41 |
| 10.7. | Exculpation. | 41 |
| 10.8. | Waiver of Statutory Limitation on Releases. | 42 |
| 10.9. | Solicitation of the Plan. | 42 |
| 10.10. | Corporate Action. | 42 |
| SECTION 11. | RETENTION OF JURISDICTION. | 43 |
| 11.1. | Retention of Jurisdiction. | 43 |
| 11.2. | Courts of Competent Jurisdiction. | 44 |
| SECTION 12. | MISCELLANEOUS PROVISIONS. | 44 |
| 12.1. | Payment of Statutory Fees. | 44 |
| 12.2. | Substantial Consummation. | 45 |
| 12.3. | Dissolution of Creditors' Committee. | 45 |
| 12.4. | Amendments. | 45 |
| 12.5. | Revocation or Withdrawal of the Plan. | 45 |
| 12.6. | Severability of Plan Provisions upon Confirmation. | 45 |
| 12.7. | Governing Law. | 46 |
| 12.8. | Time. | 46 |
| 12.9. | Additional Documents | 46 |
| 12.10. | Immediate Binding Effect. | 46 |
| 12.11. | Successors and Assigns. | 46 |
| 12.12. | Entire Agreement. | 47 |
| 12.13. | Notices. | 47 |

iv

Kabbage, Inc. d/b/a KServicing, Kabbage Canada Holdings, LLC, Kabbage Asset Securitization LLC, Kabbage Asset Funding 2017-A LLC, Kabbage Asset Funding 2019-A LLC, and Kabbage Diameter, LLC proposes the following joint chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein shall have the meanings set forth in Section 1.A.

## SECTION 1.    DEFINITIONS AND INTERPRETATION.

### A.  Definitions.

1.1    *"Administrative Expense Claim"* means, Claim for costs or expenses of administration incurred during the Chapter 11 Cases of a kind specified under sections 324, 328, 330, 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (i) the actual and necessary costs and expenses incurred after the Commencement Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (ii) Fee Claims, and (iii) all Allowed Claims that are to be treated as Administrative Expense Claims pursuant to a final order of the Bankruptcy Court under section 546(c)(2)(A) of the Bankruptcy Code.

1.2    *"Affiliate"* has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.3    *"Allowed"* means, with respect to any Claim against or Interest in a Debtor, (i) any Claim or Interest arising on or before the Effective Date (a) as to which no objection to allowance has been interposed within the time period set forth in this Plan, or (b) as to which any objection has been determined by a Final Order of the Bankruptcy Court to the extent such objection is determined in favor of the respective holder, (ii) any Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, (iii) any Claim or Interest expressly Allowed under this Plan, or (iv) any Claim that is listed in the Debtors' Schedules as liquidated, non-contingent, and undisputed; *provided*, *that*, notwithstanding the foregoing, the Debtors will retain all claims and defenses with respect to Allowed Claims that are reinstated or otherwise unimpaired pursuant to this Plan.

1.4    *"Asset"* means, all of the rights, title, and interests of a Debtor in, and to property of whatever type or nature, including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property.

1.5    *"Assumption Dispute"* means, a pending objection relating to assumption or assumption and assignment of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

1.6    *"Assumption Schedule"* means, the schedule of executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Wind Down Estate or GUC Trust as applicable, pursuant to the Plan and included in the Plan Supplement, as may be amended, modified, or supplemented from time to time.

1.7    *"Avoidance Actions"* means, any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors arising under chapter 5 of the Bankruptcy Code, including sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553(b) of the Bankruptcy Code or under similar or related state or federal statutes and common law.

1.8     ***"Bankruptcy Code"*** means, title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.9     ***"Bankruptcy Court"*** means, the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

1.10    ***"Bankruptcy Rules"*** means, the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.11    ***"Business Day"*** means, any day other than a Saturday, a Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.12    ***"Cash"*** means, legal tender of the United States of America.

1.13    ***"Cause of Action"*** means, any action, Claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Commencement Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws). Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code or any other Avoidance Actions, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any claims under any state law or foreign law, including, without limitation, any fraudulent transfer or similar claims.

1.14    ***"Chapter 11 Cases"*** means, the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on October 3, 2022, and styled *In re Kabbage, Inc. d/b/a KServicing*, Case No. 22-[_____] ([●]).

1.15    ***"Claim"*** has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

1.16    ***"Class"*** means, any group of Claims or Interests classified as set forth in <u>Section 3</u> of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.17    ***"Commencement Date"*** means, the date on which the Debtors commenced the Chapter 11 Cases.

1.18    ***"Confirmation"*** means, the entry on the docket of the Chapter 11 Cases of the Confirmation Order.

2

1.19    *"Confirmation Date"* means, the date on which the Bankruptcy Court enters the Confirmation Order.

1.20    *"Confirmation Hearing"* means, the hearing to be held by the Bankruptcy Court regarding Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.21    *"Confirmation Order"* means, an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.22    *"Creditors' Committee"* means, the statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, if any.

1.23    "*CRB*" means, Cross River Bank.

1.24    *"CRB Agreements"* means, collectively, (i) that certain Loan Program Agreement between Cross River Bank and KServicing dated as of April 13, 2020 (as may be amended or restated from time to time, the "*CRB LPA*"); and (ii) certain Sale and Servicing Agreement among Cross River Bank and KServicing dated as of May 6, 2020 (as may be amended or restated from time to time, the "*CRB SAS Agreement*").

1.25    *"CRB PPP Loans"* means, any PPP Loans that, as of the Commencement Date, are either (i) serviced by KServicing pursuant to the CRB LPA as of the Commencement Date, or (ii) "Sold Assets" as defined in CRB SAS Agreement.

1.26    *"CRB Servicer Transfer Date"* has the meaning set forth in Section 5.3(a) hereof.

1.27    *"CRB Servicing Costs"* has the meaning set forth in Section 5.3 hereof.

1.28    "*CUBI*" means, Customers Bancorp, Inc.

1.29    *"CUBI Agreements"* means, collectively, (i) that certain Processing and Servicing Agreement Pursuant to Division A, Title I of the CARES Act entered into on April 27, 2020 between CUBI and KServicing (as may be amended or restated from time to time, the "*CUBI PSA*"); (ii) that certain Sale and Servicing Agreement among CUBI and KServicing dated as of February 2, 2021 (as may be amended or restated from time to time, the "*CUBI SAS Agreement*"); and (iii) that certain SaaS Services Agreement between CUBI and KServicing dated as of April 24, 2020 (as may be amended or restated from time to time).

1.30    *"CUBI PPP Loan"* means, any PPP Loans that, as of the Commencement Date, are either (i) serviced by KServicing pursuant to the CUBI PSA as of the Commencement Date, or (ii) "Sold Assets" as defined in CUBI SAS Agreement.

1.31    *"CUBI Receivable"* means, the servicing fees in the total aggregate amount of approximately $65.5 million withheld as of the Commencement Date by CUBI which are owed to KServicing on account of services rendered pursuant to the CUBI Agreements.

1.32    *"CUBI Servicer Transfer Date"* has the meaning set forth in Section 5.3(a) hereof.

1.33    *"CUBI Servicing Costs"* has the meaning set forth in Section 5.3(a) hereof.

3

1.34      ***"Cure Amount"*** means, the payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) as necessary pursuant to section 365(b)(1)(A) of the Bankruptcy Code to permit the Debtors to assume such executory contract or unexpired lease.

1.35      ***"D&O Policy"*** means, any insurance policy that covers, among others, current or former directors, members, trustees, managers, and officers liability issued at any time to or providing coverage to the Debtors and all agreements, documents or instruments relating thereto, including any runoff policies or tail coverage.

1.36      ***"Debtors"*** means, KServicing; Kabbage Canada Holdings, LLC; Kabbage Asset Securitization LLC; Kabbage Asset Funding 2017-A LLC; Kabbage Asset Funding 2019-A LLC; and Kabbage Diameter, LLC, in each case, solely in its capacity as a debtor in possession under the Bankruptcy Code.

1.37      ***"Debtors in Possession"*** means, the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

1.38      ***"Definitive Documents"*** means, the documents that are otherwise necessary or desirable to implement, or otherwise relate to, the Funded Transaction or Unfunded Transaction, as applicable, including, but not limited to: (i) the Plan; (ii) each of the documents comprising the Plan Supplement; (iii) the Disclosure Statement; (iv) any motion seeking the approval of the adequacy of the Disclosure Statement and solicitation of the Plan; (v) solicitation materials; and (vi) the Confirmation Order.

1.39      ***"Disallowed"*** means, with respect to any Claim or Interest, that such Claim or Interest has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.40      ***"Disbursing Agent"*** means, (i) solely with respect to the Funded Transaction, the Plan Administrator; and (ii) solely with respect to the Unfunded Transaction, the Plan Administrator and the GUC Trustee (solely with respect to the GUC Assets), or any Person engaged by the Wind Down Estate, Plan Administrator, the GUC Trust, or the GUC Trustee.

1.41      ***"Disclosure Statement"*** means, the disclosure statement filed by the Debtors in support of the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code (as may be amended, supplemented, or modified from time to time).

1.42      ***"Disputed"*** means, with respect to a Claim or Interest, that (a) is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code; or (b) the Debtors or any parties in interest have interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.  If the Debtors, or any parties in interest, dispute only a portion of a Claim, such Claim shall be deemed Allowed in any amount the Debtors, or any parties in interest, do not dispute, and Disputed as to the balance of such Claim.

1.43      ***"Distribution"*** means, payment or distribution of consideration to holders of Allowed Claims pursuant to this Plan.

1.44      ***"Distribution Record Date"*** means, the Effective Date of the Plan or such other date as determined by the Plan Administrator.  For the avoidance of doubt, the Distribution Record Date shall not apply to holders of public securities.

4

1.45    ***"Effective Date"*** means, the date on which all conditions to the effectiveness of the Plan set forth in <u>Section 9</u> hereof have been satisfied or waived in accordance with the terms of the Plan.

1.46    ***"Entity"*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.47    ***"Estate or Estates"*** means, individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.48    ***"Excess SALT Amounts"*** means, amounts paid by KServicing to the Reserve Bank in connection with excess state and local tax components of certain PPP Loans.

1.49    ***"Exculpated Parties"*** means, collectively: (a) the Debtors, (b) the Creditors' Committee, if any, and each of its members in their capacity as such, and (c) with respect to each of the foregoing Persons or Entities in clauses (a) through (d), all of their Related Parties who acted on their behalf in connection with the matters as to which exculpation is provided herein.

1.50    ***"Fee Claim"*** means, a Claim for professional services rendered or costs incurred on or after the Commencement Date through the Effective Date by professional persons retained by the Debtors or the Creditors' Committee pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

1.51    ***"Fee Escrow Account"*** means, the depository account established or designated by the Debtors to be funded with Cash for payment of Fee Claims in accordance with the terms of this Plan.

