UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re                                                        :    Chapter 11
                                                             :
KABBAGE, INC. d/b/a KSERVICING, *et al.*,                    :    Case No. 22-10951 (     )
                                                             :
                                                             :
Debtors.[1]                                                  :    (Joint Administration Requested)
------------------------------------------------------------ x

**APPLICATION OF DEBTORS FOR
ENTRY OF ORDER AUTHORIZING EMPLOYMENT AND
RETENTION OF ALIXPARTNERS, LLP AS FINANCIAL
ADVISOR TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**"), respectfully state and represent as follows in support of this application (the "**Application**"):[2]

**Relief Requested**

1.      By this Application, pursuant to sections 327(a), 330 and 1107(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors request entry of an order authorizing the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A).  Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] The facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration (as defined below) filed contemporaneously herewith.  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration (as defined below).

employment and retention of AlixPartners, LLP ("**AlixPartners**") as financial advisor for the Debtors in connection with their Chapter 11 Cases (as defined below), effective as of the Petition Date, in accordance with the terms and conditions set forth in that certain engagement letter entered by and among the Debtors and AlixPartners, dated as of April 25, 2022 (the "**Initial Engagement Letter**") and the subsequent engagement letter providing for the continuation of AlixPartners' services to the Debtors, dated as of September 28, 2022 (the "**September Engagement Letter**" and together with the Initial Engagement Letter, the "**Engagement Letter**").

2.     A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").  A copy of the Engagement Letter is annexed hereto as **Exhibit B**.

3.     In support of this Application, the Debtors submit the declaration of Deborah Rieger-Paganis, a Managing Director of AlixPartners (the "**Rieger-Paganis Declaration**"), annexed hereto as **Exhibit C**.

## Jurisdiction and Venue

4.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final order by the Court in connection with this Application if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

5. On the date hereof (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in these Chapter 11 Cases.

6. Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

7. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Deborah Rieger-Paganis In Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith.

**AlixPartners' Qualifications**

8. AlixPartners is an internationally recognized restructuring and turnaround firm with substantial experience in providing financial advisory services and has an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States. In light of the size and complexity of these Chapter 11 Cases, the Debtors require a qualified and experienced financial advisor with the resources, capabilities, and experience of AlixPartners to assist them in pursuing the transaction(s) that are crucial to the success of the Debtors' Chapter 11 Cases. AlixPartners performs critical services that complement the services provided by the Debtors' other professionals.

9. AlixPartners has assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size

and complexity to these Chapter 11 Cases. AlixPartners professionals have provided restructuring or crisis management services in numerous large cases, including recent filings in this district. *See, e.g.*, *In re MD Helicopters, Inc.,* No. 22-10263 (KBO) (Bankr. D. Del. Apr. 25, 2022); *In re Alto Maipo Delaware LLC*, No. 21-11507 (KBO) (Bankr. D. Del. Dec. 16, 2021); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Dec. 8, 2021); *In re Alpha Latam Mgmt., LLC*, No. 21-11109 (JKS) (Bankr. D. Del. Sept. 15, 2021); *In re Nine Point Energy, LLC*, No. 21-10570 (MFW) (Bankr. D. Del. Apr. 20, 2021); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Apr. 13, 2021); *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Nov. 19, 2020); *In re RGN-Grp. Holdings, LLC*, No. 20-11961 (BLS) (Bankr. D. Del. Sept. 15, 2020); *In re Skillsoft Corp.*, No. 20-11532 (MFW) (Bankr. D. Del. July 23, 2020); *In re Celadon Grp., Inc.*, No. 19-12606 (KBO) (Bankr. D. Del. Jan. 3, 2020); *In re Bumble Bee Parent, Inc.*, No. 19-12505 (LSS) (Bankr. D. Del. Dec. 26, 2019); *In re Hexion Holdings LLC*, No. 19-10684 (KG) (Bankr. D. Del. May 1, 2019; *In re David's Bridal,* No. 18-12635 (LSS) (Bankr, D. Del. Dec. 18, 2018); *In re Mattress Firm, Inc.*, No. 18-12241 (CSS) (Bankr. D. Del. Nov. 7, 2018); *In re Am. Tire Distribs.*, No. 18-12221 (KJC) (Bankr. D. Del. Nov. 1, 2018); *In re The Bon-Ton Stores, Inc.,* No. 18-10248 (MFW) (Bankr. D. Del. Mar. 6, 2018; *In re Charming Charlie Holdings, Inc.*, No. 17-12906 (CSS) (Bankr. D. Del. Jan. 20, 2018); and *In re Prospector Offshore Drilling S.à r.l.*, No. 17-11572 (CSS) (Bankr. D. Del. Oct. 2, 2017).

