# EXHIBIT A

## Application

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------- x
In re                                                                      :      **Chapter 11**
                                                                             :
**KABBAGE, INC. d/b/a KSERVICING,** *et al.*,   :      **Case No. 22-10951 (      )**
                                                                             :
                                                                             :
        **Debtors.**[1]                                                :      **(Joint Administration Requested)**
---------------------------------------------------------- x

**APPLICATION OF DEBTORS FOR**
**ENTRY OF ORDER AUTHORIZING EMPLOYMENT AND**
**RETENTION OF ALIXPARTNERS, LLP AS FINANCIAL**
**ADVISOR TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**"), respectfully state and represent as follows in support of this application (the "**Application**"):[2]

### Relief Requested

1.      By this Application, pursuant to sections 327(a), 330 and 1107(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors request entry of an order authorizing the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A).  Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] The facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration (as defined below) filed contemporaneously herewith.  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration (as defined below).

employment and retention of AlixPartners, LLP ("**AlixPartners**") as financial advisor for the Debtors in connection with their Chapter 11 Cases (as defined below), effective as of the Petition Date, in accordance with the terms and conditions set forth in that certain engagement letter entered by and among the Debtors and AlixPartners, dated as of April 25, 2022 (the "**Initial Engagement Letter**") and the subsequent engagement letter providing for the continuation of AlixPartners' services to the Debtors, dated as of September 28, 2022 (the "**September Engagement Letter**" and together with the Initial Engagement Letter, the "**Engagement Letter**").

2.      A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").  A copy of the Engagement Letter is annexed hereto as **Exhibit B**.

3.      In support of this Application, the Debtors submit the declaration of Deborah Rieger-Paganis, a Managing Director of AlixPartners (the "**Rieger-Paganis Declaration**"), annexed hereto as **Exhibit C**.

**Jurisdiction and Venue**

4.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final order by the Court in connection with this Application if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

5.     On the date hereof (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in these Chapter 11 Cases.

6.     Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

7.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Deborah Rieger-Paganis In Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith.

## AlixPartners' Qualifications

8.     AlixPartners is an internationally recognized restructuring and turnaround firm with substantial experience in providing financial advisory services and has an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.  In light of the size and complexity of these Chapter 11 Cases, the Debtors require a qualified and experienced financial advisor with the resources, capabilities, and experience of AlixPartners to assist them in pursuing the transaction(s) that are crucial to the success of the Debtors' Chapter 11 Cases.  AlixPartners performs critical services that complement the services provided by the Debtors' other professionals.

9.     AlixPartners has assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size

3

and complexity to these Chapter 11 Cases.  AlixPartners professionals have provided restructuring or crisis management services in numerous large cases, including recent filings in this district.  *See, e.g.*, *In re MD Helicopters, Inc.,* No. 22-10263 (KBO) (Bankr. D. Del. Apr. 25, 2022); *In re Alto Maipo Delaware LLC*, No. 21-11507 (KBO) (Bankr. D. Del. Dec. 16, 2021); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Dec. 8, 2021); *In re Alpha Latam Mgmt., LLC*, No. 21-11109 (JKS) (Bankr. D. Del. Sept. 15, 2021); *In re Nine Point Energy, LLC*, No. 21-10570 (MFW) (Bankr. D. Del. Apr. 20, 2021); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Apr. 13, 2021); *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Nov. 19, 2020); *In re RGN-Grp. Holdings, LLC*, No. 20-11961 (BLS) (Bankr. D. Del. Sept. 15, 2020); *In re Skillsoft Corp.*, No. 20-11532 (MFW) (Bankr. D. Del. July 23, 2020); *In re Celadon Grp., Inc.*, No. 19-12606 (KBO) (Bankr. D. Del. Jan. 3, 2020); *In re Bumble Bee Parent, Inc.*, No. 19-12505 (LSS) (Bankr. D. Del. Dec. 26, 2019); *In re Hexion Holdings LLC*, No. 19-10684 (KG) (Bankr. D. Del. May 1, 2019; *In re David's Bridal,* No. 18-12635 (LSS) (Bankr, D. Del. Dec. 18, 2018); *In re Mattress Firm, Inc.*, No. 18-12241 (CSS) (Bankr. D. Del. Nov. 7, 2018); *In re Am. Tire Distribs.*, No. 18-12221 (KJC) (Bankr. D. Del. Nov. 1, 2018); *In re The Bon-Ton Stores, Inc.,* No. 18-10248 (MFW) (Bankr. D. Del. Mar. 6, 2018; *In re Charming Charlie Holdings, Inc.*, No. 17-12906 (CSS) (Bankr. D. Del. Jan. 20, 2018); and *In re Prospector Offshore Drilling S.à r.l.*, No. 17-11572 (CSS) (Bankr. D. Del. Oct. 2, 2017).

10.    The Debtors have selected AlixPartners as their financial advisor because of AlixPartners' experience and reputation for providing financial advisory services in large, complex chapter 11 cases such as those listed above.  Furthermore, since April, 2022, AlixPartners has performed significant prepetition work for the Debtors, and as a result has acquired significant knowledge of the Debtors and their businesses, and familiarity with the Debtors' financial affairs,

4

debt structure, operations, and related matters. Likewise, in providing prepetition services to the Debtors, AlixPartners' professionals have worked closely with the Debtors' management and their other advisors. Accordingly, AlixPartners has experience, expertise, and specifically relevant knowledge regarding the Debtors that will assist it in providing effective and efficient services in these Chapter 11 Cases. The Debtors submit that the retention of AlixPartners on the terms and conditions set forth herein are necessary and appropriate, in the best of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

11.     If this Application is approved, AlixPartners' personnel, all with substantial expertise in the areas discussed above, will continue to provide services to the Debtors. Such personnel will work closely with the Debtors' management and other professionals throughout the restructuring process. By virtue of the expertise of its restructuring personnel and the significant prepetition work that AlixPartners performed for the Debtors during its prepetition representation of the Debtors, AlixPartners is well-qualified to provide services to and represent the Debtors' interests in these Chapter 11 Cases.

<b><u>Services to be Provided</u></b>

12.     Prior to the Petition Date, the Debtors and AlixPartners entered into the Engagement Letter, which governs the relationship between them. The terms and conditions of the Engagement Letter were negotiated between the Debtors and AlixPartners and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Under the Engagement Letter, AlixPartners has assisted, and it is expected that AlixPartners will continue to assist, the Debtors in matters throughout the course of these Chapter 11 Cases, including, but not limited to, the following:

5

### *Restructuring*

- Work with the Debtors and their team to further identify and implement both short-term and long-term liquidity-generating and cost-reduction initiatives.

- Assist the Debtors in developing a global wind-down plan and a detailed work plan identifying key milestones and in setting appropriate priorities.

- Assist Debtors' management and their professionals specifically assigned to sourcing, negotiating and implementing any financing in conjunction with the Chapter 11 Plan and the overall restructuring, as applicable.

- Assist Debtors' management in the design and implementation of a restructuring strategy designed to maximize value, taking into account the unique interests of all constituencies.

- Work with senior management to negotiate and implement restructuring initiatives and evaluate strategic alternatives.

### *Communication with Outsiders*

- Assist in negotiations with stakeholders and their representatives regarding the restructuring.

- Assist in negotiations with potential acquirers of the Debtors' assets.

- Assist in communication and/or negotiate and implement restructuring initiatives and evaluate strategic alternatives.

### *Bankruptcy Case Management*

- Assist in managing the "working group" professionals who are assisting the Debtors in the wind down process or who are working for the Debtors' various stakeholders to improve coordination of their efforts and individual work product to be consistent with the Debtors' overall restructuring goals.

- Assist in obtaining and presenting information required by parties in interest in the Debtors' bankruptcy process, including official committees appointed by the Court and the Court itself.

- Assist the Debtors in other business and financial aspects of a Chapter 11 proceeding, including, but not limited to, development of a disclosure statement, Chapter 11 Plan, first day motions and petitions.

- Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Court, as well as provide assistance in areas such as testimony before the Court on matters that are within AlixPartners' areas of expertise.

- Assist as requested in supporting any litigation that may be brought against the Debtors in the Court.

- Assist as requested in analyzing preferences and other avoidance actions.

- Manage the claims reconciliation processes.

- Assist the Debtors with electronic data collection.

### *Finance and Cash Management*

- Assist the Debtors with providing financial leadership and support.

- Assist the Debtors and their management in developing and maintaining a short-term cash flow forecasting tool and related methodologies and to assist with planning for alternatives as requested by the Debtors.

- Assist the Debtors in developing an actual to forecast variance reporting mechanism including written explanations of key differences.

### *Miscellaneous*

- Assist with such other matters as may be requested that fall with AlixPartners' expertise and that are mutually agreeable.

13.     Such financial advisory services are necessary to the Debtors' restructuring efforts and in the ongoing operation and management of the Debtors' businesses while subject to chapter 11 of the Bankruptcy Code.

14.     When necessary, the individuals working on this matter (the "**AlixPartners Personnel**") will be assisted by or replaced by various professionals at various levels.

### No Duplication of Services

15.     AlixPartners understands that the Debtors may retain additional professionals during the term of its engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.  The financial advisory services provided by AlixPartners will complement, and not duplicate, the services rendered by any other professional retained in these Chapter 11 Cases.

### Professional Compensation and Expense Reimbursement

16.     AlixPartners' decision to accept this engagement to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and

conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in **Schedule 1** of the Engagement Letter (the "**Fee and Expense Structure**").

17.     AlixPartners' current standard hourly rates for 2022, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
|---|---|
| Managing Director | $1,060 – $1,335 |
| Director | $840 – $990 |
| Senior Vice President | $700 – $795 |
| Vice President | $510 – $685 |
| Consultant | $190 – $505 |
| Paraprofessional | $320 – $340 |

18.     AlixPartners reviews and revises its billing rates on a semi-annual basis. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates become effective.

19.     To the extent the Debtors request services related to electronic discovery and data collection, certain monthly hosting fees and consulting fees will apply, as further detailed and outlined in the Engagement Letter.

20.     In addition to compensation for professional services rendered by AlixPartners Personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses incurred in connection with these Chapter 11 Cases, including but not limited to transportation costs, lodging, and meals.

21.     To the extent that AlixPartners requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.

22.     To the extent AlixPartners uses the services of independent contractors (the "**Contractors**") in these Chapter 11 Cases, AlixPartners shall: (a) pass through the cost of such Contractors to the Debtors at the same rate that AlixPartners pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for AlixPartners; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

23.     AlixPartners intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases consistent with the Fee and Expense Structure, subject to this Court's approval and in compliance with applicable provisions of the Bankruptcy Code, including sections 330 and 331, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of this Court.

24.     AlixPartners will maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in these Chapter 11 Cases.  Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtors. AlixPartners' applications for compensation of fees and reimbursement of expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter and any procedures established by the Court, pursuant to a compensation order or otherwise.

25.     AlixPartners often provides services for compensation that includes hourly-based fees and performance-based, contingent-incentive compensation earned upon achieving

9

meaningful results.  AlixPartners does not seek a success fee in connection with these Chapter 11 Cases.

26.     The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by AlixPartners and other comparable firms that render similar services under similar circumstances.  The Debtors believe that the Fee and Expense Structure is reasonable, market-based, and designed to compensate AlixPartners fairly for its work and to cover fixed and routine overhead expenses.

27.     Prior to the Petition Date, AlixPartners received a retainer in the amount of $500,000 from the Debtors (the "**Retainer**").  According to AlixPartners' books and records, during the 90-day period prior to the Petition Date, the Debtors paid AlixPartners $2,653,545.74 in the aggregate for professional services performed and expenses incurred, including advanced payments and excluding the Retainer.

28.     The Debtors propose that the remainder of the Retainer paid to AlixPartners and not expended for prepetition services and disbursements be treated as an evergreen retainer to be held by AlixPartners as security throughout these Chapter 11 Cases until AlixPartners' fees and expenses are awarded by final order of this Court and payable to AlixPartners.

29.     An evergreen retainer is appropriate in these Chapter 11 Cases.  First, evergreen retainer agreements are standard business practice in the marketplace.  *See In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("[I]t is not disputed that the taking of evergreen retainers is a practice now common in the marketplace ….  [T]he practice in this district has been engaged in since at least the early 1990's ….").  Second, AlixPartners and the Debtors are sophisticated business entities that have negotiated the Retainer at arm's length.  As such, the Debtors respectfully request that approval of the proposed evergreen retainer is warranted.

10

30.     Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior, and subsequent to, the Petition Date, AlixPartners may have incurred fees and reimbursable expenses that relate to the prepetition period which remain unpaid.  Approval is sought from this Court for AlixPartners to apply the Retainer and advanced payments to these unpaid amounts.  Upon entry of an order approving the relief requested herein, the Debtors will not owe AlixPartners any sums for prepetition services.

### The Fee and Expense Structure Is Appropriate and Reasonable and Should Be Approved Under Section 327(a) of the Bankruptcy Code

31.     The Debtors believe that the Fee and Expense Structure is comparable to those generally charged by financial advisors of similar stature to AlixPartners for comparable engagements, both in and out of bankruptcy proceedings.  The Engagement Letter was negotiated at arm's-length and in good faith. AlixPartners and the Debtors believe that the Fee and Expense Structure is both reasonable and market-based.

32.     Without the relief requested herein the Debtors would be deprived of the assistance of qualified financial advisors, which would disadvantage the Debtors and all parties-in-interest.  If the Debtors are forced to engage new financial advisors, the Debtors' restructuring efforts would be slowed as any such new advisor is provided with the necessary background to provide adequate services.  Moreover, comparable financial advisors would likely require similar compensation.

33.     In light of the foregoing and given the numerous issues that AlixPartners may be required to address in the performance of its services hereunder, and the market prices for AlixPartners' services for engagements of this nature in both in and out-of-court contexts, the Debtors believe that the Fee and Expense Structure is in line with market compensation for similar services and is fair and reasonable.

11

## **AlixPartners' Disinterestedness**

34.    To the best of the Debtors' knowledge, and except as disclosed herein and in the Rieger-Paganis Declaration, AlixPartners: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and supplemented by section 1107(b) of the Bankruptcy Code; (b) does not hold or represent any interest materially adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors or other parties-in-interest in these Chapter 11 Cases, or the attorneys or accountants of the foregoing, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee.

35.    As set forth in further detail in the Rieger-Paganis Declaration, AlixPartners has certain connections with creditors, equity security holders and other parties-in-interest in these Chapter 11 Cases.   All of these matters, however, are unrelated to these Chapter 11 Cases. AlixPartners does not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these Chapter 11 Cases.

36.    To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of AlixPartners' retention are discovered or arise, AlixPartners will use reasonable efforts to promptly file a supplemental declaration.

## **Indemnification**

37.    The Engagement Letter contains standard indemnification language with respect to AlixPartners' services including, without limitation, an agreement by the Debtors to indemnify AlixPartners and its affiliates, partners, directors, officers, employees and agents (each, an "**AlixPartners Party**" and collectively, the "**AlixPartners Parties**") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the

12

engagement of AlixPartners that is the subject of the Engagement Letter, except to the extent caused by gross negligence, willful misconduct, or fraud of any AlixPartners Party.

38.     The Debtors and AlixPartners believe that the indemnification provisions contained in the Engagement Letter, as may be amended in the Proposed Order, are customary and reasonable for AlixPartners and comparable firms providing financial advisory services, and as would be modified pursuant to the foregoing limitations, reflect the qualifications and limitations on indemnification provisions that are customary in this district and others. *See, e.g., In re TNT Crane & Rigging, Inc.*, No. 20-11982 (BLS) (Bankr. D. Del. Sept. 18, 2020) (approving similar modified indemnification provisions for the retention and employment of FTI Consulting, Inc.); *In re VIVUS, Inc.*, No. 20-11779 (LSS) (Bankr. D. Del. Aug. 24, 2020) (approving similar modified indemnification provisions for the retention and employment of Ernst & Young LLP); *In re Lucky Brand Dungarees, LLC*, No. 20-11768 (CSS) (Bankr. D. Del. July 29, 2020) (approving similar modified indemnification provisions for the retention and employment of Houlihan Lokey Capital, Inc.); *In re Paddock Enters., LLC*, No. 20-10028 (LSS) (Bankr. D. Del. June 24, 2020) (approving similar modified indemnification provisions for the retention and employment of Alvarez & Marsal North America, LLC); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. May 18, 2020) (approving similar modified indemnification provisions for the retention and employment of Houlihan Lokey Capital, Inc.); *In re Fred's Inc.*, No. 19-11984 (CSS) (Bankr. D. Del. Oct. 30, 2019) (approving similar modified indemnification provisions for the retention and employment of Alvarez & Marsal North America, LLC).

39.     Moreover, the terms and conditions of the indemnification provisions were negotiated by the Debtors and AlixPartners at arm's length and in good faith.  The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of AlixPartners'

13

proposed retention, are reasonable and in the best interest of the Debtors, their estates, and all parties in interest in light of the fact that the Debtors require AlixPartners' services to successfully restructure.  Accordingly, as part of this Application, the Debtors request that this Court approve the indemnification provisions as set forth in the Engagement Letter, as may be amended by the Proposed Order (setting forth the foregoing limitations).

### Basis for Relief

40.    Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a).

41.    Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."  11 U.S.C. § 1107(b).

42.    Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

43.     The Debtors respectfully submit that section 327 of the Bankruptcy Code permits them to hire a professional firm like AlixPartners to undertake an advisory role in these Chapter 11 Cases.  Furthermore, the requirements set forth by Bankruptcy Rule 2014 are satisfied by this Application.  The retention of AlixPartners as financial advisor in these Chapter 11 Cases is in the best interests of the Debtors' estates, creditors, and all other parties in interest.

44.     The Debtors seek approval of the Fee and Expense Structure and the Engagement Letter (including the Indemnification Provisions) pursuant to section 327(a) of the Bankruptcy Code.

45.     The Debtors believe that the Fee and Expense Structure in the Engagement Letter sets forth reasonable terms and conditions of employment and should be approved under section 327(a) of the Bankruptcy Code.  The Fee and Expense Structure adequately reflects: (i) the nature of the services to be provided by AlixPartners; and (ii) fee and expense structures and indemnification provisions typically utilized by AlixPartners and other leading financial advisory and consulting firms.  In addition, as noted above, AlixPartners is "disinterested" and all of its fees and expenses are subject to approval of the Court in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and further orders of the Court.

46.     Accordingly, the Debtors submit that the relief requested in the Application is in the best interests of their estates, creditors, and all parties in interest to these Chapter 11 Cases and the Court should approve the retention and employment of AlixPartners pursuant to the terms set forth in the Engagement Letter.

