# EXHIBIT A

## Application

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

------------------------------------------------------------- x
                                                             :
In re                                                        :        **Chapter 11**
                                                             :
**KABBAGE, INC. d/b/a KSERVICING, et al.,**                  :        **Case No. 22-10951 (    )**
                                                             :
                                                             :
              **Debtors.**[1]                                :        **(Joint Administration Requested)**
                                                             :
------------------------------------------------------------- x

### APPLICATION OF DEBTORS PURSUANT TO
### 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014(a) AND 2016 FOR
### AUTHORITY TO RETAIN AND EMPLOY OMNI AGENT SOLUTIONS, INC.
### AS ADMINISTRATIVE AGENT EFFECTIVE AS OF THE PETITION DATE

Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this application (the "**Application**"):[2]

### Relief Requested

1.      By this Application, the Debtors request, pursuant to section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), entry of an order (i) authorizing, but not directing, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

Debtors to employ and retain Omni Agent Solutions, Inc. ("**Omni**") as administrative agent ("**Administrative Agent**") in these chapter 11 cases, effective as of the Petition Date (as defined below), in accordance with the terms set forth in the Engagement Agreement, dated September 16, 2022 (the "**Engagement Agreement**"), annexed hereto as **Exhibit A**; and (ii) granting related relief.

2.      A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit C** (the "**Proposed Order**").

3.      On October 3, 2022, the Debtors' filed an application (the "**Section 156(c) Application**") for an order appointing Omni as claims and noticing agent in these chapter 11 cases pursuant to 28 U.S.C. § 156(c).  The Debtors believe that administration of these chapter 11 cases will require Omni to perform duties outside the scope approved in the Section 156(c) Application.  Accordingly, the Debtors submit this Application to enable Omni to provide such additional services.

4.      In support of this Application, the Debtors submit the Declaration of Paul H. Deutch (the "**Deutch Declaration**"), a copy of which is annexed hereto as **Exhibit B**.

### Jurisdiction and Venue

5.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and *the Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final order by the Court in connection with this Application to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2

## Background

6.     On October 3, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in these Chapter 11 Cases.

7.     The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015-1 of the Local Rules.

8.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Deborah Rieger-Paganis in Support of Debtors' Chapter 11 Petitions and First Day Relief*, dated October 3, 2022 (the "**First Day Declaration**").

## Omni's Qualifications

9.     Omni is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, solicitation, balloting, and the facilitation of other administrative aspects of chapter 11 cases.  Omni has substantial experience in matters of similar size and complexity and has acted as the official claims and noticing agent and/or administrative agent in many large bankruptcy cases in this District and other districts nationwide.  *See*, *e.g.*, *In re Gold Standard Baking, LLC*, No. 22-10559 (JKS) (Bankr. D. Del. June 23, 2022); *In re PWM Property Management LLC*, No. 21-11445 (MFW) (Bankr. D. Del. Dec. 1, 2021); *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (LSS) (Bankr. D. Del. Apr. 8, 2020); *In re*

3

*Lucky's Market Parent Company, LLC*, No. 20-10166 (JTD) (Bank. D. Del. Jan. 28, 2020); *In re*

*SFP Franchise Corporation*, No. 20-10134 (JTD) (Bank. D. Del. Jan. 24, 2020).[3]

## Scope of Service

10.     Pursuant to the Engagement Agreement, the Debtors seek to retain Omni to

provide, among other things, the following bankruptcy administration services (the "**Services**"), if

and to the extent requested:

a.      assist with, among other things, solicitation, balloting, and tabulation of votes; prepare any related reports, as required in support of confirmation of a chapter 11 plan, and in connection with such services, process requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices, and institutional holders;

b.      prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results;

c.      assist with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith;

d.      provide a confidential data room, if requested by the Debtors;

e.      manage and coordinate any distributions pursuant to a chapter 11 plan if designated as distribution agent under such plan; and

f.      provide such other solicitation, balloting and other administrative services described in the Engagement Agreement, but not included in the Section 156(c) Application, as may be requested from time to time by the Debtors, the Court, or the Office of the Clerk of the Bankruptcy Court.

