**<u>EXHIBIT A</u>**

**Motion**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
----------------------------------------------------------- x
In re                                          :    Chapter 11
                                               :
KABBAGE, INC. d/b/a KSERVICING, et al.,        :    Case No. 22-10951 (      )
                                               :
                                               :
           Debtors.¹                           :    (Joint Administration Requested)
----------------------------------------------------------- x
```

### MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING (A) DEBTORS TO CONTINUE INSURANCE POLICIES, AND (B) PAY ALL OBLIGATIONS WITH RESPECT THERETO, AND (II) GRANTING RELATED RELIEF

Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**"), respectfully move and represent as follows in support of this motion (this "**Motion**"):[2]

### Relief Requested

1.     By this Motion the Debtors request, pursuant to sections 105(a), 362(d), and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 4001, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), that the Court (i) authorize the Debtors to (a) continue the Insurance Policies (as defined below) in accordance with their terms as provided for in the underlying agreements and to perform with

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC and (8973); Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] The facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration (as defined below) filed contemporaneously herewith.  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration (as defined below).

respect thereto in the ordinary course of business, and (b) pay any prepetition obligations arising under the Insurance Policies, and (ii) grant related relief.

2.     The Debtors further request that the Court (a) authorize all applicable financial institutions (collectively, the "**Banks**") to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent directed by the Debtors in accordance with this Motion and to the extent the Debtors have sufficient funds on deposit in their accounts with such Bank, whether such checks were presented or electronic requests were submitted before or after the date hereof, and (b) authorize all Banks to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

3.     A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**"), and a proposed form of order granting the relief requested herein on a final basis is annexed hereto as **Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**").

## Jurisdiction and Venue

4.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") the Debtors consent to the entry of a final order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final

2

orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

5.      On the date hereof (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of title 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in these Chapter 11 Cases.

6.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their Chapter 11 Cases pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015-1 of the Local Rules.

7.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Deborah Rieger-Paganis in Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith.

## Debtors' Insurance Policies

8.      In the ordinary course of their loan servicing business, the Debtors maintain and participate in various insurance policies (collectively, the "**Insurance Policies**") through several insurance carriers (each, an "**Insurance Carrier**").  Specifically, the Insurance Policies include various liability, property, professional, and other coverage that provide the Debtors with insurance related to, among other things, general liability, directors' and officers' liability, attorney liability, property liability, automobile liability, cyber security liability, and excess liability coverage.  A list of the Insurance Policies, including information related to their respective coverage periods, is annexed hereto as **Exhibit C**.  Pursuant to the Insurance Policies, the Debtors

3

pay premiums based on fixed rates established by each Insurance Carrier, which are paid through either CAC Specialty or Marsh LLC (together, the "**Insurance Brokers**"), as well as certain other obligations related thereto, including any broker or advisor fees, taxes, or other fees (collectively, the "**Insurance Obligations**").

9. As of the Petition Date, the Debtors do not believe that they owe any amounts with respect to prepetition Insurance Obligations. Accordingly, the Debtors seek authority to continue performing under their Insurance Policies in the ordinary course of business and to honor any obligations with respect thereto.

### A.    Liability and Property Insurance Policies

10. Through certain Insurance Carriers, the Debtors maintain various liability and property insurance policies, which provide the Debtors with insurance coverage for liabilities relating to, among other things, general liability, commercial property liability, and automobile liability (collectively, the "**Liability and Property Insurance Policies**"). The Debtors maintain the Liability and Property Insurance Policies to help manage the various risks associated with their business operations. Additionally, some of the Liability and Property Insurance Policies are required by applicable regulations, laws, and contracts that govern the Debtors' commercial activities and business.

11. Pursuant to the Liability and Property Insurance Policies, the Debtors are required to pay premiums based upon fixed rates, established by each Insurance Carrier, in addition to applicable deductibles, paid through the respective Insurance Brokers. Specifically, the Liability and Property Insurance Policies each have an annual premium that is paid prospectively in full. For the current coverage periods (which are set forth on **Exhibit C**), premiums for the Liability and Property Insurance Policies totaled approximately $12,347.00 in the aggregate.

