## EXHIBIT A

**Motion**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
----------------------------------------------------------- x
In re                                      :      Chapter 11
                                           :
KABBAGE, INC. d/b/a KSERVICING, et al.,    :      Case No. 22-10951 (      )
                                           :
                                           :
         Debtors.¹                         :      (Joint Administration Requested)
----------------------------------------------------------- x
```

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) CONTINUE
USING EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS,
AND BUSINESS FORMS, (B) IMPLEMENT CHANGES TO CASH MANAGEMENT IN
THE ORDINARY COURSE OF BUSINESS; AND (II) GRANTING RELATED RELIEF**

Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with

their non-Debtor affiliates, the "**Company**"), respectfully move and represent as follows in support

of this motion (this "**Motion**"):[2]

**Relief Requested**

1.      By this Motion, the Debtors request authority pursuant to sections 105(a),

345, and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6003 and 6004

of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2015-2 of the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A);
Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding
2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used
under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and
service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2]    The facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration (as
defined below) filed contemporaneously herewith.  Capitalized terms used but not defined herein shall have the
respective meanings ascribed to such terms in the First Day Declaration (as defined below).

District of Delaware (the "**Local Rules**") but not direction, to (i) continue using their existing cash management system (the "**Cash Management System**"), as described herein, including through the continued maintenance of their bank accounts (the "**Bank Accounts**") at the applicable financial institutions (collectively, the "**Banks**"), consistent with the Debtors' prepetition practices, (ii) grant an extension of the time to comply with certain requirements of section 345(b) of the Bankruptcy Code, and (iii) granting related relief.

2.    The Debtors further request that the Court (a) authorize the Banks to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent directed by the Debtors in accordance with this Motion, and to the extent the Debtors have sufficient funds on deposit in their accounts with such Bank, whether such checks were presented or electronic requests were submitted before or after the date hereof, and (b) authorize all Banks to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

3.    In addition, to the extent necessary, the Debtors request authority to unilaterally make ordinary course changes to the Cash Management System, such as opening or closing their accounts in accordance with the Debtors' prepetition practices and the terms of the Proposed Orders.

4.    A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**"), and a proposed form of order granting the relief requested herein on a final basis is annexed hereto as **Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**").

RLF1 28018280V.1

## Jurisdiction and Venue

5.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.   Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

6.      On the date hereof (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in these Chapter 11 Cases.

7.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their Chapter 11 Cases pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015-1 of the Local Rules.

8.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Deborah Rieger-Paganis In Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith.

**Cash Management System and Bank Accounts**

**A.     Cash Management System**

9.     In broad terms, the Debtors' Cash Management system is similar to cash management systems used by other mortgage lending and servicing businesses:  the Debtors' Cash Management System collects, concentrates, and disburses funds related to (a) servicing loans which have been issued through the United States' federal government Paycheck Protection Program ("**PPP**"), (b) borrower payments made on account of PPP loans, (c) forgiveness of PPP loans made by the Small Business Association ("**SBA**"), (d) guarantee payments of PPP loans made by the SBA, and (e) borrower payments on account of non-PPP small business loans (the "**Legacy Loans**").  In addition, the Cash Management System enables the Debtors to track the collection and disbursement of funds, which is necessary so the Debtors can monitor and forecast their cash needs, engage in cash reporting, and maintain control over the administration of their Bank Accounts.

10.     The Cash Management System is comprised of 15 Bank Accounts, 13 of which are maintained at Synovus Financial Corp. ("**Synovus**"), one of which is maintained at Primis Bank ("**Primis Bank**"), and one of which is maintained at Celtic Bank ("**Celtic Bank**").

a.     <u>Primis Bank Account</u>:  The Primis Bank is a correspondent bank[3] account established on account of the Debtors' participation in the Paycheck Protection Program Liquidity Facility (the "**PPPLF**") pursuant to which PPP loans originated by the Debtors, are pledged as collateral under the Paycheck Protection Program Liquidity Facility ("**PPPLF Collateral**") ("**PPPLF Loans**") pursuant to (a) that certain Paycheck Protection Program Liquidity Facility Letter of Agreement (the "**PPPLF Letter of Agreement**"), dated May 12, 2020 (as amended January 14, 2021), by and among KServicing and the Federal Reserve Bank of San Francisco (the "**Reserve Bank**"), and (b) the Federal Reserve's Operating Circular No. 10, effective July 16, 2013

---

[3]     A correspondent bank acts as an intermediary or agent by facilitating transfers, conducting business transactions, accepting deposits, and gathering documents on behalf of another bank.  Correspondent bank relationships are common for banking and nonbanking institution to transact with the Reserve Bank and other Federal Reserve Banks.  Outside of this context, correspondent bank relationships are less common and are not publicly disclosed.

(the "**Operating Circular**" and, together with the PPPLF Letter of Agreement, the "**PPPLF Program Agreements**").  Prior to the Petition Date, Primis Bank unilaterally provided the Debtors with a notice of termination (effective as of October 20, 2022).  Since that time, the Debtors have sought to replace Primis Bank as the correspondent bank with Synovus—the Debtors' main banking institution.  The Debtors have contacted numerous other banks to inquire if correspondent bank relationships were offered, but were unsuccessful.  As of the Petition Date, the Debtors are still in the process of replacing Primis Bank with another correspondent bank, and, for the avoidance of doubt, request authority to continue such replacement process during the post-petition period.

b.  <u>Synovus Bank Accounts</u>:  The remaining 13 Bank Accounts are comprised of the Debtors' various operating, servicing, and disbursement accounts (as detailed in paragraph 15 hereof).

c.  <u>Celtic Bank Account</u>:  The Celtic Bank Escrow Account consists of funds held in escrow for the benefit of Celtic Bank on account of any potential indemnification obligations relating to the Legacy Loans originated – and now subserviced – by the Debtors after purchasing those loans from Celtic Bank.

d.  A list of the Bank Accounts is annexed hereto as **<u>Exhibit C</u>**.

11.    As further detailed in the *Motion of Debtors for Interim and Final Orders Authorizing Debtors to (I) Continue Servicing and Subservicing Activities and (II) Perform Related Obligation*, filed contemporaneously herewith, with regard to the PPPLF Loans pledged to the Reserve Bank under the PPPLF Program Agreements, historically, the Debtors receive funds from the SBA on account of guaranty purchase and loan forgiveness applications granted by the SBA (the "**SBA Funds**"), which constitute proceeds of the PPPLF Collateral pledged to the Reserve Bank.  In turn, the Debtors historically have remitted a portion of the funds to the Reserve Bank on a weekly basis, which is inclusive of principal payments and 35 basis points of interest earned on account of the advances of credit made by the Reserve Bank to the Debtors under the PPPLF.  However, prior to the Petition Date, the Debtors and the Reserve Bank, in accordance with the relevant loan agreements, instructed the SBA to remit SBA Funds directly to the Reserve

5

Bank on a regular basis (the "**Direct SBA-Reserve Bank Payments**").  As of the Petition Date, the Debtors are still in the process of instituting changes to the Direct SBA-Reserve Bank Payments systems to address the implications of the direct payments, and, for the avoidance of doubt, request authority to continue such process during the post-petition period.  Notwithstanding historical practices, the Debtors will segregate all proceeds of the PPPLF Collateral that the Debtors receive in the Synovus Servicing Account for the sole benefit of the Reserve Bank.[4]

