## Exhibit B

**Rieger-Paganis Declaration**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------------ x
In re                                                        :   Chapter 11
                                                             :
KABBAGE, INC. d/b/a KSERVICING, *et al.*,                    :   Case No. 22-10951 (CTG)
                                                             :
                                                             :
Debtors.[1]                                                  :   (Jointly Administered)
------------------------------------------------------------ x

**DECLARATION OF DEBORAH RIEGER-PAGANIS
IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF ORDER
(I) AUTHORIZING DEBTORS' LIMITED USE OF CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION TO SECURED LENDER,
(III) MODIFYING AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

I, Deborah Rieger-Paganis, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true to the best of my knowledge, information, and belief:

1.  I am a Managing Director at AlixPartners, LLP ("**AlixPartners**"), an internationally recognized restructuring and turnaround firm with substantial experience in providing financial advisory services and has an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States. AlixPartners has been retained as Financial Advisor to Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

2. I submit this declaration in support of the *Motion of Debtors for Entry of Order (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Adequate Protection to Secured Lender, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* (the "**Motion**").[2]

3. I am familiar with and was actively involved in the negotiation of the terms of the Debtors' use of Cash Collateral and the adequate protection proposed to be provided by the Debtors to the Reserve Bank. The proposed use of Cash Collateral is the product of arms'-length and good faith negotiations between the Debtors and the Reserve Bank. During the negotiations, the Reserve Bank indicated that their consent would be contingent on the terms of the Proposed Order. I also worked with the Debtors and their advisors to formulate the Cash Collateral Budget, which is attached to the Proposed Order and represents a reasonable forecast of available cash and expenses to be incurred during the applicable period.

## Debtors' Indebtedness

4. The total amount of the Advances borrowed by the Debtors pursuant to the Program Agreements is approximately $1.6 billion. As of the Petition Date, the Debtors were indebted to the Reserve Bank (i) in the aggregate principal amount of approximately $536,450,940 in respect of outstanding Advances under the Program Agreement (each as defined below) plus (ii) accrued and unpaid interest, costs, and expenses including, without limitation, attorney's fees, agent's fees, other professional fees and disbursements and other obligations owing under the Program Agreements (collectively, the "**Indebtedness**").

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion.

**Debtors' Proposed Use of Cash Collateral**

5.  For purposes of the Cash Collateral Budget, the Cash Collateral available to the Debtors during the Budget Period constitutes Agreed Cash Amounts held by the Debtors in the Synovus Servicing Account and Primis Account as of the Petition Date and actually and subsequently paid to the Debtors after the Petition Date; provided that absent further prior written consent from the Reserve Bank, the aggregate total Cash Collateral available during the Budget Period is subject to the Cash Collateral Cap.  I understand that with respect to Pledged PPPLF Loan payments received directly by the Reserve Bank from the SBA, the Reserve Bank will remit any funds that constitute Agreed Cash Amounts up to the Cash Collateral Cap (less any Agreed Cash Amounts received directly and retained by the Debtors, if any) consistent with the terms of the Cash Collateral Budget and the Proposed Order.

6.  As adequate protection to the Reserve Bank for the Debtors' use of Cash Collateral, the Reserve Bank will receive, to the extent of any diminution in value, valid perfected first-priority replacement liens on all of the Debtors' unencumbered property and assets owned or held as of the Petition Date and all property acquired or obtained after the Petition Date, including without limitation, proceeds of claims and causes of actions arising under chapter 5 of the Bankruptcy Code, and junior liens on all of the Debtors' property and assets encumbered as of the Petition Date, as well as, among other things, a commitment by the Debtors to continue to service the PPP Loans constituting PPPLF Collateral; work cooperatively with the Reserve Bank to timely implement direct payments from the SBA to the Reserve Bank on all PPP Loans constituting PPPLF Collateral, including delivering instructions to the SBA to direct all payments on KS PPP Loans to the Reserve Bank; provide real-time weekly reporting to the Reserve Bank on all amounts in the Synovus Servicing Account, including whether any payments in connection with the KS

PPP Loans have been deposited in, or transferred from the Synovus Servicing Account; and to pay the reasonable and documented fees of the Reserve Bank's professionals not to exceed the amounts set forth in the Cash Collateral Budget. In addition, the Debtors agreed to certain stipulation regarding the amount, validity, enforceability, perfection, and priority of the claims and liens of the Reserve Bank.

7. The Debtors are permitted to use Cash Collateral in compliance with the Cash Collateral Budget subject to Permitted Variances. I worked with the Debtors and their advisors to formulate the Cash Collateral Budget, which was shared with and agreed upon by the Reserve Bank and its advisors, and represents a reasonable forecast of available cash and expenses to be incurred during the applicable period. The Debtors' right to use the Cash Collateral is also subject to certain Termination Events (as defined in the Proposed Order).

8. In addition, the Debtors negotiated a Carve-Out for professional fees during these Chapter 11 Cases to be used to pay the fees of the Clerk of the Court, the United States Trustee, professionals retained by any statutory committee of unsecured creditors, and professionals retained by the Debtors in the Chapter 11 Cases. Based on my experience, the terms of the Carve-Out are customary and do not deviate from widely accepted standard terms.

### The Debtors' Need for Cash Collateral

9. Beginning in September 2022, the Debtors and the Reserve Bank engaged in extensive arms'-length negotiations regarding the terms and conditions of the Debtors' consensual use of Cash Collateral. In connection with negotiations of the Cash Collateral Order, the Debtors have formulated an initial 13-week forecast, set forth in the Cash Collateral Budget, which includes all reasonable and foreseeable expenses to be incurred by the Debtors for the applicable period. As of the Petition Date, the Debtors had approximately $11 million of

unrestricted cash on hand.  Given the Debtors are not generating any material cash throughout the Chapter 11 Cases, the Cash Collateral will enable the Debtors to continue to operate their business in the ordinary course of business, including to service the PPP Loans that are pledged as PPPLF Collateral throughout the Chapter 11 Cases and pay any related fees and expenses associated with the administration of the Chapter 11 Cases.

10. Based on the Company's Cash Collateral Budget, access to Cash Collateral, as well as existing cash on hand, is necessary to continue servicing and maintaining operations in the ordinary course and ensure the viability of the Company without significant deterioration to the detriment of all stakeholders.  Absent the use of Cash Collateral, the Debtors will be forced to completely halt their business operations by abruptly transferring their servicing obligations to third parties, resulting in disruption to loan processing; the relief requested in the Cash Collateral Motion undoubtedly preserves the value of the Debtors' estates.  I believe that the proposed use of Cash Collateral pursuant to the terms of the Proposed Order is therefore in the best interest of the Debtors, their estates, and stakeholders.

11. It is my belief, based on my general experience in the restructuring industry and my experience with the Debtors' business, that the relief sought therein is necessary and appropriate to provide the Debtors with access to Cash Collateral, that along with cash on hand throughout the Chapter 11 Cases (including but not limited to future proceeds on account of the Debtors' Legacy Loans[3] and the KS PPP Loans), will enable them to continue to service their loan portfolio, and maintain operations in the ordinary course.

---

[3] As defined in the *Declaration of Deborah Rieger-Paganis In Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 13].

I declare under penalty of perjury that I have reviewed the Debtors' requests included in the Cash Collateral Motion, including the terms of the Cash Collateral Budget, and based on my experience, they are fair and reasonable and reflect the Debtors' exercise of prudent business judgment.

Date: October 24, 2022
New York, New York

/s/ <i>Deborah Rieger-Paganis</i>
Deborah Rieger-Paganis
Managing Director
AlixPartners, LLP