## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------x
                                  :

**In re**                               :   **Chapter 11**
                                  :

**KABBAGE, INC. d/b/a KSERVICING, *et al.*,** :   **Case No. 22-10951 (CTG)**
                                  :

              **Debtors.**[1] :   **(Jointly Administered)**
                                  :
                                  :   **Obj. Deadline: Nov. 14, 2022 at 4:00 p.m. (ET)**
                                  :   **Hearing Date: Nov. 21, 2022 at 1:00 p.m. (ET)**

---------------------------------------------------------x

## MOTION OF DEBTORS FOR ENTRY OF ORDER (I) APPROVING THE DISCLOSURE STATEMENT OF THE DEBTORS, (II) ESTABLISHING SOLICITATION, VOTING, AND RELATED PROCEDURES, (III) SCHEDULING CONFIRMATION HEARING, (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF PLAN, (V) APPROVING SPECIAL ELECTRONIC NOTICING PROCEDURES, (VI) APPROVING DEBTORS' PROPOSED CURE PROCEDURES FOR UNEXPIRED LEASES AND EXECUTORY CONTRACTS, <u>AND (VII) GRANTING RELATED RELIEF</u>

           Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### <u>Relief Requested</u>

           1.      By this Motion, the Debtors request, pursuant to sections 502, 1125, 1126, and 1128 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 3017-

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

1, and 9006-1 of the Local Rules Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "**Local Rules**"), entry of an order:

      a.      approving the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of Kabbage, Inc. (d/b/a KServicing) and its Affiliated Debtors*, filed on October 5, 2022 [Docket No. 63] (as may be amended, modified, or supplemented from time to time, the "**Disclosure Statement**") as containing adequate information pursuant to section 1125 of the Bankruptcy Code;[2]

      b.      scheduling a hearing (the "**Confirmation Hearing**") to consider confirmation of the *Joint Chapter 11 Plan of Liquidation of Kabbage, Inc. (d/b/a KServicing) and its Affiliated Debtors*, filed on October 3, 2022 [Docket No. 14] (as may be amended, modified, or supplemented from time to time, the "**Plan**");

      c.      approving the below described solicitation and tabulation procedures for the Plan;

      d.      approving the Ballots (as defined below);

      e.      approving the notice of and objection and confirmation procedures in connection with the Confirmation Hearing;

      f.      approving special electronic noticing procedures (the "**Special Electronic Noticing Procedures**") with respect to Borrowers (as defined below);

      g.      approving the Debtors' proposed Cure Procedures (as defined below) for treatment of unexpired leases and executory contracts pursuant to the Plan; and

      h.      granting related relief.

2.      A proposed form of order granting the relief requested herein is annexed hereto as

**<u>Exhibit A</u>** (the "**Proposed Order**").

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Disclosure Statement and Plan.

3.      The following table summarizes the relevant dates requested in the Motion (subject to the Court's calendar):

| Event | Deadline |
|---|---|
| Voting Record Date | **November 21, 2022** |
| Solicitation Date | **No later than three business days after entry of Proposed Order** |
| Supplemental Solicitation Date | **No later than three business days after General Bar Date** |
| Deadline to file Claim Objection or Request to Estimate Claim for Voting Purposes | **December 15, 2022 at 4:00 p.m. (Prevailing Eastern Time)** |
| Plan Supplement Filing Date | **December 16, 2022** |
| Rule 3018 Motion Deadline | **December 20, 2022 at 4:00 p.m. (Prevailing Eastern Time)** |
| Voting Deadline | **December 23, 2022 at 5:00 p.m. (Prevailing Eastern Time)** |
| Plan Objection Deadline | **December 23, 2022 at 4:00 p.m. (Prevailing Eastern Time)** |
| Deadline to File (i) Reply to Plan Objection(s), (ii) Brief in Support of Plan Confirmation, (iii) Declarations in Support of Confirmation, and (iv) Voting Certification | **January 3, 2023 at 12:00 p.m. (Prevailing Eastern Time)** |
| Confirmation Hearing | **On or around January 5, 2023 (subject to the Court's calendar)** |

4.      Also, summarized below are the attachments and exhibits cited throughout the Motion:

| Document | Exhibit |
|---|---|
| Proposed Order | **Exhibit A** to the Motion |
| Confirmation Hearing Notice | **Exhibit 1** to the Proposed Order |
| Form of Class 3 Ballot (Reserve Bank Claims) | **Exhibit 2-A** to the Proposed Order |
| Form of Class 4 Ballot (General Unsecured Claims) | **Exhibit 2-B** to the Proposed Order |

**Jurisdiction and Venue**

5.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and

1334, and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C.

§ 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final

order by the Court in connection with the Motion to the extent it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments consistent with Article III of

the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408

and 1409.

**Background**

6.      On October 3, 2022 (the "**Petition Date**"), the Debtors each commenced with this

Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The

Debtors are authorized to continue to operate their business as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee

of creditors has been appointed in these Chapter 11 Cases.

7.      The Chapter 11 Cases are being jointly administered for procedural purposes only

pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015-1 of the Local Rules.

8.      Additional information regarding the Debtors' businesses, capital structure, and the

circumstances leading to the commencement of these Chapter 11 Cases is set forth in the

*Declaration of Deborah Rieger-Paganis in Support of Debtors' Chapter 11 Petitions and First

Day Relief* [Docket No. 13] (the "**First Day Declaration**").

**Proposed Restructuring**

9.      The Plan proposes to effectuate an orderly wind down of the Debtors through a chapter 11 proceeding.  The Plan contemplates a "toggle" implementation, pursuant to which the Debtors will either, in the broadest of terms, (a) continue servicing their loan portfolio (the "**Funded Transaction**"), or (b) transfer their portfolio to third-party servicers (the "**Unfunded Transaction**").   The prime difference between the Funded Transaction and the Unfunded Transaction is the amount of time in chapter 11 and go-forward servicing; importantly, the determining factor is funding.

