**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| **KABBAGE, INC. d/b/a KSERVICING, et al.,** | Case No. 22-10951 (CTG) |
| Debtors.[1] | (Jointly Administered) |
| | Re: Dkt. No. 172 |

**CROSS RIVER BANK'S OBJECTION TO DEBTORS'**
**MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING**
**THE SETTLEMENT AGREEMENT BETWEEN KSERVICING AND**
**CUSTOMERS BANK AND (II) GRANTING RELATED RELIEF**

Cross River Bank ("Cross River") hereby objects to the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Settlement Agreement between KServicing and Customers Bank and (II) Granting Related Relief* [ECF 172] (the "Motion"). In support of its objection, Cross River respectfully states as follows:

## INTRODUCTION

1.      Cross River's objection to the Debtors' 9019 Motion is limited. Cross River does not object to Customers Bank ("CB") returning funds it withheld from Kabbage, which starved the Debtors of needed liquidity and helped precipitate this bankruptcy. But CB is not returning anything close to all of the funds it withheld. Rather, the proposed settlement would permit CB to retain $8 million in cash that it owes to the Debtors without even the barest of showing in the Motion as to why CB is entitled to retain that cash.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A) (collectively, the "Debtors").

2.      The Debtors must present "all facts necessary for" the Court to form "an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Protective Committee of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). The Debtors' 9019 Motion, however, says nothing about the merits of the "contingent and unliquidated" claims that CB may assert, and which are the purported basis for CB to retain $8 million in cash. Indeed, the Motion spends more words generically reciting the "probability of success of litigation" standard under *Martin* than actually explaining why this settlement satisfies that standard.

3.      Nor does the Motion attempt to justify why CB will effectively be receiving cash now on its prepetition claims—long before any plan is confirmed. To the extent the Debtors attempt to justify this treatment on the basis of setoff—which the Motion does not—it would fail because setoff is unavailable for contingent claims.

4.      The Debtors fare no better in explaining any benefits of the settlement, other than generic comments about avoiding expense and delay. But the same could be said about virtually any settlement, in virtually any amount. The Motion says almost nothing as to why *this settlement* should be approved.

5.      Finally, the Debtors repeatedly suggest how the settlement may facilitate confirmation of their Plan. But that is assuming that the Debtors' Plan should, or even could, be confirmed in its current form. Cross River has material concerns about the Debtors' Plan, which it will raise at the appropriate time. For now, however, it is premature for the Debtors to be touting the unconfirmed Plan as a reason to approve this settlement.

6.      The Debtors have not met their burden to establish that the settlement is reasonable or fair and equitable, and thus it cannot be approved.

## BACKGROUND[2]

7.    CB and Kabbage originated PPP loans in Round 1 of the PPP, and Kabbage earned and was paid by CP approximately $47 million in servicing fees.  CB and Kabbage originated approximately $800 million in new PPP Loans in Round 2 of the PPP beginning in January 2021.  Motion ¶ 13.  According to the Debtors, Kabbage earned approximately $65.5 million in loan referral and servicing fees upon the origination of those Round 2 loans.  *Id.*  CB refused to pay those fees, asserting that its basis for doing so was certain "alleged failures in [Kabbage's] processing of PPP Loans."  *Id.*

8.    CB appears to contend that Kabbage's alleged failures in processing loan applications caused certain loans to be missing "SBA-recognized 'E-Tran' numbers," and thus those loans "may not (in whole or in part) be subject to guaranty or forgiveness by the SBA . . . ."  Motion, Ex. 1 (Settlement Agreement), at 2, 4.  CB further contends that such loans give rise to additional claims for origination fees and other potential liability for which Kabbage is responsible.  *Id.* at 2.  CB asserts that it "faces additional exposure in an unknown amount" because Kabbage allowed loan applications that did not comply with SBA guidance in certain respects.  *Id.* at 2-3.  CB also asserts that it may incur DOJ or SBA penalties, or suffer losses on loans as a result of the alleged failures.  *Id.*

9.    According to the Debtors, these and other similar assertions by CB give rise to claims (the "CB Potential Claims").  CB, however, has yet to assert the CB Potential Claims in these chapter 11 proceedings or in any other litigation forum.  Thus, as the Debtors admit, the CB Potential Claims are both "contingent and unliquidated" in nature.  Motion ¶ 1.

---

[2]    For the avoidance of doubt, Cross River's references to the Debtors' statements in the Motion are without prejudice to Cross River's ability to contest such statements in connection with the Motion or otherwise.

10.    Kabbage continued to service CB's PPP Loans notwithstanding that CB was withholding $65.5 million in fees owed to Kabbage purportedly on account of the CB Potential Claims. *Id.* ¶ 14. Kabbage itself began withholding certain amounts collected on CB's PPP Loans that would have otherwise been remitted to CB if CB had paid Kabbage the $65.5 million in servicing and referral fees that CB owed. *Id.* As of the Petition Date, Kabbage had withheld approximately $34 million to "offset" the $65.5 owed to it by CB. *Id.*

11.    CB and Kabbage executed a Settlement Agreement on October 27, 2022, purporting to settle their disputes, including: (1) CB's failure to pay $65.5 million in loan referral and servicing fees; (2) Kabbage's withholding of approximately $34 million collected on CB PPP Loans; and (3) the CB Potential Claims.

