**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| KABBAGE, INC. d/b/a KSERVICING, *et al.*, | Case No. 22-10951 (CTG) |
| Debtors.[1] | (Jointly Administered) |

**PROOF OF PUBLICATION**

Attached hereto as Exhibits A - B are Proofs of Publication for the Notice of Deadlines to File Proofs of Claim from the following:

| Publication | Publication Date | Exhibit |
|---|---|---|
| **USA Today** | **November 9, 2022** | **A** |
| **The New York Times** | **November 9, 2022** | **B** |

/s/ Randy Lowry
Randy Lowry
Omni Agent Solutions
5955 DeSoto Avenue, Suite 100
Woodland Hills, California 91367
(818) 906-8300
*Claims, Noticing, and Administrative Agent for the Debtor*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a/ KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

# EXHIBIT A



# VERIFICATION OF PUBLICATION

**COMMONWEALTH OF VIRGINIA**
**COUNTY OF FAIRFAX**

---

Being duly sworn, Vanessa Salvo says that she is the principal clerk of USA TODAY, and is duly authorized by USA TODAY to make this affidavit, and is fully acquainted with the facts stated herein: on **Wednesday, November 9, 2022**, the following legal advertisement – **Kabbage, Inc. d/b/a KServicing** was published in the national edition of **USA TODAY.**

Vanessa Salvo
Principal Clerk of USA TODAY
November 9, 2022

# NFL grades: Good (Jets) to very bad (Colts)

**Tyler Dragon**
USA TODAY

After losing top receiver Ja'Marr Chase to injury, Bengals coach Zac Taylor had quarterback Joe Burrow, right, hand off more to Joe Mixon. JEFF DEAN/AP

Close games have been the theme this NFL season. Sixty-two games have been decided by a touchdown or less through nine weeks, the most all time at this stage. Six games in Week 9 were decided by three points or fewer.

All four teams in the AFC East have a winning record, the fifth time since 2002 that all four teams in a single division have a winning record through the first nine weeks of a year, per NFL stats.

In the NFC, the Philadelphia Eagles are 8-0 for the first time in franchise history.

We've officially crossed the midway point of the season. How much of an influence did coaches have on the outcomes in Week 9? USA TODAY Sports examined the performance of NFL coaches. Here are their grades for Week 9:

**Cincinnati Bengals coaching staff: A**

Without star wide receiver Ja'Marr Chase, Zac Taylor and the Bengals coaching staff did a great job of implementing running back Joe Mixon heavily in their offensive game plan. Mixon notched a career-high 211 yards from scrimmage and produced a franchise-record five touchdowns in Sunday's 42-21 rout against the Carolina Panthers.

The Bengals' zone run-blocking scheme paved the way for some of Mixon's longest runs. On one, Cincinnati's successful zone blocks up front allowed Mixon to cut back to the left behind the offensive line. Mixon just had to make Panthers CB Jaycee Horn miss one-on-one on his way to a 14-yard touchdown run.

Mixon is the sixth player in the Super Bowl era with at least 200 yards from scrimmage and five touchdowns in a single game. The Bengals running back had 26 touches in Week 9.

**New York Jets coaching staff: B**

Buffalo Bills quarterback Josh Allen had season lows in passing yards (205) and passer rating (46.8) in Sunday's 20-17 loss to the Jets. Credit must be given to the Jets defense and the defensive game plan. The Jets defense had five sacks and two interceptions in Sunday's upset.

New York rarely blitzed Allen. Instead, it dropped back in coverage and forced Allen to throw passes in traffic. It was an effective game plan because the Jets' front four was able to create pressure. Allen was under duress for much of the contest. The Jets had 15 pressures, per Pro Football Focus.

Plus, the Jets secondary, led by the Defensive Rookie of the Year candidate Sauce Gardner, played great in coverage.

**Chicago Bears coaching staff: C**

The Bears might've found their offensive identity, albeit in a 35-32 loss. Bears quarterback Justin Fields amassed 178 rushing yards in Week 9, the most by a quarterback in a single game in the Super Bowl era.

Most of Fields' big gains came on oft-script plays, but the Bears did a solid job of calling plays that required the mobile quarterback to get outside of the pocket. When Fields couldn't find anyone open downfield, he used his legs.

Chicago has rushed for at least 225 yards in each of its past four games, but the best news might be Fields' emergence with five touchdown passes thrown and QB ratings over 100 in the last two games.

**Los Angeles Rams coaching staff: D**

The Rams defense held Tom Brady and the Buccaneers out of the end zone until Tampa Bay's final possession. Los Angeles decided to play a zone prevent defense that exposed it to plenty of open holes around the field, including on the sideline.

Brady and the Bucs exploited the scheme, and without any timeouts, Brady and the Bucs went 60 yards in 35 seconds to score the game-winning touchdown.

Granted, most teams would've played some variation of a zone defense in the same situation. But the Rams' zone defense was basic and allowed too many open areas around the field.

**Indianapolis Colts coaching staff: F**

It seems appropriate to give the Colts a failing grade this week. Frank Reich became the second head coach to be fired this season after the Colts lost 26-3 to the New England Patriots to drop their record to 3-5-1.

Indy's offense had another listless performance. The Colts offense went 0-for-14 on third down and produced a season-low 121 total yards.

Sam Ehlinger, who is the seventh quarterback to start a game for the Colts since 2018, was sacked nine times and threw an interception.

Reich was fired less than 24 hours after the disastrous performance.

Now the Colts are hoping interim head coach Jeff Saturday, who was a Colts offensive lineman from 1999 to 2011 but has no professional coaching experience, can come save the day. Good luck.

**BONUS**

**Las Vegas Raiders coaching staff: F**

The Raiders have blown three leads of at least 17 points this season. Failing grades can be divided throughout the entire organization.

Coach Josh McDaniels and the 2-6 Raiders are last in the AFC West.

# Pacific forfeits match at BYU, citing August game

**Analis Bailey**
USA TODAY

The University of Pacific volleyball team has elected to forfeit its match against BYU after a fan was accused of making racist comments toward a Duke volleyball player in August.

"The volleyball team has decided to not play the November 10 game at BYU," the school's senior communications director Mike Klocke said in a statement Monday night. "The team expressed concerns following reports of racist and hostile comments during an August 26 match. Pacific stands with our student-athletes."

Since the alleged incident, BYU conducted an investigation and found no evidence to "corroborate the allegation that fans engaged in racial heckling or uttered racial slurs at the event."

