**Exhibit B**

**Friske Declaration**

RLF1 28239495V.1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------- x
                                                           :
In re                                                      :    Chapter 11
                                                           :
KABBAGE, INC. d/b/a KSERVICING, *et al.*,                  :    Case No. 22-10951 (CTG)
                                                           :
                                                           :
              Debtors.[1]                                  :    (Jointly Administered)
                                                           :
---------------------------------------------------------- x

**DECLARATION OF DOUGLAS FRISKE IN SUPPORT**
**OF MOTION OF DEBTORS FOR ENTRY OF AN ORDER**
**(I) APPROVING DEBTORS' RETENTION PROGRAM FOR CERTAIN**
**NON-EXECUTIVE EMPLOYEES AND (II) GRANTING RELATED RELIEF**

I, Douglas Friske, hereby declare under penalty of perjury, to the best of my knowledge, information, and belief, that:

1. I am a Managing Director at Willis Towers Watson US LLC ("**WTW**"). Prior to the Petition Date, Kabbage, Inc. and certain of its subsidiaries as debtors and debtors-in-possession (collectively, the "**Debtors**" and collectively with their non-Debtor affiliates, the "**Company**") engaged WTW to provide compensation consulting services to the Debtors. WTW is an international professional services firm that offers a wide variety of services to public and private clients, including expert analysis of executive and management compensation. WTW designs and delivers solutions that manage risk, optimize benefits, cultivate talent, and expand the power of capital to protect and strengthen institutions and individuals. I am primarily involved in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

consulting to large companies, specifically with regard to executive compensation. I have participated in the development and design of hundreds of management and employee retention and incentive plans for companies inside and outside of bankruptcy. I am frequently retained by large companies to advise them on their employee compensation strategies, programs, and pay levels. I have over 32 years of experience in designing and implementing compensation arrangements, including key employee incentive and retention programs.

2. I submit this Declaration in support of the *Motion of Debtors for Entry of Order (I) Approving Debtors' Retention Program For Certain Non-Executive Employees and (II) Granting Related Relief* (the "**Motion**").[2] I am generally familiar with the prepetition structure of the Debtors' compensation programs and the composition of their workforce. During the course of WTW's engagement, my team and I provided input and advice on the design and structure of the Non-Executive KERP and reviewed for market compararables and reasonableness. I reviewed the Motion and believe that it accurately reflects the development of, and justification for, the Non-Executive KERP. I further believe that the Non-Executive KERP is reasonable and appropriate.

3. Except as otherwise indicated, all statements in this declaration (the "**Friske Declaration**") are based on my personal experience and knowledge, my opinions, my discussions with the Debtors' management and professionals, and my review of the relevant documents. If called to testify, I could and would testify to each of the facts and opinions set forth herein.

## Non-Executive KERP

### I. Terms of the Non-Executive KERP

4. The Non-Executive KERP will provide for awards to eleven (11) non-executive employees in three equal, remaining installments on or as soon as administratively

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

practicable following each of: December 31, 2022, March 31, 2023, and June 30, 2023.[3] The total remaining payments to be made pursuant to the Non-Executive KERP is approximately $247,400, which includes the remaining $63,000 from the Discretionary Pool from which the Debtors' Chief Executive Officer will determine whether any non-executive employees, who are important to the Debtors' restructuring efforts but were not initially identified as Non-Executive KERP Participants, should receive awards, as well as the appropriate amounts of such awards. The Discretionary Pool eliminates any concerns that the Debtors have erred in their initial selection of the Non-Executive KERP Participants. Additionally, the Non-Executive KERP Participants in the Discretionary Pool are not allowed more than one award and no single award may exceed $18,750.

5.  The individual awards for the Non-Executive KERP Participants range from 8% to 30% of each Non-Executive KERP Participant's annual salary with such payments to be paid in equal quarterly installments following an initial payment prior to the Petition Date. To achieve the Debtors' goals of retention, the Non-Executive KERP Participants will lose their entitlement to any future, remaining payments if they are terminated for any reason or otherwise depart from the Debtors' employ.

