**<u>Exhibit C</u>**

**Sullivan Declaration**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------------- x
                                                              :
In re                                                         :        **Chapter 11**
                                                              :
**KABBAGE, INC. d/b/a KSERVICING, *et al.*,**                 :        **Case No. 22-10951 (CTG)**
                                                              :
                                                              :
Debtors.[1]                                                   :        **(Jointly Administered)**
                                                              :
------------------------------------------------------------- x

**DECLARATION OF MARC SULLIVAN IN**
**SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF AN ORDER**
**(I) APPROVING DEBTORS' RETENTION PROGRAM FOR CERTAIN**
**NON-EXECUTIVE EMPLOYEES AND (II) GRANTING RELATED RELIEF**

I, Marc Sullivan, hereby declare under penalty of perjury, to the best of my knowledge, information, and belief, that:

1.      I am the Chief Financial Officer (the "**CFO**") to Kabbage, Inc. d/b/a Kservicing and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").[2]

2.      Except as otherwise indicated, all statements in this declaration (the "**Sullivan Declaration**") are based on my personal experience and knowledge, my opinions, my discussions with the Debtors' management and professionals, and my review of the relevant

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2]  Contemporaneously herewith, the Debtors will file the motion to employ and retain Phoenix Executive Services, LLC to provide a Chief Financial Officer and designating me as the Chief Financial Officer (the "**Application**").

documents.  If called to testify, I could and would testify to each of the facts and opinions set forth herein.  I submit this Declaration in support of the *Motion of Debtors for Entry of Order (I) Approving Debtors' Retention Program For Certain Non-Executive Key Employees, and (II) Granting Related Relief* (the "**Motion**").[3]

### Qualifications

3.      I am a Managing Director of Phoenix Executive Services, LLC, located at 3340 Peachtree Road NE, Tower Place 100, Suite 1800, Atlanta, GA 30326.  I have over 24 years of experience advising the boards of directors and senior management of troubled companies and creditor constituencies in both operational and financial restructurings, and providing interim management services to both healthy and distressed companies.  I have worked in a wide variety of industries, including manufacturing and distribution, chemicals, energy, building materials, commercial real estate, financial services, professional services, medical devices and services, pharmaceuticals, technology, media, telecom, and entertainment.[4]

4.      Since I began working with the Company, I, in coordination with the rest of the management team, have familiarized myself with the Debtors' operations and compensation practices, including the KERP.  In connection with this process, it is my understanding that AlixPartners, Willis Tower Watson ("**WTW**"), and Weil, Gotshal & Manges ("**Weil**") have worked closely with members of the Debtors' senior management team to ensure the Non-Executive KERP is appropriately designed and within the range of approved programs in other similarly sized chapter 11 Cases.

---

[3] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

[4] Additional information regarding my experience and qualifications can be found in the Application.

## Non-Executive KERP

### I. Development of the Non-Executive KERP

6.      It is my understanding that, prior to the commencement of these Chapter 11 Cases, the Debtors maintained a prepetition employee bonus program (the "**Employee Bonus Program**") in the ordinary course of business.  As part of the Employee Bonus Program, employees were eligible to receive (i) annual discretionary bonuses based on performance, and (ii) referral bonuses upon referring someone who was hired into a full-time position.[5]  It is my understanding that the Employee Bonus Program was an essential component of the Debtors' employees' aggregate compensation and was important in providing market-based compensation. Further, it is my understanding that the Employee Bonus Program encouraged retention among the Debtors' employees, which minimized costs associated with attrition, and also ensured for continuity in the Debtors' business operations.

7.      It is my understanding that, in the summer of 2022, with the goal of retaining certain key employees during the Debtors' wind down process, the Debtors' management, in consultation with AlixPartners, WTW, and Weil, undertook a review of their existing compensation programs to evaluate whether they were meeting their objectives of maintaining employee focus and retention.  In particular, I understand that the Debtors were focused on (i) ensuring that their interests and the interests of their key employees were aligned to maximize value, (ii) preventing the loss of key employees during the wind down process, including to competitors, and (iii) accounting for the potential loss or delay of any bonus payments in the event of a potential chapter 11 filing.  The Debtors' Board of Directors (the "**Board**"), following

---

[5]  For further details see *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Employee Benefits, and Other Compensation and (B) Maintain Employee Benefit Programs and Pay Related Obligations and (II) Granting Related Relief* [Docket No. 10].

the advice of its advisors, effectively replaced the Employee Bonus Program with the KERP for the Non-Executive KERP Participants.

8.      It is my understanding, that the Debtors, in consultation with their advisors, took a measured approach when developing the Non-Executive KERP and selecting the modest number of Non-Executive KERP Participants.  It is my understanding that the Non-Executive KERP Participants, who work across a wide variety of disciplines, were chosen because they are essential to the Debtors' operations and to the successful wind down of their business.

