**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------------ x
:
In re : Chapter 11
:
KABBAGE, INC. d/b/a KSERVICING, *et al.*, : Case No. 22-10951 (CTG)
:
Debtors.[1] : (Jointly Administered)
:
: **Objection Deadline: Nov. 30, 2022 at 4:00 p.m. (ET)**
: **Hearing Date: Dec. 7, 2022 at 10:00 a.m. (ET)**
------------------------------------------------------------ x

**MOTION OF DEBTORS FOR ENTRY OF ORDER
(I) AUTHORIZING DEBTORS TO EMPLOY AND RETAIN
PHOENIX EXECUTIVE SERVICES, LLC TO PROVIDE A CHIEF
FINANCIAL OFFICER AND (II) DESIGNATING MARC SULLIVAN AS
DEBTORS' CHIEF FINANCIAL OFFICER, EFFECTIVE AS OF OCTOBER 24, 2022**

Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**"), respectfully represent as follows in support of this motion (the "**Motion**"):[2]

**Relief Requested**

1. By this Motion, pursuant to sections 363(b) and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors request entry of an order (i) authorizing the Debtors to employ and retain Phoenix Executive Services, LLC ("**Phoenix**") to provide the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] The facts and circumstances supporting the relief requested herein are set forth in the Sullivan Declaration (as defined herein).

Debtors with a Chief Financial Officer ("**CFO**") and (ii) designating Marc Sullivan as CFO to the Debtors, in each case, effective as of October 24, 2022 (the "**Engagement**").

2. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

3. The Debtors request that the Court approve the Engagement in accordance with the terms and conditions set forth in the engagement letter between the Debtors and Phoenix, dated November 11, 2022, a copy of which is annexed hereto as **Exhibit B** (the "**Engagement Letter**").

4. In support of this Motion, the Debtors submit the declaration of Marc Sullivan, which is annexed hereto as **Exhibit C** (the "**Sullivan Declaration**").

## Jurisdiction

5. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

6. On October 3, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors are authorized to continue to operate their business as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

7.  Pursuant to Bankruptcy Rule 1015(b), the Chapter 11 Cases are being jointly administered under the above-captioned case.

8.  Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Deborah Rieger-Paganis in Support of Debtors' Chapter 11 Petitions and First-Day Relief* [Docket No. 13].

### Phoenix's Engagement

9.  In consideration of the complexity of their business, the size of their loan portfolio, and their exigent need to fill the role of CFO due to a vacancy,[3] the Debtors have determined that the leadership services of an experienced CFO are necessary to support the Debtors' financial operations and will substantially enhance their attempts to maximize the value of their estates.  The Debtors conferred with members of the Board of Directors of Kabbage, Inc. d/b/a KServicing (the "**Board**") and decided to retain Phoenix and Marc Sullivan to begin services as of October 24, 2022 (the "**Retention Date**").  Mr. Sullivan commenced providing services to the Debtors on the Retention Date, including engaging in necessary onboarding to ensure a smooth transition to CFO.

10. Mr. Sullivan is well qualified to act on the Debtors' behalf, given his finance background coupled with this extensive knowledge and expertise with respect to chapter 11 proceedings.  On October 26, 2022, the Board formally appointed Mr. Sullivan as CFO, to take

---

[3] Effective as of November 10, 2022, David Walker, the Company's interim CFO, formally resigned from his position.

effect upon the resignation of Mr. David Walker. Pursuant to the terms of the Engagement Letter, the CFO shall be subject to the direction of the CEO of the Company (the "**CEO**").

### Retention of Phoenix

11. The Debtors are familiar with the professional standing and reputation of Phoenix and Mr. Sullivan, who the Debtors understand and recognize have a wealth of experience in providing interim executives and managers to companies, including debtors and other interested parties in restructurings and reorganizations. Among numerous other engagements, Phoenix has provided interim executives to the following companies, *Carla's Pasta, Inc.*, *Phoenix Payment Systems, Inc.*, *AF Southeast, Inc.*, *YouFit Health Clubs, LLC*, *SAS Healthcare, Inc.*, *New England Motor Freight, Inc.*, *Piccadilly Restaurants LLC*, and *Orleans Homebuilders, Inc.*

12. Phoenix specializes in, among other things, interim management, executive leadership, liquidity management and forecasting, capital structure assessment, and operational due diligence services. Since 1985, Phoenix and its affiliates have provided hands-on financial and operational services to more than 1,600 transitional and/or distressed companies. Phoenix's interim management and executive leadership services include a wide range of activities, including developing or validating financial forecasts and business plans, monitoring and managing cash and cash flow, managing vendor and partner relationships, assessing and recommending cost-reduction strategies, and assisting with communications and negotiations with creditors.

