# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Candace M. Arthur**
+1 (212) 310-8324
candace.arthur@weil.com

BY E-FILING

November 25, 2022

Hon. Craig T. Goldblatt
United States Bankruptcy Court
District of Delaware
824 North Market Street
3rd Floor, Courtroom 7
Wilmington, DE 19801

**Re: In re Kabbage, Inc. d/b/a KServicing, *et al*., Case No. 22-10951 (Jointly Administered), Docket No. 232**

Dear Judge Goldblatt:

We are writing to inform the Court that Customers Bank ("**CB**") has failed to pay Kabbage, Inc. d/b/a KServicing ("**KServicing**"), a debtor in the above-captioned cases (together with the other debtors, the "**Debtors**"), the full amount owed to it under the *Settlement and Release Agreement*, dated October 27, 2022 (the "**Settlement Agreement**"), which was approved by order of the Court on November 9, 2022 [Docket No. 232] (the "**Settlement Order**").[1] The Debtors intend to file a motion seeking relief to have the Settlement Order enforced and CB required to remit the full Settlement Payment. In that regard, the Debtors are at this time requesting a status conference (the "**Status Conference**") to discuss this issue with the Court and also, if appropriate, to discuss scheduling in connection with any such motion. The Debtors understand that the Court has availability on November 29, 2022, at 1:30 p.m. (ET), for such a status conference. Prior to filing this letter with the Court, the Debtors informed counsel to CB of their intent to file this letter and request the Status Conference.

As the Court is aware, at the heart of the 9019 Motion[2] was KServicing's receipt of approximately $23.2 million in cash, as part of an agreed upon aggregate Settlement Amount of $58 million to resolve, among other things, the outstanding $65.5 million receivable due from CB. The approximately $23.2 million cash component of the Settlement Amount was openly and repeatedly discussed in the 9019 Motion, the Milner

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

[2] *Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Settlement Agreement Between KServicing and Customers Bank and (II) Granting Related Relief* ("**9019 Motion**") [Docket No. 172].

Judge Goldblatt  
November 25, 2022  
Page 2

Weil, Gotshal & Manges LLP

Declaration,[3] and on the record at the hearing on the 9019 Motion,[4] without any objection from CB. *See* 9019 Motion at 2, ¶ 1 ("The Settlement Agreement reflects a comprehensive resolution of the various Disputes between the Parties and will result in … an approximately $23 million cash infusion to the Debtors…"); *id.* at 7, ¶ 17 ("The Settlement Payment is expected to be approximately $23 million."); Milner Declaration at 6, ¶ 10 ("[T]he incremental cash payment provided under the Settlement Agreement of approximately $23.2 million."); *id.* at 6, ¶ 11 ("[T]he Parties agreed to resolve the Disputes by, among other things (i) CB paying the Company approximately $23.2 million..."); Nov. 7 Hr'g Tr. at 32:11–14 (Ms. Milner: "Customers Bank owes us a total of $65.5 million; $34 million of that we withheld. That $23.2 million that they are going to write us a check for immediately helps us to get about 90 percent of the total amount of the claim.").

Importantly, the Settlement Agreement also sets forth the three main amounts that are needed to calculate the Settlement Payment and in each instance the amounts set forth in the Settlement Agreement reflect what "CB contends" to be true, and results in a Settlement Payment of no less than approximately $23.2 million. *See* Settlement Agreement at §§ 1(C); 1(E).

Unfortunately, CB is continuing its practice of withholding funds from KServicing by only paying $20,499,683. Despite the clearly anticipated cash payment of at least $23.2 million and constant communication between the Parties since October 31st in connection with efforts to reconcile the Disputed KServicing Holdbacks amount, CB unilaterally determined to wire $19,469,355 to KServicing on November 14th and then unilaterally increased its payment by just over $1 million on November 15th. CB had never previously provided KServicing with any figures reflecting the significantly decreased cash payment, or any backup data for that amount.

Not only has CB paid significantly less than the $23.2 million that the Parties contemplated and what the Debtors' estates and stakeholders expected, but it is now clear that the full amount owed to KServicing under the Settlement Agreement is $23,780,786.63.

