# Holland & Knight

10 St. James Avenue | Boston, MA 02116 | T 617.523.2700 | F 617.523.6850
Holland & Knight LLP | www.hklaw.com

Jeremy M. Sternberg
+1 617-854-1476
Jeremy.Sternberg@hklaw.com

BY E-FILING

November 28, 2022

Hon. Craig T. Goldblatt
United States Bankruptcy Court
District of Delaware
824 North Market Street
3rd Floor, Courtroom 7
Wilmington, DE  19801

      Re:     <u>In re Kabbage, Inc. d/b/a KServicing, et al., Case No. 22-10951</u>

Dear Judge Goldblatt:

We write on behalf of our client Customers Bank ("CB") in response to the letter filed with the Court after hours on Friday, November 25, 2022 [Dkt No. 287].  That letter erroneously accuses CB of not paying the correct Settlement Amount called for by the Settlement Agreement as approved by the Court on November 9, 2022.  The letter also states at p. 4 that "it remains unclear as to how CB ultimately arrived at its arbitrary Settlement Payment amount. . ."  Not so.

CB clearly and transparently communicated exactly how it calculated the Settlement Payment in strict accordance with the formula provided in the Settlement Agreement.  Attached hereto as **Exhibit A** is the Reconciliation Statement that CB provided to KServicing on November 15, 2022 in connection with the Settlement Payment made by CB.  The Reconciliation Statement is neither unclear nor arbitrary.  Moreover, at the same time, CB provided KServicing's counsel with an explanation for each line item of the Reconciliation Statement that made it abundantly clear that the figures were drawn directly from documents and assertions that KServicing provided during the reconciliation process called for by the Settlement Agreement.   That explanation is attached hereto as **Exhibit B**.

In short, KServicing is trying to use its own misapprehension and/or misdirection to redo an agreement to which CB has scrupulously adhered.

Atlanta | Austin | Boston | Century City | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Fort Worth
Houston | Jacksonville | Los Angeles | Miami | New York | Orange County | Orlando | Philadelphia
Portland | Richmond | San Francisco | Stamford | Tallahassee | Tampa | Tysons
Washington, D.C. | West Palm Beach

Algiers | Bogotá | London | Mexico City | Monterrey

Hon. Craig T. Goldblatt
November 28, 2022
Page 2

A short background on the Settlement Agreement is important because KServicing's description is distorted at best. The Settlement Agreement, which was approved by this Court in its November 9, 2022 Order (I) Authorizing And Approving The Settlement Agreement Between K Servicing And Customers Bank And (II) Granting Related Relief [Dkt. No. 232] (the "Order"), is attached hereto as **Exhibit C.**

Turning first to the language of the Order, it, appropriately, nowhere states the amount of money that is to be paid by CB to KServicing. Rather, the Order authorizes the Debtors to enter into the Settlement Agreement, and to "take all actions, necessary to immediately continue and fully implement the Settlement Agreement . . ." The Order also authorizes the Debtors and CB "to take all actions necessary or appropriate to carry out the relief granted in [the] Order." The authority to carry out the terms of the approved Settlement Agreement included the authority to determine the amount to be paid by CB to KServicing according to a formula in the Settlement Agreement, namely $58 million "less the amount of the Disputed KServicing Holdbacks as of the Petition Date." *See* paragraphs 1(G) and 1(H) of the Settlement Agreement. Presumably for this very reason each and every reference by the Debtors in their 9019 Motion [Dkt No. 172] to the amount the Debtors were to receive, including each reference to the 9019 Motion quoted in the second paragraph of their letter to the Court, was preceded by the adverb "approximately." Despite their current protestations, the Debtors knew that the ultimate payment was to be the result of a reconciliation process expressly provided for in the Settlement Agreement.

The Disputed KServicing Holdbacks are defined at paragraph 1(D) of the Settlement Agreement as "the Disputed KServicing Fee Holdback and the Disputed KServicing Remittance Holdback." The Disputed KServicing Fee Holdback is defined at paragraph 1(C) of the Settlement Agreement as "the amount that constitutes loan origination and servicing fees due to KServicing under the S&S Agreement" and is "approximately $8.3 million." The Disputed KServicing Remittance Holdback is defined at paragraph 1(E) of the Settlement Agreement as being comprised of two amounts, namely amounts: "(i) collected from borrowers that KServicing is required to remit to CB under the Original PSA and S&S Agreement, and (ii) held by KServicing on account of cancelled loans." Those amounts combined were estimated at "approximately $26.5 million."

