# EXHIBIT B

# TRANSCRIPT

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| KABBAGE, INC., d/b/a KSERVICING, et al, | Case No. 22-10951(CTG) |
| | 824 Market Street<br>Wilmington, Delaware 19801 |
| Debtors. | Tuesday, November 29, 2022 |

TRANSCRIPT OF VIDEO HEARING RE:
STATUS CONFERENCE
BEFORE THE HONORABLE CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors: Daniel J. DeFranceschi, Esq.
Amanda R. Steele, Esq.
Zachary I . Shapiro, Esq.
Matthew P. Milana, Esq.
Huiqi (Vicki) Liu, Esq.
RICHARDS, LAYTON & FINGER, PA

Ray C. Schrock, P.C.
Candace M. Arthur, Esq.
Chase A. Bentley, Esq.
Theodore Tsekerides, Esq.
Richard Slack, Esq.
WEIL, GOTSHAL & MANGES, LLP

For the U.S. Trustee: Rosa Sierra-Fox, Esq.
OFFICE OF THE U.S. TRUSTEE

(Appearances Continued)

Audio Operator: Electronically Recorded
by Donna Capell, ECRO

Transcription Company: Reliable
1007 N. Orange Street
Wilmington, Delaware 19801
(302)654-8080
Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES VIA ZOOM: (Continued)

| | |
|---|---|
| For Customers Bank: | William Hazeltine, Esq.<br>SULLIVAN HAZELTINE ALLINSON, LLC |
| | John Monaghan, Esq.<br>Jeremy Sternberg, Esq.<br>HOLLAND & KNIGHT, LLP |
| For American Express: | Jonathan Weyand, Esq.<br>MORRIS, NICHOLS, ARSHT & TUNNELL, LLP |
| | Dolan Bortner, Esq.<br>James Bromley, Esq.<br>SULLIVAN & CROMWELL, LLP |
| For the United States: | Alastair Gesmundo, Esq.<br>Stanton McManus, Esq.<br>U.S. DEPARTMENT OF JUSTICE |
| For Federal Reserve Bank of San Francisco: | Heather Smillie, Esq.<br>Pauline Morgan, Esq.<br>Ryan Bartley, Esq.<br>Sean Greecher, Esq. |
| | Kristin Corbett, Esq.<br>Lisa Schweitzer, Esq.<br>Richard Minott, Esq.<br>CLEARY, GOTTLIEB, STEEN & HAMILTON, LLP |
| For Board of Directors: | David Kurzweil, Esq.<br>Matthew Petrie, Esq.<br>GREENBERG TRAURIG, LLP |
| For Cross River Bank: | Gregory Werkheiser, Esq.<br>BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP |
| | Matthew Scheck, Esq.<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| For Synovus Bank: | David Wender, Esq.<br>EVERSHEDS SUTHERLAND |

(Appearances Continued)

APPEARANCES VIA ZOOM: (Continued)

| | |
|---|---|
| For Class Action Members: | Marybeth Gibson, Esq.<br>THE FINLEY FIRM |
| For Morgan Franklin and Vaco Resources: | Jay Bender, Esq.<br>BRADLEY, LLP |
| Also Appearing: | Marc Sullivan<br>KS MANAGEMENT |
| | Kyle Mason<br>"DEBTORS" |
| | Christine Nell<br>SMALL BUSINESS ADMINISTRATION |
| | Cathy Ta<br>REORG |
| | Taylor Harrison<br>DEBTWIRE |
| | Becky Yerak<br>WALL STREET JOURNAL |

(Proceedings commence at 1:30 p.m.)

THE COURT: Good afternoon, all. This is Judge Goldblatt. We are now on the record in In Re Kabbage, which is Case Number 22-10951.

We're proceeding this afternoon by Zoom, the usual Zoom rules apply. Please leave your microphones muted unless you're addressing the Court. Please introduce yourself for the record each time you address the Court. And finally, my own preference is that folks generally leave their cameras off unless you, either are addressing the Court, or wish to be recognized, mostly because I find it helpful, if someone turns their camera on, as a way to signal that they want to be recognized.

So, with that, we're here on a status conference with respect to a dispute that's arisen. Why don't I allow counsel for the debtor, who's sought the conference, to kick off.

MS. ARTHUR: Thank you, Your Honor. For the record, Candace Arthur of Weil, Gotshal & Manges on behalf of the debtors.

I would like to thank the Court for providing the time this afternoon for this status conference. As we reflected in the amended agenda that was filed, both parties have submitted letters in connection with the dispute.

