**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | ) Chapter 11 |
| KABBAGE, INC. d/b/a KSERVICING, *et al.*, | ) Case No. 22-10951 (CTG) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) Re: Docket No. 355 |

**DECLARATION OF TAMICA M. WILLIAMS IN SUPPORT OF DEBTORS' OBJECTION TO MOTION OF CUSTOMERS BANK FOR ENTRY OF AN ORDER (I) COMPELLING COMPLIANCE WITH COURT APPROVED SETTLEMENT AGREEMENT AND ORDER; (II) REQUIRING ADDITIONAL ADEQUATE PROTECTION IN FAVOR OF CUSTOMERS BANK; AND (III) GRANTING RELATED RELIEF**

I, Tamica M. Williams, declare pursuant to 28 U.S.C. § 1746, under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Corporate Controller of Kabbage, Inc. d/b/a KServicing (the "**Company**" or "**KServicing**") and its affiliated debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), as debtors and debtors-in-possession (collectively, the "**Debtors**"). I have served as the Corporate Controller since November 2021. As Corporate Controller, I establish and implement financial policies and controls, supervise all accounting and financial functions, and prepare financial statements.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

2. I have over nineteen years of experience conducting and overseeing general ledger accounting, controllership, finance and operational risk, and financial reporting for various companies in the financial industry. Before joining the Company, I worked as Assistant Financial Controller for Truist Wealth, and Financial Controller for SunTrust Investment Services, Inc. Prior to those positions, I worked for SunTrust bank for more than ten years, starting as Assistant Vice President and Wholesale Banking Account Manager, and over the years rising to Vice President, Senior Manager of Corporate Finance where I led a team of 8 senior level accountants, and created and maintained corporate policies, procedures, and controls related to reconciliations, reporting, and journal entries.

3. I have Bachelor of Business Administration and Master of Accountancy degrees in Accounting, both from Georgia Southern University, and I am a Certified Public Accountant in the state of Georgia, as well as a Certified Internal Auditor.

4. I submit this declaration in support of the *Objection of Debtors to Motion of Customers Bank for Entry of an Order (I) Compelling Compliance with Court Approved Settlement Agreement and Order; (II) Requiring Additional Adequate Protection in Favor of Customers Bank; and (III) Granting Related Relief* filed contemporaneously herewith (the "**Debtors' Objection**"). I am knowledgeable about and familiar with the monthly remittance payments KServicing has made to Customers Bank ("**CB**") pursuant to the *Settlement and Release Agreement*, dated October 27, 2022 [Docket No. 232] (the "**Settlement Agreement**").[2] Except as otherwise indicated, the facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents and databases that are prepared, maintained and utilized by

---

[2] Capitalized terms not defined herein shall have the same meaning as those in the Debtors' Objection, filed contemporaneously herewith.

KServicing in the ordinary course of its business, as well as information provided to me by employees working under my supervision. If called upon to testify, I would testify to the facts set forth in this declaration.

## The Settlement Agreement

5. On October 27, 2022, KServicing and CB entered into the Settlement Agreement pursuant to which CB was to pay KServicing a cash "Settlement Payment," which is defined as "the Settlement Amount [of $58 million] less the amount of the Disputed KServicing Holdbacks as of the Petition Date." Settlement Agreement §§ 1(G), 1(H).

6. In calculating the Settlement Payment amount, KServicing included $1,071,094.43 in certain payments that were then due and owing to the SBA, which I further describe here in paragraph 19. Specifically, I accounted for this amount as "Fees Owed to the SBA (Borrower Overpayments)" in my declaration in support of the Debtors' Motion to Enforce.[3]

7. While those "Borrower Overpayments" represented funds due to the SBA as of the Petition Date, KServicing had not yet paid those funds to the SBA on the Petition Date. Instead, they had been received and earmarked as projected to be paid to the SBA as of the Petition Date because the payments were made on account of CB loans the SBA guaranty purchased. Pursuant to the Settlement Agreement, the fact that the SBA purchased those loans meant that these funds were "payable by KServicing to the SBA," not to CB. Settlement Agreement § 1(A).

---

[3] *See Declaration of Tamica Williams in Support of Motion of Debtors for Entry of an Order Enforcing the Settlement Order and the Settlement Agreement Between KServicing and Customers Bank*, (Dec. 7, 2022) ("**Williams Declaration**") [Docket No. 341], at 8 (table); *id*. at Exhibit 1. As shown in my December 7th Declaration [Docket No. 341], both Parties included this Borrower Overpayment credit in their Settlement Payment calculations, although KServicing's calculation of this amount was slightly lower, in CB's favor. Thus, it was clear that both CB and KServicing expected KServicing to make the payments to the SBA.

3

**October Remittances KServicing Received and Paid to CB**

8. The Settlement Agreement was meant to resolve the Parties' prior disputes, provide for a Settlement Payment based on calculations as of the Petition Date, and reset the Parties' relationship going forward. As part of that going forward relationship, KServicing prepared to make monthly remittance payments to CB from funds received by KServicing, passing along to CB those amounts due to CB, after accounting for payments owed to the SBA and to borrowers.

9. To that end, when calculating the amounts owed to CB, KServicing deducts payments where: (i) that loan was already purchased by the SBA, resulting in the amounts collected "being payable by KServicing to the SBA," not to CB, (ii) the borrower payments were "in excess of the required minimum loan payments, including payments on forgiven loans, thus resulting in such collected amounts being payable by KServicing to the applicable borrower," not CB, (iii) the loan is ultimately forgiven by the SBA, meaning the collected amounts are "payable by KServicing to the" borrower who made the payment, or (iv) "any other overpayments received by KServicing from any source that must be returned or otherwise paid to a borrower or the SBA." Settlement Agreement §§ 1(A), 1(E).

