**EXHIBIT C**

**Liquidation Analysis**

**Liquidation Analysis**

**Best Interests Test**

The Debtors, together with their financial advisor and legal counsel, have prepared a hypothetical liquidation analysis (the "Liquidation Analysis") in connection with the Plan and Disclosure Statement for purposes of evaluating whether the Plan meets the requirements under section 1129(a)(7) of the Bankruptcy Code, frequently referred to as the "best interests" of creditors test. Section 1129(a)(7) of the Bankruptcy Code provides that the Bankruptcy Court may not confirm a chapter 11 plan unless each holder of a claim or interest in an impaired class either (i) accepts the plan, or (ii) receives or retains under the plan property of a value, as of the effective date, that is not less than the value such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code on the effective date. *See* 11 U.S.C. § 1129(a)(7).

The Liquidation Analysis is based upon certain assumptions discussed in the Disclosure Statement and in the accompanying Liquidation Analysis notes (the "Notes"). Capitalized terms used but not otherwise defined in the Notes shall have the meanings ascribed to them in the Plan or the Disclosure Statement, as applicable.

The Debtors believe that their creditors will receive at least as much, and likely more, under the Plan than they would receive in a chapter 7 liquidation.

**Basis of Presentation**

The Liquidation Analysis represents an estimated range of recoveries for all creditors of the Debtors based upon a hypothetical liquidation of the Debtors' assets, assuming that the Debtors' chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code on the Conversion Date (as defined below) and a chapter 7 trustee (the "Trustee") is appointed to oversee the liquidation of the Debtors' assets. During such liquidation, all of the Debtors' remaining assets would be monetized or otherwise distributed, and the cash proceeds, net of liquidation-related costs, would be distributed to holders of Allowed Claims in accordance with applicable law. The Liquidation Analysis assumes that, in a chapter 7, operations of the Debtors will cease and the Trustee will sell or transfer substantially all of the Debtors' remaining assets through a liquidation process beginning on or about March 31, 2023 (the "Conversion Date") and will subsequently complete the administrative closure of the cases.

The determination of the costs of, and proceeds from, the hypothetical liquidation of assets is a highly uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtors' management team and their advisors based upon their business judgment, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors and their management team. The Liquidation Analysis is also based on the Debtors' and their advisors' best judgment of how numerous decisions in the liquidation process would be resolved. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could materially affect the ultimate results in an actual chapter 7 liquidation. In addition, the Debtors' management and their advisors cannot judge with any degree of certainty the recovery that may result in a chapter 7 liquidation. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the Debtors were liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended, and should not be used, for any other purpose.

Further, the actual amounts of Claims against the Debtors' estates could vary materially from the estimates set forth in the Liquidation Analysis, depending on, among other things, the Claims asserted during chapter 7, including Claims asserted by governmental entities. Accordingly, the Debtors cannot ensure that the values assumed would be realized or the Claims estimates assumed would not change if the Debtors were in fact liquidated, nor can assurances be made that the Bankruptcy Court would accept this analysis or concur with these assumptions in making its determination under section 1129(a) of the Bankruptcy Code. The Liquidation Analysis should be read in conjunction with the assumptions, qualifications, and explanations set forth in the Disclosure Statement and the Plan in their entirety, as well as the Notes and assumptions set forth below.

**Liquidation Analysis Notes**

The three major components of the liquidation process are as follows:

    i. Generation of cash proceeds from the sale of assets;

    ii. Costs related to the liquidation process, such as personnel costs, Claims reconciliation costs, estate wind-down costs, and Trustee and professional fees; and

    iii. Distribution of net proceeds generated from asset sales to claimants in accordance with the priority scheme under chapter 7 of the Bankruptcy Code.

The Liquidation Analysis is based on forecasted principal balances of the Debtors' outstanding loan portfolios as of the Conversation Date. Estimates are assumed to be representative of the Debtors' assets and liabilities as of the Conversion Date. The Liquidation Analysis should be read in conjunction with the following Notes and assumptions:

1. **Conversation Date**

The Liquidation Analysis has been prepared assuming the Debtors convert these chapter 11 cases to a chapter 7 case on the Conversion Date, and the Bankruptcy Court appoints a Trustee to oversee the liquidation of the Debtors' estates, during which time the Trustee would wind down the Debtors' operations, seek to transfer the Debtors' loan servicing obligations, monetize the Debtors' remaining assets, and distribute the proceeds from such monetization, net of liquidation-related costs, to creditors in accordance with applicable law.

2. **Claims Excluded in the Liquidation Analysis**

The cessation of business in a liquidation is likely to trigger certain Claims that otherwise would not exist under the Plan proposed by the Debtors, such as unpaid chapter 11 administrative expenses, and certain executory contract and unexpired lease rejection Claims. Such Claims could be significant and some may be administrative expenses while others may be entitled to priority in payment over General Unsecured Claims. These chapter-7-specific Claims are excluded from the Liquidation Analysis. Also excluded from the Liquidation Analysis are estimates for the tax consequences, both federal and state, that may be triggered upon the liquidation and/or sale of assets in the manner described. Such tax consequences may be material. In addition, the Liquidation Analysis does not reflect recoveries resulting from any causes of actions including, any potential fraudulent transfers or avoidance actions, including but not limited to any Causes of Action relating to the American Express Transaction, which are assumed to have zero value for purposes of the Liquidation Analysis.

