# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| **KABBAGE, INC. d/b/a KSERVICING**, *et al.*, | Case No. 22-10951 (CTG) |
| | (Jointly Administered) |
| Debtors. [1] | Re: DI Nos. 398, 397, 396, 176 |
| | Hearing Date: January 19, 2023, at 10:00 a.m. ET |
| | Objection Deadline: January 11, 2023, at 4:00 p.m. ET (for the U.S. Trustee) |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF DEBTORS FOR ENTRY OF ORDER (I) APPROVING THE DISCLOSURE STATEMENT OF THE DEBTORS, (II) ESTABLISHING SOLICITATION, VOTING, AND RELATED PROCEDURES, (III) SCHEDULING CONFIRMATION HEARING, (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF PLAN, (V) APPROVING SPECIAL ELECTRONIC NOTICING PROCEDURES, (VI) APPROVING DEBTORS' PROPOSED CURE PROCEDURES FOR UNEXPIRED LEASES AND EXECUTORY CONTRACTS, AND <u>(VII) GRANTING RELATED RELIEF</u>**

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), through his counsel, files this objection (the "Objection") to *Motion Of Debtors For Entry Of Order (I) Approving The Disclosure Statement Of The Debtors, (II) Establishing Solicitation, Voting, And Related Procedures, (III) Scheduling Confirmation Hearing, (IV) Establishing Notice And Objection Procedures For Confirmation Of Plan, (V)*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

*Approving Special Electronic Noticing Procedures, (VI) Approving Debtors' Proposed Cure Procedures For Unexpired Leases And Executory Contracts, And (VII) Granting Related Relief* (the "DS Approval Motion") filed at D.I. 163, and in support, states as follows:

### PRELMINARY STATEMENT

1.      The U.S. Trustee objects to the DS Approval Motion[2] because it proposes a solicitation procedure which does not allow many claimants the opportunity to "opt-out" of the Third Party-Release (defined below) in the Amended Plan (defined below). Therefore, the proposed "opt-out" procedure is unacceptable.[3]

### JURISDICTION, VENUE, AND STANDING

2.      Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

---

[2] Capitalized terms used herein as defined terms and not otherwise defined shall have those meanings ascribed to them in the Amended Plan, Disclosure Statement or otherwise referenced pleading or document.

[3] The United States Trustee has had discussions with Debtors' counsel concerning the objections set forth herein.  The U.S. Trustee will continue to work with the Debtors to resolve or narrow the issues in controversy if possible. Notwithstanding anything in this Objection, the U.S. Trustee reserves any and all rights to make further objections at confirmation or otherwise.

3.      Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans

and disclosure statements filed in chapter 11 cases, and to comment on such plans and disclosure

statements.

4.      Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard

to this Objection.

## RELEVANT FACTS

*Procedural Background*

5.      On October 3, 2022 (the "Petition Date"), the above-captioned Debtors filed

voluntary petitions seeking relief under chapter 11. *See* D.I. 1

6.      The U.S. Trustee has not appointed a committee of unsecured creditors in these

cases. *See* D.I. 156.

*DS Approval Motion*

7.      On October 31, 2022, the Debtors filed the DS Approval Motion seeking approval

of the Amended Disclosure Statement filed at D.I. 396 and establishing certain solicitation

procedures, deadlines, and approval of materials for solicitation of votes on the Amended Plan of

Liquidation filed at D.I. 395.

I.   **The Third Party-Release and Proposed Solicitation Materials.**

8.      The Amended Plan contains a release benefitting several non-Debtor third parties

(the "Third-Party Release") which states:

> As of the Effective Date, except (a) for the right to enforce the Plan or (b) as
> otherwise expressly provided in the Plan or in the Confirmation Order, to the fullest
> extent permissible under applicable law, as such law may be extended or integrated
> after the date upon which the Bankruptcy Court enters the Confirmation Order, on
> or after the Effective Date, **each Released Party** shall be deemed expressly,
> conclusively, absolutely, unconditionally, irrevocably and forever, released, and
> waived **by each of the Releasing Parties from any and all claims, interests,**

**obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims asserted or that may be asserted on behalf of any of the Debtors or their Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors**, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Disclosure Statement, the restructuring of Claims or Interests prior to or in the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation of any of the foregoing or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of confirmation of the Plan, the solicitation of votes on the Plan, the pursuit of consummation of the Effective Date, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing, except for Causes of Action arising from an act or omission of a Released Party that is judicially determined in a Final Order to have constituted actual fraud, gross negligence, criminal misconduct or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not be construed as releasing any post-Effective Date obligations of any party or entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Plan § 10.6 (emphasis added).

