IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**KABBAGE, INC. d/b/a KSERVICING**, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10951 (CTG)<br><br>(Jointly Administered)<br><br>Re: Docket Nos. 176, 396, 397, 398<br>Obj. Deadline: January 6, 2023, at 4:00 p.m. (ET)[2]<br>Hearing Date: January 19, 2023, at 10:00 a.m. (ET) |

**UNITED STATES' RESERVATION OF RIGHTS AND LIMITED OBJECTION TO DEBTORS' MOTION FOR ENTRY OF ORDER APPROVING THE DISCLOSURE STATEMENT OF THE DEBTORS AND TO THE ADEQUACY OF DEBTORS' AMENDED DISCLOSURE STATEMENT FOR THE AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION**

The United States of America (the "United States") on behalf of itself and the U.S. Small Business Administration ("SBA"), submits this reservation of rights and limited objection regarding the adequacy of the *Amended Disclosure Statement for the Amended Joint Chapter 11*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937) (the "Company"); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] On December 1, 2022, Debtors filed a *Notice of Continued Hearing to Consider Approval of (I) the Disclosure Statement and (II) the Relief Requested in the Disclosure Statement Motion* (the "Disclosure Statement Adjournment Notice"). ECF 313. Debtors agreed to extend the objection deadline of the United States to January 11, 2023 at 4:00 p.m. (ET).

*Plan of Liquidation of Kabbage, Inc. (d/b/a KServicing) and Its Affiliated Debtors* (ECF 396) (the "Disclosure Statement" or "DS") and the *Motion of Debtors for Entry of Order Approving the Disclosure Statement of the Debtors* (ECF 176) ("Motion"), and avers as follows:

**NOTICE CONFORMING TO LOCAL RULE 9013-1**

Pursuant to Rule 9013-1(h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the United States does not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**FACTUAL BACKGROUND**

1. Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code on October 3, 2022 (the "Petition Date").

2. The Company has been servicing online loans since its founding in 2008.[3] *See* Declaration of Deborah Rieger-Paganis, ¶ 9. ECF 13.

3. In response to the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 28, signed into law on March 27, 2020. The CARES Act created the Paycheck Protection Program ("PPP"), a program administered by the SBA and designed to help eligible small businesses, non-profits and self-employed individuals make payroll and pay certain operating expenses during the pandemic. The CARES Act authorized the SBA to guarantee loans to eligible small businesses, non-profits, and self-employed individuals for covered uses. CARES Act § 1102, 134 Stat. at 286 (codified at

---

[3] Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to them in the Plan and Disclosure Statement.

§ 636(a)(36)(F)(i)).  The PPP loans were funded by lenders, while the SBA guaranteed the loans and paid lenders a processing fee for each loan.

4.	The Company's current business consists of servicing its loan portfolio and the loan portfolio of its Partner Banks, which as of the Petition Date, included mostly loans issued to small businesses, non-profits, and self-employed individuals under the PPP.  Rieger-Paganis Decl., ¶ 9 ECF 13.  Pursuant to an agreement with the SBA, the Company became an authorized PPP lender.  *Id*. at ¶ 11.  It originated and serviced PPP loans.  *Id*. at ¶ 15.

5.	The Board of Governors of the Federal Reserve System authorized the establishment of the Paycheck Protection Program Liquidity Facility ("PPPLF"), pursuant to which PPP lenders obtained financing to originate PPP loans from, among others, the Federal Reserve Bank of San Francisco (the "Reserve Bank").  Rieger-Paganis Decl., ¶ 27.  The Company obtained financing from the PPPLF with certain PPP loans made by the Company securing the financing.  *Id*. ¶ 28.

6.	Debtors filed their *Joint Chapter 11 Plan of Liquidation* on October 4, 2022.  ECF 14.  On October 5, 2022, Debtors filed their initial Disclosure Statement.  ECF 63.

7.	On October 31, 2022, Debtors filed the Motion seeking approval of the Disclosure Statement.  ECF 176.

8.	On November 15, 2022, Debtors filed a *Notice of Continued Hearing to Consider Approval of (I) the Disclosure Statement and (II) the Relief Requested in the Disclosure Statement Motion*.  ECF 252.

9.	On December 30, 2022, Debtors filed the Disclosure Statement (ECF 396), along with their *Amended Joint Chapter 11 Plan of Liquidation of Kabbage, Inc. (d/b/a KServicing) and Its Affiliated Debtors* (the "Plan") ECF 395.

## ARGUMENT

**The Disclosure Statement Must Include Information About How Third-Party Loan Servicers Will Be Able to Access Necessary Information to Continue Servicing Loans**

10. Under the Bankruptcy Code, a disclosure statement must provide "adequate information," that is, information sufficient to enable those with claims against or interests in the Debtor "to make an informed judgment about the plan." 11 U.S.C. §§ 1125(a)(1), 1125(b). "[I]t is understood that the general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against the plan." *In re Phoenix Petroleum Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001).

11. Here, although Debtors included significant disclosures about ongoing obligations for their PPP business and some discussion of risks associated with their business and industry, the Disclosure Statement still lacks substantive information that would be relevant for creditors to make an informed voting decision.

12. As part of "Implementation" of the Plan, the Disclosure Statement provides that KServicing has been and will continue to service PPP loans in the ordinary course and in accordance with agreements, "until the Effective Date." DS at 7 (§ I.B). While supplying some detail on how KServicing would undertake Post-Effective Date PPP Servicing, the Disclosure Statement is otherwise silent as to what will happen if the Debtors do not provide Post-Effective Date PPP Servicing, except to say that their priority is to transfer "PPP servicing obligations to third-party loan servicer(s)." *Id.*

13. Importantly, the Disclosure Statement is silent on how Debtors will ensure that any third-party loan servicer will have access to AmEx-held loan documentation that is necessary to service the loans. As already noted in the Disclosure Statement, Debtors appear to be having

difficulty "retrieving documents from AmEx," including on the "AmEx Platform," and "responses are often delayed and incomplete." DS at 31 (§ IV.B.). Whether a third-party servicer has access to the loan documentation on the AmEx platform for Debtor-serviced loans impacts the value of the servicing rights for those loans because those documents will likely aid in collecting the outstanding amounts. Hence, the disclosure of Debtors' efforts to ensure any third-party servicer would have access to the documents on the AmEx platform is an item that a creditor would consider in assessing the likelihood of its recovery under the Plan and in making an informed voting decision.

14. Therefore, Debtors should amend the Disclosure Statement to address how Debtors intend to properly transition servicing, including providing access to PPP loan borrower information, such as the "necessary and critical" "books and records" on the AmEx Platform. DS at 31 (§ IV.B).

## RESERVATION OF RIGHTS

15. The United States and Debtors' counsel have been negotiating language to address these concerns and others regarding the adequacy of the Disclosure Statement. Although the parties aim to resolve the issues consensually, the United States files this objection in the interest of time and out of an abundance of caution. The United States expressly reserves its rights to raise any and all other objections to the Disclosure Statement at the hearing.

## CONCLUSION

16. For the foregoing reasons, the United States respectfully requests the Court to (a) deny approval of the Disclosure Statement absent modification to address the United States' concerns raised in this objection, and (b) grant such other and further relief as this Court deems just and proper.

Dated: January 11, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DAVID C. WEISS
United States Attorney

*/s/ Alastair M. Gesmundo*
RUTH A. HARVEY
RODNEY A. MORRIS
ALASTAIR M. GESMUNDO
STANTON McMANUS
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044
Tel. (202) 305-4659
Fax (202) 514-9163
Alastair.M.Gesmundo@usdoj.gov