```
1                 UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF DELAWARE
2

3   IN RE:                         .  Chapter 11
                                   .
4   TPC GROUP INC., et al.,        .  Case No. 22-10493 (CTG)
                                   .
5                                  .  Jointly Administered
                                   .
6                                  .  Courtroom No. 7
                                   .  824 Market Street
7                                  .  Wilmington, Delaware 19801
                                   .
8           Debtors.               .  Thursday, September 22, 2022
    . . . . . . . . . . . . . . .  .  9:00 a.m.
9

10                     TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE CRAIG T. GOLDBLATT
11                UNITED STATES BANKRUPTCY JUDGE

12
    APPEARANCES:
13
    For the Debtors:         Scott Bowling, Esquire
14                           BAKER BOTTS LLP
                             30 Rockefeller Plaza
15                           New York, New York 10112

16                           James Prince, Esquire
                             BAKER BOTTS LLP
17                           2001 Ross Avenue, Suite 900
                             Dallas, Texas 75201
18

19  Audio Operator:          Theresa Mistretta

20  Transcription Company:   Reliable
                             The Nemours Building
21                           1007 N. Orange Street, Suite 110
                             Wilmington, Delaware 19801
22                           Telephone: (302)654-8080
                             Email: gmatthews@reliable-co.com
23

24  Proceedings recorded by electronic sound recording,
    transcript produced by transcription service.
25
```

```
 1  APPEARANCES (CONTINUED):

 2  For the Debtors:          Robert Dehney, Esquire
                              MORRIS, NICHOLS, ARSHT & TUNNELL LLP
 3                            1201 N. Market Street, 16th Floor
                              P.O. Box 1347
 4                            Wilmington, Delaware 19899

 5  For the U.S. Trustee:     Rosa Sierra Fox, Esquire
                              UNITED STATES DEPARTMENT OF JUSTICE
 6                            OFFICE OF THE UNITED STATES TRUSTEE
                              844 King Street, Suite 2207
 7                            Lockbox 35
                              Wilmington, Delaware 19801
 8
    For the Supporting
 9  Sponsors:                 Hugh Murtagh, Esquire
                              LATHAM & WATKINS LLP
10                            1271 6th Avenue
                              New York, New York 10020
11

12  For the Committee:        Naomi Moss, Esquire
                              AKIN GUMP STRAUSS HAUER & FELD LLP
13                            One Bryant Park
                              Bank of America Tower
14                            New York, New York 10036

15

16

17

18

19

20

21

22

23

24

25
```

1                               INDEX

2    MOTION GOING FORWARD AS A STATUS CONFERENCE:              PAGE

3    Agenda
     Item 2: Debtors' Motion for Entry of an Order (I)           4
4            Approving the Disclosure Statement, (II)
             Fixing Voting Record Date, (III) Approving
5            Solicitation Materials and Procedures for
             Distribution Thereof, (IV) Approving Forms
6            Of Ballots and Establishing Procedures for
             Plan Voting, (V) Scheduling Hearing and
7            Establishing Notice and Objection Procedures
             In Respect of Confirmation of Plan, and (VI)
8            Granting Related Relief
             [D.I. 490; Filed 7/22/22]
9
10           Court's Ruling:                                    68

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | (Proceedings commenced at 9:00 a.m.) |
| 2 | THE COURT: Good morning. |
| 3 | MR. PRINCE: Good morning, Your Honor. |
| 4 | THE COURT: Mr. Prince. |
| 5 | MR. PRINCE: Jim Prince on behalf of the Debtors |
| 6 | with Baker Botts, and I have my partners, Scott Bowling, and |
| 7 | obviously, Mr. Dehney from the Morris Nichols firm. I'd also |
| 8 | like to introduce, although I think Your Honor met him at the |
| 9 | first day of hearing, but it's always a treat when we have |
| 10 | our hardworking associates travel with us, so this is Ms. |
| 11 | Lauren Randall and that's Mr. Kevin Chu. |
| 12 | THE COURT: Welcome to Wilmington, all. |
| 13 | MR. PRINCE: Your Honor, we have a disclosure |
| 14 | statement for Your Honor's consideration and approval. We've |
| 15 | adjourned it twice and that was to allow the parties to |
| 16 | continue to negotiate. Those negotiations will continue, but |
| 17 | it's the Debtor's view that we need to go ahead and get the |
| 18 | disclosure statement approved. |
| 19 | We're going to present a schedule today, Your |
| 20 | Honor, and that schedule is going to have confirmation |
| 21 | slipping a couple weeks from the week of October 24 to the |
| 22 | week of November 7th. We'll talk about that schedule and |
| 23 | address any of the Court's concerns, and if parties have |
| 24 | other issues they want to talk about regarding the |
| 25 | scheduling, we'll address those as they arise. |

