**Exhibit B**
**RCS Hearing Transcript**

```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE

                                    .    Chapter 11
IN RE:                              .
                                    .    Case No. 16-10223 (MFW)
RCS CAPITAL CORPORATION,            .
et al,                              .    Courtroom No. 4
                                    .    824 Market Street
                                    .    Wilmington, Delaware 19801
              Debtors.              .
                                    .    Monday, March 21, 2016
. . . . . . . . . . . . . . . . . . .

                        TRANSCRIPT OF HEARING
               BEFORE THE HONORABLE MARY F. WALRATH
                  UNITED STATES BANKRUPTCY JUDGE
```

APPEARANCES:

For the Debtors:          Robert S. Brady, Esq.
                          Robert F. Poppiti, Esq.
                          YOUNG, CONAWAY, STARGATT
                           & TAYLOR, LLP
                          Rodney Square
                          1000 North King Street
                          Wilmington, Delaware 19801

                          Michael J. Sage, Esq.
                          Shmuel Vassar, Esq.
                          DECHERT, LLP
                          1095 Avenue of the Americas
                          New York, New York 10036

(Appearances Continued)

Audio Operator:           Electronically Recorded
                          by Al Lugano, ECRO

Transcription Company:    Reliable
                          1007 N. Orange Street
                          Wilmington, Delaware 19801
                          (302)654-8080
                          Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1  confirmation issue.  But the burden is going to be on the
2  debtor to show that they can comply with Third Circuit law, and
3  I'm skeptical on that.  But it's not a disclosure statement
4  issue, so I won't rule.
5           MR. VASSAR:  Thank you, Your Honor.
6           I think the remaining objection is the U.S. Trustee.
7           MS. CASEY:  Good afternoon, Your Honor.  Linda Casey
8  on behalf of the United States Trustee.
9           Your Honor, the debtors and the United States Trustee
10 have worked out a lot of their issues, and what remains are two
11 disclosure issues that are related, and actually dovetail with
12 the discussion that you've already heard this afternoon, as
13 well as an issue regarding the releases.
14          At the time that they filed the plan, the releases
15 were to be deemed to have been given by those in unimpaired
16 classes, those who abstained from voting, those who voted to
17 accept, and those who voted to object without hitting the opt-
18 out.  That has been changed to provide that abstaining
19 creditors are no longer deemed to have been providing their
20 consent to the releases.
21          The U.S. Trustee believes that affirmative consent
22 required by Washington Mutual and other cases does not permit
23 the deemed consent by the unimpaired classes, nor does it
24 permit the accepting voters to be given it without the option
25 to opt out.  The U.S. Trustee recognizes that Your Honor has

1    entered procedures like that in the past, but we just state our
2    position that it should be that affirmative consent is
3    required, and the ability to opt out for accepting creditors
4    should be provided.
5         The U.S. Trustee also has serious concerns with the
6    releases, and will be back here objecting to the releases,
7    including on the basis of Washington Mutual, because other
8    provisions of the plan provide, in effect, a non-consensual
9    release, despite the opt-out provisions, but that is for
10   confirmation.
11        The disclosure statement issue revolves around Class 5
12   and what causes of action are being transferred to the
13   litigation trust.  The disclosure statement currently has no
14   discussion at all of the major litigation, the cost of those
15   major litigation, the possible recoveries of those major
16   litigation, when those major litigations might be resolved.
17   You know, what a creditor wants to know is:  What am I going to
18   get?  When am I going to get it?  And what are the risks to
19   getting it?
20        The disclosure statement has Class 5 as anticipating a
21   six percent recovery.  But then, if you look at the footnote,
22   the footnote says:
23        "The six percent projected recovery on account of
24             general unsecured claims is based on approximately
25             201.5 million in claims and 13 million cash and new

1   Court's website to get this list of excluded parties just five

2   days before the voting deadline, that's just not sufficient

3   disclosure.

4          If Your Honor doesn't have any further questions,

5   that's my ...

6          THE COURT:  Thank you.

7          MR. VASSAR:  Good afternoon, Your Honor.  Shmuel

8   Vassar for the debtors again.

9          As to the releases, we believe we revised them as

10  discussed with the U.S. Trustee.  We understand that the U.S.

11  Trustee still has objections.  These objections will be

12  addressed in confirmation.

13         As to unimpaired classes, there's case law in this

14  district, including <u>Indianapolis Downs</u>, that provides that

15  unimpaired classes -- that third party -- third-party release

16  granted by unimpaired classes who don't -- who do not vote is

17  appropriate.  As to other parties, we made clear that, in order

18  to grant the release, you either have to vote for the plan; or,

19  if you reject the plan, opt out of the release.  People who

20  don't vote don't give a release.

21         So we follow the procedure that doesn't have a trap.

22  There was a disclosure about that.  The releases and the

23  mechanism is in bold language, I believe italics, in the

24  notices.  At the end of the day, in complex corporate Chapter

25  11 bankruptcies, parties need to read what is sent to them.

