**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------------ x
: 
In re : Chapter 11
:
KABBAGE, INC. d/b/a KSERVICING, *et al.*, : Case No. 22-10951 (CTG)
:
Debtors.[1] : (Jointly Administered)
:
: Obj. Deadline: February 13, 2023 at 4:00 p.m. (ET)
: Hearing Date: February 27, 2023 at 10:00 a.m. (ET)
:
------------------------------------------------------------ x

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) EXTENDING**
**THE DEBTORS' EXCLUSIVE PERIODS AND (II) GRANTING RELATED RELIEF**

Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):[2]

**Preliminary Statement**

1. Since the Debtors filed their chapter 11 cases on October 3, 2022 (the "**Petition Date**"), the Debtors have made tremendous progress towards the confirmation and consummation of a chapter 11 plan. The Debtors' intention to make these chapter 11 cases an efficient, cost-effective, and smooth process where consensus is achieved where possible was clear from the commencement of these chapter 11 cases when an initial plan and disclosure statement

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] Capitalized terms used in this Motion but not defined herein shall have the meanings ascribed to such terms in the Plan (as defined herein), the Disclosure Statement (as defined herein), or the First Day Declaration (as defined herein), as applicable.

were filed within a few days of the Petition Date.[3] The Debtors have dedicated their efforts in the first 100 days of these chapter 11 cases to stabilizing operations in furtherance of minimizing disruption to borrowers and parties for which they provide loan servicing, securing needed liquidity to fund the chapter 11 cases and provide the Debtors with additional runway to implement their proposed plan, and engaging with stakeholders to diligently work towards confirming a plan.

2.     The Debtors' first obstacle was securing liquidity to continue servicing their loan portfolios. Absent a swift resolution of certain issues, namely, use of cash collateral with the Federal Reserve Bank of San Francisco (the "**Reserve Bank**") and obtaining the sizable receivable due from Customers Bank ("**CB**"), the Debtors would have faced an "unfunded transaction" and an almost immediate halt of all loan servicing. Understanding the need to secure liquidity to fund these chapter 11 cases, the Debtors began negotiating the use of cash collateral with the Reserve Bank prior to the Petition Date, culminating in the entry of the Cash Collateral Order on November 7, 2022.[4] The Cash Collateral Order secured additional liquidity by allowing the Debtors to consensually access and use certain cash proceeds of PPP Loans and cash held in various bank accounts. Further, the Debtors entered into a settlement with CB to resolve the CB Dispute (the "**CB Settlement**") and provide, among other things, cash to fund operations, which the Court subsequently approved on November 9, 2022.[5] The CB Settlement, taken together with the Cash

---

[3] *See Joint Chapter 11 Plan of Liquidation Kabbage, Inc. (d/b/a KServicing) and Its Affiliated Debtors* [Docket No. 14] (the "**Initial Plan**"); *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation Kabbage, Inc. (d/b/a KServicing) and Its Affiliated Debtors* [Docket No. 63] (the "**Initial Disclosure Statement**").

[4] *Order Under 11 U.S.C. §§ 105, 361, 362, and 363, and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing Debtors to Use Cash Collateral and (II) Granting Adequate Protection to Secured Lender* [Docket No. 225] (the "**Cash Collateral Order**").

[5] *Order (I) Authorizing and Approving the Settlement Agreement Between KServicing and Customers Bank and (II) Granting Related Relief* [Docket No. 232]. For the avoidance of doubt, certain disputes remain outstanding as between CB and the Debtors.

Collateral Order, have provided the Debtors sufficient cash to service their loan portfolios until the contemplated plan Effective Date, and proceed along the "funded transaction."[6]

