**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------------- x
: 
In re : Chapter 11
: 
KABBAGE, INC. d/b/a KSERVICING, *et al.*, : Case No. 22-10951 (CTG)
: 
Debtors.[1] : (Jointly Administered)
: 
---------------------------------------------------------------- x   Re: D.I. No. 345

**DEBTORS' OBJECTION TO THE MOTION OF THE JUNEAU
GROUP, LLC FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE
CLAIM PURSUANT TO SECTION 503(b)(9) OF THE BANKRUPTCY CODE**

Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully submit this objection (the "**Objection**") to the *Motion of the Juneau Group, LLC for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(9)* (the "**503(b)(9) Motion**") [Docket No. 345] filed by the Juneau Group, LLC (the "**Juneau Group**").[2]  In support of this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] The Debtors note that the Juneau Group has filed the 503(b)(9) Motion without the assistance of counsel.  It is established in both Delaware and Federal case law that a corporate entity cannot appear *pro se* and must be represented by counsel. *See e.g. Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel."); *Carickhoff v. Occupational Med. Clinics (In re Cal Dive Int'l, Inc.)*, No. 15-10458 (CSS), 2018 WL 456156 at *2 n.8 (Bankr. D. Del. Jan. 16, 2018) (finding that the defendant, a limited liability company, improperly appeared *pro se* and directing the defendant to retain counsel); *Gavin Solmonese, LLC v. True Line Wire (In re Boomerang Sys., Inc.)*, No. 15-11729 (MFW), 2017 WL 4221095 at *3 (Bankr. D. Del. Sept. 21, 2017) (stating that "[i]t is well-settled that a corporation must retain licensed counsel to appear in federal court" and directing the defendant, a corporation, to retain counsel); *Transpolymer Indus., Inc. v. Chapel Main Corp.*, 582 A.2d 936 (Table), 1990 WL 168276 at *1 (Del. 1990) ("[A] corporation, being an artificial entity, can only act through its agents and, before a court only through an agent duly licensed to practice law.").

Objection, the Debtors submit the declaration of Thora Thoroddsen, attached hereto as **Exhibit A** (the "**Thoroddsen Declaration**") and respectfully state as follows:

## General Background

1. On October 3, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors are authorized to continue to operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

2. Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Chapter 11 Cases are being jointly administered under the above captioned case.

3. Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Deborah Rieger-Paganis in Support of the Chapter 11 Petitions and First-Day Pleadings* [Docket No. 13] (the "**First Day Declaration**").[3]

## Specific Background

4. On October 26, 2022, this Court entered the *Order (I) Establishing a General Bar Date to File Proofs of Claim, (II) Establishing a Bar Date to File Proofs of Claim by Governmental Units, (III) Establishing an Amended Schedules Bar Date, (IV) Establishing a Rejection Damages Bar Date, (V) Approving the Form and Manner for Filing Proofs of Claim, (VI) Approving the Proposed Notice of Bar Dates, (VII) Approving Procedures with Respect to*

---

[3] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

*Service of the Proposed Notice of Bar Dates, and (VIII) Granting Related Relief* [Docket No. 161] (the "**Bar Date Order**").

5. Among other things, the Bar Date Order established **November 30, 2022 at 5:00 p.m. (Prevailing Eastern Time)** as the deadline by which all entities, not including governmental units, holding claims (whether secured, unsecured priority (including claims under section 503(b)(9) of the Bankruptcy Code), or unsecured nonpriority) against the Debtors that arose prior to the Petition Date must file proofs of claim (the "**General Bar Date**").

