IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>**KABBAGE, INC. d/b/a KSERVICING, et al.,**<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-10951 (CTG)<br><br>(Jointly Administered)<br><br>Re: Dkt. No. 467<br><br>Objection Deadline:  February 28, 2023,<br>                                       at 4:00 p.m. (ET) |

**LIMITED OBJECTION AND RESERVATION OF
RIGHTS OF CROSS RIVER BANK TO CONFIRMATION OF
DEBTORS' CHAPTER 11 PLAN**

Cross River Bank ("Cross River") hereby files this limited objection and reservation of rights to confirmation of the Debtors' Plan, and respectfully states as follows:[2]

**INTRODUCTION**

As set forth herein, the Debtors have not demonstrated that they will, or will even be able to, transfer servicing of Cross River's PPP Loans, including the transfer to Cross River of its PPP loan Servicing Files (defined below) as required by this Court's order approving the stipulation between Cross River and the Debtors [ECF 444]. This raises critical confirmation issues because the Debtors' failure to do so will result in substantial administrative claims against the estate and

---

[1] The "Debtors" in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A).

[2] References to the "Plan" are to the *Amended Joint Chapter 11 Plan of Liquidation* [ECF 466], and references to the "Disclosure Statement" are to the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Liquidation* [ECF 467]. Capitalized terms not defined herein are defined in the Plan and Disclosure Statement.

make consummation of the Plan impossible. Moreover, failure to transfer servicing will cause substantial harm not only to Cross River, but also to thousands of borrowers who depend upon the servicing to obtain PPP loan forgiveness from the Small Business Administration. In addition, the Debtors have yet to demonstrate satisfaction of other confirmation requirements, including by identifying the Wind Down Officer who will have significant control over the liquidation of the estates and the prosecution of valuable estate causes of action.

As explained more fully below, unless the Plan is reformed to address the confirmation defects identified in this Objection and the Debtors otherwise carry their burden to establish that the Plan satisfies all confirmation requirements, confirmation of the Plan should be denied.

## BACKGROUND

1.  A key component of the Debtors' Plan is the transfer of servicing of all CRB PPP Loans from Kabbage to a new servicer by the Effective Date. *See* Plan § 5.3(c). Indeed, the Plan states that Debtors will not have any PPP loan servicing obligations from the Effective Date forward. *Id.* § 5.3(c)(iv). Thus, if the transfer is not consummated by the Effective Date, then no one will be servicing the Cross River PPP Loans.

2.  To consummate the transfer of servicing by the Effective Date, Kabbage must, among other things, transfer to Cross River all of the "Servicing Files," as defined in the CRB

Agreements,[3] for the CRB PPP Loans. Those files belong to Cross River (not the Debtors),[4] and Debtors' failure to return Cross River's Servicing Files would violate the Court-ordered stipulation between the Debtors and Cross River, which requires the Debtors to produce those files to Cross River. *See Order Approving Stipulation Between The Debtors And Cross River Bank* [ECF 444 & 441-1] (together, the "**Servicing File Order**") ("The Debtors will produce to Cross River the Servicing Files (as defined in the Agreements) . . . .") (attached as **Exhibit A** hereto).

3.  Cross River has been actively demanding its Servicing Files from the Debtors and making its resources available to work with the Debtors to obtain them and to complete the transfer of servicing, and it will continue to do so. The Debtors, however, have yet to comply with their obligations under the Servicing File Order, and despite multiple communications and promised timelines, it is still unclear when or whether Cross River will ever receive its files. The Debtors purported to transfer some documents during the last few days before this objection was due, which

---

[3] Under the CRB Agreements, the "**Servicing File**" for a loan includes, among other things, "the documents, files and record held or maintained by or on behalf of [Kabbage] pertaining specifically to such [loan] or the servicing thereof, including, without limitation, computer files, data tapes, books, records, electronic copies of documents, notes and Asset Files relating to such [loan]." Sale and Servicing Agreement among Cross River Bank and Kabbage dated as of May 6, 2020 ("**SAS**"), § 1 at 6; *see also* Letter Agreement with respect to servicing under Loan Program Agreement, dated September 17, 2020, at 3-4 ("**LPA Letter Agreement**"). The "Servicing File" for each loan further includes, as part of the "Asset File," "(i) the related Governing Contract with the Loan Obligor fully executed or deemed executed, (ii) all amendments, restatements, modifications, riders or other supplements to the related Governing Contract with the Loan Obligor fully executed or deemed executed, (iii) the related loan application (consisting of the SBA Form 2483), (iv) the account number assigned to the applicable Loan Obligor, (v) the SBA loan number assigned to the applicable Asset, (vi) the resolution to borrow form utilized by the Seller, (vii) the Seller's SBA Form 2484 and (viii) copies of any forms or other documentation necessary to be submitted to the SBA in order for the Asset to be eligible for the benefit of the SBA's guaranty of the Asset." SAS § 1, at 2; *see also* LPA Letter Agreement at 4 (using the term "Loan File" rather than "Asset File").

