# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**KABBAGE, INC. d/b/a KSERVICING**, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10951 (CTG)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 466**<br>**Obj. Deadline: February 28, 2023, at 4:00 p.m. (ET)**<br>**Hearing Date: March 13, 2023, at 10:00 a.m. (ET)** |

**UNITED STATES' RESERVATION OF RIGHTS AND LIMITED OBJECTION TO THE AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF KABBAGE, INC. (d/b/a KSERVICING) AND ITS AFFILIATED DEBTORS**

The United States of America (the "United States") on behalf of itself and the U.S. Small Business Administration ("SBA"), submits this reservation of rights and limited objection ("Objection") regarding the *Amended Joint Chapter 11 Plan of Liquidation of Kabbage, Inc. (d/b/a KServicing) and Its Affiliated Debtors* (ECF 466) (the "Plan"). In support of this Objection, the United States avers as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937) (the "Company"); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

## NOTICE CONFORMING TO LOCAL RULE 9013-1

Pursuant to Rule 9013-1(h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the United States does not consent to the entry of final orders or judgments by the Court if the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## FACTUAL BACKGROUND

1. Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code on October 3, 2022 (the "Petition Date").

2. The Company has serviced online-originated loans since its founding in 2008.[2] *See* ECF 13, Declaration of Deborah Rieger-Paganis ("Rieger-Paganis Decl.") ¶ 9.

3. In response to the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 28, signed into law on March 27, 2020. The CARES Act created the Paycheck Protection Program ("PPP"). The PPP authorized the SBA to guarantee private lender-funded potentially forgivable loans to eligible small businesses, non-profits, and self-employed individuals to pay employees and certain operating expenses during the pandemic. CARES Act § 1102, 134 Stat. at 286 (codified at § 636(a)(36)(F)(i)). For funding these loans, the SBA paid private lenders a processing fee.

4. The SBA authorized the Company to become an originator and servicer of PPP loans. Rieger-Paganis Decl. ¶¶ 11, 15.

---

[2] Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to them in the Plan and Disclosure Statement.

5.      The Company currently only services its loan portfolio and the loan portfolio of its Partner Banks. As of the Petition Date, those portfolios included mostly loans issued to small businesses, non-profits, and self-employed individuals under the PPP. *Id.* ¶ 9.

6.      The Board of Governors of the Federal Reserve System established the Paycheck Protection Program Liquidity Facility ("PPPLF"). Through the PPPLF, the Federal Reserve Bank of San Francisco, among others, financed PPP lenders' PPP loan originations. *Id.* ¶ 27. The Company obtained financing from the PPPLF with certain Company-originated PPP loans securing the financing. *Id.* ¶ 28.

7.      Debtors filed their Joint Chapter 11 Plan of Liquidation on October 4, 2022. ECF 14. On October 5, 2022, Debtors filed their initial Disclosure Statement. ECF 63.

8.      On October 26, 2022, the Court established April 3, 2023, as the deadline for Governmental Units to file proofs of claim. ECF 169.

9.      On December 30, 2022, Debtors filed their first amended plan and disclosure statement. ECF 395; ECF 396.

10.      On January 19, 2023, the Court heard Debtors' motion to approve the Disclosure Statement. ECF 176. Afterwards, Debtors filed an amended Plan and Disclosure Statement. ECF 466; ECF 467. The same date, the Court approved the Disclosure Statement, as amended. ECF 470. The Court scheduled the confirmation hearing for March 13, 2023.

## ARGUMENT

11.      The Plan cannot be confirmed for five reasons. First, to the extent that confirmation of the Plan unilaterally settles any claim of the United States, the Plan cannot be confirmed. Second, to the extent that the Plan would impose a non-consensual third-party release upon the United States, its cannot be confirmed. Third, to the extent that any Plan confirmation

order discharges Debtors from any debts, it cannot be confirmed.  Fourth, any Plan confirmation order that enjoins the United States' enforcement of its police and regulatory powers prevents confirmation.  Fifth, to the extent that any confirmation order prohibits the United States from exercising its setoff and recoupment rights, the Court must not confirm the Plan.

   **A.**  **The Plan cannot unilaterally settle claims of the United States.**

   12. To the extent that the Plan unilaterally settles Claims of the United States, circumvents the requisite bankruptcy court approval, or otherwise prejudices the United States' Claims, the Plan is improper.  As part of the "Means for Implementation," section 5.8, "Preservation of Rights of Action" of the Plan states: "Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of this Plan itself shall be resolved only by Confirmation of this Plan itself."  Plan at 28.  Neither the Plan nor the Plan Supplement specify Claims and Causes of Action that are "expressly to be settled by Confirmation."

