**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KABBAGE, INC. d/b/a KSERVICING, et al.,[1] | ) | Case No. 22-10951 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Regarding Docket No. 592** |

**JOINDER OF CUSTOMERS BANK IN LIMITED OBJECTION**
**AND RESERVATION OF RIGHTS OF CROSS RIVER BANK TO**
**CONFIRMATION OF DEBTORS' CHAPTER 11 PLAN**

Customers Bank ("Customers Bank") hereby joins in the limited objection and reservation of rights to confirmation of the Debtors' Plan (the "Cross River Objection") filed by Cross River Bank ("Cross River" and together with Customers Bank, the "Banks").[2] As set forth in the Cross River Objection, the Debtors have not demonstrated that they will, or can, transfer servicing of the Banks' PPP Loans, including the transfer to the Banks of their respective PPP loan Servicing Files, raising critical confirmation issues addressed fully in the Cross River Objection (so not repeated here). In addition to those issues identified in the Cross River Objection, the combination of (i) the Plan providing the Debtors with the right to escape servicing transition undertakings approved post-petition by this Court with (ii) the near-exclusive reliance by unsecured creditors on expensive and certain to be highly-contested litigation, as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] References to the "Plan" are to the *Amended Joint Chapter 11 Plan of Liquidation* [D.I. 466],and references to the "Disclosure Statement" are to the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Liquidation* [D.I. 467]. Capitalized terms not defined herein are defined in the Plan and Disclosure Statement.

well as (iii) the broad releases, including third party releases, being received by the Plan-defined Released Parties, calls into question whether the Plan meets the good faith requirement of Bankruptcy Code section 1129(a)(3).[3] For the reasons set forth in the Cross River objection and those set forth below, confirmation of the Plan should be denied.

### A. Transfer of Servicing And Servicing Files

1. The Debtors' Plan notionally suggests that a key component of that Plan is the transfer of servicing of all PPP Loans from Kabbage to a new servicer by the Effective Date. *See* Plan § 5.3(c)(i). Indeed, the Plan states that the Debtors will undertake commercially reasonable transitioning efforts prior to the Effective Date and will not have any PPP loan servicing obligations from the Effective Date forward. *Id.* § 5.3(c)(iv).

2. To consummate the transfer of servicing by the Effective Date, Kabbage must, among other things, transfer to the Banks all of their respective "Servicing Files," as defined in the agreements relating to servicing of the PPP Loans. Those files belong to the Banks (not the Debtors).[4]

3. As set forth in the Cross River Objection, the Debtors' failure to return Cross River's Servicing Files violates the Court-ordered stipulation between the Debtors and Cross River, which requires the Debtors to produce those files to Cross River. *See Order Approving Stipulation Between The Debtors And Cross River Bank* (D.I. 444 & 441-1) (together, the "**Servicing File Order**"). As further set forth in the Cross River Objection, Cross River has been

---

[3] To be clear, the good faith issues relate to the requirement described below that a Plan serve a reorganization purpose, and not to the conduct or intentions of the Debtors' professionals.

[4] *See* Sales and Servicing Agreement Among Customers Bank as Purchaser and Kabbage Inc., as Seller and Initial Subservicer Dated as of February 2, 2021, § 10(a)(vi).

working unsuccessfully for several months prepetition and throughout the post-petition period to effect that servicing transition.

4. Customers Bank has been almost equally as active in seeking the Debtors' pre-Effective Date cooperation in transitioning servicing, including delivery of loan files, and is at least equally as unsuccessful.

5. Like Cross River, Customers Bank has received from the Debtors an express post-petition undertaking that references the transition of Customers Bank's PPP loan portfolio under the terms of an agreement approved by this Court. Specifically, the post-petition settlement agreement between Customers Bank and the Debtors approved by Court Order on November 9, 2022 (the "Customers Settlement Agreement"), obligates the Debtors to perform servicing until transfer to a new servicer. More specifically, Paragraph 4(A) of the Settlement Agreement provides that the Debtors "shall take commercially reasonable efforts to maintain the current levels of PPP loan servicing with respect to the Remaining Loan Population . . . from the Effective Date through the earlier of (i) March 31, 2023 and (ii) the date of transfer of KServicing's servicing obligations to an alternative servicer acceptable to [Customers Bank]. . . ."

6. Also like with respect to Cross River, the Debtors' adherence to that undertaking has been at best sporadic. A January 18, 2023, request for certain basic transition information, including borrower ACH payment information, information regarding potentially fraudulent loans, and data on borrower forgiveness, received no response from the Debtors. Customers Bank provided a basic transition plan/timeline and a draft of a borrower communication letter on January 26, 2023, which also received no response from the Debtors. A draft FAQ communication to borrowers provided by Customers Bank on January 27, 2023, and again received no response from the Debtors. On February 9, Customers Bank provided in writing a further updated detailed

transition plan with information needed, sequencing, and dates.  The Debtors failed to provide any needed information in response, although some information has been trickling over the past forty-eight hours.

7. And also like Cross River, Customers Bank remains very concerned about the lack of progress and transparency as to how and when the transition steps will be implemented.

**B.    Debtors' Failures Raise Substantial Confirmation Issues**

8. Customers' Bank shares Cross River's stated concerns regarding Plan feasibility under Bankruptcy Code section 1129(a)(11).  To date, the Debtors have shown no ability to transfer servicing of the Banks' respective PPP Loans.  Absent substantial progress for the transfer of servicing prior to the confirmation hearing—including the transferring of all Servicing Files—the Court should deny confirmation on the grounds that the Debtors have failed to prove their ability to consummate the Plan.

