**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>KABBAGE, INC., d/b/a KSERVICING, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10951 (CTG)<br>(Jointly Administered)<br><br>Hearing Date: March 20, 2023 at 10:00 a.m.<br>Obj. Deadline: March 13, 2023 at 4:00 p.m. |

**MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE
2004 DIRECTING PRODUCTION OF DOCUMENTS AND MATERIALS
AND APPEARANCE FOR ORAL EXAMINATION**

Customers Bank respectfully moves this Court, pursuant to Section 105 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Rule 2004-1 of the Local Rules for Practice and Procedure of the United States Bankruptcy Court for the District Court of Delaware (the "Local Rules"), for the entry of an order compelling Kabbage, Inc. ("Kabbage or the "Debtor") to (i) produce the documents set forth in Exhibit A hereto and (ii) to produce the appropriate individuals for examination by Customers Bank with respect to the Deposition Topics that are also set forth in Exhibit A, including without limitation the Debtors employees responsible for operations and IT, respectively, Donna Evans and Jason Dods. In support of this motion (the "Motion"), Customers Bank respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Debtor is running headlong down the path of confirming a liquidating chapter 11 plan (the "Plan") that (i) indicates an intention by the Debtor to provide commercially reasonable efforts to transition servicing of Customers Bank's $180 million PPP loan portfolio to a new servicer prior to the Plan's Effective Date, (ii) rejects the contracts under which that

servicing occurs as of the Effective Date, and (iii) affords the Debtor the unilateral option to provide or not provide any servicing or transitioning efforts from and after the Plan's Effective Date.  Faced with a March 13, 2023 Plan confirmation hearing with the attendant possibility of a March 28, 2023 Plan Effective Date, and the associated possibility of cessation of loan portfolio servicing or transition efforts, Customers Bank has requested, implored and ultimately demanded that that the Debtor live up to its Plan-provided undertaking of pre-Effective Date servicing transition efforts and that it deliver the information solely in its and its agents possession necessary for Customers Bank to act as a successor servicer.  Inexplicably, Customers Bank's efforts have been unsuccessful, met not with the promised commercially reasonable efforts, but rather with periodic and largely unfulfilled promises separated by lengthy periods of silence.

2. With the potential of less than thirty days remaining to undertake a servicing transition that under the best of circumstances should take approximately forty-five days, and having received passing little cooperation from the Debtors thus far to provide the information in its possession necessary to effect that transition, Customers Bank seeks through this Motion to invoke the provisions of Bankruptcy Rule 2004 to compel the Debtor to do that which it has repeatedly said it will do, but also repeatedly failed to do voluntarily—namely provide the information necessary for a transition to Customers Bank, which has informed the Debtor that it will act as successor servicer.

3. As noted, Customers Bank has informed the Debtor that Customers Bank intends to perform successor servicing itself and that it requires certain information, in order to do so, which is either its property in the Debtor's possession or is the Debtor's property, including the

Debtor's loan servicing files.[1]  Whether the Debtor or Customers Bank owns the servicing files, the information contained in those files and the Debtor's conduct in maintaining and administering those files are well-within the scope of examination under Bankruptcy Rule 2004. ("The examination may relate only to the acts, conduct, or property or the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate.")  Fed. R. Bankr. P. 2004(b).).

## BACKGROUND

4. The Plan states that that the Debtor shall "use commercially reasonable efforts to assist the Reserve Bank and/or Partner Banks to transfer servicing obligations to a third-party loan servicer prior to the Effective Date." [Amended Plan at Section 5.3]. Despite this provision, the Debtor has rebuffed weeks of commercially reasonable requests for the basic information needed for Customers Bank to take over the servicing of its loans as of March 31, 2023.

5. For example, by letter dated January 18, 2023, Customers Bank requested certain basic transition information, including borrower ACH payment information, information regarding potentially fraudulent loans, and data on borrower forgiveness. *Declaration of Jeremy Sternberg in Support of Customers Bank's 2004 Motion* ("*Sternberg Declaration*") at para. 2.[2] The Debtor has not provided this information.

---

[1] It is also noteworthy that the post-petition settlement agreement between the parties, entered by Court Order on November 9, 2022, obligates the Debtor to perform servicing until transfer to a new servicer.  More specifically, Paragraph 4(A) of the Settlement Agreement provides that the Debtor "shall take commercially reasonable efforts to maintain the current levels of PPP loan servicing with respect to the Remaining Loan Population . . . from the Effective date through the earlier of (i) March 31, 2023 and (ii) the date of transfer of KServicing's servicing obligations to an alternative servicer acceptable to [Customers Bank] . . . ."  Customers Bank has identified an acceptable alternative servicer, namely itself, but the Debtors have provided no meaningful information to aid the transition of servicing to Customers Bank by March 31 or any date.

[2] A copy of the Sternberg Declaration is attached hereto as Exhibit B.

