**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br>**KABBAGE, INC. d/b/a KSERVICING, et al.,**<br>Debtors.[1] | Chapter 11<br>Case No. 22-10951 (CTG)<br>(Jointly Administered)<br>Hearing Date (requested):<br>  March 20, 2023, at 10:00 a.m. ET<br>Objection Deadline (requested):<br>  March 15, 2023, at 4:00 p.m. ET |

**JOINT MOTION OF CROSS RIVER BANK AND CUSTOMERS BANK FOR AN ORDER, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2004, AND LOCAL BANKRUPTCY RULE 2004-1, AUTHORIZING AND DIRECTING THE EXAMINATION OF AMERICAN EXPRESS KABBAGE INC.**

Cross River Bank ("**Cross River**") and Customers Bank file this motion, pursuant to Bankruptcy Code section 105(a), Bankruptcy Rule 2004, and Local Rule 2004-1, seeking the entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "**Proposed Order**"), authorizing and directing discovery from American Express Kabbage Inc. ("**Amex Kabbage**," and collectively with its parent, American Express Travel Related Services Company, Inc., and subsidiaries of such parent, "**American Express**")[2] substantially in the form annexed as Exhibit 1

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A) (collectively, the "Debtors").

[2] Cross River and Customers Bank believe that Amex Kabbage has possession, custody, or control over the relevant information sought in this Motion. However, because little information regarding the October 2020 American Express transaction with Kabbage is public or known, this motion references American Express in certain contexts, and the movants reserve all rights with respect to any other American Express entities.

21673442

to the Proposed Order. In support of the Motion, Cross River and Customers Bank respectfully represent as follows:[3]

## INTRODUCTION[4]

1. The Debtors service more than $565 million in Paycheck Protection Program ("**PPP**") loans owned by Cross River and approximately $180 million in PPP loans for Customers Bank. For over a year, Cross River has been trying to obtain copies of its Servicing Files, as defined in the CRB Agreements,[5] for Cross River's PPP Loans (the "**CRB Servicing Files**"). Customers Bank has made similar efforts to obtain its own files and key information (the "**CB Files**" and, together with the CRB Servicing Files, the "**Partner Bank Files**"), and has not received the complete requested transaction data information and key origination data.

---

[3] All references to an "Ex. __" refer to exhibits attached to the Declaration of Isaac Nesser (the "**Nesser Declaration**") filed contemporaneously with and in support of this motion.

[4] Capitalized terms not defined herein are defined in the Plan [ECF 466] and Disclosure Statement [ECF 467].

[5] Under the CRB Agreements, the "**Servicing File**" for a loan includes, among other things, "the documents, files and record held or maintained by or on behalf of [Kabbage] pertaining specifically to such [loan] or the servicing thereof, including, without limitation, computer files, data tapes, books, records, electronic copies of documents, notes and Asset Files relating to such [loan]." Sale and Servicing Agreement among Cross River Bank and Kabbage dated as of May 6, 2020 ("**SAS**"), § 1 at 6; *see also* Letter Agreement with respect to servicing under Loan Program Agreement, dated September 17, 2020, at 3-4 ("**LPA Letter Agreement**"). The "Servicing File" for each loan further includes, as part of the "Asset File," "(i) the related Governing Contract with the Loan Obligor fully executed or deemed executed, (ii) all amendments, restatements, modifications, riders or other supplements to the related Governing Contract with the Loan Obligor fully executed or deemed executed, (iii) the related loan application (consisting of the SBA Form 2483), (iv) the account number assigned to the applicable Loan Obligor, (v) the SBA loan number assigned to the applicable Asset, (vi) the resolution to borrow form utilized by the Seller, (vii) the Seller's SBA Form 2484 and (viii) copies of any forms or other documentation necessary to be submitted to the SBA in order for the Asset to be eligible for the benefit of the SBA's guaranty of the Asset." SAS § 1, at 2; *see also* LPA Letter Agreement at 4 (using the term "Loan File" rather than "Asset File").

2.      The Debtors are required by Court-ordered stipulation to provide Cross River with the CRB Servicing Files. *See Order Approving Stipulation Between The Debtors And Cross River Bank* [ECF 444 & 441-1] (together, the "**Servicing File Order**").  The Debtors, however, have stated that they lack possession, custody, or control of certain parts of the CRB Servicing Files as the result of a transaction with American Express in October 2020.  During this transaction, key components of the Servicing Files were transferred from Kabbage, who had held those files in trust for Cross River, to American Express (without Cross River's knowledge or consent). Although the Debtors have stated that they retained partial access to some components of the CRB Servicing Files, they have also stated that part of the files are outside of their possession, custody, and control and solely within American Express's purview.  As a result, the Debtors appear to be unable to provide the complete CRB Servicing Files to Cross River (as they are required to do) without American Express's cooperation.  The same is true as to Customers Bank's files.  Yet, despite numerous requests from Cross River and Customers Bank to the Debtors, the Debtors' written demand for this information from American Express, and the fact that this material is Cross River's and Customers Bank's property, respectively (not property of the Debtors or American Express), American Express has not provided adequate access or copies.

