**<u>EXHIBIT 1</u>**

**Blackline**

SOLICITATION VERSION

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------- x
In re                                                     :      **Chapter 11**
                                                          :
**KABBAGE, INC. d/b/a KSERVICING** *et al.*,              :      **Case No. 22-10951 (CTG)**
                                                          :
                                                          :
              **Debtors.**[1]                             :      **(Jointly Administered)**
---------------------------------------------------------- x

## AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF
## KABBAGE, INC. (d/b/a KSERVICING) AND ITS AFFILIATED DEBTORS

**WEIL, GOTSHAL & MANGES LLP**
Ray C. Schrock, P.C. (admitted *pro hac vice*)
Candace M. Arthur (admitted *pro hac vice*)
Natasha S. Hwangpo (admitted *pro hac vice*)
Chase A. Bentley (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile:  (302) 651-7701

*Attorneys for Debtors*
*and Debtors in Possession*

Dated: ~~January 19~~March 9, 2023
       Wilmington, Delaware

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express.  The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

# TABLE OF CONTENTS

| | | |
|---|---|---|
| SECTION 1. | DEFINITIONS AND INTERPRETATION. | 1 |
| SECTION 2. | ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS. | 12 |
| 2.1. | Administrative Expense Claims. | 12 |
| 2.2. | Fee Claims. | 12 |
| 2.3. | Priority Tax Claims. | 13 |
| SECTION 3. | CLASSIFICATION OF CLAIMS AND INTERESTS. | 13 |
| 3.1. | Classification in General. | 13 |
| 3.2. | Grouping of Debtors for Convenience Only. | 13 |
| 3.3. | Summary of Classification. | 14 |
| 3.4. | Special Provision Governing Unimpaired Claims. | 14 |
| 3.5. | Elimination of Vacant Classes. | 14 |
| 3.6. | Voting Classes; Presumptions | 14 |
| 3.7. | Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code | 15 |
| 3.8. | No Waiver. | 15 |
| SECTION 4. | TREATMENT OF CLAIMS AND INTERESTS. | 15 |
| 4.1. | Priority Non-Tax Claims (Class 1). | 15 |
| 4.2. | Other Secured Claims (Class 2). | 1516 |
| 4.3. | Reserve Bank Claims (Class 3) | 16 |
| 4.4. | General Unsecured Claims (Class 4). | 18 |
| 4.5. | Intercompany Claims (Class 5). | 18 |
| 4.6. | Intercompany Interests (Class 6). | 19 |
| 4.7. | Subordinated Securities Claims (Class 7). | 19 |
| 4.8. | KServicing Equity Interests (Class 8). | 19 |
| SECTION 5. | MEANS FOR IMPLEMENTATION. | 20 |
| 5.1. | No Substantive Consolidation | 20 |
| 5.2. | Sources of Consideration for Plan Distribution. | 20 |
| 5.3. | Implementation. | 2021 |
| 5.4. | Wind Down Officer. | 23 |
| 5.5. | Corporate Action. | 2526 |
| 5.6. | Withholding and Reporting Requirements. | 2526 |
| 5.7. | Effectuating Documents; Further Transactions. | 2627 |
| 5.8. | Preservation of Rights of Action. | 2728 |
| 5.9. | Certificate of Incorporation and By-Laws. | 2728 |
| 5.10. | Cancellation of Existing Securities and Agreements | 28 |
| 5.11. | Subordinated Claims. | 2829 |
| 5.12. | Closing of Chapter 11 Cases. | 2829 |
| 5.13. | Notice of Effective Date. | 2829 |
| 5.14. | Corporate Form | 2829 |
| 5.15. | Separability. | 2829 |
| SECTION 6. | DISTRIBUTIONS. | 2829 |
| 6.1. | Distributions Generally. | 2829 |
| 6.2. | Distribution Record Date. | 29 |
| 6.3. | Date of Distributions. | 2930 |

| | | |
|---|---|---|
| 6.4. | Disbursing Agent. | ~~29~~30 |
| 6.5. | Rights and Powers of Disbursing Agent. | ~~29~~30 |
| 6.6. | Expenses of Disbursing Agent. | ~~30~~31 |
| 6.7. | No Postpetition Interest on Claims. | ~~30~~31 |
| 6.8. | Delivery of Distributions. | ~~30~~31 |
| 6.9. | Distributions after Effective Date. | ~~30~~31 |
| 6.10. | Unclaimed Property. | 31 |
| 6.11. | Time Bar to Cash Payments. | ~~31~~32 |
| 6.12. | Manner of Payment under Plan. | ~~31~~32 |
| 6.13. | Satisfaction of Claims. | ~~31~~32 |
| 6.14. | Minimum Cash Distributions. | ~~31~~32 |
| 6.15. | Setoffs and Recoupments. | ~~31~~32 |
| 6.16. | Allocation of Distributions between Principal and Interest. | ~~32~~33 |
| 6.17. | No Distribution in Excess of Amount of Allowed Claim. | ~~32~~33 |
| **SECTION 7.** | **PROCEDURES FOR DISPUTED CLAIMS.** | ~~32~~33 |
| 7.1. | Objections to Claims. | ~~32~~33 |
| 7.2. | Resolution of Disputed Claims. | ~~32~~33 |
| 7.3. | Payments and Distributions with Respect to Disputed Claims. | ~~32~~33 |
| 7.4. | Distributions after Allowance. | ~~32~~33 |
| 7.5. | Estimation of Claims. | ~~32~~33 |
| 7.6. | No Distributions Pending Allowance. | ~~33~~34 |
| 7.7. | Claim Resolution Procedures Cumulative. | ~~33~~34 |
| 7.8. | Interest. | ~~33~~34 |
| 7.9. | Insured Claims. | ~~33~~34 |
| **SECTION 8.** | **EXECUTORY CONTRACTS AND UNEXPIRED LEASES.** | ~~34~~35 |
| 8.1. | Rejection of Executory Contracts and Unexpired Leases. | ~~34~~35 |
| 8.2. | Determination of Assumption Disputes and Deemed Consent. | ~~34~~35 |
| 8.3. | Rejection Damages Claims. | ~~35~~36 |
| 8.4. | Insurance Policies. | ~~35~~36 |
| 8.5. | Indemnification Obligations | ~~36~~37 |
| 8.6. | Intellectual Property Licenses and Agreements. | ~~37~~38 |
| 8.7. | Assignment. | ~~37~~38 |
| 8.8. | Modifications, Amendments, Supplements, Restatements, or Other Agreements. | ~~37~~38 |
| 8.9. | Reservation of Rights. | ~~37~~38 |
| **SECTION 9.** | **CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.** | ~~38~~39 |
| 9.1. | Conditions Precedent to the Effective Date. | ~~38~~39 |
| 9.2. | Waiver of Conditions Precedent. | ~~39~~40 |
| 9.3. | Effect of Failure of Conditions to Effective Date. | ~~39~~40 |
| **SECTION 10.** | **EFFECT OF CONFIRMATION.** | ~~39~~40 |
| 10.1. | Vesting of Assets. | ~~39~~40 |
| 10.2. | Term of Injunctions or Stays. | ~~40~~41 |
| 10.3. | Injunction. | ~~40~~41 |
| 10.4. | Binding Effect. | ~~41~~42 |
| 10.5. | Releases by the Debtors. | ~~41~~42 |
| 10.6. | Releases By Holders of Claims and Interests. | ~~42~~43 |
| 10.7. | Exculpation. | ~~42~~43 |

# TABLE OF CONTENTS
**(continued)**

| | | |
|---|---|---|
| 10.8. | Waiver of Statutory Limitation on Releases. | 4344 |
| 10.9. | Solicitation of the Plan. | 4344 |
| 10.10. | Corporate Action. | 4344 |
| SECTION 11. | RETENTION OF JURISDICTION. | 4445 |
| 11.1. | Retention of Jurisdiction. | 4445 |
| 11.2. | Courts of Competent Jurisdiction. | 4546 |
| SECTION 12. | MISCELLANEOUS PROVISIONS. | 4546 |
| 12.1. | Payment of Statutory Fees. | 4546 |
| 12.2. | Substantial Consummation. | 4647 |
| 12.3. | Dissolution of Creditors' Committee. | 4647 |
| 12.4. | Amendments. | 4647 |
| 12.5. | Revocation or Withdrawal of the Plan. | 4647 |
| 12.6. | Severability of Plan Provisions upon Confirmation. | 4748 |
| 12.7. | Governing Law. | 4748 |
| 12.8. | Time. | 4748 |
| 12.9. | Additional Documents | 4748 |
| 12.10. | Immediate Binding Effect. | 4748 |
| 12.11. | Successors and Assigns. | 4849 |
| 12.12. | Entire Agreement. | 4849 |
| 12.13. | Notices. | 4849 |

Kabbage, Inc. d/b/a KServicing, Kabbage Canada Holdings, LLC, Kabbage Asset Securitization LLC, Kabbage Asset Funding 2017-A LLC, Kabbage Asset Funding 2019-A LLC, and Kabbage Diameter, LLC proposes the following amended joint chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein shall have the meanings set forth in Section 1.A.

## SECTION 1.    DEFINITIONS AND INTERPRETATION.

### A.    Definitions.

1.1     *"Adequate Protection"* has the meaning set forth in the Cash Collateral Order.

1.2     *"Administrative Expense Claim"* means, Claim for costs or expenses of administration incurred during the Chapter 11 Cases of a kind specified under sections 324, 328, 330, 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (i) the actual and necessary costs and expenses incurred after the Commencement Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (ii) Fee Claims, and (iii) all Allowed Claims that are to be treated as Administrative Expense Claims pursuant to a final order of the Bankruptcy Court under section 546(c)(2)(A) of the Bankruptcy Code.

1.3     *"Affiliate"* has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.4     *"Allowed"* means, with respect to any Claim against or Interest in a Debtor, (i) any Claim or Interest arising on or before the Effective Date (a) as to which no objection to allowance has been interposed within the time period set forth in this Plan, or (b) as to which any objection has been determined by a Final Order of the Bankruptcy Court to the extent such objection is determined in favor of the respective holder, (ii) any Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, (iii) any Claim or Interest expressly Allowed under this Plan, or (iv) any Claim that is listed in the Debtors' Schedules as liquidated, non-contingent, and undisputed; *provided*, *that*, notwithstanding the foregoing, the Debtors will retain all claims and defenses with respect to Allowed Claims that are reinstated or otherwise unimpaired pursuant to this Plan.

1.5     *"American Express"* means, American Express Travel Related Services Company, Inc.

1.6     *"American Express Transaction"* means, the Debtors' sale of its online legacy lending platform pursuant to that certain *Agreement and Plan of Merger*, dated August 16, 2020, as well as any "spin-off," merger, divestment, or similar transaction effectuated in connection with or in anticipation of that agreement, including but not limited to, any distributions or other transfers to holders of equity in KServicing or any current or former affiliates thereof.

1.7     *"Asset"* means, all of the rights, title, and interests of a Debtor in, and to property of whatever type or nature, including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property.

1.8     *"Assumption Dispute"* means, a pending objection relating to assumption or assumption and assignment of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

1.9     *"Assumption Schedule"* means, the schedule of executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Wind Down Estates pursuant to the Plan and included in the Plan Supplement, as may be amended, modified, or supplemented from time to time.

1.10     *"Avoidance Actions"* means, any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors arising under the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

1.11     *"Bankruptcy Code"* means, title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.12     *"Bankruptcy Court"* means, the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

1.13     *"Bankruptcy Rules"* means, the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.14     *"Business Day"* means, any day other than a Saturday, a Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.15     *"Cash"* means, legal tender of the United States of America.

1.16     *"Cash Collateral Order"* means, the *Order Under 11 U.S.C. §§ 105,361,362,and 363, and Bankruptcy Rules 2002, 4001,6004, and 9014 (I) Authorizing Debtors to Use Cash Collateral and (II) Granting Adequate Protection to Secured Lender* entered by the Bankruptcy Court on November 7, 2022 [Docket No. 225].

1.17     *"Cause of Action"* means, any action, Claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Commencement Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws). Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code or any other Avoidance Actions, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any claims under any state law or foreign law, including, without limitation, any fraudulent transfer or similar claims.

1.18    **"Chapter 11 Cases"** means, the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on October 3, 2022, and styled *In re Kabbage, Inc. d/b/a KServicing*, Case No. 22-12051 (CTG).

1.19    **"Claim"** has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

1.20    **"Class"** means, any group of Claims or Interests classified as set forth in Section 3 of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.21    **"Commencement Date"** means, the date on which the Debtors commenced the Chapter 11 Cases.

1.22    **"Confirmation"** means, the entry on the docket of the Chapter 11 Cases of the Confirmation Order.

1.23    **"Confirmation Date"** means, the date on which the Bankruptcy Court enters the Confirmation Order.

1.24    **"Confirmation Hearing"** means, the hearing to be held by the Bankruptcy Court regarding Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.25    **"Confirmation Order"** means, an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.26    **"Creditors' Committee"** means, the statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, if any.