1.52    ***"Final Order"*** means, an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and is in full force and effect, which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.53    ***"Former Officers and Directors"*** means, any Person that served in a capacity as an officer or director of any of the Debtors, other than those Persons that are officers or directors of the Debtors immediately prior to the Petition Date.

1.54    ***"Funded Transaction"*** has the meaning set forth in <u>Section 5.3(a)</u> hereof.

1.55    ***"General Unsecured Claim"*** means, any Claim against the Debtors (other than any Intercompany Claims) as of the Commencement Date that is neither secured by collateral nor entitled to priority under the Bankruptcy Code or any final order of the Bankruptcy Court, including but not limited to any Claim by any Partner Bank.

5

1.56    ***"Governmental Unit"*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.57    ***"GUC Pool"*** means, in the event of the Funded Transaction, the Cash pool established pursuant to this Plan in the amount of the GUC Pool Amount, which Cash shall be held in the Debtors' general accounts and not segregated.

1.58    ***"GUC Pool Amount"*** means, in the event of the Funded Transaction, as of the Effective Date, an amount equal to the amount of any remaining Net Cash Proceeds.

1.59    ***"GUC Pool Class A Claims"*** means, the Claims which shall entitle the respective holder to its *pro rata* share of the proceeds of the GUC Pool, after deducting expenses.

1.60    ***"GUC Pool Class B Claims"*** means, the Claims which shall entitle the respective holder to its *pro rata* share of the proceeds of the GUC Pool, after Cash distributions are made to holders of GUC Pool Class A Claims in an aggregate amount equal to $[●].

1.61    ***"GUC Trust"*** means, in the event of the Unfunded Transaction, a trust established pursuant to the GUC Trust Agreement and which shall be responsible for the administration and distribution of the GUC Trust Assets.

1.62    ***"GUC Trust Assets"*** means in the event of an Unfunded Transaction, any assets of the GUC Trust, including GUC Trust Causes of Action and any proceeds thereof.

1.63    ***"GUC Trust Agreement"*** means, in the event of an Unfunded Transaction, the agreement by and among the Debtors and the GUC Trustee, substantially in the form included in the Plan Supplement.

1.64    ***"GUC Trustee"*** means, in the event of an Unfunded Transaction, the Person selected to serve as the trustee of the GUC Trust, and any successor thereto in accordance with the GUC Trust Agreement.

1.65    ***"GUC Trust Causes of Action"*** mean, in the event of an Unfunded Transaction, any Estate Cause of Action.

1.66    ***"GUC Trust Beneficial A Interests"*** means, the non-certified and non-transferable beneficial interests in the GUC Trust which shall entitle the respective holder to its *pro rata* share of the GUC Trust Assets, after deducting the expenses of the GUC Trust.

1.67    ***"GUC Trust Beneficial B Interests"*** means, the non-certified and non-transferable beneficial interests in the GUC Trust which shall entitle the respective holder to its *pro rata* share of the GUC Trust Assets, after the GUC Trust has distributed Cash to holders of Reserve Bank Priority Claims in an aggregate amount equal to $[●].

1.68    ***"Impaired"*** means, with respect to a Claim, Interest or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.69    ***"Initial Cash Proceeds"*** means, collectively (a) Cash or cash equivalents on hand, (b) recovery of account receivables, (c) proceeds from Estate Causes of Action; (d) any borrower payments collected on account of the Legacy Loans, and (e) Loan Servicing Proceeds.

1.70    ***"Insured Claim"*** means, any Claim or portion of a Claim that is, or may be, insured under any of the Debtors' insurance policies.

1.71    ***"Intercompany Claim"*** means, a Claim against any Debtor by another Debtor or non-Debtor Affiliate of such other Debtor.

1.72    ***"Intercompany Interest"*** means, an Interest in a Debtor other than a KServicing Equity Interest.

1.73    ***"Interest"*** means, any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all shares, common stock, or other instrument evidencing any fixed or contingent ownership interest in any Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, whether fully vested or vesting in the future, including, without limitation, equity or equity-based incentives, grants, or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtors, to acquire any such interests in the Debtors that existed immediately before the Effective Date.

1.74    ***"KServicing"*** means, Kabbage, Inc. (d/b/a KServicing).

1.75    ***"KServicing Equity Interests"*** means, all Interests in KServicing, including KServicing Stock and any options, warrants or rights to acquire any such Interests.

1.76    ***"KServicing Stock"*** means, all common stock in KServicing.

1.77    ***"Legacy Loan(s)"*** means, any outstanding loan owned by KServicing that is not a PPP Loan.

1.78    ***"Lien"*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.79    ***"Loan Servicing Proceeds"*** means, all fees and amounts due and payable to KServicing with respect to its servicing of PPP Loans and Legacy Loans, including without limitation, (a) all fees and amounts due and payable to KServicing pursuant to Partner Bank Agreements; and (b) any servicing fees or interest due and payable to KServicing by the SBA, including any lender processing fees payable by the SBA under the PPP for the account of any Debtor pursuant to the Partner Bank Agreements.

1.80    ***"Net Cash Proceeds"*** means, as of the Effective Date, (a) Initial Cash Proceeds, *less* (b) the amount of Cash (i) necessary to pay holders of Allowed (or reserve for Disputed Administrative Expense Claims, Fee Claims, Priority Tax Claims, Priority Non-Tax Claims, Other Secured Claims; (ii) the Wind Down Amount (for the avoidance of doubt, not including any Post-Effective Date Servicing Costs); and (iii) necessary to satisfy any Statutory Fees required to be paid in accordance with the Bankruptcy Code, the Bankruptcy Rules or any order of the Bankruptcy Court.

1.81    ***"Other Secured Claim"*** means, a Secured Claim, other than a Reserve Bank Secured Claim.

1.82    ***"Partner Bank Agreements"*** means, together, the CUBI Agreements and the CRB Agreements, including all schedules, exhibits, and annexes thereto.

1.83    ***"Partner Banks"*** means, together, CRB and CUBI.

1.84    **"Person"** means, an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit or other Entity.

1.85    **"Plan"** means, this joint chapter 11 plan, including the exhibits hereto and the Plan Supplement, as the same may be amended or modified from time to time in accordance with Section 12.4 herein.

1.86    **"Plan Administrator"** means, the person or entity selected by the Debtors charged with overseeing the tasks outlined in Section 5.4 of this Plan, or any successor thereto.  The identity of the Plan Administrator shall be filed with the Bankruptcy Court prior to the Confirmation Hearing.

1.87    **"Plan Supplement"** means, a supplemental appendix to the Plan containing, among other things, forms or term sheets of applicable documents, schedules and exhibits to the Plan to be filed with the Court, including, but not limited to, the following: (a) the Assumption Schedule, (b) schedule of Retained Causes of Action, (c) the Wind Down Budget, (d) identity of the Plan Administrator, (e) information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code, (f) to the extent known the identities of the members of the New Board, (g) identity of the GUC Trustee, if applicable; and (h) the GUC Trust Agreement, if applicable.  Through the Effective Date, the Debtors shall have the right to amend any documents contained in, and exhibits to, any Plan Supplement subject to the requirements of Section 12.4 of the Plan.

1.88    **"PPP"** means, the SBA's 7(a) loan program titled the Paycheck Protection Program, which was added to the SBA's 7(a) loan program by section 1102 of the Coronavirus Aid, Relief, and Economic Security Act, as amended by the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act and as may be amended from time to time.

1.89    **"PPP Loan"** means, any loan issued under the PPP.

1.90    **"PPPLF"** means, the Paycheck Protection Program Liquidity Facility.

1.91    **"PPPLF Advance"** means, Cash advanced to KServicing by the Reserve Bank pursuant to the Letter Agreement in principal amount equal to the aggregate amount of PPPLF Collateral pledged to secure such advance.

1.92    **"PPPLF Collateral"** means, PPP Loans pledged as collateral for PPPLF Advances under the PPPLF in accordance with the PPPLF Documents.

1.93    **"PPPLF Documents"** means, together, (i) that certain Paycheck Protection Program Liquidity Facility Letter of Agreement (the "**Letter Agreement**") dated January 14, 2021, by and among KServicing and the Federal Reserve Bank designated by the Board of Governors of the Federal Reserve System, and (ii) the Federal Reserve's Operating Circular No. 10, effective July 16, 2013 (the "**Operating Circular**").

1.94    **"PPPLF Transfer"** has the meaning set forth in Section 5.3(a) hereof.

1.95    **"PPPLF Servicer Transfer Date"** has the meaning set forth in Section 5.3(a) hereof.

1.96    **"Post-Effective Date PPPLF Servicing"** has the meaning set forth in Section 5.3(a) hereof.

1.97    ***"Post-Effective Date Servicing Costs"*** means, the CUBI Servicing Costs, Reserve Bank Servicing Costs, and the CRB Servicing Costs.

1.98    ***"Prerequisite Condition"*** has the meaning set forth in Section 9.1(e) hereof.

1.99    ***"Priority Non-Tax Claim"*** means, any Claim other than an Administrative Expense Claim, or a Priority Tax Claim entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.100    ***"Priority Tax Claim"*** means, any secured or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.101    ***"Pro Rata"*** means, the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests in a particular Class and other Classes entitled to share in the same recovery as such Class under the Plan.

1.102    ***"Proof of Claim"*** means, a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

1.103    ***"Related Parties"*** means, with respect to any Exculpated Party or Released Party: (a) such entities' predecessors (other than with respect to the Debtors), successors and assigns, subsidiaries, affiliates, managed accounts or funds, (b) all of their respective postpetition officers, postpetition directors, postpetition principals, postpetition employees, postpetition agents, postpetition trustees, postpetition advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, solely to the extent such persons and entities acted on the behalf of the Released Parties in connection with the matters as to which releases are provided in the Plan, and (c) such entities' respective heirs, executors, estates, servants and nominees; *provided*, that the Former Officers and Directors of the Debtors shall not be "Related Parties."

1.104    ***"Released Parties"*** means, collectively, each of the following in their capacity as such: (a) the Debtors, (b) the Liquidating Debtors, (c) [the Reserve Bank; and (d)] the Related Parties for each of the foregoing.

1.105    ***"Releasing Parties"*** means, collectively, each of the following in their capacity as such: (a) each of the Released Parties (other than the Debtors and the Liquidating Debtors); (b) all holders of Claims or Interests who vote to accept the Plan; (c) all holders of Claims or Interests that are unimpaired or deemed to accept the Plan; (d) all holders of Claims or Interests that are eligible to vote to accept or reject the Plan that either vote to reject the Plan or abstain from voting on the Plan for all Classes in which they are eligible to vote and who do not affirmatively opt-out of the releases in accordance with the ballot to solicit acceptances or rejections of the Plan; (e) all holders of Claims or Interests with notice and an opportunity to opt-out of, or object to, the releases; and (f) with respect to each of the foregoing Entities and Persons in clauses (a) – (e), all of their respective Related Parties to the maximum extent permitted by law.

1.106    ***"Remittance Amounts"*** means, collectively all amounts on account of (a) KServicing's 0.65% allocation of the interest in connection with PPP Loans, (b) any PPP Loan for which the Reserve Bank has already received pre-payment by KServicing, and (c) any Excess SALT amounts.