        10.      The Debtors have selected AlixPartners as their financial advisor because of AlixPartners' experience and reputation for providing financial advisory services in large, complex chapter 11 cases such as those listed above. Furthermore, since April, 2022, AlixPartners has performed significant prepetition work for the Debtors, and as a result has acquired significant knowledge of the Debtors and their businesses, and familiarity with the Debtors' financial affairs,

4

debt structure, operations, and related matters. Likewise, in providing prepetition services to the Debtors, AlixPartners' professionals have worked closely with the Debtors' management and their other advisors. Accordingly, AlixPartners has experience, expertise, and specifically relevant knowledge regarding the Debtors that will assist it in providing effective and efficient services in these Chapter 11 Cases. The Debtors submit that the retention of AlixPartners on the terms and conditions set forth herein are necessary and appropriate, in the best of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

11. If this Application is approved, AlixPartners' personnel, all with substantial expertise in the areas discussed above, will continue to provide services to the Debtors. Such personnel will work closely with the Debtors' management and other professionals throughout the restructuring process. By virtue of the expertise of its restructuring personnel and the significant prepetition work that AlixPartners performed for the Debtors during its prepetition representation of the Debtors, AlixPartners is well-qualified to provide services to and represent the Debtors' interests in these Chapter 11 Cases.

**Services to be Provided**

12. Prior to the Petition Date, the Debtors and AlixPartners entered into the Engagement Letter, which governs the relationship between them. The terms and conditions of the Engagement Letter were negotiated between the Debtors and AlixPartners and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Under the Engagement Letter, AlixPartners has assisted, and it is expected that AlixPartners will continue to assist, the Debtors in matters throughout the course of these Chapter 11 Cases, including, but not limited to, the following:

*Restructuring*

- Work with the Debtors and their team to further identify and implement both short-term and long-term liquidity-generating and cost-reduction initiatives.

- Assist the Debtors in developing a global wind-down plan and a detailed work plan identifying key milestones and in setting appropriate priorities.

- Assist Debtors' management and their professionals specifically assigned to sourcing, negotiating and implementing any financing in conjunction with the Chapter 11 Plan and the overall restructuring, as applicable.

- Assist Debtors' management in the design and implementation of a restructuring strategy designed to maximize value, taking into account the unique interests of all constituencies.

- Work with senior management to negotiate and implement restructuring initiatives and evaluate strategic alternatives.

*Communication with Outsiders*

- Assist in negotiations with stakeholders and their representatives regarding the restructuring.

- Assist in negotiations with potential acquirers of the Debtors' assets.

- Assist in communication and/or negotiate and implement restructuring initiatives and evaluate strategic alternatives.

*Bankruptcy Case Management*

- Assist in managing the "working group" professionals who are assisting the Debtors in the wind down process or who are working for the Debtors' various stakeholders to improve coordination of their efforts and individual work product to be consistent with the Debtors' overall restructuring goals.

- Assist in obtaining and presenting information required by parties in interest in the Debtors' bankruptcy process, including official committees appointed by the Court and the Court itself.

- Assist the Debtors in other business and financial aspects of a Chapter 11 proceeding, including, but not limited to, development of a disclosure statement, Chapter 11 Plan, first day motions and petitions.

- Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Court, as well as provide assistance in areas such as testimony before the Court on matters that are within AlixPartners' areas of expertise.

- Assist as requested in supporting any litigation that may be brought against the Debtors in the Court.

- Assist as requested in analyzing preferences and other avoidance actions.

- Manage the claims reconciliation processes.
- Assist the Debtors with electronic data collection.

*Finance and Cash Management*

- Assist the Debtors with providing financial leadership and support.

- Assist the Debtors and their management in developing and maintaining a short-term cash flow forecasting tool and related methodologies and to assist with planning for alternatives as requested by the Debtors.

- Assist the Debtors in developing an actual to forecast variance reporting mechanism including written explanations of key differences.

*Miscellaneous*

- Assist with such other matters as may be requested that fall with AlixPartners' expertise and that are mutually agreeable.

13.  Such financial advisory services are necessary to the Debtors' restructuring efforts and in the ongoing operation and management of the Debtors' businesses while subject to chapter 11 of the Bankruptcy Code.

14.  When necessary, the individuals working on this matter (the "**AlixPartners Personnel**") will be assisted by or replaced by various professionals at various levels.

**No Duplication of Services**

15.  AlixPartners understands that the Debtors may retain additional professionals during the term of its engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors. The financial advisory services provided by AlixPartners will complement, and not duplicate, the services rendered by any other professional retained in these Chapter 11 Cases.

**Professional Compensation and Expense Reimbursement**

16.  AlixPartners' decision to accept this engagement to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and

7

conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in **Schedule 1** of the Engagement Letter (the "**Fee and Expense Structure**").

17. AlixPartners' current standard hourly rates for 2022, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
|---|---|
| Managing Director | $1,060 – $1,335 |
| Director | $840 – $990 |
| Senior Vice President | $700 – $795 |
| Vice President | $510 – $685 |
| Consultant | $190 – $505 |
| Paraprofessional | $320 – $340 |

18. AlixPartners reviews and revises its billing rates on a semi-annual basis. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates become effective.

19. To the extent the Debtors request services related to electronic discovery and data collection, certain monthly hosting fees and consulting fees will apply, as further detailed and outlined in the Engagement Letter.

20. In addition to compensation for professional services rendered by AlixPartners Personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses incurred in connection with these Chapter 11 Cases, including but not limited to transportation costs, lodging, and meals.

8

RLF1 28018300v.1

21. To the extent that AlixPartners requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.

22. To the extent AlixPartners uses the services of independent contractors (the "**Contractors**") in these Chapter 11 Cases, AlixPartners shall: (a) pass through the cost of such Contractors to the Debtors at the same rate that AlixPartners pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for AlixPartners; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

23. AlixPartners intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases consistent with the Fee and Expense Structure, subject to this Court's approval and in compliance with applicable provisions of the Bankruptcy Code, including sections 330 and 331, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of this Court.

24. AlixPartners will maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in these Chapter 11 Cases. Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtors. AlixPartners' applications for compensation of fees and reimbursement of expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter and any procedures established by the Court, pursuant to a compensation order or otherwise.

25. AlixPartners often provides services for compensation that includes hourly-based fees and performance-based, contingent-incentive compensation earned upon achieving

meaningful results. AlixPartners does not seek a success fee in connection with these Chapter 11 Cases.

26. The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by AlixPartners and other comparable firms that render similar services under similar circumstances. The Debtors believe that the Fee and Expense Structure is reasonable, market-based, and designed to compensate AlixPartners fairly for its work and to cover fixed and routine overhead expenses.

27. Prior to the Petition Date, AlixPartners received a retainer in the amount of $500,000 from the Debtors (the "**Retainer**"). According to AlixPartners' books and records, during the 90-day period prior to the Petition Date, the Debtors paid AlixPartners $2,653,545.74 in the aggregate for professional services performed and expenses incurred, including advanced payments and excluding the Retainer.