### Notice

47.     Notice of this Application will be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims

against the Debtors on a consolidated basis; (c) the Federal Reserve Bank; (d) Customers Bank; (e) Cross River Bank; (f) the United States Department of Justice; (g) the Federal Trade Commission; (h) the Small Business Administration; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the United States Attorney's Office for the District of Delaware; (l) the Banks; and (m) any party that is entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**").  As this Application is seeking "first-day" relief, the Debtors will serve copies of this Application and any order entered in respect of this Application as required by Local Rule 9013-1(m).  The Debtors believe that no further notice is required.

### No Prior Request

48.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.


WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.


Dated:  October 4, 2022
          Atlanta, Georgia

                                        **KABBAGE, INC. d/b/a KSERVICING,** *et al.*
                                        (on behalf of itself and each of its affiliated Debtors)


                                        */s/ Holly Loiseau*
                                        Name:  Holly Loiseau
                                        Title:    General Counsel and Secretary

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------- x
In re                                          :          **Chapter 11**
                                               :
**KABBAGE, INC. d/b/a KSERVICING**, *et al.*,  :          **Case No. 22-10951 (     )**
                                               :
                                               :
Debtors.[1]                                    :          **(Jointly Administered)**
---------------------------------------------------------- x

**ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN**
**ALIXPARTNERS, LLP AS FINANCIAL ADVISOR**
**EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "**Application**")[2] of Kabbage, Inc. d/b/a KServicing and its debtor

affiliates, as debtors and debtors in possession in the Chapter 11 Cases (collectively,

the "**Debtors**"), for entry of an order (i) authorizing the employment and retention of AlixPartners

as financial advisor to the Debtors, in accordance with the terms and conditions set forth in the

Engagement Letter effective as of the Petition Date, pursuant to sections 327(a) and 330 of the

Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1, all as more fully set forth in the

Application; and upon consideration of the Rieger-Paganis Declaration; and the Court having

found that AlixPartners is a "disinterested person" as such term is defined under section 101(14)

of the Bankruptcy Code, as supplemented by section 1107(b) of the Bankruptcy Code; and this

court having found the terms and conditions of AlixPartners' employment, including but not

limited to the Fee and Expense Structure set forth in the Engagement Letter and Application, are

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A).  Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

reasonable under section 330 of the Bankruptcy Code; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the Application having been provided; and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and this Court having reviewed the Application; and this Court having held a hearing on the Application (the "**Hearing**"); and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Application is approved as set forth in this Order.

2.      Pursuant to sections 327(a) and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1, the Debtors are hereby authorized to employ and retain AlixPartners as their financial advisor in these Chapter 11 Cases, effective as of the Petition Date, and in accordance with the terms and conditions set forth in the Engagement Letter annexed to the Application as **Exhibit B**.

3.      The terms of the Engagement Letter, including without limitation, the Indemnification Provisions and the Fee and Expense Structure, are reasonable terms and conditions of employment and are approved in all respects, as modified by this Order.

4.      AlixPartners is authorized to apply the Retainer and advanced payments to unpaid amounts to satisfy any unbilled or other remaining prepetition fees and expenses that

2

AlixPartners becomes aware of during its ordinary course billing review and reconciliation. The balance of the Retainer shall be treated as an evergreen retainer and held by AlixPartners as security throughout the Chapter 11 Cases.

5.      AlixPartners shall file monthly, interim, and final fee requests for allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules and the Local Rules, the U.S. Trustee Guidelines and any other such procedures as may be fixed by order of this Court. For billing purposes, AlixPartners shall keep its time in one-tenth (1/10) hour increments in accordance with the U.S. Trustee Guidelines.

6.      All of AlixPartners' compensation set forth in the Engagement Letter, including, without limitation, the Fee and Expense Structure, is approved pursuant to section 327 of the Bankruptcy Code and AlixPartners shall be compensated and reimbursed pursuant to section 327 of the Bankruptcy Code in accordance with the terms of the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court.

7.      The Fee and Expense Structure is approved, and the Debtors will reimburse AlixPartners for reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter including, without limitation, fees, disbursements and other charges by AlixPartners' counsel to the extent provided for in the Engagement Letter as modified by this order (including, without limitation, pursuant to the Indemnification Provisions as modified by this Order), which counsel shall not be required to be retained pursuant to section 327 of the Bankruptcy Code or otherwise; *provided*, *further*, that in the event that AlixPartners seeks reimbursement from the Debtors for attorneys' fees and expenses consistent with the terms

3

of this Order, the invoices and supporting time records from such attorneys shall be included in AlixPartners' own applications, both interim and final, and they shall be subject to the U.S. Trustee Fee Guidelines and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code.

8.      The indemnification provisions included in the Engagement Letter are approved, subject to the following:

a)      No Indemnified Agent (as that term is defined in the Engagement Letter) shall be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by this Court.

b)      The Debtors shall have no obligation to indemnify any Indemnified Agent, or provide contribution or reimbursement to any Indemnified Agent, for any claim or expense to the extent it is either: (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from the Indemnified Agent's gross negligence, willful misconduct or bad faith; (ii) for a contractual dispute in which the Debtors allege breach of an Indemnified Agent's contractual obligations, unless this Court determines that indemnification, contribution or reimbursement would be permissible pursuant to In re United Artists Theatre Company, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) hereof to be a claim or expense for which the Indemnified Agent should not receive indemnity, contribution or reimbursement under the terms of the Agreement, as modified by this Order.

c)      If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these Chapter 11 Cases, an Indemnified Agent believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Agreement (as modified by this Order), including without limitation, the advancement of defense costs, the Indemnified Agent must file an application therefor in this Court, and the Debtors may not pay any such

4

amounts to the Indemnified Agent before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by any Indemnified Agent for indemnification, contribution and/or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify, or make contributions or reimbursements to, the Indemnified Agents. All parties in interest shall retain the right to object to any demand by any Indemnified Agent for indemnification, contribution and/or reimbursement.

10.     Any limitation of liability pursuant to the terms and conditions set forth in the Engagement Letter, or otherwise, are hereby eliminated for the duration of these Chapter 11 Cases.

11.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in these Chapter 11 Cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these Chapter 11 Cases to cases under chapter 7.

12.     To the extent there is any inconsistency between the terms of the Engagement Letter, the Application, and this Order, the terms of this Order shall govern.

13.     AlixPartners shall use its reasonable efforts to avoid any unnecessary duplication of services provided by any retained professionals in these Chapter 11 Cases.

14.     Under the circumstances of these Chapter 11 Cases, notice of the Application is adequate under Bankruptcy Rule 6004(a).

15.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

17.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

5

**Exhibit B**

**Engagement Letter**

# **Alix**Partners

Candace M. Arthur                                                                                                    April 25, 2022
Ray C. Schrock, P.C.
Weil, Gotshal & Manges LLP
767 5th Ave
New York, NY 10153

**Re:      Agreement for Turnaround and Restructuring Consulting Services**

Dear Ms. Arthur and Mr. Schrock:

This letter, together with the attached Schedule(s) and General Terms and Conditions, sets forth the agreement ("Agreement") between AlixPartners, LLP ("AlixPartners") and Weil, Gotshal & Manges LLP (the "Firm") as counsel to Kabbage, Inc. d/b/a KServicing, Inc. and its indirect and direct subsidiaries (collectively, the "Company" or "KServicing") for the engagement of AlixPartners by the Firm to provide consulting services for the benefit of the Company.

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedule(s) and General Terms and Conditions. The Company and AlixPartners are each a "party," and together the "parties."

## **Objectives and Tasks**

AlixPartners has been requested to provide advisory services to the Firm for the benefit of the Company. Accordingly, AlixPartners will provide the following services (the "Services"):

- Support the CEO, management team and Board of Directors in planning and executing strategic and financial decisions.

- Assist the Company with providing financial leadership and support.

- Assist the Company with development of its rolling 13-week cash receipts and disbursements forecasting tool designed to provide on-time information related to the Company's liquidity; evaluate and assist with liquidity generating initiatives.

- Assist the Company in developing a global wind-down plan and a detailed work plan identifying key milestones and in setting appropriate priorities.

- Assist the Company with the finalization of the 2020 financial audit report.

- Assist with contingency planning, as may be necessary.

- If appropriate, assist the Company in the design and implementation of a restructuring strategy designed to maximize enterprise value, taking into account the unique interests of all constituencies.

- If appropriate, assist the Company to negotiate and implement restructuring initiatives and evaluate strategic alternatives.

- Assist the Company with its communications and/or negotiations with outside parties including the Company's stakeholders and partner banks.

- Assist the Company with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

# **Alix**Partners

Weil, Gotshal & Manges LLP
Page 2 of 10

**Privileged and Confidential Work Product**

The Services will be done at the direction of the Firm to assist the Firm in rendering legal advice. It is the parties' intent that all of the Services are privileged and protected by the attorney work product privilege, attorney client privilege, and any other applicable privilege doctrine available under applicable law.

**Staffing**

Deborah Rieger-Paganis, Eric Koza and Susan Markel will be the managing directors responsible for the overall engagement. Deb Rieger-Paganis with be responsible for the day-to-day activities of the engagement.  She will also be assisted by a staff of consultants at various levels who have a wide range of skills and abilities related to this type of assignment. In addition, AlixPartners has relationships with, and may periodically use, independent contractors with specialized skills and abilities to assist in this engagement.

AlixPartners anticipates initially using two consultant(s) to support Deb Rieger-Paganis for this engagement. We will periodically review the staffing levels to determine the proper mix for this assignment. We will only use the necessary staff required to complete the requested or planned tasks.

Until the earlier to occur of (i) four weeks from the Engagement Commencement (as defined below) or (ii) the filing of a petition for relief under chapter 11 of the bankruptcy code, AlixPartners agrees to a cap of 40 hours per week per consultant ("Cap Period").  To the extent that the Cap Period expires in any mid-week period, the hours subject to the cap shall be adjusted pro rata based upon the number of days the consultants worked inside the Cap Period that week.

**Timing, Fees and Retainer**

AlixPartners will commence this engagement on or about April 25, 2022 after receipt of a copy of the executed Agreement accompanied by the retainer, as set forth on Schedule 1.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1. In no event shall the Firm be responsible for, have any liability for, or have any obligation for the payment of any amount owed by the Company to AlixPartners in connection with this engagement, including, without limitation, any claims for any fees, expenses, indemnification, contribution, or breach of contract.

* * *

**Alix**Partners

Weil, Gotshal & Manges LLP
Page 3 of 10

If these terms meet with your approval, please sign and return a copy of this Agreement and wire transfer the amount to establish the retainer.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP

DocuSigned by:
*Deborah Rieger-Paganis*
19D09499B843402...
Deborah Rieger-Paganis
Managing Director

DocuSigned by:
*Eric Koza*
9B8897BE2951481...
Eric Koza
Managing Director

DocuSigned by:
*Susan D Markel*
76AB12F2F4144B2...
Susan Markel
Managing Director

Acknowledged and Agreed to:

WEIL, GOTSHAL & MANGES LLP

DocuSigned by:
*Candace Arthur*
302FBFC31C43408...
By
Candace Arthur

Its: Partner

Dated: 4/28/2022 | 11:50 AM EDT

Acknowledged and Agreed to:

KServicing

DocuSigned by:
*Holly Loiseau*
EB9AEC330735431...
By:
Holly Loiseau

Its: General Counsel

Dated: 4/28/2022 | 12:01 PM EDT

**Alix**Partners

**Schedule 1**

**Fees and Expenses**

1.  **Fees:** AlixPartners' fees will be based on the hours spent by AlixPartners personnel at AlixPartners' hourly rates, which are:

| | |
|---|---|
| Managing Director | US$1,060 – US$1,335 |
| Director | US$840 - US$990 |
| Senior Vice President | US$700 – US$795 |
| Vice President | US$510 – US$685 |
| Consultant | US$190 – US$505 |
| Paraprofessional | US$320 – US$340 |
| Intern | US$75 – US$110 |
| Developer | US$315 – US$750 |

AlixPartners reviews and revises its billing rates on January 1 of each year.

2.  **Expenses:** In addition to the Fees set forth in this Schedule, the Company shall pay directly, or reimburse AlixPartners upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging and meals.

3.  **Break Fee:** AlixPartners does not seek a break fee in connection with this engagement.

4.  **Retainer:** The Company shall pay AlixPartners a retainer of US$200,000 to be applied against Fees and expenses as set forth in this Schedule and in accordance with Section 2 of the General Terms and Conditions.

5.  **Payment:** AlixPartners will submit semi-monthly invoices, or sooner such that the retainer remains with a positive balance, for services rendered and expenses incurred. All invoices shall be due and payable immediately upon receipt. No discount is provided for prompt payment, and none shall be taken, but interest on any invoices paid late shall accrue in accordance with the General Terms and Conditions. Weil shall under no circumstances be obligated to pay any compensation, expense, reimbursement, indemnification, or other amounts payable pursuant to this Schedule or the Agreement.

**AlixPartners**

**Data Protection Schedule**

**Description of Transfer**

AlixPartners will generally not process any Personal Data on behalf of the Company under this Agreement but will receive and potentially process personal details of employees/contractors of the Company who will be involved in the services to which this engagement relates such as name, job title, email address, telephone number. AlixPartners will use such personal details (i) for the purpose of communicating about the services to which this engagement relates and performing the services under this Agreement and (ii) for the duration necessary for the delivery of the services under this Agreement.

| **AlixPartners, LLP** |
| General Terms and Conditions |

These General Terms and Conditions ("Terms") are incorporated into the Agreement to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

## Section 1. Company Responsibilities

The Company will undertake responsibilities as set forth below:

1. Provide reliable and accurate detailed information, materials, documentation and

2. Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by AlixPartners in connection with this Agreement.

AlixPartners' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management.

## Section 2. Retainer, Billing, Payments and Taxes

**Retainer.** Upon execution of the Agreement, the Company shall promptly pay AlixPartners the agreed-upon advance retainer as set forth on Schedule 1. Invoices shall be offset against the retainer. Payments of invoices will be used to replenish the retainer to the agreed-upon amount. Any unearned portion of the retainer will be applied against the final invoice or returned to the Company at the end of the engagement.

**Billing and Payments.** All payments to be made to AlixPartners shall be due and payable upon delivery of invoice via check or wire transfer to AlixPartners' bank account, as shown on the invoice. All amounts invoiced are based on services rendered and expenses incurred to date, and are not contingent upon future services or Work Product (as defined below), or the outcome of any case or matter. "Fees," as used in this Agreement, shall include all amounts payable by the Company to AlixPartners in accordance with Schedule 1, including any success fee or break fee, but excluding reimbursable expenses.

Under no circumstances shall the Firm be liable for any Fees or any other amounts payable under this Agreement.

**Taxes.** AlixPartners' fees are exclusive of taxes or similar charges, which shall be the responsibility of the Company (other than taxes imposed on AlixPartners' income generally). If AlixPartners' fees are subject to any taxes, such as State sales tax, Goods and Services Tax/Harmonized Sales Tax or Value Added Tax, then AlixPartners will include such taxes on its invoices as separate line items.

## Section 3. Relationship of the Parties

AlixPartners acknowledges that the Work Product (as defined below) produced by AlixPartners pursuant to

this Agreement is intended for the purpose of facilitating services by the Firm of legal services to the Company and constitutes attorney work product and that any communication to the Firm (including any correspondence, analyses, reports, and related materials that AlixPartners prepares) is intended to constitute confidential and privileged communications. The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, AlixPartners will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Employees of AlixPartners will not be entitled to receive from the Company of the Firm any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. AlixPartners will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business. Nothing in this Agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners, the Company, or the Firm

AlixPartners is providing advisory and consulting services only, and will not make management decisions for the Company. While AlixPartners may from time to time suggest options that may be available to the Company, the ultimate decision as to such options rests with the Company, and AlixPartners makes no promise or guarantee about the outcome of the Company's matters.

AlixPartners is not an accounting firm and does not give accounting advice or guidance. While AlixPartners' work may involve analysis of accounting, business and other related records, this engagement does not constitute an audit in accordance with either generally accepted auditing standards or the standards of the Public Company Accounting Oversight Board or any other similar governing body.

AlixPartners is not authorized to practice law or provide legal advice. No services provided under this Agreement are intended to be, nor should be construed to be, legal services.

## Section 4. Confidentiality

Each party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other party during the performance of AlixPartners' services hereunder (the "Confidential Information"), and neither party will disclose any Confidential Information to any other person or entity. "Confidential Information" includes the terms of this

| **AlixPartners, LLP** |
| General Terms and Conditions |

Agreement, non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of either party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, AlixPartners from making such disclosures of Confidential Information that AlixPartners reasonably believes are required by law or any regulatory requirement or authority to clear client conflicts. AlixPartners may also disclose Confidential Information to its partners, directors, officers, employees, independent contractors and agents who have a need to know the Confidential Information as it relates to the services being provided under this Agreement, provided AlixPartners is responsible for any breach of these confidentiality obligations by any such parties. AlixPartners may make reasonable disclosures of Confidential Information to third parties, such as the Company's suppliers and/or vendors, in connection with the performance of AlixPartners' obligations and assignments hereunder, provided AlixPartners reasonably believes that such third party is bound by confidentiality obligations. In addition, AlixPartners will have the right to disclose to any person that it provided services to the Company or its affiliates and a general description of such services, but shall not provide any other information about its involvement with the Company. The obligations of the parties under this Section 4 shall survive the end of any engagement between the parties for a period of three (3) years.

Work Product (as defined in Section 5) may contain AlixPartners proprietary information or other information that is deemed to be Confidential Information for purposes of this Agreement, and the parties may not want to make public. Therefore, the parties acknowledge and agree that (i) all information (written or oral), including advice and Work Product (as defined in Section 5), generated by AlixPartners in connection with this engagement is intended solely for the benefit and use of the Company in connection with this Agreement, and (ii) no such information shall be used for any other purpose or disseminated to any third parties, or, quoted or referred to with or without attribution to AlixPartners at any time in any manner or for any purpose without AlixPartners' prior approval (not to be unreasonably withheld or delayed), except as required by law.  The Company may not rely on any draft or interim Work Product.

### Section 5. Intellectual Property

All analyses, final reports, presentation materials, and other work product (other than any Engagement Tools, as defined below) that AlixPartners creates or develops specifically for the Company and delivers to the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Company Confidential Information as defined above. AlixPartners may retain copies of the Work Product and any Confidential Information necessary to support the Work Product subject to its confidentiality obligations in this Agreement.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, templates, models, utilities and other intellectual property that AlixPartners has created, acquired or developed or will create, acquire or develop (collectively, "Engagement Tools"), are, and shall be, the sole and exclusive property of AlixPartners. The Company shall not acquire any interest in the Engagement Tools other than a limited worldwide, perpetual, non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product.