---

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this application. Copies of these orders are available upon request to the Debtors' proposed counsel.

**Omni's Compensation**

11.    The Debtors respectfully submit that the fees Omni will charge in connection with its services to the Debtors, as set forth in the Engagement Agreement, are competitive and comparable to the rates Omni's competitors charge for similar services.  Indeed, the Debtors conducted a review and competitive comparison of other firms and reviewed the rates of other firms before selecting Omni as Administrative Agent.  The Debtors believe Omni's rates are more than reasonable given the quality of Omni's services and its professionals' bankruptcy expertise.  Additionally, Omni will seek reimbursement from the Debtors for reasonable expenses in accordance with the terms of the Engagement Agreement.

12.    Omni intends to apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Petition Date in connection with the Services it provides as Administrative Agent pursuant to the Engagement Agreement.  Omni will comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in these Chapter 11 Cases regarding professional compensation and reimbursement of expenses.

13.    Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend and hold harmless Omni and its members, officers, employees, representatives, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Omni's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Proposed Order.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the Services of an Administrative Agent in these Chapter 11 Cases for the services provided by this Application.

## No Duplication of Services

14.    The Debtors intend that the services of Omni will complement, and not duplicate, the services being rendered by other professionals retained in these Chapter 11 Cases. Omni understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## Disinterestedness

15.    Omni has conducted a conflicts analysis to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Deutch Declaration, Omni is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

16.    Omni will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## Relief Requested Should Be Granted

17.    Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

6

18.    Bankruptcy Rule 2014(a) requires that an application for retention include:

> specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. P. 2014.

19.    To help manage administrative tasks with respect to the thousands of creditors and other parties in interest that are expected to be involved in the Chapter 11 Cases, the Debtors respectfully request the Court enter an order appointing Omni as the Administrative Agent in these Chapter 11 Cases pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2.

20.    The Debtors respectfully request that Omni's retention be made effective as of the Petition Date so that Omni may be compensated for the services performed prior to approval of this Application.  Omni has provided services to the Debtors in advance of approval of this Application in anticipation that its retention would be approved effective as of the Petition Date. The Debtors submit that these circumstances warrant retroactive approval.  Further, the Debtors believe that no party in interest will be prejudiced by the granting of the retroactive effectiveness of Omni's employment because Omni has provided, and will continue to provide, valuable services to the Debtors' estates in the covered period.

21.    For the reasons set forth herein, the Debtors submit that the relief requested herein is in the best interests of the Debtors, their estates, creditors, and other parties in interest, and therefore, should be granted.

7

## Notice

22.     Notice of this Application will be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) the Federal Reserve Bank; (d) Customers Bank; (e) Cross River Bank; (f) the United States Department of Justice; (g) the Federal Trade Commission; (h) the Small Business Administration; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the United States Attorney's Office for the District of Delaware; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").  The Debtors believe that no further notice is required.

## No Prior Request

23.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.


WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  October 4, 2022
       Atlanta, Georgia

                                       **KABBAGE, INC. d/b/a KSERVICING,** *et al.*
                                       (on behalf of itself and each of its affiliated Debtors)


                                       */s/ Holly Loiseau*
                                       Name:  Holly Loiseau
                                       Title:    General Counsel and Secretary

## Exhibit A

**Engagement Agreement**

## <u>STANDARD SERVICES AGREEMENT</u>

This Agreement is entered into as of September 16, 2022, between (I) Omni Agent Solutions ("**Omni**") and (II) Kabbage, Inc. d/b/a KServicing ("**Kabbage**"), Kabbage Canada Holdings, LLC ("**Kabbage Canada**"), Kabbage Asset Securitization LLC ("**KAS**"), Kabbage Asset Funding 2017-A LLC ("**KAF2017**"), Kabbage Asset Funding 2019-A LLC ("**KAF2019**"), Kabbage Diameter, LLC ("**Diameter**"), and Kabbage Asset Funding 2020-A LLC ("**KAF2020**, and collectively with Kabbage, Kabbage Canada, KAS, KAF2017, KAF2019, and Diameter, the "**Company**"), in preparation of, and in connection with, the Company's potential chapter 11 cases. The parties hereto agree as follows:

## <u>Terms and Conditions</u>

I.    SERVICES

(a)    Omni will make itself available to the Company, as requested, for the purposes of assisting the Company with pre- and post-petition case administration matters including data entry, preparation and management of the creditor matrix, preparation of schedules of assets and liabilities and statements of financial affairs, claims management, noticing, plan solicitation and tabulation, distribution, the development and maintenance of a virtual data room, the development and maintenance of an informational website, and any other services as may be requested by the Company or otherwise required by applicable law, governmental regulations or court rules or orders (collectively, the "**Services**").

(b)    The Company acknowledges and agrees that Omni will often take direction from the Company's representatives, employees, agents and/or professionals (individually, a "**Company Party**") with respect to providing Services hereunder. The parties agree that Omni may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by a Company Party to the same extent as if such requests, advice or information were provided by the Company.

(c)    In no event shall Omni's Services constitute or contain legal advice or opinion, and neither Omni nor its personnel shall be deemed to practice law hereunder.

II.    RATES

(a)    Except as otherwise set forth herein, the services to be rendered by Omni will be billed at rates ranging from $52.50 to $187.50 per hour as per the rate structure attached hereto and incorporated herein by reference as **Exhibit "A"** (the "**Rate Structure**"). *In addition, Omni has agreed to provide the Debtors with (i) a $30,000 credit to be applied to Omni's prepetition fees only, and (ii) restructuring-related PR services (e.g., FAQ's, creditor letters) at no charge.* The Company agrees to pay all of Omni's fees, charges and out-of-pocket costs relating to the Services it provides on behalf of the Company pursuant to this Agreement.

(b)      Rates may be adjusted annually on January 2nd of each year and are subject to increases not to exceed ten (10%) percent per annum. Omni shall provide sixty (60) days prior written notice of any such proposed increases.

(c)      Omni shall be compensated on a monthly basis for services it performs on behalf of the Company during the preceding calendar month. Invoices are due and payable upon receipt. If any amount is unpaid as of thirty (30) days after delivery of an invoice, the Company agrees to pay a late charge equal to one and a half (1.5%) percent of the total amount unpaid every 30 days. Notwithstanding anything herein to the contrary, in the event of a chapter 11 filing, all payments to Omni will be in accordance with applicable bankruptcy law and any orders of the bankruptcy court.

(d)      Omni may require an advance or direct payment from the Company of an individual expense, or a group of related expenses, which are expected to exceed $7,500.

(e)      Upon execution of this Agreement, the Company shall pay Omni a retainer of $25,000 (the "**Retainer**"). Omni may use the Retainer against all prepetition fees and expenses, which Retainer shall then be replenished as promptly as practicable by the Company to its original amount. At Omni's discretion, the Retainer may then be applied to the payment of the final invoice from Omni under and pursuant to this Agreement (the "**Final Invoice**"), or to any other invoice. Except with respect to the Final Invoice, upon notice from Omni to the Company of the application of some or all of the Retainer, the Company shall replenish the Retainer as promptly as practicable to its original amount. Omni shall, as promptly as practicable, return to the Company any amount of the Retainer that remains following application of the Retainer to the payments of unpaid fees and expenses hereunder.

(f)      The Company shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Company, notwithstanding how such taxes may be designated, levied, or based. This provision is intended to include sales, use, and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Omni.

(g)      The Company shall pay to Omni any actual charges (including fees, costs and expenses as set forth in the Rate Structure) related to, arising out of, or resulting from, any error or omission of the Company. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Rate Structure.