12.     The premiums for the Liability and Property Insurance Policies were paid in full in advance of the current coverage periods.  Therefore, as of the Petition Date, the Debtors are not aware of any outstanding premiums or other prepetition amounts owed to the various Insurance Carriers for the Liability and Property Insurance Policies.

**B.**     **Directors' and Officers' Liability Program**

13.     In addition to the Liability and Property Insurance Policies, the Debtors participate in five insurance policies that provide the Debtors with insurance coverage for director and officer liability (the "**Directors' and Officers' Liability Program**").  The Debtors incur premiums under the Directors' and Officers' Liability Program based upon fixed rates, in addition to applicable deductibles, established by the applicable Insurance Carriers and paid through the respective Insurance Broker.  For the current coverage periods (which are set forth on **Exhibit C**), the premiums for the Directors' and Officers' Liability Programs totaled approximately $1,308,332.00 in the aggregate.[3]  The premiums were paid by the Debtors in full in advance for the current coverage periods.  Therefore, as of the Petition Date, the Debtors are not aware of any outstanding premiums or other prepetition amounts owed to the various Insurance Carriers for the Directors' and Officers' Liability Programs.

**C.**     **Cyber Security Insurance Policies**

14.     In addition to the Liability and Property Insurance Policies and the Directors' and Officers' Liability Programs, the Debtors participate in two insurance policies that provide the Debtors with insurance coverage for cyber liability (the "**Cyber Security Insurance Policies**").  Given that the Debtors' Cyber Security Insurance Policies are set to expire on October 16, 2022, the Debtors intend to renew these policies in the interim period. The Debtors incur

---

[3] Prior to the Petition Date, the Debtors also funded the premiums for tail coverage under the Directors' and Officers' Liability Programs in the amount of $175,000, which is included in the $1,308,332.00.

premiums under the Cyber Security Insurance Policies based upon fixed rates, in addition to various deductibles, established by the applicable Insurance Carriers and paid through the respective Insurance Broker.  For the current coverage periods, (which are set forth in **Exhibit C**), the premiums for the Cyber Security Insurance Policies totaled approximately $73,994.24 in the aggregate.  The premiums were paid by the Debtors in full in advance for the current coverage periods.  Therefore, as of the Petition Date, the Debtors are not aware of any outstanding premiums or other prepetition amounts owed to the various Insurance Carriers for the Cyber Security Insurance Policies.

### D.    Attorney Liability Policy

15.    The Debtors also participate in one insurance policy that provides the Debtors insurance coverage for attorney liability arising through malpractice (the "**Attorney Liability Policy**").  The Debtors incur premiums under the Attorney Liability Policy based upon fixed rates, in addition to applicable deductibles, established by the applicable Insurance Carriers and paid through the respective Insurance Broker.  For the current coverage periods (which are set forth on **Exhibit C**), the premiums for the Attorney Liability Policy totaled approximately $3,343.00 in the aggregate.  The premiums were paid by the Debtors in full in advance for the current coverage periods.  Therefore, as of the Petition Date, the Debtors are not aware of any outstanding premiums or other prepetition amounts owed to the Insurance Carrier for the Attorney Liability Policy.

### E.    Insurance Brokers

16.    The Debtors utilize Marsh LLC to assist with the procurement and negotiation of attorney liability, cyber liability, and Liability and Property Insurance Policies, and CAC Specialty to assist with director and officer Insurance Policies.  Both Insurance Brokers remit premium payments to the Insurance Carriers on behalf of the Debtors for the current policy periods.

6

Additionally, the Insurance Brokers assist the Debtors with identifying and reviewing claims before they are reported to the Insurance Carriers.

17.     In exchange for their services, the Debtors pay the Insurance Brokers certain fees (collectively, the "**Brokers' Fees**") on a commission basis, which are earned by the Insurance Brokers upon inception of the applicable policy term.  As of the Petition Date, the Debtors are not aware of any outstanding prepetition amounts owed to the Insurance Brokers on account of the Brokers' Fees.  However, because of the Insurance Brokers' familiarity with the Insurance Policies, the Debtors request authority to continue utilizing their services and pay any subsequent Brokers' Fees that may become due and payable in the ordinary course of the Debtors' business.