12.    Although many aspects of the Cash Management System are automated, personnel in the Debtors' executive team monitor the system and manage the proper collection, processing and disbursement of funds, check processing and issuance, wire transfers, and automated clearing house ("**ACH**") transactions.  The Cash Management System is critical to the operation of the Debtors' business in the ordinary course as it facilitates the (i) streamlined concentration and transfer of payments and fees generated and collected by the Debtors' business, and (ii) efficient collection and disbursement of funds such as payments owed to the Reserve Bank, Partner Banks, vendors, and other general and administrative expenses.  Any changes to the Cash Management System, other than instituting the Direct SBA-Reserve Bank Payments and segregating proceeds of the PPPLF Collateral, would significantly interfere with the Debtors' business, and impede a successful reorganization.

B.    **Cash Collection, Concentration, and Disbursements**

13.    As set forth in the First Day Declaration, the Debtors' primary source of income includes interest generated from servicing PPP loans, which includes reviewing and processing loan applications and payments as required pursuant to various servicing agreements

---

[4] To extent that the Company receives any borrower collections on account of KS PPP Loans through the Synovus Servicing Account such funds shall be promptly segregated from any proceeds of the PPPLF Collateral.

with public and private lenders. The Debtors also previously earned income from loan origination; however, they have since discontinued originating loans. The Debtors' revenues and receipts generally enter the Cash Management System via direct deposit by borrowers on account of PPP loans and Legacy Loans, and by the SBA on account of the SBA Funds.

14.    The majority of receipts relating to PPP loans and Legacy Loans are ultimately deposited into and disbursed from the Synovus Main Operating Account (the "**Main Operating Account**") as follows:

a.    <u>Direct Deposits</u>.    The Main Operating Account directly receives the SBA Funds which are then remitted to the Reserve Bank as described above on a weekly basis.

b.    <u>Indirect Deposits</u>. The Main Operating Account receives funds from various subaccounts. Specifically, the Main Operating Account receives funds on an as needed basis from the (i) Legacy Lending ACH Account, which collects and centralizes borrower payments made on account of Legacy Loans, and (ii) Synovus Servicing Account, which collects borrower payments made on account of the KS PPP Loans and the PPPLF Loans. The Main Operating Account also receives funds on an as needed basis from the Synovus Customers Bank Servicing Account (the "**Synovus CUBI Servicing Account**") and Synovus Cross River Bank Servicing Account (the "**Synovus CRB Servicing Account**"), which collects borrower payments made on account of Partner Bank PPP Loans. Funds from each of the foregoing accounts are deposited on an as needed basis into the Main Operating Account; however, funds from the Synovus CUBI Servicing Account and Synovus CRB Servicing Account were last deposited in April.

c.    <u>Disbursements</u>. The Main Operating Account (i) disburses (a) the SBA Funds owed to the Reserve Bank on a weekly basis, and (b) ordinary course payments related to vendors, and (ii) is directly debited to satisfy payroll obligations for each respective pay period. The Main Operating Account also historically disbursed payments owed to Partner Banks on a monthly basis.

15.    Each Bank Account is held in the name of KServicing, Inc. A diagram illustrating the general movement of cash through the Cash Management System is annexed hereto as **<u>Exhibit D</u>**, and a more detailed description is set forth in the chart below.

| Accounts | Description of Bank Accounts |
|---|---|
| **Main Operating Account**<br><br>Synovus *(account ending 5201)* | The Main Operating Account acts as the Debtors' centralized account, which collects and disburses funds.<br><br>The Main Operating Account receives funds from the (i) Legacy Lending ACH Account, which collects various payments on Legacy Loans, and (ii) Synovus Servicing Account, which collects borrower payments on KS PPP Loans and the PPPLF Loans (on a limited basis, as described further below). The Main Operating Account also receives (i) the SBA Funds, some of which are remitted to the Reserve Bank on a weekly basis (subject to limited exception described directly below), and (ii) borrower payments on account of Partner Bank loans, which are remitted on a monthly basis.<br><br>The Main Operating Account also disburses (i) ordinary course payments such as vendor expenses, and (ii) SBA Funds to the Reserve Bank as described below. Further, the Main Operating Account is directly debited to satisfy the Debtors' payroll obligations.<br><br>As of the Petition Date, the Main Operating Account had a balance of approximately $17,623,381.07. |
| **Primis Account**<br><br>Primis *(account ending 0578)* | The Primis Account is a correspondent bank account established in connection with the Debtors' participation in the PPPLF.<br><br>Amounts from the Main Operating Account on account of SBA Fees and borrower payments that need to be sent to the Reserve Bank are wired to the Primis Account. The Primis Account is funded on a weekly basis with the estimated funds to be remitted to the Reserve Bank. In connection with the weekly wire, the Debtors simultaneously send reduction reports to both the Reserve Bank and Primis Bank, which report the value of payments received on the PPPLF Loans on account of the outstanding principal loan balance. Following this funding, the Reserve Bank directly debits funds from Primis Bank's master account at the Reserve Bank, and Primis Bank directly debits from the Primis Account held by KServicing a corresponding amount based upon information KServicing provides in the reduction reports.<br><br>There is no overdraft protection on the Primis Account. In the event of an overdraft, payment will not be processed.<br><br>As of the Petition Date, the Primis Account had a balance of approximately $12,427,329.17. |

| Accounts | Description of Bank Accounts |
|---|---|
| **Legacy Lending ACH Account**<br><br>Synovus<br>*(account ending 5243)* | The Legacy Lending ACH Account consists of funds collected from borrower payments made on account of certain of the Debtors' Legacy Loans. The Legacy Lending ACH Account (a) remits payments to partners HCG and Stoneridge for their portion of collections on a daily basis[5], and (b) issues refunds to borrowers in the event of overpayment on an as needed basis.<br><br>The Legacy Lending ACH Account also collects funds from the (a) Agency Payments Account, (b) Debit Rails Account, and (c) Other Customer Payments Account.  The funds from the foregoing accounts are swept on a daily basis into the Legacy Lending ACH Account and then remitted to the Main Operating Account on an as-needed basis.<br><br>As of the Petition Date, the Legacy Lending ACH Account had a balance of approximately $2,942,128.81. |
| **Debit Rails Account**<br><br>Synovus<br>*(account ending 5219)* | The Debit Rails Account consists of funds collected on account of advances made by the Debtors to landlords that own and operate rental properties through Airbnb.  The Debtors advance rental income to landlords of Airbnb properties, and upon receiving rental receipts, the landlords make payments to the Debit Rails Account from such rental income.<br><br>The Debit Rails Account is a "Zero Balance Account", and any funds are swept into the Legacy Lending ACH Account on a daily basis.<br><br>As of the Petition Date, the Debit Rails Account had a balance of approximately $0. |

---

[5] As a non-Federal Deposit Insurance Corporation financial institution, the Company partnered with Celtic in an arrangement whereby:  the Company processed borrower Legacy Loan applications, funded the Legacy Loans through the purchase of participation interests in loan receivables (the "**Participation Interests**")—effectively acquiring the rights to retain borrower principal and interest payments, with Celtic as the lender of record—and subsequently serviced the Legacy Loans. Following the purchase of Participation Interests under the Legacy Loan Agreement, the Company's records show that it sold some of the Participation Interests to HCG Business Credit III Trust and Stone Ridge Trust V.

| Accounts | Description of Bank Accounts |
|---|---|
| **Agency Payments Account**<br><br>Synovus<br>*(account ending 5235)* | The Agency Payments Account consists of funds collected by certain collection agencies on account of certain of the Debtors' Legacy Loans. Collection agencies are engaged by the Debtors to collect payments on Legacy Loans where a borrower has not made a loan payment for 6 consecutive months<br><br>The Agency Payments Account is also a Zero Balance Account, and any funds are swept into the Legacy Lending ACH Account on a daily basis.<br><br>As of the Petition Date, the Agency Payments Account had a balance of approximately $0. |