- <u>In the event of the Funded Transaction</u>: the Debtors are successful in securing adequate funding (through negotiations with, among others, the Reserve Bank and Customers Bank ("**CUBI**")) and the Debtors contemplate an approximate six (6)-month bankruptcy case, during which the Debtors continue servicing their loan portfolio throughout the cases, in the following ways and at the option of each of the Partner Banks and the Reserve Bank: (w) the Company continues to service the remaining Loan Portfolio after the plan effective date, but with each applicable Partner Bank and the Reserve Bank paying post-effective date servicing costs; or (x) the Company and each applicable Partner Bank and the Reserve Bank work cooperatively to transfer after the plan effective date servicing to a third-party loan servicer.

- <u>In the event of the Unfunded Transaction</u>:  the Debtors are unsuccessful in securing adequate funding (through negotiations with among others, the Reserve Bank and CUBI) and the Debtors contemplate an approximate 100-day bankruptcy case, pursuant to which the Debtors (y) reject the servicing agreements with the Partner Banks and (z) service the PPPLF Portfolio until the plan effective date, at which time the PPPLF Collateral will be returned to the Reserve Bank in satisfaction of its claims.

10.      Importantly, in either scenario, any fees and costs associated with any transfer of servicing obligations shall not be borne by the Debtors.  The intent of the Debtors' Plan is to efficiently and expeditiously wind down the Debtors' operations but with consideration of that impact to the Partner Banks, the secured lender—the Reserve Bank, and importantly the PPP and legacy borrowers (collectively, the "**Borrowers**").  The Debtors seek to maximize value for all

stakeholders and minimize, where possible, interruptions to the servicing of the PPP Loans and Legacy Loans.

**Relief Requested Should Be Granted**

**A.      Approval of Disclosure Statement and Notice Thereof Is Warranted**

11.      Pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016(b), the Debtors prepared and filed the Disclosure Statement to provide parties adequate information and disclosure regarding the terms of the Plan.  The Debtors intend to provide parties with copies of the Disclosure Statement, once approved, in connection with the Debtors' solicitation of votes to accept or reject the Plan.

a.      Approval of Disclosure Statement

12.      Pursuant to section 1125(b) of the Bankruptcy Code, a plan proponent must provide holders of impaired claims and equity interests with "adequate information" regarding a proposed chapter 11 plan of reorganization.  Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

13.      Accordingly, a debtor's disclosure statement must provide sufficient information to permit an informed judgment by impaired creditors entitled to vote on the plan.  *See, e.g.*, *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re*

6

*Phoenix Petroleum, Co*., 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan."). The essential requirement of a disclosure statement is that it "clearly and succinctly inform[s] the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Keisler*, No. 08-34321, 2009 WL 1851413, at *4 (Bankr. E.D. Tenn. June 29, 2009) (quoting *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991)).

14.     Whether a disclosure statement contains adequate information "is not governed by any otherwise applicable non-bankruptcy law, rule, or regulation." 11 U.S.C. § 1125(d). Instead, bankruptcy courts have broad discretion to determine the adequacy of the information contained in a disclosure statement. *See, e.g.*, *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D.N.J. 2005) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a disclosure statement.") (citing *In re River Village Assoc.,* 181 B.R. 795, 804 (E.D. Pa. 1995)); *In re Phoenix Petroleum Co*., 278 B.R. at 393 (noting that the determination of what is adequate information is "largely within the discretion of the bankruptcy court") (quoting *Texas Extrusion Corp. v. Lockheed Corp.* (*In re Texas Extrusion Corp.*), 844 F.2d 1142, 1157 (5th Cir. 1988)). Congress granted bankruptcy courts such wide discretion in determining the adequacy of a disclosure statement to facilitate effective reorganizations of debtors in a broad range of businesses, taking into account the various circumstances that accompany chapter 11 cases. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 408–09 (1977); *see also In re Copy Crafters Quickprint Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (noting that the adequacy of a disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy

7

of Chapter 11 towards fair settlement through a negotiation process between informed interested parties"). Accordingly, the determination of whether a disclosure statement contains adequate information is made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case.").

15.    In that regard, in determining whether a disclosure statement contains adequate information, courts generally examine a list of factors, including the following types of information, as applicable:

- the circumstances that gave rise to the filing of the bankruptcy petition;

- an explanation of the available assets and their value;

- the anticipated future of the debtor(s);

- the source of the information provided in the disclosure statement;

- a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

- the condition and performance of the debtor while in chapter 11;

- information regarding claims against the estate;

- a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

- the accounting and valuation methods used to produce the financial information in the disclosure statement;

- information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, or officers of the debtor;

- a summary of the plan of reorganization or liquidation;

- an estimate of all administrative expenses, including attorneys' fees;

- the collectability of any accounts receivable;

- any financial information, valuations, or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

- information relevant to the risks being taken by the creditors and interest holders;

- the actual or projected value that can be obtained from avoidable transfers;

- the existence, likelihood, and possible success of non-bankruptcy litigation;

- the tax consequences of the plan; and

- the relationship of the debtor with its affiliates.

*See, e.g.*, *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988); *see also In re Oxford Homes, Inc.*, 204 B.R. 264, 269 n.17 (Bankr. D. Me. 1997) (using a similar list). Such a list is not meant to be comprehensive and a debtor is not required to provide all the information on the list. Rather, the bankruptcy court must decide what is appropriate in each case in light of the particular facts and circumstances present. *See Ferretti*, 128 B.R. at 18–19 (adopting a similar list); *see also In re Phoenix Petroleum Co.*, 278 B.R. at 393 (making use of a similar list but cautioning that "no one list of categories will apply in every case").