12.    The difference between the amount being withheld by CB ($65.5 million) and by Kabbage (~$34 million) is approximately $31 million, which net amount is owed by CB to Kabbage. Other than CB's contingent and unliquidated claims (*i.e.* the CB Potential Claims), CB does not appear to contend that it has any other defense to the $31 million in servicing fees that it owes to Kabbage after this setoff. Nor does CB contend that the amount ($31 million) that it owes in fees is incorrect. But, under the Settlement Agreement, CB is paying Kabbage only $23 million, not $31 million. *See* Mot. ¶ 17 (summary of terms). Thus, under the Settlement Agreement, CB will continue to withhold—and indeed forever keep—$8 million that it owes to the Debtors (equaling the $31 million owed by CB minus the $23 million CB will actually pay).

13.    The Debtors' proposed agreement to allow CB to withhold $8 million in cash is purportedly on account of the contingent and unliquidated CB Potential Claims, which are being released under the proposed settlement. Neither the Settlement Agreement nor the Motion, however, discloses: (a) the magnitude that CB asserts for the CB Potential Claims; (b) the

magnitude of the CB Potential Claims that are contingent, unliquidated, or both; (c) anything regarding the merits of the CB Potential Claims or the potential defenses thereto; or (d) the justification for allowing CB to effectively setoff its contingent and unliquidated claims against the amounts it has withheld.

## ARGUMENT

14.    As proponents of the proposed settlement with CB, "[t]he Debtors carry a burden of persuasion to provide the court with sufficient information to conclude that the compromise falls within the reasonable range of litigation possibilities," and "the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." *See In re Key3Media Grp., Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005), *aff'd,* 2006 WL 2842462 (D. Del. Oct. 2, 2006). To meet its burden, the Debtors must demonstrate "the fairness of the settlement to other persons, i.e., the parties who did not settle." *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006). Indeed, this Court has held that because "[u]nsecured creditors are not voluntary investors in the Debtors," their views on a settlement should be "entitled to substantial weight." *In re Exide Tech.,* 303 B.R. 48, 70 (Bankr. D. Del. 2003).[3]

15.    The Debtors have not met their burden. The Motion provides little information about the CB Potential Claims. It does not disclose the potential magnitude of the CB Potential Claims, which are both contingent and unliquidated. Nor does it provide any disclosure regarding the merits of the claims, including potential defenses to those claims. *See In re Spansion, Inc.*, 2009 WL 1531788, at *7 (Bankr. D. Del. June 2, 2009) (denying a Rule 9019 motion because, among other things, "the Debtors have provided little information as to the specifics of the Actions

---

[3]    That is particularly true here where Cross River is: (1) the Debtors' only other Partner Bank besides CB, (2) likely the largest unsecured creditor of the Debtors, and (3) prepaid the Debtors for servicing fees, as opposed to withholding servicing fees from the Debtors, as CB has done.

to provide a basis for evaluating the strengths and weaknesses of the litigation"); *In re Trout*, 108 B.R. 235, 239 (Bankr. D.N.D. 1989) ("Without full disclosure an informed decision on the merits of the settlement,—how it affects the parties in interest or the case generally cannot be made.").

16.    After a few paragraphs of rote recitation of Rule 9019 standards (Motion ¶¶ 21-23), the only thing the Debtors could muster about the probability of success of litigation is that it is "uncertain with respect to cost and outcome."  Motion ¶ 23(a).  That is true about all litigation. There is nothing that either the Court or creditors can use to assess the reasonableness of *this settlement* and in particular the probability of success of litigation.  The Debtors' Motion is filled with similar such conclusory sentences that say little more than simply quoting or paraphrasing the relevant standards.

17.    The Motion fails to present the facts and legal argument necessary for this Court to approve the settlement under Bankruptcy Rule 9019.  As the Supreme Court has made clear:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated.  Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.  Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*TMT Trailer*, 390 U.S. at 424-25; *see also In re Martin*, 91 F.3d at 393 (applying *TMT Trailer* standard to Bankruptcy Rule 9019 settlement).

18.    The Motion also fails to justify why CB is entitled to retain cash that is owing to the Debtors.  As described (*supra* ¶ 12), CB owes the Debtors $31 million of the $65.5 million CB withheld, but under the proposed settlement CB is only going to pay the Debtors $23 million.  The settlement allows CB to retain the remaining $8 million of cash on account of its contingent and unliquidated claims.  But the Debtors fail to justify why CB is entitled to do so.  Perhaps the

Debtors are suggesting that a right to setoff is implicated here, but they never cite Bankruptcy Code Section 553 or otherwise discuss the requirements for setoff.

19.    Bankruptcy Code section 553 states: "This title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." This means that in order for a creditor to have a right to setoff in bankruptcy, (1) the creditor must have that right as a matter of applicable non-bankruptcy law, and (2) that right must relate to a "mutual debt" that "arose before the commencement of the case." Based on the Motion, it appears that CB's claims fail both of these tests.