BYU released the following statement:

"The University of the Pacific's decision to forfeit this week's women's volleyball match is unwarranted and deeply disappointing. Following the Aug. 26 allegation, BYU conducted an extensive review and found no evidence to corroborate this allegation. As we have stated previously, BYU will not tolerate any conduct that would make a student-athlete feel unsafe in our athletic environments.

"It is unfortunate that Pacific would make a decision that perpetuates the very challenge we are working to heal in our polarized society."

The August incident has led to more damning accusations, including Southern Cal women's soccer players stating BYU fans directed racial slurs at them after players kneeled during the national anthem in August 2021.

The latest volleyball cancellation comes weeks after Dawn Staley, South Carolina women's basketball coach, also canceled a series with BYU.

"As a head coach, my job is to do what's best for my players and staff," Staley said in a statement released by South Carolina. "The incident at BYU has led me to reevaluate our home-and-home, and I don't feel that this is the right time for us to engage in this series."

## GOLF DP WORLD TOUR (EUROPEAN/SUNSHINE)

**Nedbank Golf Challenge**

Course: The Gary Player Golf Course and Country Club in Sun City, South Africa. Yardage: 7,834. Par: 72.

TV (EST): Thursday-Friday, 4-9 a.m. (Golf); Saturday, 4-8:30 a.m. (Golf); Sunday, 3-8 a.m. (Golf)

Notes: This is the final tournament before the season-ending DP World Tour Championship. ... Tommy Fleetwood is back to defend his title from 2019. The past two years, the tournament was canceled because of the COVID-19 pandemic. ... Fleetwood (No. 25) and Ryan Fox (No. 26) are the two highest-ranked players in the field. ... Seven LIV Golf players are in the field, including Lee Westwood. Branden Grace, who won the second LIV event, is playing on a sponsor exemption. .... George Coetzee on the Sunshine Tour and Jazz Janewattananond on the Asian Tour are coming off victories. ... LIV's Shaun Norris is playing from winning the Sunshine Tour Order of Merit.

– Associated Press

# MARKETPLACE TODAY

For advertising information: 1.800.397.0070 www.russelljohns.com/usat

NOTICES

LEGAL NOTICE

UNITED STATES BANKRUPTCY COURT, DISTRICT OF DELAWARE

| | |
|---|---|
| In re KABBAGE, INC. D/B/A KSERVICING, *et al.*, Debtors. | Chapter 11 Case Nos.: 22-10951 (CTG) Through 22-10956 (Jointly Administered) |

**NOTICE OF DEADLINES TO FILE PROOFS OF CLAIM**

**TO: ALL PERSONS AND ENTITIES WHO MAY HAVE CLAIMS AGAINST ANY OF THE FOLLOWING DEBTOR ENTITIES:**

**Name of Debtor, Case Number, Tax Identification Number:** Kabbage, Inc., 22-10951, 36-4973937; Kabbage Canada Holdings, LLC, 22-10952, N/A; Kabbage Asset Securitization, LLC, 22-10953, N/A; Kabbage Asset Funding 2017-A LLC, 22-10954, 61-1854803; Kabbage Asset Funding 2019-A LLC, 22-10955, 83-4698973; Kabbage Asset Diameter, LLC, 22-10956, N/A

**OTHER NAMES USED BY THE DEBTORS IN THE PAST 8 YEARS**: Kabbage, Inc., d/b/a KServicing, Inc., KService Corp., KServicing, and Kabbage Platform (Kabbage Platform used solely in the state of New York)

**Attorneys for Debtors:** Daniel J. DeFranceschi (No. 2732), Zachary I. Shapiro (No. 5103), RICHARDS, LAYTON & FINGER, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Telephone: (302) 651-7700, Facsimile: (302) 651-7701 -and- Ray C. Schrock, P.C., Natasha S. Hwangpo, Esq. , Chase A. Bentley, Esq. , WEIL, GOTSHAL & MANGES LLP, 767 Fifth Avenue, New York, New York 10153, Telephone: (212) 310-8000, Facsimile: (212) 310-8007

Address of the Clerk of the Bankruptcy Court: Clerk of the United States Bankruptcy Court, 824 North Market Street, 3rd Floor, Wilmington, DE 19801, Telephone: 302-252-2900, Hours Open: 8:00 a.m.–4:00 p.m. Monday–Friday

**PLEASE TAKE NOTICE THAT:**

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU MAY HAVE A CLAIM AGAINST THE DEBTORS IN THE ABOVE-CAPTIONED CHAPTER 11 CASES. THEREFORE, YOU SHOULD READ THIS NOTICE CAREFULLY AND CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

On October 3, 2022 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in these Chapter 11 Cases.

On October 26, 2022, the Bankruptcy Court, having jurisdiction over the Chapter 11 Cases of the Debtors, entered an order (the "**Bar Date Order**") establishing the following Bar Dates:

i. **November 30, 2022 at 5:00 p.m. (Prevailing Eastern Time)** as the deadline for each person or entity (including individuals, partnerships, corporations, joint ventures, and trusts, but not including any governmental units (as defined in section 101(27) of the Bankruptcy Code) ("**Governmental Units**")), to file a proof of claim (each, a "**Proof of Claim**") in respect of a prepetition claim (as defined in section 101(5) of the Bankruptcy Code), including, for the avoidance of doubt, secured claims, unsecured priority claims, and unsecured non-priority claims (the "**General Bar Date**"), unless otherwise provided herein;

ii. **April 3, 2023** at **5:00 p.m. (Prevailing Eastern Time)** as the deadline for Governmental Units to file a Proof of Claim in respect of a prepetition claim against any of the Debtors (the "**Governmental Bar Date**");

iii. **the later of (i) the General Bar Date or the Governmental Bar Date, as applicable, and (ii) 5:00 p.m. (Prevailing Eastern Time) on the date that is thirty (30) days from the date on which the Debtors serve an applicable claimant with notice of a previously unscheduled claim, an amendment to the Schedules (which, for avoidance of doubt, shall include a change to whether a claim is listed on the Schedules as "contingent," "unliquidated," or disputed,") or a supplement to the Schedules (as defined herein)** as the deadline by which claimants holding claims affected by such filing, amendment, or supplement must file Proofs of Claim with respect to such claim (the "**Amended Schedules Bar Date**"); and

iv. **the later of (i) the General Bar Date or the Governmental Bar Date, as applicable, and (ii) 5:00 p.m. (Prevailing Eastern Time) on the date that is thirty (30) days following the date an applicable claimant is served of an order approving rejection of any executory contract or unexpired lease of the Debtors** as the deadline by which claimants asserting claims resulting from the Debtors' rejection of an executory contract or unexpired lease must file Proofs of Claim for damages arising from such rejection[1] (the "**Rejection Damages Bar Date**," and, collectively with the General Bar Date, the Governmental Bar Date, and the Amended Schedules Bar Date, the "**Bar Dates**").