6.  I, in consultation with the Debtors' management team, AlixPartners, and Weil, assisted in the development of the Non-Executive KERP to increase the likelihood of employee retention and ensure the Debtors have sufficient personnel on hand to meet their goals during the pendency of these Chapter 11 Cases, thereby preserving value for the Debtors, their estates, their creditors, and other parties in interest.

---

[3] Remaining installments are subject to acceleration in the event of a "change of control" (as defined in the Motion).

3

## II. Reasonableness of the Non-Executive KERP

7. I believe that the design of the Non-Executive KERP is reasonable and is within the parameters of retention plans implemented in other chapter 11 cases. WTW's analysis of the KERP reflected a review of the proposed terms and conditions relating to all aspects of the KERP, including the method of approval, eligibility, form of payment, total cost, payout frequency and timing. The Debtors' other advisors also evaluated the KERP and advised the Debtors on legal, business, and practical considerations to take into account with respect to adoption of the KERP. Ultimately, Weil, AlixPartners, and WTW recommended that the Debtors' Board of Directors (the "**Board**") review, consider, and approve the KERP.

8. In designing the KERP, WTW reviewed the design and cost of non-executive key employee retention programs across thirty (30) companies with revenues between $0 - $100 million or assets between $400 million - $1 billion that implemented non-executive key retention programs in the past five years. Based on these findings, WTW provided a strawmodel design for the KERP.

9. WTW's strawmodel design included recommendations on the scope of participation in the Non-Executive KERP, award amount, form of payment, payment timing, and treatment upon termination. WTW compared this strawmodel to various other restructuring compensation programs and found that the proposed aggregate payments under the Non-Executive KERP was below the 25th percentile of the market when expressed as a percentage of the Debtors' assets. Overall, the average award to each Non-Executive KERP Participant falls below median market comparables, and its total cost is reasonable when compared to the aggregate costs of key employee retention programs approved in similarly sized chapter 11 cases.

10. Additionally, with respect to the Discretionary Pool, WTW reviewed its proposed terms and concluded that the total combined cost of the Non-Executive KERP and Discretionary Pool would still be below the 25th percentile of retention programs adopted by companies with the ranges of assets and revenues as set forth above. Further, the Discretionary Pool is reasonable and appropriate given the circumstances; the Debtors are cognizant of the uncertainty of these cases and do not know if certain individuals not currently included in the Non-Executive KERP may become necessary or vital to the Debtors' ultimate goals. I believe that the awards contemplated by the Non-Executive KERP are reasonable, market-based, and justified under the circumstances of these Chapter 11 Cases.

11. The awards under the Non-Executive KERP, both in cost per Non-Executive KERP Participant and as a percentage of the Debtors' assets, and in the aggregate, fall below those approved in recent, similarly sized chapter 11 cases, as seen below:

**Program Design – Details**
**Non-Executive Retention Examples (Award Value)**

| Company | Petition date | Industry | Pre-petition revenue | Pre-petition assets | Plan costs — Total plan cost | Plan costs — Cost as % of assets | Plan costs — prtcpnt | Per Plan participants | Payments as a % of Salary | Payout schedule | Retention period (months) | Average Award as % of Salary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Tops Holding II Corporation | Feb-18 | Food Retail | $ 2,483,859,000 | $ 1,000,000,000 | $ 3,000,000 | 0.30% | $ 26,087 | 115 | - | Installments | 10.3 | - |
| Bluestem Brands, Inc. | Mar-20 | Internet and Direct Marketing Retail | $ 1,707,000,000 | $ 514,200,000 | $ 1,700,000 | 0.33% | $ 34,000 | 50 | - | Lump sum | 6.0 | - |
| Cenveo, Inc. | Feb-18 | Commercial Printing | $ 1,507,948,000 | $ 870,017,000 | $ 885,000 | 0.10% | $ 3,149 | 281 | - | Lump sum | 7.2 | - |
| Real Industry, Inc. | Nov-17 | Aluminum | $ 1,324,600,000 | $ 628,800,000 | $ 1,300,000 | 0.21% | $ 4,333 | 300 | 20% | Lump sum | 4.4 | 20% |
| Gander Mountain Company Inc. | Mar-17 | Specialty Stores | $ 1,322,860,000 | $ 679,956,000 | $ 1,045,000 | 0.15% | $ 28,243 | 37 | 20% | Installments | 2.5 | 20% |
| Tuesday Morning Corporation | May-20 | General Merchandise Stores | $ 945,080,000 | $ 724,500,000 | $ 887,510 | 0.12% | $ 17,402 | 51 | 30% | Installments | 7.2 | 30% |
| Charlotte Russe Holding, Inc. | Feb-19 | Apparel Retail | $ 928,072,667 | $ 998,500,000 | $ 559,229 | 0.06% | $ 19,284 | 29 | 17% | Lump sum | 4.2 | 17% |
| RTW Retailwinds, Inc. | Jul-20 | Apparel Retail | $ 826,990,000 | $ 411,984,000 | $ 625,000 | 0.15% | $ 34,722 | 18 | 14% | Installments | 5.6 | 14% |
| Cloud Peak Energy Inc. | May-19 | Coal and Consumable Fuels | $ 738,573,000 | $ 882,328,000 | $ 1,397,874 | 0.16% | $ 25,887 | 54 | 50% | Installments | 9.0 | 50% |
| Speedcast International Limited | Apr-20 | Alternative Carriers | $ 722,320,000 | $ 588,740,000 | $ 3,996,608 | 0.68% | $ 45,416 | 88 | - | Installments | 14.3 | - |
| The McClatchy Company | Feb-20 | Publishing | $ 709,500,000 | $ 911,300,000 | $ 330,000 | 0.04% | $ 47,143 | 7 | - | Lump sum | 2.6 | - |
| Nine West Holdings, Inc. | Apr-18 | Apparel, Accessories and Luxury Goods | $ 695,190,000 | $ 412,600,000 | $ 655,000 | 0.16% | $ 12,843 | 51 | 28% | Installments | 11.5 | 28% |
| Aceto Corporation | Feb-19 | Health Care Distributors | $ 682,929,000 | $ 753,200,000 | $ 4,908,066 | 0.65% | $ 188,772 | 26 | - | Lump sum | 6.8 | - |