9.      The roles and titles of the Non-Executive KERP Participants are as follows: Corporate Controller, Manager, Legal Operations, Program Management Lead - Borrower Support, Senior Program Management Lead, Collections Manager, Program Management Lead, Associate Program Management Lead,[6] and Financial Operations Supervisor.

10.     The duties and responsibilities of these positions do not require that the Non-Executive KERP Participants participate in the Debtors' strategic management or direction, and many of their duties and scopes of authority are limited to tasks within particular divisions or departments.  Further, the Non-Executive KERP Participants generally do not attend senior management meetings, and do not regularly participate in meetings of the Board.  Additionally, none of the Non-Executive KERP Participants have discretionary control over any substantial budgetary amounts, or the ability to dictate Company policy.  Moreover, none of the Non-Executive KERP Participants were appointed by the Board, are a member of the Board, or had any say or input on any aspect of the KERP.

11.     It is my understanding, following WTW's analysis of the Non-Executive KERP, the Debtors and their advisors also evaluated the proposed terms, taking into account legal,

---

[6] Four (4) Non-KERP Participants have the title "Associate Program Management Lead."

RLF1 28239495V.1

business, and practical considerations.  Ultimately, Weil, AlixPartners, and WTW recommended that the Board review, consider, and approve the Non-Executive KERP.  The Board, following the advice of their advisors, effectively replaced the Employee Bonus Program with the Non-Executive KERP for the Non-Executive KERP Participants.

## II.  Business Justification for the Non-Executive KERP

12.    I believe the Non-Executive KERP is appropriately designed and narrowly tailored to retain the Non-Executive KERP Participants, boost employee morale in light of the uncertainty created by these Chapter 11 Cases, and mitigate the risk of employee attrition at this crucial juncture.  Employee retention is even more important in light of the fact that the Debtors are currently winding down their business.  At this stage in the wind down process, it would not be practical (if even possible) for the Debtors to attempt to recruit new personnel, and would require expending significant time and resources.  Particularly given that the Non-Executive KERP Participants' duties have expanded and now require additional responsibilities coupled with greater time commitment, I believe that the Non-Executive KERP is appropriate, justified, and critical to the success of their wind down efforts.

13.    It is my understanding the Non-Executive KERP was carefully designed through an approach that balanced the Debtors' goals with respect to performance and retention while adhering to market standards.  Further, in my experience, I believe that the payment levels under the Non-Executive KERP (including the Discretionary Pool) are reasonable and were determined based on an independent analysis performed by WTW.  According to the Debtors and their advisors, I understand the overall cost of the Non-Executive KERP is consistent with similar programs implemented by market peers, and is reasonable in light of the size of the Debtors' estates and the benefit to be gained from a successful wind down.  To receive and retain entitlement to future awards under the Non-Executive KERP, the Non-Executive KERP Participants must remain

5

in the Debtors' employ through the applicable quarter, which will ensure that the Debtors have the appropriate staff on hand to continue their operations, maximize value for their estates, and eventually wind down their loan servicing business.  I believe that failure to retain the Non-Executive KERP Participants would cause the Debtors' financial and operational performance during the Chapter 11 Cases to suffer.  Further, it would cause the Debtors to incur significant time and expense to hire and train replacement employees.

14.     Additionally, the Non-Executive KERP Participants each possess unique knowledge of the Debtors' business operations that they have developed over the course of their employment, which cannot be easily replaced or replicated, and are vital to these Chapter 11 Cases. Many of the Non-Executive KERP Participants have seen their workloads expand significantly as a result of these Chapter 11 Cases as, among other things, the Debtors have sought to address the ongoing concerns of various governmental agencies and regulators while servicing their underlying loan portfolios and planning for the wind down of their business.

15.     Based on the analysis conducted by the Debtors, WTW, AlixPartners, and Weil, and my independent business judgment, I believe that the Non-Executive KERP, including the Discretionary Pool, and making the remaining payments thereunder, is necessary to mitigate attrition, further the Debtors' goals in these Chapter 11 Cases, further an efficient and value maximizing wind down, and is a sound exercise of the Debtors' business judgment.

*[Remainder of page intentionally left blank]*

I declare under penalty of perjury that I have reviewed the Debtors' requests included in the Motion, and based on my experience, they are fair and reasonable and reflect the Debtors' exercise of prudent business judgment.

Dated: November 15, 2022
       Atlanta, Georgia

/s/ *Marc Sullivan*
Marc Sullivan
Chief Financial Officer
Kabbage, Inc. d/b/a KServicing