13. Mr. Sullivan is a Managing Director of Phoenix and has over 24 years of experience advising the boards of directors and senior management of troubled companies and creditor constituencies in both operational and financial restructurings, providing interim management services to both healthy and distressed companies, and acting as liquidating trustee for liquidation trusts. He has worked in a wide variety of industries, including manufacturing and

distribution, chemicals, energy, building materials, commercial real estate, financial services, professional services, medical devices and services, pharmaceuticals, technology, media, telecom, and entertainment.

14. Over the course of his career, Mr. Sullivan has performed an array of executive management, consulting, and financial leadership services for a variety of different types of companies, and has a deep understanding of the economic, regulatory, operational, strategic, and financial factors that drive businesses, including those operating in chapter 11. Mr. Sullivan's prior experience includes a wide range of services and activities targeted at improving a company's financial position, including: (i) providing financial leadership to management and the boards of various companies, including companies in chapter 11; (ii) developing and validating financial forecasts and business plans; (iii) monitoring and managing cash and cash flow; (iv) managing vendor and partner relationships; (v) assisting with communications and negotiations with creditors; and (vi) providing testimony in chapter 11 proceedings, as needed. Specifically, Mr. Sullivan has served as the chief financial officer for: (i) a consumer products company with approximately $500 million of gross revenue with 2,000 employees and operations in 6 countries; and (ii) a private equity-owned advertising company with operations in 3 countries. Furthermore, Mr. Sullivan has served as chief restructuring officer, financial advisor, or advisor to the board of directors in the following chapter 11 cases: *In re Brahman Resource Partners, LLC*, Case No. 20-33697 (DRJ) (Bankr. S.D. Tex. July 26, 2020) and *In re Glover Corporation, Inc.*, Case No. 18-02770 (JNC) (Bankr. E.D.N.C. June 1, 2018). Such experience makes Mr. Sullivan the ideal candidate to advise the Debtors in connection with the Debtors' financial reporting and other related functions and to assist with the myriad issues that may arise in the operation of the Debtors' business and in these Chapter 11 Cases.

15. The Debtors believe that Mr. Sullivan has already developed significant relevant expertise and institutional knowledge regarding the Debtors' operations and the unique circumstances of these Chapter 11 Cases. For these reasons, Mr. Sullivan is both well qualified and uniquely suited to effectively and efficiently navigate matters that may arise in the context of these cases. Accordingly, the Debtors submit that the retention of Phoenix and the designation of Mr. Sullivan as CFO, on the terms and conditions set forth in the Engagement Letter, as may be modified by the Proposed Order, is necessary and appropriate, is in the best interests of the Debtors' estates, their creditors, and all other parties in interest, and should be granted in all respects.

## Scope of Services[4]

16. Subject to the Court's approval, the Debtors propose to retain Phoenix to provide the Debtors with a CFO on the terms and conditions set forth in the Engagement Letter.

17. Generally, the Engagement Letter contemplates that Phoenix will (i) provide executive leadership to the Debtors, and (ii) cause Mr. Sullivan, who will report directly to the CEO, to serve as CFO to the Debtors. The specific tasks that Mr. Sullivan will perform for the Debtors include, among other things, the following:

(a) Providing financial leadership to the Finance and Accounting functions staffed in Atlanta, GA;

(b) Overseeing the preparation of, monitoring, and periodically modifying the Company's monthly financial projections;

(c) Overseeing the preparation of monthly financial statements along with a comparison of monthly and YTD actual financial results versus budget;

---

[4] The summary of the Engagement Letter contained in this Motion is provided for purposes of convenience only. In the event of any inconsistency between the summary contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein. Capitalized terms used in this section but not otherwise defined herein or in the Sullivan Declaration shall have the meanings ascribed to them in the Engagement Letter.