The Settlement Agreement defines the "Settlement Payment" to be made by CB as "the Settlement Amount [of $58 million] *less* the amount of the Disputed KServicing Holdbacks as of the Petition Date." Settlement Agreement §§ 1(G); 1(H). The "Disputed KServicing Holdbacks" is defined to comprise two separate types of holdbacks: (1) the Disputed KServicing Fee Holdback and (2) the Disputed KServicing Remittance Holdback. Settlement Agreement § 1(D). The "Disputed KServicing Remittance Holdback" in turn itself has two components: (i) funds "collected from borrowers that KServicing is required to remit

---

[3] *Declaration of Laquisha Milner in Support of Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Settlement Agreement Between KServicing and Customers Bank and (II) Granting Related Relief* ("**Milner Declaration**") [Docket No. 211].

[4] Transcript of Hearing before the Hon. Craig T. Goldblatt, U.S. Bankruptcy Judge, November 7, 2022 ("**Nov. 7 Hr'g Tr.**").

Judge Goldblatt  
November 25, 2022  
Page 3

**Weil, Gotshal & Manges LLP**

to CB[,]" and (ii) funds "held by KServicing on account of cancelled loans." Settlement Agreement § 1(E). These Disputed KServicing Holdbacks consist of amounts that CB contended KServicing had received but owed to CB under the terms of the Parties' prior agreements.

The Settlement Agreement contains a provision that requires the Parties to act in good faith to reconcile the applicable amounts. The "Reconciliation" provision states:

> "Following the execution of this Agreement through the Effective Date, the Parties shall work together in good faith to promptly reconcile the amounts of the Disputed KServicing Fee Holdback and the Disputed KServicing Remittance Holdback as of the Petition Date to determine the appropriate amount of the Settlement Payment." Settlement Agreement § 3(A).

The Effective Date is defined as "the date on which the Bankruptcy Court approves this Agreement[,]" Settlement Agreement § 2, which occurred upon entry of the Settlement Order on November 9, 2022.

Starting on October 31, 2022, CB and KServicing met three times a day for hours at a time in connection with the purported reconciliation process. Despite KServicing running multiple reports and providing onerous requested deliverables—including data sets CB requested from multiple sources, reports generated by AmEx, banking records dating back from loan origination, and voluminous loan reports—at no point did CB submit any valid basis for paying less than it originally contended in the Settlement Agreement would be owed to the Debtors. In fact, neither when it paid KServicing $20,499,683 on November 15th, nor at any time during the reconciliation process, did CB provide KServicing with its own data sets, work product, or any basis for materially changing its position on what it contended was the correct amount of the Disputed KServicing Holdbacks, rendering the reconciliation process a one-sided effort by KServicing to meet CB's ever-shifting and excessive demands.

CB has apparently taken the position that it had sole authority to determine whether the reconciliation between the Parties was satisfactorily completed by the Effective Date and that it had the unilateral ability to decide the amount of the Settlement Payment even if that amount is incorrect. Neither the express language of the reconciliation provision or the intent of the Parties supports this position. The reconciliation provision of the Settlement Agreement does not state that if the reconciliation is not complete by the Effective Date that reconciliation must end and that CB can pay whatever amount it wants, nor does that provision in any way alter the requirement that CB pay the correct amount pursuant to the formula set forth in the Settlement Agreement. Instead, the Settlement Agreement provides that the "Reconciliation" was "to determine the *appropriate* amount of the Settlement Payment" through the Parties working "together in good faith" to reconcile the amounts of the Disputed KServicing Holdbacks.

To the extent necessary at a further evidentiary hearing, KServicing is prepared to set forth the calculation underlying the $23,780,786.63 Settlement Payment CB owes and the backup to that calculation. The high level calculation of that amount is as follows:

Judge Goldblatt  
November 25, 2022  
Page 4

Weil, Gotshal & Manges LLP

| Total Settlement Amount | $58,000,000 |
|---|---|
| LESS ||
| Disputed KServicing Fee Holdback | ($8,317,023.23) |
| Disputed KServicing Remittance Holdback (Total of A and B below) | ($25,902,190.14) |
|    A. Funds on Account of Cancelled Loans | ($1,677,192.00) |
|    B. Funds Collected from Borrowers | ($24,224,998.14) |
| EQUALS ||
| **Total Payment Owed to KServicing** | <u>$23,780,786.63</u> |