Thus, if the estimates were accurate, the mathematical formula worked as follows:

$58 million Settlement Amount
    Less
$8.3 million Disputed KServicing Fee Holdback
    Less
$26.5 million Disputed KServicing Remittance Holdback
    Equals
        $23.2 million

Hon. Craig T. Goldblatt
November 28, 2022
Page 3

However, because KServicing is the servicer for CB and therefore in possession of the bank account information for borrower remittances and other key components to the formula set forth above, the parties agreed to a reconciliation in paragraph 3 of the Settlement Agreement. As a simple explanatory example of the need to have a reconciliation, for every dollar actually collected by KServicing as of the Petition Date above what the parties approximated, the Settlement Payment would be reduced by that dollar amount. This is of course fair as the parties agreed to a Settlement Amount of $58 million, some of which KServicing was already holding. Determining the exact amount KServicing was holding on CB's behalf was crucial to determining the Settlement Payment. It is also important to note that every dollar that reduces the Settlement Payment in accordance with the agreed upon formula is not a "gain" for CB, but rather represents a dollar that KServicing had already received and reduces the amount that CB is able to recover from the outstanding loans.

Paragraph 3 of the Settlement Agreement entitled "Reconciliation" provides as follows: "Following the execution of this Agreement through the Effective Date, the Parties shall work together in good faith to promptly reconcile the amounts of the Disputed KServicing Fee Holdback and the Disputed KServicing Remittance Holdback as of the Petition Date to determine the appropriate amount of the Settlement Payment."

Importantly, as clearly set forth above, the reconciliation process was not open ended. Rather, it ended on the Effective Date, which is defined at paragraph 2 of the Settlement Agreement as the day the Court approves the Settlement Agreement. That date was November 9, 2022.

CB is the client of KServicing which is the servicer. Borrowers remit funds to KServicing, not CB, as the servicer. KServicing, not CB, maintains a bank account to accept those funds. Thus, the reconciliation process involved KServicing providing to CB trial balance and bank account information so that CB could attempt to verify the amounts of the various Holdbacks, including importantly the borrower remittances, as defined in the Settlement Agreement.

While KServicing seems to focus on some non-existent right to a payment of $23.2 million, CB correctly focused on the obligation to make a payment that when combined with the KServicing Holdbacks would equal the agreed upon $58 million Settlement Amount. The agreed upon process to do so was through the reconciliation process to determine what amount of that $58 million KServicing was already holding back from CB, and what amount CB had to pay anew.

This is not the first time that KServicing has disregarded important rules. As it has admitted in various places in the record of this case, including the First Day Declaration at paragraph 48 [Dkt No. 13, filed on October 4, 2022], KServicing's failure to follow the basic SBA rules on calculating PPP loan amounts by double counting state and local taxes on tens of thousands of loans thus generating loans that were in excess of the SBA guidelines. As a result of that failure to follow basic rules, KServicing paid the SBA a $30 million settlement. *Id*. Additional failures to follow rules by KServicing abound. KServicing failed to follow the SBA rules limiting loan amounts in other ways, including failing to follow the limit on highly compensated employees

(over $100,000 per year). *Id*. at paragraphs 45-47. As set forth in paragraph 47 of the First Day Declaration: "The DOJ flagged approximately 6,200 loans totaling $120 million of principal amount in connection with the $100k Issue and From 940 Issue . . . and instructed the Company [KServicing] not to process those loans for Loan Forgiveness. A number of CB's loans are infected by KServicing's failures. These failures have also resulted in the United States Department of Justice investigating KServicing. *Id*. at paragraph 44.