And I would also like to note that we did

supplement the record about an hour ago, for completeness, by filing the debtors' response to the notice of breach that Customers Bank referenced in their letter, and they mentioned it wasn't filed because it was marked as confidential. So that has also been filed on the docket, Your Honor.

Your Honor, I -- the debtors are not seeking any relief from the Court today. But in furtherance of transparency and just given the importance of the settlement reached with Customers Bank to the debtors' estate, we felt it was appropriate to provide the Court and other stakeholders with an update, so that everyone is aware of the pending dispute.

I do want to make it clear, Your Honor, that this dispute, which you may have surmised involves approximately $3.7 million, that this dispute does not affect the feasibility of the debtors' proposed path forward. However, Customer Bank's obligation to remit funds to the debtors is material, and that was evidenced by the contested nature of a 9019 motion heard earlier this month.

Your Honor, I will turn to my partner Richard Slack to better inform you of the issue we're facing and our proposal for moving forward enforcing a court order, to the extent the debtors do not receive the balance owed.

But again, I would like to thank the Court for its time.

THE COURT: Okay, Ms. Arthur. Thank you. Obviously, happy to do my job and make myself available when there's a dispute I need -- that needs resolution.

Mr. Slack, I've read the letters, including the supplemental submission that came in about an hour ago. I'm happy to let you present whatever you'd like, but to the extent it's helpful, at this stage, I'm not primarily interested in having each side preview the merits of their positions and explain why the fact that we're having a dispute is all the other side's fault. You've all did -- you've all done that very well in your letters. I'm mostly interested in hearing thoughts on what we can do to be helpful to create an expeditious and appropriate mechanism for bringing the matters to resolution.

So, with that, Mr. Slack, let me pass it to you.

MR. SLACK: Thank you, Your Honor. Richard Slack from Weil Gotshal, also for Kabbage.

And Your Honor, given what you just said, I won't go into the background, you know, I think other than to briefly say that, obviously, as our letter said, Kabbage's position is that, you know, we're owed 23.7 million, we were only paid approximately 20.5. And we're looking forward to have this issue decided.

Two things which I think still make some sense to do, Your Honor, just because we had sort of said we would do

this in our letters, is, again, for transparency purposes, to let both the Court and, you know, the parties know what we're thinking, in terms of scheduling.

And that is that, currently, we're intending to file our motion the beginning of next week;

That we would have the response date on December 21st, before Christmas.

We would have the reply on January 3rd.

And I believe Your Honor has a hearing available on January 6th.

I think the schedule that we're proposing shows how important this is, and that I think, you know, we're getting sort of the short end of the stick on the reply, given that we're going to have two holiday weekends in order to do that. But it is an important issue for us, so that's the schedule that we would propose.

THE COURT: Okay. So --

MR. SLACK: That's really the first --

THE COURT: Let me --

MR. SLACK: -- the first point.

THE COURT: Let me just --

MR. SLACK: Yeah.

THE COURT: -- say the following briefly, Mr. Slack, not to interrupt.

But it -- both parties here have suggested that we

proceed by way of motion. That's fine with me, if both parties agree. You know, if one were being hardheaded about the rules, one would say this is an attempt to recover money damages that the rules would say require an adversary. If both parties consent to proceeding by motion because it just makes sense to do it that way, I'm not standing in the way. To the extent any party wants to enforce the right -- I don't know why they would -- to get a piece of paper with a different caption on it, you know, I -- you know, I'm happy to hear you explain why you think that's more appropriate. But to the extent the parties agree to proceed by motion -- and it appears from the letters that they do -- I've got no problem with that.

So apologies for interrupting, Mr. Slack. Let me let you continue.

MR. SLACK: No, in fact, I want to -- I -- you know, we clearly think that this is appropriate by motion, whether it just is going to be appropriate (indiscernible) just as a matter of form over substance, it makes sense to do it that way. So we clearly both think it's the right way and consent (indiscernible) look at that way, you know, otherwise. So I'll say that.

The second point, Your Honor, that I want to make, which is a little bit different -- I know we've submitted letters. But there is one point in the letter that was

submitted that, you know, we hadn't -- we haven't responded to and it wasn't actually a response to anything in our letter. And that's that second piece, where Customers complains about an amount of a remittance payment for October. That wasn't anything in our letter. Really, it has nothing to do with the payment issues for us.

But I do want to make a point. You know, people pay attention to what's filed, obviously. You know, there are people picking it up. So I think it's important, you know, that something like this gets responded to at least a little bit.