10. Starting on the Petition Date, KServicing deposited borrower remittances on account of CB loans into the "PPP Payments CUBI" segregated bank account. Then, within ten business days of the end of each month, KServicing was to transfer to CB those amounts due and owing to CB from that bank account ("**Monthly Borrower Remittance Payments**").

11. In the first of these Monthly Borrower Remittance Payments, KServicing was to provide CB with borrower remittances collected between October 4, 2022 (the day after the Petition Date) and October 31, 2022. During this period, KServicing received a net total

$1,301,569.46 in remittances from borrowers on account of CB loans (less borrower refunds), which were deposited into the Kabbage, Inc. account entitled "PPP Payments CUBI."

12. Although the amount of October deposits into KServicing's "PPP Payments CUBI" bank account was $1,551,275.91, as noted in CB's Motion to Compel, the net total was only $1,301,569.46 because not all of those deposits were owed to be paid to CB. For example, KServicing refunded $147,656.04 in deposits to borrowers who made payments on loans that had been forgiven, and those funds were therefore not due to CB. An additional $92,532.21 was received prior to the Petition Date, and was therefore not due to CB because it had already been included in deductions from the Settlement Payment. The remaining $9,518.20 of the difference is comprised of minor adjustments, which KServicing paid to CB, and are reflected in the summary I prepared that is attached hereto as **Exhibit A**.

13. On November 18, 2022, KServicing made its October Monthly Borrower Remittance Payment to CB, in the amount of $376,326.59.

14. On November 28th, I received an email from Alyssa White of CB regarding the October Remittance Report. That email is attached as Exhibit B to the White Declaration. In her email, Ms. White confirmed that CB had received KServicing's October Remittance Report and the wire payment for $376,326.59, and stated that "it appears SBA payments were netted out" and that KServicing's October Synovus bank statement shows $1,551,275.91 in deposits, leaving the remainder "not accounted for." No other information was provided.

15. Later that same day (November 28th), CB filed a letter with the Court, which I reviewed, stating that KServicing's November 18th October Remittance Payment of $376,326.59 to CB was short by over $1 million.[4] The letter, however, did not contain any further

---

[4] *See* Letter from Jeremy M. Sternberg to Hon. Craig T. Goldblatt, Nov. 28, 2022 [Docket No. 289].

specifics. In the same letter, CB stated it would be filing a "prompt motion" with the Court seeking payment from KServicing, an accounting, and other legal relief.

16. CB then filed its Motion to Compel on December 7, 2022, along with a declaration from Ms. White. Prior to the filing of the Motion, I am not aware of any attempt by CB to meet and try to reconcile the payments to avoid a motion. I reviewed the motion papers, including the exhibits. There, for the first time, CB asserted that KServicing's October Borrower Remittance Payment was short by $925,243.00 (the "**SBA Payment**") because, according to CB, KServicing improperly deducted that amount, which had already been included in the Borrower Overpayment portion of the Settlement Payment calculation.

### KServicing's Correction of the October Borrower Remittance and Payment of November Borrower Remittances

17. Having received some information from CB for the first time in their Motion, and wanting to ensure that KServicing accurately calculated its Monthly Borrower Remittance Payments to CB, I began working with my team to determine whether KServicing had made an error in the October Borrower Remittance Payment.

18. In reviewing KServicing's bank records and other financial data, I determined that between October 4 and October 31, 2022, KServicing paid the SBA a total of $925,242.87 in various individual payments, made on a loan-by-loan basis, throughout the month (*see* Exhibit A to the White Declaration). These funds were payments borrowers made on loans issued by CB that had been guaranty purchased[5] by the SBA, meaning those loans were now owned by the SBA instead of CB. As a result, when I initially calculated KServicing's October Monthly

---

[5] In the event a PPP Loan was not eligible for forgiveness pursuant to the SBA guidelines, the SBA nevertheless guaranteed its purchase of 100% of the PPP Loan from the originating lender upon application of the lender, or here, KServicing. Such purchase of a loan by the SBA is defined as a "**Guaranty Purchase**."

Borrower Remittance Payment to CB, I deducted this amount from what KServicing paid to CB because those same funds were paid to the SBA that same month.

19. I then determined that KServicing had indeed already accounted for this same $925,242.87 when I calculated the $1,071,094.43 Borrower Overpayments amount included in our calculation of Settlement Payment Amount, meaning that KServicing should have paid the $925,242.87 (in addition to the $376,326.59 KServicing did pay) to CB in KServicing's October Borrower Remittance Payment. As soon as I confirmed this error, and accounted for other issues in the October remittance receipts, KServicing corrected the mistake.

20. On December 14th, KServicing paid CB $1,026,516.58, which included the $925,242.87 KServicing mistakenly omitted from its October Borrower Remittance Payment and funds for November remittances, after accounting for payments to the SBA. As a result of this payment, the October and November Borrower Remittance Payments are now both complete and accurate. Along with the November Borrower Remittance Payment, on December 14th KServicing sent to CB the November 2022 Borrower Remittance Report via SFTP. I also prepared a high level summary of the components included in the December 14th wire amount, which I understand has been provided to counsel for CB. That summary is attached hereto as **Exhibit B**.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: December 21, 2022
       Atlanta, Georgia

                                       /s/ *Tamica M. Williams*
                                       Tamica M. Williams