3. Preparation of the Liquidation Analysis

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon the Debtors' latest review of liabilities in the Debtors' books and records and claims filed by the general bar date. The Allowed Claims estimate in this Liquidation Analysis does not include any potential claims by governmental entities that have yet to be, or may never be, filed given that the governmental bar date has not yet passed. The Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied upon for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims under the Plan.

When considering the generation of cash proceeds and the distribution thereof, the Debtors believe that the present value of distributions, to the extent available, may be further reduced because such distributions in a chapter 7 may not occur until after the liquidation period assumed in the analysis. Moreover, in the event that litigation becomes necessary to resolve Claims asserted in a chapter 7, distributions to creditors may be further delayed, which both decreases the present value of those distributions and increases administrative expenses that could diminish the liquidation proceeds available to creditors. The effects of this potential delay on the value of distributions under the Liquidation Analysis have not been considered in this analysis.

After consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors, the Debtors have determined, as summarized in the following charts and Article X.C of the Disclosure Statement, that the Plan will provide creditors with a recovery that is not less than creditors would receive pursuant to a liquidation of the Debtors' assets under chapter 7 bankruptcy proceeding.

**Disclaimer**

**THE LIQUIDATION ANALYSIS WAS PREPARED SOLELY AS A GOOD-FAITH ESTIMATE OF THE PROCEEDS THAT MAY BE GENERATED AS A RESULT OF A HYPOTHETICAL CHAPTER 7 LIQUIDATION OF THE DEBTORS' ASSETS. THE LIQUIDATION ANALYSIS RELIES ON A NUMBER OF ESTIMATES AND ASSUMPTIONS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT LEGAL, ECONOMIC, COMPETITIVE, AND OPERATIONAL UNCERTAINTIES AND CONTINGENCIES BEYOND THE DEBTORS' AND THEIR ADVISORS' CONTROL. ADDITIONALLY, VARIOUS DECISIONS ARE BASED UPON CERTAIN ASSUMPTIONS, WHICH ARE SUBJECT TO CHANGE.**

**THERE CAN BE NO GUARANTEE THAT THE ASSUMPTIONS AND ESTIMATES EMPLOYED IN DETERMINING THE HYPOTHETICAL LIQUIDATION VALUES OF THE DEBTORS' ASSETS REFLECT THE ACTUAL VALUES THAT WOULD BE REALIZED IF THE DEBTORS WERE TO UNDERGO AN ACTUAL LIQUIDATION, AND SUCH ACTUAL VALUES COULD VARY MATERIALLY FROM THOSE SHOWN HEREIN. NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS OF A LIQUIDATION OF THE DEBTORS UNDER CHAPTER 7 OF THE BANKRUPTCY CODE WOULD OR WOULD NOT APPROXIMATE EITHER THE ASSUMPTIONS ON WHICH THIS LIQUIDATION ANALYSIS IS BASED OR THE RESULTS OF THE LIQUIDATION ANALYSIS REFLECTED HEREIN.**

**THIS ANALYSIS HAS NOT BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS AND HAS NOT BEEN PRODUCED IN ACCORDANCE WITH STANDARDS**

**PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS.**

**NOTHING CONTAINED IN THIS LIQUIDATION ANALYSIS IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION, ADMISSION, OR ALLOWANCE OF ANY CLAIM BY THE DEBTORS. THE ACTUAL AMOUNT OR PRIORITY OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH AND USED IN THIS LIQUIDATION ANALYSIS. THE DEBTORS RESERVE ALL RIGHTS TO SUPPLEMENT, MODIFY, OR AMEND THE LIQUIDATION ANALYSIS SET FORTH HEREIN.**

## Liquidation Analysis for PPP Transfer Scenario

High Recovery Case:

| Consolidated Liquidation Analysis: High | Chapter 7 | | | Ch.11 | |
|---|---|---|---|---|---|
| Estimate as of March 31, 2023 | Consolidated.[a] | | | Estimate as of March 31, 2023 | Consolidated.[a] |
| ($000s) | $ | % | | | $ |
| **Gross Liquidation Proceeds** | | | | | |
| 1  Unrestricted Cash | $ 12,536 | | | $ | 12,536 |
| 2  Restricted Cash | 2,100 | | | | 2,100 |
| 3  Pledged PPPLF Loans (Unliquidated) | 389,116 | | | | 421,128 |
| 4  Causes of Action | - | | | | - |
| 5  Legacy Loan Assets | 1,100 | | | | 1,100 |
| **Total Assets and Net Proceeds for Distribution** | **$404,852** | | | | **$436,864** |
| 6  (-) Wind Down Costs | (2,436) | | | | (4,262) |
| 7  (-) Reserves / Contingencies | (3,500) | | | | (3,500) |
| 8  (-) Chapter 11 Professional Fees | - | | | | (3,745) |
| 9  (-) Chapter 7 Trustee Fees | (495) | | | | - |
| 10 (-) Chapter 7 Professional Fees | (3,200) | | | | - |
| 11 (-) Fees on Sale of Legacy loan Portfolio | (110) | | | | (110) |
| 12 (-) Chapter 7 Litigation (Reserve) | (2,000) | | | | - |
| **Net Liquidation Proceeds** | **$ 393,110** | | | | **$ 425,247** |