9.      The Plan defines a Released Party as:

"Released Parties" means, collectively, each of the following in their capacity as such: (a) the Debtors' and the Debtors' Related Parties; (b) the Wind Down Estates and the Wind Down Estate's Related Parties; and (c) the Reserve Bank and its Related Parties.

Amended Plan § 1.199.

10.      The Amended Plan defines the "Related Parties" as:

1.98    "Related Parties" means, with respect to any Exculpated Party or Released Party: (a) such entities' predecessors (other than with respect to the Debtors), successors and assigns, subsidiaries, affiliates, managed accounts or funds, (b) all of their respective postpetition officers, postpetition directors, postpetition principals, postpetition employees, postpetition agents, postpetition trustees, postpetition advisory board

members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, solely to the extent such persons and entities acted on the behalf of the Released Parties in connection with the matters as to which releases are provided in the Plan, and (c) such entities' respective heirs, executors, estates, servants and nominees; provided, that the Former Officers and Directors of the Debtors shall not be "Related Parties."

Amended Plan § 1.98.

11.     Lastly, the Amended Plan defines the Releasing Parties as:

1.104   "Releasing Parties" means, collectively, each of the following in their capacity as such: (a) the Reserve Bank; **(b) all holders of Claims or Interests who vote to accept the Plan**; **(c) all holders of Claims or Interests that are unimpaired or deemed to accept or impaired or deemed to reject the Plan and who do not object to the Plan**; (d) all holders of Claims or Interests that are eligible to vote to accept or reject the Plan that either vote to reject the Plan or abstain from voting on the Plan for all Classes in which they are eligible to vote and who do not affirmatively opt-out of the releases in accordance with the ballot to solicit acceptances or rejections of the Plan; (e) all holders of Claims or Interests with notice and an opportunity to object to the releases; and (f) with respect to each of the foregoing Entities and Persons in clauses (a) – (e), all of their respective Related Parties solely with respect to claims that such Entities or Persons could have properly asserted on behalf of such Entities or Person in clauses (b) – (e).

Amended Plan § 1.100 (emphasis added).

12.     The DS Approval Motion states that the voting classes—Class 3 (Reserve Bank Claims) and Class 4 (General Unsecured Claims)—will receive ballots to cast their acceptance of rejection of the Amended Plan.  The proposed ballots are found at Exhibits 2-A, 2-B of the DS Approval Motion and the Revised DS Order filed at D.I. 398.  A review of the ballots, as set forth below, reveals that those who vote to "accept" the Plan do not have the option to opt-out of the Third-Party Release.

**Item 3.** **Vote on Plan and Consent to Third Party Release.**

In this item of the Ballot, you will be given the choice to vote to accept, reject or abstain from voting on the Plan and consent (or not consent) to the third party releases in Section 10.6 of the Plan (the "Third Party Releases"). The complete text of the Third Party Release is set forth later in this Ballot.

You have the following four options regarding voting on the Plan and/or consenting to the Third Party Release: (i) vote to accept the Plan and consent to the Third Party Release, (ii) vote to reject the Plan and consent to the Third Party Release, (iii) vote to reject the Plan and opt out of the Third Party Release, and (iv) abstain from voting on the Plan and opt out of the Third Party Release.

Please check ONE box below.

☐ ACCEPT THE PLAN AND CONSENT TO THE THIRD PARTY RELEASE

☐ REJECT THE PLAN AND CONSENT TO THE THIRD PARTY RELEASE

☐ REJECT THE PLAN AND OPT OUT OF THE THIRD PARTY RELEASE

☐ ABSTAIN FROM VOTING THE PLAN AND OPT OUT OF THE THIRD PARTY RELEASE

D.I. 398 at Ex. 2-B.

13.     Moreover, it appears that that creditors in classes who are unimpaired and deemed to accept the plan, and those who are impaired and deemed to reject the Plan, will likewise not have an option to opt-out of same because the Debtors do not propose to send these creditors any documents allowing that opportunity. Rather, it appears, based on the Amended Plan's definition of "Releasing Parties" that such creditors are further required to "object to the Plan" to perhaps not be involuntarily bound to the Third-Party Release, but it is unclear what is meant by "object to the Plan." *See* Amended Plan § 1.100.

14.     The proposed ballots contain an option whereby creditors in Classes 3 and 4 can denote in a box that they "abstain" from voting on the Plan and opt-out of the Third-Party Release. Accordingly, creditors who fail to submit a ballot will be deemed not to have opted-of the Third-Party Release.