1           THE COURT:  Okay, okay.  So, look, I understand
2  that, I understand your position.  I do think that the
3  question whether to engage with your client or not is
4  essentially a business judgment on which the debtor gets a
5  measure of deference and, without passing judgment on whether
6  it was a good decision or a bad decision for the debtor to
7  proceed, I think they're within their rights to make the
8  judgment they made.
9           MR. DELLA PENNA:  Understood, Your Honor.
10          THE COURT:  Okay.  Thank you.
11          MR. DELLA PENNA:  Thank you.
12          THE COURT:  Any other party in interest want a
13 chance to be heard?
14      (No verbal response)
15          THE COURT:  Okay.  So let me do my best to resolve
16 the issues in front of me in a way that is orderly and
17 rational and gives folks the guidance they need to keep the
18 case moving.  Here's where I am.
19          So, on the big-picture disclosure statement
20 approval, it seems to me there are not standing objections to
21 the language in the disclosure statement.  I've read it, I
22 think that the document gives creditors sufficient
23 information to permit them to make an informed vote.  It has
24 the kind of information that is typical and customary in a
25 disclosure statement and I'm comfortable entering an order

1 approving it.

2     I think -- let me also say, just to resolve the
3 things that I think I can resolve relatively easily, I said
4 before what I think about the opt-in/opt-out mechanism, I am
5 comfortable with the view that a party can be deemed to have
6 consented to what the plan does, including a third party
7 release, if that party is given the opportunity to opt out
8 and doesn't take it.  So I respect and understand the view
9 that, in order to be consensual within the meaning of
10 Continental, one, a creditor would be required to
11 affirmatively evince consent by opting in, that there are
12 certainly thoughtful opinions that take that view, that isn't
13 my view.  And so I'll overrule the objection to that extent
14 without prejudice to the right of any party in interest who
15 object to confirmation on that or any other ground.

16     I think I'm also comfortable with the debtors'
17 proposal that no opt-out form be sent to, essentially,
18 unclassified creditors or anyone who is, essentially, not a
19 voting creditor.  They'll receive a notice and no one has
20 complained about the adequacy of that notice.  And I think
21 there's a fair question about, to the extent the release is
22 broader than claims that are essentially derivative of the
23 debtor, whether the release is too broad, but that's a
24 confirmation issue and -- but otherwise, to the extent those
25 parties are equity holders and have thus consented under the

1  RSA or are creditors who are administrative or priority
2  creditors who are being paid in full, I'm fine with just
3  giving notice without the opt-out form.
4      Obviously, those parties could file a confirmation
5  objection, but I don't think we have to give a form to those
6  creditors.
7      The hardest issue is the form that goes to those
8  creditors who are impaired and aren't parties to the RSA,
9  it's primarily Class 4.  And, I've got to say, this has been
10 an interesting discussion and I don't think the question is
11 simple or obvious.  I think the arguments that folks have
12 made about permitting a creditor to make a decision whether
13 to accept the plan and give a release or not is not
14 analytically irrational at all.
15     That said, I view this in the context of approving
16 a ballot as part of the overall analytic construct of
17 approving a disclosure statement and setting up a mechanism
18 by which, under the facts and circumstances of the case,
19 creditors are given the ability to make an informed decision
20 about whether to accept the plan or not and how to protect
21 their rights.
22     I also come at this -- I've said this in other
23 settings, but I'm a Judge on a court that, as of today, has
24 seven judges and there are a variety of different views, and
25 staying sort of within the guardrails of the views of my