1  And as long as it's clear and not confusing, the procedure is
2  appropriate.
3          THE COURT:  So let me get this straight because I
4  think it's been changed.  To grant a release, they have to vote
5  yes on the plan.
6          MR. VASSAR:  Correct.
7          THE COURT:  And that is a release.
8          MR. VASSAR:  Yes.
9          THE COURT:  And the ballot says that.
10         MR. VASSAR:  Yes.
11         THE COURT:  If they reject the plan, they're deemed to
12 have granted the release, unless they opt out.
13         MR. VASSAR:  Correct, which there's a box to opt out
14 of the release.
15         THE COURT:  If they --
16         MR. VASSAR:  Or the --
17         THE COURT:  If they vote yes and opt out, how are you
18 counting that?
19         MR. VASSAR:  They can't opt out if they vote yes.
20 Vote yes means you grant the release.  If you don't want to
21 grant the release, you need to vote no.
22         THE COURT:  And --
23         MR. VASSAR:  It's a package.  You can't say, I want
24 this, but not that.  We allow you to say yes, we allow you to
25 say no, but we're not allowing you -- not you, I'm sorry, I'm

1  not talking to Your Honor, but the creditors.

2          (Laughter)

3          MR. VASSAR:  I thought --

4          THE COURT:  Thankfully, I won't be voting on the plan.

5          MR. VASSAR:  And --

6          (Laughter)

7          MR. VASSAR:  What we're saying is, to a creditor, you

8  can vote yes, or you can vote no.  Voting yes is a package.

9  You can't choose the provisions I like, and reject the

10 provisions I don't like, that's really what it's all about.

11         THE COURT:  Okay.

12         MR. VASSAR:  Not a problem.  And again, creditors can

13 decide not to vote.  If they don't vote, they don't grant the

14 release, that's okay.  It's almost the first -- honestly, it's

15 the first debtor case I work on, Your Honor, where we tell

16 debtors -- the creditors, don't vote, if you don't want to

17 grant the release, don't vote.

18         And as to the information-type objections that the

19 U.S. Trustee is raising, we really don't think there's any

20 deficiency in the disclosure statement.  The case law that's

21 been developed -- and actually, it's in the charts, rather than

22 in the reply itself.  And Ampace, I believe it's the

23 pronunciation of the case.

24         THE COURT:  Uh-huh.

25         MR. VASSAR:  It's at 279 B.R. 145.  The disclosure

1    mean, that's an important document, and it's going to be
2    distributed before the voting deadline.
3            THE COURT:  But you're okay with the process of
4    sending out now and getting that information later; there's
5    enough in the disclosure statement now for creditors to vote?
6            MR. FELDMAN:  We think there's -- we think there's
7    sufficient information.  Subject to the next two-day period, as
8    we discussed earlier, trying to come to closure with the debtor
9    and the RSA parties on our open issues on the plan itself, we
10   think the process is sufficient.
11           THE COURT:  Okay.  Well, let me rule on the U.S.
12   Trustee's objections, then, before you break.
13           Given the committee's statement on that, I'm satisfied
14   to let the disclosure statement go out without any additional
15   information regarding the causes of action that the litigation
16   trust will have, other than what will be contained in the plan
17   supplement or what the committee may otherwise require between
18   now and Thursday.
19           With respect to the releases, I prefer the opt-in
20   because I think granting a third-party release is a contract.
21   But I think that this case, there's enough affirmative action
22   required to allow the mechanism the debtor is suggesting
23   because it's clear in the ballot that, if they vote yes on the
24   plan, they are granting a release.  If a creditor doesn't want
25   to grant a release, they can vote no and opt out, or just not

1  vote.  So I think affirmatively voting on the plan is enough

2  action to be an acceptance of the third-party releases.

3            But let's take a break, while you talk and -- yes?

4            MR. VASSAR:  May I have a minute?  I just have a

5  question.  The question is, obviously, we're going to caucus

6  and tell you what we think we would like to do.  But there's

7  also the changes that were made to the solicitation procedure

8  order that was filed.  I don't know if you prefer that we're

9  going to go through these changes now or after we caucus.

10           THE COURT:  Let's go through them after you caucus.

11           MR. VASSAR:  Thank you very much.  And how much -- I

12  know you have a hearing at two o'clock, so ...

13           THE COURT:  You can come back after that.  I suspect

14  it will be 45 minutes or an hour.

15           MR. VASSAR:  Thank you very much.

16           THE COURT:  All right.  We'll stand adjourned then.

17      (Recess taken at 1:59 p.m.)

18      (Proceedings resume at 3:36 p.m.)

19           THE COURT:  Good afternoon.

20           MR. VASSAR:  Good afternoon, Your Honor.  Again,

21  Shmuel Vassar, Dechert, LLP, for the debtors.

22           Thank you very much for the time you gave us to

23  caucus.  And where we decided we want to go from here is as

24  follows:

25           We would like Your Honor to enter the order approving