3.  In tandem with securing the necessary liquidity to administer the chapter 11 cases effectively, the Debtors earnestly engaged with various stakeholders in an effort to resolve disputes and propose a confirmable chapter 11 plan. On January 19, 2023, the Debtors filed their *Amended Joint Chapter 11 Plan of Liquidation of Kabbage, Inc. (d/b/a KServicing) and its Affiliated Debtors* [Docket No. 466] (the "**Plan**") and *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Liquidation of Kabbage, Inc. (d/b/a KServicing) and its Affiliated Debtors* [Docket No. 467] (the "**Disclosure Statement**"). Prior to filing the amended documents, the Debtors diligently negotiated revisions to the Plan with key stakeholders, including but not limited to: the Reserve Bank, the Department of Justice, the Small Business Administration, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), and Cross River Bank. The Debtors received and negotiated various comments during the course of several discussions to ensure, to the extent possible, the Plan would be consensual among the Debtors and their key stakeholders. These negotiations were critical to ensuring the Debtors would be able to seek approval of the Disclosure Statement and commence solicitation on the Plan as promptly as possible. Indeed, there was only one unresolved objection in connection with the hearing on the Debtors' motion to approve the Disclosure Statement and the accompanying solicitation procedures.

4.  As a testament to the Debtors' efforts, on January 19, 2023, the Court entered the *Order (I) Approving the Disclosure Statement of the Debtors, (II) Establishing*

---

[6] The Initial Plan filed on the Petition Date featured a toggle that contemplated a "funded" and "unfunded scenario" for the Chapter 11 Cases. The outcome of the toggle depended on the Debtors' liquidity, which ultimately depended on the success in obtaining the CB Settlement and Cash Collateral Order.

*Solicitation, Voting, and Related Procedures, (III) Scheduling Confirmation Hearing, (IV) Establishing Notice and Objection Procedures for Confirmation of Plan, (V) Approving Special Electronic Noticing Procedures, (VI) Approving Debtors' Proposed Cure Procedures for Unexpired Leases and Executory Contracts, and (VII) Granting Related Relief* [Docket No. 470] (the "**Disclosure Statement Order**") that, among other things, approved the Disclosure Statement, authorized the Debtors to solicit the Plan, and scheduled a confirmation hearing for the Plan on March 13, 2023 (the "**Confirmation Hearing**"). In accordance with the Disclosure Statement Order, solicitation of the Plan commenced on January 24, 2023, signaling yet another milestone in the Debtors' confirmation process.

5. In addition to Plan-related workstreams, the Debtors have (i) ensured a smooth transition into chapter 11 by obtaining approval of first and second day relief, (ii) prepared and filed their schedules of assets and liabilities and statements of financial affairs, (iii) established general and governmental bar dates, and (iv) explored and continue to explore options and strategies for transferring loan servicing obligations and potentially post-effective date loan servicing to prepare for the wind down of their business. The Debtors are continuing to work with the Reserve Bank, the Partner Banks, and where applicable, American Express, to prepare and exchange necessary information to transfer the loan servicing obligations and transition out of chapter 11, whereby the Debtors will only offer in their sole discretion servicing of the Pledged PPPLF Loans and Partner Banks' PPP Loans on a post-effective date basis as necessary. These efforts include engaging with stakeholders, potential alternate third party servicers, and identifying the steps necessary to implement a transfer of servicing obligations.

6. Given this backdrop and substantial progress already made in the chapter 11 cases, any competing plan would be counterproductive to the Debtors' process that the key

4

RLF1 28543264V.1

stakeholders are invested in. Moreover, a vital component of the Plan is the transition of the Debtors' servicing obligations, and no other party is better situated to develop and implement such a transfer.

7. For the reasons stated herein, the Court should extend the Exclusive Periods (as defined herein) by 90 days, through and including May 1, 2023 and July 3, 2023, respectively. Although the Debtors believe they will be able to complete the solicitation process prior to the expiration of the Exclusive Solicitation Period (as defined herein), they are seeking the extension of the Exclusive Periods out of an abundance of caution.

## Jurisdiction

8. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

9. On the Petition Date, the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors are authorized to continue to operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of

creditors has been appointed in these Chapter 11 Cases. Pursuant to Bankruptcy Rule 1015(b), the Chapter 11 Cases are being jointly administered under the above captioned case.

10. Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Deborah Rieger-Paganis in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 13] (the "**First Day Declaration**").

11. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**"). *See* 11 U.S.C. § 1121(b) ("Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter."). Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day Exclusive Filing Period, it has a 180-day period from its petition date to solicit acceptance of its plan (the "**Exclusive Solicitation Period**," and together with the Exclusive Filing Period, the "**Exclusive Periods**"). *See* 11 U.S.C. §11 1121(c)(3). The Debtors' Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on January 31, 2023, and April 3, 2023, respectively.[7]

---

[7] As stated previously, section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day Exclusive Filing Period, they have an automatic 180-day period from the petition date to solicit acceptance of the plan. Applying these provisions, Courts in this and other districts have held that if a debtor files a plan within the 120-day period, exclusivity extends through the 180-day period. *See First American Bank v. Southwest Gloves & Safety Equipment, Inc.*, 64 B.R. 963, 965 (3d Cir. 1986) (holding that pursuant to section 1121(c), a competing plan can only be filed if the debtor did not file a plan before 120 days after the petition date, or the filed plan has not been accepted before 180 days after the petition date); *see also In re Borders Grp, Inc.,* 460 B.R. 818, 821 (Bankr. S.D.N.Y. June 2, 2011) (explaining if a debtor proposes a plan within the 120-day exclusive period, the debtor has 180 days after the petition date to obtain acceptance of the plan); *see also In re Mich. Produce Haulers, Inc.*, 525 B.R. 408, 412 (Bankr. W.D. Mich. 2015) (citing *In re Grand Traverse Development Co. Ltd. Partnership*, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992) ("If the debtor's plan is on file within the first 120 days, the debtor has an additional 60 days to achieve confirmation. This is the so-called 'exclusivity period.'"). The Debtors in this case, filed the Initial Plan on the Petition Date and their 180-day Exclusive Solicitation Period does not expire until April 3, 2023, 21 days after the currently contemplated Confirmation Hearing. As such, the Debtors are seeking an extension of the Exclusive Periods in the abundance of caution.

6

**Relief Requested**

12. By this Motion, the Debtors request, pursuant to section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), entry of an order (i) extending the periods during which the Debtors have the exclusive right to file a chapter 11 plan and to solicit acceptance thereof by 90 days through and including May 1, 2023 and July 3, 2023, respectively, in each case, without prejudice to the Debtors' right to seek additional extensions of such periods,[8] and (ii) granting related relief.

13. A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

**Basis for Relief**

14. The exclusive periods to file and solicit a plan were established by Congress and incorporated in the Bankruptcy Code to afford a debtor a full and fair opportunity to propose a chapter 11 plan and enable solicitation of acceptance of the plan without the deterioration and disruption of a debtor's business that might be caused by the filing of multiple competing plans. The primary objective of a chapter 11 case is the formulation, confirmation, and consummation of a consensual chapter 11 plan—and the Exclusive Periods were designed to facilitate that process and achieve that goal.

15. Pursuant to section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause. *See* 11 U.S.C. § 1121(d) ("[O]n request of a party in interest made

---

[8] The Debtors' initial Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on January 31, 2023, and April 3, 2023, respectively. This Motion was filed prior to the expiration of the Debtors' current Exclusive Periods. Accordingly, such periods are automatically extended until the Court has an opportunity to consider the relief requested in this Motion. *See* Local Rule 9006-2 ("[I]f a motion to extend the time to take any action is filed before the expiration of the period prescribed by the [Bankruptcy Code, Bankruptcy Rules, Local Rules] or Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order.").

within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."). However, the 120-day period "may not be extended beyond a date that is 18 months after the [petition] date" and the 180-day period "may not be extended beyond a date that is 20 months after the [petition] date." *Id*. §§ 1121(d)(2)(A), (B).

16. The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d), nor establishes formal criteria for an extension. The legislative history of section 1121 indicates that "cause" is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give bankruptcy courts great flexibility to protect a debtor's interests by allowing a debtor unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest); *see also, e.g.*, *First Am. Bank of N.Y. v. Southwest Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986) ("Section 1121(d) provides the Bankruptcy Court with flexibility to either reduce or increase that period of exclusivity in its discretion.").