6. Prior to the General Bar Date, on November 28, 2022, the Juneau Group submitted a proof of claim, Claim No. 951-184 ("**Claim No. 184**"), asserting an administrative expense claim identical to the 503(b)(9) Claim (as defined below) asserted in the 503(b)(9) Motion. *See* Claim No. 951-184.[4] On January 27, 2023, the Debtors filed their first omnibus objection [Docket No. 491] (the "**First Omnibus Objection**") seeking to reclassify Claim No. 184 as a general unsecured claim without prejudice to the Debtors' rights to object to such claim on additional grounds.[5]

7. Then, on December 6, 2022, the Juneau Group filed the 503(b)(9) Motion requesting payment on account of an alleged $499,999.99 administrative expense claim (the "**503(b)(9) Claim**") pursuant to section 503(b)(9) of the Bankruptcy Code.[6]  *See* 503(b)(9)

---

[4] In addition to the 503(b)(9) Claim and Claim No. 184, the Juneau Group also filed multiple other proofs of claim, including Claim Nos. 951-91, 955-4, 952-2, 953-2, 954-2, and 956-2, against certain of the Debtors asserting an $11,000,000 secured and priority claim (collectively, the "**Other Juneau Group Claims**").

[5] All of the Other Juneau Group Claims are also subject to the First Omnibus Objection. The response deadline for the First Omnibus Objection was February 15, 2023, at 4:00 p.m. (Prevailing Eastern Time). No creditor, including the Juneau Group, filed, and the Debtors did not receive, any responses to the First Omnibus Objection. On February 17, 2023, the Court entered an order [Docket No. 546] sustaining the First Omnibus Objection, thereby reclassifying the Other Juneau Group Claims and Claim No. 184 to general unsecured claims.

[6] The Debtors, and their advisors, confirmed that the Juneau Group is a borrower of a Paycheck Protection Program Loan ("**PPP Loan**") that the Debtors service. The Juneau Group's PPP Loan was guaranty purchased by the Small Business Administration (the "**SBA**") on August 29, 2022, and the total value of the loan is only $2,223. As of the date of filing this Objection, the Juneau Group has not applied for SBA forgiveness of its PPP Loan.

3

Motion ¶ 4.[7]  Specifically, the Juneau Group asserts that it "manufactures, among other things, for industry" and that, in the twenty days prior to the Petition Date, the Debtors received goods that the Juneau Group sold to the Debtors in the ordinary course of business.  *See id.* at ¶¶ 3-4.  Further, the Juneau Group describes such goods as "TIME" with an aggregate value of $499,999.99.  *See id.* at ¶ 4.  The Juneau Group also asserts "an administrative expense claim in the amount of $20,833/month for the duration of the case." *See id.*  In support of its 503(b)(9) Claim, the Juneau Group references invoices and proofs of delivery attached as Exhibit A to the 503(b)(9) Motion but fails to attach such supporting documentation.[8]  *See id*. at ¶ 4.

8. For the reasons set forth below, and in the Thoroddsen Declaration, the Court should deny the 503(b)(9) Motion for allowance of the 503(b)(9) Claim.

**Objection**

I. **The Court Should Deny the 503(b)(9) Motion Because the Juneau Group is not Entitled to an Administrative Expense Claim Under Section 503(b)(9) of the Bankruptcy Code**

9. Section 503(b)(9) of the Bankruptcy Code provides administrative expense priority for "the value of any *goods* received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9) (emphasis added).  To establish an administrative priority claim under section 503(b)(9), a claimant must show that "(1) the vendor sold 'goods' to the debtor; (2) the goods were received by the debtor within twenty days prior to filing; and (3) the goods were sold to the debtor in the ordinary course of business."  *See In re NE Opco, Inc.*, 501 B.R. 233, 240-41 (Bankr. D. Del. 2013); *see also In re Goody's Family Clothing,*

---

[7] The 503(b)(9) Motion was docketed by the Court on December 8, 2022.

[8] Claim No. 184 and the Other Juneau Group Claims also fail to attach any supporting documentation.

*Inc.*, 401 B.R. 131, 133 (Bankr. D. Del. 2009). It is well settled that a party requesting payment of an administrative expense claim bears the burden of proof in establishing that its claim is entitled to administrative expense status. *See, e.g., In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001). For the reasons set forth below, the Juneau Group has failed to demonstrate how its 503(b)(9) Claim satisfies the standards for an administrative expense claim under section 503(b)(9) of the Bankruptcy Code.[9]