[4] *See* SAS § 11(a)(vii) ("Ownership of such Servicing File shall vest in [Cross River] Bank, and the Servicing File shall be retained and maintained, in trust, by Kabbage in a custodial capacity only."); LPA Letter Agreement at 3 (same).

Cross River does not appear to have received.  Regardless, Cross River still does not have the complete Servicing Files despite the Debtors having agreed to provide them nearly two months ago.  Thus, Cross River continues to have serious concerns regarding whether the Debtors will implement the required transfer of servicing to Cross River and deliver Cross River's Servicing Files prior to the Effective Date.

4. Cross River has been trying for well over a year (since before Debtors' bankruptcy) to obtain copies of its Servicing Files for its PPP Loans.  The Debtors have at times assured Cross River they would provide the files promptly, and at other times have expressed confusion or uncertainty as to what the Debtors even have in their possession and control, as opposed to what parts of the files were transferred to American Express (without Cross River's consent) as part of the transaction with American Express in October 2020 (the "**AmEx Transaction**").  No explanation has ever been given as to why any of Cross River's files were transferred to American Express.  Most recently, the Debtors blew through timeframes set out in a workplan incorporated into the Servicing File Order, and Cross River still does not have all of its Servicing Files.[5]

5. Cross River's concerns are heightened in light of the apparent lack of cooperation from American Express, which took the Debtors' operating business (including systems and data) in exchange for a hefty payment to the Debtors' shareholders, and which has nonetheless refused to provide documents necessary for the Debtors to properly service the loans.  *See* Declaration of Deborah Rieger-Paganis ¶ 16 [ECF 13] ("**First Day Declaration**") (citing "AmEx's refusal to

---

[5] The day before the due date for this response, the Debtors sent to Cross River a document titled "Transition Planning Status Report," which purported to provide a report as to where things stand in the transition process.  The status report, however, is incomplete and, among other things, does not explain why Cross River still has not received all of its Servicing Files, and it provides no assurance that servicing will be transferred prior to the Effective Date.  Nevertheless Cross River continues to review the status report, and, as noted, will continue to work with the Debtors.

honor its obligations under a Transition Services Agreement [ ] between the Company and AmEx entered into in connection with the AmEx Transaction, which has affected the Company's ability to perform a number operational functions"); Disclosure Statement at 34 ("[T]he Company has experienced significant operational hurdles to even the simplest of corporate tasks by virtue of lack of cooperation or delay from AmEx . . . . Retrieving documents from AmEx has and continues to be difficult and requires concerted effort as responses are often delayed and incomplete."); *see also* Subcommittee Report at 72 (describing that Kabbage retained "only contractual use" of the data and systems, and had to "request access" from American Express just to "perform forgiveness services for borrowers").[6]

6. The Debtors have rejected Cross River's offer to work jointly with the Debtors to obtain the portions of the Servicing Files under American Express's control. Similarly, the Debtors have rebuffed Cross River's requests that the Debtors seek relief from the Court to enforce American Express's obligations to turn over the Servicing Files belonging to Cross River. Based on the limited information Cross River has from the Debtors, the Debtors' solo efforts to obtain the Servicing Files from American Express have thus far yielded only American Express's statement that it might cooperate.

7. Beyond the Servicing Files, there are other critical facets of transferring servicing that need to be completed, including, among other things, reconciliations of balances and transactions, borrower communications information, remittances of overpayments, origination and

---

[6] "Subcommittee Report" refers to: *How Fintechs Facilitated Fraud In The Paycheck Protection Program*, U.S. House of Representatives Select Subcommittee on the Coronavirus Crisis Staff Report, Dec. 2022, *available at*

https://coronavirus.house.gov/sites/democrats.coronavirus.house.gov/files/2022.12.01%20How%20Fintechs%20Facilitated%20Fraud%20in%20the%20Paycheck%20Protection%20Program_0.pdf

borrower identification data, and data integrity checks for the foregoing. Cross River remains very concerned about the lack of progress and transparency as to how and when those will be implemented to ensure a smooth transition prior to the Debtors' cessation of its servicing obligations.