   13. To the extent Debtors contend that the United States' claims are "expressly to be settled by Confirmation" under section 5.8, the Plan cannot be confirmed.  Section 1123(b)(3)(A) of the Bankruptcy Code permits the settlement or adjustment of any claim belonging to Debtors or to the estates but does not allow Debtors to unilaterally settle creditors' claims against Debtors.  The United States has not consented to the compromise or settlement of its claims, especially where the universe of the United States' claims will be undetermined before the Effective Date as the United States has until April 3, 2023 to file its claims.  Debtors should clarify that Plan provisions surrounding settlement and compromise shall not preemptively settle or compromise the United States' claims without the United States' consent.

### B.  The United States opts out of third-party releases set forth in the Plan.

14.　To be clear, the United States opts out of and objects to the third-party non-debtor release provisions set forth in Section 10 and elsewhere in the Plan.  While the Third Circuit stopped short of holding that a non-debtor release is impermissible, it opined that, at most, such a provision could only be valid in "extraordinary" cases and that the "hallmarks" of permissible non-consensual releases are "fairness, necessity to the reorganization, and specific factual findings to support these conclusions."  *In re Cont'l Airlines*, 203 F.3d 203, 212–14 (3d Cir. 2000); *see also In re Wash. Mut.*, 442 B.R. at 351-52 (collecting cases).  The bankruptcy court in *In re Genesis Health Ventures, Inc.* interpreted *Continental* to mean that "limiting the liability of non-debtor parties is a rare thing that should not be considered absent a showing of exceptional circumstances in which several key factors are present."  266 B.R. 591, 608 (Bankr. D. Del. 2001) (internal quotation marks omitted).  In *In re Tribune*, the bankruptcy court required the following factors be present to justify the rare release: "(i) the non-consensual release was necessary to the success of the reorganization, (ii) the releasees have provided a critical financial contribution to the Debtor's plan, (iii) the releasees' financial contribution is necessary to make the plan feasible, and (iv) the release is fair to the non-consenting creditors, i.e., whether the non-consenting creditors received reasonable compensation in exchange for the releases." 464 B.R. at 177–78) (citing *In re Genesis*, 266 B.R. at 607–08).   Here, Debtors make no adequate showing of a single factor considered in the Third Circuit to justify a non-consensual release of non-debtors in these liquidating cases from their potential liability to the United States.

**C. Neither the Plan nor any Confirmation Order Can Grant a Discharge to the Debtors.**

15.     Section 10.3(f)(2)[3] of the Plan states that Debtors are not entitled to discharge. This is correct: Debtors seek confirmation of a liquidating plan and a liquidating debtor is not entitled to a discharge. *See* 11 U.S.C. § 1141(d)(3) (providing that a debtor is not entitled to a discharge where (1) the plan liquidates all of the estate's property, (2) the debtor does not engage in business, and (3) the debtor would be denied a discharge in a chapter 7 bankruptcy). Yet, the Plan repeatedly references "discharged." *See* Plan at 28, section 5.10 (stating that "the obligations of the Debtors thereunder shall be deemed . . . discharged"); Plan at 40, section 10.3(a) (referencing "any Claim . . . discharged"); Plan at 41, section 10.3(c) (referencing "an Allowed Claim or Interest . . . discharged"). Further, Debtors are not entitled to an injunction that functionally operates as a discharge: to prevent creditors from taking action on account of any liabilities that are not debts. *See In re Sis Corp.,* 120 B.R. 93, 96 (Bankr. N.D. Ohio 1990) (holding that injunction contained in liquidating plan was "in derogation of § 1141(d)(3)"). Yet, the Plan includes language seeking to permanently enjoin all holders of Claims or Interests. Section 10.3(b) permanently enjoins all holders of Claims or Interest "from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind […] (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, [….] (iii) creating, perfecting, or otherwise enforcing in any

---

[3] Debtors have represented that the confirmation order will include provisions of section 10.3(f). As no proposed confirmation order has been filed, the United States includes this objection to preserve its right to assert the objection if the confirmation order does not include the provisions of section 10.3(f).

manner, directly or indirectly, any encumbrance of any kind […] (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors," Plan at 41, and this language mirrors the discharge provisions set forth in 11 U.S.C. § 524.  To the extent that this provision would discharge Debtors or purport to offer Debtors relief under the discharge provisions set forth in section 524, the Plan cannot be confirmed.