9. The feasibility concerns expressed in the Cross River Objection arising from Cross River's contemplated administrative claim assertion are magnified when the Debtors' non-compliance with the Customers Settlement Agreement are considered. The administrative claim that will likely be filed by Customers Bank, in part based on failure to provide the Customers Settlement Agreement mandated servicing, would be decreased through rapid transition to a successor servicer as envisioned in that Customers Settlement Agreement.

10. Although not raised in the Cross River Objection, the convergence of multiple Plan provisions also call into question whether the Plan meets the good faith requirement for confirmation under section 1129(a)(3).  Good faith is not a defined term in the Bankruptcy Code, but is generally interpreted to mean that there is "a reasonable likelihood that the plan will achieve a result consistent with the objectives and the purposes of the Bankruptcy Code." *See In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y 2010); *Matter of Madison Hotel Assocs.*,

749 F.2d 410, 424026 (7th Cir. 1984).  A plan is proposed in good faith "only if it has a legitimate and honest purpose to reorganize the debtor." *Solow v. PPI Eneters. (U.S.), Inc (In re PPI Eneters. (U.S.), Inc.)*, 324 F.3d 197, 211-12 (3d Cir. 2003).

11. A close reading of the Plan here reveals that, contrary to the Debtors' express undertaking to Cross River in the Servicing File Order and its commitment to Customers Bank in the Customers Settlement Agreement, one impact of confirmation will be to enable the Debtors to escape its transition obligations provided in its post-petition agreement, itself an action inconsistent with the objectives and purposes of the Bankruptcy Code.

12. Section 5.3(a) of the Plan states only that the Debtors will continue to service the PPP portfolios in the ordinary course through the Effective Date.  Section 5(b) of the Plan then leads with a statement that the Debtors' efforts to transfer servicing also end as of the Effective Date, providing that the Debtors will use commercially reasonable efforts to transfer servicing "prior to the Effective Date."  Whatever the Plan's statements as to pre-Effective Date servicing and transition were intended to be, their actual import is to provide no enforceable servicing or transition obligation at all. None of the provisions of the Plan, including the referenced pre-Effective Date servicing and transition undertakings, are enforceable until the Effective Date, and the Plan is clear that the Debtors' servicing and transition obligations end at that very moment.

13. From and after the Effective Date, the Plan, in Section 5.3(b), provides that at the Debtors' sole option and provided it receives a prepayment in an unidentified amount, it may decide to continue servicing "through a date certain."  As a result, under the Plan, the Debtors -- at their option and after having slow-rolled the Banks' portfolio transition efforts -- have the unilateral ability to walk away from their undertakings in the Customers Settlement Agreement. At the same time, unsecured creditors are left to look to the proceeds of expensive and likely

contested litigation for any return and the Released Parties are protected from litigation risk from not only estate representatives, but also from those creditors that do not successfully navigate the release opt-out provisions. A plan that abandons contract counterparties, puts the interests of thousands of PPP borrowers at risk, provides at best an uncertain return to unsecured creditors yet affords identified insiders broad protections against non-debtor litigation is not consistent with the good faith precept of there being an honest and legitimate purpose to reorganize the Debtors.

14. Given the substantial uncertainty as to the Debtors' ability to transfer servicing, the Plan should make the completion of the transfer of servicing of the Banks' respective PPP loans an express condition to the effectiveness of the Plan. As pointed out in the Cross River Objection, the Debtors' Plan leaves open the distinct possibility that the Bank's PPP loans would simply go unserviced post-Effective Date for some indeterminate amount of time, exposing the Banks and their borrowers to substantial harm, in turn potentially resulting in substantially higher administrative claims.

15. Finally, in its objection, Cross River reported that the Debtors have asked Cross River to identify contracts that it would want to be assumed and assigned to Cross River or its new servicer. Customers Bank has been asked the same question, but its need and ability to patriate those contracts is even less than Cross River's.

16. Customers Bank has reported to the Debtors that it will undertake post-transition serving itself. Customers Bank has the personnel, systems and know-how necessary to service the portfolio already in-house. All it needs is the information possessed by the Debtors. Customers Bank does not need any of the Debtors' contracts—provided that the Debtors actually turn over the Customer Bank-owned Servicing Files.

## CONCLUSION

17. For the reasons stated above the Banks respectfully requests that confirmation be denied, absent satisfactory resolution of these objections.

Date: February 28, 2023
Wilmington, Delaware

**SULLIVAN • HAZELTINE • ALLINSON LLC**

*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel. (302) 428-8191
Fax (302) 428-8195
Email: bsullivan@sha-llc.com
whazeltine@sha-llc.com

and

**HOLLAND & KNIGHT LLP**
John J. Monaghan (admitted *pro hac vice*)
Jeremy M. Sternberg (admitted *pro hac vice*)
Lynne B. Xerras (*pro hac vice forthcoming*)
10 St. James Avenue
Boston, MA 02116
Telephone: 617-523-2700
Facsimile: 617-523-685
john.monaghan@hklaw.com
jeremy.sternberg@hkaw.com
lynne.xerras@hklaw.com

*Counsel to Customers Bank*