6. By letter dated January 26, 2023, Customers Bank provided the Debtor with a basic transition plan/timeline and a draft of a borrower communication letter. *Sternberg Declaration* at para. 3. The Debtor has not provided comment on the borrower communication letter.

7. On January 27, 2023, Customers Bank provided the Debtor with a draft FAQ communication to borrowers. *Sternberg Declaration* at para. 4. The Debtor has not provided comment on the draft FAQs.

8. At the same time (late January 2023), Customers Bank suggested a phased transition in which the Debtor would initially stop billing, payment processing, processing borrower forgiveness applications and submissions to the SBA of guaranty purchase. Such a "pause" would allow Customers Bank to prepare for full transition in a more coherent and organized fashion. Customers Bank proposed that the pause start on February 1, 2023. By email dated January 31, 2023, counsel for the Debtor responded:

> The proposal was actually very well received and there were a number of components the company liked and thought were necessary to [sic] for a clean transition. The benefits of "pausing" were certainly among the appreciated factors. As I suspected though the turnaround was met with hesitation and the challenges of doing something like this on short notice didn't feel prudent. I think there is alignment on the key points and for the concepts that the company is working through to avoid hiccups it could be a good idea for the right fin ops people to talk and have a solution in place. I know it isn't 2/1 that your clients hoped but would they be willing to have the plan in place for 3/1 start?."

However, the Debtor has refused to respond to basic information requests in order to effect the "pause" on March 1, or more recently for a "pause" on March 15. *Sternberg Declaration* at para. 5.[3]

---

[3] The Debtor has refused to engage on this pause request despite informing Customers Bank that it has requested that the SBA honor its request to pause virtually all other servicing activity.

4

9. On February 2, 2023, in response to a request from the Debtor, Customers Bank provided a detailed spreadsheet of the information it needed in order to effect the servicing transition. As of March 5, 2023, the Debtor has not provided that information.

10. On February 9, Customers Bank provided in writing a further updated detailed transition plan with information needed, sequencing, and dates. The Debtor has failed to provide any needed information in response. After more entreaties for meetings and/or information in the days and weeks that followed that have basically been rebuffed by the Debtor, on February 22, 2023, counsel for Customers Bank wrote to counsel for the Debtor:

> It is now a week until March 1 and Kabbage has not shared any of the information needed to effect the limited cutover that we have discussed on March 1 (stopping borrower collections and new forgiveness applications), let alone the information required for a full transition some time later despite the many requests for information and invitations to meet by Customers Bank.
>
> Much time has passed since our last joint meeting on the transition issues (at which time we discussed among other things the attached set of narrowed requests), and our subsequent requests for detail about borrower communications, connection between the IT teams on the cloud based loan files, comments on the draft borrower communication and FAQs, and more have not resulted in any meaningful responses.

*Id.* at para. 6.

11. The Debtor has still refused to provide any of the servicing transfer information requested or any information about a clear pathway or plan to a pause and/or full transition.

12. While the information sought is critical to Customers Bank's ability to take on the servicing of its loans that are currently being serviced by the Debtor, the real parties who stand to benefit from an orderly transition or to be harmed by one that is as disordered and chaotic as the Debtor seems to intend are the thousands of borrowers. A disordered transition will result in miscommunications with borrowers, lost or missed or misapplied payments, missing deadlines

for applying for guaranty purchase from the SBA and many other problems that can and should be avoided and not be visited on unsuspecting borrowers.

13. Basic discovery including testimony about type, location, contents and IT requirements for transferring the loan servicing files, and production of those files appears to be a necessary alternative to the promised but undelivered "commercially reasonable" efforts by the Debtor to effect a transition of the Customers Bank $180 million PPP loan portfolio to Customers Bank for the benefit of the borrowers.

14. For these reasons, and the reasons below, Customers Bank respectfully requests that the Court grant the Motion.

## JURISDICTION AND VENUE

15. This court has Jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue of the Debtors' Chapter 11 cases and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 105 of the Bankruptcy Code, Bankruptcy Rule 2004, and Rule 2004-1 of the Local Rules. Customers Bank consents pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## RELIEF REQUESTED

16. Customers Bank seeks entry of the Proposed Order annexed hereto (the "Proposed Order"), which would compel the Debtor (i) to produce the documents and materials requested in

Exhibit A, and (ii) to conduct an examination of its key transition employees, Donna Evans and Jason Dods, with respect to the topics listed in Exhibit A, as well as any other witness necessary to fully address the topics listed on Exhibit A.

## BASIS FOR RELIEF

17.     An examination pursuant to Bankruptcy Rule 2004 "can be ordered 'on motion of any party in interest.'" In re Lifeco Inv. Group, Inc., 172 B.R. 478 (Bankr. D. Del. 1994) (quoting Fed. R. Bankr. P. 2004(a)).  Rule 2004 further provides that the Court may order the examination and the production of documentary evidence concerning any matter that relates "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or … any matter relevant to the case or the formulation of a plan."  Fed. R. Bankr. P. 2004(b); see also Harrow v. Street (In re Fruehauf Trailer Corp.), 369 B.R. 817, 827-28 (Bankr. D. Del. 2007) (noting the "extensive document discovery" that occurred pursuant to a subpoena issued under Fed. R. Bankr. P. 2004).  To that end, "[t]hird parties having knowledge of the debtors' affairs, as well as a debtor itself, are subject to examination." In re Valley Forge Plaza Assoc., 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990).