3.      This motion seeks to compel American Express to produce the data and documents contained within the Servicing Files and related thereto that they have so far failed to deliver.  At the Debtors' insistence, Cross River and Customers Bank have allowed the Debtors to attempt to work with American Express to obtain the Partner Bank Files.  But the Debtors have not yet been able to provide any further information or documents from American Express, and time has run out.  Per the Debtors' Plan, servicing of Cross River's and Customer Bank's loans must be transferred in potentially a matter of just a few weeks, and as submitted in Cross River's limited

objection to Plan confirmation (ECF 592) and Customer Bank's joinder thereto (ECF 594), there are serious concerns regarding the ability of the Debtors to meet their transfer obligations. It is also imperative that Customers Bank and Cross River obtain the full loan files and related information so that they can understand the loans that remain at issue and to facilitate the processing of forgiveness applications and guaranty payments by the SBA.

4. Cross River and Customers Bank will continue to work with the Debtors and American Express to obtain the information sought in this Motion and to transfer servicing of the movants' PPP loans to a new servicer. Cross River understands that in the immediate days prior to the filing of this motion, American Express provided some limited information to the Debtors. Cross River has not received that information as of yet, but understands it is at most a small subset of the information sought through this Rule 2004 discovery.

5. Moreover, as discussed herein, given the posture of these chapter 11 cases and the lack of information to date, Cross River and Customers Bank believe this Motion is necessary and ask the Court to grant the relief requested. In addition, Cross River and Customers Bank understand that to transfer servicing, to continue servicing, and to comply with regulatory and legal obligations under PPP guidelines and otherwise, the movants and the Debtors, among others, may require information and cooperation from American Express beyond what is sought in this Motion. The movants reserve all rights to seek further relief in that regard as necessary.

## I.  JURISDICTION

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are Bankruptcy Code sections 105(a) and 1103, as supplemented by Bankruptcy Rule 2004 and Local Rule 2004-1.

## II. FACTUAL BACKGROUND

7. Cross River and Kabbage entered into agreements relating to the origination and servicing of PPP loans in April and May of 2020. Pursuant to the Loan Program Agreement (as amended and supplemented, the "**LPA**"), Cross River appointed Kabbage to act as its "Agent" to market, process, and service PPP applications on Cross River's behalf. Cross River and Kabbage also entered into the SSA, which, among other things, effectuated Cross River's purchase of the rights to certain PPP loans that Kabbage had previously originated in its own name (defined in the SSA as the "Assets"). The SSA also obligated Kabbage to continue in its role as servicer for the Assets.

8. The LPA requires Kabbage to "maintain and retain on behalf of [Cross River] all original" loan applications, copies of notices of declination, other documents relating to rejected loan applications, and originals or copies of any other documents provided to or received from borrowers, LPA § 3.1(g), and to provide such documents to Cross River on request. *Id.* § 3.1(i)(2). Likewise, the SSA requires Kabbage to "collect, verify, and maintain all documents required under the CARES Act, the Paycheck protection Program and SBA Regulations for each Asset to be an eligible loan to an eligible borrower," SSA § 5(e)(iv), (vi), and to provide access to such documents upon Cross River's request, *id.* §§ 5(e)(viii), 9(b).

9. Both the SSA and LPA state that the "Servicing File"—the "documents, files and records held or maintained by or on behalf of [Kabbage]"—is the property of the Cross River, that it is held in trust by Kabbage "in a custodial capacity only," and that Kabbage "shall deliver"

Servicing Files to Cross River "promptly" upon request. SPA § 11(a); LPA Letter Agreement at 3-4. [6]

10. In October 2020, the Debtors transferred the substantial majority of their assets to Amex Kabbage. Disclosure Statement at 3; *see also* Debtors' 2004 Motion at 5 [ECF 576]. American Express obtained, among other things, the Debtors' valuable lending and servicing platform, and the Kabbage IP, including the "Kabbage" name. *See* Disclosure Statement at 43. American Express now runs "Kabbage Funding From American Express." The Debtors' management and shareholders took nearly all of the $750 million that American Express paid for the Debtors' assets. *Id.* at 43. Kabbage itself was rendered a "wind down" entity, with minimal funding, intended to service the loans and then close. *Id*.