1.27    "**CRB"** means, Cross River Bank.

1.28    **"CRB Agreements"** means, collectively, (i) that certain Loan Program Agreement between Cross River Bank and KServicing dated as of April 13, 2020 (as may be amended or restated from time to time, the "**CRB LPA**"); and (ii) certain Sale and Servicing Agreement among Cross River Bank and KServicing dated as of May 6, 2020 (as may be amended or restated from time to time, the "**CRB SAS Agreement**").

1.29    **"CRB PPP Loans"** means, any PPP Loans that, as of the Commencement Date, are either (i) serviced by KServicing pursuant to the CRB LPA as of the Commencement Date, or (ii) "Sold Assets" as defined in CRB SAS Agreement.

1.30    **"CRB Servicing Costs"** has the meaning set forth in Section 5.3 hereof.

1.31    "**CB"** means, Customers Bancorp, Inc.

1.32    **"CB Agreements"** means, collectively, (i) that certain Processing and Servicing Agreement Pursuant to Division A, Title I of the CARES Act entered into on April 27, 2020 between CB and KServicing (as may be amended or restated from time to time, the "**CB PSA**"); (ii) that certain Sale and Servicing Agreement among CB and KServicing dated as of February 2, 2021 (as may be amended or restated from time to time, the "**CB SAS Agreement**"); and (iii)  that certain SaaS Services Agreement

between CB and KServicing dated as of April 24, 2020 (as may be amended or restated from time to time).

1.33    ***"CB PPP Loan"*** means, any PPP Loans that, as of the Commencement Date, are either (i) serviced by KServicing pursuant to the CB PSA as of the Commencement Date, or (ii) "Sold Assets" as defined in CB SAS Agreement.

1.34    ***"CB Servicing Costs"*** has the meaning set forth in <u>Section 5.3(a)</u> hereof.

1.35    ***"Cure Amount"*** means, the payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) as necessary pursuant to section 365(b)(1)(A) of the Bankruptcy Code to permit the Debtors to assume such executory contract or unexpired lease.

1.36    ***"D&O Policy"*** means, any insurance policy that covers, among others, current or former directors, members, trustees, managers, and officers liability issued at any time to or providing coverage to the Debtors and all agreements, documents or instruments relating thereto, including any runoff policies or tail coverage.

1.37    ***"Debtors"*** means, KServicing; Kabbage Canada Holdings, LLC; Kabbage Asset Securitization LLC; Kabbage Asset Funding 2017-A LLC; Kabbage Asset Funding 2019-A LLC; and Kabbage Diameter, LLC, in each case, solely in its capacity as a debtor in possession under the Bankruptcy Code.

1.38    ***"Debtors in Possession"*** means, the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

1.39    ***"Definitive Documents"*** means, the documents that are otherwise necessary or desirable to implement, or otherwise relate to, the implementation of the transactions contemplated herein including, but not limited to: (i) the Plan; (ii) each of the documents comprising the Plan Supplement; (iii) the Disclosure Statement; (iv) any motion seeking the approval of the adequacy of the Disclosure Statement and solicitation of the Plan; (v) solicitation materials; and (vi) the Confirmation Order.

1.40    ***"Disallowed"*** means, with respect to any Claim or Interest, that such Claim or Interest has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.41    ***"Disbursing Agent"*** means, the Wind Down Officer or any Person engaged by the Wind Down Estates or Wind Down Officer.

1.42    ***"Disclosure Statement"*** means, the disclosure statement filed by the Debtors in support of the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code (as may be amended, supplemented, or modified from time to time).

1.43    ***"Disputed"*** means, with respect to a Claim or Interest, that (a) is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code; or (b) the Debtors or any parties in interest have interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order. If the Debtors, or any parties in interest, dispute only a portion of a

Claim, such Claim shall be deemed Allowed in any amount the Debtors, or any parties in interest, do not dispute, and Disputed as to the balance of such Claim.

1.44     ***"Distribution"*** means, payment or distribution of consideration to holders of Allowed Claims pursuant to this Plan.

1.45     ***"Distribution Record Date"*** means, the Effective Date of the Plan or such other date as determined by the Wind Down Officer.  For the avoidance of doubt, the Distribution Record Date shall not apply to holders of public securities.

1.46     ***"Effective Date"*** means, the date on which all conditions to the effectiveness of the Plan set forth in <u>Section 9</u> hereof have been satisfied or waived in accordance with the terms of the Plan.

1.47     ***"Entity"*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.48     ***"Estate or Estates"*** means, individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.49     ***"Exculpated Parties"*** means, collectively, each of the following in their capacity as such: (a) the Debtors and the Estates, (b) the Debtors' officers, directors, managers, and professionals, and (c) with respect to each of the foregoing, such Entities' successors and assigns; *provided* that the Former Officers and Directors shall not be "Exculpated Parties."

1.50     ***"Federal Reserve Board"*** means, the Board of Governors of the Federal Reserve System.

1.51     ***"Fee Claim"*** means, a Claim for professional services rendered or costs incurred on or after the Commencement Date through the Effective Date by professional persons retained by the Debtors or the Creditors' Committee pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

1.52     ***"Fee Escrow Account"*** means, the depository account established or designated by the Debtors to be funded with Cash for payment of Fee Claims in accordance with the terms of this Plan.

1.53     ***"Final Order"*** means, an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and is in full force and effect, which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.54    ***"Former Officers and Directors"*** means, any Person that (a) served in a capacity as an officer or director of any of the Debtors prior to the Commencement Date and (b) was not an officer or director of any of the Debtors as of the Commencement Date.

1.55    ***"General Unsecured Claim"*** means, any Claim against the Debtors (other than any Intercompany Claims) as of the Commencement Date that is neither secured by collateral nor entitled to priority under the Bankruptcy Code or any final order of the Bankruptcy Court, including but not limited to any Claim by any Partner Bank.

1.56    ***"Governmental Unit"*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.57    ***"GUC Pool"*** means, the Cash pool established pursuant to this Plan, containing (a) on the Effective Date, the amount of the GUC Pool Amount, (b) after the Effective Date but prior to the conclusion of the Wind Down, all Cash in the Wind Down Estates minus a reasonable amount of Cash determined by the Wind Down Officer and subject to the Wind Down Budget needed to fund the administration of the Wind Down Estates, and (c) at the conclusion of the Wind Down, any residual amounts remaining in the Wind Down Estates (other than amounts on account of Post-Effective Date Servicing Costs, if applicable), which Cash shall be held in the Wind Down Estate's general accounts and not segregated.

1.58    ***"GUC Pool Amount"*** means, as of the Effective Date, an amount equal to the amount of any remaining Net Cash Proceeds.

1.59    ***"GUC Pool Class A Interest"*** means an interest that entitles the Reserve Bank to the proceeds of the GUC Pool until such time that the Reserve Bank Claims are paid in full.

1.60    ***"GUC Pool Class B Interest"*** means, an interest which shall entitle the respective holder to its *pro rata* share of the proceeds of the GUC Pool, after Cash distributions are made to holders of GUC Pool Class A Interests sufficient to pay such holders' Allowed GUC Pool Class A Interests in full.

1.61    ***"Impaired"*** means, with respect to a Claim, Interest or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.62    ***"Initial Cash Proceeds"*** means Cash or cash equivalents on hand as of the Effective Date.

1.63    ***"Insured Claim"*** means, any Claim or portion of a Claim that is, or may be, insured under any of the Debtors' insurance policies.

1.64    ***"Intercompany Claim"*** means, a Claim against any Debtor by another Debtor or non-Debtor Affiliate of such other Debtor.

1.65    ***"Intercompany Interest"*** means, an Interest in a Debtor other than a KServicing Equity Interest.

1.66    ***"Interest"*** means, any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all shares, common stock, or other instrument evidencing any fixed or contingent ownership interest in any Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, whether fully vested or vesting in the future, including, without limitation, equity or equity-based incentives, grants, or

other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtors, to acquire any such interests in the Debtors that existed immediately before the Effective Date.

1.67    "***KS Direct PPP Loans***" means, any PPP Loans that, as of the Commencement Date, are originated, funded, and serviced by the Debtor for its own account.

1.68    "***KServicing***" means Kabbage, Inc. (d/b/a KServicing).

1.69    "***KServicing Equity Interests***" means, all Interests in KServicing, including KServicing Stock and any options, warrants or rights to acquire any such Interests.

1.70    "***KServicing Stock***" means, all common stock in KServicing.

1.71    "***Legacy Loan(s)***" means, any outstanding loan owned by KServicing that is not a PPP Loan.

1.72    "***Legacy Loan Sale***" means, a sale of all of the Legacy Loans, in each case, whether by way of sale of assets, merger, consolidation, sale of equity interests or other transaction structure.

1.73    "***Lien***" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.74    "***Loan Servicing Proceeds***" means, all fees and amounts due and payable to KServicing with respect to its servicing of PPP Loans and Legacy Loans, including without limitation, (a) all fees and amounts due and payable to KServicing pursuant to Partner Bank Agreements; and (b) any servicing fees or interest due and payable to KServicing by the SBA, including any lender processing fees payable by the SBA under the PPP for the account of any Debtor pursuant to the Partner Bank Agreements.

1.75    "***Net Cash Proceeds***" means, as of the Effective Date, (a) Initial Cash Proceeds, *less* (b) the amount of Cash (i) necessary to pay holders of Allowed Claims or reserve for Disputed Administrative Expense Claims, Fee Claims, Priority Tax Claims, Priority Non-Tax Claims, Other Secured Claims; (ii) necessary to satisfy any Statutory Fees required to be paid in accordance with the Bankruptcy Code, the Bankruptcy Rules or any order of the Bankruptcy Court, and (iii) fund the Wind Down Budget.

1.76    "***Operating Circular***" means the Federal Reserve's Operating Circular No. 10, effective July 16, 2013.

1.77    "***Ordinary Course Professionals Order***" means, the *Order Authorizing Debtors to Employ Professionals Used in Ordinary Course of Business* [Docket No. 196].

1.78    "***Other Secured Claim***" means, a Secured Claim, other than a Reserve Bank Secured Claim.

1.79    "***Partner Bank Agreements***" means, together, the CB Agreements and the CRB Agreements, including all schedules, exhibits, and annexes thereto.

1.80    "***Partner Banks***" means, together, CRB and CB.

1.81 ***"Person"*** means, an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit or other Entity.

1.82 ***"Plan"*** means, this joint chapter 11 plan, including the exhibits hereto and the Plan Supplement, as the same may be amended or modified from time to time in accordance with <u>Section 12.4</u> herein.

1.83 ***"Plan Supplement"*** means, a supplemental appendix to the Plan containing, among other things, forms or term sheets of applicable documents, schedules and exhibits to the Plan to be filed with the Court and subject to the consent of the Reserve Bank, not to be unreasonably withheld, including, but not limited to, the following: (a) the Assumption Schedule, (b) the Rejection Schedule, (c) a non-exclusive schedule of Causes of Action, (ed) the Wind Down Budget, (de) the identity of the Wind Down Officer, (ef) a Wind Down Agreement, and (fg) information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code. Through the Effective Date, the Debtors shall have the right to amend any documents contained in, and exhibits to, any Plan Supplement document subject to the consent of the Reserve Bank, not to be unreasonably withheld, and subject to the requirements of <u>Section 12.4</u> of the Plan.

1.84 ***"Pledged PPPLF Loans"*** means PPP Loans pledged to the Reserve Bank as PPPLF Collateral pursuant to the Program Agreements.

1.85 ***"PPP"*** means, the SBA's 7(a) loan program titled the Paycheck Protection Program, which was added to the SBA's 7(a) loan program by section 1102 of the Coronavirus Aid, Relief, and Economic Security Act, as amended by the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act and as may be amended from time to time.

1.86 ***"PPP Loan"*** means any loan issued under the PPP.

1.87 ***"PPP Transfer"*** has the meaning set forth in <u>Section 5.3(b)</u> hereof.

1.88 ***"PPPLF"*** means the Paycheck Protection Program Liquidity Facility.

1.89 ***"PPPLF Advance"*** means Cash advanced to KServicing by the Reserve Bank pursuant to the Program Agreements.

1.90 ***"PPPLF Collateral"*** means PPP Loans which are pledged as Collateral (as defined in the Operating Circular) for the Obligations (as defined in the Operating Circular) under the Program Agreements (including any proceeds and offspring of such Collateral).

1.91 ***"Post-Effective Date PPP Servicing"*** has the meaning set forth in <u>Section 5.3(b)</u> hereof.

1.92 ***"Post-Effective Date Servicing Costs"*** means the CB Servicing Costs, the Reserve Bank Servicing Costs, and the CRB Servicing Costs.

1.93 ***"Prerequisite Condition"*** has the meaning set forth in <u>Section 9.1(e)</u> hereof.