9

1.107    *"Reserve Bank"* means the Federal Reserve Bank of San Francisco.

1.108    *"Reserve Bank Claims"* means, together, the Reserve Bank Secured Claims and the Reserve Bank Priority Claims.

1.109    *"Reserve Bank Priority Claims"* means, deficiency claims on account of the PPPLF Advances entitled in right of priority under section 507(a)(2) of the Bankruptcy Code, if any.

1.110    *"Reserve Bank Secured Claims"* means, any Secured Claims held by the Reserve Bank arising and payable under and in accordance with the PPPLF Documents, solely to the extent permitted by the Bankruptcy Code.

1.111    *"Reserve Bank Servicing Costs"* has the meaning set forth in Section 5.3(a) hereof.

1.112    *"SBA"* means, the U.S. Small Business Administration.

1.113    *"Schedules"* means, the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.114    *"Secured Claim"* means, a Claim (a) secured by a Lien on collateral to the extent of the value of such collateral as (i) set forth in this Plan, (ii) agreed to by the holder of such Claim and the Debtors, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.115    *"Single Share"* has the meaning set forth in Section 4.8(b) hereof.

1.116    *"Statutory Fees"* means, all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.

1.117    *"Subordinated Securities Claim"* means, a Claim subject to subordination under section 510(b) of the Bankruptcy Code.

1.118    *"Subsequent Condition"* has the meaning set forth in Section 9.1(e) hereof.

1.119    *"Tax Code"* means, the Internal Revenue Code of 1986, as amended,

1.120    *"Unexpired Lease"* means, a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.121    *"Unimpaired"* means, with respect to a Claim, Interest or Class of Claims or Interests, not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

1.122    *"Unfunded Transaction"* has the meaning set forth in Section 5.3(b) hereof.

1.123    *"Wind Down"* means, following the Effective Date, the process to sell, abandon, Wind Down, dissolve, liquidate or distribute any remaining assets of the Debtors' Estates in accordance with the Plan.

1.124   ***Wind Down Amount*** means, an amount of cash sufficient to satisfy the Wind Down Budget for any continued servicing of PPPLF Collateral loans, CRB PPP Loans, or CUBI PPP Loans, as applicable in accordance with the Plan.

1.125   ***Wind Down Budget"*** means, an amount for the purpose of effectuating the Wind Down.

1.126   ***Wind Down Estate"*** means, the Debtors, or any successor thereto, by merger, consolidation or otherwise (which may be, among other things, a corporation, limited liability company or a liquidating trust) to Wind Down, dissolve, and liquidate the Estates or otherwise administer or distribute the proceeds of, any remaining assets in accordance with this Plan.

**B.   Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

**C.   Controlling Document.**

In the event of an inconsistency between the Plan and any other document, the terms of the Plan shall control.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided* that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

**SECTION 2.   ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.**

2.1.   ***Administrative Expense Claims.***

Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtors or the Plan Administrator agree to different treatment, the Debtors (or the Plan Administrator, as the case may be) shall pay to each holder of an Allowed Administrative Expense Claim Cash in an amount equal to such Claim on (a) the later of (i) the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable, or (b) on such other date or terms as may be mutually agreed upon between the holder of such an Allowed Administrative Expense

11

Claim and the Debtors or the Plan Administrator, as applicable; *provided* that, Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities.

### 2.2.    *Fee Claims.*

(a)    All entities seeking an award by the Bankruptcy Court of Fee Claims (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date, and (ii) shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) allowing any such postpetition, estate-retained professional fee and expense claim (A) upon the later of the Effective Date and the date upon which the order relating to any such Allowed Fee Claim is entered or (B) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors or the Plan Administrator, as applicable.  The Plan Administrator is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

(b)    On or about the Effective Date, holders of Fee Claims shall provide a reasonable estimate of unpaid Fee Claims incurred in rendering services before the Effective Date to the Debtors and the Debtors or the Plan Administrator, as applicable, shall separately escrow such estimated amounts in the Fee Escrow Account (less any amounts already reserved for such professional in the Fee Escrow Account) for the benefit of the holders of the Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties.  If a holder of a Fee Claim does not provide an estimate, the Debtors or the Plan Administrator, as applicable, may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Fee Claim.  When all such Allowed Fee Claims have been paid in full, any remaining amount in such escrow shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the Wind Down Estates and the Plan Administrator without any further action or order of the Bankruptcy Court.

(c)    Funds held in the Fee Escrow Account shall not be considered property of the Debtors' estates or property of the Wind Down Estate, but shall revert to the Wind Down Estate only after all Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full.  The Fee Escrow Account shall be held in trust for estate-retained professionals and for no other parties until all Fee Claims Allowed by the Bankruptcy Court have been paid in full.

### 2.3.    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Tax Claim, at the sole option of the Debtors or the Plan Administrator, as applicable, (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (ii) the first Business Day after the date that is forty-five (45) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (iii) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; or (b) equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate under section 511 of the Bankruptcy Code, over a period not exceeding five (5) years from and after the Commencement Date; *provided*, that the Debtors reserve the

right to prepay all or a portion of any such amounts at any time under this option without penalty or premium.

## SECTION 3.   CLASSIFICATION OF CLAIMS AND INTERESTS.

### 3.1.   *Classification in General.*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided*, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

### 3.2.   *Grouping of Debtors for Convenience Only.*

This Plan groups the Debtors together solely for the purpose of describing treatment under this Plan, confirmation of this Plan, and Plan Distributions to be made in respect of Claims against and Interests in the Debtors under this Plan.  Each Class of Claims will be deemed to contain sub-classes for each of the Debtors, to the extent applicable for voting and distribution purposes.  To the extent there are no Allowed Claims or Interests with respect to a particular Debtor, such Class is deemed to be omitted with respect to such Debtor.  Except as otherwise provided herein, to the extent a holder has a Claim that may be asserted against more than one Debtor, the vote of such holder in connection with such Claims shall be counted as a vote of such Claim against each Debtor against which such holder has a Claim.  Except as provided in Section 5 of this Plan, such groupings shall not affect each Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger of consolidation of any legal entities, or cause the transfer of any assets.

### 3.3.   *Summary of Classification.*

The following table designates the Classes of Claims against, and Interests in, each of the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, DIP Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3.  All of the potential Classes for the Debtors are set forth herein.  Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Section 3.5.

RLF1 28018297V.1

| Class | Designation | Treatment | Entitled to Vote |
|:---:|:---:|:---:|:---:|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| 3 | Reserve Bank Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | No (Deemed to reject) |
| 6 | Intercompany Interests | Unimpaired / Impaired | No (Deemed to accept/reject) |
| 7 | Subordinated Securities Claims | Impaired | No (Deemed to reject) |
| 8 | KServicing Equity Interests | Impaired | No (Deemed to reject) |

### 3.4. *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Plan Administrator, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### 3.5. *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

### 3.6. *Voting Classes; Presumptions*

(a)    **Acceptance by Certain Impaired Classes.** Only holders of Allowed Claims in Classes 3 and 4 are entitled to vote to accept or reject this Plan. An Impaired Class of Claims shall have accepted this Plan if (i) the holders of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (ii) the holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept this Plan. Holders of Claims in Classes 3 and 4 shall receive Ballots containing detailed voting instructions.

(b)    **Presumed Acceptance by Unimpaired Classes.** Holders of Claims and Interests in Classes 1, 2, and 6 (if so treated) are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Accordingly, such holders are not entitled to vote to accept or reject this Plan.

(c)    **Deemed Rejection by Certain Impaired Classes.** Holders of Claims and Interests in Classes 5, 6 (if so treated), 7, and 8 are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, such holders are not entitled to vote to accept or reject this Plan.

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court at the Confirmation Hearing to deem the Plan accepted by the holders of such Claims or Interests in such Class.

14

    **3.7.**  ***Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code***

    The Debtors shall seek Confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify this Plan in accordance with <u>Section 12.4</u> hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

    **3.8.**  ***No Waiver.***

    Nothing contained in this Plan shall be construed to waive a Debtor's, the Plan Administrator's, or other Person's right to object on any basis to any Claim.

**SECTION 4.**  **TREATMENT OF CLAIMS AND INTERESTS.**

    **4.1.**  ***Priority Non-Tax Claims (Class 1).***

    (a)  *Classification*:  Class 1 consists of Priority Non-Tax Claims against the Debtors.

    (b)  *Treatment*:  On or as soon as practicable after the Effective Date, except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, each holder thereof shall be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

    (c)  *Voting*:  Class 1 is Unimpaired, and holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

    **4.2.**  ***Other Secured Claims (Class 2).***

    (a)  *Classification*:  Class 2 consists of the Other Secured Claims against the Debtors.  To the extent that Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2.

    (b)  *Treatment*:

      (i)  Except to the extent that a holder of an Allowed Other Secured Claim agrees to different treatment, on the later of the Effective Date and the date that is thirty (30) days after the date such Other Secured Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Other Secured Claim will receive, on account of such Allowed Claim, at the sole option of the Debtors or the Plan Administrator, as applicable:  (i) Cash in an amount equal to the Allowed amount of

15

such Claim; (ii) such other treatment sufficient to render such holder's Allowed Other Secured Claim Unimpaired; or (iii) return of the applicable collateral in satisfaction of the Allowed amount of such Other Secured Claim.

(ii)    Except as otherwise specifically provided herein, upon the payment in full in Cash of an Other Secured Claim, any Lien securing an Other Secured Claim that is paid in full, in Cash, shall be deemed released, and the holder of such Other Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors (including any Cash collateral) held by such holder and to take such actions as may be requested by the Plan Administrator, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Plan Administrator.

(c)    *Voting*:  Class 2 is Unimpaired, and holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Secured Claims.

### 4.3.    *Reserve Bank Claims (Class 3)*

(a)    *Classification*:  Class 3 consists of the Reserve Bank Claims.

(b)    *Allowance*:

(i)    The Reserve Bank Secured Claims are Allowed pursuant to section 506(a) of the Bankruptcy Code against the Debtors in the aggregate principal amount of $[●] plus all accrued but unpaid interest, costs, fees, and expenses then outstanding under the PPPLF Documents.

(ii)    The Reserve Bank Priority Claims are Allowed pursuant to section 507(a)(2) of the Bankruptcy Code against the Debtors in the aggregate amount of $[●].

(c)    *Treatment*:  Except to the extent that a holder of an Allowed Reserve Bank Claim against the Debtors agrees to a less favorable treatment of such Claim, each holder of an Allowed Reserve Bank Claim in full and final satisfaction, compromise, settlement, release, and discharge in exchange for:

(i)    Reserved Bank Secured Claims will receive:

(1)    <u>if the Funded Transaction occurs</u> and the Reserve Bank elects:  (x) <u>Post-Effective Date PPPLF Servicing</u>, cash proceeds of the PPPLF Collateral or (y) <u>PPPLF Transfer</u>, the return of the PPPLF Collateral; or

16

      (2)      <u>if the Unfunded Transaction occurs</u> (x) return of the PPPLF Collateral.