28. The Debtors propose that the remainder of the Retainer paid to AlixPartners and not expended for prepetition services and disbursements be treated as an evergreen retainer to be held by AlixPartners as security throughout these Chapter 11 Cases until AlixPartners' fees and expenses are awarded by final order of this Court and payable to AlixPartners.

29. An evergreen retainer is appropriate in these Chapter 11 Cases. First, evergreen retainer agreements are standard business practice in the marketplace. *See In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("[I]t is not disputed that the taking of evergreen retainers is a practice now common in the marketplace …. [T]he practice in this district has been engaged in since at least the early 1990's …."). Second, AlixPartners and the Debtors are sophisticated business entities that have negotiated the Retainer at arm's length. As such, the Debtors respectfully request that approval of the proposed evergreen retainer is warranted.

30. Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior, and subsequent to, the Petition Date, AlixPartners may have incurred fees and reimbursable expenses that relate to the prepetition period which remain unpaid. Approval is sought from this Court for AlixPartners to apply the Retainer and advanced payments to these unpaid amounts. Upon entry of an order approving the relief requested herein, the Debtors will not owe AlixPartners any sums for prepetition services.

### The Fee and Expense Structure Is Appropriate and Reasonable and Should Be Approved Under Section 327(a) of the Bankruptcy Code

31. The Debtors believe that the Fee and Expense Structure is comparable to those generally charged by financial advisors of similar stature to AlixPartners for comparable engagements, both in and out of bankruptcy proceedings. The Engagement Letter was negotiated at arm's-length and in good faith. AlixPartners and the Debtors believe that the Fee and Expense Structure is both reasonable and market-based.

32. Without the relief requested herein the Debtors would be deprived of the assistance of qualified financial advisors, which would disadvantage the Debtors and all parties-in-interest. If the Debtors are forced to engage new financial advisors, the Debtors' restructuring efforts would be slowed as any such new advisor is provided with the necessary background to provide adequate services. Moreover, comparable financial advisors would likely require similar compensation.

33. In light of the foregoing and given the numerous issues that AlixPartners may be required to address in the performance of its services hereunder, and the market prices for AlixPartners' services for engagements of this nature in both in and out-of-court contexts, the Debtors believe that the Fee and Expense Structure is in line with market compensation for similar services and is fair and reasonable.

## AlixPartners' Disinterestedness

34. To the best of the Debtors' knowledge, and except as disclosed herein and in the Rieger-Paganis Declaration, AlixPartners: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and supplemented by section 1107(b) of the Bankruptcy Code; (b) does not hold or represent any interest materially adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors or other parties-in-interest in these Chapter 11 Cases, or the attorneys or accountants of the foregoing, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee.

35. As set forth in further detail in the Rieger-Paganis Declaration, AlixPartners has certain connections with creditors, equity security holders and other parties-in-interest in these Chapter 11 Cases. All of these matters, however, are unrelated to these Chapter 11 Cases. AlixPartners does not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these Chapter 11 Cases.

36. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of AlixPartners' retention are discovered or arise, AlixPartners will use reasonable efforts to promptly file a supplemental declaration.

## Indemnification

37. The Engagement Letter contains standard indemnification language with respect to AlixPartners' services including, without limitation, an agreement by the Debtors to indemnify AlixPartners and its affiliates, partners, directors, officers, employees and agents (each, an "**AlixPartners Party**" and collectively, the "**AlixPartners Parties**") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the

engagement of AlixPartners that is the subject of the Engagement Letter, except to the extent caused by gross negligence, willful misconduct, or fraud of any AlixPartners Party.