The Company acknowledges and agrees, except as otherwise set forth in this Agreement, that any Engagement Tools provided to the Company are provided "as is" and without any warranty or condition of any kind, express, implied or otherwise, including, implied warranties of merchantability or fitness for a particular purpose.

### Section 6. Framework of the Engagement

The Company acknowledges that AlixPartners is being retained by the Firm solely to assist and advise as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

### Section 7. Indemnification and Other Matters

The Company shall indemnify, hold harmless and defend AlixPartners and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "AlixPartners Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement. The Company shall pay damages and expenses as incurred, including reasonable legal fees and disbursements of counsel. If, in the opinion of counsel, representing both parties in the matter covered by this indemnification creates a potential conflict of interest, the AlixPartners Parties may engage separate counsel to represent them at the Company's expense.

The Company's indemnification obligations in this Section 7 shall be primary to, and without allocation against, any similar indemnification obligations that AlixPartners may offer to its personnel generally.

AlixPartners is not responsible for any third-party products or services separately procured by the Company. The Company's sole and exclusive rights and remedies with respect to any such third party products or services are against the third-party vendor and not against AlixPartners, whether or not AlixPartners is instrumental in procuring such third-party product or service.

| **AlixPartners, LLP** |
| General Terms and Conditions |

AlixPartners and the Company acknowledge that the Firm shall have no indemnification obligations hereunder.

### Section 8. Governing Law and Arbitration

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in New York, New York under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Notwithstanding the foregoing, any party may proceed directly to a court of competent jurisdiction to enforce the terms of this Agreement for any claim in connection with (i) the non-payment of Fees or expenses due under this Agreement, or (ii) the non-performance of obligations under Section 7.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

### Section 9. Termination and Survival

The Agreement may be terminated at any time by written notice by one party to the other, or by the Firm (on behalf of the Company); provided, however, that notwithstanding such termination AlixPartners will be entitled to any Fees and expenses due under the provisions of the Agreement (for fixed fee engagements, fees will be pro rata based on the amount of time completed). Such payment obligation shall inure to the benefit of any successor or assignee of AlixPartners.

Additionally, unless the Agreement is terminated by the Company due to AlixPartners' material breach (and such material breach continues after 30 days' written notice thereof and opportunity to cure) AlixPartners shall remain entitled to the success fee(s), if any, that otherwise would be payable during the 12 months after the date of termination of the Agreement.

Sections 2, 4, 5, 7, 8, 9, 10, 11, 12, 13 and 14 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

### Section 10. Non-Solicitation of Employees

The Company acknowledges and agrees that AlixPartners has made a significant monetary investment recruiting, hiring and training its personnel. During the term of this Agreement and for a period of two years after the final invoice is rendered by AlixPartners with respect to this engagement (the "Restrictive Period"), the Company and its affiliates agree not to directly or indirectly hire, contract with, or solicit the employment of any of AlixPartners' Managing Directors, Directors, or other employees/ contractors the Company or its affiliates had interactions with or gained knowledge about as a result of the services provided under this Agreement.

If during the Restrictive Period the Company or its affiliates directly or indirectly hires or contracts with any of AlixPartners' Managing Directors, Directors, or other employees/contractors in violation of the preceding paragraph, the Company agrees to pay to AlixPartners as liquidated damages and not as a penalty the sum total of: (i) for a Managing Director, $1,000,000; (ii) for a Director, $500,000; and (iii) for any other employee/contractor, $250,000. The Company acknowledges and agrees that liquidated damages in such amounts are (x) fair, reasonable and necessary under the circumstances to reimburse AlixPartners for the costs of recruiting, hiring and training its employees as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that AlixPartners has made in its Managing Directors, Directors, and other employees/ consultants; and (y) appropriate due to the difficulty of calculating the exact amount and value of that investment.

The provisions of this Section shall apply except to the extent the provisions conflict with applicable law.

### Section 11. Limitation of Liability

THE ALIXPARTNERS PARTIES SHALL NOT BE LIABLE TO THE COMPANY, OR ANY PARTY ASSERTING CLAIMS ON BEHALF OF THE COMPANY, EXCEPT FOR DIRECT DAMAGES FOUND IN A FINAL DETERMINATION TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE, BAD FAITH, SELF-DEALING OR INTENTIONAL MISCONDUCT OF ALIXPARTNERS. THE ALIXPARTNERS PARTIES SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, LOST PROFITS, LOST DATA, REPUTATIONAL DAMAGES, PUNITIVE DAMAGES OR ANY OTHER SIMILAR DAMAGES UNDER ANY CIRCUMSTANCES, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE ALIXPARTNERS PARTIES' AGGREGATE LIABILITY, WHETHER IN TORT, CONTRACT, OR OTHERWISE, IS LIMITED TO THE AMOUNT OF FEES PAID TO ALIXPARTNERS FOR SERVICES UNDER THIS AGREEMENT (OR IF THE CLAIM ARISES FROM AN ADDENDUM TO THIS AGREEMENT, UNDER THE APPLICABLE ADDENDUM) (THE "LIABILITY CAP"). The Liability Cap is the total limit of the AlixPartners Parties' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any

| **AlixPartners, LLP** |
| General Terms and Conditions |

other parties hereto, and to any others making claims relating to the work performed by AlixPartners pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the AlixPartners Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against the AlixPartners Parties pursuant to this Agreement exceed the Liability Cap.

## Section 12. General

**Equitable Remedies.** Each party acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of the Agreement. Each party agrees that the non-breaching party shall have the right to seek a restraining order and/or an injunction for any breach of the Agreement. If any provision of the Agreement is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** This Agreement, including the letter, the Terms and the schedule(s), contains the entire understanding of the parties relating to the services to be rendered by AlixPartners and supersedes any other communications, agreements, understandings, representations, or estimates among the parties (relating to the subject matter hereof) with respect to such services. The Agreement, including the letter, the Terms and the schedule(s), may not be amended or modified in any respect except in a writing signed by the parties. AlixPartners is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Related Matters.** If an AlixPartners Party is required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the Company shall reimburse AlixPartners for any professional time and expenses (including reasonable external and internal legal costs and e-discovery costs) incurred to respond to the request, except in cases where an AlixPartners Party is a party to the proceeding or the subject of the investigation.

**Joint and Several.** If more than one party signs this Agreement, the liability of each party shall be joint and several. In addition, in the event more than one entity is included in the definition of Company under this Agreement, the Company shall cause each other entity which is included in the definition of Company to be jointly and severally liable for the Company's liabilities and obligations set forth in this Agreement. The Firm shall not have any liability, whether joint or several, with respect to liabilities arising out of this Agreement, unless otherwise specified herein.

**Third-Party Beneficiaries.** The AlixPartners Parties shall be third-party beneficiaries with respect to Section 7 hereof.

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to AlixPartners, to:

> AlixPartners, LLP
> 2000 Town Center, Suite 2400
> Southfield, MI 48075
> Attention: General Counsel

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to AlixPartners. All notices under the Agreement shall be sufficient only if delivered by overnight mail. Any notice shall be deemed to be given only upon actual receipt.

## Section 13. Bankruptcy Related Matters

Notwithstanding any to the contrary in these Terms, in the event the Company files for protection under the U.S. Bankruptcy Code, the following provisions will prevail:

The Company shall promptly apply to the Bankruptcy Court for approval of the Company's retention of AlixPartners under the terms of the Agreement. The form of retention application and proposed order shall be reasonably acceptable to AlixPartners. AlixPartners shall have no obligation to provide any further services if the Company becomes a debtor under the U.S. Bankruptcy Code unless AlixPartners' retention under the terms of the Agreement is approved by a final order of the Bankruptcy Court reasonably acceptable to AlixPartners. The Company shall assist, or cause its counsel to assist, with filing, serving and noticing of papers related to AlixPartners' fee and expense matters.

The Company and AlixPartners agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with this Agreement.

AlixPartners will have the right to obtain independent legal counsel to obtain advice with respect to its services under this engagement. The Company will reimburse AlixPartners' for the reasonable fees and expenses of such independent legal counsel.

AlixPartners acknowledges that, during the pendency of any Bankruptcy Court approved retention, the indemnification provisions and Liability Cap set forth above may be subject to modification as stated within the Bankruptcy Court's retention order.

Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the date of filing, AlixPartners may have incurred but not billed

DocuSign Envelope ID: EF3EA5CF-8D56-4726-A20D-90868C854706

| **AlixPartners, LLP** |
| General Terms and Conditions |

fees and reimbursable expenses which relate to the prepetition period. AlixPartners will seek Bankruptcy Court approval to apply the retainer to these amounts.

If AlixPartners finds it desirable to augment its consulting staff with independent contractors (an "I/C") in this case, (i) AlixPartners will file, and require the I/C to file, 2014 affidavits indicating that the I/C has reviewed the list of the interested parties in this case, disclosing the I/C's relationships, if any, with the interested parties and indicating that the I/C is disinterested; (ii) the I/C must remain disinterested during the time that AlixPartners is involved in providing services on behalf of the Company; and (iii) the I/C must represent that he/she will not work for the Company or other parties in interest in this case during the time AlixPartners is involved in providing services to the Company. AlixPartners' standard practice is to charge for an I/C's services at the rate equal to the compensation provided by AlixPartners to such I/C.

**Section 14. Data Protection**

To the extent applicable, the Company and AlixPartners shall comply with the terms of the AlixPartners Data Protection Addendum (located at: https://www.alixpartners.com/policies/processor-data-protection-addendum/), which form part of the Agreement. The Data Protection Schedule of this Agreement shall apply to the Data Protection Addendum.

# AlixPartners

September 22, 2022

Kabbage, Inc. d/b/a KServicing

Ms. Laquisha Milner
925B Peachtree St. NE
Suite 383
Atlanta, GA 30309

**Re:      Agreement for Consulting Services**

Dear Laquisha:

This letter, together with the attached Schedules and General Terms and Conditions, sets forth the agreement ("Agreement") between AlixPartners, LLP ("AlixPartners") and Kabbage, Inc. d/b/a KServicing and certain of its affiliates and subsidiaries (the "Company") for the engagement of AlixPartners to provide consulting services to the Company.

This letter supersedes and replaces in its entirety that certain agreement between AlixPartners, LLP and Weil, Gotshal & Manges LLP, as counsel to the Company, dated April  25, 2022 (the "Initial Engagement Letter").  For the avoidance of doubt, any fees and expenses due and owing under said Initial Engagement Letter remain valid and payable.  All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedules, Exhibit and General Terms and Conditions. The Company and AlixPartners are each a "party," and together the "parties."

AlixPartners understands that the Company plans to file for protection under Chapter 11 of the United States Bankruptcy Code in the coming weeks.

**Objectives and Tasks**

The responsibilities of AlixPartners will be as follows:

*Restructuring*

- Work with the Company and its team to further identify and implement both short-term and long-term liquidity generating and cost reduction initiatives.
- Assist the Company in developing a global wind-down plan and a detailed work plan identifying key milestones and in setting appropriate priorities.
- Assist Company management and its professionals specifically assigned to sourcing, negotiating and implementing any financing (including DIP and exit financing facilities, as may be appropriate) in conjunction with the Plan of Reorganization and the overall restructuring.
- Assist management of the Company in the design and implementation of a restructuring strategy designed to maximize value, taking into account the unique interests of all constituencies.
- Work with senior management to negotiate and implement restructuring initiatives and evaluate strategic alternatives.

**AlixPartners**

Kabbage, Inc. d/b/a KServicing
Page 2 of 10

### *Communication with Outsiders*

- Assist in negotiations with stakeholders and their representatives regarding the restructuring.

- Assist in negotiations with potential acquirers of Company assets.

- Assist in communication and/or negotiate and implement restructuring initiatives and evaluate strategic alternatives.

### *Bankruptcy Case Management*

- Assist in managing the "working group" of professionals who are assisting the Company in the winddown process or who are working for the Company's various stakeholders to improve coordination of their effort and individual work product to be consistent with the Company's overall restructuring goals.

- Assist in obtaining and presenting information required by parties in interest in the Company's bankruptcy process, including official committees appointed by the United States Bankruptcy Court (the "Court") and the Court itself.

- Assist the Company in other business and financial aspects of a Chapter 11 proceeding, including, but not limited to, development of a Disclosure Statement, Plan of Reorganization, first day motions and petitions.

- Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Court as well as provide assistance in such areas as testimony before the Court on matters that are with AlixPartners' areas of expertise.

- Assist as requested in supporting any litigation that may be brought against the Company in the Court.

- Assist as requested in analyzing preferences and other avoidance actions.

- Manage the claims and claims reconciliation processes.

- Assist the Company with electronic data collection.

### *Finance and Cash Management*

- Assist the Company with providing financial leadership and support.

- Assist the Company and its management in developing and maintaining a short-term cash flow forecasting tool and related methodologies and to assist with planning for alternatives as requested by the Company

- Assist the Company in developing an actual to forecast variance reporting mechanism including written explanations of key differences.

### *Miscellaneous*

- Assist with such other matters as may be requested that fall with AlixPartners' expertise and that are mutually agreeable.

**AlixPartners**

Kabbage, Inc. d/b/a KServicing
Page 3 of 10

**Staffing**

Eric Koza and Deborah Rieger-Paganis will be the managing directors responsible for the overall engagement, assisted by a staff of consultants at various levels who have a wide range of skills and abilities related to this type of assignment. In addition, AlixPartners has relationships with, and may periodically use, independent contractors with specialized skills and abilities to assist in this engagement.

We will periodically review the staffing levels to determine the proper mix for this assignment. We will only use the necessary staff required to complete the requested or planned tasks.

**Timing, Fees and Retainer**

AlixPartners will commence this engagement on or about September 27, 2022 pending receipt of a copy of the executed Agreement.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1.

Upon the effectiveness of this Agreement, the Company expressly agrees that it approves the transfer of any unapplied retainer under the Initial Engagement Letter to be held by AlixPartners in accordance with this Agreement.

**Alix**Partners

Kabbage, Inc. d/b/a KServicing
Page 4 of 10

* * *

The Company will promptly apply to the Court to obtain approval of AlixPartners' retention and retainer nunc pro tunc to the date of filing. AlixPartners acknowledges that its retention and the terms thereof are subject to Bankruptcy Court approval.

If these terms meet with your approval, please sign and return a copy of this Agreement.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP

Eric Koza
Managing Director

Deborah Rieger-Paganis
Managing Director

Acknowledged and Agreed to:

KABBAGE, INC. D/B/A KSERVICING

By: Laquisha Milner

Its: Chief Executive Officer

Dated: 9/28/2022

**AlixPartners**

## Schedule 1

### Fees and Expenses

1. **Fees:** AlixPartners' fees will be based on the hours spent by AlixPartners personnel at AlixPartners' hourly rates, which are:

| | |
|---|---|
| Managing Director | US$1,060 – US$1,335 |
| Director | US$840 – US$990 |
| Senior Vice President | US$700 – US$795 |
| Vice President | US$510 – US$685 |
| Consultant | US$190 – US$505 |
| Paraprofessional | US$320 – US$340 |

AlixPartners generally reviews and revises its billing rates semi-annually.

2. **Success Fee:** AlixPartners does not seek a success fee in connection with this engagement.

3. **Expenses:** In addition to the Fees set forth in this Schedule, the Company shall pay directly, or reimburse AlixPartners upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging and meals.

4. **Break Fee:** AlixPartners does not seek a break fee in connection with this engagement.

5. **Retainer:** The Company provided AlixPartners with a retainer of US$500,000 under the Initial Engagement Letter (the "Retainer"). Any balance of this Retainer will be transferred to this engagement and held as an evergreen retainer, pending approval of the Court, or applied to approved post-petition fees and expenses if an evergreen retainer is not approved.

6. **Payment:** AlixPartners will submit monthly invoices for services rendered and expenses incurred. All invoices shall be due and payable immediately upon receipt.

**AlixPartners**

**Data Protection Schedule**

**Description of Transfer**

**1. Categories of Data Subjects**

_X_  Employees / Members / Contractors of Data Controller

_X_  Clients of Data Controller

____  Other:

**2. Types of Personal Data**

____  Background Check Data (Criminal History, Drug Test Results, References, etc.)

____  Biometric Data (Facial Recognition, Fingerprints, Voice Recording, etc.)

____  Browsing Data (Cookies, Website History, IP Address, etc.)

_X_  Contact Information (Contact Details, Address, Email Address, Phone Numbers, etc.)

_X_  Education and Skills (Academic Transcripts, Educational Degrees, Languages, Training, etc.)

_X_  Employment Information (Compensation, Job Title, Personnel Number, Workers Comp, Office Location, etc.)

____  Family Information (Children, Parents, etc.)

_X_  Financial Personal Information (Bank Accounts, Credit Card Numbers, etc.)

____  Genetic Information (Genetic Sequence)

____  Government Identifiers (National Identification Number, SSN, Driving License, etc.)

_X_  Personal Identifiers (Name, Age, Date of Birth, Race, Video/Photo, Signature, etc.)

____  Professional Experience & Affiliations (Trade Union Membership, Qualifications/Certifications, etc.)

____  Social Media Data (Social Media Accounts, Social Media History, etc.)

____  Travel and Expense (Travel History, Expense Details, etc.)

____  User Account Information (Account Age, Account Number, Account Password, etc.)

____  Workplace Welfare (Harassment Reports, Disciplinary Action, etc.)

____  Other:

**3. Frequency of Data Transfers**

The frequency of the transfer will be continuous (multiple transfers).

**4. Processing by AlixPartners**

4.1. Nature of processing: The nature of processing will include receiving, storing, analyzing, transmitting to appropriate parties, and disposing of Personal Data.

4.2. Purpose of the data transfer and further processing: The purpose of processing is to provide the services described in the agreement above.

4.3. The period for which the personal data will be retained, or if the period is not known, the criteria used to determine the period: AlixPartners will process Personal Data for the duration of the engagement.

4.4. Transfer to Sub-processors: Sub-processors may process Personal Data for the duration of the engagement life cycle and for the purposes specified above. See https://www.alixpartners.com/policies/subprocessors/ for a list of sub-processors.

---

**AlixPartners, LLP**
General Terms and Conditions

---

These General Terms and Conditions ("Terms") are incorporated into the Agreement to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

## Section 1. Company Responsibilities

The Company will undertake responsibilities as set forth below:

1.  Provide reliable and accurate detailed information, materials, documentation and

2.  Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by AlixPartners in connection with this Agreement.