(h)      Payments to Omni for services rendered under the terms of this Agreement may be remitted by the Company using either or both of the following methods:

   (i)      **Wire Transmission**
            (Omni's wire information will be included on each monthly invoice)

      **(ii)**    <u>**Check**</u>
               Omni Agent Solutions
               c/o Accounts Receivable
               5955 De Soto Avenue
               Suite 100
               Woodland Hills, CA 91367

## III.    RETENTION IN BANKRUPTCY CASE

(a)    If the Company commences one or more cases pursuant to the U. S. Bankruptcy Code (the "<u>**Code**</u>"), the Company shall timely file applications with the bankruptcy court to retain Omni as claims and noticing agent pursuant to 28 U.S.C. § 156(c), and, where applicable, as administrative agent pursuant to section 327(a) of the Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Omni.

(b)    If any of the Company's chapter 11 cases convert to a case or cases under chapter 7 of the Bankruptcy Code, Omni will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

## IV.    CONFIDENTIALITY

(a)    Each of Omni and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided under this Agreement; provided, however, that if any such information was (i) publicly available without a breach by the receiving party, (ii) already in the receiving party's possession or known to it and was received from a third party that, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party, (iii) independently developed, (iv) lawfully obtained from a third party who, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party or (v) required to be disclosed by law, then, subject to clause (b) below, a party shall bear no responsibility for publicly disclosing such information.

(b)    If either party reasonably believes that it is required to produce any confidential information pursuant to an order of any court, governmental agency or other regulatory body, it may, upon not less than five (5) business days written notice to the other party, release the required information.

## V.    PROPERTY RIGHTS

(a)    The parties understand that the software programs and other materials furnished by Omni pursuant to this Agreement and/or developed during the course of this Agreement by Omni are the sole property of Omni. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines and documentation. The Company agrees not to copy or permit others to copy the source

code from the support software or any other programs or materials furnished pursuant to this Agreement. The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or Omni's performance of its services developed during the course of its Agreement by Omni shall be the exclusive property of Omni. Fees and expenses paid by the Company do not vest in  the Company any rights in Omni's property. Such property is only being made available for the Company's use during and in connection with the Services provided by Omni hereunder.

(b)     Upon the Company's request at any time while this Agreement is in effect, Omni shall immediately deliver to the Company and/or the Company's retained professionals, at the Company's expense, any or all of the non-proprietary data and records held by Omni pursuant to this Agreement, in the form requested by the Company.

VI.     BANK ACCOUNTS

At the request of the Company and its officers or authorized representatives, Omni is authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.

VII.     COMPANY DATA

(a)     The Company is responsible for, and Omni does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Omni and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, the "**<u>SOFAs and Schedules</u>**"). Omni bears no responsibility for the accuracy and content of the SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all of the SOFAs and Schedules filed on its behalf.

(b)     The Company agrees, represents and warrants to Omni that before delivery of any information to Omni: (i) the Company has full authority to deliver such information to Omni; and (ii) Omni is authorized to use such information to perform Services hereunder.

(c)     Any data, storage media, programs or other materials furnished to Omni by the Company may be retained by Omni until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Omni under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Omni. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company have not utilized Omni's Services for a period of ninety (90) days or more, Omni may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days written notice. The Company agrees to use commercially reasonable efforts to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Omni.

(d)      If Omni is retained pursuant to bankruptcy court order, disposal of any the Company's data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

VIII.    TERM AND TERMINATION

(a)      This Agreement shall remain in effect until terminated by either party: (i) on thirty (30) days prior written notice to the other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) bad faith, gross negligence, or willful misconduct of Omni that causes material harm to the Company' restructuring under chapter 11 of the Code, (ii) the failure of the Company to pay Omni's invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Omni where Omni reasonably believes in its sole discretion, following consultation with the Company and/or the Company's professionals, it will not be paid.

(b)      If this Agreement is terminated after Omni is retained pursuant to bankruptcy court order, the Company shall promptly seek entry of a bankruptcy court order discharging Omni of its duties under such retention, which order shall be in form and substance reasonably acceptable to Omni.

(c)      If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Omni hereunder and, following payment of such amounts, Omni shall promptly provide the Company with to all materials and deliverables that are in its then-current state of completion.