## Relief Requested Should be Granted

### A.     Maintenance of Insurance Policies and Payment of Obligations Related Thereto is Warranted Under Sections 363(b)(1) and 105(a) of Bankruptcy Code, and Doctrine of Necessity

18.     A bankruptcy court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code. 11 U.S.C. § 363(b)(1).  Section 363(b) provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions."  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).

19.     In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue

7

any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (citations omitted); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

20.     Furthermore, in a long line of well-established decisions, courts consistently have permitted payment of prepetition obligations that are necessary to preserve or enhance the value of a debtor's estate. *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

21.     In addition, the Court may rely on its equitable powers under section 105(a) of the Bankruptcy Code and the doctrine of necessity to authorize the payment of prepetition claims when such payment is essential to the continued operation of a debtor's business. *See, e.g.*, *Just for Feet*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of Bankruptcy Code provides statutory basis for payment of prepetition claims under the doctrine of necessity

8

particularly when such payment is necessary for the debtor's survival during chapter 11); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is standard for enabling a court to authorize payment of prepetition claims before confirming a plan).

22.     The Debtors' use of estate funds to pay the Insurance Obligations is justified because such obligations are necessary costs of preserving the Debtors' estates.  The Debtors are contractually and legally obligated to maintain certain Insurance Policies, and the Debtors must maintain certain of the Insurance Policies in order to comply with the operating guidelines of the Office of the United States Trustee for Region 3, which includes the District of Delaware. Additionally, section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  Based on the Debtors' current circumstances, it is not likely that the Debtors will be able to renew or replace their existing Insurance Policies on more favorable terms.  The process of establishing new programs would also be burdensome and costly to the Debtors.  In this regard, the Insurance Policies are essential to the Debtors' operations, as the Debtors would be exposed to significant liability if the Insurance Policies were allowed to lapse or terminate.  Such exposure could detrimentally impact the Debtors' ability to reorganize successfully.

23.     The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is justified under sections 363(b) and 105(a) of the Bankruptcy Code.  Authorizing the Debtors to use estate funds to pay the Insurance Obligations is in the best interests of the Debtors, their estates, and their economic stakeholders.

24.     The Court should also authorize the Debtors to continue paying the Brokers' Fees in the ordinary course of business.  The Insurance Brokers are intimately familiar with the Insurance Policies and Insurance Obligations.  The Debtors believe that any loss or interruption to the services provided by the Insurance Brokers could result in a costly disruption to the Debtors' administration of their estates.

**B.      Cause Exists to Authorize Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers**

25.     The Debtors anticipate having sufficient funds to pay the amounts described herein in the ordinary course of business using expected cash flows from ongoing business operations.  In addition, under the Debtors' existing cash management system, the Debtors can identify readily whether checks or wire transfer requests are payments authorized by the relief requested in this Motion.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that the Court should authorize the Banks, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the relief requested herein, to the extent the Debtors have sufficient funds on deposit in their accounts with such Banks, and such Banks may rely on the representations of the Debtors without any duty of further inquiry and without liability for following the Debtors' instructions.

<u>**Reservation of Rights**</u>

26.     Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a waiver of any claim or cause of action which may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement,

contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## Debtors Have Satisfied Bankruptcy Rule 6003(b)

27.      Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before 21 days after filing of the petition.  Fed. R. Bankr. P. 6003(b).  As described above, and in the First Day Declaration, authorizing the Debtors to use estate funds to pay Insurance Obligations and continuing to pay the Insurances Brokers in the ordinary course of business is in the best interests of the Debtors and their estates.  Accordingly, the Debtors believe that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

## Bankruptcy Rules 6004(a) and (h)

28.      To implement the foregoing successfully, the Debtors request that the Court find that notice of this Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As described above, and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## Notice

29.     Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (c)  the Federal Reserve Bank; (d) Customers Bank; (e) Cross River Bank; (f) the United States Department of Justice; (g) the Federal Trade Commission; (h) the Small Business Administration; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the United States Attorney's Office for the District of Delaware; (l) the Banks; (m) the Insurance Carriers, (n) the Insurance Brokers; and (o) any party that is entitled to notice pursuant to Local Rule 9013-1(m); (collectively, the "**Notice Parties**").  As this Motion is seeking "first-day" relief, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m).  The Debtors believe that no further notice is required.