| **Other Customer Payments**<br><br>Synovus<br>*(account ending 5227)* | The Other Customer Payments Account consists of funds collected from borrower payments in the form of checks made on account of the Debtors' Legacy Loans.<br><br>The Other Customer Payments Account is also a "Zero Balance Account", and any funds are swept into the Legacy Lending ACH Account on a daily basis.<br><br>As of the Petition Date, the Other Customer Payments Account had a balance of approximately $0. |
| **Celtic Bank Escrow Account**<br><br>Synovus<br><br>*(account ending 0842)* | The Celtic Bank Escrow Account consists of funds held in escrow for the benefit of Celtic Bank on account of any potential indemnification obligations relating to the Legacy Loans originated – and now subserviced – by the Debtors after purchasing those loans from Celtic Bank.<br><br>As of the Petition Date, the Celtic Bank Escrow Account had a balance of approximately $2,088,364. |
| **Synovus Servicing Account**<br><br>Synovus<br><br>*(account ending 5276)* | The Synovus Servicing Account collects payments made by borrowers on KS PPP Loans and the PPPLF Loans.  These funds are then deposited into the Main Operating Account, and subsequently transferred to the Primis Account on a weekly basis for remittance to the Reserve Bank as described above.<br><br>The Synovus Servicing Account is used to (a) issue direct refunds to borrowers in the event of borrower overpayment on a daily basis and (b) transfer funds collected on account of borrower payments to the SBA where the SBA has granted a guaranty purchase of such loan.<br><br>As of the Petition Date, the Synovus Servicing Account had a balance of approximately $5,969,694.41. |

| Accounts | Description of Bank Accounts |
|---|---|
| **Synovus CUBI Servicing Account**<br><br>Synovus<br>*(account ending 5250)* | The Synovus CUBI Servicing Account collects payments made by borrowers on loans (a) originated by and/or sold to Customers Bank ("**CUBI**") and (b) serviced by the Debtors on behalf of CUBI. These collections are made on each banking day and then subsequently transferred to the Main Operating Account on an as needed basis depending on the Main Operating Account balance to be remitted to CUBI on a monthly basis.  However, the Debtors are not currently remitting such funds to CUBI at this time.[6]<br><br>The Synovus CUBI Servicing Account is also used to (a) issue direct refunds to borrowers in the event of borrower overpayment on a daily basis, and (b) transfer funds collected on account of borrower payments to the SBA where the SBA has granted a guaranty purchase of such loan.<br><br>As of the Petition Date, the Synovus CUBI Servicing Account had a balance of approximately $4,546,982.23. |
| **Synovus CRB Servicing Account**<br>Synovus<br>*(account ending 5268)* | The Synovus CRB Servicing Account collects payments made by borrowers on loans (a) originated by and/or sold to Cross River Bank ("**CRB**"), and (b) serviced by the Debtors on behalf of CRB.  These collections are made on each banking day and then subsequently transferred to the Main Operating Account on an as needed basis depending on the Main Operating Account balance to be remitted to CRB on a monthly basis.<br><br>The Synovus CRB Servicing Account is also issued to (a) issue direct refunds to borrowers in the event of borrower overpayment on a daily basis, and (b) transfer funds collected on account of borrower payments to the SBA where the SBA has granted guaranty purchase of such loan.<br><br>As of the Petition Date, the Synovus CRB Servicing Account had a balance of approximately $11,038,446.44. |
| **Kabbage Bridge Funding**<br>Synovus<br>*(account ending 5987)* | The Kabbage Bridge Account historically contained funds deposited by the Debtors to front any funds for PPP Loans originated by the Debtors.<br><br>The Debtors no longer deposit funds into this account; the account is dormant and there is no activity.<br><br>As of the Petition Date, the Kabbage Bridge Funding account had a balance of $0. |

---

[6] As described in the First Day Declaration, the Debtors are currently withholding borrower payments to CUBI in the amount of approximately $34,000,000 to offset $65 million in fees that CUBI is currently withholding from the Debtors because of the Debtors' alleged mishandling of PPP Loans.

RLF1 28018280V.1

| Accounts | Description of Bank Accounts |
|---|---|
| **CUBI Loan Disbursements Account**<br>Synovus<br>*(account ending 5946)* | The CUBI Loan Disbursements Account contains funds deposited by CUBI to issue and fund CUBI originated loans, which were to be serviced by the Debtors.<br><br>CUBI no longer deposits funds into this account; the account is dormant and there is no activity.<br><br>As of the Petition Date, the CUBI Loan Disbursements Account had a balance of approximately $153,476.50. |
| **Kabbage Loan Disbursement**<br>Synovus<br>*(account ending 5953)* | The Kabbage Loan Disbursement Account contains funds deposited by the Debtors to issue PPP Loans they originated in the ordinary course of business.<br><br>The Debtors no longer deposit funds into this account; the account is dormant and there is no activity.<br><br>As of the Petition Date, the Kabbage Loan Disbursement Account had a balance of $135,413.50 as of the Petition Date. |
| **SBA Fees Account**<br>Synovus<br>*(account ending 5458)* | Historically, the SBA Fees Account was used to collect fees for KServicing originated loans. The SBA Fees Account collected fees upfront on account of the KServicing originated loans, and also received funds on account of loans that were cancelled and subsequently reissued.<br><br>Funds are no longer being deposited into this account; the account is dormant and there is no activity.<br><br>As of the Petition Date, the SBA Fees Account had a balance of approximately $311,430.76. |

12

| Accounts | Description of Bank Accounts |
|---|---|
| **Utility Deposit Escrow Account**<br><br>Synovus<br>*(account ending 5441)* | The Utility Deposit Escrow Account is a spare account that is no longer in use. The Debtors no longer deposit funds into this account; the account is dormant and there is no activity.<br><br>The Debtors are proposing to use the Utility Deposit Escrow Account for the Adequate Assurance Deposit for their Utility Providers as set forth in the *Motion of the Debtors for Entry of Interim and Final Orders (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment to Utility Providers, (II) Establishing Procedures for Resolving Objections by Utility Providers, (III) Prohibiting Utility Providers from Altering, refusing, or Discontinuing Service, and (IV) Granting Related Relief* filed contemporaneously herewith.<br><br>As of the Petition Date, the Utility Deposit Escrow Account had a balance of $0. |

16.     The Cash Management System is an essential component of the Debtors' business.  Any interruption of the Cash Management System would severely disrupt the Debtors' operations, and result in harm to the Debtors' estates and their stakeholders.  Accordingly, the Debtors seek authority to continue utilizing the Cash Management System in the ordinary course of business on a post-petition basis, in a manner substantially consistent with past practice.

## C.     Debtors' Business Forms

17.     In the ordinary course of business, the Debtors use various business forms, including checks.  To minimize the expense to the Debtors' estates associated with printing or purchasing entirely new business forms and the delay in conducting business prior to obtaining such forms, the Debtors seek authority to continue using their business forms without reference therein to the Debtors' status as "Debtors-in-Possession."  The Debtors prepared communication materials to distribute to the various parties with which they conduct business that will, among other things, inform such parties of the commencement of these Chapter 11 Cases.  The Debtors believe that these direct communications will provide adequate notice of the Debtors' status as

debtors in possession. Nevertheless, if the Debtors generate new checks during the pendency of these Chapter 11 Cases, the Debtors will update any electronically produced check to include a legend referring to the Debtors as "Debtors-in-Possession", and the jointly administered bankruptcy case number within 10 business days of entry of the Proposed Interim Order. Further, if the Debtors re-order checks during the pendency of these Chapter 11 Cases, the debtors will use reasonable efforts to include the designation "Debtors -in -Possession", and the jointly administered bankruptcy case number on such checks.