16.     The Disclosure Statement contains the necessary information for holders of Claims entitled to vote to make an informed decision about whether to vote to accept or reject the Plan, including many of the categories cited above, such as:

- the Debtors' business, including their corporate history and organizational structure, business operations, and prepetition capital structure and indebtedness, *see* Disclosure Statement, at Section III.;

- key events leading to the Chapter 11 Cases, including the Debtors' restructuring negotiations, *see id.*, at Section IV;

- an overview of events during the Chapter 11 Cases, *see id.*, at Section V;

9

- a summary of the Plan, including the classification and treatment of Claims and Interests under the Plan and who is entitled to vote on the Plan, *see id.*, at Section VI;

- certain tax consequences of the Plan, *see id.*, at Section VII;

- certain risk factors affecting the Debtors, *see id.*, at Section VIII;

- the voting procedures and requirements for voting on the Plan, *see id.*, at Section IX;

- requirements for confirmation and consummation of the Plan, *see id.*, at Section X;

- alternatives to confirmation and consummation of the Plan, *see id.*, at Section XI; and

- the Debtors' liquidation analysis (annexed to the Disclosure Statement as **Exhibit C**).[3]

- the Debtors' conclusion and recommendation, *see id.*, at Section XII.

17.     Based on the foregoing, the Debtors submit that the Disclosure Statement contains sufficient information for a voting party to make an informed judgment regarding whether to vote to accept or reject the Plan.  Thus, the Debtors respectfully request that the Court approve the Disclosure Statement as containing adequate information in satisfaction of the requirements of section 1125 of the Bankruptcy Code.

   b.     The Disclosure Statement Provides Adequate Notice of Release, Exculpation, and Injunction Provisions in Plan

18.     Pursuant to Bankruptcy Rule 3016(c), "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be

---

[3] The Debtors will file the liquidation analysis prior to the hearing on approval of this Motion and the Disclosure Statement.

enjoined and identify the entities that would be subject to the injunction." Fed. R. Bankr. P. 3016(c).

19.    The Plan includes injunction, release, and exculpation provisions highlighted in bold in Sections 10.5, 10.6, and 10.7. The Disclosure Statement describes in detail the releases provided under the Plan, the entities providing such releases, the entities being released, and the Claims and Causes of Action so released. *See* Disclosure Statement, at pages 53–54, 55. Additionally, the Disclosure Statement sets forth the terms of the exculpation provision under the Plan. *See id.*, at page 55. Each of the foregoing sections is set forth in conspicuous, bold print. In addition, Section 10.3 of the Plan sets forth the injunction related to the release and exculpation provisions in the Plan. Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c).

**B.    Solicitation and Voting Procedures**

20.    In connection with the Disclosure Statement and Plan, the Debtors propose to implement the solicitation and balloting procedures described below (collectively, the "**Solicitation Procedures**"). As set forth herein, the Solicitation Procedures comply with the various applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and should be approved.

21.    The Debtors are providing copies of the Disclosure Statement (including all exhibits and appendices) and related materials and a Ballot (collectively, a "**Solicitation Package**") to record holders of Reserve Bank Claims and General Unsecured Claims. In order to vote, holders of Reserve Bank Claims and General Unsecured Claims should provide all of the information requested by the Ballot and, as applicable, should complete and deliver their completed Ballots so that they are actually received by the Debtors' voting agent, Omni Agent Solutions ("**Omni**"), no later than the Voting Deadline.

a.    Parties Entitled to Vote

22.    Under the Bankruptcy Code, only holders of claims or interests in "impaired" classes are entitled to vote on a plan.  Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan unless (i) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof or (ii) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

23.    If, however, the holder of an impaired claim or interest will not receive or retain any distribution under the plan on account of such claim or interest, the Bankruptcy Code deems such holder to have rejected the plan, and, accordingly, holders of such claims and interests do not actually vote on the plan.  If a claim or interest is not impaired by the plan, the Bankruptcy Code deems the holder of such claim or interest to have accepted the plan and, accordingly, holders of such claims and interests are not entitled to vote on the Plan.  Further, a vote may be disregarded if the Bankruptcy Court determines, pursuant to section 1126(e) of the Bankruptcy Code, that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

24.    For a detailed description of the treatment of Claims and Interests under the Plan, *see* Section VI of the Disclosure Statement.

25.    The Debtors propose that the following classes (the "**Voting Classes**") be entitled to vote to accept or reject the Plan as such classes are impaired but entitled to receive distributions under the Plan, subject to certain exceptions discussed below:

| Class | Description |
|---|---|
| Class 3 | Reserve Bank Claims |
| Class 4 | General Unsecured Claims |

26.　Classes 3 (Reserve Bank Claims) and 4 (General Unsecured Claims) are impaired under the Plan and the only Classes of Claims or Interests entitled to vote to accept or reject the Plan.

b.　Parties Not Entitled to Vote

27.　A holder of a Claim in a Voting Class is nonetheless **not** entitled to receive a ballot or vote if:

- as of the Voting Record Date, such creditor's Claim relates to a debt or obligation that the Debtors have already paid or otherwise satisfied;

- as of the Voting Record Date (as defined below), the outstanding amount of such holder's Claim is zero ($0.00);

- as of the Voting Record Date, such holder's Claim has been disallowed, expunged, disqualified, or suspended;

- such holder's Claim is not scheduled in the Debtors' schedules of assets and liabilities (collectively, as may be amended from time to time, the "**Schedules**") or such holder's Claim is scheduled in an undetermined amount or as contingent, unliquidated, or disputed, except as provided in paragraph 32 of the Motion;

- such holder's Claim is subject to an objection or request for estimation as of the Voting Record Date, subject to the procedures set forth below; or

- such holder was required to timely file a proof of claim in the form and manner specified by the Bar Date Order (as defined below) and did not do so on or before the applicable Bar Date (as defined in the Bar Date Order).

28.　Certain classes are not entitled to vote on a plan.  Section 1126(f) of the Bankruptcy Code provides that, for the purposes of soliciting votes for confirmation of a plan of reorganization, "a class that is not impaired under a plan, and each holder of a claim or interest of such class, are

conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required." 11 U.S.C. § 1126(f).