20.    *First*, Cross River understands that the relevant agreements are governed by New York and Pennsylvania law, which would apply to determine whether there is a preexisting state law right of setoff.[4]  Under the laws of both states, contingent claims are ineligible for setoff. *In re Corp. Res. Servs., Inc.*, 564 B.R. 196, 201 (Bankr. S.D.N.Y. 2017) ("A claim is contingent and ineligible to be set off under New York law when it is dependent on some future event that may never happen or has not yet accrued."); *Spodek v. Park Prop. Dev. Assocs.,* 263 A.D.2d 478, 478-79, (2d Dep't 1999) ("[T]here is no right to setoff a possible, unliquidated liability against a liquidated claim that is due and payable."); *Leas v. Laird*, 1820 WL 1828, at *1 (Pa. 1820) (holding that "defendants could not avail themselves of this set-off" where the obligation owed to them was contingent); *In re MetCo Min. & Mins., Inc.*, 171 B.R. 210, 218 (Bankr. W.D. Pa. 1994) ("Setoff

---

[4]    Section 553 requires an existing setoff right under applicable state law, with additional restrictions that must be met to impose a setoff. *In re Orexigen Therapeutics, Inc.*, 990 F.3d 748, 752-53 (3d Cir. 2021) (citing *In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009)).

may be asserted pursuant to § 553 where one of the debts subject to setoff *is absolutely owed* but is not presently due when the petition is filed.") (emphasis added); *see also City of Milwaukee v. Milwaukee Civic Devs., Inc.*, 239 N.W.2d 44, 51 (Wis. 1976) ("The general law of recoupment and set-off does not embrace contingent claims ....").

21.     *Second*, even if CB had a right to setoff under state law (it does not), the Motion fails to demonstrate that the right would be recognized in bankruptcy under section 553.  Under section 553, "setoff 'is permitted when, at the time the bankruptcy petition is filed, the ***debt is absolutely owing*** but is not presently due, or when a ***definite liability has accrued*** but is not yet liquidated.'" *In re WL Homes LLC*, 471 B.R. 349, 352-53 (Bankr. D. Del. 2012) (emphases in original); *see also FDIC v. Liberty Nat'l Bank & Tr. Co.*, 806 F.2d 961, 968 (10th Cir. 1986) ("[I]t appears to be the general rule that contingent claims are not a proper subject of setoff.").  This is because: "Courts interpreting § 553 have consistently held that, for setoff purposes, a claim—even a contingent one—arises when all transactions necessary for liability occur.  Just because a claim can exist under the Code before a right to payment exists for general bankruptcy purposes, does not mean that such a claim always provides the basis for a right of setoff." *In re WL Homes LLC*, 471 B.R. at 352–53 (citations and quotations omitted).

22.     Permitting setoff of the CB Potential Claims at 100 cents on the dollar would also be impermissible in this scenario because it is inequitable and contrary to fundamental bankruptcy policy.  Other creditors, including Cross River (which has claims similar to CB's against the Debtors), would likely receive pennies on the dollar. *See Orexigen*, 990 F.3d at 754 (declining to expand the categories of debts that could be setoff under section 553 because "'[s]etoff is at odds with a fundamental policy of bankruptcy, equality among creditors, because it permits a creditor obtain … a preference.'").  The inequity would be particularly acute here—it would reward CB

for the improper "withholding of [$65.5 million] for over 20 months," which "has caused significant financial strain on the Company,"[5] while leaving Cross River, which ***prepaid*** the Debtors for servicing, at risk of recovering pennies on the dollar.  Such an outcome is inequitable and would support perverse incentives in dealing with counterparties, particularly where they may be in financial distress and close to bankruptcy.

23.     Finally, even if setoff were somehow permissible, the Debtors' lack of disclosure makes it impossible to evaluate whether the $8 million "setoff" is within the range of reasonableness.  Indeed, given the lack of disclosure, it is impossible to know the amount for which the Debtors are even settling the CB Potential Claims.  If the CB Potential Claims are being settled for $8 million, for example, then they are being paid 100 cents on the dollar through a setoff of those CB Potential Claims against the $31 million in servicing fees that CB still owes Kabbage after the initial setoff of $65.5 million against $34 million.  If, on the other hand, the CB Potential Claims are being settled for some amount greater than $8 million, then the Motion does not even state what that amount is, let alone try to justify it.

## CONCLUSION

24.     For the reasons stated above, Cross River requests that the Court deny the Motion.

---

[5]     *Declaration of Deborah Rieger-Paganis In Support Of The Chapter 11 Petitions And First-Day Pleadings*, at ¶ 52 [ECF 13].

Dated: November 4, 2022
     Wilmington, Delaware

Respectfully submitted,

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*/s/ Gregory W. Werkheiser*
Gregory W. Werkheiser (No. 3553)
1313 N. Market Street, Suite 1201
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
gwerkheiser@beneschlaw.com

-and-

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Susheel Kirpalani
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
susheelkirpalani@quinnemanuel.com

Matthew R. Scheck
300 West 6th Street, Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100
matthewscheck@quinnemanuel.com

*Counsel to Cross River Bank*