You may be a creditor of one or more of the debtors.

**If you have any questions relating to this Notice, please feel free to contact Omni Agent Solutions ("Omni") at (866) 956-2138 (toll free) or (747) 226-5953 (international) or by e-mail at KServicingInquiries@OmniAgnt.com.**

NOTE: The staff of the Bankruptcy Clerk's Office, the Office of the United States Trustee, and the Debtors' Claims and Noticing Agent cannot give legal advice.

**INSTRUCTIONS:**

**1. WHO MUST FILE A PROOF OF CLAIM.** Except as otherwise set forth herein, the following entities holding claims against the Debtors arising prior to the Petition Date are required to file Proofs of Claim on or before the applicable Bar Date:

a. any person or entity whose claim against a Debtor is not listed in the applicable Debtor's Schedules or is listed as "contingent," "unliquidated," or "disputed," if such entity desires to participate in any of these Chapter 11 Cases or share in any distribution in any of these Chapter 11 Cases;

b. any person or entity that believes that its claim is improperly classified in the Schedules or is listed in an incorrect amount and that desires to have its claim allowed in a different classification or amount other than that identified in the Schedules; and

c. any person or entity that believes that any prepetition claim as listed in the Schedules is not an obligation of the specific Debtor against which the claim is listed and that desires to have its claim allowed against a Debtor other than the Debtor identified in the Schedules.

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "**claim**" means (i) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, and priority claims.

Pursuant to section 101(15) of the Bankruptcy Code and as used in this Notice, the term "**entity**" has the meaning given to it in section 101(15) of the Bankruptcy Code, and includes all persons, estates, trusts, and governmental units. In addition, the terms "persons" and "governmental units" are defined in sections 101(41) and 101(27) of the Bankruptcy Code, respectively.

**2. WHO NEED NOT FILE A PROOF OF CLAIM.** The persons or entities (including, without limitation, individuals, partnerships, corporations, joint ventures, trusts, or Governmental Units) who hold the following claims are not required to file a Proof of Claim on or before the applicable Bar Date, solely with respect to the claims described below:

a. any claim listed on the Schedules filed by the Debtors, and (i) the claim is not listed on the Schedules as "disputed," "contingent," or "unliquidated," (ii) the person or entity agrees with the amount, nature, and priority of the claim as set forth in the Schedules, and (iii) the person or entity agrees that the claim is an obligation of the specific Debtor against which the claim is listed in the Schedules;

b. any claim as to which the holder already has filed a signed Proof of Claim with Omni against the respective Debtor(s) with respect to the claim being asserted, utilizing the Proof of Claim Form or the Official Bankruptcy Form No. 410 (the "**Official Form 410**"), and has otherwise complied with the Procedures;

c. an administrative expense allowable under section 503(b) and 507(a)(2) of the Bankruptcy Code as an expense of administration (but not, for the avoidance of doubt, claims asserting priority pursuant to section 503(b)(9)[2] of the Bankruptcy Code);

d. any claim that has been allowed by order of this Court entered on or before the applicable Bar Date;

e. any claim that has been paid in full or will be paid in full in accordance with the Bankruptcy Code or an order of this Court;

f. any claim for which a separate deadline has been fixed by an order of this Court entered on or before the applicable Bar Date;

g. any equity interest in the Debtors, which interest exclusively is based upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants, options, or rights to purchase, sell, or subscribe to such a security or interest; provided, that if any such holder asserts a claim (as opposed to an ownership interest) against the Debtors (including a claim relating to an equity interest or the purchase or sale of such equity interest), a Proof of Claim must be filed on or before the applicable Bar Date pursuant to the Procedures set forth herein;

h. a claim held by a current employee of the Debtors, if an order of the Court authorized the Debtors to honor such claim in the ordinary course of business for wages, commissions, or benefits; provided, that a current employee must submit a Proof of Claim by the applicable Bar Date for all other claims arising before the Petition Date, including, but not limited to, claims with respect to the Debtors' non-qualified deferred compensation plan or for wrongful termination, discrimination, harassment, hostile work environment, and/or retaliation;

i. any claim based on indemnification, contribution, or reimbursement of a current officer, director, or employee of any of the Debtors; and

j. any claim held by a Debtor or non-Debtor subsidiary or affiliate against another Debtor.

**The fact that you have received this notice does not mean that you have claim or that the Debtors or the Court believe that you have a claim against the Debtors. You should not file a Proof of Claim if you do not have a claim against any of the Debtors.**

**3. INSTRUCTIONS FOR FILING PROOFS OF CLAIM.** Except as otherwise set forth herein, each entity that asserts a claim against the Debtors that arose before the Petition Date **MUST** file a Proof of Claim.

**The following procedures with respect to preparing and filing of Proofs of Claim will apply:**

a. Proofs of Claim must conform substantially to either (i) the Proof of Claim Form or (ii) the Official Form 410;[3]

b. Proofs of Claim must be filed (i) electronically through the Omni's Proof of Claim website for these cases at https://cases.omniagentsolutions.com/claim?clientid=3641 by following instructions for filing proofs of claim electronically; or (ii) transmitted with the original proof of claim by hand delivery, U.S. Postal Service mail, or overnight delivery to Omni's Claims Processing Center for the Debtors at Kabbage, Inc. d/b/a KServicing, et al. Claims Processing, c/o Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367.

c. Proofs of Claim will be deemed filed only when received by the Omni on or before the applicable Bar Date;

d. Proofs of Claim must (i) be signed by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant under penalty of perjury; (ii) include supporting documentation (if voluminous, attach a summary) or an explanation as to why documentation is not available; (iii) be in the English language and (iv) be denominated in United States currency;

e. Proofs of Claim must specify by name and case number the Debtor against which the claim is filed. If the holder asserts a claim against more than one Debtor or has claims against different Debtors, a separate Proof of Claim form must be filed with respect to each Debtor. If the holder lists multiple Debtors on the Proof of Claim, then the Debtors will treat such claim as if it is filed against the first listed Debtor. If the holder files a Proof of Claim without identifying a Debtor, such Proof of Claim will be deemed as filed only against Kabbage, Inc. d/b/a KServicing;

f. Proofs of Claim sent by facsimile, telecopy, or electronic mail transmission **will not** be accepted.