5

| Company | Petition date | Industry | Pre-petition revenue | Pre-petition assets | Total plan cost | Cost as % of assets | prtcpnt | Per Plan participants | Payments as a % of Salary | Payout schedule | Retention period (months) | Average Award as % of Salary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EXCO Resources, Inc. | Jan-18 | Oil and Gas Exploration and Production | $ 293,214,000 | $ 830,174,000 | $ 4,400,000 | 0.53% | $ 30,556 | 144 | - | Installments | 18.0 | - |
| Basic Energy Services, Inc. (2021) | Aug-21 | Oil and Gas Equipment and Services | $ 242,530,000 | $ 914,820,000 | $ 1,400,000 | 0.15% | $ 46,667 | 30 | 35% | Installments | n/a | 35% |
| Aegerion Pharmaceuticals, Inc. | May-19 | Biotechnology | $ 125,120,000 | $ 444,670,000 | $ 504,173 | 0.11% | $ 31,511 | 16 | 42% | Lump sum | 4.2 | 42% |
| WBS INC. | Apr-21 | Trading Companies and Distributors | $ 98,550,000 | $ 34,080,000 | $ 94,000 | 0.28% | $ 4,087 | 23 | - | Lump sum | 7.3 | - |
| Pernix Sleep, Inc. | Feb-19 | Pharmaceuticals | $ 92,400,000 | n/a | $ 894,000 |  | $ 49,667 | 18 | - | Installments | n/a | - |
| Orexigen Therapeutics, Inc. | Mar-18 | Pharmaceuticals | $ 75,287,000 | $ 183,747,000 | $ 3,115,000 | 1.70% | $ 47,197 | 66 | 25% | Lump sum | 12.0 | 25% |
| Techniplas, LLC | May-20 | Commodity Chemicals | $ 74,150,000 | $ 29,630,000 | $ 192,000 | 0.65% | $ 6,857 | 28 | 18% | Lump sum | 5.0 | 18% |
| Venoco, Inc. | Apr-17 | Oil and Gas Exploration and Production | $ 60,720,000 | $ 295,276,000 | $ 387,268 | 0.13% | $ 96,817 | 4 | - | Lump sum | 14.6 | - |
| Griddy Energy LLC | Mar-21 | Independent Power Producers and Energy Traders | $ 34,570,000 | $ 5,890,000 | $ 137,851 | 2.34% | $ 11,488 | 12 | 15% | Lump sum | 3.5 | 15% |
| Sancilio Pharmaceuticals Company, Inc. | Jun-18 | Pharmaceuticals | $ 24,819,450 | $ 37,419,520 | $ 354,200 | 0.95% | $ 10,418 | 34 | - | Lump sum | 2.1 | - |
| AtopTech, Inc. | Jan-17 | Electronic Manufacturing Services | $ 22,320,000 | n/a | $ 1,213,000 |  | $ 18,104 | 67 | - | Lump sum | 5.3 | - |
| Marbles Holdings, LLC | Feb-17 | Specialty Stores | $ 15,510,000 | n/a | $ 12,231 |  | $ 3,058 | 4 | 4% | Lump sum | 4.9 | 4% |
| ABC Carpet Co., Inc. | Sep-21 | Home furnishing Retail | $ 15,190,000 | $ 47,630,000 | $ 170,000 | 0.36% | $ 8,095 | 21 | 6% | Installments | n/a | 6% |
| Unilife Corporation | Apr-17 | Healthcare Supplies | $ 11,208,000 | $ 82,982,000 | $ 1,334,551 | 1.61% | $ 19,341 | 69 | - | Lump sum | 8.5 | - |
| Aralez Pharmaceuticals US Inc. | Aug-18 | Pharmaceuticals | $ 10,410,000 | n/a | $ 826,250 |  | $ 59,018 | 14 | 34% | Lump sum | 9.2 | 34% |
| Achaogen, Inc. | Apr-19 | Biotechnology | $ 8,728,000 | $ 28,340,000 | $ 1,606,455 | 5.67% | $ 61,787 | 26 | 42% | Lump sum | 13.4 | 42% |
| EMAS CHIYODA Subsea Limited | Feb-17 | Oil and Gas Equipment and Services | $ 3,330,000 | n/a | $ 602,000 |  | $ 18,813 | 32 | 25% | Installments | 4.0 | 25% |
| 75th Percentile | | | $ 804,885,750 | $ 830,174,000 | $ 1,399,469 | 0.65% | $46,354 | 63 | 34% | | 9.8 | 34% |
| 50th Percentile | | | $ 183,825,000 | $ 514,200,000 | $ 886,255 | 0.28% | $25,987 | 31 | 25% | | 6.8 | 25% |
| 25th Percentile | | | $ 27,257,088 | $ 82,982,000 | $ 416,494 | 0.15% | $11,826 | 19 | 17% | | 4.3 | 17% |

12. The total cost of the Non-Executive KERP is modest on a per-employee basis, and is reasonable when compared to the costs of employee retention programs approved in other similar chapter 11 cases. The Non-Executive KERP's total cost, as a percentage of the Debtors' assets is 0.03%, while the median KERP plan in those other chapter 11 cases constituted 0.28% of a debtor's assets. Accordingly, the Non-Executive KERP is a reasonable, market-based approach, and is justified under the circumstances.

13. I further believe that the other terms of the Non-Executive KERP are within the range of common market practice, including (i) the number of the Debtors' Non-Executive

6

KERP Participants, (ii) the Debtors' proposed form of payment, (iii) the proposed quarterly payments of equal installments, and (iv) the retention requirements for each Non-Executive KERP Participant to receive their respective payment.

14. Based on the foregoing, my experience, and the terms and provisions of the Non-Executive KERP, it is my position that the Non-Executive KERP is reasonable, appropriately designed, and narrowly tailored to motivate and retain the Non-Executive KERP Participants for the benefit of the Debtors, their economic stakeholders, and the successful administration of these Chapter 11 Cases.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: November 15, 2022
       Chicago, Illinois

                                                  */s/ Douglas Friske*
                                                  Douglas Friske
                                                  Managing Director, Willis Tower
                                                  Watson US LLC