RLF1 28245546v.1

(d) Overseeing the preparation of year-end financial statements for 2022 and the corresponding tax returns;

(e) Providing oversight with regard to daily cash management activities, including maximizing and forecasting collections and availability, and assisting the Company with prioritizing disbursements;

(f) Providing ongoing reporting to the management team and the Board;

(g) Assisting the Company, its bankruptcy counsel, and its financial advisors in its communications and negotiations with any creditors;

(h) Monitoring and managing vendor and partner relationships;

(i) With the assistance of the Company's financial advisor, overseeing, monitoring, and modifying the Company's cash flow forecasts and any required or requested bankruptcy-related budgets, on a periodic basis in order to determine and/or validate the sources and uses of cash, borrowing availability (if applicable), and the timing and magnitude of financing necessary to support the Company;

  i. Developing and maintaining a "Scorecard" to monitor the actual versus forecasted results

(j) Working with the Company's restructuring counsel and financial advisor to assist in the preparation of the Monthly Operating Reports (MORs);

(k) Assisting the Company's management to coordinate the work of outside advisors;

(l) If requested, providing testimony in any Chapter 11 proceeding as needed; and

(m) Other duties as mutually agreed

(collectively, the "**Services**").

18. The Debtors believe that the Services are necessary to enable the Debtors to maximize the value of their estates.

## No Duplication of Services

19. The Debtors believe that the Services will be complementary to and not duplicative of the services to be performed by other professionals retained by the Debtors in these Chapter 11 Cases. Specifically, Mr. Sullivan will provide executive and financial leadership

7

services as CFO to the Debtors, as opposed to the advisory services performed by certain of the Debtors' other retained professionals.

20.     Phoenix will coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services where possible.

### Professional Compensation and Expense Reimbursement

21.     In consideration of the Services, subject to Court approval, the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules, applicable United States Trustee ("**U.S. Trustee**") guidelines, and any applicable orders of the Court, the Debtors have agreed to pay Phoenix the compensation set forth in the Engagement letter (the "**Fee Structure**").  The principal terms of the Fee Structure are as follows:

(a) Monthly Fee.  As agreed by the parties, Phoenix may be compensated for providing executive leadership services to the Debtors in the form of a fixed fee of $72,500 per month (the "**Monthly Fee**").

(b) Travel Time.  Phoenix has agreed to waive travel time fees incurred in connection with services rendered to the Debtors in these cases.

(c) Expense Reimbursement.  Phoenix shall be entitled to reimbursement of all reasonable expenses incurred in connection with services rendered to the Debtors pursuant to the Engagement (*e.g.*, actual out-of-pocket expenses incurred in connection with the Engagement) and for weekly or monthly fees for compensation of administrative and support time and expenses (*e.g.*, computer, email, administrative staff time, etc.).  Phoenix shall, in addition, be reimbursed by the Debtors for the reasonable fees and expenses of Phoenix's legal counsel incurred in connection with the negotiation and performance of the Engagement Letter and the matters completed thereby, including with respect to counsel retained, either by Phoenix or the Debtors, to defend against any Claim.[5]

---

[5] As defined in the Engagement Letter.

**Indemnification**

22. As part of the overall compensation payable to Phoenix under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification and contribution provisions described in the Engagement Letter (the "**Indemnification Provisions**"). As more fully set forth in the Engagement Letter, the Indemnification Provisions provide that the Debtors will indemnify and hold harmless Phoenix and its affiliates and their respective directors, principals, officers, employees, attorneys, independent contractors, and other agents appointed by any of the foregoing (collectively, the "**Indemnified Parties**"), at a minimum, to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Company's bylaws, its certificate of incorporation, by contract or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to Phoenix or its employees and/or agents. Specifically, the Debtors have agreed to indemnify Phoenix against any losses, claims, damages, judgments, assessments, costs and other liabilities, in each case, related to, arising out of, or in connection with the Services rendered or to be rendered by the Indemnified Parties pursuant to the Engagement Letter or any Indemnified Party's actions or inactions in connection with any such Services; *provided*, that the Debtors will not waive nor be responsible for any Claim or related expenses of the Indemnified Parties that are determined by a final judgment of a court of competent jurisdiction to have resulted from the Indemnified Parties' gross negligence, bad faith, self-dealing, or willful misconduct in connection with the Services pursuant to the Engagement Letter. The Debtors and Phoenix believe that the Indemnification Provisions, as modified by the Proposed Order and any other orders of the Court, are customary and reasonable for firms providing similar interim management and advisory services.