As KServicing understands it, there is no dispute as to the Disputed KServicing Fee Holdback amount of $8,317,023 (approximately the same amount CB contended was accurate in the Settlement Agreement). There should also be no dispute as to the Funds on Account of Cancelled Loans of $1,677,192. Notably, it was CB that first identified to KServicing that the amount attributed to Cancelled Loans should be $1,677,192 and not the higher figure that KServicing initially provided early in the reconciliation process of $3,617,304. While KServicing was in the process of confirming CB's contention through use of the SBA's data, CB cut off discussion and included in its "final" payment calculation $3,617,304 for this category. CB's use of the $3,617,304 figure that it knows is wrong in order to reduce its payment to KServicing is a violation of the Settlement Agreement. Similarly, with respect to the Funds Collected from Borrowers category, KServicing had been working to reconcile voluminous materials and exchanging information with CB when CB simply cut off all discussion and, with no evidentiary support, used amounts that resulted in a substantially reduced payment to KServicing.

Further underscoring that CB is in breach of the Settlement Order, after the deadline to remit the Settlement Payment CB admitted that it was "mistaken" when calculating $19,469,355 as the payment and given its mistake it revised that figure by over $1 million the next day, to $20,499,683, and remitted the additional amounts to KServicing. Although it remains unclear as to how CB ultimately arrived at its arbitrary Settlement Payment amount, it is evident that it cherry-picked data in an effort to deprive KServicing of the full amount of the Settlement Payment. Indeed, CB's outside counsel stated by email on November 15th that CB knew the data it used to calculate this amount "was incomplete," but that CB "used it to calculate the Settlement Payment" anyway.

Judge Goldblatt
November 25, 2022
Page 5

**Weil, Gotshal & Manges LLP**

KServicing has worked diligently since the execution of the Settlement Agreement to reconcile its data to finalize the relevant numbers – again, numbers CB had contended were accurate when it executed the Settlement Agreement – and it believed CB would do the same. On Wednesday, November 9th (the Effective Date), KServicing representatives including, among others, Salim Kafiti, KServicing's Deputy General Counsel, and Donna Evans, KServicing's Senior Director of Operations, spoke by phone with CB's General Counsel, Andrew Sachs, who was included on most of the Parties' correspondence during the reconciliation process, and during such conversation Mr. Sachs told KServicing's representatives that because this Court had just issued its order approving the Settlement Agreement, and CB had three days to make payment by the terms of the Settlement Agreement (§ 8), the Parties would have the weekend to continue reconciling, together, the figures needed to calculate the Settlement Payment amount. Mr. Sachs' representation that the Parties would use the weekend to continue their coordinated reconciliation efforts was contrary to CB's later position articulated by its counsel on November 15th, in which counsel informed KServicing that the reconciliation process "had already ceased, per the terms of the final Settlement Agreement" on November 9th.

The Parties had also continued conferring by email into the evening on November 9th concerning the figures they had exchanged, with a CB representative stating that CB would "provide feedback" on one of KServicing's data files "by the end of the day tomorrow"—November 10th. But the only further written correspondence CB sent KServicing after November 9th was to discuss wire instructions and notify KServicing of its payment amount.

We look forward to discussing this with the Court and obtaining the necessary and appropriate relief for the Debtors and their estates.

Respectfully Submitted,

*/s/Candace M. Arthur*

Candace M. Arthur

cc:  Ray C. Schrock, P.C. (Weil, Gotshal & Manges LLP)
　　Natasha S. Hwangpo, Esq. (Weil, Gotshal & Manges LLP)
　　Theodore E. Tsekerides, Esq. (Weil, Gotshal & Manges LLP)
　　Richard W. Slack, Esq. (Weil, Gotshal & Manges LLP)
　　Jeremy M. Sternberg. Esq. (Holland & Knight LLP)
　　John Monagahn, Esq. (Holland & Knight LLP)
　　William A. Hazeltine, Esq. (Sullivan Hazeltine Allinson LLC)