KServicing has not followed basic rules with respect to the Settlement Agreement. In connection with the reconciliation process required by the Settlement Agreement, KServicing never provided to CB what it believed the Disputed KServicing Remittance Holdback to be. Instead, KServicing provided CB with a variety of remittance, loan level, and trial balance reports, none of which reconciled with each other. As of the Effective Date (and even as of today), KServicing was never able to provide to CB a reconciled trial balance of the outstanding loans, notwithstanding that this is the most basic report that any capable servicer should be able to provide its client at any time. In connection with the reconciliation process required by the Settlement Agreement, KServicing even refused to provide to CB the calculations performed by its financial advisor Alix Partners that resulted in the approximate figures for the Holdbacks found in the Settlement Agreement. *See* **Exhibit D** (two separate emails on two separate dates during the reconciliation process to KServicing's counsel requesting this basic information). However, the one piece of actual source information it provided was information about the KServicing bank account (at Synovus bank) to which the borrower remittances are deposited for the benefit of CB.

Oddly, KServicing's November 25, 2022 letter to the Court does not cite to that bank account information, which reflected total borrower payments of $27,106,862 (including $497,900 that KServicing admitted it was unable to account for) and instead provides no source documentation for any of the figures it provides in its "calculations." The figure in the letter for "Funds Collected from Borrowers" is $24,224,998.14. There is no support provided for that figure and CB has no idea from what it is drawn.

At no time during the ten-day period between CB sending KServicing the Reconciliation Statement and the explanation of how CB drew each of the figures in it from documents provided by KServicing during the reconciliation period (*see* **Exhibits A** and **B** hereto), has KServicing communicated in any way to CB about its view that there was an error in calculation or an oversight regarding a figure or an issue. Instead, it has raced to the Court in a filing made after 5pm on the Friday after Thanksgiving claiming entitlement to estimates that the parties agreed (in the Settlement Agreement) would need to be reconciled.

While CB regrets the burden on the Court that KServicing's behavior is imposing, CB welcomes the Court's involvement. In fact, the Settlement Agreement contemplates at paragraph 21 that any disputes arising out of the Settlement Agreement will be resolved by the Court, as does paragraph 7 of the Court's Order Authorizing and Approving the Settlement Agreement.

Hon. Craig T. Goldblatt
November 28, 2022
Page 5

Whatever process the Court decides upon will undoubtedly require KServicing to follow the rules of the Settlement Agreement, and specifically the reconciliation process. CB welcomes a motion process that will examine the information on each of the key Holdback issues that KServicing provided to CB during the reconciliation process, and CB's acceptance of them.

From CB's perspective, KServicing seems upset that the true reconciliation process (not the Settlement Agreement's estimates) resulted in a Settlement Payment that is less than what KServicing thought it would be. However, as noted above, that is simply because KServicing received the difference earlier. In other words, it already had those funds and is not entitled to be double paid on any dollar it was already holding back.

The Court's involvement is also vital because KServicing has breached perhaps the most consequential term of the Settlement Agreement from CB's perspective, namely the obligation in Paragraph 4(E) to collect, hold in trust, and promptly remit all borrower payments to CB from the Petition Date forward.

On November 17, 2022, CB noticed a breach of this and other servicing obligations to KServicing. *See* **Exhibit E** attached. The next day KServicing responded that "it has remitted to CUBI postpetition amounts that were collected through October 31, 2022. . ." While CB would otherwise also attach that letter, KServicing's counsel marked it "Confidential" and CB will leave it to KServicing as to whether it wishes to include it. In any event, KServicing's representation regarding remitting postpetition amounts through October 31, 2022 is not correct. That day, KServicing remitted to CB $376,326.59. Every prior month the remittances were approximately one million dollars and the bank account statement that KServicing provided to CB for borrower remittances for the month of October showed approximately $1.5 million in deposits. KServicing has failed to provide any reason for this shortfall exceeding $1 million.

As a result, CB will be seeking the following relief from KServicing in this Court by way of prompt motion: (1) an accounting of the October remittances and KServicing's transfers of those remittances; (2) full payment of the October remittances; and (3) adequate protection of CB's interest in the funds on deposit and to be deposited in order to prevent further breaches of trust and breaches of the Settlement Agreement by KServicing.

                                        Respectfully,

                                        HOLLAND & KNIGHT LLP
                                        /s/Jeremy M. Sternberg
                                        Jeremy M. Sternberg

cc:  Candace Arthur, Ray Schrock, Natasha Hwangpo, Richard Slack, Chase Bentley, Theodore Tsekerides (all of Weil, Gotshal & Manges)
    Zachary Shapiro (Richards Layton)
    John Monaghan (Holland & Knight)
    William A. Hazeltine (Sullivan Hazeltine Allinson LLC)