And you know, first off, with respect to this 376,000 payment that they say they're owed, they say they're -- you know, the only -- they don't have any basis for saying they think they're owed more, other than in past times, past months, the payment has been a million and a half; and that the letter doesn't provide any information why the three seventy-six is not the right number. And it implies there's something wrong, but it doesn't say anything.

And then the letter suggests that Customers doesn't know the underlying basis -- the underlying reason why the payment was three seventy-six. And the fact is, is that Customers knows precisely why the payment was made in the amount it was made.

And you know, at 11 a.m. yesterday, before

Customers sent a letter to the Court, Customers sent an email to KServicing that sets out the precise reason why the payment was three seventy-six. This is a Customers email. And Customers -- and that email said specifically that it appears that the SBA payments were netted out.

Now I know the Court doesn't know what that means. But briefly, what that means is that the deviation from the payment from prior months is because, in October, the SBA agreed to guarantee a whole chunk of loans. And when that happened, payments that were made by borrowers were owed to the SBA. That's at least the SBA's position, since they were guaranteeing those loans.

And so, putting aside the merits of the issue because that's not really the point I'm making. The point is Customers knew precisely what the issue was before they sent their letter. And it's -- you know, it's curious why a letter like that sent when they know what the issue is and they know that the SBA, you know, had -- you know, had -- the payments were to the SBA and what the SBA's position is.

So, again, that -- I made that point only because I think the -- that was not something that our letter raised and wasn't something we responded to. And it was something, I think, that the public and the people here have to understand, you know, there's a response to these things.

So, with that, Your Honor, unless you have any

other questions, you know, I -- you know, I guess, if Customers has something they want to say, we'd turn it over to them.

THE COURT: Okay. Why don't I give Customers a chance to be heard with respect to your proposed schedule?

(Participants confer)

MR. STERNBERG: Hello, Your Honor. This is Jeremy Sternberg on behalf of -- from Holland & Knight on behalf of Customers Bank, here with colleague John Monaghan. Can you hear us?

THE COURT: I can hear you. You're -- though, you're faint and you're in a conference room where you're all the way at the other end from the camera, so I -- so you're speck on the Zoom screen.

MR. STERNBERG: If I --

THE COURT: You know, I'm happy to be flexible. It's not that big a deal, as long as I can hear you, but -- there --

MR. STERNBERG: Yeah, our --

THE COURT: I think that's better.

MR. STERNBERG: Our Zooming is not working on the camera. So, as you come closer to the camera and closer to the microphone -- again, it's Jeremy Sternberg --

THE COURT: Okay.

MR. STERNBERG: -- Holland & Knight on behalf of

(indiscernible) I'm here with my colleague John Monaghan.

The schedule Mr. Slack proposed is agreeable to the bank, both on the motion that KServicing intends to file and on the motion to compel performance of the settlement agreement with respect to KServicing's trust segregation and payment obligations. So we would propose that the -- each side files motions and we adhere to the same schedule for both.

And with respect to Mr. Slack's comments about the substance of that issue, the bank is now aware of why KServicing shorted the payment and doesn't agree with it. KServicing is obligated to pay every dollar that comes into that account into the segregated account and hold it in trust and pay it over to Customers Bank after the petition date. And our understanding from the information we've gotten from KServicing is that they did not do so. They, in fact, paid some money to the SBA.

And that is -- we're obviously going to dig more into that. But there is a history here of KServicing not honoring its trust obligations under a previous agreement and using the bank's money to fund its operations. We believe that's happening again and we will be filing a motion, if the Court allows it, on the same schedule that KServicing wants to have on its motion.

THE COURT: Okay.

MR. STERNBERG: And I'd also note, Your Honor, that tomorrow is the close of another month, and that KServicing's obligation to pay over funds will kick in again, and we are concerned about being shorted again. That's why the expedited schedule that Mr. Slack has proposed is very agreeable to the bank.

THE COURT: Okay. So let me ask all -- I'm sorry. So, Mr. Scheck, you just turned on your camera. Did you -- would you like to be heard?

MR. SCHECK: Yes, Your Honor. I'd like to be heard if now is a good time.

THE COURT: You can proceed.

MR. SCHECK: Okay. Thank you, Your Honor. Matthew Scheck from Quinn Emanuel on behalf of Cross River Bank.

And we -- you know, Mr. Slack mentioned parties reading what's on the docket and being interested in what is on the docket, and I guess we are one of those parties, certainly.