| Claims Recovery | Claim | Consolidated.[a] | | Claim | Consolidated.[a] | |
|---|---|---|---|---|---|---|
| Class  Claim | Kabbage Inc.[a] | $ | % | Kabbage Inc.[a] | $ | % |
| 13  Administrative & Priority Tax Claims | $ 32 | $ 32 | 100.0% | $ 32 | $ 32 | 100.0% |
| 14  Class 1 - Priority Non-Tax Claims | - | - | N/A | - | - | N/A |
| 15  Class 2 - Other Secured Claims | 2,100 | 2,100 | 100.0% | 2,100 | 2,100 | 100.0% |
| 16  Class 3 - Reserve Bank Claims | 431,315 | 390,978 | 90.6% | 427,397 | 423,115 | 99.0% |
| 17  Class 4 - General Unsecured Claims | 577,920 | - | 0.0% | 31,450 | - | 0.0% |
| 18  Class 5 - Intercompany Claims | - | - | N/A | - | - | N/A |
| 19  Class 6 - Intercompany Interests | N/A | - | N/A | N/A | - | N/A |
| 20  Class 7 - Subordinated Securities Claims | - | - | N/A | - | - | N/A |
| 21  Class 8 - Kservicing Equity Interests | N/A | - | N/A | N/A | - | N/A |
| **Total Recovery** | **$ 1,011,368** | **$ 393,110** | **38.9%** | **$ 460,980** | **$ 425,247** | **92.2%** |

**Notes**: [a] Kabbage, Inc. d/b/a KServicing; Kabbage Canada Holdings, LLC; Kabbage Asset Securitization LLC; Kabbage Asset Funding 2017-A LLC; Kabbage Asset Funding 2019-A LLC; Kabbage Diameter, LLC

Low Recovery Case:

| Consolidated Liquidation Analysis: Low Recovery | Chapter 7 | | | Ch.11 | | |
|---|---|---|---|---|---|---|
| | Estimate as of March 31, 2023 | Consolidated.[a] | | Estimate as of March 31, 2023 | Consolidated.[a] | |
| ($000s) | | $ | % | | $ | |
| **Gross Liquidation Proceeds** | | | | | | |
| 1  Unrestricted Cash | | $ 12,536 | | | $ 12,536 | |
| 2  Restricted Cash | | 2,100 | | | 2,100 | |
| 3  Pledged PPPLF Loans (Unliquidated) | | 389,116 | | | 389,116 | |
| 4  Causes of Action | | - | | | - | |
| 5  Legacy Loan Assets | | 1,100 | | | 1,100 | |
| **Total Assets and Net Proceeds for Distribution** | | **$404,852** | | | **$404,852** | |
| 6  (-) Wind Down Costs | | (2,436) | | | (4,262) | |
| 7  (-) Reserves / Contingencies | | (3,500) | | | (3,500) | |
| 8  (-) Chapter 11 Professional Fees | | - | | | (3,745) | |
| 9  (-) Chapter 7 Trustee Fees | | (495) | | | - | |
| 10 (-) Chapter 7 Professional Fees | | (3,200) | | | - | |
| 11 (-) Fees on Sale of Legacy loan Portfolio | | (110) | | | (110) | |
| 12 (-) Chapter 7 Litigation (Reserve) | | (2,000) | | | - | |
| **Net Liquidation Proceeds** | | **$ 393,110** | | | **$ 393,235** | |

| | Claims Recovery | Claim | Consolidated.[a] | | Claim | Consolidated.[a] | |
|---|---|---|---|---|---|---|---|
| | Class  Claim | Kabbage Inc.[a] | $ | % | Kabbage Inc.[a] | $ | % |
| 13 | Administrative & Priority Tax Claims | $ 32 | $ 32 | 100.0% | $ 32 | $ 32 | 100.0% |
| 14 | Class 1 - Priority Non-Tax Claims | - | - | N/A | - | - | N/A |
| 15 | Class 2 - Other Secured Claims | 2,100 | 2,100 | 100.0% | 2,100 | 2,100 | 100.0% |
| 16 | Class 3 - Reserve Bank Claims | 431,315 | 390,978 | 90.6% | 427,397 | 391,103 | 91.5% |
| 17 | Class 4 - General Unsecured Claims | 577,920 | - | 0.0% | 102,981 | - | 0.0% |
| 18 | Class 5 - Intercompany Claims | - | - | N/A | - | - | N/A |
| 19 | Class 6 - Intercompany Interests | N/A | - | N/A | N/A | - | N/A |
| 20 | Class 7 - Subordinated Securities Claims | - | - | N/A | - | - | N/A |
| 21 | Class 8 - Kservicing Equity Interests | N/A | - | N/A | N/A | - | N/A |
| | **Total Recovery** | **$ 1,011,368** | **$ 393,110** | **38.9%** | **$ 532,510** | **$ 393,235** | **73.8%** |

Notes: [a] Kabbage, Inc. d/b/a KServicing; Kabbage Canada Holdings, LLC; Kabbage Asset Securitization LLC; Kabbage Asset Funding 2017-A LLC; Kabbage Asset Funding 2019-A LLC; Kabbage Diameter, LLC

**Notes to the Liquidation Analysis for PPP Transfer**

The following Notes describe the assumptions that were made with respect to assets and wind down costs and other expenses of the Trustee.