**ARGUMENT**

I.   **The Amended Disclosure Statement Should Not Be Approved Because the Amended Plan Is Not Confirmable.**

   A. *Third-Party Releases Should Only be Allowed if there is Affirmative Consent.*

   15.    Some Courts in this District have determined that third party releases of non-debtors should be allowed only to the extent the releasing parties have given affirmative consent. *See In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011).  In *Washington Mutual* the Court held that "any third party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases."  Id. at 355 (emphasis added).  Moreover, the Court clarified that merely having an opt out mechanism is not enough, holding that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (or are not entitled to vote in the first place). Failing to return a ballot is not a sufficient manifestation of consent to a third party release." *Id*. (emphasis added, citing *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999)).

   16.    In *Emerge Energy Services LP*, Case No. 19-11563, 2019 WL 7634308 (Bankr. D. Del, Dec. 5, 2019), the Court ruled that consent to a third party release "cannot be inferred by the failure of a creditor or equity holder to return a ballot or Opt-Out Form." *Id*. at \*52.  The Court reached this conclusion even though the Opt-Out Forms provided conspicuous notice of how to opt-out and the consequences of not doing so.  The Court also rejected the Debtor's argument that inferring consent from "silence" should be approved as typical, customary, and routine. *Id*.  The Court held that it could not, "on the record before it find that the failure of a creditor or equity

holder to return a ballot or Opt-Out Form manifested their intent to provide a release. Carelessness, inattentiveness, or mistake are three reasonable alternative explanations." *Id*. at \*53.

17.     Here, the U.S. Trustee's concerns with the Debtors' proposed "opt-out" procedure would be largely resolved if the Debtors, instead, used an "opt-in" process to the Third-Party Release as that would result in affirmative consent. As of this filing, the Debtors have not agreed to use an "opt-in" procedure. Accordingly, the U.S. Trustee raises the issues set forth below, but in all respects reserves the right to raise same in connection with the confirmation or in any other cases pending before this Court.

### B. Even if "Opt-Out" is Acceptable, the Proposed "Opt-Out" is Meaningless and Deficient Because it is Available Only to a Narrow Swath of Claimants.

18.     Assuming *arguendo* that "opt-out" is an acceptable means to solicit an arguably consensual release of non-debtors from creditors, the proposed "opt-out" process in this case is meaningless and deficient as set forth below. If a plan is patently unconfirmable on its face, the application to approve the disclosure statement must be denied. *In re Quigley Co*., 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007) (citing *In re Beyond.com Corp*., 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003) (collecting cases); *In re 266 Washington Assocs*., 141 B.R. 275, 288 (Bankr. E.D.N.Y.) aff'd, 147 B.R. 827 (E.D.N.Y. 1992); I*n re Filex, Inc*., 116 B.R. 37, 41 (Bankr. S.D.N.Y. 1990)).

19.     The DS Approval Motion proposes a procedure which only provides a narrow swath of creditors the ability to "opt-out" of the Third-Party Release thereby rendering the "opt-out" mechanism meaningless. Those creditors with an ability to "opt-out" at the solicitation stage are: (1) creditors entitled to vote on the Amended Plan, who vote to reject the Amended Plan and opt-out of the Third-Party Release by indicating same on the ballot; and (2) creditors entitled to vote on the Amended Plan, who elect not to vote to accept or reject the *and* opt-out of the Third-Party Release by indicating same on the ballot. The following creditors have no ability to "opt-

out" of the Third-Party Release at the solicitation stage; (1) unimpaired claimants; (2) claimants deemed to reject; (3) claimants entitled to vote on the Amended Plan who vote to accept the Amended Plan; (4) "all holders of Claims or Interests with notice and an opportunity to object to the releases"; and (5) claimants entitled to vote on the Amended Plan who fail to return a ballot. The Amended Disclosure Statement and accompanying voting procedures provide no explanation as to why some creditors get to "opt-out" of the Third-Party Release at the solicitation stage and others do not.

20.    As to the unimpaired claimants that will have the Third-Party Release imposed on them without the opportunity to "opt-out" at solicitation stage, those claimants appear to include administrative claimants and priority tax claimants. The claims these parties would release under the Third-Party Release include their direct claims against numerous non-Debtors, which includes various entities related to the Debtors. Although unimpaired creditors will be paid in full on the claims they hold against the Debtors, the scope of the release of their direct claims against non-debtors is far broader than the claims upon which they will be paid.  The release covers any claims against non-debtor Released Parties that are "based on or relating to, or in any manner arising from, in whole or in part, the Debtors." *See* Amended Plan at § 10.6. So, for example, a taxing authority whose priority claim against the Debtor will be paid in full under the Plan (as required by the Code) could later be subject to an argument by a Released Party that it has no obligation to pay taxes in connection with revenue received from transactions with the Debtors because, under the Plan, the taxing authority has been deemed to release the Released Party for all claim related in any manner to the Debtors. There is no reason to make these parties wait to file a confirmation objection so that they perhaps may not have the Third-Party Release involuntarily imposed on them; as this Court has previously suggested, treatment under a plan is distinct and separate from

the various other provisions included in a plan. Accordingly, although the Bankruptcy Code may deem an unimpaired creditor a creditor that has "accepted" its treatment under a plan, it does not follow that the creditor is deemed to accept all parts of a plan, and if some creditors get an opportunity at the solicitation stage to "opt-out" of certain parts of a plan, then all creditors should be given the same opportunity at the same time.