1  colleagues is something that, if I felt like I was required
2  to do otherwise because the law dictated me outside the
3  guardrails, I'd follow the law where it took me, but on
4  discretionary matters it seems prudent to stay within those
5  guardrails.  And those guardrails are, essentially, on the
6  one hand, decisions in cases like WAMU and Emerge that
7  require opt-in to, on the other hand, Indianapolis Downs that
8  basically has said what I've said before, though not in
9  writing, that I'm comfortable with an opt-out regime, and I'm
10 not aware of any of my colleagues to have said it's okay to
11 condition the right to vote in favor of a plan on granting a
12 release.  So I think that's a step farther than anyone has
13 gone before and my judgment is it's -- while I am open to
14 that in another case, I'm not prepared to do it in the
15 circumstances of this case.
16         So I hear and respect the argument and I think it
17 was well presented and it's by no means outside the bounds of
18 fair advocacy, I think it's an interesting point, but my --
19 and I do think this is a question of judgment, but my
20 judgment is, in the circumstances of this case and on the
21 record before me, it's not appropriate to do here.
22         So my ruling, for what it's worth, is that in
23 order to approve that ballot, the ballot will need to give
24 every creditor in Class 4 the option to opt out of the third
25 party releases without affecting their ability to vote in

1  favor or against the plan.  I don't think that ought to be
2  hard to implement and there are plenty of forums in which
3  that's been done.
4              And, again, I understand that's not what the
5  debtor is asking for and I hear and respect their arguments,
6  but that's where I am, and it's limited to the circumstances
7  of this case, I'm open-minded in a different case to
8  considering that again.
9              So have I given the parties enough guidance to go
10 do what they need to do?
11             MR. BOWLING:  If we could have just one moment,
12 Your Honor?
13             THE COURT:  Certainly.
14      (Pause)
15             MR. BOWLING:  Your Honor, we appreciate your
16 ruling, the debtors would just reserve the right at
17 confirmation to argue that the releases are appropriate even
18 if people do check the box.
19             THE COURT:  Of course.  At confirmation,
20 everyone's rights with respect to any matter at confirmation
21 are fully preserved.  So nothing I said today was -- did or
22 was intended to address any -- limit anyone's rights at
23 confirmation in any respect.
24             MR. BOWLING:  Of course.  That's all, Your Honor.
25 Thank you.

1          THE COURT: Okay. Are there any matters that were
2 before me today that I meant to rule on but failed to? And I
3 don't say that in the form of, like, what's in my head that I
4 forgot about, but were there other matters where the parties
5 are seeking resolution where I've not given you what you
6 need?
7          MR. PRINCE: Your Honor, we did file a stipulation
8 regarding some insurance proceeds that's -- it's around $47
9 million, so it's pretty significant.
10          THE COURT: I thought --
11          MR. PRINCE: Did you already sign that?
12          THE COURT: -- I saw a C&O on that, I thought I
13 had -- I had --
14          MR. PRINCE: If you've already signed it, then
15 great.
16          THE COURT: If I haven't, I'll go back and check
17 and make sure I do.
18          MR. PRINCE: Perfect.
19          THE COURT: Is there any other matter that should
20 be addressed at housekeeping, anything else that I can do to
21 be helpful to the parties?
22      (No verbal response)
23          THE COURT: Okay. If not, I do thank everyone for
24 the terrific arguments today. This is a very interesting
25 issue and not an obvious one, so it was very helpful to me.

1          And, with that, we stand adjourned.  Thank you.
2          COUNSEL:  Thank you, Your Honor.
3       (Proceedings concluded at 11:31 a.m.)
4
5
6
7                         CERTIFICATION
8          We certify that the foregoing is a correct
9  transcript from the electronic sound recording of the
10 proceedings in the above-entitled matter to the best of our
11 knowledge and ability.
12
13 /s/ Tracey J. Williams                    September 22, 2022
14 Tracey J. Williams, CET-914
15 Certified Court Transcriptionist
16 For Reliable
17
18 /s/ Mary Zajaczkowski                     September 221, 2022
19 Mary Zajaczkowski, CET-531
20 Certified Court Transcriptionist
21 For Reliable
22
23
24
25