17. In exercising its broad discretion to determine whether "cause" exists, the Court should be guided by a variety of factors. *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying nine factors courts have relied on in determining whether cause exists to extend or terminate exclusivity); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying factors used by courts to determine whether cause exists to extend exclusivity); *see also In re Express One*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (identifying all of the nine factors as relevant in determining whether cause exists to extend exclusivity); *see also In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding

that the debtor showed cause to extend the debtor's Exclusive Periods based upon certain of the nine factors). Those factors include, without limitation:

   i. the size and complexity of the debtor's case;
   ii. the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;
   iii. the existence of good faith progress towards reorganization;
   iv. the fact that the debtor is paying its bills as they become due;
   v. whether the debtor has demonstrated reasonable prospects for filing a viable plan;
   vi. whether the debtor has made progress in negotiations with its creditors;
   vii. the amount of time which has elapsed in the case;
   viii. whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
   ix. whether an unresolved contingency exists.

18. While the above are relevant factors that courts have historically considered in determining whether to extend a debtor's Exclusive Periods, it is well established that the decision ultimately lies within the discretion of the Bankruptcy Court, and should be based upon the facts and circumstances of the particular case. *See Adelphia Commc'ns*, 352 B.R. at 587 (noting the nine factors "do not prohibit the consideration of other relevant factors"); *see also Southwest Gloves & Safety Equip*, 64 B.R. 963 at 965 (noting section 1121(d) provides the Bankruptcy Court with flexibility to extend or terminate a debtor's Exclusive Periods); *see also In re Borders Grp., Inc.*, 460 B.R. at 821−22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity."); *see also In re Dow Corning Corp.*, 208 B.R. 661, 664, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the

primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors.").

19. Application of these standards to the facts of these Chapter 11 Cases demonstrates that ample cause exists to grant the Debtors' requested extension of the Exclusive Periods.

I. These Chapter 11 Cases Are Large and Complex

20. It is well-established that the size and complexity of a debtor's case alone may constitute cause to extend the Exclusive Periods. *See In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) (citing *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 298 (W.D. Tenn. 1987)) ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."); *In re Pine Run Trust*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986); *see also In re United Press International, Inc.*, 60 B.R. 265, 270 (Bankr. D.C. 1986); *see also In re American Federation of Television and Radio Artists*, 30 B.R. 772, 774 (Bankr. S.D.N.Y. 1983). Moreover, the legislative history of section 1121 provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963.

21. The size and complexity of these Chapter 11 Cases, as well as the breadth and depth of regulatory and legal issues involved therein, warrant the requested extension of the Exclusive Periods. The Debtors commenced these Chapter 11 Cases with a loan servicing portfolio containing approximately 48,000 PPP Loans, and an aggregate outstanding principal amount of approximately $1.3 billion. Unfortunately, the Debtors' involvement in the Paycheck Protection Program ("**PPP**"), and the issues with the PPP as described in the First Day Declaration,

have led to several government investigations and disputes with the Partner Banks. As a result, nearly every aspect of these Chapter 11 Cases has been highly complex, as evidenced by (i) the continued servicing of three different loan portfolios; (ii) regulatory issues stemming from borrower diligence and loan forgiveness and guaranty purchase submissions; (iii) extensive discussions with key stakeholders regarding the transfer of loan servicing obligations, which has involved difficulties in accessing key information and loan servicing data from American Express necessary to effectuate such a transfer; (iv) the nearly two-year long dispute with CB that culminated in the CB Settlement, which has required the Debtors to continue to address burdensome requests for information related to the CB settlement and commit to an ongoing reconciliation process; (v) additional challenges inherent in the chapter 11 process, specifically one that has proceeded with a tight timeline due to liquidity constraints.

22. Therefore, the Debtors believe these Chapter 11 Cases satisfy the "size and complexity" factor, and although these Chapter 11 Cases satisfy the remaining *Adelphia* factors, the size and complexity of these Chapter 11 Cases, alone, are sufficient to constitute cause to extend the Exclusive Periods.

**II.     The Debtors Should Be Granted Sufficient Time to Negotiate a Chapter 11 Plan**

23. Granting the requested extensions will give the Debtors a full and fair opportunity to confirm and consummate the Plan without the distraction, cost, and delay of a competing plan process. *See In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) ("In enacting 11 U.S.C. § 1121, Congress intended to allow the debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan. It was intended that . . . a debtor should be given the unqualified opportunity to negotiate a settlement

and propose a plan of reorganization without interference from creditors and other interests.") (citation and internal quotation marks omitted).