### A. "TIME" Does Not Constitute "Goods" Under Section 503(b)(9) of the Bankruptcy Code

10. Section 503(b)(9) of the Bankruptcy Code affords administrative expense priority status for claims arising from "goods" received by the debtor, in the ordinary course, within the twenty days prior to the filing of a bankruptcy petition. The Bankruptcy Code, however, does not define what constitutes "goods". *See In re NE Opco,* 501 B.R. at 241. In the absence of a definition in the Bankruptcy Code, courts, including this Court, typically adhere to the definition of "goods" in the Uniform Commercial Code (the "**UCC**"). *See, e.g.*, *id.* (noting that "this Court has previously adopted the definition of goods in the Uniform Commercial Code"). Under the UCC, goods mean "things" that are "moveable at the time of identification to the contract for sale." UCC § 2-105(1); *see also In re NE Opco,* 501 B.R. at 241 (quoting UCC § 2-105(1)).

11. Applying this straight-forward definition, courts in this and other jurisdictions, have excluded from section 503(b)(9) claims for any non-goods items, including claims for services rendered. *See In re NE Opco,* 501 B.R. at 250 (illustrating the difference

---

[9] As set forth in the Thoroddsen Declaration, the 503(b)(9) Motion appears to assert both a claim under section 503(b)(9) of the Bankruptcy Code for prepetition services and a post-petition claim in the amount of "$20,833/month for the duration of the case". The Juneau Group has not provided *any* goods or services to the Debtors either before or after the Petition Date. Accordingly, the 503(b)(9) Motion should also be denied to the extent it seeks payment of an administrative expense for the provision of post-petition goods or services to the Debtors.

between a good and a service). *See also In re O.W. Bunker Holding N.A. Inc.*, 607 B.R. 47, 66 (Bankr. D. Conn. 2019) (excluding claims for services from the 503(b)(9) claim); *In re Goody's Family Clothing, Inc.*, 401 B.R. at 135 (explaining that a claim for an administrative expense under 503(b)(9) cannot be a claim for services provided); *In re SemCrude, L.P.*, 416 B.R. 399, 405 (Bankr. D. Del. 2009) (explaining services are not goods within the meaning of section 503(b)(9)); *In re Sklar Expl. Co., LLC*, 638 B.R. 627, 632 (Bankr. D. Colo. 2022) (explaining 503(b)(9) requires a distinction between goods and services).

12.  In *NE OPCO*, the claimant was a utility provider that asserted an administrative expense priority claim pursuant to section 503(b)(9) for electricity and natural gas, including incidental services and fees, it provided to the debtors twenty days prior to the debtors' bankruptcy. *See NE OPCO*, 501 B.R. at 236-37. Applying the UCC's definition, and illustrating the difference between services and goods, the Court determined that only the natural gas constituted a "good" under the UCC and section 503(b)(9). The Court subsequently denied the claimant's argument that the related services and fees provided in connection with the natural gas constituted "goods" under 503(b)(9), or were otherwise entitled to administrative expense priority:

> "As to the natural gas provided by Westfield — the Court finds that natural gas is a good. However, the Court . . . will award Westfield an administrative priority claim . . . for the value of the natural gas provided, but not the associated services."

*Id*. at 260.

13.  As an additional example, in *Goody's Family Clothing*, the debtors, an apparel retailer, objected to section 503(b)(9) claims filed by one of their vendors for certain services rendered within the twenty days prior to the petition date. Such services included inspecting, ticketing, and repackaging apparel purchased from other vendors. *See* 401 B.R. at 133. The debtors objected to the claims on the basis that services are not "goods" as required by section

6

503(b)(9). *See id*. Finding that the UCC definition applied to the meaning of "goods" under section 503(b)(9), the Court sustained the debtors' objection and held that the services the vendors provided did not constitute goods for purposes of an administrative expense claim pursuant to section 503(b)(9). *Id*. at 135-36.

14. As described above, the Juneau Group asserts that twenty days prior to the Petition Date it sold goods described as "TIME" to the Debtors in the ordinary course of business, and such goods have an aggregate value of $499,999.99. *See* 503(b)(9) Motion ¶ 4. Applying the relevant case law, the 503(b)(9) Claim for "TIME" is not a "good" within the meaning of the UCC and section 503(b)(9), and at most is a claim for services similar to those in *NE OPCO* or *Goody's Family Clothing* that is not entitled to administrative expense priority.[10] Accordingly, the Juneau Group's alleged 503(b)(9) Claim is not entitled to administrative priority.