## OBJECTIONS

### A. The Debtors Have Shown Neither That The Plan Is Feasible, Nor That It Provides Adequate Means For Implementation

8. The Debtors' Plan must be feasible under Bankruptcy Code section 1129(a)(11), and it must "provide adequate means for the plan's implementation" under section 1123(a)(5). To date, however, the Debtors have shown no ability to consummate a key component of their Plan—the transfer of servicing of Cross River's PPP Loans. Absent substantial progress for the transfer of servicing prior to the confirmation hearing—including the transferring of all Servicing Files—the Court should deny confirmation on the grounds that the Debtors have failed to prove their ability to consummate the Plan.

9. The Debtors are obligated under the Servicing File Order to transfer the Servicing Files. The Debtors' failure to do so would result in a substantial administrative claim, which would have to be paid in full pursuant to Bankruptcy Code section 1129(a)(9)(A). Given the Debtors' continued refrain that they are running out of cash, the prospect of a large administrative claim will surely preclude any ability for the Debtors to consummate any plan. It is thus critical that the Debtors demonstrate their full compliance with the Servicing File Order prior to the confirmation hearing.

10. Moreover, given the substantial uncertainty as to the Debtors' ability to transfer servicing, the Plan should make the completion of the transfer of servicing of Cross River's PPP loans an express condition to the effectiveness of the Plan. The Debtors have already agreed to

this as to the Reserve Bank,[7] but they have refused Cross River's request for equal treatment. Instead, while the Plan says that the Debtors will have no obligation to service after the Effective Date, the Plan fails to provide that Cross River will have everything it needs to have its new servicer take over. In other words, the Debtors' Plan leaves open the distinct possibility that Cross River's PPP loans would simply go unserviced post-Effective Date for some indeterminate amount of time. This would expose Cross River, borrowers, and the SBA to substantial harm, which in turn will result in substantially higher claims (including Cross River's administrative claim).

11.  The potential issues do not end there. The Debtors have asked Cross River to identify contracts that it wants to be assumed and assigned to Cross River (or Cross River's new servicer) for servicing of the loans. The simple answer is that Cross River does not need any such contracts—provided that the Debtors actually comply with their obligations to turn over the Servicing Files. If, however, the Debtors fail to do so, then there may be certain contracts—such as software licenses or even the Debtors' onerous Transition Services Agreement with American Express—that may need to be assumed. If the Debtors would simply comply with their obligations to turn over the Servicing Files prior to the confirmation hearing, then this entire issue would be moot.

**B.    Cross River Reserves Its Rights As To Selection Of The Wind Down Officer**

12.  The Plan provides that a Wind Down Officer will have substantial control over the liquidation of the estates. This includes prosecution of the estate's primary asset—claims relating

---

[7]  The Plan provides that the occurrence of the effective date is subject to transferring servicing of the PPPLF Collateral (the Reserve Bank PPP loans) "to "the satisfaction of the Reserve Bank, unless the Reserve Bank consents in advance, at its sole discretion to Post-Effective Date PPP Servicing in accordance with section 5.3(d) herein." Plan § 9.1(g).

7

to the October 2020 AmEx Transaction. The manner in which these assets are administered are critical to recoveries for unsecured creditors in this case.

13. Section 1123(a)(7) mandates that the selection of any officer, director, or trustee under the plan be "consistent with the interests of creditors," and section 1129(a)(5) requires that the appointment of such persons be "consistent with the interests of creditors and equity security holders and with public policy." Pursuant to these sections, Cross River negotiated with the Debtors consulting rights as to the selection of the Wind Down Officer. Although the Debtors are apparently considering one of Cross River's recommendations, the Debtors have yet to select the Wind Down Officer or to demonstrate why that selection is consistent with the requirements of Sections 1123(a)(7) and 1129(a)(5). Cross River thus reserves all rights with respect to the selection of the Wind Down Officer.

*[Continued on next page]*

**CONCLUSION**

14. For the reasons stated above respectfully requests that confirmation be denied, absent satisfactory resolution of Cross River's objections.

Dated: February 28, 2023
       Wilmington, Delaware

Respectfully submitted,

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*/s/ Gregory W. Werkheiser*
Gregory W. Werkheiser (No. 3553)
1313 N. Market Street, Suite 1201
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
gwerkheiser@beneschlaw.com

-and-

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Susheel Kirpalani
Isaac Nesser
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
susheelkirpalani@quinnemanuel.com
isaacnesser@quinnemanuel.com

Erika Morabito
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
erikamorabito@quinnemanuel.com

Matthew R. Scheck
300 West 6th Street, Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100
matthewscheck@quinnemanuel.com

*Counsel to Cross River Bank*