### D. The Confirmation Order Must Not Prohibit the United States from Exercising its Police and Regulatory Powers.

16.     While section 10.3(f)[4] of the Plan permits the United States to pursue any police or regulatory action after confirmation, to the extent that any confirmation order would enjoin the United States from pursuing police and regulatory actions post-confirmation, the court cannot confirm the Plan.  No confirmation order may enjoin the United States from seeking nonmonetary relief or enforcement of other liabilities that are not debts as defined under 11 U.S.C. § 101(5) (defining claim) and §101(12) (defining debt as liability on a claim).  *See In re Torwico Elecs., Inc.*, 8 F.3d 146, 151 (3d Cir. 1993); *In re Chateaugay Corp.*, 944 F.2d 997, 1008 (2nd Cir. 1991).  Thus, any confirmation order must include a provision like section 10.3(f) to clarify that the United States may pursue any police and regulatory action.

---

[4] Debtors have represented that the confirmation order will include provisions of section 10.3(f). As no proposed confirmation order has been filed, the United States includes this objection to preserve its right to assert the objection if the confirmation order does not include the provisions of section 10.3(f).

### E. The United States explicitly hereby preserves and asserts its right to setoff and recoupment.

17. Although Section 10.3(f)[5] carves the United States out of any provisions that would enjoin, impair, or release the United States' setoff or recoupment, to the extent the confirmation order prevents the United States from exercising its setoff and recoupment rights, the court cannot confirm the Plan. Confirmation does not extinguish setoff claims when they are timely asserted. *In re Cont'l Airlines*, 134 F.3d 536, 541–42 (3d Cir. 1998). Like other creditors, the United States has the common law right to setoff mutual debts. "The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'" *United States v. Munsey Tr. Co. of Wash., D.C.*, 332 U.S. 234, 239 (1947) (quoting *Gratiot v. United States*, 40 U.S. 336, 336 (1841)); *see also Amoco Prod. Co. v. Fry*, 118 F.3d 812, 817 (D.C. Cir. 1997). "The government's common law right of setoff—which is inherent in the federal government—is broad and 'exists independent of any statutory grant of authority to the executive branch.'" *Marre v. United States*, 117 F.3d 297, 302 (5th Cir. 1997) (quoting *United States v. Tafoya*, 803 F.2d 140, 141 (5th Cir. 1986)).

18. Similarly, "[r]ecoupment . . . allows the creditor to assert that certain mutual claims extinguish one another in bankruptcy, in spite of the fact that they could not be 'setoff' under 11 U.S.C. § 553." *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984). "The justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor

---

[5] Debtors have represented that the confirmation order will include provisions of section 10.3(f). As no proposed confirmation order has been filed, the United States includes this objection to preserve its right to assert the objection if the confirmation order does not include the provisions of section 10.3(f).

rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable." *Id*. Therefore, to the extent that the Plan attempts to impair the United States' recoupment or setoff rights, it is impermissible and the Court should not allow Debtors to eliminate or enjoin such right.

## RESERVATION OF RIGHTS

19. Prior to the filing of this Objection, counsel for the United States communicated its concerns with Plan to Debtors' counsel, and proposed language, where applicable, that would resolve its concerns. The United States understands that Debtors have expressed willingness to include the language of section 10.3(f) in the confirmation order. Notwithstanding, the United States has yet to receive or review a proposed confirmation order. Accordingly, due to the deadline for filing objections, the United States objects to the Plan to preserve its rights. The United States expressly reserves its rights to raise any other objections to the Plan at the hearing.

## CONCLUSION

20. For the foregoing reasons, the United States respectfully requests the Court to (a) deny confirmation of the Plan absent modification to address the United States' concerns raised in this Objection, and (b) grant such other and further relief as this Court deems just and proper.

Dated: February 28, 2023                                    Respectfully submitted,

                                                            BRIAN M. BOYNTON
                                                            Principal Deputy Assistant Attorney General

                                                            DAVID C. WEISS
                                                            United States Attorney

                                                            */s/ Alastair M. Gesmundo*
                                                            RUTH A. HARVEY
                                                            RODNEY A. MORRIS

ALASTAIR M. GESMUNDO
STANTON McMANUS
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044
Tel. (202) 305-4659
Fax (202) 514-9163
Alastair.M.Gesmundo@usdoj.gov