18.     The scope of a Rule 2004 examination is "unfettered and broad," as the plain language of the rule indicates.  See 9 Collier on Bankruptcy 2004 [1] at 2004-6 (15th ed. Rev. 1997) (quoting In re Table Talk, Inc., 51 B.R. 143, 145 (Bankr. D. Mass. 1985).  Courts have repeatedly recognized that the scope of Bankruptcy Rule 2004 examinations "as broad, unfettered and in the nature of a 'fishing expedition.'" In re Countrywide Home Loans, Inc., 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008) (citing In re Lev, No. 05-35847, 2008 WL 207523, at *3

7

(Bankr. D.N.J. Jan. 23, 2008); In re Silverman, 36 B.R. 254 (Banker. S.D.N.Y. 1984); In re Vantage Petroleum Corp., 34 B.R. 650 (Bankr. E.D.N.Y. 1983)).  Indeed, Bankruptcy Rule 2004 affords parties-in-interest an extremely broad right of discovery and "is even broader than that of discovery permitted under [the Federal Rules of Civil Procedure], which themselves contemplate broad, easy access to discovery."  In re Valley Forge Plaza Assocs., 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (citations omitted).

19. Rule 2004 relief is necessary and applicable here.  The requested discovery will provide Customers Bank with the information necessary to protect the borrowers, information that (i) involves assets of the Debtor or assets of Customers Bank in the possession of the Debtor or its agents, (ii) implicates the Debtor's conduct during this case in carrying out its servicing obligations and (iii) the receipt of which would advance the transition of servicing through affording Customers Bank the requested information unquestionably affecting the administration of the estate.

20. As set forth above, the information sought is reasonable and necessary and for reasons unknown to Customers Bank, the Debtor simply refuses to share it.

21. The specific document requests and deposition topics set forth on Exhibit A attached hereto are no more than what is needed, and what the Debtor has acknowledge are needed, to effect a proper transition of loan servicing (in accordance with the Debtor's Plan) from the Debtor to Customers Bank.  It bears repeating that the ultimate beneficiaries of a proper transition are the thousands of borrowers with outstanding PPP loans.  Each topic concerns information relevant "to the acts, conducts, or property or to the liabilities and financial condition of the debtor."  Fed. R. Bankr. P. 2004(b

22.     The requests and deposition topics in Exhibit A are essentially the same and are likewise reasonable in scope.  To ensure the timely production of these documents and the information to be gained from the depositions, the Court should grant this Motion in its entirety.

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2004-1(b)**

23.     Pursuant to Local Rule 2004-1, undersigned counsel certify that they conferred with the Debtors' counsel regarding the requested production of documents and the timing of such production. As of the filing of this Motion, the parties are unable to come to an agreement regarding the timing and scope of the proposed document production.

**NOTICE**

24.     Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) the Federal Reserve Bank; (d) Cross River Bank; (e) the Small Business Administration; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.

**NO PRIOR REQUEST**

25.     No prior request for the relief requested herein has been presented to this or any other court.

**WHEREFORE,** for the reasons discussed herein, Customers Bank respectfully requests entry of an order substantially in the form annexed hereto as Exhibit C: (i) granting the Motion in its entirety; (ii) compelling the Debtor to produce documents and materials set forth in

Exhibit A; (iii) authorizing Customers Bank to conduct examination of the Debtor's employees Donna Evans and Jason Dods in connection with the topics listed in Exhibit A on an expedited basis; and (iv) granting such other and further relief as this Court deems just and proper under the circumstances.

| | |
|---|---|
| Dated: March 6, 2023<br>Wilmington, Delaware | **SULLIVAN • HAZELTINE • ALLINSON LLC**<br><br>*William A. Hazeltine*<br>William D. Sullivan (No. 2820)<br>William A. Hazeltine (No. 3294)<br>919 North Market Street, Suite 420<br>Wilmington, Delaware 19801<br>Telephone: 302-428-8191<br>Facsimile: 302-428-8195<br>whazeltine@sha-llc.com<br><br>-and-<br><br>HOLLAND & KNIGHT LLP<br>John J. Monaghan (admitted *pro hac vice*)<br>Jeremy M. Sternberg (admitted *pro hac vice*)<br>Lynne B. Xerras<br>10 St. James Avenue<br>Boston, MA 02116<br>Telephone: 617-523-2700<br>Facsimile: 617-523-685<br>john.monaghan@hklaw.com<br>jeremy.sternberg@hkaw.com<br>lynne.xerras@hklaw.com<br><br>*Counsel to Customers Bank* |