11. As relevant here, in connection with the transaction, Kabbage transferred certain data and information to American Express. This transfer included key components of the servicing files Kabbage was required to maintain, and which are Cross River's property and Customers Bank's property, under each of their respective agreements.[7]

---

[6] As detailed in numerous pleadings filed with this Court, including Customer Bank's Motion for Entry of an Order Compelling Compliance with Court Approved Settlement Agreement [ ECF 336] at paragraphs 1-7, Customers Bank has a similar contractual relationship with the Debtor, and one of the agreements between the parties, the April 2020 Processing and Servicing Agreement provides that the "Loan File" "means, with respect to each Loan, the Loan Application, Note, Loan Agreement, and any other documents provided to Borrowers in connection with a Loan, as directed by the Bank" (p.3) and that "Loan Files" are the "sole property of the Bank" and "shall remain the sole property of the Bank at all times" (p. 22). Another agreement between Customers Bank and the Debtor, the Sales and Servicing Agreement, defines Loan Documents as "the Asset Files, Servicing File, Confirmation Documents, and any documents created under the Subservicer's compliance program related to the Asset" (p. 4) and provides that the Debtor "shall deliver or cause to be delivered . . . as soon as practicable upon request, all Loan Documents" (p. 14).

[7] Nothing herein should be construed as a waiver of any claims belonging to Cross River or Customers Bank with respect to American Express's possession of aspects of the Servicing Files, and each of Cross River and Customers Bank expressly reserves all rights with respect to such claims.

12. To fulfill its servicing obligations, Kabbage entered into a transition services agreement with Amex Kabbage ("**AmEx TSA**"), pursuant to which American Express is to provide Kabbage "with information and access to books and records necessary and critical to run its PPP business." Disclosure Statement at 35. Debtors state that they have attempted to obtain information pursuant to the AmEx TSA, but that American Express has not been accommodating. *See id.* ("With the incredibly voluminous information production requests from the DOJ and various other stakeholders in connection with the Disputes, AmEx's performance under the AmEx TSA is more important than ever. Nevertheless, retrieving documents from AmEx has and continues to be difficult and requires concerted effort as responses are often delayed and incomplete."); s*ee also* Declaration of Deborah Rieger-Paganis ¶ 16 [ECF 13] ("**First Day Declaration**") (citing "AmEx's refusal to honor its obligations under a Transition Services Agreement [ ] between the Company and AmEx entered into in connection with the AmEx Transaction, which has affected the Company's ability to perform a number [of] operational functions").

13. Notwithstanding its obligations under the AmEx TSA, and notwithstanding that it does not own the Partner Bank Files, American Express has failed to provide key components of those files to the Debtors or Cross River and Customers Bank. Following conversations between American Express and the Debtors in December 2022, Cross River's in house counsel reached out directly to in-house counsel at American Express in January 2023, who responded by directing Cross River to American Express's outside counsel. Nesser Decl. ¶ 7. Outside counsel from Cross River then called American Express's outside counsel on January 11, 2023 to meet and confer. *Id.* ¶ 8. During that call, American Express informed Cross River that it would be most efficient for American Express to receive information requests directly from the Debtors. *Id.*

14. Based on that representation by American Express, and at Cross River's urging, the Debtors wrote a letter to American Express on January 13, 2023 demanding that American Express agree by January 19, 2023 to provide certain requested materials, and that American Express actually provide those materials by February 17, 2023.[8] *Id.* ¶ 9 & Ex. 3 (Jan. 13, 2023 Letter). The letter highlighted the "importance of this information to the Debtors' proper fulfillment of their loan servicing obligations and the administration of the Debtors' estates," and states that "[g]iven the importance of the materials to the Debtors' estates, if Amex Kabbage opposes providing the requested information, the Debtors will file a [Rule 2004] motion . . . ." Ex. 3 (Jan. 13, 2023 Letter) at 1-2. American Express has yet to provide the requested materials, and Cross River understands that American Express has similarly refused to commit to providing it. Nor have the Debtors pursued any action as to American Express to obtain the materials.