1.94 ***"Priority Non-Tax Claim"*** means any Claim other than an Administrative Expense Claim, Reserve Bank Priority Claims, or a Priority Tax Claim entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.95    ***"Priority Tax Claim"*** means any secured or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.96    ***"Professionals"*** means, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants and other professionals.

1.97    ***"Pro Rata"*** means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests in a particular Class and other Classes entitled to share in the same recovery as such Class under the Plan.

1.98    ***"Program Agreements"*** means together, (i) that certain Paycheck Protection Program Liquidity Facility Letter of Agreement dated May 12, 2020 (as amended January 14, 2021), by and among KServicing and the Reserve Bank, and (ii) the Operating Circular.

1.99    ***"Proof of Claim"*** means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

1.100    ***"Quarterly Fees"*** has the meaning set forth in Section 12.1(b) hereof.

1.101    ***"Rejection Schedule"*** means, a schedule of intellectual property contracts, licenses, royalties, or other similar agreements to be rejected by the Debtors pursuant to the Plan and included in the Plan Supplement, as may be amended, modified, or supplemented from time to time.

1.102    ~~1.101~~ ***"Released Related Parties"*** means, with respect to any specific Released Party, each of such Released Party's: (a) successors and assigns, subsidiaries, affiliates, managed accounts or funds, (b) postpetition officers, postpetition directors, postpetition employees, postpetition agents, postpetition trustees, postpetition advisory board members, postpetition employment vendors and postpetition consultants, and Professionals and (c) heirs, executors, estates, servants and nominees; *provided*, that (x) the Former Officers and Directors of the Debtors, (y) current and former shareholders, and (z) American Express and its Affiliates shall not be "Released Related Parties; *provided, further*, that a Professional of the Debtors shall only be a "Released Related Party" to the extent such Professional was retained pursuant to an order of the Bankruptcy Court, including the Ordinary Course Professionals Order.

1.103    ~~1.102~~ ***"Released Parties"*** means, collectively, each of the following in their capacity as such: (a) the Debtors and the Debtors' Released Related Parties; (b) the Wind Down Estates and the Wind Down Estate~~'s~~'s' Released Related Parties; and (c) the Reserve Bank and its Released Related Parties.

1.104    ~~1.103~~ ***"Releasing Related Parties"*** means, with respect to any specific Person, each of such Person's: (a) predecessors, successors, assigns, subsidiaries, affiliates, managed accounts or funds, (b) officers, directors, principals, shareholders, employees, agents, trustees, advisory board members, consultants, representatives, management companies, fund advisors and Professionals and (c) heirs, executors, estates, servants and nominees.

1.105    ~~1.104~~ ***"Releasing Parties"*** means, collectively, each of the following in their capacity as such: (a) the Reserve Bank; (b) all holders of Claims in Class 4 who vote to accept the Plan and do not affirmatively opt-out of the releases in accordance with the ballot to solicit acceptances of the

Plan; (c) all holders of Claims that are unimpaired and deemed to accept or impaired and deemed to reject the Plan and who do not object to the releases in Section 10.6 of the Plan; (d) all holders of Interests in Class 6; (e) all holders of Claims that are eligible to vote to accept or reject the Plan that either vote to reject the Plan or abstain from voting on the Plan for all Classes in which they are eligible to vote and who do not affirmatively opt-out of the releases in accordance with the ballot to solicit acceptances or rejections of the Plan; (f) all holders of Claims not otherwise included in the foregoing clauses (a) – (e) who have notice and an opportunity to object to the releases and who do not object to the releases in Section 10.6 of the Plan; and (g) with respect to each of the foregoing Entities and Persons in clauses (a) – (f), all of their respective Releasing Related Parties solely with respect to claims that such Entities or Persons could have properly asserted on behalf of such Entities or Persons in clauses (a) – (f).

1.106    1.105 *"Reserve Bank"* means the Federal Reserve Bank of San Francisco.

1.107    1.106 *"Reserve Bank Claims"* means, together, the claims of the Reserve Bank, as of the Commencement Date, (a) in the aggregate principal amount of approximately $536,450,940, in respect of outstanding PPPLF Advances under the Program Agreements, *plus* (b) accrued and unpaid interest and costs and expenses including, without limitation, attorney's fees, agent's fees, other professional fees and disbursements and other obligations owing under the Program Agreements, which for the avoidance of doubt, shall include any such fees, as well as any additional fees, costs and expenses borne by or on behalf of the Reserve Bank related to the servicing of the Pledged PPPLF Loans by a third-party servicer other than the Debtors, or by the Debtors or the Wind Down Estates in the event that section 5.3(d) herein applies *plus* additional mitigation costs, both to the extent accrued prior to and unpaid as of the Effective Date and to the extent accruing on and after the Effective Date, which claims were Allowed under the Cash Collateral Order which are comprised of (i) the Reserve Bank Secured Claims and (ii) the Reserve Bank Priority Claims; *provided*, that the aggregate amount of the Reserve Bank Claims shall be reduced by (x) any Cash payments made to the Reserve Bank on account of such Claims and (y) solely to the extent the PPPLF Collateral is returned to the Reserve Bank, and solely to the extent and at the time the Reserve Bank thereafter receives Cash in respect of the returned PPPLF Collateral (net of all fees, costs and expenses), such Cash received by the Reserve Bank.

1.108    1.107 *"Reserve Bank Priority Claims"* means the Reserve Bank Claims, to the extent any such claims are under-secured, which claims are entitled to a right of priority under section 507(a)(2) of the Bankruptcy Code.

1.109    1.108 *"Reserve Bank Secured Claims"* means the Reserve Bank Claims, to the extent secured by the PPPLF Collateral or the Adequate Protection liens granted to the Reserve Bank under the Cash Collateral Order.

1.110    1.109 *"Reserve Bank Servicing Costs"* has the meaning set forth in Section 5.3(d) hereof.

1.111    1.110 *"SBA"* means, the U.S. Small Business Administration.

1.112    1.111 *"Schedules"* means, the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.113    1.112 *"Secured Claim"* means, a Claim (a) secured by a Lien on collateral to the extent of the value of such collateral as (i) set forth in this Plan, (ii) agreed to by the holder of such Claim and the Debtors, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy

Code; or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.114    1.113 *"Single Share"* has the meaning set forth in Section 4.8(b) hereof.

1.115    1.114 *"Statutory Fees"* means, all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.

1.116    1.115 *"Subordinated Securities Claim"* means, a Claim subject to subordination under section 510(b) of the Bankruptcy Code.

1.117    1.116 *"Subsequent Condition"* has the meaning set forth in Section 9.1(e) hereof.

1.118    1.117 *"Tax Code"* means, the Internal Revenue Code of 1986, as amended,

1.119    1.118 *"Unexpired Lease"* means, a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.120    1.119 *"Unimpaired"* means, with respect to a Claim, Interest or Class of Claims or Interests, not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

1.121    1.120 *"Wind Down"* means, following the Effective Date, the process to sell, abandon, Wind Down, dissolve, liquidate or distribute any remaining assets of the Debtors' Estates in accordance with the Plan.

1.122    1.121 *"Wind Down Agreement"* means, (i) to the extent the Wind Down Estates doesdo not take the form of a liquidating trust, the form of agreement, substantially in the form included in the Plan Supplement (as it may be subsequently modified from time to time with the consent of the Reserve Bank and in consultation with CRB), governing the person or entity charged with overseeing the tasks outlined in Section 5.4 of this Plan, or (ii) to the extent the Wind Down Estates takes the form of a liquidating trust, the form of liquidating trust agreement, substantially in the form included in the Plan Supplement (as it may be subsequently modified from time to time with the consent of the Reserve Bank), governing the Wind Down Estates, in each instance, in a form and substance reasonably acceptable to the Reserve Bank, and in consultation with CRB.

1.123    1.122 *"Wind Down Amount"* means, an amount of cash sufficient to satisfy the Wind Down Budget, including for any continued servicing of Pledged PPPLF Loans, CRB PPP Loans, or CB PPP Loans, as applicable in accordance with the Plan.

1.124    1.123 *"Wind Down Budget"* means, a budget for the Wind Down Estates which will reflect the amount necessary to effectuate the Wind Down, which budget may, after the Effective Date, be amended,  modified, or supplemented from time to time by the Wind Down Officer in their reasonable discretion; *provided, that* such budget and any amendment, modifications, or supplements thereto shall be subject to the consent of the Reserve Bank, to be granted in its sole discretion.

1.125    1.124 *"Wind Down Estates"* means, the Debtors, or any successor thereto, by merger, consolidation or otherwise (which may be, among other things, a corporation, limited liability company or a liquidating trust) to Wind Down, dissolve, and liquidate the Estates or otherwise administer or distribute the proceeds of, any remaining assets in accordance with this Plan.

1.126    1.125 "*Wind Down Officer*" means, the person or entity selected by the Debtors, subject to the consent of the Reserve Bank, and in consultation with the United States Department of Justice, Small Business Administration, and CRB, who, (i) in the event that the Wind Down Estates does do not take the form of a liquidating trust, is charged with overseeing the tasks outlined in Section 5.4 of this Plan, or (ii) in the event that the Wind Down Estates takes the form of a liquidating trust, the liquidating trustee.

**B.  Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

**C.  Controlling Document.**

In the event of an inconsistency between the Plan and any other document, the terms of the Plan shall control.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided* that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

**SECTION 2.    ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.**

**2.1.    *Administrative Expense Claims.***

Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtors or the Wind Down Officer agree to different treatment, the Debtors (or the Wind Down Officer, as the case may be) shall pay to each holder of an Allowed Administrative Expense Claim Cash in an amount equal to such Claim on (a) the later of (i) the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable, or (b) on such other date or terms as may be mutually agreed upon between the holder of such an Allowed Administrative Expense Claim and the Debtors or the Wind Down Officer, as applicable; *provided* that, Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of

any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities.

**2.2.**    *Fee Claims.*

(a)    All entities seeking an award by the Bankruptcy Court of Fee Claims (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date, and (ii) shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) allowing any such postpetition, estate-retained professional fee and expense claim (A) upon the later of the Effective Date and the date upon which the order relating to any such Allowed Fee Claim is entered or (B) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors or the Wind Down Officer, as applicable.  The Wind Down Officer is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

(b)    On or about the Effective Date, holders of Fee Claims shall provide a reasonable estimate of unpaid Fee Claims incurred in rendering services before the Effective Date to the Debtors and the Debtors or the Wind Down Officer, as applicable, shall separately escrow such estimated amounts in the Fee Escrow Account (less (i) any retainers and (ii) amounts already reserved for such professional in the Fee Escrow Account) for the benefit of the holders of the Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties.  If a holder of a Fee Claim does not provide an estimate, the Debtors or the Wind Down Officer, as applicable, may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Fee Claim.  When all such Allowed Fee Claims have been paid in full, any remaining amount in such escrow shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the Wind Down Estates and the Wind Down Officer without any further action or order of the Bankruptcy Court and may, for the avoidance of doubt, be used to administer the Wind Down Estates subject to and in accordance with the Wind Down Budget.

(c)    Funds held in the Fee Escrow Account shall not be considered property of the Debtors' estates or property of the Wind Down Estates, but shall revert to the Wind Down Estates, in accordance with section 2.2(b), only after all Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full.  The Fee Escrow Account shall be held in trust for estate-retained professionals and for no other parties until all Fee Claims Allowed by the Bankruptcy Court have been paid in full.

**2.3.**    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Tax Claim, at the sole option of the Debtors or the Wind Down Officer, as applicable, (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (ii) the first Business Day after the date that is forty-five (45) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (iii) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; or (b) equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate under section 511 of the Bankruptcy Code, over a period not exceeding five (5) years from and after the Commencement Date;

*provided*, that the Debtors reserve the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium.

## SECTION 3. CLASSIFICATION OF CLAIMS AND INTERESTS.

### 3.1. *Classification in General.*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided*, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

### 3.2. *Grouping of Debtors for Convenience Only.*

This Plan groups the Debtors together solely for the purpose of describing treatment under this Plan, confirmation of this Plan, and Plan Distributions to be made in respect of Claims against and Interests in the Debtors under this Plan. Each Class of Claims will be deemed to contain sub-classes for each of the Debtors, to the extent applicable for voting and distribution purposes. To the extent there are no Allowed Claims or Interests with respect to a particular Debtor, such Class is deemed to be omitted with respect to such Debtor. Except as otherwise provided herein, to the extent a holder has a Claim that may be asserted against more than one Debtor, the vote of such holder in connection with such Claims shall be counted as a vote of such Claim against each Debtor against which such holder has a Claim. Except as provided in <u>Section 5</u> of this Plan, such groupings shall not affect each Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger of consolidation of any legal entities, or cause the transfer of any assets.