    (ii)    Reserve Bank Priority Claims will receive:

      (1)      <u>if the Funded Transaction occurs</u>: GUC Pool Class A Claims, or

      (2)      <u>if the Unfunded Transaction occurs</u> GUC Trust Beneficial A Interests.

(d)    *Voting*: Class 3 is Impaired, and the holders of Reserve Bank Claims are entitled to vote to accept or reject the Plan.

### 4.4. *General Unsecured Claims (Class 4).*

(a)    *Classification*: Class 4 consists of General Unsecured Claims against the Debtors.

(b)    *Treatment*: Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, each holder of an Allowed General Unsecured Claim will receive:

    (i)    <u>if the Funded Transaction occurs</u>, its *pro rata* share of the GUC Pool Class B Claims; or

    (ii)    <u>if the Unfunded Transaction occurs</u>, its *pro rata* share of the GUC Trust Beneficial B Interests.

(c)    *Voting*: Class 4 is Impaired, and the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

### 4.5. *Intercompany Claims (Class 5).*

(a)    *Classification*: Class 5 consists of Intercompany Claims against the Debtors.

(b)    *Treatment*: On or after the Effective Date, all Intercompany Claims will either be reinstated or cancelled and released at the option of the Debtors; *provided* that no such distributions shall be made on account of such Intercompany Claims on the Effective Date.

(c)    *Voting*: Class 5 is Impaired, and the holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Intercompany Claims are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such Intercompany Claims.

### 4.6. *Intercompany Interests (Class 6).*

(a)    *Classification*: Class 6 consists of Intercompany Interests in the Debtors.

17

(b) *Treatment*:  On the Effective Date, Intercompany Interests shall receive no recovery or distribution and be reinstated solely to maintain the Debtors' corporate structure, as necessary.

(c) *Voting*:  Allowed Intercompany Interests are either Unimpaired, in which case the holders of such Intercompany Interests conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, in which case the holders of such Intercompany Interests conclusively are presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Allowed Intercompany Interests are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such Allowed Intercompany Interests.

4.7. *Subordinated Securities Claims (Class 7).*

(a) *Classification*:  Class 7 consists of Subordinated Securities Claims against the Debtors.

(b) *Treatment*:  Holders of Subordinated Securities Claims shall not receive or retain any property under the Plan on account of such Subordinated Securities Claims.  On the Effective Date, all Subordinated Securities Claims shall be deemed cancelled without further action by or order of the Bankruptcy Court, and shall be of no further force and effect, whether surrendered for cancellation or otherwise.

(c) *Voting*:  Class 7 is Impaired, and the holders of Subordinated Securities Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Subordinated Securities Claims are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such Subordinated Securities Claims.

4.8. *KServicing Equity Interests (Class 8).*

(a) *Classification*: Class 8 consists of KServicing Equity Interests.

(b) *Treatment*:  Except to the extent that a holder of KServicing Equity Interests agrees to less favorable treatment, in full and final satisfaction and release of, and in exchange for KServicing Equity Interests, each such holder thereof shall receive the following treatment: (i) on the Effective Date, all KServicing Equity Interests shall be cancelled and one share of KServicing common stock (the "**Single Share**") shall be issued to the Plan Administrator to hold in trust as custodian for the benefit of the former holders of KServicing Equity Interests consistent with their former relative priority and economic entitlements and the Single Share shall be recorded on the books and records maintained by the Plan Administrator; (ii) each former holder of KServicing Stock (through their interest in the Single Share, as applicable) shall neither receive nor retain any property of the Estate or direct interest in property of the Estate on account of such KServicing Stock; *provided*, that in the event that all Allowed Claims have

18

been satisfied in full in accordance with the Bankruptcy Code and the Plan, each former holder of a KServicing Existing Equity Interests may receive its share of any remaining assets of KServicing consistent with such holder's rights of payment existing immediately prior to the Commencement Date. Unless otherwise determined by the Plan Administrator, on the date that KServicing's Chapter 11 Case is closed in accordance with <u>Section 5.14</u> of the Plan, the Single Share issued on the Effective Date shall be deemed cancelled and of no further force and effect; *provided* that (i) such cancellation does not adversely impact the Debtors' Estates; and (ii) the continuing rights of former holders of KServicing Stock (including through their interest in Single Share or otherwise) shall be nontransferable except (A) by operation of law or (B) for administrative transfers where the ultimate beneficiary has not changed, subject to the Plan Administrator's consent.

(c)     *Voting*: Class 8 is Impaired, and the holders of KServicing Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of KServicing Equity Interests are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such KServicing Equity Interests.

## SECTION 5.    MEANS FOR IMPLEMENTATION.

### 5.1.    *No Substantive Consolidation*

This Plan is being proposed as a joint chapter 11 plan of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan for each Debtor. This Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims of Interests set forth in this Plan.

### 5.2.    *Sources of Consideration for Plan Distribution.*

The Debtors and the Plan Administrator, as applicable, shall fund Distributions under this Plan with the Net Cash Proceeds. In the event of a Funded Transaction, the Debtors and the Plan Administrator shall fund Distributions under this Plan also with proceeds from Estate Causes of Action. In the event of an Unfunded Transaction, the GUC Trust shall fund Distributions to holders of Allowed General Unsecured Claims from proceeds of the GUC Trust Assets.

### 5.3.    *Toggle Implementation*

(a)     In the event where (y) the Reserve Bank remits to the Debtors on a regular basis, 100% of the Remittance Amounts for the duration of the Chapter 11 Cases and Wind Down, and (z) the CUBI Receivable is recovered (with no more than a [●]% discount to the full CUBI Receivable) (the "**Funded Transaction**"), then:

(i)     KServicing shall continue to service all PPPLF Collateral loans, all CRB PPP Loans, and all CUBI PPP Loans in the ordinary course and in accordance with the PPPLF documents, CRB Agreements and CUBI Agreements, respectively, until the earlier of (1) [●], and (2) the PPPLF Servicer Transfer Date for the PPPLF Collateral loans, the CRB Servicer Transfer Date for the CRB PPP Loans, and the CUBI Servicer Transfer Date for the CUBI PPP Loans; and

19

(ii)      By [●], 2022:

(1)      The Reserve Bank shall elect in writing to the Debtors to either (w) fund the Wind Down Estate with $[●] (the "**Reserve Bank Servicing Costs**"), which amount shall be allocated in the Wind Down Budget to allow for the continued servicing of PPPLF Collateral loans through a date to be mutually agreed ("**Post-Effective Date PPPLF Servicing**"), after which the Reserve Bank shall have no further obligation to fund the Wind Down Estate; *provided*, that, the foregoing shall not affect the Reserve Bank remitting to the Debtors on a regular basis, 100% of the Remittance Amounts,  or (x) take all steps necessary to transfer all of the Debtors' servicing obligations with respect to the PPPLF Collateral loans to a third-party loan servicer (the "**PPPLF Transfer**"), to be selected with the Reserve Bank's consent and direction by a date to be mutually agreed (the completion date of such transfer, the "**PPPLF Servicer Transfer Date**"); *provided* that, for the avoidance of doubt, any fees associated with any transfer of servicing obligations shall be borne by the Reserve Bank; and

(2)      CRB shall elect in writing to the Debtors to either (w) fund the Wind Down Estate with $[●] (the "**CRB Servicing Costs**"), which amount shall be allocated in the Wind Down Budget to allow for the continued servicing of CRB PPP Loans through a date to be mutually agreed, or (x) take all steps necessary to transfer all of the Debtors' servicing obligations with respect to the CRB PPP Loans to a third-party loan servicer to be selected with CRB's consent and direction by a date to be mutually agreed; *provided* that, for the avoidance of doubt, any fees associated with any transfer of servicing obligations shall be borne by CRB (the completion date of such transfer, the "**CRB Servicer Transfer Date**").

(3)      CUBI shall elect in writing to the Debtors to either (w) fund the Wind Down Estate with $[●] (the "**CUBI Servicing Costs**"), which amount shall be allocated in the Wind Down Budget to allow for the continued servicing of CUBI PPP Loans through a date to be mutually agreed, or (x) take all steps necessary to transfer all of the Debtors' servicing obligations with respect to the CUBI PPP Loans to a third-party loan servicer to be selected with CUBI's consent and direction by a date to be mutually agreed; *provided* that, for the avoidance of doubt, any fees associated with any transfer of servicing obligations shall be borne by CUBI (the completion date of such transfer, the "**CUBI Servicer Transfer Date**").

(iii)      On the Effective Date, the GUC Pool shall be funded in the aggregate amount of no less than the GUC Pool Amount; for the avoidance of doubt, the Plan Administrator shall be responsible for making Distributions to holders of Allowed General Unsecured Claims.

(iv)      On the Effective Date, the Wind Down Estate shall be funded in accordance with the Wind Down  Budget for (w) the Wind Down process and (x) any continued servicing of PPPLF Collateral loans, CRB PPP Loans, or CUBI PPP Loans, as applicable, and be funded with the Wind Down Amount; *provided* that any amounts on account of continued servicing of PPPLF Collateral loans, CRB PPP Loans, or CUBI PPP Loans, as applicable, shall be funded by the payment of applicable Post-Effective Date Servicing Costs.

(v)      On the Effective Date, any remaining assets and any Estate Causes of Action of the Debtors' Estates shall transfer to the Wind Down Estate automatically and without further action of the Bankruptcy Court.

(vi)      At the conclusion of the Wind Down: (w) any residual amounts remaining in the Wind Down Budget (other than amounts on account of Post-Effective Date Servicing Costs) shall be transferred to the GUC Pool, and (x) any residual amounts remaining on account of Post-

Effective Date Servicing Costs, shall be distributed *pro rata* to the Reserve Bank, CRB, and CUBI, as applicable and proportionate to each party's Post-Effective Date Servicing Costs.

(b)    In the event where (i) the Reserve Bank does not remit to the Debtors on a regular basis, 100% of the Remittance Amounts for the duration of the Chapter 11 Cases, and (ii) the CUBI Receivable is (a) not recovered or (b) recovered but with more than a [●]% discount to the full CUBI Receivable (the "**Unfunded Transaction**"), then:

(i)    No later than [●] days from the Petition Date, the Debtors shall file a motion to reject the (a) CUBI Agreements, and (b) CRB Agreements; *provided*, that, the Debtors shall make commercially reasonable efforts to assist CUBI (with respect to the CUBI PPP Loans) and CRB (with respect to the CRB PPP Loans) with the transfer of all of the Debtors' servicing obligations to a third-party loan servicer prior to the effective date or rejection of the CUBI Agreements or the CRB Agreements, as applicable; *provided* further that, for the avoidance of doubt, any fees associated with any transfer of servicing obligations shall be borne by CUBI or CRB, as applicable.