38. The Debtors and AlixPartners believe that the indemnification provisions contained in the Engagement Letter, as may be amended in the Proposed Order, are customary and reasonable for AlixPartners and comparable firms providing financial advisory services, and as would be modified pursuant to the foregoing limitations, reflect the qualifications and limitations on indemnification provisions that are customary in this district and others. *See, e.g., In re TNT Crane & Rigging, Inc.*, No. 20-11982 (BLS) (Bankr. D. Del. Sept. 18, 2020) (approving similar modified indemnification provisions for the retention and employment of FTI Consulting, Inc.); *In re VIVUS, Inc.*, No. 20-11779 (LSS) (Bankr. D. Del. Aug. 24, 2020) (approving similar modified indemnification provisions for the retention and employment of Ernst & Young LLP); *In re Lucky Brand Dungarees, LLC*, No. 20-11768 (CSS) (Bankr. D. Del. July 29, 2020) (approving similar modified indemnification provisions for the retention and employment of Houlihan Lokey Capital, Inc.); *In re Paddock Enters., LLC*, No. 20-10028 (LSS) (Bankr. D. Del. June 24, 2020) (approving similar modified indemnification provisions for the retention and employment of Alvarez & Marsal North America, LLC); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. May 18, 2020) (approving similar modified indemnification provisions for the retention and employment of Houlihan Lokey Capital, Inc.); *In re Fred's Inc.*, No. 19-11984 (CSS) (Bankr. D. Del. Oct. 30, 2019) (approving similar modified indemnification provisions for the retention and employment of Alvarez & Marsal North America, LLC).

39. Moreover, the terms and conditions of the indemnification provisions were negotiated by the Debtors and AlixPartners at arm's length and in good faith. The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of AlixPartners'

proposed retention, are reasonable and in the best interest of the Debtors, their estates, and all parties in interest in light of the fact that the Debtors require AlixPartners' services to successfully restructure. Accordingly, as part of this Application, the Debtors request that this Court approve the indemnification provisions as set forth in the Engagement Letter, as may be amended by the Proposed Order (setting forth the foregoing limitations).

### **Basis for Relief**

40.    Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a).

41.    Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

42.    Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

43.     The Debtors respectfully submit that section 327 of the Bankruptcy Code permits them to hire a professional firm like AlixPartners to undertake an advisory role in these Chapter 11 Cases. Furthermore, the requirements set forth by Bankruptcy Rule 2014 are satisfied by this Application. The retention of AlixPartners as financial advisor in these Chapter 11 Cases is in the best interests of the Debtors' estates, creditors, and all other parties in interest.

44.     The Debtors seek approval of the Fee and Expense Structure and the Engagement Letter (including the Indemnification Provisions) pursuant to section 327(a) of the Bankruptcy Code.

45.     The Debtors believe that the Fee and Expense Structure in the Engagement Letter sets forth reasonable terms and conditions of employment and should be approved under section 327(a) of the Bankruptcy Code. The Fee and Expense Structure adequately reflects: (i) the nature of the services to be provided by AlixPartners; and (ii) fee and expense structures and indemnification provisions typically utilized by AlixPartners and other leading financial advisory and consulting firms. In addition, as noted above, AlixPartners is "disinterested" and all of its fees and expenses are subject to approval of the Court in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and further orders of the Court.

46.     Accordingly, the Debtors submit that the relief requested in the Application is in the best interests of their estates, creditors, and all parties in interest to these Chapter 11 Cases and the Court should approve the retention and employment of AlixPartners pursuant to the terms set forth in the Engagement Letter.

## Notice

47.     Notice of this Application will be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims

against the Debtors on a consolidated basis; (c) the Federal Reserve Bank; (d) Customers Bank; (e) Cross River Bank; (f) the United States Department of Justice; (g) the Federal Trade Commission; (h) the Small Business Administration; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the United States Attorney's Office for the District of Delaware; (l) the Banks; and (m) any party that is entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**").  As this Application is seeking "first-day" relief, the Debtors will serve copies of this Application and any order entered in respect of this Application as required by Local Rule 9013-1(m).  The Debtors believe that no further notice is required.

## No Prior Request

48.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  October 4, 2022
       Atlanta, Georgia

                                                **KABBAGE, INC. d/b/a KSERVICING,** *et al.*
                                                (on behalf of itself and each of its affiliated Debtors)

                                                */s/ Holly Loiseau*
                                                Name:  Holly Loiseau
                                                Title:    General Counsel and Secretary