AlixPartners' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management.

## Section 2. Retainer, Billing, Payments and Taxes

**Retainer.** If the Company becomes a debtor under the Bankruptcy Code, due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the date of filing, AlixPartners may have incurred but not billed fees and reimbursable expenses which relate to the prepetition period. AlixPartners will seek Court approval to apply the retainer and any advance payments to these amounts.

**Billing and Payments.** All payments to be made to AlixPartners shall be due and payable upon delivery of invoice via check or wire transfer to AlixPartners' bank account, as shown on the invoice. All amounts invoiced are based on services rendered and expenses incurred to date, and are not contingent upon future services or Work Product (as defined below), or the outcome of any case or matter. "Fees," as used in this Agreement, shall include all amounts payable by the Company to AlixPartners in accordance with Schedule 1, including any success fee or break fee, but excluding reimbursable expenses.

**Taxes.** AlixPartners' fees are exclusive of taxes or similar charges, which shall be the responsibility of the Company (other than taxes imposed on AlixPartners' income generally). If AlixPartners' fees are subject to any taxes, such as State sales tax, Goods and Services Tax/Harmonized Sales Tax or Value Added Tax, then AlixPartners will include such taxes on its invoices as separate line items.

## Section 3. Relationship of the Parties

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, AlixPartners will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Employees of AlixPartners will not be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. AlixPartners will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business. Nothing in this Agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners and the Company.

AlixPartners is providing advisory and consulting services only, and will not make management decisions for the Company. While AlixPartners may from time to time suggest options that may be available to the Company, the ultimate decision as to such options rests with the Company, and AlixPartners makes no promise or guarantee about the outcome of the Company's matters.

AlixPartners is not an accounting firm and does not give accounting advice or guidance. While AlixPartners' work may involve analysis of accounting, business and other related records, this engagement does not constitute an audit in accordance with either generally accepted auditing standards or the standards of the Public Company Accounting Oversight Board or any other similar governing body.

AlixPartners is not authorized to practice law or provide legal advice. No services provided under this Agreement are intended to be, nor should be construed to be, legal services.

## Section 4. Confidentiality

Each party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other party during the performance of AlixPartners' services hereunder (the "Confidential Information"), and neither party will disclose any Confidential Information to any other person or entity. "Confidential Information" includes the terms of this Agreement, non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of either party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, AlixPartners from making such disclosures of Confidential Information that AlixPartners reasonably believes are required by law or any regulatory requirement or authority to clear client conflicts. AlixPartners may also disclose Confidential

| AlixPartners, LLP |
| General Terms and Conditions |

Information to its partners, directors, officers, employees, independent contractors and agents who have a need to know the Confidential Information as it relates to the services being provided under this Agreement, provided AlixPartners is responsible for any breach of these confidentiality obligations by any such parties. AlixPartners may make reasonable disclosures of Confidential Information to third parties, such as the Company's suppliers and/or vendors, in connection with the performance of AlixPartners' obligations and assignments hereunder, provided AlixPartners reasonably believes that such third party is bound by confidentiality obligations. In addition, AlixPartners will have the right to disclose to any person that it provided services to the Company or its affiliates and a general description of such services, but shall not provide any other information about its involvement with the Company. The obligations of the parties under this Section 4 shall survive the end of any engagement between the parties for a period of three (3) years.

Work Product (as defined in Section 5) may contain AlixPartners proprietary information or other information that is deemed to be Confidential Information for purposes of this Agreement, and the parties may not want to make public. Therefore, the parties acknowledge and agree that (i) all information (written or oral), including advice and Work Product (as defined in Section 5), generated by AlixPartners in connection with this engagement is intended solely for the benefit and use of the Company in connection with this Agreement, and (ii) no such information shall be used for any other purpose or disseminated to any third parties, or, quoted or referred to with or without attribution to AlixPartners at any time in any manner or for any purpose without AlixPartners' prior approval (not to be unreasonably withheld or delayed), except as required by law. The Company may not rely on any draft or interim Work Product.

## Section 5. Intellectual Property

All analyses, final reports, presentation materials, and other work product (other than any Engagement Tools, as defined below) that AlixPartners creates or develops specifically for the Company and delivers to the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Company Confidential Information as defined above. AlixPartners may retain copies of the Work Product and any Confidential Information necessary to support the Work Product subject to its confidentiality obligations in this Agreement.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, templates, models, utilities and other intellectual property that AlixPartners has created, acquired or developed or will create, acquire or develop (collectively, "Engagement Tools"), are, and shall be, the sole and exclusive property of AlixPartners. The Company shall not acquire any interest in the Engagement Tools other than a limited worldwide, perpetual, non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product.

The Company acknowledges and agrees, except as otherwise set forth in this Agreement, that any Engagement Tools provided to the Company are provided "as is" and without any warranty or condition of any kind, express, implied or otherwise, including, implied warranties of merchantability or fitness for a particular purpose.

## Section 6. Framework of the Engagement

The Company acknowledges that it is retaining AlixPartners solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

## Section 7. Indemnification and Other Matters

The Company shall indemnify, hold harmless and defend AlixPartners and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "AlixPartners Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement. The Company shall pay damages and expenses as incurred, including reasonable legal fees and disbursements of counsel. If, in the opinion of counsel, representing both parties in the matter covered by this indemnification creates a potential conflict of interest, the AlixPartners Parties may engage separate counsel to represent them at the Company's expense.

The Company's indemnification obligations in this Section 7 shall be primary to, and without allocation against, any similar indemnification obligations that AlixPartners may offer to its personnel generally.

AlixPartners is not responsible for any third-party products or services separately procured by the Company. The Company's sole and exclusive rights and remedies with respect to any such third party products or services are against the third-party vendor and not against AlixPartners, whether or not AlixPartners is instrumental in procuring such third-party product or service.

## Section 8. Governing Law and Arbitration

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in New York, New York under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party.

| AlixPartners, LLP |
|---|
| General Terms and Conditions |

Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Notwithstanding the foregoing, any party may proceed directly to a court of competent jurisdiction to enforce the terms of this Agreement for any claim in connection with (i) the non-payment of Fees or expenses due under this Agreement, or (ii) the non-performance of obligations under Section 7.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

## Section 9. Termination and Survival

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination AlixPartners will be entitled to any Fees and expenses due under the provisions of the Agreement (for fixed fee engagements, fees will be pro rata based on the amount of time completed). Such payment obligation shall inure to the benefit of any successor or assignee of AlixPartners.

Additionally, unless the Agreement is terminated by the Company due to AlixPartners' material breach (and such material breach continues after 30 days' written notice thereof and opportunity to cure) AlixPartners shall remain entitled to the success fee(s), if any, that otherwise would be payable during the 12 months after the date of termination of the Agreement.

Sections 2, 4, 5, 7, 8, 9, 10, 11, 12, 13 and 14 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

## Section 10. Non-Solicitation of Employees

The Company acknowledges and agrees that AlixPartners has made a significant monetary investment recruiting, hiring and training its personnel. During the term of this Agreement and for a period of two years after the final invoice is rendered by AlixPartners with respect to this engagement (the "Restrictive Period"), the Company and its affiliates agree not to directly or indirectly hire, contract with, or solicit the employment of any of AlixPartners' Managing Directors, Directors, or other employees/contractors the Company or its affiliates had interactions with or gained knowledge about as a result of the services provided under this Agreement.

If during the Restrictive Period the Company or its affiliates directly or indirectly hires or contracts with any of AlixPartners' Managing Directors, Directors, or other employees/contractors in violation of the preceding paragraph, the Company agrees to pay to AlixPartners as liquidated damages and not as a penalty the sum total of: (i) for a Managing Director, $1,000,000; (ii) for a Director, $500,000; and (iii) for any other employee/contractor, $250,000. The Company acknowledges and agrees that liquidated damages in such amounts are (x) fair, reasonable and necessary under the circumstances to reimburse AlixPartners for the costs of recruiting, hiring and training its employees as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that AlixPartners has made in its Managing Directors, Directors, and other employees/ consultants; and (y) appropriate due to the difficulty of calculating the exact amount and value of that investment.

The provisions of this Section shall apply except to the extent the provisions conflict with applicable law.

## Section 11. Limitation of Liability

THE ALIXPARTNERS PARTIES SHALL NOT BE LIABLE TO THE COMPANY, OR ANY PARTY ASSERTING CLAIMS ON BEHALF OF THE COMPANY, EXCEPT FOR DIRECT DAMAGES FOUND IN A FINAL DETERMINATION TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE, BAD FAITH, SELF-DEALING OR INTENTIONAL MISCONDUCT OF ALIXPARTNERS. THE ALIXPARTNERS PARTIES SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, LOST PROFITS, LOST DATA, REPUTATIONAL DAMAGES, PUNITIVE DAMAGES OR ANY OTHER SIMILAR DAMAGES UNDER ANY CIRCUMSTANCES, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE ALIXPARTNERS PARTIES' AGGREGATE LIABILITY, WHETHER IN TORT, CONTRACT, OR OTHERWISE, IS LIMITED TO THE AMOUNT OF FEES PAID TO ALIXPARTNERS FOR SERVICES UNDER THIS AGREEMENT (OR IF THE CLAIM ARISES FROM AN ADDENDUM TO THIS AGREEMENT, UNDER THE APPLICABLE ADDENDUM) (THE "LIABILITY CAP"). The Liability Cap is the total limit of the AlixPartners Parties' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by AlixPartners pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the AlixPartners Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against the AlixPartners Parties pursuant to this Agreement exceed the Liability Cap.

## Section 12. General

**Equitable Remedies.** Each party acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of the Agreement. Each party agrees that the non-breaching party shall have the right to seek a restraining order and/or an injunction for any breach of the Agreement. If any provision of the Agreement is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** This Agreement, including the

**AlixPartners, LLP**
General Terms and Conditions

letter, the Terms and the schedule(s), contains the entire understanding of the parties relating to the services to be rendered by AlixPartners and supersedes any other communications, agreements, understandings, representations, or estimates among the parties (relating to the subject matter hereof) with respect to such services. The Agreement, including the letter, the Terms and the schedule(s), may not be amended or modified in any respect except in a writing signed by the parties. AlixPartners is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Related Matters.** If an AlixPartners Party is required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the Company shall reimburse AlixPartners for any professional time and expenses (including reasonable external and internal legal costs and e-discovery costs) incurred to respond to the request, except in cases where an AlixPartners Party is a party to the proceeding or the subject of the investigation.

**Joint and Several.** If more than one party signs this Agreement, the liability of each party shall be joint and several. In addition, in the event more than one entity is included in the definition of Company under this Agreement, the Company shall cause each other entity which is included in the definition of Company to be jointly and severally liable for the Company's liabilities and obligations set forth in this Agreement.

**Third-Party Beneficiaries.** The AlixPartners Parties shall be third-party beneficiaries with respect to Section 7 hereof.

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to AlixPartners, to:

AlixPartners, LLP
2000 Town Center, Suite 2400
Southfield, MI 48075
Attention: General Counsel

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to AlixPartners. All notices under the Agreement shall be sufficient only if delivered by overnight mail. Any notice shall be deemed to be given only upon actual receipt.

### Section 13. Bankruptcy Related Matters

Notwithstanding any to the contrary in these Terms, in the event the Company files for protection under the U.S. Bankruptcy Code, the following provisions will prevail:

The Company shall promptly apply to the Bankruptcy Court for approval of the Company's retention of AlixPartners under the terms of the Agreement. The form of retention application and proposed order shall be reasonably acceptable to AlixPartners. AlixPartners shall have no obligation to provide any further services

if the Company becomes a debtor under the U.S. Bankruptcy Code unless AlixPartners' retention under the terms of the Agreement is approved by a final order of the Bankruptcy Court reasonably acceptable to AlixPartners. The Company shall assist, or cause its counsel to assist, with filing, serving and noticing of papers related to AlixPartners' fee and expense matters.

The Company and AlixPartners agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with this Agreement.

AlixPartners will have the right to obtain independent legal counsel to obtain advice with respect to its services under this engagement. The Company will reimburse AlixPartners' for the reasonable fees and expenses of such independent legal counsel.

AlixPartners acknowledges that, during the pendency of any Bankruptcy Court approved retention, the indemnification provisions and Liability Cap set forth above may be subject to modification as stated within the Bankruptcy Court's retention order.

Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the date of filing, AlixPartners may have incurred but not billed fees and reimbursable expenses which relate to the prepetition period. AlixPartners will seek Bankruptcy Court approval to apply the retainer to these amounts.

If AlixPartners finds it desirable to augment its consulting staff with independent contractors (an "I/C") in this case, (i) AlixPartners will file, and require the I/C to file, 2014 affidavits indicating that the I/C has reviewed the list of the interested parties in this case, disclosing the I/C's relationships, if any, with the interested parties and indicating that the I/C is disinterested; (ii) the I/C must remain disinterested during the time that AlixPartners is involved in providing services on behalf of the Company; and (iii) the I/C must represent that he/she will not work for the Company or other parties in interest in this case during the time AlixPartners is involved in providing services to the Company. AlixPartners' standard practice is to charge for an I/C's services at the rate equal to the compensation provided by AlixPartners to such I/C.

### Section 14. Data Protection

To the extent applicable, the Company and AlixPartners shall comply with the terms of the AlixPartners Data Protection Addendum (located at: https://www.alixpartners.com/policies/processor-data-protection-addendum/), which form part of the Agreement. The Data Protection Schedule of this Agreement shall apply to the Data Protection Addendum.

## Exhibit C

**Rieger-Paganis Declaration**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------- x
In re                                    :    **Chapter 11**
                                         :
**KABBAGE, INC. d/b/a KSERVICING**, *et al.*,  :    **Case No. 22-10951 (      )**
                                         :
                                         :
           Debtors.[1]                   :    **(Joint Administration Requested)**
---------------------------------------------------------- x

## DECLARATION OF DEBORAH RIEGER-PAGANIS
## IN SUPPORT OF DEBTORS' APPLICATION TO
## EMPLOY AND RETAIN ALIXPARTNERS, LLP AS FINANCIAL
## ADVISOR TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

I, Deborah Rieger-Paganis, make this Declaration pursuant to 28 U.S.C. § 1746, and state:

1.    I am a Managing Director of AlixPartners, LLP ("**AlixPartners**"), which has a principal place of business at 909 Third Avenue, Floor 30, New York, New York 10022.

2.    I submit this declaration (the "**Declaration**") on behalf of AlixPartners in support of the *Debtors' Application for an Order Authorizing Debtors to Retain and Employ AlixPartners, LLP as Financial Advisor Effective as of the Petition Date* (the "**Application**"),[2] by which the Debtors are seeking retention of AlixPartners on the terms and conditions set forth in the Application and the engagement letter attached to the Application as **Exhibit B** (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A).  Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Application.

"**Engagement Letter**"). Except as otherwise noted,[3] I have personal knowledge of the matters set forth herein. If called and sworn as a witness, I could, and would, testify competently to the matters set forth herein.

<u>**AlixPartners' Qualifications**</u>

3.    AlixPartners is an internationally recognized restructuring and turnaround firm with substantial experience in providing financial advisory services and has an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States. In light of the size and complexity of these Chapter 11 Cases, the Debtors require a qualified and experienced financial advisor with the resources, capabilities, and experience of AlixPartners to assist them in pursuing the transaction(s) that are crucial to the success of the Debtors' Chapter 11 Cases. AlixPartners performs critical services that complement the services provided by the Debtors' other professionals.

4.    AlixPartners has assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to these Chapter 11 Cases. Its professionals have provided restructuring or crisis management services in numerous large cases, including recent filings in this district. *See, e.g.*, *In re MD Helicopters, Inc.,* No. 22-10263 (KBO) (Bankr. D. Del. Apr. 25, 2022); *In re Alto Maipo Delaware LLC*, No. 21-11507 (KBO) (Bankr. D. Del. Dec. 16, 2021); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Dec. 8, 2021); *In re Alpha Latam Mgmt., LLC*, No. 21-11109 (JKS) (Bankr. D. Del. Sept. 15, 2021); *In re Nine Point Energy, LLC*, No. 21-10570 (MFW) (Bankr. D. Del. Apr. 20, 2021); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Apr. 13, 2021); *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Nov. 19, 2020); *In re*

---

[3] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at AlixPartners and are based on information provided by them.

2

*RGN-Grp. Holdings, LLC*, No. 20-11961 (BLS) (Bankr. D. Del. Sept. 15, 2020); *In re Skillsoft Corp.*, No. 20-11532 (MFW) (Bankr. D. Del. July 23, 2020); *In re Celadon Grp., Inc.*, No. 19-12606 (KBO) (Bankr. D. Del. Jan. 3, 2020); *In re Bumble Bee Parent, Inc.*, No. 19-12505 (LSS) (Bankr. D. Del. Dec. 26, 2019); *In re Hexion Holdings LLC*, No. 19-10684 (KG) (Bankr. D. Del. May 1, 2019; *In re David's Bridal,* No. 18-12635 (LSS) (Bankr, D. Del. Dec. 18, 2018); *In re Mattress Firm, Inc.*, No. 18-12241 (CSS) (Bankr. D. Del. Nov. 7, 2018); *In re Am. Tire Distribs.*, No. 18-12221 (KJC) (Bankr. D. Del. Nov. 1, 2018); *In re The Bon-Ton Stores, Inc.,* No. 18-10248 (MFW) (Bankr. D. Del. Mar. 6, 2018; *In re Charming Charlie Holdings, Inc.*, No. 17-12906 (CSS) (Bankr. D. Del. Jan. 20, 2018); and *In re Prospector Offshore Drilling S.à r.l.*, No. 17-11572 (CSS) (Bankr. D. Del. Oct. 2, 2017).

5.    The Debtors have selected AlixPartners as their financial advisor because of AlixPartners' experience and reputation for providing financial advisory services in large, complex chapter 11 cases such as those listed above.  Furthermore, AlixPartners has performed significant prepetition work for the Debtors, and as a result has acquired significant knowledge of the Debtors and their businesses, and familiarity with the Debtors' financial affairs, debt structure, operations, and related matters.  Likewise, in providing prepetition services to the Debtors, AlixPartners' professionals have worked closely with the Debtors' management and their other advisors.  Accordingly, AlixPartners has experience, expertise, and specifically relevant knowledge regarding the Debtors that will assist it in providing effective and efficient services in these Chapter 11 Cases.  The Debtors submit that the retention of AlixPartners on the terms and conditions set forth herein are necessary and appropriate, in the best of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

6.    If the Application is approved, AlixPartners' Personnel, all with substantial expertise in the areas discussed above, will continue to provide services to the Debtors.  Such

personnel will work closely with the Debtors' management and other professionals throughout the restructuring process. By virtue of the expertise of its restructuring personnel and the significant prepetition work that AlixPartners performed for the Debtors, AlixPartners is well-qualified to provide services to and represent the Debtors' interests in these Chapter 11 Cases.