(d)      If this Agreement is terminated, Omni shall coordinate with the Company and, to the extent applicable, the clerk of the bankruptcy court, to maintain an orderly transfer of record keeping functions, and Omni shall provide the necessary staff, services and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Rate Structure.

IX.    NO REPRESENTATIONS OR WARRANTIES

Omni makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

X.    INDEMNIFICATION

(a)      To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (each, an "**Indemnified Party**," and collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or

indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of or related to Omni's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)    Omni and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the services provided under and pursuant to the Agreement.

(c)    The Company's indemnification of Omni hereunder shall exclude Losses resulting from Omni's gross negligence or willful misconduct.

(d)    The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

XI.    LIMITATIONS OF LIABILITY

Except as expressly provided herein, Omni's liability to the Company for any Losses, unless due to Omni's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss. In no event shall Omni's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Omni for services provided under and pursuant to this Agreement. Moreover, in no event shall Omni be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the services provided under and pursuant to this Agreement.

XII.    SYSTEM IMPROVEMENTS

Omni reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time of accessibility, types of terminals and other equipment, and the Omni database serving the Company, so long as any such changes do not materially interfere with ongoing Services provided to the Company in connection with the Company's pending bankruptcy cases.

XIII.    CHOICE OF LAW

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

XIV.    ARBITRATION

Any dispute arising out of or relating to this Agreement, or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. There shall be one arbitrator

named in accordance with such rules. The arbitration shall be conducted in the English language in New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, during the pendency of any applicable chapter 11 case(s) of the Company, any disputes related to this Agreement shall be decided by the bankruptcy court with jurisdiction over the chapter 11 case(s).

XV.    GENERAL

(a)    <u>Complete agreement</u>. Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b)    <u>Severability</u>. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c)    <u>Modification</u>. This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Omni.

(d)    <u>Assignment</u>. This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that either party may assign this Agreement to a wholly-owned subsidiary or affiliate or to an entity which has succeeded to all or substantially all of the business or assets of a party without the other party's consent, provided that the assigning party provides adequate assurance of performance by the proposed assignee.

(e)    <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

(f)    <u>Force Majeure</u>. Whenever performance by Omni of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Omni's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

(g) <u>Location services</u>. The Company will use their best efforts to cooperate with Omni at the Company's facilities if any portion of the Services require Omni's physical presence.

(h)    <u>Non-solicitation</u>. Each party agrees that neither it nor any of its subsidiaries shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of the other party during the term of this

Agreement and for a period of six (6) months after termination thereof unless the other party provides prior written consent to such solicitation or retention; provided, however, that the foregoing provisions will not prevent either party from hiring or seeking to hire any such person who responds to general advertising or a general solicitation not targeted to the employees of the other party.

(i)     <u>Independent contractors</u>. The Company and Omni are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

(j)     <u>Attorney's fees</u>. In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

XVI.   NOTICING

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Omni:     Omni Agent Solutions
                5955 De Soto Avenue
                Suite 100
                Woodland Hills, CA 91367
                Tel: (818) 906-8300
                Attn: Brian K. Osborne, Pres. & CEO
                Email: bosborne@omniagnt.com

If to the Company: Kabbage, Inc. d/b/a KServicing
                730 Peachtree Street NE, Suite 470,
                Atlanta, GA 30308
                Attn: Holly Loiseau, General Counsel
                Email: _____hloiseau@kservicecorp.com

With copies to:     Weil, Gotshal & Manges LLP
                    767 Fifth Avenue
                    New York, NY 10153
                    Attn:   Candace Arthur, Esq.
                            candace.arthur@weil.com

*[The rest of this page intentionally left blank]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**OMNI AGENT SOLUTIONS**

By: _____
Name: Paul Deutch
Title:   Executive Vice President

Agreed and Accepted this _____ day of September, 2022.