## No Prior Request

30.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.


*[Remainder of page intentionally left blank]*

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  October 3, 2022
       Wilmington, Delaware

/s/ Zachary I. Shapiro
RICHARDS, LAYTON & FINGER, P.A.
Daniel J. DeFranceschi (No. 2732)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
E-mail: defranceschi@rlf.com
      steele@rlf.com
      shapiro@rlf.com
      milana@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (*pro hac vice* admission pending)
Candace M. Arthur (*pro hac vice* admission pending)
Natasha S. Hwangpo (*pro hac vice* admission pending)
Chase A. Bentley (*pro hac vice* admission pending)
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8000
E-mail:     ray.schrock@weil.com
        candace.arthur@weil.com
        natasha.hwangpo@weil.com
        chase.bentley@weil.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re                                                   :    Chapter 11
                                                        :
KABBAGE, INC. d/b/a KSERVICING, *et al.*,               :    Case No. 22-10951 (      )
                                                        :
                                                        :
                    Debtors.[1]                         :    (Jointly Administered)
------------------------------------------------------------ x

### INTERIM ORDER
### (I) AUTHORIZING DEBTORS TO (A) CONTINUE
### INSURANCE POLICIES, AND (B) PAY ALL OBLIGATIONS
### WITH RESPECT THERETO, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**"),[2] of Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession in the Chapter 11 Cases (collectively, the "**Debtors**"), for entry of an order pursuant to sections 105(a), 362(d), and 363(b) of the Bankruptcy Code and Bankruptcy Rules 4001, 6003, and 6004 (i) authorizing the Debtors (a) to continue all Insurance Policies, and (b) to pay any prepetition obligations arising under the Insurance Policies, and (ii) granting related relief, and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and this Court having held a hearing to consider the interim relief requested in the Motion (the "**Hearing**"); and upon the First Day Declaration and the record of the Hearing; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Rule 6003 of the Federal Rules of Bankruptcy Procedure, and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a), 362(d), and 363(b) of the Bankruptcy Code, to continue the Insurance Policies and to perform their obligations with respect thereto.

3.      The Debtors are further authorized, but not directed, to revise, extend, renew, rollover, replace, or obtain new Insurance Policies, and to take all appropriate actions in connection therewith, in the ordinary course of business.

4.      Notwithstanding anything to the contrary in this Interim Order, payments on account of prepetition Insurance Obligations shall not exceed $25,000.00 in the aggregate without further order of this Court.

5.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of Insurance Obligations and Brokers' Fees as set forth herein, and to replace any prepetition checks or electronic fund transfer requests

2

that may be lost or dishonored or rejected as a result of the commencement of the Debtors' Chapter 11 Cases.

6.      Each of the Banks at which the Debtors maintain their accounts relating to the payment of the obligations described in the Motion are authorized to (a) receive, process, honor, and pay all checks presented for payment, and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts, and (b) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated before, on, or after the Petition Date, without any duty to inquire otherwise.

7.      Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

8.      The requirements of Bankruptcy Rule 6003(b) have been satisfied.

9.      Under the circumstances of these Chapter 11 Cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

10.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Interim Order.

12.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

13.     The final hearing to consider the relief requested in the Motion shall be held on        , 2022 at _____ (Prevailing Eastern Time), and any objections or responses to the Motion

3

shall be in writing, filed with the Court, and served on or prior to _____, 2022 at 4:00

p.m. (Prevailing Eastern Time).