**D.     Bank Fees**

18.     In the ordinary course of business, the Debtors incur and pay, honor, or allow to be deducted from the appropriate Bank Accounts certain service charges and other related fees, costs, and expenses charged by the Banks (collectively, the "**Bank Fees**"). To the extent the balance in a Bank Account amount decreases below a threshold established by the applicable Bank, the Debtors may incur additional fees for sending and receiving wire transfers, clearing checks, ACH transfers, and other transactions.

19.     The Debtors have historically incurred Bank Fees between approximately $4,000 and $6,000 per month in total for all Bank Accounts, which are withdrawn from the Main Operating Account on a monthly basis. There are no Bank Fees owed on account of the Primis Account. As of the Petition Date, the Debtors believe that they have outstanding or unpaid Bank Fees of approximately $4,000-$6,000. Pursuant to this Motion, the Debtors seek authority to pay the Bank Fees, including any prepetition Bank Fees, and pay any amounts in the ordinary course of business.

**E.     Corporate Credit Card Program**

20.     Additionally, in the ordinary course of business, the Debtors maintain a corporate credit card program (the "**Corporate Credit Card Program**"), pursuant to which

certain of the Debtors' employees use credit cards issued by Synovus, to pay expenses related to office supplies and services, and other work-related subscription costs in connection with the Debtors' business operations (collectively, the "**Corporate Expenses**").[7]  The Debtors, and not the employees, are liable for the Corporate Expenses incurred pursuant to the Corporate Credit Card Program.  The Debtors incur, on average, approximately $5,000 - $10,000 each month on account of corporate expenses through the Corporate Credit Card Program.  Funds are directly debited from the Main Operating Account to satisfy the requisite payments for the Corporate Credit Card Program on a monthly basis.  As of the Petition Date, the Debtors believe that they have an outstanding balance of approximately $10,000 on account of the Corporate Credit Card Program.  Pursuant to this Motion, the Debtors seek authority to pay this balance and continue the Corporate Credit Card Program in the ordinary course of business, so that the Debtors' employees may conduct the Debtors' business, and so that the Debtors may continue to incur vital operation related expenses.

## <u>Relief Requested Should be Granted</u>

**A.      Continuation of Cash Management System is Warranted Under Sections 363 and 105(a) of the Bankruptcy Code**

21.      Continuation of the Cash Management System in the ordinary course is an appropriate exercise of the Debtors' judgment.   Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).  The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate

---

[7] Note that the Corporate Expenses referred to here are incurred directly by the Debtors and therefore are distinct from expenses that are incurred by the Debtors' employees and submitted for reimbursement, as further explained in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Employee Benefits, and Other Compensation and (B) Maintain Employee Benefit Programs and Pay Related Obligations and (II) Granting Related Relied* (the "**Wages Motion**").

its business without unneeded oversight by its creditors or the court. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (citations omitted); *In re Vision Metals, Inc.*, 325 B.R. 138, 145 (Bankr. D. Del. 2005) (same). Included within the purview of section 363(c) is a debtor's ability to continue "routine transactions" necessitated by a debtor's cash management system. *See, e.g., In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) (noting that courts have shown a reluctance to interfere in a debtor's making of routine, day-to-day business decisions) (citations omitted); *In re Vision Metals*, 325 B.R. at 142 ("[W]hen a chapter 11 debtor in possession continues to operate its business, as permitted by section 1108, no court authorization is necessary for the debtor to enter transactions that fall within the ordinary course of its business.").

22. Even if the continuation of the Cash Management System and other relief requested herein were outside the ordinary course of business, the Court may grant such relief pursuant to section 363(b) of the Bankruptcy Code, which provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also, e.g.*, *In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (finding that a sale of equipment was permissible under section 363(b) of the Bankruptcy Code because "there [wa]s a good business reason for completing the sale"). Moreover, if "the debtor articulates a reasonable basis for its business decisions (as

distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

23.     In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (applying section 105(a) to justify an order authorizing the payment of certain prepetition wages, salaries, medical benefits, and business-expense claims to the debtor's employees).  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also In re Cybergenics Corp.,* 226 F.3d 237, 243 (3d Cir. 2000) (citing *In re Marvel Ent. Group, Inc.*, 140 F.3d 463, 474 (3d Cir. 1998) ("A paramount duty of a trustee or debtor in possession in a bankruptcy case is to act on behalf of the bankruptcy estate, that is, for the benefit of the creditors.")); *Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").  Courts consistently have permitted

17

payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See*, *e.g.*, *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of [the] corpus").

24.     Maintaining the existing Cash Management System is in the best interests of the Debtors' estates and all parties in interest and, therefore, should be approved. If the Debtors are required to alter the way in which they collect and disburse cash throughout the Cash Management System, their operations will experience severe disruptions, which ultimately would frustrate the Debtors' ability to effectuate their restructuring strategy and maximize the value of their estates.

25.     Further, the Cash Management System provides significant benefits to the Debtors, including the ability to control corporate costs and administrative expenses by facilitating the movement of funds and the development of more timely and accurate account information. Accordingly, the Debtors request that they be permitted to maintain and continue to use their existing Cash Management System.

## B.     Maintenance of Debtors' Existing Bank Accounts and Business Forms is Warranted

26.     The Operating Guidelines for Chapter 11 Cases (the "**UST Operating Guidelines**") of the Office of the United States Trustee for Region 3 (the "**U.S. Trustee**") generally require that a chapter 11 debtor, among other things, (a) establish one debtor in possession account for all estate monies required for the payment of taxes, (b) close all existing bank accounts and open new debtor in possession accounts, (c) maintain a separate debtor in possession account for collateral, and (d) obtain checks that bear the designation "Debtor in Possession." Moreover, Local Rule 2015-2(a) generally requires that, upon exhausting its existing

check stock, a chapter 11 debtor order new checks labeled "Debtor in Possession" with the corresponding bankruptcy number.

27. The Debtors request, in accordance with Local Rule 2015-2, that the Court waive the requirements of the UST Operating Guidelines with respect to the Debtors' Bank Accounts and business forms, including checks. Strict enforcement of the UST Operating Guidelines with respect to the Cash Management System would severely disrupt the Debtors' ordinary course financial operations by reducing efficiencies, increasing administrative burdens, and creating unnecessary expenses. These Chapter 11 Cases will be more orderly and efficient if the Debtors are permitted to maintain all Bank Accounts with the same account numbers during these cases and to continue to use their business forms, including checks, in the ordinary course; *provided, that,* with respect to checks that the debtors or their agents print themselves, the Debtors or their agents will begin printing the "Debtor in Possession" legend and include the jointly administered bankruptcy case number on such checks within ten (10) business days after the date of entry of the Proposed Interim Order and, to the extent that the Debtors order check stock, the Debtors will use reasonable efforts to include the "Debtor in Possession" legend and the jointly administered bankruptcy case number on such checks.

28. By preserving business continuity and avoiding likely disruption and delay to the Debtors' disbursements, the relief requested herein will benefit all parties in interest.

**C.    Continuation of Corporate Credit Card Program and Payment of Prepetition Amounts Due Thereunder Should Be Authorized**

29. The Corporate Credit Card Program is essential to the Debtors' operations. The Corporate Credit Card Program enables the Debtors' employees to conduct business more efficiently by facilitating the payment of work related expenses and services incurred by the Debtors that are essential to their ongoing operations. The Corporate Credit Card Program is