29.     The Plan leaves certain Claims and Interests unimpaired. The holders of such Claims and Interests are therefore presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code and not entitled to vote.  Further, certain Claims and Interests are impaired, not entitled to any distributions under the Plan, and, therefore, pursuant to section 1126(f) of the Bankruptcy Code are not entitled to vote.  Holders of Claims and Interests in these classes constitute non-voting Creditors and Interest Holders who are not entitled to vote (collectively, the "**Non-Voting Classes**" or the "**Non-Voting Claims**"):

| Class | Description | Impairment | Acceptance / Rejection |
|-------|-------------|------------|------------------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (Presumed to accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to accept) |
| Class 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to reject) |
| Class 6 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to accept / deemed to reject) |
| Class 7 | Subordinated Securities Claims | Impaired | Not Entitled to Vote (Deemed to reject) |
| Class 8 | KServicing Equity Interests | Impaired | Not Entitled to Vote (Deemed to reject) |

30.     Because Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 5 (Intercompany Claims), Class 6 (Intercompany Interests), Class 7 (Subordinated Securities Claims), and Class 8 (KServicing Equity Interests) are not entitled to vote, in an effort to conserve the resources of the Debtors' estates, the Debtors propose to send to holders of such Claims and

Interests only the Confirmation Hearing Notice (as defined below). Copies of the Disclosure Statement and the Plan will also be available free-of-charge on the website maintained by the Debtors' voting agent, Omni, at www.omniagentsolutions.com/kerservicing (the "**Case Website**"), and instructions on how to obtain copies will be set forth in the Confirmation Hearing Notice. The Debtors submit that such notice satisfies the requirements of Bankruptcy Rule 3017(d).

> c.    <u>Temporary Allowance / Disallowance of Claims</u>

31.    Pursuant to section 1126(a) of the Bankruptcy Code, the holder of an "allowed" claim may accept or reject a chapter 11 plan. Bankruptcy Rule 3018(a) provides, however, that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).

32.    Solely for purposes of voting to accept or reject the Plan, and not for the purpose of the allowance of, or distribution on account of, a Claim, and without prejudice to the rights of the Debtors in any other context, each Claim within a Voting Class is temporarily Allowed in an amount equal to the amount of such Claim either as set forth in the Schedules or in a properly and timely filed proof of claim, subject to the following exceptions (collectively, the "**Temporary Allowance Exceptions**"):

> a.    if a proof of claim was filed by the Voting Record Date in an amount that is liquidated, non-contingent, and undisputed, such Claim will be temporarily Allowed for voting purposes in the amount set forth on the proof of claim, unless such Claim is disputed as set forth in subparagraph (f) below;
>
> b.    if a Claim has been estimated or otherwise Allowed for voting purposes by order of the Court, such Claim will be temporarily Allowed in the amount so estimated or Allowed by the Court;
>
> c.    if a Claim is listed in the Schedules as contingent, unliquidated, or disputed and a proof of claim has not yet been filed as of the Voting Record Date,

such Claim shall be temporarily Allowed for voting purposes in the amount of one dollar ($1.00);

d.    if a proof of claim was filed by the Voting Record Date in an amount that is wholly contingent or unliquidated, such Claim shall be temporarily Allowed for voting purposes in the amount of one dollar ($1.00), unless such Claim is disputed as set forth in subparagraph (f) below;

e.    if a Claim is listed in the Schedules or on a proof of claim filed by the Voting Record Date as contingent or unliquidated, in part, such Claim shall be temporarily Allowed for voting purposes in the amount of the non-contingent or liquidated portion of such Claim, unless such Claim is disputed as set forth in subparagraph (f) below; and

f.    if the Debtors have filed an objection to or a request for estimation of a Claim at least seven days before the Voting Deadline (as such date may be extended by order of the Court or on request by the Debtors), such Claim is temporarily disallowed, unless the Debtors' objection seeks to reclassify or reduce the Allowed amount of such Claim, then such Claim is temporarily Allowed for voting purposes in the reduced amount and/or as reclassified, except as may be ordered by the Court before the Voting Deadline.

33.    If any creditor seeks to challenge the allowance of its Claim for voting purposes, the creditor may file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes in a different amount.  The Debtors request that the Court (i) fix **December 20, 2022 by or before 4:00 p.m. (Prevailing Eastern Time)** as the deadline for the filing and service of motions pursuant to Bankruptcy Rule 3018(a) (the "**Rule 3018(a) Motion Deadline**") requesting temporary allowance of a movant's Claim for purposes of voting (the "**Rule 3018(a) Motion(s)**") and (ii) require that such Rule 3018(a) Motions be filed with the Court no later than the Rule 3018(a) Motion Deadline and served on the following parties (the "**Objection Notice Parties**") by email:

(a)    **Debtors** at
Kabbage, Inc. d/b/a KServicing
Attn: Holly Loiseau, General Counsel (hloiseau@kservicecorp.com)
925B Peachtree Street NE, Suite 383
Atlanta, GA 30309

    (b)  **Counsel to Debtors** at
        Richards, Layton & Finger, P.A.
         Attn: Daniel J. DeFranceschi (defranceschi@rlf.com)
              Amanda R. Steele (steele@rlf.com)
              Zachary I. Shapiro (shapiro@rlf.com)

        -and-

        Weil, Gotshal & Manges LLP
        Attn:  Candace M. Arthur (candace.arthur@weil.com)
              Natasha Hwangpo (natasha.hwangpo@weil.com)
              Chase A. Bentley (chase.bentley@weil.com)

    (c)  **Office of the United States Trustee for the District of Delaware** at
        Attn:  Richard L. Schepacarter (richard.schepacarter@usdoj.gov)
              Rosa Sierra-Fox (rosa.sierra-fox@usdoj.gov)

    (d)  **Counsel to any official committee appointed in these Chapter 11 Cases**

34.    The Debtors propose that the Court consider only those Rule 3018(a) Motions that have been timely filed and served in accordance with the provisions of this Motion.  The Debtors further propose that, upon entry of an order of the Court granting a Rule 3018(a) Motion, such creditor's Ballot (as defined below) be counted in accordance with the above designated guidelines, unless temporarily Allowed in a different amount by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan.

## C.    Voting Record Date

35.    Bankruptcy Rule 3017(d) provides, in relevant part, that for the purposes of soliciting votes in connection with the confirmation of a plan of reorganization, "creditors and equity security holders [must] include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."  Fed. R. Bankr. P. 3017(d).