**4. CONSEQUENCES OF FAILURE TO TIMELY FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE. Pursuant to the Bar Date Order and Bankruptcy Rule 3003(c)(2), any holder of a claim who is required to timely file a Proof of Claim on or before the applicable Bar Date as provided herein, but fails to do so, unless ordered otherwise by the Court, shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution in these Chapter 11 Cases on account of such claim.**

**5. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF.** You may be listed as the holder of a claim against the Debtors in the Debtors' Schedules of Assets and Liabilities (collectively, the "**Schedules**"). To determine if and how you are listed in the Schedules, please refer to the descriptions set forth on the enclosed Proof of Claim Form regarding the nature, amount, and status of your claim(s). If the enclosed Proof of Claim Form is blank, you are not identified in the Schedules as having a claim against the Debtors. If you believe that any information reflected in the Proof of Claim Form is incorrect or if the Proof of Claim Form includes information that you do not agree with, you may cross out such information and write in what you believe to be the correct information. If you received postpetition payments from the Debtors (as authorized by the Court) on account of your claim, the enclosed Proof of Claim Form will reflect the net amount of your claims. If the Debtors believe that you hold claims against more than one Debtor, you will receive multiple Proof of Claim Forms, each of which will reflect the nature and amount of your claim against each Debtor, as listed in the Schedules.

As set forth above, if you agree with the nature, amount, and status of your claim as listed in the Debtors' Schedules and if your claim is not listed in the Schedules as "disputed," "contingent," or "unliquidated," you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' Chapter 11 Cases, which is posted (i) on the website established by Omni for the Debtors' cases at https://omniagentsolutions.com/kservicing and (ii) on the Court's website at www.deb.uscourts.gov. (A login and password to the Court's Public Access to Electronic Court Records ("**PACER**") are required to access the information on the Court's website and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules also may be examined between the hours of 8:00 a.m. and 5:00 p.m. (Prevailing Eastern Time) Monday through Friday at the Office of the Clerk of the Bankruptcy Court, 824 North Market Street, 3rd Floor, Wilmington, DE 19801. Copies of the Debtors' Schedules also may be obtained by written request to the Debtors' claims agent, Omni, at the address and telephone number set forth below: **Kabbage, Inc. d/b/a KServicing, et al. Claims Processing,** c/o Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367, (866) 956-2138 (toll free), (747) 226-5953 (international).

In the event that the Debtors amend or supplement their Schedules subsequent to date of entry of the Bar Date Order, the Debtors shall give notice of any amendment or supplement to the holders of claims affected by such amendment or supplement within fourteen (14) days after filing such amendment or supplement, and such holders must file a Proof of Claim by **the later of (a) the General Bar Date or the Governmental Bar Date, as applicable, and (b) 5:00 p.m. (Prevailing Eastern Time) on the date that is thirty (30) days following the date on which the Debtors serve an applicable claimant with notice of a previously unfiled Schedule or an amendment or supplement to the Schedules**, and such deadline shall be contained in any notice of such amendment or supplement of the Schedules provided to the holders of claims affected thereby.

**6. RESERVATION OF RIGHTS.** Nothing contained in this Notice is intended to or should be construed as a waiver of the Debtors' right to: (a) dispute, or assert offsets or defenses against, any filed claim or any claim listed or reflected in the Schedules as to the nature, amount, liability, or classification thereof; (b) subsequently designate any scheduled claim as disputed, contingent, or unliquidated; and (c) otherwise amend or supplement the Schedules.

**If you require additional information regarding the filing of a proof of claim, you may contact the Debtors' Claims and Noticing Agent directly at: Kabbage, Inc. d/b/a KServicing, et al. c/o Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367; Telephone: (866) 956-2138 (toll free) or (747) 226-5953 (international); or by e-mail at KServicingInquiries@omniagnt.com.**

**A holder of a possible claim against the Debtors should consult an attorney if such holder has any questions regarding this Notice, including whether the holder should file a Proof of Claim.**

Dated: Wilmington, Delaware
November 4, 2022

**BY ORDER OF THE COURT**

Ray C. Schrock, P.C., Candace M. Arthur, Natasha S. Hwangpo, Chase A. Bentley, WEIL, GOTSHAL & MANGES LLP, 767 Fifth Avenue, New York, New York 10153, Telephone: (212) 310-8000, Facsimile: (212) 310-8007 -and- Daniel J. DeFranceschi, Amanda R. Steele, Zachary I. Shapiro, Matthew P. Milana, RICHARDS, LAYTON & FINGER, PA, One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Telephone: (302) 651-7700, Facsimile: (302) 651-7701, ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION

[1] Provided that notwithstanding the foregoing, a party to an executory contract or unexpired lease that has not been rejected by the Debtors by the date of entry of the Bar Date Order who asserts a claim on account of unpaid amounts accrued and outstanding as of the Petition Date pursuant to such executory contract or unexpired lease (other than a rejection damages claim) must file a Proof of Claim for such amounts on or before the applicable Bar Date, unless an exception identified in this Motion or the Proposed Order applies.

[2] A claim arising under Bankruptcy Code section 503(b)(9) is a claim arising from the value of any goods received by the Debtors within twenty (20) days before the Petition Date, provided that the goods were sold to the Debtors in the ordinary course of the Debtors' business.

[3] The Official Form 410 can be found at www.uscourts.gov/forms/bankruptcy-forms, the official website for the United States Bankruptcy Courts. The Proof of Claim Form can be found at https://omniagentsolutions.com/kservicing, the website established by Omni for the Debtors' chapter 11 cases.

# **EXHIBIT B**



# PROOF OF PUBLICATION

Nov-09, 2022

I, Edgar Noblesala, in my capacity as a Principal Clerk of the Publisher of The New York Times a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on

Nov 9, 2022, NYT & Natl, pg B5

Sworn to me this 9th day of November, 2022

Ellen Herb

Notary Public

Ellen Herb
Notary Public, State of New York
No. 01HE6163785
Qualified in New York County
Commission Expires April 2, 2023

UNITED STATES BANKRUPTCY COURT, DISTRICT OF DELAWARE

| In re KABBAGE, INC. D/B/A KSERVICING, *et al.*, Debtors. | Chapter 11 Case Nos.: 22-10951 (CTG) Through 22-10956 (Jointly Administered) |
|---|---|

NOTICE OF DEADLINES TO FILE PROOFS OF CLAIM

TO: ALL PERSONS AND ENTITIES WHO MAY HAVE CLAIMS AGAINST ANY OF THE FOLLOWING DEBTOR ENTITIES:

Name of Debtor, Case Number, Tax Identification Number: Kabbage, Inc., 22-10951, 36-4973937; Kabbage Canada Holdings, LLC, 22-10952, N/A; Kabbage Asset Securitization, LLC, 22-10953, N/A; Kabbage Asset Funding 2017-A LLC, 22-10954, 61-1854803; Kabbage Asset Funding 2019-A LLC, 22-10955, 83-4698973; Kabbage Asset Diameter, LLC, 22-10956, N/A

OTHER NAMES USED BY THE DEBTORS IN THE PAST 8 YEARS: Kabbage, Inc., d/b/a KServicing, Inc., KService Corp., KServicing, and Kabbage Platform (Kabbage Platform used solely in the state of New York)

Attorneys for Debtors: Daniel J. DeFranceschi (No. 2732), Zachary I. Shapiro (No. 5103), RICHARDS, LAYTON & FINGER, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Telephone: (302) 651-7700, Facsimile: (302) 651-7701 -and- Ray C. Schrock, P.C., Natasha S. Hwangpo, Esq., Chase A. Bentley, Esq., WEIL, GOTSHAL & MANGES LLP, 767 Fifth Avenue, New York, New York 10153, Telephone: (212) 310-8000, Facsimile: (212) 310-8007

Address of the Clerk of the Bankruptcy Court: Clerk of the United States Bankruptcy Court, 824 North Market Street, 3rd Floor, Wilmington, DE 19801, Telephone: 302-252-2900, Hours Open: 8:00 a.m.–4:00 p.m. Monday–Friday

PLEASE TAKE NOTICE THAT:

YOU ARE RECEIVING THIS NOTICE BECAUSE YOU MAY HAVE A CLAIM AGAINST THE DEBTORS IN THE ABOVE-CAPTIONED CHAPTER 11 CASES. THEREFORE, YOU SHOULD READ THIS NOTICE CAREFULLY AND CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.

On October 3, 2022 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in these Chapter 11 Cases.

On October 26, 2022, the Bankruptcy Court, having jurisdiction over the Chapter 11 Cases of the Debtors, entered an order (the "**Bar Date Order**") establishing the following Bar Dates:

i. **November 30, 2022 at 5:00 p.m. (Prevailing Eastern Time)** as the deadline for each person or entity (including individuals, partnerships, corporations, joint ventures, and trusts, but not including any governmental units (as defined in section 101(27) of the Bankruptcy Code) ("**Governmental Units**")), to file a proof of claim (each, a "**Proof of Claim**") in respect of a prepetition claim (as defined in section 101(5) of the Bankruptcy Code), including, for the avoidance of doubt, secured claims, unsecured priority claims, and unsecured non-priority claims (the "**General Bar Date**"), unless otherwise provided herein;

ii. **April 3, 2023** at **5:00 p.m. (Prevailing Eastern Time)** as the deadline for Governmental Units to file a Proof of Claim in respect of a prepetition claim against any of the Debtors (the "**Governmental Bar Date**");

iii. **the later of (i) the General Bar Date or the Governmental Bar Date, as applicable, and (ii) 5:00 p.m. (Prevailing Eastern Time) on the date that is thirty (30) days from the date on which the Debtors serve an applicable claimant with notice of a previously unscheduled claim, an amendment to the Schedules (which, for avoidance of doubt, shall include a change to whether a claim is listed on the Schedules as "contingent," "unliquidated," or disputed,") or a supplement to the Schedules (as defined herein)** as the deadline by which claimants holding claims affected by such filing, amendment, or supplement must file Proofs of Claim with respect to such claim (the "**Amended Schedules Bar Date**"); and

iv. **the later of (i) the General Bar Date or the Governmental Bar Date, as applicable, and (ii) 5:00 p.m. (Prevailing Eastern Time) on the date that is thirty (30) days following the date an applicable claimant is served of an order approving rejection of any executory contract or unexpired lease of the Debtors** as the deadline by which claimants asserting claims resulting from the Debtors' rejection of an executory contract or unexpired lease must file Proofs of Claim for damages arising from such rejection[1] (the "**Rejection Damages Bar Date**," and, collectively with the General Bar Date, the Governmental Bar Date, and the Amended Schedules Bar Date, the "**Bar Dates**").

You may be a creditor of one or more of the debtors.

**If you have any questions relating to this Notice, please feel free to contact Omni Agent Solutions ("Omni") at (866) 956-2138 (toll free) or (747) 226-5953 (international) or by e-mail at KServicingInquiries@OmniAgnt.com.**

NOTE: The staff of the Bankruptcy Clerk's Office, the Office of the United States Trustee, and the Debtors' Claims and Noticing Agent cannot give legal advice.

INSTRUCTIONS:

1. **WHO MUST FILE A PROOF OF CLAIM.** Except as otherwise set forth herein, the following entities holding claims against the Debtors arising prior to the Petition Date are required to file Proofs of Claim on or before the applicable Bar Date:

a. any person or entity whose claim against a Debtor is not listed in the applicable Debtor's Schedules or is listed as "contingent," "unliquidated," or "disputed," if such entity desires to participate in any of these Chapter 11 Cases or share in any distribution in any of these Chapter 11 Cases;

b. any person or entity that believes that its claim is improperly classified in the Schedules or is listed in an incorrect amount and that desires to have its claim allowed in a different classification or amount other than that identified in the Schedules; and

c. any person or entity that believes that any prepetition claim as listed in the Schedules is not an obligation of the specific Debtor against which the claim is listed and that desires to have its claim allowed against a Debtor other than the Debtor identified in the Schedules.

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "**claim**" means (i) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, and priority claims.

Pursuant to section 101(15) of the Bankruptcy Code and as used in this Notice, the term "**entity**" has the meaning given to it in section 101(15) of the Bankruptcy Code, and includes all persons, estates, trusts, and governmental units. In addition, the terms "persons" and "governmental units" are defined in sections 101(41) and 101(27) of the Bankruptcy Code, respectively.