23. The terms of the Engagement Letter, including the Indemnification Provisions, were fully negotiated between the Debtors and Phoenix at arm's-length, and the

Debtors respectfully submit that the Indemnification Provisions, as modified by the Proposed Order, are customary, reasonable, and in the best interests of the Debtors, their estates, and their creditors. Accordingly, the Debtors respectfully request that the Court approve the Indemnification Provisions as set forth in the Engagement Letter and as modified by the Proposed Order.

### Fees and Reporting

24. If the Court approves the relief requested herein, Phoenix will be retained to provide the Debtors with Mr. Sullivan as CFO pursuant to section 363 of the Bankruptcy Code. Because Phoenix is not being employed as a professional under section 327 of the Bankruptcy Code, Phoenix will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, Phoenix will file with the Court, and provide to the Debtors, the U.S. Trustee, and any official committee(s) appointed in these Chapter 11 Cases, reports of compensation earned and expenses incurred on a monthly basis. Such compensation and expenses shall be subject to Court review in the event that an objection is filed.

25. In the 90 days prior to the Petition Date, Phoenix received no payments or other compensation from the Debtors.

26. Following the Petition Date, the Debtors paid Phoenix a retainer in the amount of $72,500 (the "**Retainer**"). The Debtors and Phoenix have agreed that the Retainer shall be applied or credited to amounts due from the Debtors, but will be returned to the Debtors once all amounts due are paid in full, subject to a holdback to fund any indemnification claims.

### No Adverse Interest

27. To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Sullivan Declaration, Phoenix: (a) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the

U.S. Trustee or any person employed in the Office of the U.S. Trustee; and (b) does not hold any interest adverse to the Debtors' estates.

28.    Although the Debtors submit that the retention of Phoenix is not governed by section 327 of the Bankruptcy Code, the Debtors attach the Sullivan Declaration, which discloses, among other things, any relationship that Phoenix or Mr. Sullivan has with the Debtors, their significant creditors, or other significant parties in interest reasonably known to Phoenix. Although not required for this retention, other than as set forth in the Sullivan Declaration, the Debtors submit that Phoenix is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

29.    In addition, as set forth in the Sullivan Declaration, if any new material facts or relationships are discovered or arise, Phoenix will promptly provide the Court with a supplemental declaration.

## Relief Requested Should Be Granted

30.    The Debtors seek to retain and employ Phoenix to provide the Debtors with a CFO pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, effective as of October 14, 2022. Under applicable case law, in this and other jurisdictions, if the Debtors' proposed use of their assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable exercise of the Debtors' business judgment, such use should be approved. *See, e.g., In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (requiring the debtor "show that a sound business purpose justifies such actions"); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code); *see also United Retired Pilots Benefit Protection Ass'n v. United Airlines, Inc. (In re UAL Corp.)*, 443 F.3d 565, 571 (7th Cir. 2006); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)*; Comm. of Equity*

11

*Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.").