As Your Honor knows, we objected to the settlement when it was touted repeatedly as bringing in more than $23 million into the estate. We're certainly troubled that not a word was said at the hearing that the number could be materially different. We understand reconciliation of a couple hundred thousand dollars; I don't think any of us would be here. But this is a significant difference. We

don't believe that this is the settlement that was approved. And I know the parties are going to hash that out.

I guess one comment on that, though, is that we believe, to the extent the parties ultimately reach a resolution during this process, that it should not play out entirely behind closed doors, but should be the subject of being in front of the Court and have court approval of that because this, in our view, is not the settlement that was approved, to the extent it ends up being a resolution of $19 million or something else. So we would just say that should be not done exclusively behind closed doors if it's somehow resolved during this litigation process.

THE COURT: Okay. Mister --

MR. SCHECK: (indiscernible)

THE COURT: Mr. Slack, let me just ask you. Is there any reason why, if the resolute -- if -- let me say the following:

If I resolve the motion, that solves your concerns, right, Mr. Scheck?

MR. SCHECK: I'm sorry --

THE COURT: If the parties --

MR. SCHECK: -- Your Honor?

THE COURT: -- present their positions and I resolve it, nothing has happened behind closed doors, right? If we have a hearing that doesn't concern you --

MR. SCHECK: Correct, Your Honor.

THE COURT: And so your only concern is, to the extent that there's a settlement of this dispute, that it's subject to the 9019 procedure. That's your ask?

MR. SCHECK: Yeah, that it is, in some way -- and I don't know, you know, formalistically [sic] speaking, how important it is that it be subject to (indiscernible) notice requirements, but that it is in some way transparent in the process to stakeholders.

THE COURT: Okay. Mr. Slack, any objection to that ask; that, to the extent you and Customers reach a resolution, that the substance of that be disclosed?

MR. SLACK: I don't think disclosure is a problem, Your Honor, you know, and I think transparency is important.

I would say, though, that, obviously, the settlement agreement was not a precise number, and that was public, everybody, you know, knew that that -- it wasn't a precise number. We obviously think the number is more than the 23.2 that we talked about in the -- at the hearing.

But putting that aside, there was a process and a formula. And so, you know, I think -- I would certainly hope that, during the course of this, when it became clear that the number that Customers, you know, owes us is clear from the documents and from the formula. You know, they -- you know, the fact is, is that Customers essentially stopped the

reconciliation process, right? They said, hey, the music stopped, there's this reconciliation process, we don't have to get it right, and really hope that, when they actually see the numbers, they'll pay us the amount they owe us. I don't think that's a settlement, even though I think that the parties could have, as part of the reconciliation process, reached a number.

But what I -- but I -- but that's a long way of saying I think the transparency is important, in terms of disclosure, and is, I think, different than maybe a 9019, so we have no problem with that.

THE COURT: Okay. And Ms. Arthur?

MS. ARTHUR: Your Honor, I just wanted to echo for the debtors and of course confirm for Mr. Scheck we completely agree with you, in terms of transparency. We completely agree that we will ensure that all stakeholders are informed. And similarly, we believe that any difference with -- in connection with what was requested for the 9019 motion was within a hundred -- a thousand dollars, at best, and was not the material swing that has occurred. So we do completely -- we're aligned, in terms of how the settlement should have been viewed and should be viewed.

THE COURT: Okay. So, Mr. Slack, the suggestion that Mr. Sternberg made is that there be essentially simultaneous cross-motions.

And I apologize, Mr. Scheck, if you hadn't finished your point. I'll get back to you in a second. I apologize.

Mr. Slack, the suggestion that Mr. Sternberg made was that there be simultaneous sort of cross-motions on the schedule that you laid out. Do you have any objection to proceeding that way?

MR. SLACK: Your Honor, we don't have any objection.

I would say, though, that the issues here are not -- what's the right way of saying -- they're not connected.

THE COURT: No, I appreciate --

MR. SLACK: (Indiscernible)

THE COURT: -- these are analytically distinct questions. That said, you want o be heard in a hurry because you think you're owed money and you want to get it, and they take the same position. And it seems to me, at some level, what's good for the goose is the controlling principle here.

So I'm more than happy, if the parties are prepared to move quickly, to hear you quickly.

MR. SLACK: Okay.

THE COURT: So I just wanted to make sure that we were in agreement that we were going to proceed that way.

And I take it what we're contemplating is you're each going to submit papers. And to the extent there's documentary evidence, you'll submit it with your papers. And

if we've got a material factual dispute, we'll have an evidentiary hearing where we'll get to the bottom of it. Is that what's contemplated here?