All scenarios assume that neither the Trustee—in a chapter 7 wind down, or the Wind Down Estates—in a chapter 11 wind down, will service the PPP loans after the Conversion Date or the Effective Date of the Plan, as applicable.

"Transfer Costs" represent expenses associated with transferring the Debtors' PPP Loan servicing obligations to an alternate loan servicer. In a chapter 7, the Liquidation Analysis assumes the Trustee would seek to transfer the Debtors' loan servicing obligations to a third-party alternate servicer. In order to do so, a significant data engineering process would be undertaken by the Trustee and its professionals and any operating employees. Such a process would include preparation of all data and systems for the alternate servicer to be able to take over servicing the loan portfolio. The Liquidation Analysis assumes the transfer process would require considerable labor and cost. In a chapter 11, the transfer of loans can be completed at a cost (estimated for purposes only of this Liquidation Analysis at approximately $250,000 per portfolio) prior to the Effective Date of the Plan.

"Alternate Servicer Costs" represent the estimated servicing fees charged by a third-party alternate servicer that would take on servicing obligations from the Debtors for the benefit of the Reserve Bank and the Partner Banks, as applicable.

A. **Assets:**

   1. **Unrestricted Cash**

   Unrestricted Cash represents the estimated unrestricted cash balance at the Conversion Date. The Liquidation Analysis assumes a 100% recovery on the Unrestricted Cash.

   2. **Restricted Cash**

   Restricted Cash represents cash held in escrow by Celtic Bank, the remaining amount of which Celtic is obligated to remit to the Debtors within five business days of the termination of the agreement pursuant to which Celtic and the Debtors partnered to originate the Legacy Loans.

   3. **Pledged PPPLF Loans (Unliquidated)**

   Pledged PPPLF Loans assumes a forecasted outstanding balance of the Federal Reserve's PPPLF Loan principal and interest at the Conversion Date less estimated "excess amounts" associated with the $100k Issue, Form 940 Issue, and E-Tran Issue loan populations; in the event such excess amounts are honored by the SBA, the Pledged PPPLF Loans balance will increase. Forecasted loan balances are based on projected timing of loan payoff factoring in forgiveness status and borrower payment activity status. Reduction of the loan balance by the estimated excess amounts is intended to reflect a range associated with the potential risk that the SBA may not forgive, or honor its guarantee to purchase, the full amount of a particular PPPLF Loan with a potential $100k Issue, Form 940 Issue, and/or E-Tran Issue. For the avoidance of doubt, the Debtors believe that the entire balance of all PPP Loans in its portfolios remain eligible for forgiveness and guaranty purchase by the SBA and the SBA may ultimately forgive or guarantee purchase the full amount. The risk of failure of the SBA to forgive or purchase such excess amounts is assumed only for purposes of the Liquidation Analysis.

   4. **Causes of Action**

   Due to the inherently uncertain nature of litigation, the Liquidation Analysis assumes $0 on account of the Debtors' causes of action in either chapter 7 or chapter 11. Nothing herein shall be interpreted to be an admission or opinion with respect to the nature, validity, or value of causes of action the Debtors may have against any person or entity.

   5. **Legacy Loan assets**

   Legacy Loan assets represent the potential sale of the Legacy Loans. The assumed sale price is 10% of the principal balance for the remaining Legacy Loan portfolio as of the Conversion Date and is intended to reflect the Debtors' assignment of value for a *de minimis* recovery. The Debtors have conservatively assumed recoveries would be the same in either chapter 7 or chapter 11. The analysis assumes that the agency referred loans could not be easily monetized, and no value is attributed to them in the event of a sale.

7

B. **Wind Down Costs and Other Expenses:**

6. **Wind Down Costs**

Wind Down costs represent expenses associated with winding down the Debtors' estate after the Conversion Date or the Effective Date of the Plan, as applicable. In both chapter 7 and chapter 11, Wind Down costs include tax payments, tax advisors, software, and other administrative costs. In chapter 11, additional costs related to payroll, staffing firms, and IT infrastructure consultants would be expected in connection with a corporate wind down.

7. **Reserves / Contingencies**

Reserves / Contingencies represents reserves for contingent liabilities related to taxes, payroll, subpoenas, document preservation and other potential costs associated with winding down the estates after the Conversion Date or the Effective Date of the Plan, as applicable.

8. **Chapter 11 Professional Fees**

Represents costs incurred by the Debtors on a post-Effective Date basis for services rendered by their current chapter 11 professionals related to the winding down of the Debtors' estates. The Liquidation Analysis assumes there are no unpaid pre-Effective Date professional fees accounted for in either chapter 7 or chapter 11.

9. **Chapter 7 Trustee Fees**

Under section 704 of the Bankruptcy Code, a Trustee must, among other duties, collect and convert property of the estates as expeditiously as is compatible with the best interests of parties in interest, which could result in potentially distressed recoveries. The related chapter 7 Trustee fees are calculated based upon the statutory scale set forth in section 326(a) of the Bankruptcy Code, which provides for fees equal to 25% of the first $5,000 of distributions; 10% of the next $45,000 of distributions; 5% of the next $950,000 of distributions; and 3% of distributions in excess of $1,000,000. The Liquidation Analysis assumes that return of Pledged PPPLF Loans to the Reserve Bank on account of Reserve Bank Claims is excluded from the total distributions for purposes of calculating chapter 7 trustee fees pursuant to Bankruptcy Code section 326(a).