21.     Concerning the claimants who are deemed to reject the Amended Plan, in this case those claimants appear to include several dozens of both institutional and individual shareholders who do not appear to have signed on to the Amended Plan.  As stated above, there is no reason to make these parties wait to file a confirmation objection (which would probably require hiring counsel) so that perhaps they may not have the Third-Party Release involuntarily imposed on them. Treatment under the Amended Plan is separate and distinct from whether a claimant agrees to having all aspects of a plan imposed on it.  An individual shareholder may hold direct causes of action against the Debtors' officers and directors notwithstanding that it gets nothing under a plan. If the Debtors are providing some creditors the ability to opt-out at the solicitation stage, then all creditors should get that opportunity at the same time.

22.     Regarding creditors entitled to vote on the Amended Plan and who vote to accept it, the same argument applies concerning unimpaired and deemed to reject claimants, arguably with even greater force. The Debtors might argue that this Court ruled that the accepting creditors in *In re TPC Group, Inc. et al.*, Case No. 22-10493 (CTG) (Bankr. Del. 2022), must be afforded the opportunity to opt-out at the solicitation stage because that case concerned a "death trap" with respect to the general unsecured creditor class. But the U.S. Trustee disagrees.  Although the "death trap" feature in that case made the facts of the case particularly egregious, this Court's reasoning in *TPC* rested on the same principle discussed above: there is a difference between voting to accept

the proposed treatment under a plan and objecting to provisions of a plan distinct from the proposed treatment, like a release. Here, the "opt-out", per this Court's reasoning, is an objection to the release distinct from its vote concerning its treatment under a plan. If creditors voting to reject the plan due to the proposed treatment under a plan can "opt-out" of the Third-Party Release at the solicitation stage, so should creditors voting to accept their treatment under the Amended Plan.

23.     Creditors entitled to vote on the Amended Plan who fail to return a ballot will be automatically deemed to consent to the Third-Party Release and be stripped of their direct claims against non-debtors, regardless of the reason they did not vote. Those reasons may include that such creditors (a) never received the solicitation package, or received it late, due to mail errors or delays, or (b) received it timely, and completed it and returned it to the balloting agent, but through no fault of their own, the ballot never reached the balloting agent, or was received late. Other creditors in voting classes may receive the solicitation package, but not understand it, and may not have the time or financial resources to engage counsel and would never imagine that their rights against *non-debtors* could be extinguished through the bankruptcy of these Debtors.

24.     Finally, the Amended Plan will extinguish and release direct claims against non-debtors held by the general category of "all holders of Claims or Interests with notice and an opportunity to object to the releases." No explanation is provided as to who would fall under this category that does not already fall under another of the listed categories of Releasing Parties. Nor is any clarification as to whether "the opportunity to object" means they received a ballot with an "opt-out" box, or something else.

25.     In sum, even assuming the Debtors' proposed "opt-out" procedure leads to a consensual release, here, it is meaningless and deficient because it is offered only to a narrow swath of claimants at the solicitation stage. To be truly meaningful, the Debtor should allow all

the claimants detailed above the opportunity to "opt-out" of the Third-Party Release at the solicitation stage.

## II.    Reservation of Rights.

26.    The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies, and obligations to, *inter alia,* complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.    The U.S. Trustee also reserves all rights with respect to plan confirmation issues, including but not limited to whether the releases in the plan meet relevant confirmation standards until the relevant objection deadline.

## CONCLUSION

Wherefore, for the reasons set forth above, the Amended Disclosure Statement should not be approved, and the DS Approval Motion should be denied.

Dated:  January 11, 2023                    Respectfully submitted,
         Wilmington, Delaware

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGION THREE**

By:  /s/ *Rosa Sierra-Fox*

Rosa Sierra-Fox
Richard L. Schepacarter
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox35
Wilmington, Delaware 19801
Phone: (302) 573-6492
Fax:    (302) 573-6497
rosa.sierra-fox@usdoj.gov