24. Due to the Debtors' experience servicing their loan portfolios, specialized knowledge of the loan servicing files, and relationships with key stakeholders, the Debtors are uniquely positioned to efficiently and effectively develop a wind down plan that consensually transfers the Debtors' loan servicing obligations. The introduction of a competing plan would, at best, distract from these efforts, and, at worst, be unconfirmable.

25. The Debtors intend to consummate the Chapter 11 Cases approximately six (6) months from the Petition Date and are seeking a moderate extension should any unexpected events or contingencies arise. The Debtors believe this extension, which is the first extension the Debtors have requested, will constitute a full and fair opportunity to proceed to confirmation and, ultimately, consummation of the Plan. For the foregoing reasons, the Debtors submit that this factor supports the relief requested.

### III. The Debtors Continue to Make Good Faith Progress and Have Demonstrated Reasonable Prospects of a Viable Plan

26. Given the noteworthy progress that the Debtors have made in these Chapter 11 Cases, the Debtors believe that it is reasonable to request an extension of the Exclusive Periods. Since the Petition Date, the Debtors have worked diligently on a number of critical matters, in addition to the typical day-to-day obligations that debtors in possession face. Specifically, in the span of four (4) short months, the Debtors have addressed several complex and/or contested issues, including but not limited to the following:

   i. **Obtaining First and Second Day Relief**. Immediately following the Petition Date, the Debtors devoted substantial efforts to stabilizing their business operations through various first- and second-day motions and orders, which, among other things, allowed the Debtors to preserve relationships with borrowers and employees and continue use of the Debtors' cash management system.

12

ii. **Filing and Responding to Inquiries Regarding Schedules of Assets and Liabilities and Statements of Financial Affairs**.  The Debtors filed their schedules of assets and liabilities and statements of financial affairs after compiling information from books, records, and documents relating to claims, assets, and contracts of each Debtor, in accordance with Local Rule 1007-1 and only twenty-one (21) days from the Petition Date.

iii. **Establishing Bar Dates.**  The Debtors have established deadlines by which the holders of claims against each of the Debtors must file their proofs of claim.  *See* Docket No. 161.  These deadlines provided the Debtors with greater certainty regarding the claims against their estates, allowing them to effectively prosecute the Plan and Disclosure Statement.

iv. **Negotiating and Obtaining Court Approval of the Cash Collateral Order**.  The Debtors successfully negotiated the consensual use of approximately $8 million of the Reserve Bank's cash collateral, which has been an important source of liquidity for these Chapter 11 Cases.

v. **Negotiating and Obtaining Court Approval of the CB Settlement.**  The CB Settlement is the result of nearly two-years of extensive discussions between the Debtors and one of their largest stakeholders.  Notably, the CB Settlement provided the Debtors with additional liquidity necessary to continue operations during the pendency of the Chapter 11 Cases.

vi. **Filing an Amended Plan and Disclosure Statement and Commencing Solicitation on the Plan**.  On January 19, 2023, the Court approved the Debtors' Disclosure Statement, and on January 24, 2023, the Debtors commenced solicitation of the Plan following entry of the order approving the Disclosure Statement.  The Confirmation Hearing is scheduled for March 13, 2023.

vii. **Continuing Discussions with Major Stakeholders**.  The Debtors are continuing to engage with major stakeholders to broker consensus and seek a consensual resolution of issues in the Chapter 11 Cases.

27. In addition to the above milestones, the Debtors continue to make substantial progress towards confirmation of the Plan by negotiating with their major stakeholders. The limited extension requested by this Motion is intended to provide a window within which the Debtors believe they will be able to confirm and consummate the Plan without the deterioration and disruption of the Debtors' business that might be caused by the filing of a competing plan,

should additional time be required. The Debtors' substantial and significant progress thus far supports an extension of the Exclusive Periods.