### B. The Juneau Group's Claim Should Be Expunged, Or At Least Reclassified, Because It Has Failed to Provide Any Support For its 503(b)(9) Claim

15. The framework for assessing the validity of a claim filed in a bankruptcy proceeding is a burden shifting one. *See In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173-74 (3d Cir. 1992). The burden rests initially on the claimant to provide sufficient evidence to support a finding that their claim is "prima facie" valid. *See id*. at 173 ("If the averments in [the] filed claim meet this standard of sufficiency, it is '*prima facie*' valid.) (citing *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)). The Juneau Group's alleged 503(b)(9) Claim has provided no support whatsoever for its assertion that it sold "goods" to the Debtors, the amount of the "goods," and that such goods were provided within twenty days of the Petition Date. The 503(b)(9) Motion simply makes conclusory statements without including any description of the goods sold, the date the goods were

---

[10] For the avoidance of doubt, the Juneau Group has not provided any services to the Debtors.

received by the Debtors, or the invoice for such goods. As such, the 503(b)(9) Claim does not set forth a prima facie showing necessary to state a claim nor a showing that any such claim is an administrative claim. *See In re New Century TRS Holdings, Inc.*, 446 B.R. 656, 662 (Bankr. D. Del. 2011) (denying a claimant's asserted administrative expense claim after finding the claimant failed to provide sufficient facts to support a valid claim). Further, the 503(b)(9) Motion references that supporting documentation, including invoices and proofs of delivery, is attached as an exhibit to the 503(b)(9) Motion but fails to attach such documentation.[11] It is the Juneau Group's burden to support its claim and it has failed to do so. *See In re Unidigital*, 262 B.R. at 288. For these reasons, the Court should deny the 503(b)(9) Motion.

**II.     The Debtors Have No Record of Receiving Any Goods or Services from the Juneau Group**

16.     Finally, prior to the filing of this Objection, the Debtors diligently inspected their books and records and did not locate any invoices, proofs of delivery, or other records indicating the existence of the "goods" the Juneau Group alleges the Debtors received twenty days prior to the Petition Date. *See* Thoroddsen Declaration ¶ 4. Additionally, the Debtors coordinated with their advisors who confirmed no records exist of the Debtors ever receiving any other goods or services from the Juneau Group. *See id*. Further, the Debtors attempted to contact the Juneau Group to obtain more information regarding the 503(b)(9) Claim in an effort to reach a mutual understanding and to the extent possible, a resolution of the dispute. However, after initiating contact via various modes of communication (via email and telephone, utilizing the information

---

[11] In addition, no such documentation is attached to Claim No. 184 or the Other Juneau Group Claims.

set forth on the 503(b)(9) Motion and the email address used to contact the Court's Chambers), the Juneau Group failed to respond to the Debtors. *See id* at ¶ 5.

### Reservation of Rights

17. The Debtors reserve the right, without limitation, to: (a) dispute any and all facts in the 503(b)(9) Motion in the context of the claims resolution process or for any other reason; (b) dispute the actual amount of the Juneau Group's claims as set forth in the 503(b)(9) Motion; (c) object to claims alleged in the 503(b)(9) Motion if such claims are supplemented with additional documentation (or additional amounts) on any grounds whatsoever at a later date; and (d) object to Claim No. 184 and the Other Juneau Group Claims on any and all grounds.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court deny the relief requested in the 503(b)(9) Motion.

Dated: February 17, 2023
       Wilmington, Delaware

/s/ *Matthew P. Milana*
RICHARDS, LAYTON & FINGER, P.A.
Daniel J. DeFranceschi (No. 2732)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
E-mail: defranceschi@rlf.com
       steele@rlf.com
       shapiro@rlf.com
       milana@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Candace M. Arthur (admitted *pro hac vice*)
Natasha S. Hwangpo (admitted *pro hac vice*)
Chase A. Bentley (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
E-mail: ray.schrock@weil.com
       candace.arthur@weil.com
       natasha.hwangpo@weil.com
       chase.bentley@weil.com

*Attorneys for Debtors and Debtors in Possession*