15. The files in American Express's possession are relevant not only to the impending servicing transfer, administration of forgiveness and guaranty purchase applications, and to the liquidation of Cross River's asserted claims against the Debtors, but also to numerous governmental investigations regarding the Debtors and their origination of PPP Loans. *See* Disclosure Statement at 30-35. Additionally, the SBA has held up the payment of PPP loans held by Customers Bank and Cross River for forgiveness or guarantee purchase on multiple purported grounds, including that the Debtors may not have followed proper procedures at the time of origination, and that the Debtors should be liable for loan amounts paid to borrowers exceeding what the borrowers were entitled to receive. First Day Declaration ¶ 16. As indicated by the

---

[8] The Debtors rejected Cross River's request for the letter to be a joint letter from the Debtors and Cross River, and similarly rebuffed Cross River's requests that the Debtors seek relief from the Court to enforce American Express's obligations to turn over Cross River's Servicing Files.

requests in the Debtors' January 13 letter, American Express has numerous files in its possession that relate to the origination of the loans, including, among others, the procedures at the time of origination and KYC/KYB data and documents, each of which are critical to responding to any SBA inquiries and receipt of the repayment of PPP loans. *See* Ex. 3 (Jan. 13, 2023 Letter, Schedule of Requests).

### III.  RELIEF REQUESTED

16.    Pursuant to section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2004, and Local Rule 2004-1, Customers Bank and Cross River seek authorization to issue subpoenas for the production of documents from American Express substantially in the form set forth in Exhibit B ("**Document Requests**").  Pursuant to Bankruptcy Rule 2004, American Express should be directed to produce all documents described in the Document Requests for examination and copying.

### IV.  BASIS FOR RELIEF

17.    "On motion of any party in interest, the court may order the examination of any entity."  Fed. R. Bank. P. 2004(a).  Bankruptcy Rule 2004 "allows parties with an interest in the bankruptcy estate to conduct discovery into matters affecting the estate" *In re Teleglobe Comm'ns Corp.*, 493 F.3d 345, 354 (3d Cir. 2007), and has been termed the "basic discovery device used [in] bankruptcy cases." *In re French*, 145 B.R. 991, 992 (Bankr. D. S.D. 1992).  Rule 2004 permits examination of a party without the requirement of an adversary proceeding or contested matter. *Id.*

18.    The purpose of Bankruptcy Rule 2004 is to permit a broad investigation into the financial affairs of the debtors to assure the proper administration of bankruptcy estates. *In re Symington*, 209 B.R. 678, 683 (Bankr. D. Md. 1997) (citations omitted).  Rule 2004 discovery may be taken of both debtors and third parties. *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28

(Bankr. N.D.N.Y. 1996) ("Third parties are also subject to examination under this rule if they possess knowledge of the debtor's acts, conduct or financial affairs which relate to the bankruptcy proceeding."); *see also Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (same).

19. Bankruptcy Rule 2004(b) provides that the scope of the examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b). In addition, "the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan." *Id.*

20. Moreover, the scope of a Bankruptcy Rule 2004 examination is broader than discovery under the Federal Rules of Civil Procedure. Indeed, courts have recognized that the scope of Bankruptcy Rule 2004 examinations is broad, unfettered, and can legitimately be in the nature of a "fishing expedition." *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008); *In re Lev*, 2008 WL 207523, at *3 (Bankr. D.N.J. 2008) (unpublished); *In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996); *In re Valley Forge Plaza Assocs.*, 109 B.R. at 674.

21. Here, Customers Bank and Cross River are parties in interest entitled to seek discovery under Rule 2004, including because of Cross River's status as a creditor. *See* 11 U.S.C. § 1109(b) (including "creditor" in non-exhaustive list); *In re Addison Cmty. Hosp. Auth.*, 175 B.R.

646, 650 (Bankr. E.D. Mich. 1994) ("§ 1109(b) must be broadly construed to permit parties affected by the proceeding to appear and be heard.").

22. Rule 2004 discovery of American Express is appropriate because American Express is undoubtedly in possession of information (including the Partner Bank Files) that is related to the acts or conduct of the Debtors – including, for example, the origination of the PPP loans. The origination of such loans is the subject of numerous governmental investigations, and underlies Cross River's claims against the bankruptcy estate. Similarly, the information sought from American Express undoubtedly affects the administration of the Debtors' estates because it includes parts of CRB's Servicing Files, which the Debtors are obligated to produce to Cross River, as well as other information and documents that the Debtors must provide to Cross River and Customers Bank as part of the servicing transfer pursuant to the Debtors' chapter 11 Plan. In short, the Document Requests seek from American Express servicing files that are the property of Cross River and Customers Bank, and which are necessary in light of the ongoing governmental investigations, government requests for information in the administration of the repayment of the PPP loans, the impending need to transfer servicing, and the liquidation of Cross River's claims against the Debtors. Additionally, the Document Requests are narrow—they only seek the components of the servicing files and related information that are in American Express's possession, custody, or control in respect of Cross River and Customers Bank, as applicable.