### 3.3. *Summary of Classification.*

The following table designates the Classes of Claims against, and Interests in, each of the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, DIP Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in <u>Section 3.5</u>.

| Class | Designation | Treatment | Entitled to Vote |
|:---:|:---:|:---:|:---:|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| 3 | Reserve Bank Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | No (Deemed to reject) |
| 6 | Intercompany Interests | Unimpaired / Impaired | No (Deemed to accept/reject) |
| 7 | Subordinated Securities Claims | Impaired | No (Deemed to reject) |
| 8 | KServicing Equity Interests | Impaired | No (Deemed to reject) |

14

### 3.4. *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Wind Down Officer, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### 3.5. *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

### 3.6. *Voting Classes; Presumptions*

(a)    **Acceptance by Certain Impaired Classes.** Only holders of Allowed Claims in Classes 3 and 4 are entitled to vote to accept or reject this Plan.  An Impaired Class of Claims shall have accepted this Plan if (i) the holders of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (ii) the holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.  Holders of Claims in Classes 3 and 4 shall receive Ballots containing detailed voting instructions.

(b)    **Presumed Acceptance by Unimpaired Classes.**  Holders of Claims and Interests in Classes 1, 2, and 6 (if so treated) are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject this Plan.

(c)    **Deemed Rejection by Certain Impaired Classes.**  Holders of Claims and Interests in Classes 5, 6 (if so treated), 7, and 8 are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject this Plan.

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court at the Confirmation Hearing to deem the Plan accepted by the holders of such Claims or Interests in such Class.

### 3.7. *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

The Debtors shall seek Confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify this Plan in accordance with Section 12.4 hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

3.8.    *No Waiver.*

Nothing contained in this Plan shall be construed to waive a Debtor's, the Wind Down Officer's, or other Person's right to object on any basis to any Claim, except as provided for in the Plan.

**SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS.**

4.1.    *Priority Non-Tax Claims (Class 1).*

(a)    *Classification*:  Class 1 consists of Priority Non-Tax Claims against the Debtors.

(b)    *Treatment*:  On or as soon as practicable after the Effective Date, except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, each holder thereof shall be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(c)    *Voting*:  Class 1 is Unimpaired, and holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

4.2.    *Other Secured Claims (Class 2).*

(a)    *Classification*:  Class 2 consists of the Other Secured Claims against the Debtors.  To the extent that Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2.

(b)    *Treatment*:

(i)    Except to the extent that a holder of an Allowed Other Secured Claim agrees to different treatment, on the later of the Effective Date and the date that is thirty (30) days after the date such Other Secured Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Other Secured Claim will receive, on account of such Allowed Claim, at the sole option of the Debtors or the Wind Down Officer, as applicable:  (i) Cash in an amount equal to the Allowed amount of such Claim;  (ii) such other treatment sufficient to render such holder's Allowed Other Secured Claim Unimpaired;  or (iii) return of the applicable collateral in satisfaction of the Allowed amount of such Other Secured Claim.

(ii)    Except as otherwise specifically provided herein, upon the payment in full in Cash of an Other Secured Claim, any Lien securing an Other Secured Claim that is paid in full, in Cash,

16

shall be deemed released, and the holder of such Other Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors (including any Cash collateral) held by such holder and to take such actions as may be requested by the Wind Down Officer, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Wind Down Officer.

(c)     *Voting*:  Class 2 is Unimpaired, and holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Secured Claims.

### 4.3.  *Reserve Bank Claims (Class 3)*

(a)     *Classification*:  Class 3 consists of the Reserve Bank Claims.

(b)     *Allowance*:

(i)      The Reserve Bank Claims are Allowed, including pursuant to the Cash Collateral Order, against the Debtors in the aggregate principal amount, as of the Commencement Date, of approximately $536,450,940 in respect of outstanding PPPLF Advances under the Program Agreements, *plus* all accrued and unpaid interest and costs and expenses including, without limitation, attorney's fees, agent's fees, other professional fees and disbursements and other obligations owing under the Program Agreements, which for the avoidance of doubt, shall include any additional fees, costs and expenses borne by or on behalf of the Reserve Bank related to any transfer of servicing and any servicing of the Pledged PPPLF Loans by a third-party servicer other than the Debtors, or by the Debtors or the Wind Down Estates in the event that section 5.3(d) herein applies, *plus* additional mitigation costs, both to the extent accrued prior to and unpaid as of the Effective Date and to the extent accruing on and after the Effective Date; *provided*, that the aggregate amount of the Reserve Bank Claims shall be reduced by (x) any Cash payments made to the Reserve Bank on account of such Claims and (y) solely to the extent the PPPLF Collateral is returned to the Reserve Bank, and solely to the extent and at the time the Reserve Bank thereafter receives Cash in respect of the returned PPPLF Collateral (net of all fees, costs and expenses), such Cash received by the Reserve Bank.  The Allowed Reserve Bank Claims comprise the Reserve Bank Secured Claims and the Reserve Bank Priority Claims.

(ii)     The portion of the Reserve Bank Claims paid from the proceeds of the PPPLF Collateral and the Adequate Protection collateral shall constitute the Reserve Bank Secured Clam.

(iii)    If the proceeds described in the preceding clause (ii) are insufficient to fully satisfy the Reserve Bank Claims, the unsatisfied portion of the Reserve Bank Claims shall constitute Reserve Bank Priority Claims.

(iv)     Without limitation, the allowance of the Reserve Bank Claims under section 4.3(b)(i) above, including the portions constituting the Reserve Bank Secured Claims and the Reserve Bank Priority Claims, shall be determined and Allowed as set forth in the Plan and Program Agreements and following the Effective Date, and shall not be subject to estimation for any purposes affecting the Distributions on such Claims absent the consent of the Reserve Bank to be granted or withheld in its sole and absolute discretion, notwithstanding anything herein to the contrary.

(c)     *Treatment*:  Except to the extent that a holder of an Allowed Reserve Bank Claim against the Debtors agrees to a less favorable treatment of such Claim, each holder of an Allowed Reserve Bank Claim shall receive the following treatment in respect of the Allowed Reserve Bank Claims:

(i)     The Reserve Bank Secured Claims will receive[2] (x) the PPPLF Collateral; *provided that*, to the extent the PPPLF Collateral is transferred to the Reserve Bank or its designee, such transfer shall only pertain to such Pledged PPPLF Loans that as of the date of the transfer shall not have been fully forgiven or guarantee repurchased by the SBA or fully repaid by the borrower and/or (y) the cash proceeds of the PPPLF Collateral, where in accordance with section 5.3 hereof (1) servicing of the loans that constitute PPPLF Collateral shall be transferred to a different servicer on or prior to the Effective Date, or (2) at the Debtors' sole discretion, the Debtors offer Post-Effective Date PPP Servicing and the Reserve Bank consents to such post-Effective Date PPP Servicing and pays the Reserve Bank Servicing Costs.

(ii)     Reserve Bank Priority Claims will receive GUC Pool Class A Interests.

(iii)    For the avoidance of doubt, (x) the Reserve Bank shall not receive Cash in excess of the Reserve Bank Claims and any amounts in excess of the Reserve Bank Claims paid in Cash to the Reserve Bank on account of the Allowed Reserve Bank

---

[2] The Reserve Bank and the Debtors will agree prior to the confirmation hearing on whether title to the Pledged PPPLF Loans will be transferred to the Reserve Bank or its designee or remain with the Wind Down Estates.

Claims shall revert to the Wind Down Estates and (y) any Liens on the Pledged PPPLF Loans granted to or held in favor of the Reserve Bank shall remain in place and continue on and after the Effective Date.

(d)    *Voting*: Class 3 is Impaired, and the holders of Reserve Bank Claims are entitled to vote to accept or reject the Plan.

**4.4.**    *General Unsecured Claims (Class 4).*

(a)    *Classification*: Class 4 consists of General Unsecured Claims against the Debtors.

(b)    *Treatment*: Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, each holder of an Allowed General Unsecured Claim will receive its *pro rata* share of the GUC Pool Class B Interests.

(c)    *Voting*: Class 4 is Impaired, and the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

**4.5.**    *Intercompany Claims (Class 5).*

(a)    *Classification*: Class 5 consists of Intercompany Claims against the Debtors.

(b)    *Treatment*: On or after the Effective Date, all Intercompany Claims will either be reinstated or cancelled and released at the option of the Debtors; *provided* that no such distributions shall be made on account of such Intercompany Claims on the Effective Date.

(c)    *Voting*: Class 5 is Impaired, and the holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Intercompany Claims are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such Intercompany Claims.

**4.6.**    *Intercompany Interests (Class 6).*

(a)    *Classification*: Class 6 consists of Intercompany Interests in the Debtors.

(b)    *Treatment*: On the Effective Date, Intercompany Interests shall receive no recovery or distribution and be reinstated solely to maintain the Debtors' corporate structure, as necessary.

(c)    *Voting*: Allowed Intercompany Interests are either Unimpaired, in which case the holders of such Intercompany Interests conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, in which case the holders of such Intercompany Interests conclusively are presumed to have rejected the

Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Allowed Intercompany Interests are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such Allowed Intercompany Interests.

4.7.    *Subordinated Securities Claims (Class 7).*

(a)    *Classification*:   Class 7 consists of Subordinated Securities Claims against the Debtors.

(b)    *Treatment*:  Holders of Subordinated Securities Claims shall not receive or retain any property under the Plan on account of such Subordinated Securities Claims.  On the Effective Date, all Subordinated Securities Claims shall be deemed cancelled without further action by or order of the Bankruptcy Court, and shall be of no further force and effect, whether surrendered for cancellation or otherwise.

(c)    *Voting*:  Class 7 is Impaired, and the holders of Subordinated Securities Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.   Therefore, holders of Subordinated Securities Claims are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such Subordinated Securities Claims.

4.8.    *KServicing Equity Interests (Class 8).*

(a)    *Classification*: Class 8 consists of KServicing Equity Interests.

(b)    *Treatment*:  Except to the extent that a holder of KServicing Equity Interests agrees to less favorable treatment, in full and final satisfaction and release of, and in exchange for KServicing Equity Interests, each such holder thereof shall receive the following treatment: (i) on the Effective Date, all KServicing Equity Interests shall be cancelled and one share of KServicing common stock (the "**Single Share**") shall be issued to the Wind Down Officer to hold in trust as custodian for the benefit of the former holders of KServicing Equity Interests consistent with their former relative priority and economic entitlements and the Single Share shall be recorded on the books and records maintained by the Wind Down Officer; (ii) each former holder of KServicing Stock (through their interest in the Single Share, as applicable) shall neither receive nor retain any property of the Estate or direct interest in property of the Estate on account of such KServicing Stock; *provided*, that in the event that all Allowed Claims have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each former holder of a KServicing Existing Equity Interests may receive its share of any remaining assets of KServicing consistent with such holder's rights of payment existing immediately prior to the Commencement Date; *provided* that, for the avoidance of doubt, no former holder of KServicing Existing Equity Interests on account of the Single Share shall retain any voting rights in the Wind Down Estates. Unless otherwise determined by the Wind Down Officer, on the date that

20

KServicing's Chapter 11 Case is closed in accordance with <u>Section 5.14</u> of the Plan, the Single Share issued on the Effective Date shall be deemed cancelled and of no further force and effect; *provided* that (i) such cancellation does not adversely impact the Debtors' Estates; and (ii) the continuing rights of former holders of KServicing Stock (including through their interest in Single Share or otherwise) shall be nontransferable except (A) by operation of law or (B) for administrative transfers where the ultimate beneficiary has not changed, subject to the Wind Down Officer's consent.

(c)        *Voting*:  Class 8 is Impaired, and the holders of KServicing Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of KServicing Equity Interests are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such KServicing Equity Interests.

## SECTION 5.   MEANS FOR IMPLEMENTATION.

### 5.1.   *No Substantive Consolidation*

This Plan is being proposed as a joint chapter 11 plan of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan for each Debtor.  This Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims of Interests set forth in this Plan.

### 5.2.   *Sources of Consideration for Plan Distribution.*

The Debtors and the Wind Down Officer, as applicable, shall fund Distributions under this Plan with the Net Cash Proceeds, the proceeds from the sale of any or all Legacy Loans, proceeds from the sale of any or all KS Direct PPP Loans, and any other non-Cash assets of the Debtors that may become Cash, including proceeds from the Estate Causes of Action.  In addition to the foregoing, the Allowed Reserve Bank Claims shall also be paid from proceeds of the PPPLF Collateral.

### 5.3.   *Implementation.*

(a)        KServicing shall continue to service all Pledged PPPLF Loans, all CRB PPP Loans, and all CB PPP Loans in the ordinary course and in accordance with the Program Agreements, CRB Agreements and CB Agreements (including the *Settlement and Release Agreement*, dated October 27, 2022, by and among KServicing and CB), respectively, until the Effective Date.

(b)        KServicing shall (i) use commercially reasonable efforts to assist the Reserve Bank and/or Partner Banks to transfer servicing obligations to a third-party loan servicer prior to the Effective Date (the "**PPP Transfer**"), or (ii) at its sole discretion, offer the Reserve Bank, CRB, and/or CB, continued servicing through a date certain ("**Post-Effective Date PPP Servicing**").