(ii)    The Debtors shall make commercially reasonable efforts to assist the Reserve Bank with the transfer of all of the Debtors' servicing obligations with respect to the PPPLF Loans to a third-party loan servicer prior to the Effective Date; *provided* further that, for avoidance of doubt, any fees associated with any transfer of servicing obligations shall be borne by the Reserve Bank, as applicable.

(iii)    On the Effective Date, the Wind Down Estate shall have Wind Down Budget for the Wind Down process. At the conclusion of the Wind Down, any residual amounts remaining in the Wind Down Budget shall be transferred to the GUC Trust.

(iv)    On the Effective Date, any remaining assets (other than amounts on account of the Wind Down Budget) and any Estate Causes of Action of the Debtors' Estates shall transfer to the GUC Trust automatically and without further action of the Bankruptcy Court.  The GUC Trustee shall be responsible for making Distributions to holders of Allowed General Unsecured Claims.

### 5.4.    *Plan Administrator.*

(a)    *Appointment*.  The Plan Administrator's retention shall commence on the Effective Date and shall continue until: (i) the Bankruptcy Court enters an order closing the Chapter 11 Cases; (ii) the Bankruptcy Court enters an order removing the Plan Administrator for cause (as defined below); or (iii) the Plan Administrator voluntarily resigns, upon notice filed with the Bankruptcy Court, and a successor Plan Administrator is appointed in accordance with the Plan.

(b)    *Authority*.  Subject to Section 5.4(c) of this Plan, the Plan Administrator shall have the authority and right on behalf of each of the Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:

(i)    subject to Section 7 of the Plan, except to the extent Claims have been previously Allowed or in the event of the Unfunded Transaction solely with respect to General Unsecured Claims, control and effectuate the Claims reconciliation process in accordance with the terms of this Plan, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors;

RLF1 28018297V.1

(ii)     make Distributions to holders of Allowed Claims (other than General Unsecured Claims in the event of an Unfunded Transaction)  in accordance with this Plan;

(iii)     exercise its reasonable business judgment to direct and control the Wind Down under the Plan and in accordance with applicable law as necessary to maximize Distributions to holders of Allowed Claims;

(iv)     prepare, file, and prosecute any necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the Plan Administrator as described herein;

(v)     in the event of a Funded Transaction, other than any Causes of Action released by the Debtors pursuant to the Plan or otherwise, prosecute all Causes of Action on behalf of the Debtors, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Debtors and their Estates;

(vi)     retain professionals to assist in performing its duties under the Plan;

(vii)     maintain the books and records and accounts of the Debtors;

(viii)     incur and pay reasonable and necessary expenses in connection with the performance of duties under this Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

(ix)     administer each Debtor's tax obligations, including (i) filing tax returns and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Commencement Date through the liquidation of such Debtor as determined under applicable tax laws, and (iii) representing the interest and account of each Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(x)     prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors that are required hereunder, by any Governmental Unit or applicable law;

(xi)     pay statutory fees in accordance with <u>Section 12.1</u> of the Plan;

(xii)     perform other duties and functions that are consistent with the implementation of the Plan; and

(xiii)     close the Chapter 11 Cases.

(c)     *Boards of Directors and Officers*.

(i)     The officers and directors of the Debtors existing prior to the Effective Date shall be relieved of any and all duties with the respect to the Debtors as of the Effective Date.

(ii)     Upon the Effective Date, the New Board shall consist of one or more directors selected by the Debtors, which shall be announced by notice filed with the Bankruptcy Court prior to the Confirmation Hearing.

(iii)     Upon the Effective Date, the new governance structure of KServicing will be set forth in the Amended Organizational Documents.

(iv)     The New Board shall, among other things, oversee and direct the Plan Administrator and the administration of the Wind Down Estates in accordance with the Plan.  On the Effective Date, or as soon as is reasonably practicable thereafter, the New Board shall establish, in consultation with the Plan Administrator, such procedures and protocols as it deems necessary to carry out its duties.

(d)     *Wind Down*.  After the Effective Date, pursuant to the Plan, the Plan Administrator shall effectuate the Wind Down according to the Wind Down Budget without any further approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. The Wind Down (as determined for federal income tax purposes) shall occur in an expeditious but orderly manner after the Effective Date.

(e)     *Indemnification*.  Each of the Wind Down Estates shall indemnify and hold harmless the New Board and the Plan Administrator solely in their capacities as such for any losses incurred in such capacity, except to the extent such losses were the result of the Plan Administrator's or the New Board's bad faith, gross negligence, willful misconduct or criminal conduct.

(f)     *Dissolution*.  After the Effective Date, the Plan Administrator shall, subject to applicable non-bankruptcy law and consistent with the implementation of this Plan, merge, dissolve, liquidate, or take such other similar action with respect to each Debtor (including the cancellation of all Interests in a Wind Down Estate) and complete the winding up of such Wind Down Estate as expeditiously as practicable without the necessity for any other or further actions to be taken by or on behalf of such Wind Down Estate or its shareholders or members, as applicable, or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate Governmental Unit; *provided*, *however*, that the foregoing does not limit the Plan Administrator's ability to otherwise abandon an Interest in a Wind Down Estate.  The Plan Administrator may, to the extent required by applicable non-bankruptcy law, maintain a Wind Down Estate as a corporate entity in good standing until such time as such Wind Down Estate is dissolved or merged out of existence in accordance with the Plan.

### 5.5.     *GUC Trust.*

(a)     In the event of an Unfunded Transaction, on the Effective Date the GUC Trust shall be established. In accordance with Section 1141 of the Bankruptcy Code, all of the GUC Trust Assets, as well as the rights and powers of the Debtors' Estates applicable to the GUC Trust Assets, shall vest in the GUC Trust, for the benefit of the GUC Trust Beneficiaries.  The GUC Trustee shall determine whether to enforce, settle, release, or compromise the GUC Trust Causes of Action (or decline to do any of the foregoing). The Plan Administrator shall not be subject to any claims or counterclaims with respect to the GUC Trust Causes of Action, or otherwise. In the event of any conflict between the terms of the Plan and the terms of the GUC Trust Agreement, the terms of the Plan shall govern.

(b)     The GUC Trustee shall be the exclusive administrator of the GUC Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as a representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of carrying out the GUC Trustee's duties under the GUC Trust Agreement. The GUC Trust

shall be governed by the GUC Trust Agreement and administered by the GUC Trustee. The powers, rights, and responsibilities of the GUC Trustee shall be specified in the GUC Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this Section 5.5. The GUC Trustee shall hold and distribute the GUC Trust Assets in accordance with the provisions of the Plan and the GUC Trust Agreement. Other rights and duties of the GUC Trustee shall be as set forth in the GUC Trust Agreement. After the Effective Date, the Debtors and the Plan Administrator shall have no interest in the GUC Trust Assets except as set forth in the GUC Trust Agreement.

(c)    The GUC Trustee and the GUC Trust shall be discharged or dissolved, as the case may be, at such time as (i) the GUC Trustee determines that the pursuit of additional GUC Trust Causes of Action is not likely to yield sufficient additional proceeds to justify further pursuit of such claims and (ii) all Plan Distributions required to be made by the GUC Trustee under the Plan have been made. Upon dissolution of the GUC Trust, any remaining GUC Trust Assets shall be distributed to holders of Allowed General Unsecured Claims in accordance with the Plan and the GUC Trust Agreement, as appropriate.

(d)    *U.S. Federal Income Tax Treatment of GUC Trust*.  In furtherance of Section 5.3(b) of the Plan, (i) the GUC Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code to the holders of Allowed Reserve Bank Priority Claims and Allowed General Unsecured Claims (whether Allowed on or after the Effective Date), consistent with the terms of the Plan; (ii) the holders of Reserve Bank Priority Claims and General Unsecured Claims shall be treated as the beneficiaries and grantors of the GUC Trust; (iii) the sole purpose of the GUC Trust shall be the liquidation and distribution of the GUC Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), including the resolution of General Unsecured Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business; (iv) all parties (including the Debtors and the Estates, holders of General Unsecured Claims, the GUC Trustee, and holders of Reserve Bank Priority Claims) shall report consistently with such treatment (including the deemed receipt of the GUC Trust Assets, subject to applicable liabilities and obligations, by the holders of General Unsecured Claims and Reserve Bank Priority Claims, followed by the deemed transfer of such GUC Trust Assets to the GUC Trust); (v) all parties shall report consistently for federal income tax purposes, and otherwise, with the valuation of the GUC Trust Assets transferred to the GUC Trust as determined by the GUC Trustee (or its designee); (vi) the GUC Trustee shall be responsible for filing returns for the GUC Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a); (vii) the GUC Trustee shall annually send to each holder of an interest in the GUC Trust a separate statement regarding the receipts and expenditures of the trust as relevant for U.S. federal income tax purposes; (viii) all items of income, deductions, and credit loss of the GUC Trust shall be allocated for federal income tax purposes to the holders of General Unsecured Claims and Reserve Bank Priority Claims based on their respective interests in the GUC Trust, including the holders of General Unsecured Claims holding Disputed Claims, in such manner as the GUC Trustee deems reasonable and appropriate; and (ix) subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the GUC Trustee of a private letter ruling if the GUC Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the GUC Trustee), the GUC Trustee may timely elect to (x) treat any portion of the GUC Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections) and (y) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  If a "disputed ownership fund" election is made for all or any portion of the GUC Trust, all impacted parties (including the Debtors and the Estates, and, to the extent applicable, holders General Unsecured Claims, and the GUC Trustee), and solely with respect to the impacted assets, shall report for United States federal, state, and local income tax purposes consistently with such election.

24

(e)      *Expedited Determination*.  The GUC Trustee may request an expedited determination of taxes of the GUC Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the GUC Trust for all taxable periods through the dissolution of the GUC Trust.

(f)      Notwithstanding anything to the contrary herein, in no event shall holders of Allowed General Unsecured Claims recover more than the full amount of their Allowed General Unsecured Claims from the GUC Trust.

### 5.6.    *Corporate Action.*

Upon the Effective Date, by virtue of entry of the Confirmation Order, all actions contemplated by this Plan (including any action to be undertaken by the Plan Administrator) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person. All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect as of the Effective Date, without any requirement of further action by the Debtors or the Estates.

### 5.7.    *Withholding and Reporting Requirements.*

(a)      *Withholding Rights*.  In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.  Additionally, in the case of a non-Cash distribution that is subject to withholding, the distributing party has the right, but not the obligation, to withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property.

(b)      *Forms*.  Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Plan Administrator, Wind Down Estates, or such other Person designated by the Plan Administrator or Wind Down Estates (which entity shall subsequently deliver to the Plan Administrator any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt from information reporting under the Tax Code and provides to the Plan Administrator notice and evidence of such exemption.  If such request is made by the Plan Administrator, Wind Down Estates, or such other Person designated by the Plan Administrator or Wind Down Estates and the holder fails to comply within ninety (90) days after the request is made, the amount of such distribution shall irrevocably revert to the applicable Wind Down Estate and any Claim in respect of such distribution shall be forever barred from assertion against any Debtor, the applicable Wind Down Estate and their  respective property.  Exemption From Certain Transfer Taxes.