### Services to be Provided

7.     Prior to the Petition Date, the Debtors and AlixPartners entered into the Engagement Letter, which governs the relationship between them. The terms and conditions of the Engagement Letter were negotiated between the Debtors and AlixPartners and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Under the Engagement Letter, AlixPartners has assisted, and it is expected that AlixPartners will continue to assist, the Debtors in matters throughout the course of these Chapter 11 Cases, including, but not limited to, the following:

*Restructuring*

- Work with the Debtors and their team to further identify and implement both short-term and long-term liquidity-generating and cost reduction initiatives.
- Assist the Debtors in developing a global wind-down plan and a detailed work plan identifying key milestones and in setting appropriate priorities.
- Assist Debtors' management and their professionals specifically assigned to sourcing, negotiating and implementing any financing in conjunction with the Chapter 11 Plan and the overall restructuring, as applicable.
- Assist Debtors' management in the design and implementation of a restructuring strategy designed to maximize value, taking into account the unique interests of all constituencies.
- Work with senior management to negotiate and implement restructuring initiatives and evaluate strategic alternatives.

*Communication with Outsiders*

- Assist in negotiations with stakeholders and their representatives regarding the restructuring.
- Assist in negotiations with potential acquirers of the Debtors' assets.

4

- Assist in communication and/or negotiate and implement restructuring initiatives and evaluate strategic alternatives.

### Bankruptcy Case Management

- Assist in managing the "working group" professionals who are assisting the Debtors in the wind down process or who are working for the Debtors' various stakeholders to improve coordination of their efforts and individual work product to be consistent with the Debtors' overall restructuring goals.

- Assist in obtaining and presenting information required by parties in interest in the Debtors' bankruptcy process, including official committees appointed by the Court and the Court itself.

- Assist the Debtors in other business and financial aspects of a Chapter 11 proceeding, including, but not limited to, development of a disclosure statement, Chapter 11 Plan, first day motions and petitions.

- Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Court, as well as provide assistance in areas such as testimony before the Court on matters that are within AlixPartners' areas of expertise.

- Assist as requested in supporting any litigation that may be brought against the Debtors in the Court.

- Assist as requested in analyzing preferences and other avoidance actions.

- Manage the claims reconciliation processes.

- Assist the Debtors with electronic data collection.

### Finance and Cash Management

- Assist the Debtors with providing financial leadership and support.

- Assist the Debtors and their management in developing and maintaining a short-term cash flow forecasting tool and related methodologies and to assist with planning for alternatives as requested by the Debtors.

- Assist the Debtors in developing an actual to forecast variance reporting mechanism including written explanations of key differences.

### Miscellaneous

- Assist with such other matters as may be requested that fall with AlixPartners' expertise and that are mutually agreeable.

8.     Such financial advisory services are necessary to the Debtors' restructuring efforts and in the ongoing operation and management of the Debtors' businesses while subject to chapter 11 of the Bankruptcy Code.

5

9.      When necessary, the individuals working on this matter (the "**AlixPartners Personnel**") will be assisted by or replaced by various professionals at various levels.

### No Duplication of Services

10.      AlixPartners understands that the Debtors may retain additional professionals during the term of its engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.  The services provided by AlixPartners will complement, and not duplicate, the services to be rendered by any other professional retained in these Chapter 11 Cases.

### Professional Compensation and Expense Reimbursement

11.      AlixPartners' decision to accept this engagement to provide services to the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in **Schedule 1** of the Engagement Letter (the "**Fee and Expense Structure**").

12.      AlixPartners' current standard hourly rates for 2022, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
|---|---|
| Managing Director | $1,060 – $1,335 |
| Director | $840 – $990 |
| Senior Vice President | $700 – $795 |
| Vice President | $510 – $685 |
| Consultant | $190 – $505 |
| Paraprofessional | $320 – $340 |

6

13.     AlixPartners reviews and revises its billing rates on a semi-annual basis. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates become effective.

14.     To the extent the Debtors request services related to electronic discovery and data collection, certain monthly hosting fees and consulting fees will apply, as further detailed and outlined by the Engagement Letter.

15.     In addition to compensation for professional services rendered by AlixPartners Personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses incurred in connection with these Chapter 11 Cases, including but not limited to transportation costs, lodging, and meals.

16.     To the extent that AlixPartners requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.

17.     To the extent AlixPartners uses the services of independent contractors (the "**Contractors**") in these Chapter 11 Cases, AlixPartners shall:  (a) pass through the cost of such Contractors to the Debtors at the same rate that AlixPartners pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for AlixPartners; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

18.     AlixPartners intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to this Court's approval and in compliance with applicable provisions of the Bankruptcy Code, including sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local

7

Rules, and any other applicable procedures and orders of this Court and consistent with the proposed terms of compensation set forth in the Engagement Letter.

19.    AlixPartners will maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in these Chapter 11 Cases.  Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtors.

20.    AlixPartners often provides services for compensation that includes hourly-based fees and performance-based, contingent-incentive compensation earned upon achieving meaningful results.  AlixPartners does not request a success fee in connection with these Chapter 11 Cases.

21.    The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by AlixPartners and other comparable firms that render similar services under similar circumstances.  AlixPartners believes that the Fee and Expense Structure is reasonable, market-based, and designed to compensate AlixPartners fairly for its work and to cover fixed and routine overhead expenses.

22.    Prior to the Petition Date, AlixPartners received a retainer in the amount of $500,000 from the Debtors (the "**Retainer**").  According to AlixPartners' books and records, during the 90-day period prior to the Petition Date, the Debtors paid AlixPartners $2,653,545.74 in aggregate for professional services performed and expenses incurred, including advanced payments and excluding the Retainer.

23.    AlixPartners is requesting that any balance of the Retainer constitute an evergreen retainer as security for post-petition services and expenses.  I believe that an evergreen retainer is appropriate in these Chapter 11 Cases because it reflects normal business terms in the

8

marketplace and because AlixPartners and the Debtors are sophisticated business entities that have negotiated the Retainer at arm's length.

24.     Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior, and subsequent to, the Petition Date, AlixPartners may have incurred fees and reimbursable expenses that relate to the prepetition period which remain unpaid.  Approval is sought from this Court for AlixPartners to apply the Retainer and advanced payments to these unpaid amounts.  Upon entry of an order approving the relief requested in the Application, the Debtors will not owe AlixPartners any sums for prepetition services.

## **Indemnification**

25.     The Engagement Letter contains standard indemnification language with respect to AlixPartners' services including, without limitation, an agreement by the Debtors to indemnify AlixPartners and its affiliates, partners, directors, officers, employees and agents (each, an "**AlixPartners Party**" and collectively, the "**AlixPartners Parties**") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Engagement Letter, except to the extent caused by gross negligence, willful misconduct, or fraud of any AlixPartners Party.

26.     The Debtors and AlixPartners believe that the indemnification provisions contained in the Engagement Letter, as may be amended in the Proposed Order, are customary and reasonable for AlixPartners and comparable firms providing financial advisory services, and as would be modified pursuant to the foregoing limitations, reflect the qualifications and limitations on indemnification provisions that are customary in this district and others.  *See, e.g., In re TNT Crane & Rigging, Inc.*, No. 20-11982 (BLS) (Bankr. D. Del. Sept. 18, 2020) (approving similar modified indemnification provisions for the retention and employment of FTI Consulting, Inc.); *In re VIVUS, Inc.*, No. 20-11779 (LSS) (Bankr. D. Del. Aug. 24, 2020) (approving similar modified

9

indemnification provisions for the retention and employment of Ernst & Young LLP); *In re Lucky Brand Dungarees, LLC*, No. 20-11768 (CSS) (Bankr. D. Del. July 29, 2020) (approving similar modified indemnification provisions for the retention and employment of Houlihan Lokey Capital, Inc.); *In re Paddock Enters., LLC*, No. 20-10028 (LSS) (Bankr. D. Del. June 24, 2020) (approving similar modified indemnification provisions for the retention and employment of Alvarez & Marsal North America, LLC); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. May 18, 2020) (approving similar modified indemnification provisions for the retention and employment of Houlihan Lokey Capital, Inc.); *In re Fred's Inc.*, No. 19-11984 (CSS) (Bankr. D. Del. Oct. 30, 2019) (approving similar modified indemnification provisions for the retention and employment of Alvarez & Marsal North America, LLC).

27.     Moreover, the terms and conditions of the indemnification provisions were negotiated by the Debtors and AlixPartners at arm's length and in good faith.  The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of AlixPartners' proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require AlixPartners' services to successfully restructure. Accordingly, as part of this Application, the Debtors request that this Court approve the indemnification provisions as set forth in the Engagement Letter, as may be amended by the Proposed Order (setting forth the foregoing limitations).

### AlixPartners' Disinterestedness

28.     In connection with its proposed retention by the Debtors in these Chapter 11 Cases, AlixPartners undertook a complex process, the details of which are set forth in **Schedule 2**, to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors' estates.  Specifically, AlixPartners obtained from the Debtors and/or their representatives a potential parties in interest

10

list in these Chapter 11 Cases (each party a "**Party in Interest**," and collectively the "**Parties in Interest List**").  The Parties in Interest List is attached hereto as **Schedule 1.**  A search was performed for connections to each Party in Interest as to AlixPartners Holdings, LLP, AlixPartners' parent company ("**Holdings**"), and each of Holdings' U.S. and non-U.S. subsidiaries ("**Holdings Enterprise**", collectively "**AP**").  The results for connections found on the Parties in Interest List are disclosed on **Schedule 2**.

29.    Based on that review, AlixPartners represents that, to the best of its knowledge, AlixPartners knows of no fact or situation that would represent a conflict of interest for AlixPartners with regard to the Debtors, as it does not or hold or represent an interest adverse to the Debtors' estates.

30.    AlixPartners and its affiliates are advisors and crisis managers providing services and advice in many areas, including restructuring and distressed debt.  As part of its diverse practice, AlixPartners appears in numerous cases, proceedings, and transactions involving many different attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and parties in interest in these Chapter 11 Cases.  Further, AlixPartners has in the past, and may in the future, be represented by various attorneys and law firms, some of whom may be involved in these Chapter 11 Cases.  In addition, AlixPartners has been in the past, and likely will be in the future, engaged in matters unrelated to the Debtors or these Chapter 11 Cases in which it works with or in opposition to other professionals involved in these Chapter 11 Cases.  Moreover, AlixPartners might have referred work to other professionals who are retained in these Chapter 11 Cases.  Likewise, certain such professionals who are retained in these Chapter 11 Cases might have referred work to AlixPartners.  To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these business relationships constitute interests adverse to the Debtors.

11

31.     From time to time, AlixPartners has provided services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties adverse to the Debtors in matters wholly unrelated to these Chapter 11 Cases.  As described herein, however, AlixPartners has undertaken a detailed search to determine, and to disclose, whether it is providing or has provided services to any significant creditor, equity security holder, insider or other party in interest in such unrelated matters.

32.     To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of the AlixPartners Personnel (a) have any connection with the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), or any employee in the Office of the U.S. Trustee; or (b) are related or connected to any United States Bankruptcy Judge for the District of Delaware, except as otherwise set forth **Schedule 2**.

33.     To the best of my knowledge, none of the members of the engagement team or AP is a direct holder of any of the Debtors' securities.  It is possible that members of the engagement team or certain of AlixPartners employees, managing directors, board members, equity holders, or an affiliate of any of the foregoing, may own interests in mutual funds or other investment vehicles (including various types of private funds) that own the Debtors' or other parties in interest's debt or equity securities or other financial instruments, including bank loans and other obligations.  Typically, the holders of such interests have no control over investment decisions related to such investment funds or financial instruments.  AlixPartners' policy prohibits its employees from personally trading in the Debtors' securities.

34.     To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, AlixPartners has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, these Chapter 11 Cases.  AlixPartners will continue to provide professional services to entities that may be creditors

12

or equity security holders of the Debtors or other parties in interest in these Chapter 11 Cases, provided that such services do not relate to, or have any direct connection with, these Chapter 11 Cases.

35.     Certain of AlixPartners' employees, managing directors, board members, equity holders, or an affiliate of any of the foregoing may have financial accounts or insurance relationships with a potential party in interest.

36.     Despite the efforts described above to identify and disclose the connections that AP and its affiliates have with parties in interest in these Chapter 11 Cases, because the Debtors form a large enterprise with numerous creditors and other relationships, AlixPartners is unable to state with certainty that every client relationship or other connection has been identified and disclosed.

37.     In accordance with section 504 of the Bankruptcy Code and Bankruptcy Rule 2016, neither I nor AlixPartners has entered into any agreements, express or implied, with any other party in interest, including the Debtors, any creditor, or any attorney for such party in interest in these Chapter 11 Cases, (a) for the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered in connection therewith, (b) for payment of such compensation from the assets of the estates in excess of the compensation allowed by this Court pursuant to the applicable provisions of the Bankruptcy Code, or (c) for payment of compensation in connection with these Chapter 11 Cases other than in accordance with the applicable provisions of the Bankruptcy Code.

38.     Accordingly, except as otherwise set forth herein, insofar as I have been able to determine, neither I, AlixPartners nor any AlixPartners Personnel holds or represents any interest adverse to the Debtors or their estates, and AlixPartners is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the

13

Bankruptcy Code, in that AlixPartners and its professionals and employees who will work on the engagement:

        (a)      are not creditors, equity security holders, or insiders of the Debtors;

        (b)      were not, within two years before the Petition Date, a director, officer or employee of the Debtors; and

        (c)      do not have an interest materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

39.      If AlixPartners discovers additional information that requires disclosure, AlixPartners will promptly file a supplemental disclosure with this Court as required by Bankruptcy Rule 2014.  AlixPartners reserves the right to supplement this Declaration in the event that AlixPartners discovers any facts bearing on matters described in this Declaration regarding AlixPartners' employment by the Debtors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: October 4, 2022

**ALIXPARTNERS, LLP**

By:    */s/ Deborah Rieger-Paganis*
       Deborah Rieger-Paganis
       Managing Director

14

## **Schedule 1**

## **Potential Parties in Interest**

KServicing Retention Checklist Category

1. Debtors – exact Corporate Name (name should be the same as in the articles of incorporation)
2. Non Debtor Affiliates and Subsidiaries (including any partnerships and JV partners)
3. Debtors' Trade Names and Aliases (up to 8 years) (a/k/a, f/k/a, d/b/a)
4. Banks/Bank Accounts
5. Banks – Servicing
6. Bankruptcy Judges and Staff (District of Delaware)
7. Benefit Providers (Workers Compensation/Pension Plans/Third Party Administrators)
8. Clerk of the Court
9. Committees and Committee Members (including UCC)
10. Non-Debtor Professionals (law firms, accountants, and other professionals)
11. Contract Counterparties (includes patents and intellectual property)
12. Current Officers and Directors (include senior management)
13. Affiliations of Current Officers and Directors
14. Debtors Professionals (law firms, accountants and other professionals)
15. Former Officers and Directors (include senior management if readily available) (3 years)
16. Affiliation of Former Officers and Directors (as of last day with company)
17. Insurance/Insurance Provider
18. Landlords and parties to leases
19. Lenders, Noteholders, Administrative Agents and Indenture Trustees (includes ABL Lenders/Term Loan Lender/Revolver/Collateral Agents/Prepetition & Proposed Postpetition)
20. List of Secured Creditors
21. Top 30 Unsecured Creditors
22. Litigation Counterparties/Litigation Pending Lawsuits (includes threatened litigation)
23. Litigation - Governmental Investigations Agencies
24. Other Parties in Interest (Notice of Appearance Parties, Ombudsman, any other person or group appointed)
25. Other Professionals
26. Regulatory and Government (Federal, State, and Local)
27. Significant Customers
28. Significant Shareholders (more than 5% of equity)
29. Taxing Authorities (Federal, State, and Local; trust fund, use property, franchise, sales)
30. UCC Search Results/UCC Lien Search Results
31. Unions
32. United States Attorney's Office for the District of Delaware
33. United States Trustee and Staff (District of Delaware)
34. Utility Providers/Utility Brokers
35. Vendors/Suppliers (includes critical, foreign, common carrier, shippers, warehousemen, customs duties, brokers charges, facilities provider, etc.)

1. **Debtors**

(1) Kabbage, Inc.
(2) Kabbage Canada Holdings, LLC
(3) Kabbage Asset Securitization LLC
(4) Kabbage Asset Funding 2017-A LLC
(5) Kabbage Asset Funding 2019-A LLC
(6) Kabbage Diameter, LLC

2. **Non-Debtor Affiliates and Subsidiaries (including any partnerships and JV partners)**

(1) Kabbage Financial Services Limited (UK entity)
(2) Kabbage India Private Limited (India entity)

3. **Debtors' Trade Names and Aliases (up to 8 years) (a/k/a, f/k/a, d/b/a)**

(1) d/b/a KServicing
(2) d/b/a KServicing Corp.
(3) d/b/a KServicing, Inc.

4. **Banks/Bank Accounts**

(1) Celtic Bank
(2) Primis Bank
(3) Synovus Bank (Synovus Financial Corp.)