**KABBAGE, INC. D/B/A KSERVICING**
**KABBAGE CANADA HOLDINGS, LLC**
**KABBAGE ASSET SECURITIZATION LLC**
**KABBAGE ASSET FUNDING 2017-A LLC**
**KABBAGE ASSET FUNDING 2019-A LLC**
**KABBAGE DIAMETER, LLC**
**KABBAGE ASSET FUNDING 2020-A LLC**

By: _____
Name:  Holly Loiseau
Title:    General Counsel

**EXHIBIT**

**"A"**

| Hourly Billing Rates | |
|---|---|
| **Administrative, Analysts, Clerks, Mailroom and Claims Control** | Waived |
| **Customer Service Representatives / Call Center Operators** | $52.50 - $150 |
| **Project Administrators / Case Managers** | $52.50 - $150 |
| **Project Supervisors** | $52.50 - $150 |
| **Systems, Programming, Graphic Support & Technology Staff/Consultants** | $52.50 - $139.50 |
| **Project Managers and Sr. Project Managers** | $52.50 - $150 |
| **Consultants** | $52.50 - $150 |
| **Directors / Vice-Presidents / Senior Managing Consultants** | $157.50 - $187.50 |
| **Senior Management** | No charge |
| **Solicitation Consultants & Executives** | $172.50 - $187.50 |

| Overtime Charges | No charge |
|---|---|
| **Printing and Noticing Services Rates** ||
| Copying/Printing | $0.10 per image |
| Personalization, Labels, and Envelopes | $0.035 each |
| Postage, Courier, etc. | Preferred Rates |
| Electronic Noticing - Facsimile | $0.10 per image |
| Electronic Noticing - Email | No charge |
| Legal Notice Publishing | Preferred Rates |
| Electronic Solicitation Services | N/A |
| **Call Center Rates** ||
| Standard Call Center Setup | No charge |
| Voicemail Box | No charge |
| Interactive Voice Response | Waived |
| Monthly Maintenance Fee (Call Center Services) | Waived |
| **Document Management Rates** ||
| Database and System Access | No charge |

| | |
|---|---|
| **Document Scanning** | $0.08 per image |
| **Document Storage - Paper** | No charge |
| **Document Storage - Electronic** | No charge |
| **Hosting Case-Specific Website** | No charge |
| **License Fees, Data Storage, Maintenance and Security** | Under 10,000 records - No Charge<br>Over 10,000 records - $.08 per record |
| **Virtual Data Room** | Quoted based on volume |
| **CD-ROM Creation** | $3.25 per CD |
| **Custom Client Reports** | Standard hourly rates |
| **Claims Administration Rates** | |
| **Claims Association** | Standard hourly rates |
| **Electronic Import of Creditor Data** | No charge |
| **Proofs of Claims Input** | Standard hourly rates |
| **Claim Acknowledgement Card** | No charge |
| **Processing Undeliverables** | Standard hourly rates |
| **Check Issuance** | Standard hourly rates |
| **Miscellaneous Disbursements and Costs** | |

| | |
|---|---|
| **Required Retainer** | $25,000 |
| **Travel Expenses** | At cost, if required |
| **Public Relations** | Certain PR/communications materials available upon request at no additional charge |
| **Other Anticipated Costs** | N/A |

**Exhibit B**

**Deutch Declaration**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------- x
                            :

**In re**                            :            **Chapter 11**
                            :

**KABBAGE, INC. d/b/a KSERVICING, *et al.*,**  :    **Case No. 22-10951 (    )**
                            :

              **Debtors.**[1]        :    **(Joint Administration Requested)**
                            :
---------------------------------------------------------- x

**DECLARATION OF PAUL H. DEUTCH IN SUPPORT OF**
**APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. § 327(a)**
**AND FED. R. BANKR. P. 2014 AND 2016 FOR AUTHORITY**
**TO RETAIN AND EMPLOY OMNI AGENT SOLUTIONS, INC. AS**
**ADMINISTRATIVE AGENT EFFECTIVE AS OF THE PETITION DATE**

I, Paul H. Deutch, under penalty of perjury, declare as follows:

1. I am the Executive Vice President of Omni Agent Solutions, Inc. ("**Omni**"), a chapter 11 administrative services firm, whose offices are located at 5955 DeSoto Avenue, Woodland Hills, California 91367 and 1120 Avenue of the Americas, 4th Floor, New York, New York 10036. Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called and sworn as a witness, I could and would testify competently thereto.