**Exhibit B**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

```
----------------------------------------------------------- x
In re                                       :      Chapter 11
                                            :
KABBAGE, INC. d/b/a KSERVICING, et al.,     :      Case No. 22-10951 (     )
                                            :
                                            :
                Debtors.¹                    :      (Jointly Administered)
----------------------------------------------------------- x
```

**FINAL ORDER**
**(I) AUTHORIZING DEBTORS TO (A) CONTINUE**
**INSURANCE POLICIES, AND (B) PAY ALL OBLIGATIONS**
**WITH RESPECT THERETO AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**"),[2] of Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession in the Chapter 11 Cases (collectively, the "**Debtors**"), for entry of an order pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001, 6003, and 6004 (i) authorizing the Debtors (a) to continue all Insurance Policies, and (b) to pay any prepetition obligations arising under the Insurance Policies, and (ii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and this Court having held hearings to consider the relief requested in the Motion on an interim and, if necessary, final basis (the "**Hearings**"); and upon the First Day Declaration and the record of the Hearings, and all of the proceedings had before this Court; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a), 362(d), and 363(b) of the Bankruptcy Code, to continue the Insurance Policies and to perform their obligations with respect thereto.

3.      The Debtors are further authorized, but not directed, to pay any prepetition Insurance Obligations.

4.      The Debtors are further authorized, but not directed, to revise, extend, renew, rollover, replace, or obtain new Insurance Policies, and to take all appropriate actions in connection therewith, in the ordinary course of business.

5.      Each of the Banks at which the Debtors maintain their accounts relating to the payment of the Insurance Obligations are authorized to (a) receive, process, honor, and pay all checks presented for payment, and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts, and (b) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or

2

automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated before, on, or after the Petition Date, without any duty to inquire otherwise.

6.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of Insurance Obligations and Brokers' Fees as set forth herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Chapter 11 Cases.

7.      Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

8.      Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

9.      Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

10.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Final Order.

11.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

3

**Exhibit C**

**List of Insurance Policies**

| TYPE OF COVERAGE | INSURANCE CARRIER | POLICY # | POLICY TERM |
|---|---|---|---|
| *A.*    *Liability and Property Insurance Policies* | | | |
| Commercial Property, General Liability, Automobile Policy, and Lead Umbrella Policy | Atlantic Specialty Insurance Company | 712-00-86-50-0009 | 5/1/2022 – 5/1/2023 |
| *B.*    *Cyber Security Insurance Policies* | | | |
| Cyber Liability | AIG Specialty Insurance Company | 01-772-15-46 | 10/16/2021 – 10/16/2022 |
| Excess Cyber Liability | Endurance American Insurance Company | PVX30004806801 | 10/16/2021 – 10/16/2022 |
| *C.*    *Directors' and Officers' Liability Program* | | | |
| Directors & Officers – 1st Layer | XL Specialty Insurance Company | ELU170896-20 | 10/16/2020 – 10/16/2023 Policy converts to 6 year runoff effective 10/16/2023 – 10/16/2029 |
| Directors & Officers – 2nd Layer | AIG – National Union Fire Insurance Company of Pittsburgh, Pa. | 02-778-00-05 | 1/29/2022 – 10/16/2023 Policy converts to runoff effective 10/16/2023 – 10/16/2029 |
| First Side A DIC Directors & Officers Liability Policy | Berkshire Hathaway Specialty Insurance Company | 47-EPF-323700-01 | 8/10/2022 – 10/16/2023 Policy converts to runoff effective 10/16/2023 – 10/16/2029 |
| Excess Side A – Directors & Officers | Everest Insurance | AS5EX00271-221 | 8/10/2022 – 10/16/2023 Policy converts to runoff effective 10/16/2023 – 10/16/2029 |
| Excess Side A – Directors & Officers | QBE Insurance Corporation | 130003257 | 8/10/2022-10/16/2023 Policy converts to runoff effective 10/16/2023 – 10/16/2029 |
| *D.*    *Attorney Liability Policy* | | | |
| Attorney Liability | AIG – National Union Fire Insurance Company of Pittsburgh, Pa. | 02-778-00-04 | 1/21/2022 – 1/21/2023 |