integral to maintaining the Debtors' ordinary course operations, and a discontinuation of the program would disrupt the Debtors' business.  Without the program, the Debtors' employees would have to pay the work related expenses and services upfront and then wait for reimbursement from the Debtors.  In such case, the Debtors' operational effectiveness would suffer.

30.     Continuation of the Corporate Credit Card Program, and satisfaction of any prepetition amounts outstanding thereunder, will help minimize any adverse effect of the commencement of these Chapter 11 Cases on the Debtors' business.  Accordingly, the Debtors request authority to continue the Corporate Credit Card Program in the ordinary course of business, and to pay any outstanding prepetition obligations regarding the same.

**D.     Payment of Bank Fees Should Be Authorized**

31.     Payment of the Bank Fees, to the extent applicable, is similarly in the best interests of the Debtors and all parties in interest in these Chapter 11 Cases, as it will prevent unnecessary disruptions to the Cash Management System, and ensure that the Debtors' receipt of and access to funds are not delayed.  Payment of prepetition Bank Fees will not prejudice any parties in interest.  Indeed, because the Banks likely have setoff rights for the Bank Fees, payment of Bank Fees should not alter the rights of unsecured creditors in these Chapter 11 Cases. Accordingly, the Debtors request authority to pay the Bank Fees and other similar service charges, including any prepetition Bank Fees, to maintain the Cash Management System.

32.     For the foregoing reasons, the relief requested herein is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these Chapter 11 Cases.  Accordingly, the Court should authorize the relief requested.

E.  **An Extension of Time to Comply with Requirements of Section 345(b) of the Bankruptcy Code is Warranted**

33.     Section 345 of the Bankruptcy Code governs a debtor's deposits and investments of cash during a chapter 11 case, and authorizes such deposits as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a).  For deposits that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires that the debtor obtain from the "entity with which such money is deposited or invested a bond in favor of the United States [that is] secured by the undertaking of a[n adequate] corporate surety, . . . unless the court for cause orders otherwise."  11 U.S.C. § 345(b).   Additionally, the UST Operating Guidelines generally require chapter 11 debtors, among other things, to deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee.

34.     The Debtors are aware that the Banks have not been approved by the U.S. Trustee as authorized depositories, however, requiring the Debtors to move funds to other financial institutions would disrupt the Cash Management System and inhibit the Debtors' ability to operate efficiently and economically, as the Bank Accounts are the principal operating accounts utilized by the Debtors.  Further, given the nature of the Debtors' business, moving funds from the existing Bank Accounts may cause confusion with collection of payments or delay in processing payments. In addition, with respect to the Reserve Bank, the Debtors are required to maintain an account at a depository institution which has agreed to serve as a correspondent for the Debtors.  Therefore, moving funds to a non-correspondent bank would jeopardize the Debtors' business operations with respect to the Reserve Bank.

RLF1 28018280V.1

35.      The Debtors propose to engage in discussions with the U.S. Trustee to determine what modifications to the Bank Accounts, if any, are necessary under the circumstances.[8]  To the enable such discussions, the Debtors request a 45-day extension from the entry of the Proposed Interim Order (or such additional time to which the U.S. Trustee may agree or the Court may order) of the time period in which to come into compliance with section 345(b) of the Bankruptcy Code, to make arrangements that would be acceptable to the U.S. Trustee, or to seek relief from this Court.  The Debtors submit that such relief is warranted in these Chapter 11 Cases.

36.      In chapter 11 cases such as these, strict adherence to the requirements of section 345(b) of the Bankruptcy Code would be inconsistent with the value-maximizing purpose of chapter 11 by creating additional administrative expense and burden, and unduly hampering a debtor's ability under section 345(a) to invest money such "as will yield the maximum reasonable net return on such money." As a result, in 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," Congress amended section 345(b) to provide that its strict investment requirements may be waived or modified if the court so orders "for cause." 140 Cong. Rec. H. 10,767 (Oct. 4, 1994).  The Debtors submit cause exists here to warrant such relief.

37.      For the foregoing reasons, the relief requested herein is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these Chapter 11 Cases.  Accordingly, the Court should authorize the relief requested.

---

[8] The Debtors reserve all rights with respect to whether any of the Bank Accounts are non-approved authorized depositories, and whether and to the extent to which modifications to any such Bank Accounts are appropriate or necessary.

**F.  Banks Should Be Authorized to Receive, Process, Honor, and Pay Checks Issued and Transfers Requested to Pay Obligations Related to Cash Management System**

38.     The Debtors further request that the Court authorize the Banks to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to the Cash Management System, to the extent that sufficient funds are on deposit in the applicable Bank Accounts to cover such payment. The Debtors also seek authority to issue new post-petition checks or effect new post-petition electronic funds transfers in replacement of any checks or fund transfer requests on account of prepetition obligations relating to the Cash Management System that are dishonored or rejected as a result of the commencement of the Debtors' Chapter 11 Cases.

## Reservation of Rights

39.     Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a waiver of any claim or cause of action which may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## Debtors Have Satisfied Bankruptcy Rule 6003(b)

40.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a

motion to pay all or part of a claim that arose before the filing of the petition" before 21 days after filing of the petition. Fed. R. Bankr. P. 6003(b). As described above, and in the First Day Declaration, the Debtors request immediate relief to continue operating their Cash Management System to ensure a seamless transition into and throughout these Chapter 11 Cases. Accordingly, the Debtors believe that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

### **Bankruptcy Rules 6004(a) and (h)**

41.     To implement the foregoing successfully, the Debtors request that the Court find that notice of this Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As described above, and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

### **Notice**

42.     Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (c) the Federal Reserve Bank; (d) Customers Bank; (e) Cross River Bank; (f) the United States Department of Justice; (g) the Federal Trade Commission; (h) the Small Business Administration; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the United States Attorney's Office for the District of Delaware; (l) the Banks; and (m) any party that is entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**"). As this Motion is seeking "first-day" relief, the Debtors will

serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m).  The Debtors believe that no further notice is required.

## **No Prior Request**

43.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  October 3, 2022
         Wilmington, Delaware

/s/ Zachary I. Shapiro
RICHARDS, LAYTON & FINGER, P.A.
Daniel J. DeFranceschi (No. 2732)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
E-mail: defranceschi@rlf.com
           steele@rlf.com
           shapiro@rlf.com
           milania@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (*pro hac vice* admission pending)
Candace M. Arthur (*pro hac vice* admission pending)
Natasha S. Hwangpo (*pro hac vice* admission pending)
Chase A. Bentley (*pro hac vice* admission pending)
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8000
E-mail:      ray.schrock@weil.com
             candace.arthur@weil.com
             natasha.hwangpo@weil.com
             chase.bentley@weil.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------------- x
In re                                  :    Chapter 11
                                       :
KABBAGE, INC. d/b/a KSERVICING, et al.,  :    Case No. 22-10951 (     )
                                       :
                                       :
        Debtors.¹                      :    (Joint Administration Requested)
-------------------------------------------------------- x
```