36.    To identify and set the universe of Claim and Interest holders entitled to vote on the Plan, the Debtors request that the Court set **November 21, 2022**, as the date for determining

which parties are entitled to vote on the Plan (the "**Voting Record Date**"). With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package (as defined below) and, if the holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files by the Voting Record Date (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the Voting Record Date or General Bar Date, as applicable, the transferee of such Claim shall be bound by any vote on the Plan made by the holder of such Claim as of the Voting Record Date. The Debtors believe that the Voting Record Date is appropriate, as it facilitates the determination of which holders of Claims are entitled to vote on the Plan.

        a.      <u>Approval of Solicitation Packages and Procedures for Distribution</u>

37. Bankruptcy Rule 3017(d) lists the materials that must be provided to holders of claims and interests for the purpose of soliciting votes on a chapter 11 plan and providing adequate notice of the hearing to consider confirmation thereof. Specifically, Bankruptcy Rule 3017(d) provides, in relevant part, that:

> [u]pon approval of a disclosure statement, — except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders — the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee:
>
> a.      the plan or a court-approved summary of the plan;
>
> b.      the disclosure statement approved by the court;
>
> c.      notice of the time within which acceptances and rejections of the plan may be filed; and

d.      any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

Fed. R. Bankr. P. 3017(d).

38.     In compliance with this rule, the Debtors propose to mail or cause to be mailed solicitation packages (the "**Solicitation Packages**") containing the information described below as soon as practicable after entry of the Proposed Order, but no later than three (3) business days after the date of entry of the Proposed Order (the "**Solicitation Date**"), to (i) holders of Claims in the Voting Classes entitled to vote on the Plan as of the Voting Record Date and (ii) any party who files a proof of claim by the General Bar Date on account of a Claim in a Voting Class and who has not previously received a Solicitation Package.

39.     In addition, on October 26, 2022, the Court entered an order [Docket No. 161] (the "**Bar Date Order**") setting **November 30, 2022 at 5:00 p.m. (Prevailing Eastern Time)** as the General Bar Date (as defined in the Bar Date Order).  Because Solicitation Packages will be mailed by the Solicitation Date, which falls before the General Bar Date, to ensure that the creditors in Voting Classes who file timely proofs of claim receive notice and an opportunity to vote,  the Debtors propose a supplemental solicitation procedure whereby they will, within three business days after the General Bar Date (the "**Supplemental Solicitation Date**"), cause to be served a Solicitation Package upon any party who files a proof of claim by the General Bar Date on account of a Claim in a Voting Class and has not previously received a Solicitation Package.

40.     The Debtors anticipate that most parties holding Claims against the Debtors will receive a Solicitation Package in the initial mailing being completed by the Solicitation Commencement Date based on the Schedules being filed by the Debtors.  Given that any party who receives a Solicitation Package pursuant to this supplemental process will have approximately 21 days to consider whether to vote to accept or reject the Plan and to submit their Ballot, the

Debtors submit this supplemental solicitation process is fair and appropriate under the circumstances.

41.    In accordance with Bankruptcy Rule 3017(d), Solicitation Packages shall contain copies of:

    a.    the Proposed Order, as entered by the Court and without attachments, the Disclosure Statement, and the Plan;

    b.    the *Notice of (I) Approval of Disclosure Statement of the Debtors (II) Establishment of Solicitation, Voting, and Related Procedures, (III) Scheduling Confirmation Hearing, (IV) Establishing Notice and Objection Procedures for Confirmation of Plan, (V) Approval of Special Electronic Noticing Procedures (VI) Approving Debtors' Proposed Cure Procedures for Unexpired Leases and Executory Contracts and Leases, and (VII) Granting Related Relief,* in substantially the form of **Exhibit 1** annexed to the Proposed Order (the "**Confirmation Hearing Notice**"); and

    c.    an appropriate form of Ballot (as defined below) customized for such holder and conforming to Official Bankruptcy Form No. B 314, in the form described below, and a postage-prepaid return envelope.

42.    To further simplify the noticing process and to avoid unnecessary costs to the Debtors' estates, the Debtors will not mail copies of the Confirmation Hearing Notice or the Solicitation Package, as applicable, to the holders of Claims or Interests that are non-Debtor affiliates.   In addition, the Debtors will not mail Solicitation Packages to creditors whose Claims have already been paid in full.   However, if any such creditor would be entitled to receive a Solicitation Package for any other reason, the Debtors will send such creditor a Solicitation Package in accordance with the procedures set forth herein.

43.    The Debtors further request authority to make non-substantive changes to the Disclosure Statement, the Plan, and related documents without further order of the Court, including ministerial changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages prior to mailing.

44.     Bankruptcy Rule 3017(d) permits a court to order that the Plan and Disclosure Statement need not be mailed to holders of Claims or Interests in unimpaired classes.  In lieu thereof, a bankruptcy court may order that "notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense, [and] notice of the time fixed for filing objections to and the hearing on confirmation" be mailed to such classes.  Fed. R. Bankr. P. 3017(d).

45.     As discussed above, the Non-Voting Classes (other than Class 5 (Intercompany Claims), Class 6 (Intercompany Interests) (if so treated), Class 7 (Subordinated Securities Claims), and Class 8 (KServicing Equity Interests)) are unimpaired and presumed to accept the Plan. Accordingly, the Debtors propose to mail to holders of Claims or Interests in the Non-Voting Classes only the Confirmation Hearing Notice.  The Confirmation Hearing Notice provides (i) notice of the approval of the Disclosure Statement, (ii) notice of the filing of the Plan, (iii) notice that Claims or Interests in Class 1 (Priority Tax Claims), Class 2 (Other Secured), and Class 6 (Intercompany Interests) (if so treated) are unimpaired and Claims or Interests in Class 5 (Intercompany Claims), Class 6 (Intercompany Interests) (if so treated), Class 7 (Subordinated Securities Claims), and Class 8 (KServicing Equity Interests) are impaired and not entitled to vote, and (iv) the address of the Case Website, wherefrom copies of the Disclosure Statement and Plan can be obtained.