2. **WHO NEED NOT FILE A PROOF OF CLAIM.** The persons or entities (including, without limitation, individuals, partnerships, corporations, joint ventures, trusts, or Governmental Units) who hold the following claims are not required to file a Proof of Claim on or before the applicable Bar Date, solely with respect to the claims described below:

a. any claim listed on the Schedules filed by the Debtors, and (i) the claim is not listed on the Schedules as "disputed," "contingent," or "unliquidated," (ii) the person or entity agrees with the amount, nature, and priority of the claim as set forth in the Schedules, and (iii) the person or entity agrees that the claim is an obligation of the specific Debtor against which the claim is listed in the Schedules;

b. any claim as to which the holder already has filed a signed Proof of Claim with Omni against the respective Debtor(s) with respect to the claim being asserted, utilizing the Proof of Claim Form or the Official Bankruptcy Form No. 410 (the "**Official Form 410**"), and has otherwise complied with the Procedures;

c. an administrative expense allowable under section 503(b) and 507(a)(2) of the Bankruptcy Code as an expense of administration (but not, for the avoidance of doubt, claims asserting priority pursuant to section 503(b)(9)[2] of the Bankruptcy Code);

d. any claim that has been allowed by order of this Court entered on or before the applicable Bar Date;

e. any claim that has been paid in full or will be paid in full in accordance with the Bankruptcy Code or an order of this Court;

f. any claim for which a separate deadline has been fixed by an order of this Court entered on or before the applicable Bar Date;

g. any equity interest in the Debtors, which interest exclusively is based upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants, options, or rights to purchase, sell, or subscribe to such a security or interest; provided, that if any such holder asserts a claim (as opposed to an ownership interest) against the Debtors (including a claim relating to an equity interest or the purchase or sale of such equity interest), a Proof of Claim must be filed on or before the applicable Bar Date pursuant to the Procedures set forth herein;

h. a claim held by a current employee of the Debtors, if an order of the Court authorized the Debtors to honor such claim in the ordinary course of business for wages, commissions, or benefits; provided, that a current employee must submit a Proof of Claim by the applicable Bar Date for all other claims arising before the Petition Date, including, but not limited to, claims with respect to the Debtors' non-qualified deferred compensation plan or for wrongful termination, discrimination, harassment, hostile work environment, and/or retaliation;

i. any claim based on indemnification, contribution, or reimbursement of a current officer, director, or employee of any of the Debtors; and

j. any claim held by a Debtor or non-Debtor subsidiary or affiliate against another Debtor.

**The fact that you have received this notice does not mean that you have claim or that the Debtors or the Court believe that you have a claim against the Debtors. You should not file a Proof of Claim if you do not have a claim against any of the Debtors.**

3. **INSTRUCTIONS FOR FILING PROOFS OF CLAIM.** Except as otherwise set forth herein, each entity that asserts a claim against the Debtors that arose before the Petition Date **MUST** file a Proof of Claim.

**The following procedures with respect to preparing and filing of Proofs of Claim will apply:**

a. Proofs of Claim must conform substantially to either (i) the Proof of Claim Form or (ii) the Official Form 410;[3]

b. Proofs of Claim must be filed (i) electronically through the Omni's Proof of Claim website for these cases at https://cases.omniagentsolutions.com/claim?clientid=3641 by following instructions for filing proofs of claim electronically; or (ii) transmitted with the original proof of claim by hand delivery, U.S. Postal Service mail, or overnight delivery to Omni's Claims Processing Center for the Debtors at Kabbage, Inc. d/b/a KServicing, et al. Claims Processing, c/o Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367.

c. Proofs of Claim will be deemed filed only when received by the Omni on or before the applicable Bar Date;

d. Proofs of Claim must (i) be signed by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant under penalty of perjury; (ii) include supporting documentation (if voluminous, attach a summary) or an explanation as to why documentation is not available; (iii) be in the English language and (iv) be denominated in United States currency;

e. Proofs of Claim must specify by name and case number the Debtor against which the claim is filed. If the holder asserts a claim against more than one Debtor or has claims against different Debtors, a separate Proof of Claim form must be filed with respect to each Debtor. If the holder lists multiple Debtors on the Proof of Claim, then the Debtors will treat such claim as if it is filed against the first listed Debtor. If the holder files a Proof of Claim without identifying a Debtor, such Proof of Claim will be deemed as filed only against Kabbage, Inc. d/b/a KServicing;

f. Proofs of Claim sent by facsimile, telecopy, or electronic mail transmission **will not** be accepted.

4. **CONSEQUENCES OF FAILURE TO TIMELY FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE. Pursuant to the Bar Date Order and Bankruptcy Rule 3003(c)(2), any holder of a claim who is required to timely file a Proof of Claim on or before the applicable Bar Date as provided herein, but fails to do so, unless ordered otherwise by the Court, shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution in these Chapter 11 Cases on account of such claim.**

5. **THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF.** You may be listed as the holder of a claim against the Debtors in the Debtors' Schedules of Assets and Liabilities (collectively, the "**Schedules**"). To determine if and how you are listed in the Schedules, please refer to the descriptions set forth on the enclosed Proof of Claim Form regarding the nature, amount, and status of your claim(s). If the enclosed Proof of Claim Form is blank, you are not identified in the Schedules as having a claim against the Debtors. If you believe that any information reflected in the Proof of Claim Form is incorrect or if the Proof of Claim Form includes information that you do not agree with, you may cross out such information and write in what you believe to be the correct information. If you received postpetition payments from the Debtors (as authorized by the Court) on account of your claim, the enclosed Proof of Claim Form will reflect the net amount of your claims. If the Debtors believe that you hold claims against more than one Debtor, you will receive multiple Proof of Claim Forms, each of which will reflect the nature and amount of your claim against each Debtor, as listed in the Schedules.

As set forth above, if you agree with the nature, amount, and status of your claim as listed in the Debtors' Schedules and if your claim is not listed in the Schedules as "disputed," "contingent," or "unliquidated," you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' Chapter 11 Cases, which is posted (i) on the website established by Omni for the Debtors' cases at https://omniagentsolutions.com/kservicing and (ii) on the Court's website at www.deb.uscourts.gov. (A login and password to the Court's Public Access to Electronic Court Records ("**PACER**") are required to access the information on the Court's website and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules also may be examined between the hours of 8:00 a.m. and 5:00 p.m. (Prevailing Eastern Time) Monday through Friday at the Office of the Clerk of the Bankruptcy Court, 824 North Market Street, 3rd Floor, Wilmington, DE 19801. Copies of the Debtors' Schedules also may be obtained by written request to the Debtors' claims agent, Omni, at the address and telephone number set forth below: **Kabbage, Inc. d/b/a KServicing, et al. Claims Processing,** c/o Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367, (866) 956-2138 (toll free), (747) 226-5953 (international).