31.     Accordingly, the retention of interim corporate officers and other temporary employees is proper under section 363 of the Bankruptcy Code. This Court has authorized retention of officers utilizing this provision of the Bankruptcy Code on numerous occasions. *See, e.g.*, *In re GT Real Estate Holdings, LLC*, Case No. 22-10505 (KBO) (Bankr. D. Del. July 18, 2022) (authorizing retention and appointment of chief restructuring officer and additional personnel); *In re BHCosmetics Holding LLC*, Case No. 22-10050 (CSS) (Bankr. D. Del. Feb. 7, 2022) (authorizing retention and appointment of chief restructuring officer, co-chief executive officer and additional personnel); *In re Pipeline Foods, LLC*, Case No. 21-11002 (KBO) (Bankr. D. Del. Aug. 9, 2021) (authorizing retention and appointment of chief restructuring officer and additional personnel); *In re Paddock Enters., LLC*, Case No. 20-10028 (LSS) (Bankr. D. Del. May 26, 2020) (authorizing retention and appointment of chief restructuring officer); *In re Quorum Health Corp.*, Case No. 20-10766 (KBO) (Bankr. D. Del. May 6, 2020) (authorizing retention and appointment of chief restructuring officer and additional personnel); *In re Cosi, Inc.*, Case No. 20-10417 (BLS) (Bankr. D. Del. Mar. 31, 2020) (authorizing the continued retention of chief restructuring officer); *In re Forever 21, Inc.*, Case No. 19-12122 (KG) (Bankr. D. Del. Nov. 4, 2019) (authorizing retention and appointment of chief restructuring officer and additional personnel); *In re Furie Operating Alaska, LLC*, Case No. 19-11781 (LSS) (Bankr. D. Del. Nov. 1, 2019) (authorizing retention and appointment of interim chief operating officer and additional personnel); *In re Blackhawk Mining LLC*, Case No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019) (authorizing retention and appointment of chief restructuring officer); *In re The NORDAM Grp.,*

*Inc.*, Case No. 18-11699 (MFW) (Bankr. D. Del. Aug. 28, 2018) (authorizing retention and appointment of interim chief restricting officer and additional personnel).

32. In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (citations omitted); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

33. The Debtors believe that the retention of Mr. Sullivan as CFO is a sound exercise of their business judgment and is in the best interests of all parties in interest in these Chapter 11 Cases. The Debtors believe that Mr. Sullivan is well qualified and able to act on the Debtors' behalf as well as provide effective financial leadership services, due to his extensive experience as a senior officer for many troubled companies across various industries. Mr. Sullivan has indicated a willingness to act on behalf of the Debtors and to subject himself to the jurisdiction and supervision of the Court. Further, as noted herein, the Debtors have an exigent need for the role of CFO to be filled in a timely manner, so as to avoid potential disruptions to their business operations.

34. Based on the foregoing, the Debtors submit that the retention of Phoenix and Mr. Sullivan, on the terms set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interest of the Debtors' estates, their creditors, and other parties in interest and should be granted.

## Notice

35. Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) the Federal Reserve Bank; (d) Customers Bank; (e) Cross River Bank; (f) the United States Department of Justice; (g) the Federal Trade Commission; (h) the Small Business Administration; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the United States Attorney's Office for the District of Delaware; and (l) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"). The Debtors believe that no further notice is required.

## No Prior Request

36. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: November 16, 2022
       Wilmington, Delaware

                                          /s/ *Matthew P. Milana*
                                          RICHARDS, LAYTON & FINGER, P.A.
                                          Daniel J. DeFranceschi, Esq. (No. 2732)
                                          Amanda R. Steele (No. 5530)
                                          Zachary I. Shapiro (No. 5103)
                                          Matthew P. Milana (No. 6681)
                                          One Rodney Square
                                          920 North King Street
                                          Wilmington, Delaware 19801
                                          Telephone: (302) 651-7700
                                          E-mail: defranceschi@rlf.com
                                                      steele@rlf.com
                                                      shapiro@rlf.com
                                                      milana@rlf.com

                                          -and-

                                          WEIL, GOTSHAL & MANGES LLP
                                          Ray C. Schrock, P.C. (admitted *pro hac vice*)
                                          Candace M. Arthur (admitted *pro hac vice*)
                                          Natasha S. Hwangpo (admitted *pro hac vice*)
                                          Chase A. Bentley (admitted *pro hac vice*)
                                          767 Fifth Avenue
                                          New York, New York 10153
                                          Telephone:   (212) 310-8000
                                          E-mail:      ray.schrock@weil.com
                                                             candace.arthur@weil.com
                                                             natasha.hwangpo@weil.com
                                                             chase.bentley@weil.com

*Attorneys for Debtors and Debtors in Possession*