MR. SLACK: So, Your Honor, with respect to our dispute, I think that, you know, we certainly are going to set out in our papers the reasons that we're entitled to the 23.7. And you know, if there is some kind of evidentiary dispute, we'll be prepared to address that at the hearing. So that -- from our perspective, I think that's correct.

THE COURT: Okay. And just to make sure we're all rowing together. Mr. Sternberg, that's also consistent with your understanding of what we've agreed to here?

MR. STERNBERG: It is, Your Honor.

THE COURT: Okay. So, Mr. Scheck, I'm sorry. I cut you off very rudely, but let me let you continue your point.

MR. SCHECK: No, no problem, Your Honor.

I think I just wanted to make -- a second point was: It's not just the amount of the reconciliation that's troubling. I think it's the reasons why there's a need for a reconciliation. Customer Bank's assertions, if they're true, are certainly troubling to Cross River Bank. And we don't know if they're true, but they very well could be. And in fact, Cross River has had issues with the debtors with respect to reconciling remittances from borrowers.

And this raises issues with whether the debtors are remitting the proper amounts that they're holding in trust for Cross River, as well. And frankly, it raises concerns about the cash management system and leakage in the cash management system. And so we may very well join in the relief sought by Customers Bank or seek our own relief in that same regard. And I just wanted to raise that point or at least flag that issue.

THE COURT: Okay. Look, to the extent -- I'm -- you know, to the extent there's a concrete dispute that requires resolution, that's -- I'm here to do my job. So, you know, if such a motion needs to be brought, you know, that's why we have a system for resolving disputes.

Ms. Sierra-Fox.

MS. SIERRA-FOX: Good afternoon, Your Honor. Rosa Sierra-Fox on behalf of the U.S. Trustee.

Your Honor, I do have a question and I'm happy to talk offline, but since the parties are gathered and there seem to be a lot of parties-in-interest on the line and we have the benefit of debtors' counsel's year.

Is this -- meanwhile, I believe there is a disclosure statement approval hearing scheduled presently for December 14th. And I think -- I guess, the -- in light of this dispute, do the part -- does the debtor intend to go forward with that or is there any update on that?

THE COURT: Ms. Arthur?

MS. ARTHUR: If I may, Your Honor. I tried to address it at the top of the -- at the outset of the -- of this meeting, so apologies if it wasn't clear. But this dispute does not impact the feasibility of the debtors' proposal going forward and it will not impact the disclosure statement or the hearing.

MS. SIERRA-FOX: Okay.

THE COURT: Okay. So it sounds like we've got an agreed schedule for resolving the pending disputes. And if other disputes arise, the parties know that the Court is available to help resolve disputes once they've ripened.

Ms. Gibson.

(No verbal response)

THE COURT: I think you may be muted.

MS. GIBSON: Thank you. I apologize.

For the purpose of transparency, I just wanted to let you know I represent a class of small (indiscernible) that obtained PPP loans through KServicing, and we had filed a class action against KServicing and Kabbage well before they filed bankruptcy and were in discussions with its class counsel at that time. And I've since discussed the case with Ms. Arthur and her team.

But just to let you know, we have not been able to reach a resolution on behalf of these class numbers whose PPP

loans should have been forgiven under the SBA standards. And for whatever reasons -- KServicing's portal not working -- I don't want to get the (indiscernible) issues of the class action.

But (indiscernible) given that tomorrow is the deadline for claim (indiscernible) they're planning on filing a Form 110 for provisional class claim, in addition to any individuals filing individual proofs of claim, as well as a class certification order under FRBP 702(3).

THE COURT: Okay. I take it there isn't a dispute that currently requires the Court's attention. You're going to file your papers and the debtors will or won't oppose it and we'll have to deal with it when we have to deal with it. Is that essentially where we are?

MS. GIBSON: That is essentially where we are. I just wanted to put the Court on (indiscernible)

THE COURT: Okay. Appreciate that.

Is there any other party-in-interest that would like to be heard while we are all here?

(No verbal response)

THE COURT: Okay. If not, I'm glad the schedules that the parties have proposed for addressing the dispute are consented to. I'm happy to address these matters when it's fully briefed and before me. And obviously, we'll be seeing folks, as Mr. Arthur described, at a disclosure statement

hearing in a couple of weeks. If anything arises that requires our attention in the meantime, everyone knows how to get in contact with us.

So, with that and thanks to counsel, we're adjourned. Thank you.

(Proceedings concluded at 1:54 p.m.)

*****

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

________________________________ November 29, 2022

Coleen Rand, AAERT Cert. No. 341
Certified Court Transcriptionist
For Reliable