10. **Chapter 7 Professional Fees**

Represents costs incurred by the Trustee following the Conversion Date for professionals, including a financial advisor, counsel, and noticing agent to complete bankruptcy noticing, required during the wind down period.

11. **Fees on Sale of Legacy loan Portfolio**

Represents the assumed costs, in either a chapter 7 or a chapter 11, associated with conducting a marketing process for the sale of the Legacy Loan assets.

12. **Chapter 7 Litigation (Reserve)**

Represents the assumed costs associated with potential litigation regarding the chapter 7 liquidation.

C. **Recovery Analysis:**

13. **Administrative and Priority Tax Claims**

Represents the priority tax claims based on the company's books and records and/or asserted by federal and state agencies.

8

**14. Class 1 - Priority Non-Tax Claims:**

The estimated claim amount for Priority Non-Tax Claims is currently assumed to be zero.

**15. Class 2 - Other Secured Claims:**

The estimated claim amount for Other Secured Claims consists primarily of Celtic Bank's claims against amounts held in escrow which constitute Restricted Cash for purposes herein. In chapter 7, the allowed amount of Celtic Bank's Other Secured Claim is estimated to be $2,100,000, which is the entirety of the cash held in escrow. In chapter 11, it is assumed that a portion of that cash is released to the Debtors' estates, and the allowed amount of the Claim will consist of the difference between the total Restricted Cash (i.e., the amounts held in escrow) and the amount released to the Debtors' estates.

**16. Class 3 - Reserve Bank Claims:**

The estimated claim amount for Reserve Bank Claims consists of the Reserve Bank Secured Claims and the Reserve Bank Priority Claims as of the Conversion Date. The claim amount also includes Transfer Costs and Alternative Service Provider Costs, as well as any unreimbursed professional fees. The Reserve Bank Claims were estimated solely for purposes of this Liquidation Analysis, and do not limit the actual claims that may be asserted by the Reserve Bank in respect of the Program Agreements.

**17. Class 4 - General Unsecured Claims:**

The estimated General Unsecured Claims consist of claims by or related to CRB, CB, vendors, borrowers, the putative class action plaintiffs, unsecured tax obligations, and executory contract rejection damages.

The estimated recovery for holders of General Unsecured Claims is based on an assumed pro rata share of distributable value available to such holders after distribution to senior claims.

In chapter 7, the Liquidation Analysis assumes that (i) the CRB claims consist of the value of the outstanding principal of all CRB Loans as of the Conversion Date as well as Transfer Costs or Alternate Servicer Costs, and (ii) the CB claims consist only of Transfer Costs and Alternate Servicer Costs.[1]

In chapter 11, the Liquidation Analysis assumes that (i) the CRB claims consist of estimated "excess amounts" associated with the $100k Issue, Form 940 Issue, and E-Tran Issue loan populations,[2] as well as claims associated with Transfer Costs and Alternate Servicer Costs, and (ii) the CB claims consist only of Transfer Costs and Alternate Servicer Costs.

**18. Class 5- Intercompany Claims:**

---

[1] Pursuant to the Settlement Agreement by and between KServicing and CB, as approved by the Bankruptcy Court pursuant to the 9019 Order, CB released all of its claims against KServicing arising out of the PPP, among other things, prior to the effective date of the Settlement Agreement (November 9, 2022).

[2] Estimated excess amounts are intended to reflect a range associated with the potential risk that the SBA may not forgive, or honor its guaranty to purchase, the full amount of a particular PPP Loan with a potential $100k Issue, Form 940 Issue, and/or E-Tran Issue. For the avoidance of doubt, the Debtors believe that the entire balance of all PPP Loans in its portfolios remain eligible for forgiveness and guaranty purchase by the SBA and the SBA may ultimately forgive or guaranty purchase the full amount. The risk of failure of the SBA to forgive or purchase such excess amounts is assumed only for purposes of the Liquidation Analysis.

To the Debtors' knowledge, there are currently no Class 5 Claims. The Debtors estimate that there will no Class 5 recoveries in both the high recovery and low recovery scenario.

**19. Class 6 - Intercompany Interests:**

The Debtors estimate that there will no Class 6 recoveries in both the high recovery and low recovery scenario.

**20. Class 7 - Subordinated Securities Claims:**

The Debtors estimate that there will no Class 7 recoveries in both the high recovery and low recovery scenario.

**21. Class 8 – KServicing Equity Interests:**

The Debtors estimate that there will no Class 8 recoveries in both the high recovery and low recovery scenario.