## IV. The Debtors are Paying Their Debts as They Come Due

28. Courts considering an extension of exclusivity may also assess a debtor's liquidity and ability to pay the costs and expenses of administration. *See Adelphia Commc'ns*, 352 B.R. at 587; *see also Borders*, 460 B.R. at 826. Here, the Debtors have managed their estates as debtors in possession, have timely paid ordinary course expenses and administrative expenses, and will continue to do the same on a go-forward basis. Additionally, the Debtors believe the CB Settlement and Cash Collateral Order provide sufficient liquidity to pay administrative expenses as they come due during these Chapter 11 Cases. Accordingly, this factor weighs in favor of granting an extension of the Exclusive Periods.

## V. The Debtors Continue to Make Progress in Negotiations with Their Creditors

29. Since the filing of these Chapter 11 Cases, The Debtors have been in regular communication with their creditors, key stakeholders, and the U.S. Trustee on numerous issues facing the Debtors' estates, and have worked diligently in the prepetition and post-petition periods to maximize value for all stakeholders. Specifically, The Debtors have (i) negotiated with the Partner Banks regarding their requests for certain protections of borrower remittances on account of their respective portfolios, including providing the Partner Banks with visibility access to their online bank accounts, (ii) committed to ongoing reconciliation efforts with CB to achieve a resolution of the litigation underlying the CB Settlement, and (iii) previewed the Plan and Disclosure Statement with a number of the Debtors' important stakeholders, and incorporated comments from the Reserve Bank, Department of Justice, the Small Business Administration, and the U.S. Trustee prior to filing. The Debtors are committed to continuing these important

14

conversations and negotiating with all interested parties through the continuation of the Chapter 11 Cases.  Termination of the Exclusive Periods will discourage creditors and interested parties from negotiating with the Debtors, and would certainly undermine the Debtors' efforts to successfully confirm the Plan should additional time be needed.

30.     Further, in a PPP Transfer scenario, the Debtors must negotiate with key stakeholders to develop a plan and timeline to transfer servicing obligations to one or more third parties prior to the Effective Date.  The introduction of a competing plan would steal focus from those efforts—which the Debtors and their stakeholders have made progress on thus far—and would unnecessarily prolong and potentially put at risk the Debtors' emergence from chapter 11.

31.     The Debtors' good faith efforts in negotiating with their creditors and other parties in interest supports granting the Debtors' request to extend the Exclusive Periods.

**VI.    Relatively Little Time Has Elapsed Since These Chapter 11 Cases Were Commenced**

32.     This is the Debtors' first request for an extension of the Exclusive Periods. The request comes approximately four (4) months into these Chapter 11 Cases, which have progressed with speed and efficiency despite the numerous challenges faced by the Debtors.  With a plan on file and solicitation commenced, the Debtors are seeking an extension largely as a precautionary measure.  Courts in this, and other districts, routinely grant requests by debtors to extend their exclusive periods to file and solicit a chapter 11 plan.  *See, e.g., In re Armstrong Flooring, Inc.,* Case No. 22-10426 (MFW) (Bankr. D. Del. Sept. 22, 2022) (order granting debtors' motion seeking extension of the Exclusive Periods); *In re Ruby Pipeline, L.L.C.*, Case No. 22–10278 (CTG) (Bankr. D. Del. July 19, 2022) (same); *In re RentPath Holdings, Inc.*, Case No. 20-10312 (BLS) (Bankr. D. Del. June 29, 2020) (ECF No. 445) (same); *In re Fairway Group Holdings Corp.*, Case No. 20-10161 (JLG) (Bankr. S.D.N.Y. May 13, 2020) (ECF No. 482) (same); *In re*

15

*Ditech Holding Corp.*, Case No. 19-10412 (JLG) (Aug. 14, 2019) (ECF No. 1156) (same); *In re LBI Media, Inc.*, Case No. 18-12655 (CSS) (Bankr. D. Del. Aug. 5, 2019) (ECF No. 1028) (same); *In re Claire's Stores, Inc.*, Case No. 18-10584 (MFW) (Bankr. D. Del. Aug. 17, 2018) (ECF No. 791) (same); *In re Southeastern Grocers, LLC*, Case No. 18-10700 (MFW) (Bankr. D. Del. Aug. 9, 2018) (ECF No. 689) (same); *In re TK Holdings, Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Mar. 14, 2018) (ECF No. 2408) (same).

33. The brief time that has elapsed during these Chapter 11 Cases and the progress the Debtors have made to date support the relief requested in this Motion.