### V. CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2004-1

23. Cross River first asked for information concerning a number of Cross River owned loans nearly a year and a half ago, and have repeatedly sought the information both prepetition and postpetition. Nesser Decl. ¶ 2.

24. On December 5, 2022, Cross River's counsel at Quinn Emanuel had a call with counsel for the Debtors to request the CRB Servicing Files. *Id.* ¶ 3. Quinn Emanuel followed up

with an email to counsel for the Debtors on December 8, 2022, requesting again that the Debtors provide the CRB Servicing Files. *Id.* ¶ 4. In the following weeks, Cross River and Debtors further discussed transfer of the CRB Servicing Files. *Id.* ¶ 5.

25.     On January 11, 2023, Cross River and the Debtors entered into a stipulation requiring the Debtors to provide the CRB Servicing Files, which this Court so ordered on January 17, 2023. Nesser Decl. ¶ 6 & Ex. 2 (ECF 444 & 444-1). It became apparent, however, that the Debtors would not be able to provide material parts of the CRB Servicing File as they were in American Express's possession, and the Debtors apparently lacked sufficient access.

26.     As described above, Cross River's in house counsel reached out directly to in-house counsel at American Express in January 2023, who responded by directing Cross River to American Express's outside counsel. Nesser Decl. ¶ 7. Outside counsel from Cross River then called American Express's outside counsel on January 11, 2023 to meet and confer. *Id.* ¶ 8. During that call, American Express informed Cross River that it would be most efficient for American Express to receive information requests directly from the Debtors. *Id.*

27.     The Debtors have purported to have requested this material from American Express numerous times, and frequently over the recent months. Indeed, after both American Express and the Debtors declined to have Cross River directly involved in discussions regarding Cross River's own files, the Debtors sent a letter on January 13, 2023 with a specific list of critical components of servicing files and related information in American Express's possession that the Debtors, Cross River, Customers Bank, and the Federal Reserve Bank required. American Express has yet to produce these files.

28.     Movants understand that American Express's position is that there should be further meet and confers before this motion is filed. Movants respectfully disagree. As described above,

the process has been dragging on for months and there is no further time to delay. Movants, of course, are willing to continue to meet and confer with American Express while the motion is pending. However, given American Express's failure to produce the material, and given the status of these chapter 11 cases, Customers Bank and Cross River have been forced to seek relief from the Court.

## VI.  NO PRIOR REQUEST AND RESERVATION OF RIGHTS

29. No previous request for the relief sought herein has been made to this Court or any other court. Cross River and Customers Bank reserve the right to apply to the Court to seek additional discovery in connection with these matters.

## CONCLUSION

WHEREFORE Cross River and Customers Bank respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: March 8, 2023　　　　　　　　　　　Respectfully submitted,
　　　　　Wilmington, Delaware

　　　　　　　　　　　　　　　　　　　　　　**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

　　　　　　　　　　　　　　　　　　　　　　*/s/ Gregory W. Werkheiser*
　　　　　　　　　　　　　　　　　　　　　　Gregory W. Werkheiser (No. 3553)
　　　　　　　　　　　　　　　　　　　　　　1313 N. Market Street, Suite 1201
　　　　　　　　　　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　　　　　　　　　　Telephone: (302) 442-7010
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (302) 442-7012
　　　　　　　　　　　　　　　　　　　　　　gwerkheiser@beneschlaw.com

　　　　　　　　　　　　　　　　　　　　　　-and-

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Susheel Kirpalani (admitted *pro hac vice*)
Isaac Nesser (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
susheelkirpalani@quinnemanuel.com
isaacnesser@quinnemanuel.com

Erika Morabito (admitted *pro hac vice*)
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
erikamorabito@quinnemanuel.com

Matthew R. Scheck (admitted *pro hac vice*)
300 West 6th Street, Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100
matthewscheck@quinnemanuel.com

*Counsel to Cross River Bank*

**Sullivan Hazeltine Allinson LLP**

*/s/ William A. Hazeltine*
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 N. Market Street, Suite 420
Wilmington, Delaware 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-8195
whazeltine@sha-llc.com

-and-

**HOLLAND & KNIGHT LLP**
John J. Monaghan (admitted *pro hac vice*)
Jeremy M. Sternberg (admitted *pro hac vice*)
Lynne B. Xerras
10 St. James Avenue
Boston, MA 02116
Telephone: 617-523-2700
Facsimile: 617-523-685
john.monaghan@hklaw.com
jeremy.sternberg@hkaw.com
lynne.xerras@hklaw.com

*Counsel to Customers Bank*