(c)        <u>PPP Transfer</u>. Prior to the Effective Date, KServicing shall use commercially reasonable efforts to assist:

(i)        the Reserve Bank with transfer of the Debtors' servicing obligations with respect to the Pledged PPPLF Loans to a third-party loan servicer to be selected by the Reserve Bank in its sole discretion by a date to be mutually agreed but no later than the Effective Date of the Plan; *provided* that, for the avoidance of doubt, any fees, costs, and expenses associated with any

transfer of servicing obligations shall be borne upfront by the Reserve Bank, *provided* that any such fees, as well as any additional fees, costs and expenses borne by or on behalf of the Reserve Bank related to the servicing of the Pledged PPPLF Loans by a third-party servicer other than the Debtors shall constitute a portion of and be included in the Reserve Bank Claims.  For the avoidance of doubt, with respect to the Reserve Bank, unless otherwise agreed by the Reserve Bank, such servicing transfer shall only pertain to such Pledged PPPLF Loans that, as of the date of the transfer, shall not have been fully forgiven or guarantee repurchased by the SBA or fully repaid by the borrower.

(ii) CRB with transfer of all the Debtors' servicing obligations with respect to the CRB PPP Loans to a third-party loan servicer to be selected by CRB in its sole discretion by a date to be mutually agreed but no later than the Effective Date of the Plan; *provided* that, any such fees, as well as any additional fees, costs and expenses borne by or on behalf of CRB related to the servicing of the CRB Loans by a third-party servicer other than the Debtors may constitute a portion of and be included in CRB's Claims;

(iii) CB with transfer of all the Debtors' servicing obligations with respect to the CB PPP Loans to a third-party loan servicer to be selected with CB's consent and direction by a date to be mutually agreed but no later than the Effective Date of the Plan; *provided* that, for the avoidance of doubt, any fees, costs, and expenses associated with the transfer of any servicing obligations shall be borne by CB;

(iv) the SBA with the transfer of the Debtors' servicing obligations with respect to all fully forgiven or guaranty purchased Pledged PPPLF Loans to SBA or a third-party loan servicer to be selected by the SBA in its sole discretion; provided that, any fees, costs, and expenses associated with any transfer of servicing obligations shall be borne upfront by the SBA. After the Effective Date, any trailing borrower loan payments or guaranty purchased Pledged PPPLF Loans will be remitted to the SBA.

(v) (iv) On and after the Effective Date, subject to sections 5.3(e), (i) and (j) hereof, the Debtors shall not retain any PPP Loan servicing-related obligations.

(d) In the event the Debtors (or, post-Effective Date, the Wind Down Officer) and the Reserve Bank agree that the PPPLF Collateral will be transferred to the Reserve Bank or its designee in furtherance of Section 4.3(c) hereof, the Debtors or the Wind Down Officer, as applicable, shall enter into, execute and deliver any instruments, documents and agreements that may be reasonably necessary or desirable in order to implement, or otherwise in connection with, the transferring of title to the PPPLF Collateral, and take all actions as may be reasonably requested by the Reserve Bank for the purpose of assigning, transferring, granting, conveying and conferring to the Reserve Bank or its designee the PPPLF Collateral, including the Pledged PPPLF Loans, and as may be necessary or appropriate to the servicing of the Pledged PPPLF Loans by an alternative servicer, in each case above, any assignment, transfer, grant, conveyance or conferring shall be subject to the lien of the Reserve Bank unless the Reserve Bank expressly agrees otherwise; *provided* that, for the avoidance of doubt, any fees, costs, and expenses associated with any transfer of servicing obligations shall be borne by the Reserve Bank; and *provided further* that any such fees, costs and expenses borne by or on behalf of the Reserve Bank shall constitute a portion of and be included in the Reserve Bank Claims.

(e) Post-Effective Date PPP Servicing.  Prior to the Effective Date, if, in its sole discretion, the Debtors offer Post-Effective Date PPP Servicing:

(i) if the Reserve Bank consents to such continued servicing, the Reserve Bank shall provide the Wind Down Estates with amounts necessary to allow for the continued

servicing of Pledged PPPLF Loans ("**Reserve Bank Servicing Costs**"), after which the Reserve Bank shall have no further obligation to provide any amounts to the Wind Down Estates; *provided that*, for the avoidance of doubt, to the extent the Reserve Bank Servicing Costs are not provided to the Debtors prior to the Effective Date, the Debtors shall not provide any post-Effective Date servicing for the Reserve Bank; *provided further* that any Reserve Bank Servicing Costs shall constitute a portion of and be included in the Reserve Bank Claims;

(ii)  if CRB consents to such continued servicing, CRB shall fund the Wind Down Estates with amounts necessary to allow for the continued servicing of CRB PPP Loans ("**CRB Servicing Costs**"); *provided that*, for the avoidance of doubt, to the extent the CRB Servicing Costs are not provided to the Debtors prior to the Effective Date, the Debtors shall not provide any post-Effective Date servicing for CRB;

(iii)  if CB consents to such continued servicing, CB shall fund the Wind Down Estates with amounts necessary to allow for the continued servicing of CB PPP Loans ("**CB Servicing Costs**"), after which CB shall have no further obligation to fund the Wind Down Estates; *provided that*, for the avoidance of doubt, to the extent the CB Servicing Costs are not provided to the Debtors prior to the Effective Date, the Debtors shall not provide any post-Effective Date servicing for CB;

(f)  On the Effective Date, the GUC Pool shall be funded in the aggregate amount of no less than the GUC Pool Amount; for the avoidance of doubt, the Wind Down Officer shall be responsible for making Distributions to holders of Allowed General Unsecured Claims.

(g)  On the Effective Date, the Wind Down Estates shall be funded in accordance with the Wind Down Budget for the (i) Wind Down process and (ii) any Post-Effective Date PPP Servicing, as applicable, and be funded with the Wind Down Amount; *provided* that any amounts on account of continued servicing of Pledged PPPLF Loans, CRB PPP Loans, or CB PPP Loans, as applicable, shall be funded by the payment of applicable Post-Effective Date Servicing Costs.  An initial Wind Down Budget shall be filed with the Plan Supplement and may be amended, modified, or supplemented from time to time with the consent of the Reserve Bank.

(h)  On the Effective Date, any remaining assets and any Causes of Action of the Debtors' Estates shall transfer to the Wind Down Estates automatically and without further action of the Bankruptcy Court.

(i)  On or before the Effective Date, KServicing shall transfer its servicing obligations with respect to KS Direct PPP Loans to a third party servicer or effectuate a sale of the KS Direct PPP Loans whereby they may consummate all transactions as are necessary to consummate a sale of the KS Direct PPP Loans, including engaging in a marketing and sale process to identify a purchaser and begin negotiations and implementation of such sale; *provided*, that, if the Debtors, in their sole discretion provide Post-Effective Date PPP Servicing, KServicing may continue servicing its obligations with respect to KS Direct PPP Loans. Any transfer of the Debtors' servicing obligations with respect to the KS Direct PPP Loans to a third party servicer or any sale of the KS Direct PPP Loans will each be subject to applicable SBA Loan Program Requirements (as defined in the Loan Servicing Order).

(j)  On or before the Effective Date, the Debtors or the Wind Down Estates, as applicable, may effectuate a Legacy Loan Sale, subject to consultation with the Reserve Bank; *provided*, that, if the Wind Down Estates, in itstheir sole discretion provides Post-Effective Date PPP Servicing, KServicing may continue servicing its obligations with respect to the Legacy Loans, *provided that*, any amounts necessary to allow for the continued servicing of the Legacy Loans shall not be funded

by or allocated to the Post-Effective Date Servicing Costs, if any, charged to the Reserve Bank, CRB or CB.  The Debtors or the Wind Down Estates, as applicable, shall consummate all other transactions as are necessary to consummate the Legacy Loan Sale.  To commence the Legacy Loan Sale, on or prior to the Effective Date, the Debtors or the Wind Down Estates, as applicable, may engage in a marketing and sale process to identify a purchaser and begin negotiation and implementation of the Legacy Loan Sale, subject to consultation with the Reserve Bank.

(k)     At the conclusion of the Wind Down (i) any residual amounts remaining in the Wind Down Budget (other than amounts on account of Post-Effective Date Servicing Costs) shall be transferred to the GUC Pool, and for the avoidance of doubt, shall first be used to make distributions to holders of GUC Pool Class A Interests, unless the Reserve Bank Claims have been indefeasibly paid in full in Cash as of such date and (ii) any residual amounts remaining on account of Post-Effective Date Servicing Costs, shall be distributed *pro rata* to the Reserve Bank, CRB, and CB, as applicable and proportionate to each party's Post-Effective Date Servicing Costs.

### 5.4. *Wind Down Officer.*

(a)     *Appointment*.  The Wind Down Officer's retention shall commence on the Effective Date and shall continue until: (i) the Bankruptcy Court enters an order closing the Chapter 11 Cases, unless otherwise set forth in such order; (ii) the Bankruptcy Court enters an order removing the Wind Down Officer for cause; or (iii) the Wind Down Officer voluntarily resigns, upon notice filed with the Bankruptcy Court, and a successor Wind Down Officer is appointed in accordance with the Plan.

(b)     *Consent Rights in Connection With the American Express Transaction and Claims Against Former Officers and Directors and Former Shareholders of the Debtors*.  Subject to the prior consent of the Reserve Bank and CRB, and in consultation with the United States Department of Justice and the SBA, the Wind Down Officer in the exercise of his/her fiduciary duties to the creditor beneficiaries of the Wind Down Estates (until all Allowed Claims have  been satisfied in full in accordance with the Bankruptcy Code and the Plan) shall have the right to make any material decisions (including, but not limited to, the selection and retention of counsel, any litigation financing or contingency or similar arrangement, the determination to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment) regarding Causes of Action (i) in any manner based on or relating to, or in any manner arising from, in whole or in part, the American Express Transaction  (ii) against Former Officers and Directors, and (iii) against shareholders of the Debtors as of the date the American Express Transaction was consummated (each a "**Material Decision**").  In the event of any disagreement between the Reserve Bank and CRB as to consent over any Material Decision, the Wind Down Officer shall file a motion with the Bankruptcy Court with respect to such Material Decision upon appropriate notice and a hearing; *provided*, that for the avoidance of doubt, the Reserve Bank and CRB may object to such relief.

(c)     *Certain Consent Rights*.  The (x) Reserve Bank shall have consent rights and (y) the United States Department of Justice, SBA, and CRB shall have consultation rights over certain non-Material Decisions by the Wind Down Officer including, but not limited to, prosecution of Causes of Action not released by the Debtors pursuant to the Plan (other than for the avoidance of doubt Material Decisions, which shall be subject to the consent rights set out in section 5.4(b) hereof) on behalf of the Wind Down Estates, proposed reserves and budgets for the Wind Down Estates, proposed distributions by the Wind Down Officer and settlements above a certain threshold amount, all as set forth in the Wind Down Agreement.

(d)     *Authority*.  Subject to Section 5.4(b) and 5.4(c) of this Plan, and in accordance with the Wind Down Agreement, the Wind Down Officer shall have the authority and right

on behalf of each of the Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), in furtherance of the Wind Down Officer's fiduciary duties to the creditor beneficiaries of the Wind Down Estates (until all Allowed Claims have been satisfied in full in accordance with the Bankruptcy Code and the Plan), and subject to any consent or consultation rights of the Reserve Bank, United States Department of Justice, Small Business Administration, and CRB, as set forth herein and in the Wind Down Agreement, to carry out and implement all provisions of the Plan, including, without limitation, to:

(i)        subject to Section 7 of the Plan, except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process in accordance with the terms of this Plan, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors;

(ii)       make Distributions to holders of Allowed Claims in accordance with this Plan;

(iii)      exercise its reasonable business judgment to direct and control the Wind Down under the Plan and in accordance with applicable law as necessary to maximize Distributions to holders of Allowed Claims;

(iv)      prepare, file, and prosecute any necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the Wind Down Officer as described herein;

(v)       other than any Causes of Action released by the Debtors pursuant to the Plan or otherwise, prosecute all Causes of Action on behalf of the Debtors, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Wind Down Officer may determine is in the best interests of the Debtors and their Estates;

(vi)      retain professionals to assist in performing its duties under the Plan;

(vii)     maintain the books and records and accounts of the Debtors;

(viii)    incur and pay reasonable and necessary expenses in connection with the performance of duties under this Plan, including the reasonable fees and expenses of professionals retained by the Wind Down Officer;

(ix)      administer each Debtor's tax obligations, including (i) filing tax returns and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Commencement Date through the liquidation of such Debtor as determined under applicable tax laws, and (iii) representing the interest and account of each Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(x)       prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors that are required hereunder, by any Governmental Unit or applicable law;

(xi)      pay statutory fees in accordance with Section 12.1 of the Plan;

(xii)    perform other duties and functions that are consistent with the implementation of the Plan; and

(xiii)    close the Chapter 11 Cases

For the avoidance of doubt, until all Allowed Claims have been satisfied in full in accordance with the Bankruptcy Code and the Plan, the Wind Down Officer shall owe no fiduciary duties to KServicing Existing Equity Interests on account of the Single Share maintained by the Wind Down Officer, and shall instead owe fiduciary duties to creditor beneficiaries of the Wind Down Estates.