To the maximum extent provided by section 1146(a) of the Bankruptcy Code: (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (ii) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 5.8. *Effectuating Documents; Further Transactions.*

(a)    On or as soon as practicable after the Effective Date, the Plan Administrator shall take such actions as may be or become necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, financing, conversion, disposition, transfer, dissolution, transition services, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may determine; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (iv) the issuance of securities, all of which shall be authorized and approved in all respects, in each case, without further action being required under applicable law, regulation, order, or rule; (v) the execution, delivery, or filing of contracts, instruments, releases, and other agreements to effectuate and implement the Plan without the need for any approvals, authorizations, actions, or consents; and (vi) all other actions that the applicable Entities determine to be necessary or appropriate.

(b)    Each officer, manager, or member of the board of directors of the Debtors is (and each officer, manager, or member of the board of directors of the Plan Administrator, if applicable, shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of, and on behalf of, the Wind Down Estates, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including, without limitation, any action by the stockholders or directors or managers of the Debtors, or the Wind Down Estates) except for those expressly required pursuant to the Plan.

(c)    All matters provided for herein involving the corporate structure of the Debtors or the Wind Down Estates, to the extent applicable, or any corporate or related action required by the Debtors or the Wind Down Estates in connection herewith shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders, members, or directors or managers of the Debtors and with like effect as though such action had been taken unanimously by the stockholders, members, directors, managers, or officers, as applicable, of the Debtors or the Wind Down Estates.

26

### 5.9.    *Preservation of Rights of Action.*

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, transferred or settled pursuant to this Plan, the Confirmation Order, or by another Bankruptcy Court order, the Debtors reserve any and all Causes of Action.  On and after the Effective Date, in a Funded Transaction, the Plan Administrator and in an Unfunded Transaction, the GUC Trustee, may pursue such Causes of Action in its sole discretion.  No Entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Plan Administrator or GUC Trustee, as applicable will not pursue any and all available Causes of Action against them.  No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or the Effective Date.  Prior to the Effective Date, the Debtors, and on and after the Effective Date, in a Funded Transaction, the Plan Administrator and in an Unfunded Transaction, the GUC Trustee, shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion, subject to this Plan, to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing, as the Plan Administrator or GUC Trustee, as applicable may determine is in the best interest of the Estates, without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of this Plan itself shall be resolved only by Confirmation of this Plan itself.

### 5.10.    *Certificate of Incorporation and By-Laws.*

As of the Effective Date, the certificate of incorporation and by-laws, or other organizational documents, as applicable, of the Debtors shall be amended to the extent necessary to carry out the provisions of this Plan.  Such amended organizational documents (if any) shall be filed with the Bankruptcy Court in advance of the Effective Date.

### 5.11.    *Cancellation of Existing Securities and Agreements*

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, all notes, instruments, other securities, and other evidence of debt issued, and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged.

### 5.12.    *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan, take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right for the Plan Administrator to seek to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

5.13.    *Nonconsensual Confirmation.*

The Debtors intend to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code as to any Classes that reject, or are deemed to reject, the Plan.

5.14.    *Closing of Chapter 11 Cases.*

After an Estate has been fully administered, the applicable Wind Down Estate or Plan Administrator shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case(s) in accordance with the Bankruptcy Code and Bankruptcy Rules.

5.15.    *Notice of Effective Date.*

As soon as practicable, but not later than three (3) Business Days following the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

5.16.    *Corporate Form*

On the Effective Date, each of the Debtors shall maintain its current corporate form, which may be modified or changed at any time after the Effective Date by the Plan Administrator in accordance with the terms of this Plan and applicable law.

5.17.    *Separability.*

Notwithstanding the combination of the separate plans of liquidation for the Debtors set forth in the Plan for purposes of economy and efficiency, the Plan constitutes a separate chapter 11 plan for each Debtor.  Accordingly, if the Bankruptcy Court does not confirm the Plan with respect to one or more Debtors, it may still, subject to the consent of the applicable Debtors, confirm the Plan with respect to any other Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

## SECTION 6.    DISTRIBUTIONS.

6.1.    *Distributions Generally.*

Except as otherwise provided in the Plan, one or more Disbursing Agents shall make all distributions under the Plan to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.

6.2.    *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed for purposes of determining whether a holder of such a Claim or Interest is a record holder entitled to distributions under the Plan, and there shall be no further changes in the record holders or the permitted designees of any such Claims or Interests.  The Debtors, the Plan Administrator, or the GUC Trustee, as applicable, shall have no obligation to recognize any transfer or designation of such Claims or Interests occurring after the close of business on the Distribution Record Date.  In addition, with respect to payment of any Cure Amounts or Assumption Disputes, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease as of the close of business on the Distribution Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

28

### 6.3.    *Date of Distributions.*

(a)    Except as otherwise provided in the Plan, any distributions and deliveries to be made under the Plan shall be made on or about the Effective Date or as otherwise determined in accordance with the Plan, including, without limitation, the treatment provisions of Section 4 of the Plan; *provided*, that the Plan Administrator or the GUC Trustee, as applicable, shall from time to time determine subsequent distribution dates to the extent they determine them to be appropriate.

(b)    In the event of the Funded Transaction (i) prior to any distributions to the GUC Pool, the Plan Administrator, shall reserve an amount sufficient to pay holders of Disputed Administrative Expense Claims, Disputed Secured Claims, Disputed Priority Non-Tax Claims, and Disputed Priority Tax Claims, and (ii) prior to any distributions by the Plan Administrator to the holders of General Unsecured Claims, the Plan Administrator shall reserve an amount sufficient to pay holders of any Disputed General Unsecured Claims, in each case, the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims.  After the resolution of a Disputed Administrative Expense Claim, Disputed Secured Claim, Disputed Priority Non-Tax Claim, and Disputed Priority Tax Claims, the Plan Administrator shall treat any amounts that were reserved on account of such Disputed Claim that is Disallowed or does not become an Allowed Claim as Net Cash Proceeds.

(c)    In the event of the Unfunded Transaction, Section 6.3(b) above shall not apply to Plan Distributions to holders of Allowed General Unsecured Claims, which will be governed by Section 5.5(a) and the GUC Trust Agreement.

### 6.4.    *Disbursing Agent.*

Other than as contemplated in Section 6.2 of the Plan, all distributions under this Plan shall be made by the Disbursing Agent on and after the Effective Date as provided herein.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  The Plan Administrator shall use all commercially reasonable efforts to provide the Disbursing Agent with the amounts of Claims and the identities and addresses of holders of Claims, in each case, as set forth in the books and records of the Debtors or the Wind Down Estates, as applicable.  The Plan Administrator shall cooperate in good faith with the applicable Disbursing Agent to comply with the reporting and withholding requirements outlined in Section 5.7 of the Plan.

### 6.5.    *Rights and Powers of Disbursing Agent.*

(a)    From and after the Effective Date, the Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including, without limitation, holders of Claims against, and Interests in, the Debtors and other parties in interest, from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or ultra vires acts of such Disbursing Agent.  No holder of a Claim or Interest, or other party in interest, shall have or pursue any claim or Cause of Action against the Disbursing Agent, solely in its capacity as Disbursing Agent, for making distributions in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or ultra vires acts of such Disbursing Agent.

(b)    The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder;

(ii) make all distributions contemplated hereby; and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or GUC Trust Agreement, as applicable, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 6.6.   *Expenses of Disbursing Agent.*

Except as otherwise ordered by the Bankruptcy Court, any reasonable and documented fees and expenses incurred by the Disbursing Agent acting in such capacity (including reasonable documented attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash.  This Section 6.6 shall not apply to post-Effective Date expenses of the GUC Trustee, which shall be governed by Section 5.5(a) hereof and the GUC Trust Agreement.

### 6.7.   *No Postpetition Interest on Claims.*

Except as otherwise provided in the Plan, the Confirmation Order, or another order of the Bankruptcy Court, or required by the Bankruptcy Code (including postpetition interest in accordance with sections 506(b) and 726(a)(5) of the Bankruptcy Code), interest shall not accrue or be paid on any Claims on or after the Commencement Date; *provided*, that if interest is payable pursuant to the preceding sentence, interest shall accrue at the federal judgment rate pursuant to 28 U.S.C. § 1961 on a non-compounded basis from the date the obligation underlying the Claim becomes due and is not timely paid through the date of payment.

### 6.8.   *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, all distributions to any holder or permitted designee, as applicable, of an Allowed Claim or Interest shall be made to a Disbursing Agent, who shall transmit such distribution to the applicable holders or permitted designees of Allowed Claims or Interests on behalf of the Debtors.  In the event that any distribution to any holder or permitted designee is returned as undeliverable, no further distributions shall be made to such holder or such permitted designee unless and until such Disbursing Agent is notified in writing of such holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest.  Nothing herein shall require the Disbursing Agent to attempt to locate holders or permitted designees, as applicable, of undeliverable distributions and, if located, assist such holders or permitted designees, as applicable, in complying with Section 5.7 of the Plan.

### 6.9.   *Distributions after Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made on the Effective Date.

### 6.10.   *Unclaimed Property.*

Undeliverable distributions or unclaimed distributions shall remain in the possession of the Debtors, Wind Down Estate, or GUC Trust, as applicable, until such time as a distribution becomes deliverable or the holder accepts the distribution, or such distribution reverts back to the Debtors, Wind Down Estate, or GUC Trust, as applicable, and shall not be supplemented with any interest, dividends, or other accruals of any kind.  Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days from the date of distribution.  After such date all

unclaimed property or interest in property shall revert to the Wind Down Estates and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

### 6.11. *Time Bar to Cash Payments.*

Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Wind Down Estates, and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Requests for re-issuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued.

### 6.12. *Manner of Payment under Plan.*

Except as otherwise specifically provided in the Plan, at the option of the Debtors, Plan Administrator, or GUC Trustee, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer, or ACH transfer, or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

### 6.13. *Satisfaction of Claims.*

Except as otherwise specifically provided for in the Plan and to the extent permitted by law, distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction of, and exchange for, such Allowed Claims.

### 6.14. *Minimum Cash Distributions.*

The Disbursing Agent shall not be required to make any distribution of Cash less than One Hundred Dollars ($100) to any holder of an Allowed Claim; *provided*, that if any distribution is not made pursuant to this Section 6.14, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim.

### 6.15. *Setoffs and Recoupments.*

The Debtors, Wind Down Estates, or GUC Trust, as applicable, or such entity's designee (including, without limitation, the Disbursing Agent) may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors, Wind Down Estates, or GUC Trust, as applicable, may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; *provided*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or its successor of any claims, rights, or Causes of Action that a Debtor or its successor or assign may possess against the holder of such Claim.

### 6.16. *Allocation of Distributions between Principal and Interest.*

Except as otherwise required by law (as reasonably determined by the Wind Down Estates or GUC Trustee, as applicable), distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

### 6.17.    *No Distribution in Excess of Amount of Allowed Claim.*

Except as provided in <u>Section 6.7</u> of the Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions in excess of the Allowed amount of such Claim.