5. **Banks – Servicing**

(1) Celtic Bank
(2) Cross River Bank
(3) Customers Bank
(4) HCG (a/k/a Home Capital Group Inc.)
(5) Stone Ridge

6. **Bankruptcy Judges and Staff for the District of Delaware**

(1) Chief Judge Laurie Selber Silverstein
(2) Cacia Batts
(3) Lora Johnson
(4) Judge John T. Dorsey
(5) Laura Haney
(6) Robert Cavello
(7) Judge Craig T. Goldblatt
(8) Demitra Yeager
(9) Nickita Barksdale
(10) Judge Karen B. Owens
(11) Claire Brady
(12) Marquietta Lopez
(13) Judge Brendan L. Shannon
(14) Jill Walker
(15) Rachel Bello

(16) Judge J. Kate Stickles
(17) Paula Subda
(18) Al Lugano
(19) Judge Mary F. Walrath
(20) Catherine Farrell
(21) Laurie Capp
(22) Judge Ashely M. Chan
(23) Joan Ranieri

**7.  Benefit Providers (Workers Compensation/Pension Plans/Third Party Administrators)**

(1) Blue Cross Blue Shield of California
(2) Hawaii Medical Service Association (HMSA) - Blue Cross Blue Shield of Hawaii
(3) Insperity, Inc.
(4) Kaiser Permanente
(5) New York Life
(6) New York Life (f/k/a Cigna)
(7) Optum Bank
(8) UnitedHealthcare
(9) UnitedHealthcare Dental
(10) UnitedHealthcare of California
(11) VSP Choice

**8.  Clerk of the Court**

(1) Una O'Boyle

**9.  Committees and Committee Members**

[Unknown at this time]

**10.  Non-Debtors Professionals (law firms, accountants, and other professionals)**

(1) Cleary Gottlieb Steen & Hamilton LLP
(2) Holland & Knight LLP
(3) Quinn Emanuel Urquhart & Sullivan LLP
(4) [UCC Legal]
(5) [UCC Financial]

**11.  Contract Counterparties (includes patents and intellectual property)**

(1) Abel Commercial Funding
(2) Airbnb, Inc.
(3) American Nation Bank
(4) Alexandra Schieren
(5) A-Lign Assurance
(6) A-Lign Compliance and Security, Inc.
(7) Altabank
(8) American Express Travel Related Services Company, Inc.
(9) Andy Mei
(10) Anthony Gallucci

(11) Apisero, Inc.
(12) Aprio, LLP
(13) Automation Anywhere, Inc.
(14) Azlo Business, Inc.
(15) Bank of Bird in Hand
(16) Become Technological Solutions, Inc.
(17) Better Impression Ltd.
(18) Bhayva Brundavanam
(19) Big Think Capital
(20) Biz2credit
(21) BlackLine Systems, Inc.
(22) Bonduel State Bank
(23) Bradley Wells
(24) Carter Bank & Trust
(25) Catherine Pargeter
(26) Celtic Bank Corporation
(27) CentSai
(28) Cobbs Allen Capital, LLC d/b/a CAC Specialty
(29) CommerceOne Bank
(30) Community Financial Services Bank
(31) Community National Bank
(32) CoreCard Software, Inc.
(33) Credit Suisse
(34) Crestmont Capital, LLC
(35) Cross River Bank
(36) CSC
(37) Cullum Financial LLC d/b/a Walloot
(38) Customer Bank
(39) David Rodin
(40) David Snitkof
(41) David Stein d/b/a Law Office of David Stein d/b/a David Stein Law Group
(42) Daysmart
(43) Debt Settlement Info Bank
(44) Docusign
(45) Dorado Real Estate, Inc d/b/a Host Financial
(46) Dynamic Recovery Solutions, LLC
(47) Endurance International Group, Inc.
(48) East West Bank
(49) Emprise Bank
(50) Erik Goshin
(51) Evangelical Christian Credit Union (ECCU)
(52) Ernst & Young LLP
(53) Farm Credit East, ACA
(54) Farm Credit West, ACA
(55) Federal Reserve
(56) First Florida Credit Union
(57) First National Bank of Syracuse
(58) five9 Inc.
(59) FNBC Bank and Trust
(60) Forensic Risk Alliance Inc.
(61) Fortis Advisors, LLC

(62) Fortis Private Bank
(63) Frank Sauer
(64) Fraz Khalil
(65) GoDaddy.com, LLC
(66) Guggenheim Securities, LLC
(67) Guideline
(68) Guillaume Poirier
(69) Hi Tech Capital
(70) Hyperion Bank
(71) Innovative Funding Solutions, Inc.
(72) Investar Bank, National Association
(73) Investment 360
(74) InscribeAI, Inc.
(75) Insperity
(76) Invariant LLC
(77) iAdvance Now Inc.
(78) James Candalino
(79) James Frohnhofer
(80) Jason Dolinger
(81) Jason Hwa
(82) Jonathan Kelfer
(83) Jones Day
(84) Karrot
(85) KLDiscovery Ontrack, LLC
(86) Kroll Associates, Inc.
(87) Legacy Bank Colorado
(88) Lendio, Inc.
(89) Level Up Funding LLC
(90) LexisNexis Risk Solutions FL Inc.
(91) Lexolution, LLC
(92) Liam Von Thien
(93) LIG International LLC
(94) Lincoln and Morgan, LLC
(95) Llano National Bank
(96) Macquarie
(97) Major, Lindsey & Africa
(98) Marqeta, Inc
(99) MasterCard International Incorporated
(100) Matt Burton
(101) Mechanics Bank
(102) Merchant and Manufacturers Bank
(103) Mission Capital d/b/a SBG Funding
(104) Moore Colson & Company, P.C.
(105) MorganFranklin Consulting, LLC
(106) Mountainseed Real Estate Services, LLC
(107) National Check Resolution, Inc.
(108) Natural Intelligence Ltd.
(109) Nicholas DelZingaro
(110) Northern California National Bank
(111) Northwest Farm Credit Services, FLCA
(112) Okta, Inc.

(113) OnCourse Learning d/b/a BankersEdge
(114) Option 1 Partners, LLC
(115) Orchard App, Inc.
(116) P.A.R. Consulting d/b/a US Business Funding
(117) People Bank
(118) PharmaCentra LLC
(119) Prospera Credit Union
(120) Providence Bank
(121) Quick Funding Solutions LLC
(122) Radius Intelligence, Inc.
(123) Redwood Growth Capital, LLC
(124) Red River Bank
(125) ReliaQuest Holdings, LLC
(126) Resource Bank
(127) Salesforce
(128) Sam Zakalik
(129) Sound Point Capital Management, LP
(130) South State Bank
(131) Stericycle Inc.
(132) Strategic Capital
(133) Synovus
(134) The Law Office of Hayes & Welsh
(135) The National Directory of Registered Tax Return Preparers & Professionals Ltd
(136) The Poplar Grove State Bank
(137) The Provident Bank
(138) TransUnion Risk and Alternative Data Solutions, Inc. (TRADS)
(139) Trevelino/Keller and Groovy Studios
(140) TrustArc Inc.
(141) United Capital Source Inc
(142) United Resources Enterprise Corp. d/b/a Brickell Capital Finance
(143) Upwise Capital, LLC
(144) URS Technologies Solutions LLC
(145) Vaco LLC
(146) Venture Lending & Leasing VII, Inc.
(147) Venture Lending & Leasing VIII, Inc.
(148) Visa U.S.A. Inc.
(149) Vital Outsourcing Services, Inc.
(150) Walker Morris
(151) WeTravel, Inc.
(152) Wheaten Financial, Inc.
(153) Xact Data Discovery
(154) Yuhui Yang
(155) Zendesk
(156) Zip Capital Group, LLC
(157) ZMC & Associates LLC

**12. Current Officers and Directors (include senior management)**

*Current Officers*

(1) Salim Kafiti

(2) Ian Cox
(3) Holly Loiseau
(4) David Walker
(5) Laquisha Milner
(6) Donna Evans

*Current Directors*

(1) Laquisha Milner
(2) Robin Gregg
(3) Eric Hartz (dba CorporateHartz, LLC)
(4) John Hebert
(5) Lawrence X. Taylor

*Current Independent Manager*

(1) John Hebert

### 13. Affiliations of Current Officers and Directors

(1)  Solomon's Temple
(2)  Vector Solutions
(3) M2 Business Group, LLC
(4) Point Predictive
(5) DRUM Technologies
(6) Roadsync
(7) Lending Science
(8) PadSplit
(9) Emory Goizueta Business School
(10) American Chemistry Council
(11) Nexus Circular
(12) Corporation Service Company (CSC)
(13) 1847 Holdings
(14) Item 9 Labs
(15) Barrie House Coffee Roasters
(16) CLP Holdings III, LLC
(17) Taylor Strategy Group
(18) National Association of Corporate Directors
(19) Arizona State University
(20) Major Lindsey & Africa
(21) Automatic Data Processing, Inc. (ADP)
(22) Clairvoyant Ventures, LLC
(23) Kafiti Real Estate Group, Inc.
(24) Electrolux AB
(25) Libra Risk Management
(26) Creative Essentials, LLC
(27) National Bar Association Executive Committee, Commercial Law Section
(28) Moore Colson
(29) Magnolia Trust Company

### 14. Debtors Professionals (law firms, accountants and other professionals)

(1) AlixPartners, LLP
(2) Forensic Risk Alliance Inc.
(3) Greenberg Traurig, LLP
(4) Jones Day
(5) KPMG
(6) McGuireWoods LLP
(7) Omni Agent Solutions
(8) Richard Layton & Finger
(9) Weil, Gotshal & Manges LLP

**15.  Former Officers and Directors (include senior management if readily available) (3 years)**

(1) Daniel Scott Eidson
(2) Jon Hoffman
(3) Julia McCullough
(4) Kathryn Petralia
(5) Kimberly Withrow
(6) L. Scott Askins
(7) Marc Gorlin
(8) Oneal Bhambani
(9) Robert Frohwein
(10) Spencer Robinson
(11) Troy Deus

**16.  Affiliation of Former Officers and Directors (as of last day with company)**

(1)  Corporation Service Company (CSC)
(2)  Keep Financial
(3)  DRUM Technologies, Inc.
(4)  Tricolor Auto Group, LLC
(5) PadSplit
(6) Kimberly F. Withrow Law
(7) eCapital Corp.
(8) Bibby Financial Services
(9) American Express
(10) Roadie
(11) Flutterwave
(12) Keep Financial Technologies, Inc.

**17.  Insurance/Insurance Provider**

(1) AIG Specialty Insurance Company
(2) Atlantic Specialty Insurance Company
(3) Berkshire Hathaway Specialty Insurance Company
(4) Cobbs Allen Capital, LLC d/b/a CAC Specialty
(5) Endurance American Insurance Company c/o Sompro Pro
(6) Everest National Insurance Company
(7) Marsh USA Inc.
(8) National Union Fire Insurance Company of Pittsburgh, Pa.
(9) QBE Insurance Corporation

(10) XL Specialty Insurance Company

**18. <u>Landlords and Parties to Leases</u>**

(1)  730 Midtown SVP, LLC (Lincoln Property Company)

**19. <u>Lenders, Noteholders, Administrative Agents and Indenture Trustees</u>**

(1)  Credit Suisse
(2)  Guggenheim
(3)  Macquarie
(4)  U.S. Bank

**20. <u>List of Secured Creditors</u>**

(1)  Reserve Bank of San Francisco

    [The Company only has one secured creditor]

**21. <u>Top 30 Unsecured Creditors</u>**

(1) Cross River Bank
(2) Customers Bank
(3) Federal Reserve Bank of San Francisco
(4) U.S. Department of Justice
(5) Federal Trade Commission
(6) Small Business Bureau
(7) American Express Kabbage Inc.
(8) Biz2Credit
(9) Vital Outsourcing Services Inc
(10) MorganFranklin Consulting, LLC
(11) Vaco LLC
(12) RSM US LLP
(13) Transunion Risk and Alternative Data Solutions
(14) URS Technologies Solutions LLC
(15) KLDiscovery Ontrack, LLC
(16) Amazon Web Services
(17) Allegis Group Holdings Inc
(18) Google Workspace
(19) Moore Colson
(20) Option 1 Partners LLC
(21) Libra Risk Management
(22) Marcell Birk
(23) Slack
(24) Box
(25) Goodwin Proctor
(26) Marcus Carr
(27) Kenny Ajetunmobi
(28) Moyin Omotayo
(29) Thomas E. Austin Jr. LLC
(30) Corporation Service Company

**22.** **Litigation Counterparties/Litigation Pending Lawsuits – includes threatened litigation**

(1) 365 Sun LLC
(2) Alison F. Kanne
(3) Bosco Seungchul Baek
(4) Calvin L. Erby, II
(5) Candice Worthy
(6) Carlton Morgan
(7) Celtic Bank Corporation d/b/a Celtic Bank
(8) Christina R. King
(9) Cole Ratias
(10) Customers Bank
(11) Douglas Biviano
(12) Edward Ford Services, LLC
(13) Eric L. Lifschitz
(14) Eva Merian Spahn
(15) First Home Bank
(16) Florida Veterinary Behavior Service
(17) George Pullen
(18) Greenberg Traurig
(19) Henry Anesthesia Associates, LLC
(20) Holland & Knight, LLP
(21) Jason Russell Carr
(22) Jennifer Pullen
(23) Jeremy Sternberg
(24) John P. Mertens
(25) Joshua Borger
(26) JP Morgan Chase Bank, N.A.
(27) Justin E. Proper
(28) Keith W. Berglund
(29) LaDonna Wiggins
(30) Latoya Clark
(31) Lauren B. Veggian
(32) Law Office of James A. Flanagan
(33) Law Offices of Eric L. Lifschitz
(34) Leslie K. Rinaldi
(35) Lexington National Insurance Corporation
(36) Love Watch Hill & Sailors Haven, Inc.
(37) Luxx Lashes by Lay, LLC
(38) Marco Bell
(39) MaryBeth V. Gibson
(40) Melissa Davis Lowe
(41) Ogier, Rothschild & Rosenfeld P.C.
(42) Pia Hoyt Law Firm
(43) Power Bail Bonds
(44) Rice Pugatch Robinson Storfer & Cohen PLLC,
(45) Richard A. Marshack
(46) Richard Storfer
(47) Shulman Bastian Friedman & Bui LLP
(48) SM Novelties

(49) Smooth & EZ Merchant Funding
(50) Squeeze-It Corp.
(51) Strategic Elements, LLC
(52) Tamara Miles Ogier, Chapter 11 Subchapter V Trustee
(53) Tastetunup, LLC
(54) The Berglund Group
(55) The Cardoza Law Corporation
(56) The Finley Firm, P.C
(57) Vicki LeMaster
(58) Wandro & Associates, P.C.
(59) White & Williams, LLP

**23.** **Litigation - Governmental Investigations Agencies**

(1) U.S. Federal Trade Commission
(2) U.S. Department of Justice – Massachusetts
(3) U.S. Department of Justice – Eastern District of Texas
(4) The Small Business Administration (SBA)
(5) The United States House Representatives Select Subcommittee on the Coronavirus Crisis

**24.** **Other Parties in Interest (Notice of Appearance Parties, Ombudsman, any other person or group appointed)**

[Unknown at this time]

**25.** **Other Professionals**

(1) Akin Gump Strauss Hauer & Feld LLP
(2) Bailey Duquette
(3) Dentons US LLP
(4) Davis Polk & Wardwell LLP
(5) Goodwin Procter LLP
(6) Green & Sklartz
(7) Hayes & Welsh
(8) Mandelbaum Salsburg, P.C.
(9) RSM US LLP
(10) Sidley Austin LLP
(11) Thomas E. Austin
(12) Windham Brannon

**26.** **Regulatory and Government (Federal, State, and Local)**

(1) Delaware Attorney General – Kathy Jennings
(2) Federal Deposit Insurance Corporation
(3) Federal Reserve
(4) Federal Trade Commission
(5) Internal Revenue Service
(6) Office of Foreign Assets Control
(7) Small Business Administration
(8) U.S. Securities and Exchange Commission
(9) United States Attorney for the District of Delaware – David C. Weiss

(10) United States Department of Justice

**27. <u>Significant Customers</u>**

(1) Celtic Bank
(2) Cross River Bank
(3) Customers Bank
(4) HCG (a/k/a Home Capital Group Inc.)
(5) Stone Ridge
(6) FleetCor Technologies, Inc.
(7) Relief Without Borders LLC
(8) SJ MEDICAL PLLC
(9) GO AFRICA GLOBAL LLC
(10) CUISANE 365 MOBILE INC
(11) New Legend, Inc
(12) JLITE MORTORS
(13) BOOM REWARDS LLC
(14) David Horvath PA
(15) Wiggins & Graham Enterprise LLC
(16) Pink Lady Line
(17) R and L ARCADE INC
(18) Potomac Valley Operator LLC
(19) Source Allies, Inc.
(20) European Service at Home Inc
(21) Tigris, LLC
(22) AREPII SA Hotel LLC
(23) ASPEN RIVER CANDLE COMPANY
(24) BIG SHOT LLC
(25) Wesley Aron Mock LLC
(26) Club One Casino, Inc
(27) Brian Bui Inc
(28) repairo llc
(29) California Freight Solutions Corp
(30) Torque Power Equipment Repairs
(31) PG Medical Lab
(32) ENERGY EFFICIENT CONSTRUCTION SOLUTIONS
(33) TRUSTEDCOMMUNICATIONS LLC
(34) Horizon 5 Lakes LLC
(35) WINGFIELD LEIGH INDUSTRIES, INC
(36) Allegro School, Inc.
(37) Dog Training With Mario Holland LLC
(38) A ONE ROOF MANAGEMENT & CONSTRUCTION, INC.
(39) Koger Industrial Staffing, LLC
(40) PROVIDENT INVESTMENT REALTY, LLC
(41) FLAIR GROUP INC
(42) REX Therapeutics LLC
(43) IMR CONTRACTING CORP
(44) Gods Anointed Youth Ministry
(45) SHOWTIME ON THE PIERS, LLC.
(46) SUMMIT TRUCK LINE
(47) K Weaver Properties LLC

(48) ENCES SERVICES INC
(49) Federal Credit Union
(50) Heart Living Centers of Colorado, LLC
(51) Agee Construction Corporation
(52) 1 PONCE DE LEON LLC
(53) Bustro Inc
(54) Francis Joseph Capital Inc
(55) DataSync Inc
(56) SMELifestyle, inc
(57) Crown Management Services, LLC
(58) SUITE Media Productions & Management LLC
(59) Gourmet Nut Inc
(60) Propel Opportunity Fund Inc.
(61) Keystrokes Transcription Service Inc
(62) E. Mishan & Sons
(63) RUSSELL ROAD FOOD AND BEVERAGE LLC

## 28. **Significant Shareholders (more than 5% of equity)**

(1)  Softbank Vision Fund (AIV M2) L.P.
(2)  Blue Run Ventures IV, L.P.
(3)  Thomvest Ventures Ltd.
(4)  MDV Ix, L.P. c/o Mohr Davidow Ventures
(5)  SoftBank PriceVille Investments, L.P.