2. This declaration (this "**Declaration**") is made in support of the *Application of Debtors' Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

*to Retain and Employ Omni Agent Solutions, Inc. as Administrative Agent Effective as of the Petition Date*, which was filed contemporaneously herewith (the "**Application**").[2]

3.      Omni is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, solicitation, balloting, and the facilitation of other administrative aspects of chapter 11 cases.  Omni has substantial experience in matters of similar size and complexity and has acted as the official claims and noticing agent and/or administrative agent in many large bankruptcy cases in this District and other districts nationwide.  *See, e.g.*, *In re Gold Standard Baking, LLC*, No. 22-10559 (JKS) (Bankr. D. Del. June 23, 2022); *In re PWM Property Management LLC*, No. 21-11445 (MFW) (Bankr. D. Del. Dec. 1, 2021); *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (LSS) (Bankr. D. Del. Apr. 8, 2020); *In re Lucky's Market Parent Company, LLC*, No. 20-10166 (JTD) (Bank. D. Del. Jan. 28, 2020); *In re SFP Franchise Corporation*, No. 20-10134 (JTD) (Bank. D. Del. Jan. 24, 2020).[3]

4.      As Administrative Agent, Omni will perform the Services specified in the Application and the Engagement Agreement.  In performing such services, Omni will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as **Exhibit A** to the Application.

5.      Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that Omni and its professional personnel:

(a)      Omni is not a creditor, security holder, or insider of the Debtors;

(b)      Omni and its personnel are not and were not, within two years before the date of the filing of these cases, directors, officers, or employees of the Debtors; and

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Application.

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this application. Copies of these orders are available upon request to the Debtors' proposed counsel.

(c)     Omni does not have an interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

6.     To the best of my knowledge, neither Omni, nor any of its professional personnel have any relationship with the Debtors that would impair Omni's ability to serve as Administrative Agent. The Debtors have many creditors and, accordingly, Omni may have rendered and may continue to render services to certain of these creditors. However, Omni has not and will not represent the separate interest of any such creditor in these Chapter 11 Cases.

7.     I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "**Potential Parties in Interest**") in these Chapter 11 Cases. The list of Potential Parties in Interest was provided by the Debtors and included, among other parties, the Debtors, non-Debtor affiliates, current and former directors and officers of the Debtors, significant stockholders, secured creditors, lenders, the Debtors' 30 largest unsecured creditors on a consolidated basis and other parties. The results of the conflict check were compiled and reviewed by Omni professionals. At this time, and as set forth in further detail herein, Omni is not aware of any relationship that would present a disqualifying conflict of interest. Should Omni discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Omni will use reasonable efforts to file promptly a supplemental declaration.

8.     On October 16, 2019, Omni executed a contract with X-Claim Inc. ("**X-Claim**") whereby Omni agreed to provide X-Claim with *publicly* available claims register data in

3

a downloadable format (the "**Agreement**").[4] Omni ceased providing services under the Agreement as of June 8, 2022 and, as confirmed to Omni by X-Claim, the Agreement was terminated as of June 9, 2022.

9.        Other than the disclosed contract with X-Claim, Omni is not a party to any agreement where it receives consideration in exchange for transferring information derived from Omni's role as an administrative agent in cases in the District of Delaware or elsewhere to non-client third parties.

10.        To the best of my knowledge and based solely upon information provided to me by the Debtors, and except as provided herein, neither Omni, nor any employee thereof, has any materially adverse connection to the Debtors, their creditors or other relevant parties.  Omni may have relationships with certain of the Debtors' creditors as a vendor or in connection with cases in which Omni serves or has served in a neutral capacity as noticing, claims, and balloting agent for another chapter 11 debtor.