**INTERIM ORDER (I) AUTHORIZING (A) DEBTORS TO CONTINUE**
**USING EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND**
**BUSINESS FORMS, (B) IMPLEMENT CHANGES TO CASH MANAGEMENT IN THE**
**ORDINARY COURSE OF BUSINESS; AND (II) GRANTING RELATED RELIEF**

Upon the motion, dated October 3, 2022 (the "**Motion**"),² of Kabbage, Inc. d/b/a/

KServicing and its debtor affiliates, as debtors and debtors in possession in the Chapter 11 Cases

(collectively, the "**Debtors**"), for entry of an order pursuant to sections 105, 345, and 363 of the

Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2 (a) authorizing the

Debtors to (i) continue using their existing Cash Management System and business forms and

(ii) honor certain obligations related to the Cash Management System, (b) extending the time to

comply with certain requirements of section 345(b) of the Bankruptcy Code, and (iii) granting

related relief, all as more fully set forth in the Motion; and upon consideration of the *Rieger-*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A);
Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding
2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used
under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and
service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms
in the Motion.

*Paganis* Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* entered by the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief requested in the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and upon the record of the hearing; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a) and 363 of the Bankruptcy Code to continue to manage their cash pursuant to the Cash Management System maintained prior to the Petition Date, to collect, concentrate, and disburse cash in accordance with the Cash Management System, and to make ordinary course changes to

2

their Cash Management System, absent further order of this Court, as consistent with this Interim Order.[3]

3.      The Debtors are further authorized, but not directed, to (i) designate, maintain, and continue to use their existing Bank Accounts, in the names and with the account numbers existing immediately before the Petition Date, (ii) deposit funds in, and withdraw funds from, such Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; except to the extent the Reserve Bank directs the Debtors to segregate proceeds of the PPPLF Collateral into a custodial account, (iii) pay any Bank Fees or other charges associated with the Bank Accounts, whether arising before or after the Petition Date, (iv) otherwise perform their obligations under the documents governing the Bank Accounts, and (v) treat their prepetition Bank Accounts for all purposes as debtor-in-possession accounts.

4.      The Debtors are authorized to pay all service charges for the maintenance of the Cash Management System owed to any Bank, including any Bank Fees incurred in the ordinary course of business, whether arising before or after the Petition Date.