46.     The Debtors submit that they have shown good cause for approval of the Solicitation Packages and procedures for distribution and that mailing the Confirmation Hearing Notice to the holders of Claims and Interests in Non-Voting Classes satisfies the requirements of Bankruptcy Rule 3017(d) and should be approved.

b.      Approval of Forms of Ballots

47.      Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot, which substantially conforms to Official Bankruptcy Form No. B 314, to "creditors and equity security holders entitled to vote on the plan."  Fed. R. Bankr. P. 3017(d).  The Debtors propose to distribute to holders of Claims in the Voting Classes that are eligible to vote ballots substantially in the form annexed to the Proposed Order as **Exhibits 2-A** and **2-B** (collectively, the "**Ballots**"), which are incorporated herein by reference.  Although the Ballots are based on Official Bankruptcy Form No. B 314, they have been modified to address the specific circumstances of these Chapter 11 Cases and to include certain additional information that is relevant and appropriate for the Voting Classes.  The Ballots (i) provide holders of Claims in the Voting Classes with clear instructions on how to complete and return the Ballot, (ii) prominently feature the Voting Deadline, and (iii) clearly and unequivocally state that Ballots received after the Voting Deadline may not be counted.

48.      Each holder of a Claim in Class 3 (Reserve Bank Claims) will receive a Ballot, in the form annexed as **Exhibit 2-A** of the Proposed Order, and each holder of a Claim in Class 4 (General Unsecured Claims) will receive a Ballot, in the form annexed as **Exhibit 2-B** of the Proposed Order.

49.      Based on the foregoing, the Debtors respectfully request that the Court approve the proposed form of Ballots and related relief.

c.      Voting Deadline

50.      Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of [a] disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject [a] plan . . . ."  Fed. R. Bankr. P. 3017(c).  The Debtors anticipate completing mailing of the Solicitation Packages by the Solicitation Date with the exception of such mailings to be completed

in connection with the Supplemental Solicitation Date. Based on such schedule, the Debtors propose that, to be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and delivered to Omni (i) by first class mail (whether in the return envelope provided with each Ballot or otherwise), (ii) by overnight courier, or (iii) by hand delivery, so that such Ballot is actually received by Omni no later than **December 23, 2022 by or before 5:00 P.M. (Prevailing Eastern Time)** (the "**Voting Deadline**"). Subject to entry of the Proposed Order on or about the date of the Disclosure Statement Hearing, the Debtors submit that the proposed solicitation period of approximately 28 days is a sufficient period within which holders of Claims in the Voting Classes can make an informed decision whether to accept or reject the Plan.

51.     In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Debtors request authorization to accept Ballots from holders of Claims in the Voting Classes via electronic, online transmissions, solely through a customized online balloting portal on the Debtors' Case Website maintained by Omni (the "**E-Ballot Portal**"). Parties entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot by utilizing the E-Ballot Portal (which allows a holder to submit an electronic signature). Instructions for electronic, online transmission of Ballots will be set forth on the forms of Ballots. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the claimant's electronic signature will be deemed to be immediately legally valid and effective. Any electronic Ballot must be submitted such that it is actually received by Omni no later than the Voting Deadline.

d.    Tabulation Procedures

52.    Sections 1126(c) and 1126(d) of the Bankruptcy Code provide:

> (c)    A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

> (d)    A class of interests has accepted a plan if such plan has been accepted by holders of such interests, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c) and 1126(d).

53.    The Debtors request that the below procedures apply to tabulating Ballots (collectively, the "**Tabulation Procedures**"):

a.    Whenever a holder of a Claim casts more than one Ballot voting the same Claim(s) before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline will be deemed to reflect such holder's intent, and thus, to supersede any prior Ballot.

b.    Whenever a holder of a Claim casts a Ballot that is properly completed, executed, and timely returned to Omni, but does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

c.    Whenever a holder of a Claim casts a Ballot that is properly completed, executed, and timely returned to Omni, but indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

d.    Each holder of a Claim shall be deemed to have voted the full amount of its Claim in each Class and shall not be entitled to split its vote within a particular Class.  Any Ballot that partially accepts and partially rejects the Plan will not be counted.

e.    Whenever a holder of a Claim casts Ballots received by Omni on the same day, but which are voted inconsistently, such Ballots will not be counted.

f.    The following Ballots will not be counted:

i.    any Ballot that is not properly submitted by the Voting Deadline, unless otherwise provided herein or waived by the Debtors;

ii.   any Ballot that is illegible or contains insufficient information to permit the identification of the Claim holder;

iii.  any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan;

iv.   any Ballot cast by a person who is not entitled to vote, even if such individual holds a Claim in a Voting Class;

v.    any unsigned Ballot;

vi.   any Ballot for which the Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

vii.  any Ballot transmitted to Omni by means not specifically approved by the Court.

g.    If a Ballot is being signed by a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or someone otherwise acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by Omni, the Debtors, or the Court, must submit proper evidence to the requesting party to so act on behalf of such holder.  In addition, authorized signatories should provide their name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

h.    A holder of Claims in more than one Class must use separate Ballots for each Class of Claims.

i.    The Debtors, subject to contrary order of the Court, may waive any defect or irregularity as to any particular Ballot at any time, either before or after the Voting Deadline, and any such waiver shall be documented in the voting certification certifying the amount and number of holders who actually voted in the Voting Classes and the results of such votes (the "**Voting Certification**").

j.    Neither the Debtors, nor any other entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Certification, nor will any of them incur any liability for failure to provide such notification.

k.    Unless waived by the Debtors, subject to contrary order of the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted.

l.     The Debtors are authorized to enter into stipulations or other agreements with the holder of any Claim agreeing to the amount of a Claim for voting purposes.

54.    To assist in the solicitation process, the Debtors request that the Court grant Omni the authority to contact parties that submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies, but Omni is not obligated to do so.