In the event that the Debtors amend or supplement their Schedules subsequent to date of entry of the Bar Date Order, the Debtors shall give notice of any amendment or supplement to the holders of claims affected by such amendment or supplement within fourteen (14) days after filing such amendment or supplement, and such holders must file a Proof of Claim by **the later of (a) the General Bar Date or the Governmental Bar Date, as applicable, and (b) 5:00 p.m. (Prevailing Eastern Time) on the date that is thirty (30) days following the date on which the Debtors serve an applicable claimant with notice of a previously unfiled Schedule or an amendment or supplement to the Schedules,** and such deadline shall be contained in any notice of such amendment or supplement of the Schedules provided to the holders of claims affected thereby.

6. **RESERVATION OF RIGHTS.** Nothing contained in this Notice is intended to or should be construed as a waiver of the Debtors' right to: (a) dispute, or assert offsets or defenses against, any filed claim or any claim listed or reflected in the Schedules as to the nature, amount, liability, or classification thereof; (b) subsequently designate any scheduled claim as disputed, contingent, or unliquidated; and (c) otherwise amend or supplement the Schedules.

**If you require additional information regarding the filing of a proof of claim, you may contact the Debtors' Claims and Noticing Agent directly at: Kabbage, Inc. d/b/a KServicing, et al. c/o Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367; Telephone: (866) 956-2138 (toll free) or (747) 226-5953 (international); or by e-mail at KServicingInquiries@omniagnt.com.**

**A holder of a possible claim against the Debtors should consult an attorney if such holder has any questions regarding this Notice, including whether the holder should file a Proof of Claim.**

Dated: Wilmington, Delaware November 4, 2022 — BY ORDER OF THE COURT

Ray C. Schrock, P.C., Candace M. Arthur, Natasha S. Hwangpo, Chase A. Bentley, WEIL, GOTSHAL & MANGES LLP, 767 Fifth Avenue, New York, New York 10153, Telephone: (212) 310-8000, Facsimile: (212) 310-8007 -and- Daniel J. DeFranceschi, Amanda R. Steele, Zachary I. Shapiro, Matthew P. Milana, RICHARDS, LAYTON & FINGER, PA, One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Telephone: (302) 651-7700, Facsimile: (302) 651-7701, ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION

[1] Provided that notwithstanding the foregoing, a party to an executory contract or unexpired lease that has not been rejected by the Debtors by the date of entry of the Bar Date Order who asserts a claim on account of unpaid amounts accrued and outstanding as of the Petition Date pursuant to such executory contract or unexpired lease (other than a rejection damages claim) must file a Proof of Claim for such amounts on or before the applicable Bar Date, unless an exception identified in this Motion or the Proposed Order applies.

[2] A claim arising under Bankruptcy Code section 503(b)(9) is a claim arising from the value of any goods received by the Debtors within twenty (20) days before the Petition Date, provided that the goods were sold to the Debtors in the ordinary course of the Debtors' business.

[3] The Official Form 410 can be found at www.uscourts.gov/forms/bankruptcy-forms, the official website for the United States Bankruptcy Courts. The Proof of Claim Form can be found at https://omniagentsolutions.com/kservicing, the website established by Omni for the Debtors' chapter 11 cases.

# In Climate Challenge, China Is Continuing To Burn More Coal

FROM FIRST BUSINESS PAGE

and more efficient way," Mr. Xi said, with no mention of reducing consumption.

A look at two areas of China — the greater Beijing region and the heart of the coal mining industry in central Shanxi Province — underlines the hopes and the fears of climate scientists.

The administrative region of Beijing covers an area the size of Connecticut, from broad wheat fields on the plains to the southeast to brush-covered mountain ranges topped with the Great Wall to the north.

The potential for China to rely heavily on renewable energy is visible in and around Hanhaozhuang, a village on Beijing's border with Hebei Province to the north. It is a hamlet where brick-walled sheep pens alternate with yellow and gray gourds growing on steel wire trellises.

Just beyond the pens lies a huge expanse of dark blue solar panels mounted on steel frames to keep them tilted at the correct southern angle toward the sun. The solar power farm covers five times the area of the village. Two rows of apple trees grow between each row of solar panels, providing a cash crop for residents.

A dozen miles to the southwest, in a marsh along the banks of a reservoir, stands a long row of wind turbines. They turn the strong winds blowing off the Gobi Desert into electricity for Beijing. And, closer to the city, utilities have built large gas-fired power plants.

These measures drove Beijing's coal use down 95 percent in the decade through 2020, the most recent year for which data is available. The last coal mine in the region closed three years ago.

But just in case the weather turns very hot or very cold, raising electricity demand, or if renewable energy slackens, Beijing has not given up on coal. The enormous Huaneng thermal power plant in the city's southeast sits ready to fire up four coal-fired units each taller than a 10-story apartment tower.

Other regions are much further from giving up on coal. In Shanxi Province, 300 miles southwest of Beijing and the heart of China's coal country, coal companies in the past year have sharply stepped up the pace at which they carve new or expanded mines into the low, dry hills. Shanxi is also burning vast quantities of coal to power cement factories, steel mills and other industries and to generate electricity — coal consumption grew 80 percent in the decade through 2020. Wind and solar power are growing there, too, but those levels of production were far lower to begin with.

Natural gas, which when burned releases roughly half as much carbon dioxide as coal, offers a potential bridge from coal to renewable energy for China. How much China promotes natural gas instead of coal will have long-term consequences for not only its economy but also its relationship with Russia.

Gas imports from Russia are increasing rapidly from pipelines and shipped liquefied natural gas despite Russia's invasion of Ukraine. This year, China has nearly doubled its gas imports through a pipeline from eastern Siberia. But, overall, Russian gas makes up just 1 percent of Chinese energy consumption and less than a tenth of China's gas consumption. How much more China is prepared to buy from its northern neighbor is unclear and subject to intense speculation among Western officials and energy analysts.

The biggest outstanding issue is whether a larger second pipeline, known as Power of Siberia 2, will be built across Mongolia to China. The gas fields in western Siberia had been supplying Europe. But President Vladimir V. Putin of Russia has sharply reduced those flows to punish European leaders for opposing his invasion of Ukraine.

Russia has been eager to build Power of Siberia 2, which could supply a tenth of China's gas needs. But China appears to be stalling, and is mulling whether to deepen its energy relationship with Moscow. China has consistently sought diversity of supply and long-term, low-cost contracts.

"China has committed to nothing yet," said Anna Mikulska, a natural gas and Russia expert at Rice University. "They are looking for a bargain."

China is focused for now on coal. The Beijing region's strategy of keeping a giant coal-fired power plant to meet brief peaks in demand defies conventional wisdom in the global power industry.

Natural gas has long been seen as a better choice for meeting such peaks, because gas-fired turbines can ramp up electricity production in minutes or even seconds. Coal-fired plants can take a couple of days from a cold start.