## Liquidation Analysis for Post-Effective Date Servicing Scenario

High Recovery Case:

| Consolidated Liquidation Analysis: High | Chapter 7 | | Ch. 11 | |
|---|---|---|---|---|
| Estimate as of March 31, 2023 | Consolidated.[a] | | Estimate as of March 31, 2023 | Consolidated.[a] |
| ($000s) | $ | % | | $ |
| **Gross Liquidation Proceeds** | | | | |
| 1  Unrestricted Cash | $ 12,904 | | | $ 12,904 |
| 2  Restricted Cash | 2,100 | | | 2,100 |
| 3  Pledged PPPLF Loans (Unliquidated) | 389,116 | | | 421,128 |
| 4  Causes of Action | - | | | - |
| 5  Legacy Loan Assets | 1,100 | | | 7,853 |
| **Total Assets and Net Proceeds for Distribution** | **$405,220** | | | **$443,985** |
| 6  (-) Wind Down Costs | (2,436) | | | (10,727) |
| 7  (-) Reserves / Contingencies | (3,500) | | | (9,500) |
| 8  (-) Chapter 11 Professional Fees | - | | | (4,120) |
| 9  (-) Chapter 7 Trustee Fees | (495) | | | - |
| 10 (-) Chapter 7 Professional Fees | (3,200) | | | - |
| 11 (-) Fees on Sale of Legacy loan Portfolio | (110) | | | - |
| 12 (-) Chapter 7 Litigation (Reserve) | (2,000) | | | - |
| **Net Liquidation Proceeds** | **$ 393,479** | | | **$ 419,638** |

| Claims Recovery | Claim | Consolidated.[a] | | Claim | Consolidated.[a] | |
|---|---|---|---|---|---|---|
| Class  Claim | Kabbage Inc.[a] | $ | % | Kabbage Inc.[a] | $ | % |
| 13  Administrative & Priority Tax Claims | $ 32 | $ 32 | 100.0% | $ 32 | $ 32 | 100.0% |
| 14  Class 1 - Priority Non-Tax Claims | - | - | N/A | - | - | N/A |
| 15  Class 2 - Other Secured Claims | 2,100 | 2,100 | 100.0% | 200 | 200 | 100.0% |
| 16  Class 3 - Reserve Bank Claims | 431,315 | 391,347 | 90.7% | 427,147 | 419,406 | 98.2% |
| 17  Class 4 - General Unsecured Claims | 577,920 | - | 0.0% | 30,950 | - | 0.0% |
| 18  Class 5 - Intercompany Claims | - | - | N/A | - | - | N/A |
| 19  Class 6 - Intercompany Interests | N/A | - | N/A | N/A | - | N/A |
| 20  Class 7 - Subordinated Securities Claims | - | - | N/A | - | - | N/A |
| 21  Class 8 - Kservicing Equity Interests | N/A | - | N/A | N/A | - | N/A |
| **Total Recovery** | **$ 1,011,368** | **$ 393,479** | **38.9%** | **$ 458,330** | **$ 419,638** | **91.6%** |

Notes: [a] Kabbage, Inc. d/b/a KServicing; Kabbage Canada Holdings, LLC; Kabbage Asset Securitization LLC; Kabbage Asset Funding 2017-A LLC; Kabbage Asset Funding 2019-A LLC; Kabbage Diameter, LLC

Low Recovery Case:

| | Consolidated Liquidation Analysis: Low Recovery | Chapter 7 | | | Ch.11 | |
|---|---|---|---|---|---|---|
| | | Estimate as of March 31, 2023 | Consolidated.[a] | | Estimate as of March 31, 2023 | Consolidated.[a] |
| | ($000s) | | $ | % | | $ |
| | **Gross Liquidation Proceeds** | | | | | |
| 1 | Unrestricted Cash | | $ 12,904 | | | $ 12,904 |
| 2 | Restricted Cash | | 2,100 | | | 2,100 |
| 3 | Pledged PPPLF Loans (Unliquidated) | | 389,116 | | | 389,116 |
| 4 | Causes of Action | | - | | | - |
| 5 | Legacy Loan Assets | | 1,100 | | | 7,853 |
| | **Total Assets and Net Proceeds for Distribution** | | **$405,220** | | | **$411,973** |
| 6 | (-) Wind Down Costs | | (2,436) | | | (10,727) |
| 7 | (-) Reserves / Contingencies | | (3,500) | | | (9,500) |
| 8 | (-) Chapter 11 Professional Fees | | - | | | (4,120) |
| 9 | (-) Chapter 7 Trustee Fees | | (495) | | | - |
| 10 | (-) Chapter 7 Professional Fees | | (3,200) | | | - |
| 11 | (-) Fees on Sale of Legacy loan Portfolio | | (110) | | | - |
| 12 | (-) Chapter 7 Litigation (Reserve) | | (2,000) | | | - |
| | **Net Liquidation Proceeds** | | **$ 393,479** | | | **$ 387,627** |

| | Claims Recovery | Claim | Consolidated.[a] | | Claim | Consolidated.[a] | |
|---|---|---|---|---|---|---|---|
| | Class  Claim | Kabbage Inc.[a] | $ | % | Kabbage Inc.[a] | $ | % |
| 13 | Administrative & Priority Tax Claims | $ 32 | $ 32 | 100.0% | $ 32 | $ 32 | 100.0% |
| 14 | Class 1 - Priority Non-Tax Claims | - | - | N/A | - | - | N/A |
| 15 | Class 2 - Other Secured Claims | 2,100 | 2,100 | 100.0% | 1,100 | 1,100 | 100.0% |
| 16 | Class 3 - Reserve Bank Claims | 431,315 | 391,347 | 90.7% | 427,147 | 386,495 | 90.5% |
| 17 | Class 4 - General Unsecured Claims | 577,920 | - | 0.0% | 102,481 | - | 0.0% |
| 18 | Class 5 - Intercompany Claims | - | - | N/A | - | - | N/A |
| 19 | Class 6 - Intercompany Interests | N/A | - | N/A | N/A | - | N/A |
| 20 | Class 7 - Subordinated Securities Claims | - | - | N/A | - | - | N/A |
| 21 | Class 8 - Kservicing Equity Interests | N/A | - | N/A | N/A | - | N/A |
| | **Total Recovery** | **$ 1,011,368** | **$ 393,479** | **38.9%** | **$ 530,760** | **$ 387,627** | **73.0%** |