**VII.    The Debtors Are Not Seeking to Use Exclusivity to Pressure Creditors to Submit to the Debtors' Demands**

34. The Debtors are not seeking an extension of the Exclusive Periods to pressure their creditors to take any action, but only to ensure that the Debtors can efficiently pursue a resolution of these Chapter 11 Cases free from distraction and unnecessary delay. In an effort to reach a consensual Plan, the Debtors have shared this motion with their secured creditor, the Reserve Bank, and understand that the Reserve Bank does not object to the requested extension of the Exclusive Periods. The Debtors also remain committed to working constructively with all of their other constituents to seek a consensual confirmation of the Plan. Termination of the Exclusive Periods would adversely impact the progress of the Chapter 11 Cases and undo the hard work and effort put in thus far, thereby reducing the potential economic recovery for the Debtors' creditors. Moreover, the proposal and solicitation of any competing plan could greatly complicate and increase the cost of administering the Chapter 11 Cases because the Debtors would be forced to divert their focus and resources away from negotiating with their key stakeholders during the confirmation process to address the competing plan and any potentially contentious litigation resulting from the competing plan.

35. Finally, this Motion is without prejudice to any party in interest seeking to shorten the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code. *See* 11 U.S.C. § 1121(d). As such, no party in interest will be prejudiced if the requested extensions are approved. Accordingly, the Debtors respectfully submit this factor weighs in favor of granting the extension of the Exclusive Periods.

### VIII. Important Contingencies Must be Resolved by the Debtors

36. Courts have recognized the need to resolve important contingencies as justification for extending the Exclusive Periods. *See, e.g., Borders*, 460 B.R. at 826; *Adelphia Commc'ns*, 352 B.R. at 587. Notwithstanding the significant progress made by the Debtors to date, certain open issues still remain—primarily, the determination of the post-effective date structure of the Debtors—whether the loan portfolios will be transferred to a third party servicer or, if in the Debtors' sole discretion, post-effective date servicing will be offered. Further, the confirmation and consummation of the Plan remain outstanding. Notably, the Confirmation Hearing is scheduled for March 13, 2023—merely twenty-one (21) days before the expiration of the current Exclusive Solicitation Period. The Debtors are requesting an extension of the Exclusive Periods so that they are able to seek confirmation of the Plan without fear of a competing plan being filed by any of their creditors in the event the confirmation process is slightly delayed for any reason.

37. The requested extension of the Exclusive Periods will not prejudice any party in interest, but rather will afford the Debtors a realistic opportunity to prosecute a chapter 11 plan. Moreover, failure to extend the Exclusive Periods as requested herein would defeat the very purpose of section 1121 of the Bankruptcy Code, *i.e.*, to provide the Debtors with a meaningful and reasonable opportunity to propose a confirmable chapter 11 plan.

38. As such, for all of the reasons set forth above, the facts and circumstances of these Chapter 11 Cases demonstrate that sufficient cause exists to extend the Exclusive Filing Period and Exclusive Solicitation Period by 90 days through and including May 1, 2023 and July 3, 2023, respectively.

## Notice

39. Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) the Federal Reserve Bank; (d) Customers Bank; (e) Cross River Bank; (f) the United States Department of Justice; (g) the Federal Trade Commission; (h) the Small Business Administration; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the United States Attorney's Office for the District of Delaware; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"). The Debtors respectfully submit that no further notice is required.

## No Prior Request

40. No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

*[Remainder of page intentionally left blank]*

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 30, 2023
      Wilmington, Delaware

/s/ Matthew P. Milana
RICHARDS, LAYTON & FINGER, P.A.
Daniel J. DeFranceschi, Esq. (No. 2732)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
E-mail: defranceschi@rlf.com
       steele@rlf.com
       shapiro@rlf.com
       milana@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (admitted *pro hac vice*)
Candace M. Arthur (admitted *pro hac vice*)
Natasha S. Hwangpo (admitted *pro hac vice*)
Chase A. Bentley (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
E-mail:     ray.schrock@weil.com
            candace.arthur@weil.com
            natasha.hwangpo@weil.com
            chase.bentley@weil.com

*Attorneys for Debtors and Debtors in Possession*