(e)    *Boards of Directors and Officers*.

Upon the Effective Date, (i) the officers and directors of the Debtors existing prior to the Effective Date shall be relieved of any and all duties with the respect to the Debtors and shall be deemed to have resigned without the requirement of having to take any further action and (ii) the Wind Down Officer shall be the sole officer, director or manager, as applicable, of each of the Debtors without the requirement of having to take any further action.

(f)    *Wind Down*.  After the Effective Date, pursuant to the Plan, the Wind Down Officer shall effectuate the Wind Down according to the Wind Down Budget without any further approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, *provided, that*, the Wind Down Officer shall not effectuate the Wind Down in a manner inconsistent with any express requirements of the Wind Down Agreement, including with respect to any consent or consultation rights of the Reserve Bank, United States Department of Justice, Small Business Administration, and CRB.  The Wind Down (as determined for federal income tax purposes) shall occur in an expeditious but orderly manner after the Effective Date.

(g)    *Indemnification*.  Each of the Wind Down Estates shall indemnify and hold harmless the Wind Down Officer solely in their capacities as such for any losses incurred in such capacity, except to the extent such losses were the result of the Wind Down Officer's bad faith, gross negligence, willful misconduct or criminal conduct.

(h)    *Dissolution*.  After the Effective Date, the Wind Down Officer shall, subject to applicable non-bankruptcy law and consistent with the implementation of this Plan, merge, dissolve, liquidate, or take such other similar action with respect to each Debtor (including the cancellation of all Interests in aeach Wind Down Estate) and complete the winding up of such Wind Down Estate as expeditiously as practicable without the necessity for any other or further actions to be taken by or on behalf of such Wind Down Estate or its shareholders or members, as applicable, or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate Governmental Unit; *provided*, *however*, that the foregoing does not limit the Wind Down Officer's ability to otherwise abandon an Interest in a Wind Down Estate.  The Wind Down Officer may, to the extent required by applicable non-bankruptcy law, maintain a Wind Down Estate as a corporate entity in good standing until such time as such Wind Down Estate is dissolved or merged out of existence in accordance with the Plan.

(i)    *Wind Down Agreement*.  For the avoidance of doubt, the establishment, obligations and governance of the Wind Down Estates, the rights, obligations and duties of the Wind Down Officer, and the rights of creditors, including consent and consultation rights, shall be set forth fully in the Wind Down Agreement, and the consent and consultation rights set forth in this section 5.4 are cumulative to those set forth in the Wind Down Agreement.  In the event of a conflict between the consent or consultation rights set forth in this section 5.4 of the Plan on the one hand, and the Wind

Down Agreement or any other document on the other, the document containing the broadest consent or consultation rights shall control.  For the further avoidance of doubt, and notwithstanding anything to the contrary herein, any consent or consultation rights set forth in the Wind Down Agreement shall not limit, dilute, or otherwise impair those set forth in this section 5.4 of the Plan.

### 5.5. *Corporate Action.*

Upon the Effective Date, by virtue of entry of the Confirmation Order, all actions contemplated by this Plan (including any action to be undertaken by the Wind Down Officer) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person.  All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect as of the Effective Date, without any requirement of further action by the Debtors or the Estates.

### 5.6. *Withholding and Reporting Requirements.*

(a)    *Withholding Rights*.  In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.  Additionally, in the case of a non-Cash distribution that is subject to withholding, the distributing party has the right, but not the obligation, to withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property.

(b)    *Forms*.  Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Wind Down Officer, Wind Down Estates, or such other Person designated by the Wind Down Officer or Wind Down Estates (which entity shall subsequently deliver to the Wind Down Officer any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt from information reporting under the Tax Code and provides to the Wind Down Officer notice and evidence of such exemption.  If such request is made by the Wind Down Officer, Wind Down Estates, or such other Person designated by the Wind Down Officer or Wind Down Estates and the holder fails to comply within ninety (90) days after the request is made, the amount of such distribution shall irrevocably revert to the applicable Wind Down Estate and any Claim in respect of such distribution shall be forever barred from assertion against any Debtor, the applicable Wind Down Estate and their  respective property. Exemption From Certain Transfer Taxes.

To the maximum extent provided by section 1146(a) of the Bankruptcy Code: (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors;

or (ii) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 5.7. *Effectuating Documents; Further Transactions.*

(a)      On or as soon as practicable after the Effective Date, the Wind Down Officer shall take such actions as may be or become necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, subject to any consent or consultation rights of the Reserve Bank, United States Department of Justice, Small Business Administration, and CRB, as set forth in the Wind Down Agreement, including (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, financing, conversion, disposition, transfer, dissolution, transition services, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may determine; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (iv) the issuance of securities, all of which shall be authorized and approved in all respects, in each case, without further action being required under applicable law, regulation, order, or rule; (v) the execution, delivery, or filing of contracts, instruments, releases, and other agreements to effectuate and implement the Plan without the need for any approvals, authorizations, actions, or consents; and (vi) all other actions that the applicable Entities determine to be necessary or appropriate.

(b)      Each officer, manager, or member of the board of directors of the Debtors is (and each officer, manager, or member of the board of directors of the Wind Down Officer, if applicable, shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of, and on behalf of, the Wind Down Estates, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including, without limitation, any action by the stockholders or directors or managers of the Debtors, or the Wind Down Estates) except for those expressly required pursuant to the Plan.

(c)      All matters provided for herein involving the corporate structure of the Debtors or the Wind Down Estates, to the extent applicable, or any corporate or related action required by the Debtors or the Wind Down Estates in connection herewith shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders, members, or directors or managers of the Debtors and with like effect as though such action had been taken unanimously by the

stockholders, members, directors, managers, or officers, as applicable, of the Debtors or the Wind Down Estates.

### 5.8. *Preservation of Rights of Action.*

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, transferred or settled pursuant to this Plan, the Confirmation Order, or by another Bankruptcy Court order, the Debtors reserve any and all Causes of Action. On and after the Effective Date, the Wind Down Officer may pursue such Causes of Action on behalf of the Wind Down Estates with the consent and consultation of the Reserve Bank, United States Department of Justice, Small Business Administration, and CRB, as set forth in the Wind Down Agreement. No Entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Wind Down Officer, as applicable will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or the Effective Date. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Wind Down Officer shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion, subject to this Plan and to the consent and consultation rights of the Reserve Bank, United States Department of Justice, Small Business Administration, and CRB, as set forth in the Wind Down Agreement, to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing, as the Wind Down Officer may determine is in the best interest of the Estates, without the consent or approval of any third party (aside from the Reserve Bank) or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of this Plan itself shall be resolved only by Confirmation of this Plan itself.

### 5.9. *Certificate of Incorporation and By-Laws.*

As of the Effective Date, the certificate of incorporation and by-laws, or other organizational documents, as applicable, of the Debtors shall be amended to the extent necessary to carry out the provisions of this Plan, subject to the consent of the Reserve Bank, not to be unreasonably withheld.

### 5.10. *Cancellation of Existing Securities and Agreements*

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, all notes, instruments, other securities, and other evidence of debt issued, and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged.

### 5.11. *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan, take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right for the Wind Down Officer to seek to re-classify any

Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### 5.12. *Closing of Chapter 11 Cases.*

After an Estate has been fully administered, the applicable Wind Down Estate or Wind Down Officer shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case(s) in accordance with the Bankruptcy Code and Bankruptcy Rules.

### 5.13. *Notice of Effective Date.*

As soon as practicable, but not later than three (3) Business Days following the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

### 5.14. *Corporate Form*

On the Effective Date, each of the Debtors shall maintain its current corporate form, which may be modified or changed at any time after the Effective Date by the Wind Down Officer in accordance with the terms of this Plan and applicable law.

### 5.15. *Separability.*

Notwithstanding the combination of the separate plans of liquidation for the Debtors set forth in the Plan for purposes of economy and efficiency, the Plan constitutes a separate chapter 11 plan for each Debtor.  Accordingly, if the Bankruptcy Court does not confirm the Plan with respect to one or more Debtors, it may still, subject to the consent of the applicable Debtors, confirm the Plan with respect to any other Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

## SECTION 6.   DISTRIBUTIONS.

### 6.1. *Distributions Generally.*

Except as otherwise provided in the Plan, one or more Disbursing Agents shall make all distributions under the Plan to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.

### 6.2. *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed for purposes of determining whether a holder of such a Claim or Interest is a record holder entitled to distributions under the Plan, and there shall be no further changes in the record holders or the permitted designees of any such Claims or Interests.  The Debtors, or the Wind Down Officer, as applicable, shall have no obligation to recognize any transfer or designation of such Claims or Interests occurring after the close of business on the Distribution Record Date.  In addition, with respect to payment of any Cure Amounts or Assumption Disputes, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease as of the close of business on the Distribution Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

### 6.3. *Date of Distributions.*

(a)  Except as otherwise provided in the Plan, any distributions and deliveries to be made under the Plan shall be made on or about the Effective Date or as otherwise determined in accordance with the Plan, including, without limitation, the treatment provisions of Section 4 of the Plan; *provided*, that the Wind Down Officer shall from time to time determine subsequent distribution dates to the extent they determine them to be appropriate.

(b)  (i) prior to any distributions to the Reserve Bank or holders of General Unsecured Claims, the Wind Down Officer, shall reserve an amount sufficient to pay holders of Disputed Administrative Expense Claims, Disputed Secured Claims, Disputed Priority Non-Tax Claims, and Disputed Priority Tax Claims, and (ii) prior to any distributions by the Wind Down Officer to the holders of General Unsecured Claims, the Wind Down Officer shall (x) make distributions to the Reserve Bank on the Allowed Reserve Bank Priority Claim, and (y) reserve an amount sufficient to pay holders of any Disputed General Unsecured Claims, in each case, the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims.  After the resolution of a Disputed Administrative Expense Claim, Disputed Secured Claim, Disputed Priority Non-Tax Claim, and Disputed Priority Tax Claims, the Wind Down Officer shall treat any amounts that were reserved on account of such Disputed Claim that is Disallowed or does not become an Allowed Claim as Net Cash Proceeds.

### 6.4. *Disbursing Agent.*

Other than as contemplated in Section 6.2 of the Plan, all distributions under this Plan shall be made by the Disbursing Agent on and after the Effective Date as provided herein.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  The Wind Down Officer shall use all commercially reasonable efforts to provide the Disbursing Agent with the amounts of Claims and the identities and addresses of holders of Claims, in each case, as set forth in the books and records of the Debtors or the Wind Down Estates, as applicable. The Wind Down Officer shall cooperate in good faith with the applicable Disbursing Agent to comply with the reporting and withholding requirements outlined in Section 5.7 of the Plan.

### 6.5. *Rights and Powers of Disbursing Agent.*

(a)  From and after the Effective Date, the Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including, without limitation, holders of Claims against, and Interests in, the Debtors and other parties in interest, from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or ultra vires acts of such Disbursing Agent.  No holder of a Claim or Interest, or other party in interest, shall have or pursue any claim or Cause of Action against the Disbursing Agent, solely in its capacity as Disbursing Agent, for making distributions in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or ultra vires acts of such Disbursing Agent.

(b)  The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder; (ii) make all distributions contemplated hereby; and (iii) exercise such other powers as may be vested in

the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 6.6. *Expenses of Disbursing Agent.*

Except as otherwise ordered by the Bankruptcy Court, any reasonable and documented fees and expenses incurred by the Disbursing Agent acting in such capacity (including reasonable documented attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash.

### 6.7. *No Postpetition Interest on Claims.*

Except as otherwise provided in the Plan, the Confirmation Order, another order of the Bankruptcy Court, or the Bankruptcy Code (including postpetition interest in accordance with sections 506(b) and 726(a)(5) of the Bankruptcy Code), or as required by the Program Agreements in the case of the Reserve Bank, interest shall not accrue or be paid on any Claims on or after the Commencement Date; *provided*, that if interest is payable pursuant to the preceding clause (other than for the Reserve Bank Claims), interest shall accrue at the federal judgment rate pursuant to 28 U.S.C. § 1961 on a non-compounded basis from the date the obligation underlying the Claim becomes due and is not timely paid through the date of payment.

### 6.8. *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, all distributions to any holder or permitted designee, as applicable, of an Allowed Claim or Interest shall be made to a Disbursing Agent, who shall transmit such distribution to the applicable holders or permitted designees of Allowed Claims or Interests on behalf of the Debtors. In the event that any distribution to any holder or permitted designee is returned as undeliverable, no further distributions shall be made to such holder or such permitted designee unless and until such Disbursing Agent is notified in writing of such holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest. Nothing herein shall require the Disbursing Agent to attempt to locate holders or permitted designees, as applicable, of undeliverable distributions and, if located, assist such holders or permitted designees, as applicable, in complying with Section 5.7 of the Plan.