## SECTION 7.    PROCEDURES FOR DISPUTED CLAIMS.

### 7.1.    *Objections to Claims.*

(a)    The Debtors or the Plan Administrator on behalf of each of the Wind Down Estates shall exclusively be entitled to object to Claims.  After the Effective Date, the Plan Administrator shall have and retain any and all rights and defenses that the Debtors had with regard to any Claim to which they may object, except with respect to any Claim that is Allowed.  Any objections to proofs of Claim shall be served and filed on or before the later of (a) one hundred eighty (180) days after the Effective Date, and (b) on such later date as ordered by the Bankruptcy Court for cause.

(b)    In the event of the Unfunded Transaction on and after the Effective Date, the GUC Trustee, on behalf of the GUC Trust, shall exclusively be entitled to object to General Unsecured Claims.  After the Effective Date, the GUC Trustee shall have and retain any and all rights and defenses that the Debtors had with regard to any General Unsecured Claim to which they may object, except with respect to any General Unsecured Claim that is Allowed.

### 7.2.    *Resolution of Disputed Claims.*

(a)    The Plan Administrator, on behalf of each of the Wind Down Estates, shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Other Secured Claims without approval of the Bankruptcy Court, other than with respect to Fee Claims. Further, in the event of the Funded Transaction on and after the Effective Date, the Plan Administrator, on  behalf of each of the Wind Down Estates, shall also have the authority to compromise, settle, otherwise resolve, or withdraw any objections to General Unsecured Claims, upon the establishment of the GUC Pool, without approval of the Bankruptcy Court, other than with respect to Fee Claims.

(b)    In the event of the Unfunded Transaction on and after the Effective Date, the GUC Trustee, on behalf of the GUC Trust, shall have authority to compromise, settle, otherwise resolve, or withdraw any objections to General Unsecured Claims, upon the establishment of the GUC Trust, without approval of the Bankruptcy Court.

### 7.3.    *Payments and Distributions with Respect to Disputed Claims.*

Notwithstanding anything herein to the contrary, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### 7.4.    *Distributions after Allowance.*

After such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder thereof shall be entitled to distributions, if any, to which such holder is then entitled as provided in this Plan, without interest, as provided in <u>Section 7.8</u> of the Plan.  Such distributions shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) becomes a Final Order.

32

### 7.5.  *Estimation of Claims.*

In the event of a Funded Transaction, the Debtors or Plan Administrator (on behalf of each of the Wind Down Estates), as applicable, shall determine, resolve and otherwise adjudicate all contingent, unliquidated, and Disputed Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Other Secured Claims, and General Unsecured Claims.  In the event of an Unfunded Transaction, the Debtors or Plan Administrator (on behalf of each of the Wind Down Estates), as applicable, shall still determine, resolve and otherwise adjudicate all such Claims, except for Disputed General Unsecured Claims, which shall be determined, resolved and otherwise adjudicated by the GUC Trustee.  The Debtors, Plan Administrator (on behalf of each of the Wind Down Estates), or GUC Trustee (on behalf of the GUC Trust), as applicable, with respect to such Disputed Claims, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim or Class of Claims pursuant to section 502(c) of the Bankruptcy Code or otherwise, including to establish a reserve for distribution purposes, regardless of whether such, or any, Person had previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court will retain jurisdiction to estimate any Claim or Class of Claims at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim or Class of Claims, the amount so estimated shall constitute either the Allowed amount of such Claim or Class of Claims, or a maximum limitation on such Claim or Class of Claims, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim or Class of Claims, the Debtors, Plan Administrator, or GUC Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claims; *provided*, that such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

### 7.6.  *No Distributions Pending Allowance.*

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

### 7.7.  *Claim Resolution Procedures Cumulative.*

All of the objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

### 7.8.  *Interest.*

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest that accrued thereon from and after the Effective Date, except as provided in <u>Section 6.7</u> of the Plan.

### 7.9.  *Insured Claims.*

If any portion of an Allowed Claim is an Insured Claim, no distributions under the Plan shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies.  To the extent that the Debtors' insurers agree to satisfy a Claim in whole or in part, then immediately upon such satisfaction, the portion of such Claim

so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order or approval of the Court.

## SECTION 8.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 8.1.    *Rejection of Executory Contracts and Unexpired Leases.*

(a)    As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date; (iv) is identified in Section 8.4 of the Plan; or (v) is identified for assumption on the Assumption Schedule included in the Plan Supplement.

(b)    Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that Wind Down Estates, as applicable, have provided adequate assurance of future performance under such assumed executory contracts and unexpired leases.  Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Wind Down Estates, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

### 8.2.    *Determination of Assumption Disputes and Deemed Consent.*

(a)    Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors may otherwise agree.

(b)    The Debtors shall file, as part of the Plan Supplement, the Assumption Schedule.  At least fourteen (14) days before the Confirmation Hearing, the Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Debtors' intention to potentially assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any).  **Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten (10) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.**  Any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease shall be deemed to have assented to assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, or any Wind Down Estate, under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor, or Wind Down Estates, as applicable.  Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease

34

pursuant to the Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms set forth in this Section 8.2(b), shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

(c)     If there is an Assumption Dispute pertaining to assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective; *provided*, that the Debtors or Wind Down Estates, as applicable, may settle any Assumption Dispute without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(d)     To the extent an Assumption Dispute relates solely to the Cure Amount, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of the Assumption Dispute; *provided*, that the Debtors or the Wind Down Estate, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the non-Debtor party to the extent such executory contract or unexpired lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the applicable Reorganized Debtor or the Wind Down Estate, as applicable). The Debtors or Wind Down Estates, as applicable, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(e)     Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease. Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such executory contract or unexpired leases.

### 8.3.    *Rejection Damages Claims.*

**In the event that the rejection of an executory contract or unexpired lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified and treated in Class 4 (General Unsecured Claims). A proof of such Claim must be filed with the Bankruptcy Court by the later of (i) thirty (30) days after the filing and service of the notice of occurrence of the Effective Date; (ii) the general bar date or governmental bar date, as applicable; and (iii) thirty (30) days following service of an Order approving rejection of any executory contract or unexpired lease of the Debtors if such contract or lease is the subject of a pending Assumption Dispute.**

### 8.4.    *Insurance Policies.*

Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice, or claim objection, and any other document related to any of the foregoing, and any other order of the Bankruptcy Court, on the Effective Date: (a) all insurance policies issued or providing coverage to the Debtors shall (subject to the applicable insurer's right to object to such a

35

designation) be assumed in their entirety by the Debtors pursuant to sections 365 and 1123 of the Bankruptcy Code, and, in the event of a Funded Transaction, coverage for defense costs and indemnification under the D&O Policies shall remain available to all individuals within the definition of "Insured" in the D&O Policies, and Wind Down Estates, or Plan Administrator, as applicable, shall remain liable in full for any and all now existing or hereinafter arising obligations, liabilities, terms, provisions and covenants of any of the Debtors under such insurance policies, without the need or requirement for an insurer to file a Proof of Claim, Administrative Expense Claim or objection to any cure amount; (b) nothing shall alter or modify the terms and conditions of and/or any rights, obligations, benefits, claims, rights to payments, or recoveries under the insurance policies without the express written consent of the applicable insurer; and (c) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against an insurer under applicable nonbankruptcy law to proceed with their claims; (ii) insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (I) workers' compensation claims, (II) claims where a claimant asserts a direct claim against any insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (III) all costs in relation to each of the foregoing; (iii) the insurers to cancel any insurance policies, and take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the insurance policies; and (iv) holders of Allowed Claims to pursue insurance recovery to the extent allowed or required by Section 7.9 of this Plan.

### 8.5.    *Intellectual Property Licenses and Agreements.*

Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice or claim objection, and any other document related to any of the foregoing, all intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtors have any rights or obligations in effect as of the date of the Confirmation Order shall be deemed assumed by the Debtors and the Wind Down Estates and shall continue in full force and effect unless any such intellectual property contract, license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion filed by the Debtors in accordance with Section 8.1 of the Plan.  Unless otherwise noted hereunder, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Wind Down Estates, and the Wind Down Estates may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

### 8.6.    *Assignment.*

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned hereunder shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment.  To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect with respect to any assignment pursuant to the Plan.

36

8.7.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

8.8.    *Reservation of Rights.*

(a)    The Debtors may amend the Assumption Schedule and any cure notice until five (5) Business Days immediately prior to the commencement of the Confirmation Hearing in order to (i) add, delete, or reclassify any executory contract or unexpired lease or amend a proposed assumption or assumption and assignment and/or (ii) amend the proposed Cure Amount; *provided*, that if the Confirmation Hearing is adjourned for a period of more than two (2) consecutive calendar days, the Debtors' right to amend such schedules and notices shall be extended to the Business Day immediately prior to the adjourned date of the Confirmation Hearing, with such extension applying in the case of any and all subsequent adjournments of the Confirmation Hearing.  The Debtors shall provide notice of such amendment to any affected counterparty as soon as reasonably practicable.

(b)    Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an executory contract or unexpired lease or that the Debtors, or Wind Down Estates, or their respective affiliates have any liability thereunder.

(c)    Except as otherwise provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors and Wind Down Estates, under any executory or non-executory contract or any unexpired or expired lease.

(d)    Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, Wind Down Estates, as applicable, under any executory or non-executory contract or any unexpired or expired lease.

## SECTION 9.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.

9.1.    *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred, and no stay of the Confirmation Order shall be in effect;

(b)    all agreements necessary to implement the Plan, shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements;

(c)     in the event of a Funded Transaction, the GUC Pool shall have been created and funded by the GUC Pool Amount;

(d)     in the event of an Unfunded Transaction, the GUC Trust shall have been established; and

(e)     notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously upon the completion of the applicable conditions precedent to the Effective Date; *provided*, that to the extent a condition precedent (a "***Prerequisite Condition***") may be required to occur prior to another condition precedent (a "***Subsequent Condition***") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to a Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

### 9.2.    *Waiver of Conditions Precedent.*

(a)     Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.  Each of the conditions precedent in <u>Section 9.1</u> of the Plan other than the conditions set forth in <u>Section 9.1(b)</u> may be waived in writing by the Debtors without leave of or order of the Bankruptcy Court.

(b)     The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

### 9.3.    *Effect of Failure of Conditions to Effective Date.*

Unless otherwise extended by the Debtors, if the Effective Date does not occur on or before the date that is one hundred and eighty (180) days after the date on which the Confirmation Order is entered or if the Confirmation Order is vacated, (a) no distributions under the Plan shall be made, (b) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (c) all the Debtors' obligations with respect to the Claims and the Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors or otherwise.