## 29. **Taxing Authorities (Federal, State, and Local; trust fund, use property, franchise, sales)**

(1)  Alabama Department of Revenue
(2)  California Franchise Tax Board
(3)  Georgia Department of Revenue
(4)  Internal Revenue Service
(5)  North Carolina Department of Revenue
(6)  New York State Department of Finance
(7)  New York City Department of Finance
(8)  Pennsylvania Department of Revenue

## 30. **UCC Search Results/UCC Lien Search Results**

(1) CHTD Company
(2) CIT
(3) CIT Bank, N.A.
(4) Cross River Bank
(5) CSC
(6) Direct Capital Corporation
(7) Federal Reserve Bank of San Francisco
(8) Financial Agent Services
(9) Fulton County, Georgia Tax Commissioner
(10) Secured Lender Solutions, LLC
(11) U.S. Bank
(12) Wilmington Savings Fund Society, FSB

**31. Unions**

N/A

**32. United States Attorney's Office for the District of Delaware**

(1) David C. Weiss

**33. United States Trustee and Staff for the District of Delaware**

(1) Andrew R. Vara
(2) Joseph McMahon
(3) David Buchbinder
(4) Linda Casey
(5) Joseph Cudia
(6) Timothy J. Fox, Jr.
(7) Benjamin Hackman
(8) Jane Leamy
(9) Hannah M. McCollum
(10) Linda Richenderfer
(11) Juliet Sarkessian
(12) Richard Schepacarter
(13) Rosa Sierra-Fox
(14) Lauren Attix
(15) Shakima L. Dortch
(16) Christine Green
(17) Ramona Harris
(18) Angelique Okita
(19) Edith A. Serrano
(20) Dion Wynn
(21) Denis Cooke
(22) Holly Dice
(23) Nyanquoi Jones
(24) James R. O'Malley
(25) Michael Panacio
(26) Diane Giordano

**34. Utility Providers/Utility Brokers**

(1) Cogent Communications, Inc.
(2) Five9 Inc.

**35. Vendors/Suppliers (includes critical, foreign, common carrier, shippers, warehousemen, customs duties, brokers charges, facilities provider, etc.)**

(1) A-Lign
(2) Allegis Group Holdings Inc
(3) American Express Kabbage Inc.
(4) Biz2X LLC
(5) BlackLine Systems, Inc.

(6) Box
(7) DataBricks
(8) Five9
(9) Fusion Cloud Services LLC
(10) Google Duo
(11) Google Workspace
(12) HP Holdings, Inc. (dba Invariant LLC)
(13) InscribeAI, Inc.
(14) KLDiscovery Ontrack, LLC
(15) Kroll Associates, Inc.
(16) Lexolution
(17) Libra Risk Management
(18) MLA
(19) Moore Colson
(20) MorganFranklin Consulting, LLC
(21) Option 1 Partners LLC
(22) ReliaQuest Holdings, LLC
(23) Salesforce.com
(24) Sage Intacct, Inc.
(25) Slack
(26) TLO
(27) Transunion Risk and Alternative Data Solutions
(28) URS Technologies Solutions LLC
(29) Vaco LLC
(30) Vital Outsourcing Services Inc.
(31) Willis Towers Watson US LLC
(32) Zendesk

## Schedule 2

## AlixPartners' Disinterestedness

- In connection with the proposed employment and retention of AlixPartners, LLP ("**AlixPartners**") by the Debtors in these Chapter 11 Cases, AlixPartners undertook a complex process, the details of which are set forth below, to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors' estates.

  AlixPartners Holdings, LLP, AlixPartners' parent company ("**Holdings**"), directly or indirectly owns Holdings' U.S. and non-U.S. subsidiaries (collectively, the "**Holdings Enterprise**"). The equity capital of Holdings is owned by the following investors:

  (i)    Lakeview Capital Holdings, Inc., the Jay Alix Living Trust and other trusts established by Jay Alix (collectively the "**Lakeview Parties**");

  (ii)   Caisse de dépôt et placement du Québec ("**CDPQ**");

  (iii)  Investcorp Holdings B.S.C. ("**IVC**");

  (iv)   Public Sector Pension Investment Board ("**PSP**"); and

  (v)    current and certain former Managing Directors of AP (as defined below) and their individual and family trusts, as well as certain other individuals, including current members of the Boards (as hereinafter defined) and employees of the Lakeview Parties, and their individual and family trusts.

  (Collectively, (i) – (v) above are hereinafter referred to as the "**Investors**", and the subset (ii) – (iv) above are hereinafter referred to as the "**Institutional Investors**").

  Holdings and AlixPartners, each have a board of directors (together, the "**Boards**"). No individual or entity controls either of the Boards. Designees of each of the Investors (i) – (iv) above serve as members of the Boards. The Holdings Enterprise does not invest in distressed assets of any class, nor does it have any investment affiliates.

  CDPQ is one of Canada's largest institutional investment managers. It manages investments on behalf of most of Quebec Canada's public and parapublic pension and insurance funds. CDPQ invests globally in numerous industries.

  IVC is a leading global provider and manager of alternative investment products.

  PSP is one of Canada's largest pension investment managers. It invests funds for the pension plans of the Public Service, the Canadian Armed Forces, the Royal Canadian Mounted Police and the Reserve Force. PSP manages a diversified global portfolio in numerous industries throughout the world.

  The Lakeview Parties and related entities are entities owned or controlled by Jay Alix that, among other things, make investments on behalf of Mr. Alix and his family.

In addition to their investments in Holdings, the Institutional Investors have substantial investments unrelated to AlixPartners.

The Boards are not involved in the delivery of client services and their members do not have access to client files, except for a minority of members of the Boards that are AlixPartners employees. As a precautionary matter, AlixPartners maintains information barriers and guidelines designed to prevent certain confidential client information, including the names of clients likely to be involved in a not-yet-filed case under the Bankruptcy Code, from being shared with the Investors or their designees on the Boards.

To that end, no material nonpublic information about the Debtors (including, before the filing of these Chapter 11 Cases, the fact that AlixPartners was about to undertake an assignment involving the Debtors) has been or will be furnished by AlixPartners to the Investors or their Board designees, and AlixPartners will continue to abide by its confidentiality obligations to the Debtors. Each Investor is independent of each other Investor and is governed by its own board of directors or similar body and managed by its own management team. AlixPartners operates independently and does not share employees, officers or other management with any of the Investors. AlixPartners and each of the Investors have separate offices in separate buildings, use separate internet email addresses, and do not otherwise share IT systems.

AlixPartners has one database where connections are stored for all entities in the Holdings Enterprise. The process for the preparation of disclosures is as follows: upon receipt of a potential parties in interest list from the Debtors and/or their representatives (the "**Parties in Interest List**"), all such parties are input to the database by team members familiar with the database. A report of the "hits" is generated, and the team members review those "hits" for connections. Where there is a connection, a disclosure is drafted. After the team completes draft disclosures, the disclosures are reviewed by an in-house bankruptcy attorney. The attorney coordinates with the team to finalize the disclosures, which are then reviewed by the engagement AlixPartners managing director. These initial disclosures (the "**Initial Disclosures**") are thereafter filed with the Bankruptcy Court as part of the retention pleadings.

Promptly thereafter, a bankruptcy paralegal in the firm uses the Initial Disclosures and the parties in interest list to draft a firmwide email for each bankruptcy filing, including the Debtors' cases. This email is sent to every firm employee as well as the members of the Boards and the Lakeview Parties. The firmwide email requests each recipient to review the attached file that includes the parties in interest and corresponding disclosures, and asks that every recipient: (a) contact the legal department in the event that they have a connection or relationship with an interested party that is not included in our disclosures; (b) if they have a connection or relationship with an interested party that is included in our disclosures, confirm that it is accurately described; and (c) contact the legal department if they own securities of the Debtors. Members of the legal team review all email responses and draft any supplemental disclosures appropriate to reflect information received in response to the firmwide email. After the review process described in the immediately

2

preceding paragraph, supplemental disclosures are thereafter filed with the Bankruptcy Court.

After the Initial Disclosures are filed with the Bankruptcy Court, AlixPartners also provides the names of the Debtors, their owners/investors, lenders and, on a case-by-case basis, other named entities (collectively, the "**Investor Search Parties**"), to the Institutional Investors, and requests that each Institutional Investor run a check of the Investor Search Parties across all investment portfolios including, upon reasonable investigation, (i) private and public funds, (ii) loan positions, and (iii) known positions across CLO holdings (all of the foregoing subject to the exceptions listed below, the "**Investor Connections Check**"). The exceptions to the Investor Connections Check are (i) investments over which the Institutional Investors do not possess actual investment authority and discretion ("direct control"), (ii) index replication position, (iii) investments owned in separate accounts managed by independent parties not affiliated with the Institutional Investors, and (iv) pooled investment vehicles in which the Institutional Investors do not exercise actual control or in which the Institutional Investors do not have visibility sufficient to ascertain such vehicle's investments. Members of the legal team review all responses received from the Institutional Investors and draft disclosures appropriate to reflect information received from the Institutional Investors that, following review, are filed with the Bankruptcy Court.

Upon receipt of the responses from the Institutional Investors to the Investor Connections Check, AlixPartners will file any supplemental disclosures which may be required.

To the extent AlixPartners learns of connections that are not included herein, AlixPartners will promptly file a supplemental disclosure.

Further, AlixPartners may have had, currently have or may in the future have business relationships with, among other entities, portfolio companies of the Institutional Investors and portfolio companies of private equity funds in which they are limited partners, in matters unrelated to the Debtors or their affiliates in these Chapter 11 Cases. Based on, among other things, the business separation between each of the Investors and AlixPartners, the contractual client confidentiality obligations of AlixPartners and the information barriers referred to above, AlixPartners believes that it does not hold or represent an interest adverse to the estate with respect to any such engagement.

Other than as specifically noted herein, AlixPartners has not undertaken to determine the existence, nature, and/or full scope of any business relationships or connections that the Investors may have with the Investor Search Parties, the Debtors and their affiliates, and other parties in interest in these Chapter 11 Cases.

Specifically, AlixPartners obtained from the Debtors and/or their representatives the Parties in Interest List, which is attached hereto as Schedule 1 and conducted a search for connections in accordance with the procedures set forth above.

AlixPartners represents that, to the best of its knowledge, it knows of no fact or situation that would represent a conflict of interest, cause it not to be disinterested or hold or

represent an interest adverse to the Debtors' estates, and furthermore wishes to the disclose the following with respect to the Holdings Enterprise (collectively, "**AP**", unless otherwise noted):

- AP interacts with U.S. Bankruptcy Court judges and representatives of the U.S. Trustee Program regularly in its capacity as a professional consulting firm that offers turnaround and restructuring services.

- AP has issued debt in the form of a USD-denominated senior secured term loan, and a Euro-denominated senior secured term loan (collectively, the "**Term Loans**"), as well as a Revolving Credit Facility.

  Bank of America, N.A. serves as the Administrative Agent for the Term Loans and the Revolving Credit Facility and as such manages all trading of the Term Loans and Revolving Credit Facility between investors. Many of the holders of the Term Loans are pools organized by banks, mutual fund management companies and other fund managers (collectively, "**Fund Managers**") who pool debt instruments issued by multiple / different borrowers and offer interests in the pools to investors. The identities of the investors in the pools cannot be ascertained by AP. The Term Loans are actively traded. Thus, the list of Fund Managers and other investors directly holding the Term Loans can become outdated quickly. On a monthly basis, AP reviews the list of investors in the Term Loans for the purpose of making relationship disclosures in chapter 11 cases. As of the last monthly report, no Fund Manager or other investor in the Term Loans held greater than 10% of the combined US-denominated and Euro-denominated Term Loans. In the event that any entity accumulates a 10% or greater interest in the combined US-denominated and Euro-denominated Term Loans, AP will disclose the name of such entity.

  The participants in the Revolving Credit Facility are Bank of America, N.A., Credit Suisse, Deutsche Bank AG Host Bank, Goldman Sachs Lending Partners LLC, HSBC Bank USA, NA, and JPMorgan Chase Bank N.A.

- The Internal Revenue Service ("**IRS**") is a current and former AP client in matters unrelated to the Debtors. The IRS is a lienholder and adverse litigation party to current and former AP clients in matters unrelated to the Debtors. The IRS is a former employer of a current AP employee.

- The United States Department of Justice ("**DOJ**"), including the United States Attorney General's Office, is a current and former client of AP in matters unrelated to the Debtors. The DOJ is a litigation party, adverse litigation party, lessor and professional to current and former AP clients in matters unrelated to the Debtors.

- AP follows a practice to solicit from the members of its Boards their connections to the parties in interest independent of AP. In response, one or more of the members of its Boards have offered the following disclosures:

4

- o American Express Kabbage Inc. and American Express Travel Related Services, top creditors, vendors and contract counterparties to the Debtors, and affiliates, are vendors to an AP investor or one of its affiliates.

- o Blue Cross Blue Shield of California and Blue Cross Blue Shield of Hawaii, benefits providers to the Debtors, and affiliates, are vendors to an AP investor or one of its affiliates.

- o Holland & Knight LLP, counsel to a litigation counterparty to the Debtors and a professional in this bankruptcy matter, is a current or former legal services provider to an AP investor or one of its affiliates.

- o JP Morgan Chase Bank, N.A., a litigation counterparty to the Debtors, and affiliates, are  vendors to an AP investor or one of its affiliates.

- o Kroll Associates, Inc. and affiliates ("**Kroll**") are contract counterparties and vendors to the Debtors.  AP's current CEO was formerly the CEO of Kroll.

- o Quinn Emmanuel Urquhart & Sullivan LLP, a professional in this bankruptcy matter, is a current or former legal services provider to an AP investor or one of its affiliates.

- o U.S. Bank, a lender/noteholder/agent/indenture trustee and UCC lien search party to the Debtors, and affiliates, are vendors to an AP investor or one of its affiliates.

- o UnitedHealthcare, UnitedHealthcare Dental and UnitedHealthcare of California, and affiliates ("**United**") are benefits providers to the Debtors.  An AP board member is on the Board of Trustees of United.

- Adobe, a top creditor to the Debtors, and affiliates, are vendors to AP.

- AIG Specialty Insurance Company, an insurance provider to the Debtors, and affiliates ("**AIG**") are bondholders, adverse litigation parties, lenders and lessors to current and former AP clients in matters unrelated to the Debtors.  AIG is a current and former AP client in matters unrelated to the Debtors.  AIG is a former employer of current AP employees.  Illinois National Insurance Company, an affiliate of AIG, is a former insurance provider to AP.  Illinois National Insurance Company was adverse to AP in a former litigation regarding an insurance dispute in matters unrelated to the Debtors.

- Airbnb, Inc., a contract counterparty to the Debtors, is a former AP client in matters unrelated to the Debtors.

- Akin Gump Strauss Hauer & Feld LLP ("**Akin Gump**"), a professional to the Debtors, is a professional, counsel and opposing counsel to current and former AP clients in matters unrelated to the Debtors.  Akin Gump is a current and former AP client in matters unrelated to the Debtors.  Akin Gump is a legal services provider to AP.

5

- A-Lign, A-Lign Assurance and A-Lign Compliance and Security, Inc., vendors and contract counterparties to the Debtors, and affiliates ("**A-Lign**") are professionals to a current AP client in matters unrelated to the Debtors. A-Lign is a vendor to AP.

- Allegis Group Holdings Inc., a vendor to the Debtors, and affiliates, are former employers of a current AP employee.

- Amazon Webservices, a top creditor to the Debtors, and affiliates ("**Amazon**") are litigation parties, adverse litigation parties and professionals to current and former AP clients in matters unrelated to the Debtors. Amazon is a current and former AP client in matters unrelated to the Debtors. Amazon is a former employer of current AP employees. Amazon is a vendor to AP.

- American Express Kabbage Inc. and American Express Travel Related Services, top creditors, vendors, contract counterparties and director-affiliated companies to the Debtors, and affiliates ("**AmEx**") are lessors, lienholders and adverse litigation parties to current and former AP clients in matters unrelated to the Debtors. AmEx was a member of the official committee of unsecured creditors that retained AP in in Aegean Marine Petroleum Network, Inc., a former bankruptcy matter unrelated to the Debtors. AmEx is a former employer of current AP employees. AmEx is a vendor to AP.

- Atlantic Specialty Insurance Company, an insurance provider to the Debtors, and affiliates ("**Atlantic Specialty**") are bondholders, director-affiliated companies and adverse litigation parties to current and former AP clients in matters unrelated to the Debtors. Atlantic Specialty is an insurance provider to AP.

- Automatic Data Processing Inc. (ADP), a director-affiliated company to the Debtors, is an adverse litigation party and professional to current and former AP clients in matters unrelated to the Debtors. ADP is a current AP client in matters unrelated to the Debtors. ADP is a former employer of current AP employees. ADP is an employee benefits provider to AP.

- Automation Anywhere, Inc., a contract counterparty to the Debtors, is a former employer of a current AP employee.

- Berkshire Hathaway Specialty Insurance Company, an insurance provider to the Debtors, and affiliates ("**Berkshire Hathaway**") are investors, bondholders, litigation parties, adverse litigation parties, parent companies and shareholders to current and former AP clients in matters unrelated to the Debtors. Berkshire Hathaway is a current AP client in matters unrelated to the Debtors. Berkshire Hathaway is an insurance provider to AP.

- Bibby Financial Services, a director-affiliated company to the Debtors, and affiliates ("**Bibby**") are related parties to a former AP client in matters unrelated to the Debtors. Bibby is a former AP client in matters unrelated to the Debtors.

- Blue Cross Blue Shield of California and Blue Cross Blue Shield of Hawaii, benefits providers to the Debtors, and affiliates ("**BCBS**") are adverse litigation parties, director-

6

affiliated companies, investors, lenders, lienholders and professionals to current and former AP clients in matters unrelated to the Debtors. BCBS is a former employer of current AP employees. BCBS is a member of the official committee of unsecured creditors that retained AP in in LTL Management LLC, a current bankruptcy matter unrelated to the Debtors.

- Box, a vendor and top creditor to the Debtors, is an adverse litigation party to a former AP client in matters unrelated to the Debtors. Box is a vendor to AP.

- CIT and CIT Bank, N.A., UCC lien search parties to the Debtors, and affiliates ("**CIT**") are lenders, bondholders, lessors, lienholders, adverse litigation parties and shareholders to current and former AP clients in matters unrelated to the Debtors. CIT was a member of the official committee of unsecured creditors that retained AP in Modell's Sporting Goods, Inc., a former bankruptcy matter unrelated to the Debtors.

- Cleary Gottlieb Steen & Hamilton LLP ("**Cleary**"), a professional in this bankruptcy matter, is a professional and counsel to current and former AP clients in matters unrelated to the Debtors. Cleary is a current and former AP client in matters unrelated to the Debtors.

- Cobbs Allen Capital, LLC d/b/a CAC Specialty, an insurance provider to the Debtors, is a bondholder and adverse litigation party to former AP clients in matters unrelated to the Debtors. CAC Specialty is an insurance provider to AP.