11.        Omni has and will continue to represent clients in matters unrelated to these Chapter 11 Cases.  In addition, Omni and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals and other parties in interest that may be involved in the Debtors' chapter 11 cases in matters unrelated to these cases.  Omni may also provide professional services to entities or persons that may be creditors or parties in interest in these Chapter 11 Cases, which services do not directly relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

12.        To the best of my knowledge, neither Omni nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates with respect to

---

[4] The Agreement did not provide for, nor did X-Claim receive, any claims-related information from Omni that was not also available to the general public on Omni's case-specific websites.

any matter upon which Omni is to be engaged.  Based on the foregoing, I believe that Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: October 3, 2022
      New York, New York

/s/ *Paul H. Deutch*
_____
Paul H. Deutch
Executive Vice President
Omni Agent Solutions Inc.

5

**Exhibit C**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

----------------------------------------------------------- x
                                              :

In re                                         :           **Chapter 11**

                                                :

**KABBAGE, INC. d/b/a KSERVICING,** *et al.*,   :           **Case No. 22-10951 (     )**

                                                :

                                                :

                   **Debtors.**[1]                 :          **(Jointly Administered)**

                                                :

----------------------------------------------------------- x

**ORDER AUTHORZING DEBTORS
TO EMPLOY AND RETAIN OMNI AGENT SOLUTIONS, INC.
<u>AS ADMINISTRATIVE AGENT EFFECTIVE AS OF THE PETITION DATE</u>**

Upon the application (the "**Application**")[2] of Kabbage Inc. d/b/a KServicing and

its debtor affiliates, as debtors and debtors in possession in the Chapter 11 Cases (collectively,

the "**Debtors**"), for entry of an order pursuant to section 327(a) of the Bankruptcy Code,

Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2 authorizing the Debtors

to retain and employ Omni as Administrative Agent effective as of the Petition Date, all as more

fully set forth in the Application; and upon consideration of the First Day Declaration; and the

Court having jurisdiction to consider the Application and the relief requested therein pursuant to

28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States

District Court for the District of Delaware, dated February 29, 2012; and consideration of the

Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided; and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and this Court having reviewed the Application; and upon any hearing held on the Application; and all objections, if any, to the Application having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and it appearing that the relief requested in the Application is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT

1.      The Application is granted to the extent set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2 to retain and employ Omni as Administrative Agent effective as of the Petition Date under the terms of the Engagement Agreement, and Omni is authorized and directed to perform the Services, and all related tasks, all as described in the Application.

3.      Omni is authorized to take such other action to comply with all duties set forth in the Application.

4.      Omni shall apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Petition Date in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in these cases regarding professional compensation and reimbursement of expenses.

5.      The Debtors shall indemnify Omni under the terms of the Engagement Agreement, as modified pursuant to this Order, as modified pursuant to this Order.  Omni shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the Services provided under the Engagement Agreement, unless such services and the indemnification, contribution or reimbursement therefor are approved by the Court.

6.      Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify Omni, or provide contribution or reimbursement to Omni, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Omni's gross negligence, willful misconduct or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of Omni's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Omni should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order.

7.      To the extent applicable in the Engagement Agreement, all requests by Omni for the payment of indemnification shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought.  In no event shall Omni be indemnified in the case for its own negligence or willful misconduct.  All parties in interest shall retain the right to object to any demand by Omni for indemnification, contribution, or reimbursement.

3

8.      In the event that Omni seeks reimbursement from the Debtors for attorneys' fees in connection with the payment of an indemnity claim, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Omni's own applications, both interim and final, but determined by this Court after notice and a hearing.

9.      The limitation of liability provision contained in the Engagement Agreement shall have no force and effect during the pendency of these chapter 11 cases.

10.     Notwithstanding any provision to the contrary in the Engagement Agreement, this Order shall be immediately effective and enforceable upon its entry.

11.     Notwithstanding any term in the Engagement Agreement to the contrary, this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

12.     In the event of any inconsistency between the Engagement Agreement, the Application and this Order, this Order shall govern.

13.     Notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

14.     The Debtors and Omni are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order.

15.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

4