5.      Notwithstanding any other provision in this Interim Order, should a Bank honor a prepetition check or other item drawn on any account that is the subject of this Interim Order (i) at the direction of the Debtors to honor such prepetition check or item or (ii) in good faith belief that this Court has authorized such prepetition check or item to be honored, the Bank shall not be deemed to be nor shall be liable to the Debtors or their estates or otherwise be in violation of this Interim Order.  Without limiting the foregoing, the Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by a

---

[3] Notwithstanding the foregoing, no change shall be made to the management of the PPPLF Loans payments and account without prior written consent by the Reserve Bank, absent entry of an order of the Court after notice and an opportunity to be heard.

Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court, and shall not have any liability to any party for relying on such representations by a Debtor as provided for herein.

6.      The Banks are authorized to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to payment of the obligations described in the Motion, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable Bank Account to cover such payments.

7.      Nothing contained herein shall prevent the Debtors from closing any of their Bank Account(s) in the ordinary course of business and in accordance with prepetition practices as they may deem necessary and appropriate.  The Banks are authorized to honor the Debtors' requests to close such Bank Accounts, and the Debtors shall give notice of the closure of any such Bank Account to the U.S. Trustee and any statutory committee within 15 days of such closure.

8.      The Debtors are authorized to open any new Bank Accounts as they may deem necessary and appropriate in their sole discretion; *provided*, *however*, that the Debtors give notice within 15 days of opening such new account to the U.S. Trustee and any statutory committee appointed in these chapter 11 cases; *provided*, *further*, that the Debtors shall open any new Bank Account at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee or at a bank that is willing to immediately execute such an agreement except to the extent that such new Bank Account must be opened at a correspondent bank in order to continue to maintain a correspondent bank account as required by the Reserve Bank.

9.      For Banks at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, within 15 days of the date of entry of this

4

Interim Order the Debtors shall (i) contact each Bank, (ii) provide the Bank with each of the Debtors' employer identification numbers, and (iii) identify each of their Bank Accounts held at such Bank as being held by a debtor in possession.

10.    The Debtors are authorized to continue the Corporate Credit Card Program in the ordinary course, to perform their obligations under the Corporate Credit Card Program, and to pay outstanding prepetition expenses arising thereunder.

11.    The Debtors shall maintain accurate records of all transfers within the Cash Management System so that all post-petition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records.

12.    The Debtors are authorized to use their business forms, including checks, without alteration and without the designation "debtor in possession" imprinted upon them; *provided, that,* once the Debtors' existing check stock has been used, the Debtors shall use reasonable efforts, when reordering checks, to include the designation "Debtor in Possession" and the jointly administered bankruptcy case number on such checks; *provided, further,* that, with respect to checks which the Debtors or their agents print themselves, the Debtors shall, when printing checks, include the "Debtor in Possession" legend and the jointly administered bankruptcy case number on such checks within 10 business days of the date of entry of this Interim Order.

13.    The Debtors are authorized, but not directed, to issue new post-petition checks, or effect new electronic funds transfers, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' Chapter 11 Cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Interim Order or any other order of this Court.

RLF1 28018280V.1

14.     For Banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the Banks to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within 30 days of entry of this Interim Order.  The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned Banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

15.     The requirements provided in section 345(b) of the Bankruptcy Code are hereby suspended as to the Bank Accounts for an interim period of 45 days, without prejudice to the Debtors' rights to seek a further suspension.

16.     The Debtors are authorized to continue all efforts related to replacement of the Primis Account in the ordinary course as they had commenced prior to the Petition Date without need for any further order or authority from this Court.

17.     The Debtors are authorized to continue all efforts related to processing of the SBA Direct-Reserve Payments in the ordinary course as they had done prior to the Petition Date without need for any further order or authority from this Court.

18.     Notwithstanding the historical nature of the remittance of proceeds by the Debtors, nothing herein shall limit the Debtors' duty to remit the full amount of proceeds constituting PPPLF Collateral to the Reserve Bank, which is governed by the PPPLF Program Agreements; provided, that the Debtors reserve their rights with respect to whether certain proceeds constitute PPPLF Collateral and all rights and defenses thereto are preserved.

19.     Despite the use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. section 1930(a)(6) based on the disbursements of each Debtor, regardless of who pays those disbursements.

RLF1 28018280V.1

20.    The requirements of Bankruptcy Rule 6003(b) have been satisfied.

21.    Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

22.    Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

23.    The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Interim Order.

24.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

25.    The Final Hearing to consider the relief requested in the Motion shall be held on **\_\_\_\_\_, 2022, at _____** (Prevailing Eastern Time), and any objections or responses to the Motion shall be in writing, filed with the Court, and served on or prior to **_____, 2022 at** [•] **a/p.m.** (Prevailing Eastern Time).

**Exhibit B**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re                                                 :        **Chapter 11**
                                                      :
**KABBAGE, INC. d/b/a KSERVICING**, *et al.*,    :        **Case No. 22-10951 (        )**
                                                      :
                                                      :
**Debtors.**[1]                             :        **(Joint Administration Requested)**
------------------------------------------------------------ x

## FINAL ORDER (I) AUTHORIZING (A) DEBTORS TO CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS, (B) IMPLEMENT CHANGES TO CASH MANAGEMENT IN THE ORDINARY COURSE OF BUSINESS; AND (II) GRANTING RELATED RELIEF

Upon the motion, dated October 3, 2022 (the "**Motion**"),[2] of Kabbage, Inc. d/b/a/ KServicing and its debtor affiliates, as debtors and debtors in possession in the Chapter 11 Cases (collectively, the "**Debtors**"), for entry of an order pursuant to sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2 (a) authorizing the Debtors to (i) continue using their existing Cash Management System and business forms and (ii) honor certain obligations related to the Cash Management System, (b) extending the time to comply with certain requirements of section 345(b) of the Bankruptcy Code, and (iii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the Rieger-

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

Paganis Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* entered by the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having entered an order (the "**Interim Order**") granting the relief requested in the Motion on an interim basis; and upon any hearing held on the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT

1.     The Motion is granted as set forth herein.

2.     The Debtors are authorized, but not directed, pursuant to sections 105(a) and 363 of the Bankruptcy Code to continue to manage their cash pursuant to the Cash Management System maintained prior to the Petition Date, to collect, concentrate, and disburse cash in accordance with the Cash Management System, and to make ordinary course changes to

2

their Cash Management System without further order of this Court, as consistent with this Final Order.[3]

3.      The Debtors are further authorized, but not directed, to (i) designate, maintain, and continue to use their existing Bank Accounts, in the names and with the account numbers existing immediately before the Petition Date, (ii) deposit funds in, and withdraw funds from, such Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; except to the extent the Reserve Bank directs the Debtors to segregate proceeds of the PPPLF Collateral into a custodial account, (iii) pay any Bank Fees or other charges associated with the Bank Accounts, whether arising before or after the Petition Date, (iv) otherwise perform their obligations under the documents governing the Bank Accounts, and (v) treat their prepetition Bank Accounts for all purposes as debtor-in-possession accounts.