**D.    Proposed Special Electronic Noticing Procedures**

55.    Bankruptcy Rule 2002 establishes the general rule for notifying creditors of the deadline to file objections to a plan and the hearing on confirmation of a plan.  Specifically, Bankruptcy Rule 2002(b) states that "the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees not less than 28 days' notice by mail of the time fixed . . . (2) for filing objections and the hearing to consider confirmation of a chapter 9, or chapter 11 plan."  Fed. R. Bankr. P. 2002(b).

56.    The Debtors have approximately 456,000 Borrowers identified on the Debtors' creditor matrix. In the ordinary course of the Debtors' business, the Debtors communicate with Borrowers primarily through email.  To the best of the Debtors' knowledge, the vast majority of the Borrowers, whether PPP or legacy, have consented to the electronic transactions and noticing. As a result, given the Debtors' past practices and the volume of Borrowers and the costs associated with providing actual notice by mail to Borrowers, the Court entered an order [Docket No. 77] (the "**Creditor Matrix Order**")[4] approving special electronic noticing procedures with respect to service of certain notices to Borrowers.

57.    Consistent with the relief approved in the Creditor Matrix Order, the Debtors are seeking approval of the Special Electronic Noticing Procedures to provide Borrowers with email

---

[4] The Creditor Matrix Order reserved the Debtors' rights to seek the relief requested herein with respect to electronic service of the Confirmation Hearing Notice.  *See* Creditor Matrix Order, ¶ 8.

service of the Confirmation Hearing Notice.  The Debtors will serve the Confirmation Hearing

Notice via first-class mail directed to the last known physical address, if available, of a Borrower

in the event that: (1) the Debtors do not have a valid email address on file for a Borrower, (2) the

Debtors have previously received a "bounce-back" email in response to service of notices in these

Chapter 11 Cases or (3) a Borrower has indicated to the Debtors that it wishes to receive future

notices by physical mail.[5]

58.     The Debtors submit that the Special Electronic Noticing Procedures are the most

practical method by which to notify the Borrowers of the Plan Objection Deadline and the

Confirmation Hearing.  If the Debtors were to provide actual notice by mail of the Confirmation

Hearing Notice to all Borrowers, Omni estimates that the cost would exceed $729,000.[6]   Further,

in accordance with the Creditor Matrix Order, the Debtors have been serving all documents

regarding these Chapter 11 Cases to Borrowers via email.  To require the Debtors to serve the

Confirmation Hearing Notice to Borrowers via physical mail would be expensive and inconsistent

with the Debtors' ordinary business practices.

## E.     Confirmation

### a.     Confirmation Hearing

59.     Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of the disclosure

statement, the court shall . . . fix a date for the hearing on confirmation" of a chapter 11 plan.  Fed.

R. Bankr. P. 3017(c).   Pursuant to Bankruptcy Rule 2002(b), creditors must receive at least

---

[5] For the avoidance of doubt, the Special Electronic Noticing Procedures shall not apply to any Borrower in Class (4) (General Unsecured Claims) or,  consistent with the Creditor Matrix Order, the named plaintiffs (or their counsel) (collectively, the "**Class Action Parties**") in the putative class action titled *Jason Carr, Vicki LeMaster, Edward Ford Services LLC, Carlton Morgan¸ 365 Sun LLC and Candice Worthy, individually and on behalf of all others similarly situated v. Kabbage, Inc. d/b/a K Servicing,* Case No. 1:22-cv-01249-VMC (N.D. Ga. 2022).

28 days' notice of a confirmation hearing.  In accordance with these rules and in view of the Debtors' proposed solicitation schedule outlined herein, the Debtors request that a hearing on confirmation of the Plan (the "**Confirmation Hearing**") be scheduled for **January 5, 2023** or on such date and time as is convenient to the Court.  The Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court.  This will provide parties with more than 28 days' notice of the hearing.  Accordingly, the Debtors request the Court find that the proposed date for the Confirmation Hearing is in compliance with the Bankruptcy Rules and the Local Rules and will enable the Debtors to pursue confirmation of the Plan in a timely fashion.

   b. <u>Objection Procedures</u>

  60. Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."  Bankruptcy Rule 2002(b) provides that parties must receive at least 28 days' notice of the deadline for filing objections to confirmation. Accordingly, and in view of the Debtors' proposed solicitation schedule outlined herein, the Debtors propose **December 23, 2022 by or before 4:00 p.m. (Prevailing Eastern Time)** as the deadline to object or respond to confirmation of the Plan (the "**Plan Objection Deadline**").  This date will provide holders of Claims and Interests more than 28 days' notice of the deadline for filing objections to the Plan while still affording the Debtors and other parties in interest time to file a responsive brief and, if possible, resolve any objections received.  Accordingly, and in view of the Debtors' proposed solicitation schedule outlined herein, the Debtors propose the Plan Objection Deadline be fixed by the Court as the deadline to object or respond to confirmation of the Plan.

61.     The Debtors request that objections and responses, if any, to confirmation of the Plan (i) be in writing, (ii) conform to the Bankruptcy Rules and the Local Rules, (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property, (iv) provide the basis for the objection and the specific grounds thereof, and (v) be filed with the Court.  Any objection or response also must be served by email and received by the Objection Notice Parties no later than the Plan Objection Deadline.  Pursuant to Bankruptcy Rule 3020(b), "[i]f no objection is timely filed, the [C]ourt may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues."  Fed. R. Bankr. P. 3020(b)(2).

62.     The Debtors request that the Court establish **December 16, 2022** as the deadline for the Debtors to file the Plan Supplement (as defined in the Plan) with authority to further supplement such Plan Supplement as necessary thereafter.

63.     The Debtors request that the deadline for the Debtors or any other party supporting the Plan to file a response to any objections to confirmation of the Plan be **January 3, 2023 by or before 12:00 p.m. (Prevailing Eastern Time)** (the "**Reply Deadline**").  The Debtors also request that the Court establish the Reply Deadline as the deadline for the Debtors to file their brief in support of confirmation of the Plan, the Voting Certification, and any affidavits or declarations in support of confirmation of the Plan.