China is now investing heavily in refitting coal-fired power plants to make them more suitable for meeting peak electricity needs, said Zhou Xizhou, a longtime specialist in Chinese energy who is now at S&P Global. Keeping coal-fired power plants running slowly — at 30 to 50 percent of capacity, as China is doing in some cities — allows the plants to be brought up to full capacity very quickly when there is a shortfall in renewable energy.

The danger for the climate is that electric utilities might not be satisfied with running coal-fired power plants only part of the time, said Mr. Sandalow, the former U.S. energy official. "Once the asset is built, will there be pressure to use it more?" he said.

Beijing has begun allowing electric utilities to charge far more money per kilowatt-hour for coal-generated electricity during power shortages. The cost of electricity soared in August when a drought in southwestern China caused a plunge in hydroelectric power and a wave of blackouts.

"That brings many companies to the point of considering rooftop solar panels on their factories," said Frank Haugwitz, a longtime Chinese solar energy consultant. China is now installing more solar panels each year than the rest of the world combined, with the electricity generation capacity of new installations doubling again this year.

The country's National Energy Administration has mandated that a slowly rising proportion of new solar installations must have batteries, although this makes the systems more expensive.

The goal is for solar panels to meet power needs during the day and store enough electricity in the batteries to meet local needs for another two to four hours after sunset. The batteries also provide extra time for coal-fired power plants to raise electricity output.

A peculiarity of China's previous climate pledges gives the country's coal industry an unusual incentive to burn as much coal as possible in the next seven years. Mr. Xi has promised that China's net carbon emissions will peak "before 2030," and then shrink to zero by 2060.

But he has not specified how high these emissions will rise. So burning extra coal in the coming years could in theory help the coal industry keep more mines and power plants running for many more years at higher output, protecting profits and jobs.

Experts in China dismiss concerns that their country will do this. Kevin Tu, a Beijing-based fellow for the Center on Global Energy Policy of Columbia University, said China's national government was deeply committed to reducing smog and other toxic air pollution, in addition to climate goals.

But Beijing authorities will need to watch local officials closely to make sure that they follow national policies, Mr. Tu said. "At the local government level, there are different interest groups trying to push emissions higher at the provincial level," he said. "This would generate higher economic growth in the short term, unfortunately at the expense of the environment in the long run."

Li You contributed research.





PHOTOGRAPHS BY GILLES SABRIÉ FOR THE NEW YORK TIMES

China is installing more solar panels each year than the rest of the world combined, like at a solar farm in Hanhaozhuang, above. Natural gas, like the kind used at a plant in Dongguan, here above, is seen as better than coal for meeting peaks in demand.

### 'China has committed to nothing yet.'
Anna Mikulska, a natural gas expert at Rice University, on how Beijing is mulling its energy relationship with Russia.

---

# Lucid Says It Will Raise $1.5 Billion, And Reports a Loss of $670 Million

By NEAL E. BOUDETTE

Lucid Group, an electric car company that has struggled to ramp up manufacturing, said on Tuesday that it had reached agreements to raise up to $1.5 billion, shoring up its financial position as it works to streamline and expand its production operations.

The company said in a regulatory filing that it planned to sell up to $600 million in new shares through Bank of America, Barclay's Capital and Citi. It also said it reached an agreement to sell up to $915 million in stock to the sovereign wealth fund of Saudi Arabia, which already owns a majority of Lucid's stock.

Shares of Lucid were down about 12 percent in after-hours trading on Tuesday following the disclosure of its plans in the securities filing. The company's stock was trading at just under $12, down from more than $50 last November.

Separately on Tuesday, Lucid said that it had lost $670 million in the third quarter, compared with a loss of $524 million loss in the same period a year earlier. The company said it had significantly increased production in the third quarter.

Revenue rose significantly to $195.5 million, from $97.3 million in the second quarter and just $232,000 in the third quarter of 2021. It delivered 1,398 cars to customers in the third quarter, more than twice as many as in the second quarter.

The fledgling company, based in Newark, Calif., said it produced 2,282 electric cars in the three months that ended in September, more than three times as many as it made in the previous three months. "We've made great strides in ramping up our production," Lucid's chief executive, Peter Rawlinson, said in an interview. "We are gradually improving things and there's a real belief we are on the right track here."

He added that the automaker was on track to hit its revised target of making 6,000 to 7,000 cars this year.

The company said it had taken reservations for 34,000 cars from individuals. Its only model, the Air sedan, has won accolades from car magazines and websites. The car can travel up to 520 miles on a full charge, more than any other electric vehicle on the market. The company said it would begin taking reservations for a second model, the Gravity sport-utility vehicle, early next year.

But Lucid still faces a number of challenges, including increasing production and turning a profit. With the exception of Tesla, most recent automotive start-ups have struggled to mass produce their promising designs and create self-sustaining businesses. Lucid had $3.85 billion in cash and cash equivalents at the end of September.

Saudi Arabia's government has agreed to buy up to 100,000 cars from Lucid and the company is planning to build a manufacturing facility in that country. It currently makes cars at a factory in Arizona.

This year investors have lost much of their enthusiasm for start-up carmakers, making it harder and more expensive for them to raise financing. Rivian, another electric car company, reports its third-quarter earnings on Wednesday. Rivian's shares soared to as high as $180 after its initial public offering late last year, but have since fallen sharply. On Tuesday Rivian's stock closed at under $32 a share.



BRYAN DERBALA FOR THE NEW YORK TIMES

Lucid built 2,282 electric cars in the three months that ended in September. The Air, above, its only model, can travel up to 520 miles on a full charge.

### $915M
The value of stock that Lucid has agreed to sell to the sovereign wealth fund of Saudi Arabia.

---

UNITED STATES BANKRUPTCY COURT, DISTRICT OF DELAWARE

In re KABBAGE, INC. D/B/A KSERVICING, et al., Debtors.

Chapter 11 Case Nos.: 22-10951 (CTG) Through 22-10956 (Jointly Administered)

NOTICE OF DEADLINES TO FILE PROOFS OF CLAIM TO: ALL PERSONS AND ENTITIES WHO MAY HAVE CLAIMS AGAINST ANY OF THE FOLLOWING DEBTOR ENTITIES:

[Legal notice text continues with details of bankruptcy proceedings, claim filing deadlines, procedures, and contact information for the Kabbage, Inc. Chapter 11 cases.]

BY ORDER OF THE COURT
Dated: Wilmington, Delaware
November 4, 2022