**Notes**: [a] Kabbage, Inc. d/b/a KServicing; Kabbage Canada Holdings, LLC; Kabbage Asset Securitization LLC; Kabbage Asset Funding 2017-A LLC; Kabbage Asset Funding 2019-A LLC; Kabbage Diameter, LLC

**Notes to the Liquidation Analysis —Post-Effective Date PPP Servicing**

The following Notes describe the assumptions that were made with respect to assets and Wind Down costs and other expenses of the Trustee.

Both chapter 11 scenarios assume that the Wind Down Estates continue to service the Legacy Loan and PPP Loan portfolios until maturity. The chapter 7 scenario assumes that the Trustee will not service the PPP Loans after the Conversion Date or the effective date of the Plan, as applicable.

A. **Assets:**

1. **Unrestricted Cash**

Unrestricted Cash represents the estimated unrestricted cash balance at the Conversion Date. The Liquidation Analysis assumes a 100% recovery on the Unrestricted Cash.

2. **Restricted Cash**

Restricted Cash represents cash held in escrow by Celtic Bank, the remaining amount of which Celtic is obligated to remit to the Debtors within five business days of the termination of the agreement pursuant to which Celtic and the Debtors partnered to originate the Legacy Loans.

3. **Pledged PPPLF Loans (Unliquidated)**

Pledged PPPLF Loans assumes a forecasted outstanding balance of the Federal Reserve's PPPLF Loan principal and interest at the Conversion Date less estimated "excess amounts" associated with the $100k Issue, Form 940 Issue, and E-Tran Issue loan populations; in the event such excess amounts are honored by the SBA, the Pledged PPPLF Loans balance will increase. Forecasted loan balances are based on projected timing of loan payoff factoring in forgiveness status and borrower payment activity status. Reduction of the loan balance by the estimated excess amounts is intended to reflect a range associated with the potential risk that the SBA may not forgive, or honor its guaranty to purchase, the full amount of a particular PPPLF Loan with a potential $100k Issue, Form 940 Issue, and/or E-Tran Issue. For the avoidance of doubt, the Debtors believe that the entire balance of all PPP Loans in its portfolios remain eligible for forgiveness and guaranty purchase by the SBA and the SBA may ultimately forgive or guarantee purchase the full amount. The risk of failure of the SBA to forgive or purchase such excess amounts is assumed only for purposes of the Liquidation Analysis.

4. **Causes of Action**

Due to the inherently uncertain nature of litigation, the Liquidation Analysis assumes $0 on account of the Debtors' causes of action in either chapter 7 or chapter 11. Nothing herein shall be interpreted to be an admission or opinion with respect to the nature, validity, or value of causes of action the Debtors may have against any person or entity.

5. **Legacy Loan Assets**

Legacy Loan assets represent the potential sale of the Legacy Loans in chapter 7 and ordinary course collection of those loans in chapter 11. The assumed sale price is 10% of the principal balance for the remaining Legacy Loan portfolio as of the Conversion Date and is intended to reflect the Debtors' assignment of value for a *de minimis* recovery. The analysis assumes that the agency referred loans could not be easily monetized, and no value is attributed to them in the event of a sale. In chapter 11, the analysis assumes forecasted collections on the Legacy Loan portfolios over the course of period in which the Debtors continue to service the loans.

B. **Wind Down Costs and Other Expenses:**

6. **Wind Down Costs**

Wind Down Costs represent expenses associated with winding down the Debtors' estate post-transfer of any loan servicing in chapter 7, while in chapter 11 Wind Down Costs represent the overhead costs of servicing the loan portfolios, not directly or indirectly attributable to any particular portfolio and are borne by the estate. In both chapter 7 and chapter 11, this includes items such as tax payments and, tax advisors, software, and other administrative costs. In chapter 11, additional costs related to payroll, staffing firms, and IT infrastructure consultants would be expected, and well as the full cost of Company overhead and expenses not directly or indirectly attributable to servicing any individual loan portfolio.

7. **Reserves / Contingencies**

Reserves / Contingencies represents reserves for contingent liabilities related to taxes, payroll, subpoenas, document preservation and other potential costs associated with winding down the estates after the Conversion Date or the Effective Date of the Plan, as applicable.

8. **Chapter 11 Professional Fees**

Represents costs incurred by the Debtors on a post-effective date basis for services rendered by their current chapter 11 professionals related to the winding down of the Debtors' estates. The Liquidation Analysis assumes there are no unpaid pre-effective date professional fees accounted for in either chapter 7 or chapter 11.