### 6.9. *Distributions after Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made on the Effective Date.

### 6.10. *Unclaimed Property.*

Undeliverable distributions or unclaimed distributions shall remain in the possession of the Debtors or Wind Down Estates, as applicable, until such time as a distribution becomes deliverable or the holder accepts the distribution, or such distribution reverts back to the Debtors or Wind Down Estates, as applicable, and shall not be supplemented with any interest, dividends, or other accruals of any kind. Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days from the date of distribution. After such date all unclaimed property or interest in property shall revert to the Wind Down Estates and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

### 6.11. *Time Bar to Cash Payments.*

Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Wind Down Estates, and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Requests for re-issuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued.

### 6.12. *Manner of Payment under Plan.*

Except as otherwise specifically provided in the Plan, at the option of the Debtors or Wind Down Officer, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer, or ACH transfer, or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

### 6.13. *Satisfaction of Claims.*

Except as otherwise specifically provided for in the Plan and to the extent permitted by law, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction of, and exchange for, such Allowed Claims.

### 6.14. *Minimum Cash Distributions.*

The Disbursing Agent shall not be required to make any distribution of Cash less than One Hundred Dollars ($100) to any holder of an Allowed Claim; *provided*, that if any distribution is not made pursuant to this Section 6.14, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim; *provided* further that, solely with respect to distributions on account of the Reserve Bank Claims, the Disbursing Agent shall seek prior consent of the Reserve Bank.

### 6.15. *Setoffs and Recoupments.*

The Debtors or Wind Down Estates, as applicable, or such entity's designee (including, without limitation, the Disbursing Agent) may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors or Wind Down Estates, as applicable, may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; *provided*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or its successor of any claims, rights, or Causes of Action that a Debtor or its successor or assign may possess against the holder of such Claim.

### 6.16. *Allocation of Distributions between Principal and Interest.*

Except with respect to the Reserve Bank, and except as otherwise required by law (as reasonably determined by the Wind Down Estates), distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

### 6.17. *No Distribution in Excess of Amount of Allowed Claim.*

Except as provided in Section 6.7 of the Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions in excess of the Allowed amount of such Claim.

## SECTION 7.   PROCEDURES FOR DISPUTED CLAIMS.

### 7.1. *Objections to Claims.*

(a)      The Debtors or the Wind Down Officer on behalf of each of the Wind Down Estates shall exclusively be entitled to object to Claims.  After the Effective Date, the Wind Down Officer shall have and retain any and all rights and defenses that the Debtors had with regard to any Claim to which they may object, except with respect to any Claim that is Allowed.  Any objections to proofs of Claim shall be served and filed on or before the later of (a) one hundred eighty (180) days after the Effective Date, and (b) on such later date as ordered by the Bankruptcy Court for cause.

### 7.2. *Resolution of Disputed Claims.*

The Wind Down Officer, on behalf of each of the Wind Down Estates and upon consultation with the Reserve Bank and subject to the terms of the Wind Down Agreement, shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Other Secured Claims, and General Unsecured Claims without approval of the Bankruptcy Court, other than with respect to Fee Claims.

### 7.3. *Payments and Distributions with Respect to Disputed Claims.*

Notwithstanding anything herein to the contrary, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### 7.4. *Distributions after Allowance.*

After such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder thereof shall be entitled to distributions, if any, to which such holder is then entitled as provided in this Plan, without interest, as provided in Section 7.8 of the Plan.  Such distributions shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) becomes a Final Order.

### 7.5. *Estimation of Claims.*

The Debtors or Wind Down Officer (on behalf of each of the Wind Down Estates), as applicable, shall determine, resolve and otherwise adjudicate all contingent, unliquidated, and Disputed Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Other Secured Claims, and General Unsecured Claims.  The Debtors, Wind Down Officer (on behalf of each of the Wind Down Estates), with respect to such Disputed Claims, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim or Class of Claims pursuant to section 502(c) of the Bankruptcy Code or otherwise, including to establish a reserve for distribution purposes, regardless of whether such, or any, Person had previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court will retain jurisdiction to estimate any Claim or Class of Claims at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim or Class of Claims, the

amount so estimated shall constitute either the Allowed amount of such Claim or Class of Claims, or a maximum limitation on such Claim or Class of Claims, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim or Class of Claims, the Debtors or Wind Down Officer, as applicable, may pursue supplementary proceedings to object to the allowance of such Claims; *provided*, that such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

For the avoidance of doubt, there shall be no estimation of the Reserve Bank Claim, Reserve Bank Secured Claim or the Reserve Bank Priority Claim absent the express consent of the Reserve Bank.

### 7.6. *No Distributions Pending Allowance.*

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

### 7.7. *Claim Resolution Procedures Cumulative.*

All of the objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

### 7.8. *Interest.*

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest that accrued thereon from and after the Effective Date, except as provided in Section 6.7 of the Plan.

### 7.9. *Insured Claims.*

If any portion of an Allowed Claim is an Insured Claim, no distributions under the Plan shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies. To the extent that the Debtors' insurers agree to satisfy a Claim in whole or in part, then immediately upon such satisfaction, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order or approval of the Court.

## SECTION 8.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 8.1. *Rejection of Executory Contracts and Unexpired Leases.*

(a)     As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date; (iv) is identified in Sections 8.4 and 8.6 of the Plan; or (v) is identified for assumption on the Assumption Schedule included in the Plan Supplement.

(b)     Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that Wind Down Estates, as applicable, have provided adequate assurance of future performance under such assumed executory contracts and unexpired leases.  Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Wind Down Estates, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.  For the avoidance of doubt, the Program Agreements are not executory contracts or unexpired leases.

## 8.2.    *Determination of Assumption Disputes and Deemed Consent.*

(a)     Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors may otherwise agree.

(b)     The Debtors shall file, as part of the Plan Supplement, the Assumption Schedule.  At least fourteen (14) days before the Confirmation Hearing, the Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Debtors' intention to potentially assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any).  **Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten (10) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.**  Any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease shall be deemed to have assented to assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, or any Wind Down Estates, under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor, or Wind Down Estates, as applicable.  Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease pursuant to the Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms set forth in this Section 8.2(b), shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

(c)     If there is an Assumption Dispute pertaining to assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective; *provided*, that the Debtors or Wind Down Estates, as applicable, may settle any Assumption Dispute without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(d)     To the extent an Assumption Dispute relates solely to the Cure Amount, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of the Assumption Dispute; *provided*, that the Debtors or the Wind Down Estates, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the non-Debtor party to the extent such executory contract or unexpired lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the applicable ~~Reorganized~~ Debtor or the Wind Down Estates, as applicable). The Debtors or Wind Down Estates, as applicable, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(e)     Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease. Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such executory contract or unexpired leases.

### 8.3.     *Rejection Damages Claims.*

**In the event that the rejection of an executory contract or unexpired lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified and treated in Class 4 (General Unsecured Claims). A proof of such Claim must be filed with the Bankruptcy Court by the later of (i) thirty (30) days after the filing and service of the notice of occurrence of the Effective Date; (ii) the general bar date or governmental bar date, as applicable; and (iii) thirty (30) days following service of an Order approving rejection of any executory contract or unexpired lease of the Debtors if such contract or lease is the subject of a pending Assumption Dispute.**

### 8.4.     *Insurance Policies.*

Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice, or claim objection, and any other document related to any of the foregoing, and any other order of the Bankruptcy Court, on the Effective Date: (a) all insurance policies issued or providing coverage to the Debtors shall (subject to the applicable insurer's right to object to such a designation) be assumed in their entirety by the Debtors pursuant to sections 365 and 1123 of the Bankruptcy Code, and coverage for defense costs and indemnification under the D&O Policies shall remain available to all individuals within the definition of "Insured" in the D&O Policies, and Wind Down Estates, or Wind Down Officer, as applicable, shall remain liable in full for any and all now existing or hereinafter arising obligations, liabilities, terms, provisions and covenants of any of the Debtors under such insurance policies, without the need or requirement for an insurer to file a Proof of Claim, Administrative Expense Claim or objection to any cure amount; (b) nothing shall alter or modify the terms and conditions of and/or any rights, obligations, benefits, claims, rights to payments, or recoveries under the insurance policies without the express written consent of the applicable insurer; and (c) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against an insurer under

applicable nonbankruptcy law to proceed with their claims; (ii) insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (I) workers' compensation claims, (II) claims where a claimant asserts a direct claim against any insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (III) all costs in relation to each of the foregoing; (iii) the insurers to cancel any insurance policies, and take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the insurance policies; and (iv) holders of Allowed Claims to pursue insurance recovery to the extent allowed or required by Section 7.9 of this Plan.

### 8.5.    *Indemnification Obligations*

Any obligations of the Debtors pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document or applicable law, to indemnify, reimburse, or limit the liability of any director, officer, or employee of the Debtors, pursuant to the foregoing in respect of any claims, demands, suits, causes of action, or proceedings against such director, officer, or employee based upon any act or omission related to such director or officer's service with, for, or on behalf of the Debtors prior to the Effective Date with respect to all present and future actions, suits, and proceedings relating to the Debtors shall survive Confirmation of the Plan and except as set forth herein, remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability accrued or is owed in connection with an occurrence before or after the Commencement Date; *provided*, however, that all monetary obligations under this provision shall be (a) limited solely to available insurance coverage, (b) to the extent such Claims are not covered by any applicable insurance, including deductibles, shall be treated as Allowed General Unsecured Claims, and (c) neither the Debtors, Wind Down Estates, Wind Down Officer, the GUC Pool, nor any of their assets shall be liable for any such obligations.

Any Claim based on the Debtors' indemnification obligations shall not be a Disputed Claim or subject to any objection under Bankruptcy Code section 502(e)(1)(B). For the avoidance of doubt, the scope of the Debtors' indemnification obligations in this Section 8.5 shall be conterminous with applicable non-bankruptcy law and to the extent provided by such law.

Notwithstanding the above, this Section 8.5 shall not apply to any Former Officers and Directors and any obligations of the Debtors pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document or applicable law, including amendments entered into any time prior to the Effective Date, to indemnify, reimburse, or limit the liability of any Former Officer and Director shall be rejected as of the Effective Date, and the Wind Down Officer reserves all legal and equitable rights and defenses in respect of any claims asserted by any Former Officer or Director.

### 8.6.    *Intellectual Property Licenses and Agreements.*

Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice or claim objection, and any other document related to any of the foregoing, all intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtors have any rights or obligations in effect as of the date of the Confirmation Order shall be deemed assumed by the Debtors and the Wind Down Estates and shall continue in full force and effect unless any such intellectual property contract, license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion filed by the Debtors in accordance with Section 8.1 of the Plan. Unless otherwise noted

hereunder, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Wind Down Estates, and the Wind Down Estates may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

### 8.7. *Assignment.*

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned hereunder shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment. To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect with respect to any assignment pursuant to the Plan.

### 8.8. *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

### 8.9. *Reservation of Rights.*

(a)     The Debtors may amend the Assumption Schedule and any cure notice until five (5) Business Days immediately prior to the commencement of the Confirmation Hearing in order to (i) add, delete, or reclassify any executory contract or unexpired lease or amend a proposed assumption or assumption and assignment and/or (ii) amend the proposed Cure Amount; *provided*, that if the Confirmation Hearing is adjourned for a period of more than two (2) consecutive calendar days, the Debtors' right to amend such schedules and notices shall be extended to the Business Day immediately prior to the adjourned date of the Confirmation Hearing, with such extension applying in the case of any and all subsequent adjournments of the Confirmation Hearing. The Debtors shall provide notice of such amendment to any affected counterparty as soon as reasonably practicable.

(b)     Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an executory contract or unexpired lease or that the Debtors, or Wind Down Estates, or their respective affiliates have any liability thereunder.

(c)     Except as otherwise provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights

of the Debtors and Wind Down Estates, under any executory or non-executory contract or any unexpired or expired lease.

(d)    Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, Wind Down Estates, as applicable, under any executory or non-executory contract or any unexpired or expired lease.

## SECTION 9.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.

### 9.1.    *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, the form and substance of the Confirmation Order is acceptable to the Reserve Bank in its reasonable discretion, the Confirmation Date shall have occurred, and no stay of the Confirmation Order shall be in effect;

(b)    all agreements necessary to implement the Plan, shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements;

(c)    the documents contained in the Plan Supplement will contain terms and conditions consistent in all material respects with this Plan;

(d)    the Wind Down Estates shall have been funded with the Wind Down Amount in accordance with the Wind Down Budget;

(e)    the GUC Pool shall have been created with the GUC Pool Amount; and

(f)    notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously upon the completion of the applicable conditions precedent to the Effective Date; *provided*, that to the extent a condition precedent (a "***Prerequisite Condition***") may be required to occur prior to another condition precedent (a "***Subsequent Condition***") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to a Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

(g)    The transfer of servicing of the PPPLF Collateral to an alternate third party servicer contemplated pursuant to section 5.3 herein has been completed to the satisfaction of the Reserve Bank, unless the Reserve Bank consents in advance, in its sole discretion, to Post-Effective Date PPP Servicing in accordance with section 5.3(d) herein.