## SECTION 10.  EFFECT OF CONFIRMATION.

### 10.1.    *Vesting of Assets.*

(a)     On the Effective Date and solely with respect to the Funded Transaction, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all remaining property of the Debtors' Estates and any Estate Causes of Action shall vest in the Wind Down Estates free and clear of all Claims, Liens, encumbrances, charges, and other interests, subject to treatment of Other Secured Claims under the Plan. On and after the Effective Date, the Wind Down Estates may take any action, including, without limitation, the operation of their businesses; the use, acquisition, sale, lease and disposition of property; and the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the

Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided herein.  Without limiting the foregoing, the Wind Down Estates may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court. Notwithstanding the foregoing, vesting of property in which any governmental unit holds an interest, and for which title vests in the Debtors subject to regulatory requirements under a governmental grant or award, including but not limited to, the requirements of 10 C.F.R. 600.321, shall be limited to the extent of the Debtors' interest in such property; and the Wind Down Estates may only take action, including but not limited to the use, acquisition, sale, lease, and disposition of such property, in accordance with applicable non-bankruptcy law.

(b)    On the Effective Date and solely with respect to the Unfunded Transaction, the GUC Trust Assets, as well as the rights and powers of the Debtors' Estates applicable to the GUC Trust Assets, shall vest in the GUC Trust, for the benefit of the GUC Trust Beneficiaries free and clear of all Claims, Liens, encumbrances, charges, and other interests.

### 10.2.    *Term of Injunctions or Stays.*

Unless otherwise provided herein, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### 10.3.    *Injunction.*

(a)    **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan.**

(b)    **Except as expressly provided in the Plan, the Definitive Documents, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are treated by the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Wind Down Estates, the Plan Administrator, the GUC Trust, or the GUC Trustee, as applicable, or the property of any of the Debtors, the Wind Down Estates, the Plan Administrator, the GUC Trust, or the GUC Trustee, as applicable; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Wind Down Estates, the Plan Administrator, the GUC Trust, or the GUC Trustee; or the property of any of the Debtors, the Wind Down Estates, or the GUC Trust, as applicable; (iii) creating, perfecting, or otherwise**

39

enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Wind Down Estates, the GUC Trust, or the property of any of the Debtors, the Wind Down Estates, the Plan Administrator, the GUC Trust, or the GUC Trustee, as applicable; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors, the Wind Down Estates, or the GUC Trust, as applicable, or against property or interests in property of any of the Debtors, the GUC Trust, or the Wind Down Estates, except as contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

(c)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this <u>Section 10.3</u>.

(d)     The injunctions in this <u>Section 10.3</u> shall extend to any successors of the Debtors, the Wind Down Estates, or the GUC Trust, as applicable, and their respective property and interests in property.

(e)     Notwithstanding the foregoing, nothing in this <u>Section 10.3</u> shall enjoin the assertion of a defensive right of recoupment.

### 10.4.    *Binding Effect.*

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such holders were (a) Impaired or Unimpaired under the Plan; (b) deemed to accept or reject the Plan; (c) failed to vote to accept or reject the Plan; (d) voted to reject the Plan; or (e) received any distribution under the Plan.

### 10.5.    *Releases by the Debtors.*

As of the Effective Date, the Debtors, and each of their respective Affiliates, on behalf of themselves and their respective Estates, including any successor to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, including the Wind Down Estate, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims asserted or that may be asserted on behalf of the Debtors and their Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring, the formulation, preparation, dissemination, negotiation of any of the foregoing or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of confirmation of the Plan, the solicitation of votes on the Plan, the pursuit of consummation of the Effective Date, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing, except for acts or omissions of a Released Party arising out of or related to acts or omissions that constitute actual fraud, gross negligence, criminal misconduct or willful misconduct.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not be construed as releasing any post-Effective Date obligations of any

40

party or entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

10.6.     *Releases By Holders of Claims and Interests.*

As of the Effective Date, except (a) for the right to enforce the Plan or (b) as otherwise expressly provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the date upon which the Bankruptcy Court enters the Confirmation Order, on or after the Effective Date, the Released Parties shall be deemed expressly, conclusively, absolutely, unconditionally, irrevocably and forever, released, waived, and discharged by the Releasing Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims asserted or that may be asserted on behalf of the Debtors and their Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring, the formulation, preparation, dissemination, negotiation of any of the foregoing or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of confirmation of the Plan, the solicitation of votes on the Plan, the pursuit of consummation of the Effective Date, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing, except for acts or omissions of a Released Party arising out of or related to acts or omissions that constitute actual fraud, gross negligence, criminal misconduct or willful misconduct.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not be construed as releasing any post-Effective Date obligations of any party or entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

10.7.     *Exculpation.*

To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, arising between the Petition Date and the Effective Date, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring, the formulation, preparation, dissemination, negotiation of any of the foregoing or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of confirmation of the Plan, the solicitation of votes on the Plan, the pursuit of consummation of the Effective Date, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place before the Petition Date and the Effective Date related or relating to the foregoing, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.

41

**The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above shall not be construed as exculpating any party or entity from its post-Effective Date obligations under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

### 10.8.   *Waiver of Statutory Limitation on Releases.*

EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN (INCLUDING UNDER <u>SECTION 10</u> OF THE PLAN) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542. THE RELEASES CONTAINED IN <u>SECTION 10</u> OF THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

### 10.9.   *Solicitation of the Plan.*

As of and subject to the occurrence of the Confirmation Date: (a) the Debtors shall be deemed to have previously solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation, and (b) the Debtors and each of their respective directors, officers, employees, Affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under this Plan, and therefore, are not, and on account of such offer, issuance and solicitation will not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or the offer and issuance of any securities under this Plan.

### 10.10.   *Corporate Action.*

Upon the Effective Date, by virtue of the solicitation of votes in favor of this Plan and entry of the Confirmation Order, all actions contemplated by this Plan (including any action to be undertaken by the Plan Administrator) shall be deemed authorized, approved, and, to the extent taken prior to the Effective

42

Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person.  All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred on the Effective Date and shall be in effect, without any requirement of further action by the Debtors or the Estates.

## SECTION 11.  RETENTION OF JURISDICTION.

### 11.1. *Retention of Jurisdiction.*

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)  to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases, including Assumption Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)  to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)  to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and Confirmation Order, including to ensure that an Allowed Claim does not receive consideration in excess of the Allowed amount of such Claim, and to adjudicate any and all disputes arising from or relating to distributions under the Plan, including, cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely paid;

(d)  to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim or Class of Claims;

(e)  to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)  to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)  to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)  to hear and determine all proceedings, if any, to approve Fee Claims;

(i)  to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order, or any agreement, instrument, or other document governing or relating to any of the foregoing;

43

(j)      to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(k)      to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(l)      to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(m)      to hear, adjudicate, decide, or resolve any and all matters related to Section 10 of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder;

(n)      to resolve disputes concerning Disputed Claims or the administration thereof;

(o)      to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)      to enter one or more final decrees closing the Chapter 11 Cases;

(q)      to recover all Assets of the Debtors and property of the Debtors' Estates, wherever located and adjudicate any disputes with respect thereto;

(r)      to resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose; and

(s)      to hear and resolve any dispute over the application to any Claim of any limit on the allowance of such Claim set forth in sections 502 or 503 of the Bankruptcy Code, other than defenses or limits that are asserted under non-bankruptcy law pursuant to section 502(b)(1) of the Bankruptcy Code.

### 11.2.    *Courts of Competent Jurisdiction.*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## SECTION 12.  MISCELLANEOUS PROVISIONS.

### 12.1.    *Payment of Statutory Fees.*

On the Effective Date and thereafter as may be required, the Debtors or the Plan Administrator, as applicable, shall pay all Statutory Fees that are due and payable, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for each Debtor's case.  The obligations under this Section 12.1 shall remain for each Debtor until such time as a final decree is entered closing the Chapter 11 Case for such Debtor, a Final Order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing such Debtor's Chapter 11 Case is entered.

**12.2.    *Substantial Consummation.***

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**12.3.    *Dissolution of Creditors' Committee.***

On the Effective Date, the Creditors' Committee, if any, shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided, however,* that after the Effective Date, the Creditors' Committee shall exist and its professionals shall continue to be retained and shall continue to be entitled to reasonable compensation by the Debtors without the need for further application to the Bankruptcy Court with respect to all applications filed pursuant to sections 330 and 331 of the Bankruptcy Code and any related hearings.

**12.4.    *Amendments.***

(a)    *Plan Modifications*.  The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan (i) prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (ii) after entry of the Confirmation Order, the Debtors may, upon order of the Court, amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to the Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of this Plan, and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

(b)    *Other Amendments*.  Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

**12.5.    *Revocation or Withdrawal of the Plan.***

The Debtors reserve the right to revoke or withdraw the Plan, including the right to revoke or withdraw this Plan for any Debtor or all Debtors, prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, in each case with respect to a Debtor, then, with respect to such Debtor: (a) this Plan shall be null and void in all respects; (b) any assumption or rejection of executory contracts or unexpired leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors, the Estates, or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Estates, or any other Entity.

**12.6.    *Severability of Plan Provisions upon Confirmation.***

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be

invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms; (b) integral to this Plan and may not be deleted or modified without the consent of the Debtors or the Wind Down Estates (as the case may be); and (3) nonseverable and mutually dependent.

### 12.7. *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, that corporate or limited liability company governance matters relating to the Debtors shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor.

### 12.8. *Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 12.9. *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Debtors and all holders of Claims or Interests receiving distributions pursuant to this Plan and all other parties in interest are authorized to prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### 12.10. *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Wind Down Estates, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns, including, without limitation, the Plan Administrator.

### 12.11. *Successors and Assigns.*

The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

RLF1 28018297V.1

### 12.12. *Entire Agreement.*

On the Effective Date, this Plan, the Plan Supplement and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 12.13. *Notices.*

All notices, requests and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(i) if to the Debtors or the Plan Administrator:

> Kabbage Inc. d/b/a KServicing
> 925B Peachtree Street NE, Suite 383
> Atlanta, GA 30309
> Attention: Laquisha Milner
> Telephone: (678) 566-9000
>
>      - and –
>
> Richards, Layton & Finger, P.A.
> One Rodney Square
> 920 N. King Street
> Wilmington, Delaware 19801
> Attn:    Daniel J. DeFranceschi
>         Amanda R. Steele
>         Zachary I. Shapiro
> Telephone:  (302) 651-7700
> Facsimile:  (302) 651-7701
>
> -and-
>
> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, NY 10153
> Attn:    Ray C. Schrock, P.C.
>         Candace M. Arthur
>         Natasha Hwangpo
>         Chase Bentley
> Telephone:  (212) 310-8000
> Facsimile:  (212) 310-8007

After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized

to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

Dated:  October 3, 2022

By:      */s/ Laquisha Milner*
          Name:  Laquisha Milner
          Title:    Chief Executive Officer

**KABBAGE, INC. (D/B/A KSERVICING)**
**KABBAGE CANADA HOLDINGS, LLC**
**KABBAGE ASSET SECURITIZATION LLC**
**KABBAGE ASSET FUNDING 2017-A LLC**
**KABBAGE ASSET FUNDING 2019-A LLC**
**KABBAGE DIAMETER, LLC**

48