- Corporation Service Company (CSC), a contract counterparty, UCC lien search party and director-affiliated company to the Debtors, is a professional to current and former AP clients in matters unrelated to the Debtors. CSC is a vendor to AP.

- Credit Suisse, a contract counterparty and lender/noteholder/agent/indenture trustee to the Debtors, and affiliates ("**Credit Suisse**") are bondholders, litigation parties, adverse litigation parties, director-affiliated companies, investors, lenders, lienholders, limited partners, parent companies, professionals and shareholders to current and former AP clients in matters unrelated to the Debtors. Credit Suisse is a current and former AP client in matters unrelated to the Debtors. Credit Suisse is a former employer of current AP employees.

- DataBricks, a vendor to the Debtors, is a vendor to AP through AP's vendor relationship with Microsoft Azure.

- Davis Polk & Wardwell LLP ("**Davis Polk**"), a top creditor and professional to the Debtors, is a professional, counsel and opposing counsel to current and former AP clients in matters unrelated to the Debtors. Davis Polk is a current and former AP client in matters unrelated to the Debtors.

- Dentons US LLP, a top creditor and professional to the Debtors, and affiliates ("**Dentons**") are professionals, counsel and opposing counsel to current and former AP clients in matters unrelated to the Debtors. Dentons is a current AP client in matters unrelated to the Debtors. Dentons is a former legal services provider to AP.

7

- DocuSign, a contract counterparty to the Debtors, is a vendor to AP.

- Duo, a top creditor to the Debtors, and affiliates ("**Duo**") are former employers of a current AP employee.  Duo is a vendor to AP.

- East West Bank, a contract counterparty to the Debtors, is a lender to current and former AP clients in matters unrelated to the Debtors.

- Electrolux AB, a director-affiliated company to the Debtors, and affiliates, are adverse litigation parties to a former AP client in matters unrelated to the Debtors.

- Endurance American Insurance Company c/o Sompro Pro and Endurance International Group, Inc., insurance providers and contract counterparties to the Debtors, and affiliates ("**Endurance**") are bondholders, related parties, litigation parties, joint venture entities and adverse litigation parties to current and former AP clients in matters unrelated to the Debtors.  Endurance is a former AP client in matters unrelated to the Debtors.  Endurance is an insurance provider to AP.

- Ernst & Young LLP, a contract counterparty to the Debtors, and affiliates ("**E&Y**") are adverse litigation parties, director-affiliated companies and shareholders to current and former AP clients in matters unrelated to the Debtors.  E&Y is a current and former AP client in matters unrelated to the Debtors.  E&Y is a former employer of current AP employees.  E&Y is a vendor to AP.

- Everest National Insurance Company, an insurance provider to the Debtors, and affiliates ("**Everest**") are litigation parties and adverse litigation parties to current AP clients in matters unrelated to the Debtors.  Everest is an insurance provider to AP.

- Federal Deposit Insurance Corporation, a governmental regulatory agency to the Debtors, is a current AP client in matters unrelated to the Debtors.

- Federal Reserve and Federal Reserve Bank of San Francisco, contract counterparties, top creditors, governmental regulatory agencies and UCC lien search parties to the Debtors, and affiliates ("**Federal Reserve**") are litigation parties and related parties to a current AP client in matters unrelated to the Debtors.  Federal Reserve is a current AP client in matters unrelated to the Debtors.

- First Home Bank, a litigation counterparty to the Debtors, is a lienholder to a current AP client in matters unrelated to the Debtors.

- First National Bank of Syracuse, a contract counterparty to the Debtors, and affiliates, are lenders, lienholders and adverse litigation parties to current and former AP clients in matters unrelated to the Debtors.

- Forensic Risk Alliance, a contract counterparty, top creditor and professional to the Debtors, is a former employer of a current AP employee.

8

- Fortis Advisors, LLC and Fortis Private Bank, contract counterparties to the Debtors, and affiliates, are former AP clients in matters unrelated to the Debtors.

- Fusion Cloud Services LLC, a vendor to the Debtors, and affiliates ("**Fusion**") are current AP clients in matters unrelated to the Debtors.  AP was retained by Fusion (a debtor) in Fusion Connect, a former bankruptcy matter unrelated to the Debtors.

- GoDaddy.com, LLC, a contract counterparty to the Debtors, is a former AP client in matters unrelated to the Debtors.

- Goodwin Procter LLP ("**Goodwin Procter**"), a professional to the Debtors, is a professional, counsel and opposing counsel to current and former AP clients in matters unrelated to the Debtors.  Goodwin Procter is a former AP client in matters unrelated to the Debtors.

- Google Workspace, a vendor to the Debtors, and affiliates ("**Google**") are adverse litigation parties and lessors to current and former AP clients in matters unrelated to the Debtors.  Google is a current and former AP client in matters unrelated to the Debtors.  Google is a former employer of a current AP employee.

- Greenberg Traurig, LLP ("**Greenberg Traurig**"), counsel to a litigation counterparty to the Debtors, is a professional, counsel and opposing counsel to current and former AP clients in matters unrelated to the Debtors.  Greenberg Traurig is a former AP client in matters unrelated to the Debtors.

- Guggenheim Securities, LLC, a contract counterparty and lender/noteholder/ agent/indenture trustee to the Debtors, and affiliates ("**Guggenheim**") are bondholders, adverse litigation parties, investors, lenders, lienholders and professionals to current and former AP clients in matters unrelated to the Debtors.  Guggenheim is a former AP client in matters unrelated to the Debtors.

- Holland & Knight LLP ("**Holland & Knight**"), counsel to a litigation counterparty to the Debtors and a professional in this bankruptcy matter, is a professional, counsel and opposing counsel to current and former AP clients in matters unrelated to the Debtors.  Holland & Knight is a former AP client in matters unrelated to the Debtors.

- Jones Day, a contract counterparty, top creditor, and professional to the Debtors, is a professional and counsel to current and former AP clients in matters unrelated to the Debtors.  Jones Day is a current and former AP client in matters unrelated to the Debtors.  Jones Day is a legal services provider to AP.

- JP Morgan Chase Bank, N.A., a litigation counterparty to the Debtors, and affiliates ("**JPM**") are affiliates, bondholders, litigation parties, adverse litigation parties, investors, lenders, lessees, lessors, lienholders, limited partners, parent companies, professionals and shareholders to current and former AP clients in matters unrelated to the Debtors. JPM is a current and former AP client in matters unrelated to the Debtors.  JPM is a former employer of current AP employees.  The spouse of an attorney who works in AP's Legal

9

department is a lawyer employed by JPM advising on distressed investments. Strict confidentiality obligations pertaining to all AP employees, as well as general legal professional responsibility, prohibit the AP attorney from discussing or exchanging non-public information related to AP's client engagements, including this bankruptcy matter, with third parties, including spouses

- Kaiser Permanente, a benefits provider to the Debtors, and affiliates ("**Kaiser**") are associated companies, litigation parties, adverse litigation parties, lenders, lessors and shareholders to current and former AP clients in matters unrelated to the Debtors. Kaiser is a former AP client in matters unrelated to the Debtors.

- KLDiscovery Ontrack, LLC, a contract counterparty, vendor and top creditor to the Debtors, and affiliates ("**KLDiscovery**") are former AP clients in matters unrelated to the Debtors. KLDiscovery is a former employer of current AP employees. KLDiscovery is a vendor to AP.

- KPMG LLP, a top creditor and professional to the Debtors, and affiliates ("**KPMG**") are professionals and adverse litigation parties to current and former AP clients in matters unrelated to the Debtors. KPMG is a former employer of current AP employees. KPMG is an auditor to AP.

- Kroll Associates, Inc., a contract counterparty and vendor to the Debtors, and affiliates ("**Kroll**") are affiliates to current AP clients in matters unrelated to the Debtors. Kroll is a current AP client in matters unrelated to the Debtors. Kroll is a former employer of current AP employees. Kroll is a vendor to AP.

- Lexington National Insurance Corporation, a litigation counterparty to the Debtors, and affiliates, are litigation parties and adverse litigation parties to current and former AP clients in matters unrelated to the Debtors.

- LexisNexis Risk Solutions FL Inc., a contract counterparty to the Debtors, and affiliates ("**LexisNexis**") are professionals to a current AP client in matters unrelated to the Debtors. LexisNexis is a current and former AP client in matters unrelated to the Debtors. LexisNexis is a vendor to AP.

- Macquarie, a contract counterparty and lender/noteholder/agent/indenture trustee to the Debtors, and affiliates ("**Macquarie**") are bondholders, litigation parties, adverse litigation parties, investors, lenders, lessors, lienholders and shareholders to current and former AP clients in matters unrelated to the Debtors. Macquarie is a current and former AP client in matters unrelated to the Debtors. Macquarie is a former employer of current AP employees.

- Major, Lindsey & Africa ("**Major**"), a director-affiliated company to the Debtors, is a professional to a former AP client in matters unrelated to the Debtors. Major is a vendor to AP.

- Marsh USA Inc., an insurance provider to the Debtors, and affiliates ("**Marsh**") are litigation parties and professionals to former AP clients in matters unrelated to the Debtors. Marsh is an insurance provider to AP.

- MasterCard International Incorporated, a contract counterparty to the Debtors, and affiliates ("**MasterCard**") are litigation parties to current AP clients in matters unrelated to the Debtors. MasterCard is a former employer of current AP employees.

- McGuireWoods LLP ("**McGuireWoods**"), a top creditor and professional to the Debtors, is a professional, counsel and opposing counsel to current and former AP clients in matters unrelated to the Debtors. McGuireWoods is a former AP client in matters unrelated to the Debtors.

- Mechanics Bank, a contract counterparty to the Debtors, is a former AP client in matters unrelated to the Debtors.

- Microsoft, a top creditor to the Debtors, and affiliates ("**Microsoft**") are adverse litigation parties, lessors and shareholders to current and former AP clients in matters unrelated to the Debtors. Microsoft is a current and former AP client in matters unrelated to the Debtors. Microsoft is a former employer of current AP employees. Microsoft is a vendor to AP.

- National Association of Corporate Directors, a director-affiliated company to the Debtors, is a director-affiliated company to a former AP client in matters unrelated to the Debtors.

- National Union Fire Insurance Company of Pittsburgh, Pa., an insurance provider to the Debtors, and affiliates, are bondholders, litigation parties and adverse litigation parties to current and former AP clients in matters unrelated to the Debtors.

- New York City Department of Finance, a taxing authority to the Debtors, is a litigation party to a former AP client in matters unrelated to the Debtors.

- New York State Department of Finance ("**NYS Finance**"), a taxing authority to the Debtors, is a professional, litigation party and adverse litigation party to current and former AP clients in matters unrelated to the Debtors. NYS Finance is a former AP client in matters unrelated to the Debtors.

- New York Life (f/k/a Cigna), a benefits provider to the Debtors, and affiliates ("**New York Life**") are bondholders, litigation parties, adverse litigation parties, lenders, lessors, lienholders and shareholders to current and former AP clients in matters unrelated to the Debtors. New York Life is a current and former AP client in matters unrelated to the Debtors.

- Omni Agent Solutions, a professional to the Debtors, and affiliates, are professionals to current and former AP clients in matters unrelated to the Debtors. Omni is a former AP client in matters unrelated to the Debtors.

11

- Optum Bank, a benefits provider to the Debtors, is a litigation party and associated company to current and former AP clients in matters unrelated to the Debtors.  Optum Bank is a vendor to AP.

- Pennsylvania Department of Revenue, a taxing authority to the Debtors, is an adverse litigation party to a former AP client in matters unrelated to the Debtors.

- People's Bank, a contract counterparty to the Debtors, and affiliates, are lenders, lessees and lienholders to current and former AP clients in matters unrelated to the Debtors. People's Bank is a former employer of current AP employees.

- QBE Insurance Corporation, an insurance provider to the Debtors, and affiliates ("**QBE**") are lenders, litigation parties and adverse litigation parties to current and former AP clients in matters unrelated to the Debtors.  QBE is a former AP client in matters unrelated to the Debtors.  QBE is an insurance provider to AP.

- Quinn Emmanuel Urquhart & Sullivan LLP ("**Quinn**"), a professional in this bankruptcy matter, is a professional, counsel and opposing counsel  to current and former AP clients in matters unrelated to the Debtors.  Quinn is a current and former AP client in matters unrelated to the Debtors.

- Richards Layton & Finger ("**Richards**"), a professional to the Debtors, is a professional, counsel and opposing counsel to current and former AP clients in matters unrelated to the Debtors.  Richards is a current and former AP client in matters unrelated to the Debtors. Richards is a current legal services provider to AP.

- RSM US LLP, a professional to the Debtors, and affiliates ("**RSM**") are litigation parties and professionals to current and former AP clients in matters unrelated to the Debtors. RSM is a former AP client in matters unrelated to the Debtors.  RSM is a former employer of current AP employees.

- Salesforce and Salesforce.com, contract counterparties and vendors to the Debtors, and affiliates ("**Salesforce**") are investors to a current AP client in matters unrelated to the Debtors.  Salesforce is a vendor to AP.

- Sidley Austin LLP ("**Sidley**"), a top creditor and professional to the Debtors, is a professional and counsel to current and former AP clients in matters unrelated to the Debtors.  Sidley is a current and former AP client in matters unrelated to the Debtors. Sidley is a current legal services provider to AP.

- Small Business Administration (SBA), a top creditor and governmental regulatory agency to the Debtors, is a lender and lienholder to current AP clients in matters unrelated to the Debtors.

- Softbank PriceVille Investments, L.P. and Softbank Vision Fund (AIV M2) L.P., shareholders to the Debtors, and affiliates ("**Softbank**") are litigation parties, adverse litigation parties, lenders, lessors, parent companies and shareholders to current and former

12

AP clients in matters unrelated to the Debtors. Softbank is a current and former AP client in matters unrelated to the Debtors. Softbank is a vendor to AP.

- Sound Point Capital Management, LP, a contract counterparty to the Debtors, and affiliates ("**Sound Point**") are bondholders, adverse litigation parties, lenders, lienholders and shareholders to current and former AP clients in matters unrelated to the Debtors. Sound Point is a current and former AP client in matters unrelated to the Debtors.

- Stericycle, a contract counterparty to the Debtors, and affiliates ("**Stericycle**") are bondholders to a current AP client in matters unrelated to the Debtors. Stericycle is a former employer of a current AP employee. Stericycle is a vendor to AP.

- Stone Ridge, a banking services provider to the Debtors, and affiliates, are shareholders to a former AP client in matters unrelated to the Debtors.

- Synovus and Synovus Bank (Synovus Financial Corp.), contract counterparties and banking services providers to the Debtors, and affiliates, are lenders and adverse litigation parties to current and former AP clients in matters unrelated to the Debtors.

- Transunion Risk and Alternative Data Solutions, Inc. (TRADS), a top creditor to the Debtors, and affiliates, are adverse litigation parties to a former AP client in matters unrelated to the Debtors.

- U.S. Bank, a lender/noteholder/agent/indenture trustee and UCC lien search party to the Debtors, and affiliates ("**U.S. Bank**") are bondholders, litigation parties, adverse litigation parties, lenders, lessors, lienholders, professionals and shareholders to current and former AP clients in matters unrelated to the Debtors. U.S. Bank is a current and former AP client in matters unrelated to the Debtors. U.S. Bank was a member of the official committee of unsecured creditors that retained AP in Tops Holding II Corporation, a former bankruptcy matter unrelated to the Debtors.

- U.S. Federal Trade Commission, a litigation party, top creditor, and governmental regulatory agency to the Debtors, is an adverse litigation party to current and former AP clients in matters unrelated to the Debtors.

- U.S. Securities and Exchange Commission ("**SEC**"), a governmental regulatory agency to the Debtors, is a litigation party and adverse litigation party to current and former AP clients in matters unrelated to the Debtors. SEC is a current and former AP client in matters unrelated to the Debtors. SEC is a former employer of current AP employees.

- UnitedHealthcare, UnitedHealthcare Dental and UnitedHealthcare of California, benefits providers to the Debtors, and affiliates ("**UnitedHealthcare**") are litigation parties, adverse litigation parties and associated companies to current and former AP clients in matters unrelated to the Debtors. UnitedHealthcare is a former AP client in matters unrelated to the Debtors. UnitedHealthcare is an employee benefits provider to AP.

13

- Vaco LLC, a top creditor, contract counterparty and vendor to the Debtors, is a vendor to AP.

- Vector Solutions, a director-affiliated company to the Debtors, is a current AP client in matters unrelated to the Debtors.

- Venture Lending & Leasing VII, Inc. and Venture Lending & Leasing VIII, Inc., contract counterparties to the Debtors, and affiliates, are lenders to current AP clients in matters unrelated to the Debtors.

- Visa U.S.A. Inc., a contract counterparty to the Debtors, and affiliates ("**Visa**") are related parties and litigation parties to current and former AP clients in matters unrelated to the Debtors.  Visa is a current AP client in matters unrelated to the Debtors.  Visa is a vendor to AP.

- VSP Choice, a benefits provider to the Debtors, and affiliates, are employee benefits providers to AP.

- Weil, Gotshal & Manges LLP ("**Weil**"), a professional to the Debtors, is a professional and counsel to current and former AP clients in matters unrelated to the Debtors.  Weil is a current and former AP client in matters unrelated to the Debtors.  Weil is a current legal services provider to AP.

- White & Williams, LLP, counsel to a litigation counterparty to the Debtors, is a professional to a current AP client in matters unrelated to the Debtors.

- Willis Towers Watson US LLC, a vendor to the Debtors, and affiliates ("**WTW**") are professionals, adverse litigation parties and lessors to current and former AP clients in matters unrelated to the Debtors.  WTW is a former employer of current AP employees.  WTW is a vendor to AP.

- Wilmington Savings Fund Society FSB ("**WSFS**"), a UCC lien search party to the Debtors, is a lender, adverse litigation party and professional to current and former AP clients in matters unrelated to the Debtors.  WSFS is a former AP client in matters unrelated to the Debtors.  WSFS was a member of the official committee of unsecured creditors that retained AP in in Extraction Oil & Gas, Inc. and EP Energy Corporation, former bankruptcy matters unrelated to the Debtors.

- Windham Brannon, a professional to the Debtors, is a professional to a current AP client in matters unrelated to the Debtors.

- XL Specialty Insurance Company, an insurance provider to the Debtors, and affiliates ("**XL**") are bondholders, litigation parties, adverse litigation parties and lessors to current and former AP clients in matters unrelated to the Debtors.  XL is an insurance provider to AP.

14

- Zendesk, a contract counterparty and vendor to the Debtors, is a related party to a current AP client in matters unrelated to the Debtors.

RLF1 28018300v.1