4.      The Debtors are authorized to pay all service charges for the maintenance of the Cash Management System owed to any Bank, including any Bank Fees incurred in the ordinary course of business, whether arising before or after the Petition Date.

5.      Notwithstanding any other provision in this Final Order, should a Bank honor a prepetition check or other item drawn on any account that is the subject of this Final Order (i) at the direction of the Debtors to honor such prepetition check or item or (ii) in good faith belief that this Court has authorized such prepetition check or item to be honored, the Bank shall not be deemed to be nor shall be liable to the Debtors or their estates or otherwise be in violation of this Final Order.  Without limiting the foregoing, the Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by a Debtor

---

[3] Notwithstanding the foregoing, no change shall be made to the management of the PPPLF Loans payments and account without prior written consent by the Reserve Bank, absent entry of an order of the Court after notice and an opportunity to be heard

prior to the Petition Date should be honored pursuant to this or any other order of this Court, and shall not have any liability to any party for relying on such representations by a Debtor as provided for herein.

6.      The Banks are authorized to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to payment of the obligations described in the Motion, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable Bank Account to cover such payments.

7.      Nothing contained herein shall prevent the Debtors from closing any of their Bank Account(s) in the ordinary course of business and in accordance with prepetition practices as they may deem necessary and appropriate.  The Banks are authorized to honor the Debtors' requests to close such Bank Accounts, and the Debtors shall give notice of the closure of any such Bank Account to the U.S. Trustee and any statutory committee within 15 days of such closure.

8.      The Debtors are authorized to open any new Bank Accounts as they may deem necessary and appropriate in their sole discretion; *provided*, *however*, that the Debtors give notice within 15 days of opening such new account to the U.S. Trustee and any statutory committee appointed in these Chapter 11 Cases; *provided*, *further*, that the Debtors shall open any new Bank Account at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee or at a bank that is willing to immediately execute such an agreement except to the extent that such new Bank Account must be opened at a correspondent bank in order to continue to maintain a correspondent bank account as required by the Reserve Bank.

4

9.      The Debtors are authorized to continue the Corporate Credit Card Program in the ordinary course, to perform their obligations under the Corporate Credit Card Program, and to pay outstanding prepetition expenses arising thereunder.

10.      The Debtors shall maintain accurate records of all transfers within the Cash Management System so that all post-petition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records.

11.      The Debtors are authorized to use their business forms, including checks, without alteration and without the designation "debtor in possession" imprinted upon them; *provided*, *however*, that once the Debtors' existing check stock has been used, the Debtors shall use reasonable efforts, when reordering checks, to include the designation "Debtor in Possession" and the jointly administered bankruptcy case number on such checks; *provided, further,* that, with respect to checks which the Debtors of their agents print themselves, the Debtors shall include the "Debtor-in-Possession", and the jointly administered bankruptcy case number on such checks.

12.      The Debtors are authorized, but not directed, to issue new post-petition checks, or effect new electronic funds transfers, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' Chapter 11 Cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Final Order or any other order of this Court.

13.      For Banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the Banks to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within 30 days of entry of this Interim Order.  The U.S. Trustee's rights to seek further

relief from this Court on notice in the event that the aforementioned Banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

14.    The requirements provided in section 345(b) of the Bankruptcy Code are hereby suspended as to the Bank Accounts on a final basis.

15.    The Debtors are authorized to continue all efforts related to replacement of the Primis Account in the ordinary course as they had commenced prior to the Petition Date without need for any further order or authority from this Court.

16.    The Debtors are authorized to continue all efforts related to processing of the SBA Direct-Reserve Payments in the ordinary course as they had done prior to the Petition Date without need for any further order or authority from this Court.

17.    Notwithstanding the historical nature of the remittance of proceeds by the Debtors, nothing herein shall limit the Debtors' duty to remit the full amount of proceeds constituting PPPLF Collateral to the Reserve Bank, which is governed by the PPPLF Program Agreements; provided, that the Debtors reserve their rights with respect to whether certain proceeds constitute PPPLF Collateral and all rights and defenses thereto are preserved.

18.    Despite use of a consolidated cash management system, the Debtors shall calculate quarterly fees under section 28 U.S.C. section 1930(a)(6) based on the disbursements of each Debtor, regardless of who pays those disbursements.

19.    Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

20.    Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

21.    The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Final Order.

22.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

**Exhibit C**

**Bank Accounts**

| Bank Name | Account Name / Type | Last 4 Digits of Account # |
|---|---|---|
| Synovus | Main Operating Account | 5201 |
| Primis | Primis Account | 0578 |
| Synovus | Legacy Lending ACH Account | 5243 |
| Synovus | Debit Rails Account | 5219 |
| Synovus | Agency Payments Account | 5235 |
| Synovus | Other Customer Payments Account | 5227 |
| Celtic | Celtic Bank Escrow Account | 0842 |
| Synovus | Synovus Servicing Account | 5276 |
| Synovus | Synovus CUBI Servicing Account | 5250 |
| Synovus | Synovus CRB Servicing Account | 5268 |
| Synovus | Kabbage Bridge Funding | 5987 |
| Synovus | CUBI Loan Disbursement | 5946 |
| Synovus | Kabbage Loan Disbursement | 5953 |
| Synovus | SBA Fees | 5458 |
| Synovus | Utility Deposit Escrow Account | 5441 |

**Exhibit D**

**Cash Management System Diagram**

Other
Dormant Accounts
CUBI Loan Disbursements (5946)
Kabbage Bridge Funding (5987)
Kabbage Loan Disbursements (5953)
SBA Fees (5458)
Escrow (5441)
Vendors
Vendor Payments
PPPLF
PPPLF remittances
Primis (0578)
SBA
Borrower collections on loans guaranty purchased by SBA
Forgiveness and guaranty purchase payments
PPPLF Portfolio and KS PPP Portfolio
Payments
PPPLF Borrowers
Synovus Servicing (5276)
Refunds
KS Borrowers
Payments
Synovus Operating (5201)
Celtic Bank Escrow (0842)
HCG
SR
CUBI remittances
CUBI
CRB remittances
CRB
Legacy Borrowers
Payments
Legacy Lending ACH (5243)
Refunds
Borrower collections on loans guaranty purchased by SBA
SBA
Other Customer Payments (5227)
Debit Rails (5219)
Agency Payments (5235)
Synovus CUBI Servicing (5250)
Synovus CRB Servicing (5268)
Payments
Legacy Loan Recoveries
Payments
Refunds
Payments
AirBnB Vendors
Collection Agencies
CUBI Borrowers
CRB Borrowers
Legacy Portfolio
Partner Bank Portfolio