64.     The Debtors respectfully request that the Court approve the procedures for filing objections to the Plan and replies thereto and find that such procedures comply with Bankruptcy Rules 2002, 3017, and 3020.

c.     Confirmation Hearing Notice

65.     Pursuant to Bankruptcy Rule 3017(d), notice of a plan confirmation objection deadline and hearing must be provided to all creditors and equity security holders in accordance with Bankruptcy Rule 2002.

66.     In accordance with the foregoing, by no later than the Solicitation Date, the Debtors propose to provide a copy of the Confirmation Hearing Notice setting forth, among other things, (i) the Voting Deadline, (ii) the Plan Objection Deadline and procedures for filing objections and responses to confirmation of the Plan, (iii) the time, date, and place for the Confirmation Hearing, and (iv) the Cure Procedures (as defined below) in respect of the Debtors' assumption of executory contracts and unexpired leases, with service provided by electronic notification for registered Case Management and Electronic Court Filing System users or first class mail on all parties on the Debtors' creditor matrix (other than the Borrowers in accordance with the Special Electronic Noticing Procedures as discussed further below).  Such Confirmation Hearing Notice will be sent contemporaneously with the Solicitation Packages, and will be supplemented as set forth in the Proposed Order by the Supplemental Solicitation Date.

67.     The Debtors submit that the foregoing notice procedures comply with all notice requirements under Bankruptcy Rules 3017(d) and 2002(b) and (d).  Accordingly, the Debtors request that the Court find that such notice is due and proper and no further notice is necessary.

68.     Moreover, Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement notice."  Fed. R. Bankr. P. 2002(l).  The Debtors propose to publish the Confirmation Hearing Notice, with such modifications as the Debtors deem appropriate for purposes of publication (the "**Publication Notice**"), no later than 10 days following entry of the Proposed Order, which will provide at least 28 days' notice of the Confirmation Hearing, in the national edition of *USA*

*Today* subject to applicable publication deadlines.  The Debtors believe that publication of the Publication Notice will give sufficient notice of the Confirmation Hearing to persons who do not otherwise receive notice by electronic or first-class mail.

### F.    Procedures for Assignment, Assumption, or Rejection of Executory Contracts and Unexpired Leases Under Plan

69.    Section 8 of the Plan provides, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount,[7] that all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date; (iv) is identified in Section 8.4 of the Plan; or (v) is identified for assumption on the Assumption Schedule included in the Plan Supplement.

70.    As provided for in the Plan, the Debtors will file, as part of the Plan Supplement, the Assumption Schedule,[8] and at least fourteen (14) days before the Confirmation Hearing, serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Debtors' intention to potentially assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any).

---

[7] "**Cure Amount**" is defined in the Plan as the payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) as necessary pursuant to section 365(b)(1)(A) of the Bankruptcy Code to permit the Debtors to assume such executory contract or unexpired lease.

[8] "**Assumption Schedule**" is defined by the Plan as the schedule of executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Wind Down Estate or GUC Trust as applicable, pursuant to the Plan and included in the Plan Supplement, as may be amended, modified, or supplemented from time to time.

71.     Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten (10) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.  The Debtors request that any objections to the Debtors' proposed Cure Amounts or assumption of executory contracts and unexpired leases under the Plan (i) be in writing, (ii) conform to the applicable Bankruptcy Rules and Local Rules, (iii) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof, and (iv) be filed with the Court by the Plan Objection Deadline and served upon the Objection Notice Parties by e-mail.

72.     The Debtors request that any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease shall be deemed to have assented to assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, or any Wind Down Estate, under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor, or Wind Down Estates, as applicable.

73.     The Debtors intend to serve the Confirmation Hearing Notice on all parties to executory contracts and unexpired leases, reflecting the Debtors' intention to assume the executory contracts or unexpired leases in connection with the Plan and indicating the Debtors' proposed

Cure Amount owed in connection with each such executory contract or unexpired lease. In addition, the Confirmation Hearing Notice provides that in the event of any dispute pertaining to the proposed Cure Amount such dispute will be addressed pursuant to Section 8.2 of the Plan, which provides in part that, to the extent any such dispute relates solely to any Cure Amount, the applicable Debtor may assume the executory contract or unexpired lease prior to the resolution of any such dispute, as long as the Debtor reserves cash in an amount sufficient to pay the full amount reasonably asserted as the required Cure Amount by the contract counterparty. Following entry of a final order resolving any such dispute, the Debtors will have the right to reject any executory contract or unexpired lease within 30 days of such resolution.

74.     The Debtors respectfully submit that the foregoing procedures, as provided in the Confirmation Hearing Notice (collectively, the "**Cure Procedures**"), are appropriate under the circumstances and should be approved.

75.     For the foregoing reasons, approval of the Debtor's Disclosure Statement and establishment of the Solicitation Procedures and Tabulation Procedures, among other relief sought herein, is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these cases. Accordingly, the Court should approve the Motion and grant the relief requested herein.

### Notice

76.     Notice of the Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) the Federal Reserve Bank; (d) Customers Bank; (e) Cross River Bank; (f) the United States Department of Justice; (g) the Federal Trade Commission; (h) the Small Business Administration; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the United States Attorney's Office for the District of Delaware; (l)

the Banks; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").  The Debtors believe that no further notice is required.

**No Prior Request**

77.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  October 31, 2022
        Wilmington, Delaware

/s/ Matthew P. Milana
**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi, Esq. (No. 2732)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
E-mail: defranceschi@rlf.com
      steele@rlf.com
      shapiro@rlf.com
      milana@rlf.com

-and-

**WEIL, GOTSHAL & MANGES LLP**
Ray C. Schrock, P.C. (admitted *pro hac vice*)
Candace M. Arthur (admitted *pro hac vice*)
Natasha S. Hwangpo (admitted *pro hac vice*)
Chase A. Bentley (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:    (212) 310-8000
E-mail:    ray.schrock@weil.com
        candace.arthur@weil.com
        natasha.hwangpo@weil.com
        chase.bentley@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*