9. **Chapter 7 Trustee Fees**

Under section 704 of the Bankruptcy Code, a Trustee must, among other duties, collect and convert property of the estates as expeditiously as is compatible with the best interests of parties in interest, which could result in potentially distressed recoveries. The related chapter 7 Trustee fees are calculated based upon the statutory scale set forth in section 326(a) of the Bankruptcy Code, which provides for fees equal to 25% of the first $5,000 of distributions; 10% of the next $45,000 of distributions; 5% of the next $950,000 of distributions; and 3% of distributions in excess of $1,000,000. The Liquidation Analysis assumes that return of Pledged PPPLF Loans to the Reserve Bank on account of Reserve Bank Claims is excluded from the total distributions for purposes of calculating chapter 7 trustee fees pursuant to Bankruptcy Code section 326(a).

10. **Chapter 7 Professional Fees**

Represents costs incurred by the Trustee following the Conversion Date for professionals, including a financial advisor, counsel, and noticing agent to complete bankruptcy noticing, as well as tax advisors and tax counsel required during the wind down period.

11. **Fees on Sale of Legacy loan Portfolio**

Represents the assumed costs, in chapter 7, associated with conducting a marketing process for the sale of the Legacy Loan assets. The sale, and therefore the costs associate with such sale, are assumed to occur only in chapter 7, since the Wind Down Estates will continue to service the Legacy Loans and receive collections following a chapter 11.

12. **Ch.7 litigation (Reserve)**

Represents the assumed costs associated with potential litigation regarding the chapter 7 liquidation.

C. **Recovery Analysis:**

13. **Admin and Priority Tax Claims**

Represents the priority tax claims asserted by federal and state agencies.

14. **Class 1 - Priority Non-Tax Claims:**

The estimated claim amount for Priority Non-Tax Claims is currently assumed to be zero.

15. **Class 2 - Other Secured Claims:**

The estimated claim amount for Other Secured Claims consists primarily of Celtic Bank's claims against amounts held in escrow which constitute Restricted Cash for purposes herein. In chapter 7, the allowed amount of Celtic Bank's Other Secured Claim is estimated to be $2,100,000, which is the entirety of the cash held in escrow. In chapter 11, it is assumed that a portion of that cash is released to the Debtors' estates, and the allowed amount of the Claim will consist of the difference between the total Restricted Cash (i.e., the amounts held in escrow) and the amount released to the Debtors' estates.

16. **Class 3 - Reserve Bank Claims:**

The estimated claim amount for Reserve Bank Claims consists of the Reserve Bank Secured Claims and the Reserve Bank Priority Claims as of the Conversion Date. The claim amount also includes Transfer Costs and Alternative Service Provider Costs in chapter 7. No transfer costs are included in chapter 11 as the Company will be providing loan servicing. The claim in chapter 11, includes direct and indirect servicing costs, which are assumed to be the same as the Alternative Service Provider Costs. The Reserve Bank Claims were estimated solely for purposes of this Liquidation Analysis and do not limit the actual claims that may be asserted by the Reserve Bank in respect of the Program Agreements. In both scenarios, the claim also includes any unreimbursed professional fees.

**17. Class 4 - General Unsecured Claims:**

The estimated General Unsecured Claims consist of claims by or related to CRB, CB, vendors, borrowers, the putative class action plaintiffs, unsecured tax obligations, and executory contract rejection damages.

The estimated recovery for holders of General Unsecured Claims is based on an assumed pro rata share of distributable value available to such holders after distribution to senior claims.

In chapter 7, the Liquidation Analysis assumes that (i) the CRB claims consist of the value of the outstanding principal of all CRB Loans as of the Conversion Date as well as Transfer Costs or Alternate Servicer Costs, and (ii) the CB claims consist only of Transfer Costs and Alternate Servicer Costs.

In chapter 11, the Liquidation Analysis assumes that (i) the CRB claims consist of estimated "excess amounts" associated with the $100k Issue, Form 940 Issue and E-Tran Issue loan populations,[3] as well as claims associated with Alternate Servicer Costs, and (ii) the CB claims consist only of Alternate Servicer Costs.

**18. Class 5- Intercompany Claims:**

To the Debtors' knowledge, there are currently no Class 5 Claims. The Debtors estimate that there will no Class 5 recoveries in both the high recovery and low recovery scenario.

**19. Class 6 - Intercompany Interests:**

The Debtors estimate that there will no Class 6 recoveries in both the high recovery and low recovery scenario.

**20. Class 7 - Subordinated Securities Claims:**

The Debtors estimate that there will no Class 7 recoveries in both the high recovery and low recovery scenario.

**21. Class 8 – KServicing Equity Interests:**

The Debtors estimate that there will no Class 8 recoveries in both the high recovery and low recovery scenario.

---

[3] Estimated excess amounts are intended to reflect a range associated with the potential risk that the SBA may not forgive, or honor its guaranty to purchase, the full amount of a particular PPP Loan with a potential $100k Issue, Form 940 Issue, and/or E-Tran Issue. For the avoidance of doubt, the Debtors believe that the entire balance of all PPP Loans in its portfolios remain eligible for forgiveness and guaranty purchase by the SBA and the SBA may ultimately forgive or guaranty purchase the full amount. The risk of failure of the SBA to forgive or purchase such excess amounts is assumed only for purposes of the Liquidation Analysis.