### 9.2.    *Waiver of Conditions Precedent.*

(a)    Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.  Each of the conditions precedent in Section 9.1 of the Plan other than the conditions set forth in Section 9.1(b)  may be waived in writing by the Debtors, subject to the reasonable consent of the Reserve Bank with respect

to the conditions set forth in <u>Section 9.1(a), (c) and (e)</u> and without leave of or order of the Bankruptcy Court.

(b)     The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

### 9.3.    *Effect of Failure of Conditions to Effective Date.*

Unless otherwise extended by the Debtors, if the Effective Date does not occur on or before the date that is one hundred and eighty (180) days after the date on which the Confirmation Order is entered or if the Confirmation Order is vacated, (a) no distributions under the Plan shall be made, (b) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (c) all the Debtors' obligations with respect to the Claims and the Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors or otherwise.

## SECTION 10.  EFFECT OF CONFIRMATION.

### 10.1.    *Vesting of Assets.*

(a)     On the Effective Date pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all remaining property of the Debtors' Estates and any Estate Causes of Action shall vest in the Wind Down Estates free and clear of all Claims, Liens, encumbrances, charges, and other interests (other than the Liens securing the Reserve Bank Claims), subject to treatment of Other Secured Claims and Reserve Bank Claims under the Plan.  On and after the Effective Date, the Wind Down Estates may take any action, including, without limitation, the operation of their businesses; the use, acquisition, sale, lease and disposition of property; and the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided herein.  Without limiting the foregoing, the Wind Down Estates may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.  Notwithstanding the foregoing, vesting of property in which any governmental unit holds an interest, and for which title vests in the Debtors subject to regulatory requirements under a governmental grant or award, including but not limited to, the requirements of 10 C.F.R. 600.321, shall be limited to the extent of the Debtors' interest in such property; and the Wind Down Estates may only take action, including but not limited to the use, acquisition, sale, lease, and disposition of such property, in accordance with applicable non-bankruptcy law.

### 10.2.    *Term of Injunctions or Stays.*

Unless otherwise provided herein, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date,

shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### 10.3. *Injunction.*

(a)       **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan.**

(b)       **Except as expressly provided in the Plan, the Definitive Documents, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are treated by the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Wind Down Estates, or the Wind Down Officer, as applicable, or the property of any of the Debtors, the Wind Down Estates, or the Wind Down Officer, as applicable; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Wind Down Estates, or the Wind Down Officer; or the property of any of the Debtors, or the Wind Down Estates, as applicable; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Wind Down Estates, or the property of any of the Debtors, the Wind Down Estates, or the Wind Down Officer, as applicable; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors, or the Wind Down Estates, as applicable, or against property or interests in property of any of the Debtors, or the Wind Down Estates, except as contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

(c)       **By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this <u>Section 10.3</u>.**

(d)       **The injunctions in this <u>Section 10.3</u> shall extend to any successors of the Debtors, or the Wind Down Estates, as applicable, and their respective property and interests in property.**

(e)       **Notwithstanding the foregoing, nothing in this <u>Section 10.3</u> shall enjoin the assertion of a defensive right of recoupment.**

(f)       **Nothing in the Plan or Confirmation Order shall (1) enjoin, release, impair or otherwise preclude the United States (i) from pursuing any criminal action or any police**

or regulatory action, (ii) from pursuing any liability to the United States that is not a Claim, (iii) from exercising any rights of setoff or recoupment subsequent to confirmation of the Plan or any order granting substantive consolidation, and such rights are preserved, and (iv) from pursuing any claim of the United States arising on or after the Confirmation Date; and (2) grant the Debtors a discharge pursuant to section 1141(d) of the Bankruptcy Code.

### 10.4.  *Binding Effect.*

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such holders were (a) Impaired or Unimpaired under the Plan; (b) deemed to accept or reject the Plan; (c) failed to vote to accept or reject the Plan; (d) voted to reject the Plan; or (e) received any distribution under the Plan.

### 10.5.  *Releases by the Debtors.*

**As of the Effective Date, the Debtors, and each of their respective Affiliates, on behalf of themselves and their respective Estates, including any successor to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, including the Wind Down Estates, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, and waived each Released Party from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims asserted or that may be asserted on behalf of any of the Debtors or their Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Disclosure Statement, the restructuring of Claims or Interests in the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation of any of the foregoing or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of confirmation of the Plan, the solicitation of votes on the Plan, the pursuit of consummation of the Effective Date, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, the subject matter of or the transactions or events giving rise to any Claim or Interest that is treated in the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing, except for Causes of Action arising from an act or omission of a Released Party that is judicially determined in a Final Order to have constituted actual fraud, gross negligence, criminal misconduct or willful misconduct.  The releases set forth in this paragraph shall not extend to any Claim or Cause of Action against any Debtor or Affiliate arising out of the American Express Transaction or the distribution of any consideration or value received on account of the American Express Transaction. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth above shall not be construed as releasing any post-Effective Date obligations of any party or entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and (ii) the releases by the Debtors set forth above shall not impair any Estate Causes of Action against a non-Released Party.**

10.6.    *Releases By Holders of Claims and Interests.*

As of the Effective Date, except (a) for the right to enforce the Plan or (b) as otherwise expressly provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the date upon which the Bankruptcy Court enters the Confirmation Order, on or after the Effective Date, each Released Party shall be deemed expressly, conclusively, absolutely, unconditionally, irrevocably and forever, released, and waived by each of the Releasing Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims asserted or that may be asserted on behalf of any of the Debtors or their Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Disclosure Statement, the restructuring of Claims or Interests in the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation of any of the foregoing or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of confirmation of the Plan, the solicitation of votes on the Plan, the pursuit of consummation of the Effective Date, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing, except for Causes of Action arising from an act or omission of a Released Party that is judicially determined in a Final Order to have constituted actual fraud, gross negligence, criminal misconduct or willful misconduct.    Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not be construed as releasing any post-Effective Date obligations of any party or entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

10.7.    *Exculpation.*

To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, arising between the Commencement Date and the Effective Date, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Disclosure Statement, the restructuring of Claims or Interests in the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation of any of the foregoing or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of confirmation of the Plan, the solicitation of votes on the Plan, the pursuit of consummation of the Effective Date, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, or the distribution of property under the Plan or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be

entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.

To the extent section 1125(e) of the Bankruptcy Code applies, the Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above shall not be construed as exculpating any party or entity from its post-Effective Date obligations under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

### 10.8. *Waiver of Statutory Limitation on Releases.*

EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN (INCLUDING UNDER SECTION 10 OF THE PLAN) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542. THE RELEASES CONTAINED IN SECTION 10 OF THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

### 10.9. *Solicitation of the Plan.*

As of and subject to the occurrence of the Confirmation Date: (a) the Debtors shall be deemed to have previously solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation, and (b) the Debtors and each of their respective directors, officers, employees, Affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under this Plan, and therefore, are not, and on account of such offer, issuance and solicitation will not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or the offer and issuance of any securities under this Plan.

### 10.10. *Corporate Action.*

Upon the Effective Date, by virtue of the solicitation of votes in favor of this Plan and entry of the Confirmation Order, all actions contemplated by this Plan (including any action to be undertaken by the Wind Down Officer) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person. All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred on the Effective Date and shall be in effect, without any requirement of further action by the Debtors or the Estates.

## SECTION 11.  RETENTION OF JURISDICTION.

### 11.1. *Retention of Jurisdiction.*

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)  to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases, including Assumption Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)  to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)  to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and Confirmation Order, including to ensure that an Allowed Claim does not receive consideration in excess of the Allowed amount of such Claim, and to adjudicate any and all disputes arising from or relating to distributions under the Plan, including, cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely paid;

(d)  to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim or Class of Claims;

(e)  to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)  to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)  to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)  to hear and determine all proceedings, if any, to approve Fee Claims;

(i)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)     to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(k)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(l)     to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(m)     to hear, adjudicate, decide, or resolve any and all matters related to Section 10 of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder;

(n)     to resolve disputes concerning Disputed Claims or the administration thereof;

(o)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)     to enter one or more final decrees closing the Chapter 11 Cases;

(q)     to recover all Assets of the Debtors and property of the Debtors' Estates, wherever located and adjudicate any disputes with respect thereto;

(r)     to resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose; and

(s)     to hear and resolve any dispute over the application to any Claim of any limit on the allowance of such Claim set forth in sections 502 or 503 of the Bankruptcy Code, other than defenses or limits that are asserted under non-bankruptcy law pursuant to section 502(b)(1) of the Bankruptcy Code.

### 11.2.     *Courts of Competent Jurisdiction.*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## SECTION 12.  MISCELLANEOUS PROVISIONS.

### 12.1.     *Payment of Statutory Fees.*

(a)     On the Effective Date and thereafter as may be required, the Debtors or the Wind Down Officer, as applicable, shall pay all Statutory Fees that are due and payable, together with interest,

if any, pursuant to § 3717 of title 31 of the United States Code for each Debtor's case (the "**Quarterly Fees**").  After the Effective Date, the Wind Down Estates and the Wind Down Officer, as applicable, shall pay any and all Quarterly Fees when due and payable.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Wind Down Estates and the Wind Down Officer, as applicable shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Notwithstanding anything called for in the Plan to the contrary, the Wind Down Estates and the Wind Down Officer, as applicable, shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee and make such reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.  The obligations under this Section 12.1 shall remain for each Debtor until such time as a final decree is entered closing the Chapter 11 Case for such Debtor, a Final Order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing such Debtor's Chapter 11 Case is entered.

### 12.2.    *Substantial Consummation.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.3.    *Dissolution of Creditors' Committee.*

On the Effective Date, the Creditors' Committee, if any, shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided, however,* that after the Effective Date, the Creditors' Committee shall exist and its professionals shall continue to be retained and shall continue to be entitled to reasonable compensation by the Debtors without the need for further application to the Bankruptcy Court with respect to all applications filed pursuant to sections 330 and 331 of the Bankruptcy Code and any related hearings.

### 12.4.    *Amendments.*

(a)    *Plan Modifications*.  The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules and subject to the consent of the Reserve Bank in its reasonable discretion with respect to matters that adversely affect its rights, to amend or modify the Plan (i) prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (ii) after entry of the Confirmation Order, the Debtors may, upon order of the Court, amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to the Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of this Plan, and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

(b)    *Other Amendments*.  Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

### 12.5. *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan, including the right to revoke or withdraw this Plan for any Debtor or all Debtors, prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, in each case with respect to a Debtor, then, with respect to such Debtor: (a) this Plan shall be null and void in all respects; (b) any assumption or rejection of executory contracts or unexpired leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors, the Estates, or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Estates, or any other Entity.

### 12.6. *Severability of Plan Provisions upon Confirmation.*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms; (b) integral to this Plan and may not be deleted or modified without the consent of the Debtors or the Wind Down Estates (as the case may be); and (3) nonseverable and mutually dependent.

### 12.7. *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, that corporate or limited liability company governance matters relating to the Debtors shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor.

### 12.8. *Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 12.9. *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Debtors and all holders of Claims or Interests receiving distributions pursuant to this Plan and all other parties in interest are authorized to prepare, execute, and

deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### 12.10.  *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Wind Down Estates, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns, including, without limitation, the Wind Down Officer.

### 12.11.  *Successors and Assigns.*

The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

### 12.12.  *Entire Agreement.*

On the Effective Date, this Plan, the Plan Supplement and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 12.13.  *Notices.*

All notices, requests and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(i) if to the Debtors or the Wind Down Officer:

    Kabbage Inc. d/b/a KServicing
    925B Peachtree Street NE, Suite 383
    Atlanta, GA 30309
    Attention: Laquisha Milner
    Telephone: (678) 566-9000

        - and –

    Richards, Layton & Finger, P.A.
    One Rodney Square
    920 N. King Street
    Wilmington, Delaware 19801
    Attn:   Daniel J. DeFranceschi
           Amanda R. Steele
           Zachary I. Shapiro
    Telephone:  (302) 651-7700
    Facsimile:  (302) 651-7701

-and-

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn:   Ray C. Schrock, P.C.
            Candace M. Arthur
            Natasha Hwangpo
            Chase Bentley
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

Dated:   January 19March 9, 2023

By:   */s/ Laquisha Milner*_____
        Name:  Laquisha Milner
        Title:   Chief Executive Officer

**KABBAGE, INC. (D/B/A KSERVICING)**
**KABBAGE CANADA HOLDINGS, LLC**
**KABBAGE ASSET SECURITIZATION LLC**
**KABBAGE ASSET FUNDING 2017-A LLC**
**KABBAGE ASSET FUNDING 2019-A LLC**
**KABBAGE DIAMETER, LLC**