IN RE KABBAGE, INC. D/B/A KSERVICING ET AL.,
CASE NO. 22-10951 (CTG)

SUMMARY CHART OF CONFIRMATION OBJECTIONS[1]

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| I. | | **Confirmation Objections (Excluding Cure Objections)** | | |
| 1. | 548 | Plaintiffs and putative class members in stayed action filed as *Carr et al., v. Kabbage, Inc.*, Case No. 22-cv-02149 (N.D. Ga. Mar. 30, 2022) ("**Carr Plaintiffs**") | Carr Plaintiffs object to confirmation of the Amended Plan on grounds that:<br><br>a) The Amended Plan violates section 1129(a)(7), or the "best interests" test, under the Bankruptcy Code because:<br>　i. Debtors have failed to provide an adequate Liquidation Analysis in a timely manner prior to the Plan Objection Deadline and the Debtors' filed Liquidation Analysis will be too speculative;<br><br>　ii. Debtors' Liquidation Analysis fails to account for the Third-Party Releases provided under the Amended Plan; | **Pending.**<br><br>a) The Amended Plan satisfies the "best interests" test.<br>　i. On December 30, 2022, the Debtors timely filed their Liquidation Analysis, as Exhibit C to the first Amended Disclosure Statement. On January 17, 2023, the Debtors filed a revised Liquidation Analysis; in each case, well in advance of the Voting Deadline. Further, the Liquidation Analysis, prepared by the Debtors and their advisors, is sound, reasonable, and incorporates widely accepted and justified assumptions and estimates regarding the Debtors' assets and claims. *See Memorandum* ¶ 87, 138, 146. The Carr Plaintiffs did not object to the Amended Disclosure Statement, nor the Liquidation Analysis at the Disclosure Statement hearing.<br><br>　ii. The Debtors' Liquidation Analysis appropriately accounts for Claims that may be affected by releases in the Amended Plan. *See Memorandum* ¶ 141-46. The Debtors' Liquidation Analysis properly excludes unasserted and unknown Claims hypothetically held by the Carr Plaintiffs against non-Debtor third-parties. *Id.* ¶ 145. Notwithstanding this, the Carr Plaintiffs have objected to the releases provided under the Amended Plan. *See Voting Decl.* Ex. D (Opt-Out Report). |

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Memorandum, the relevant Objection, the Plan, or the Disclosure Statement, as applicable. This chart summarizes certain key issues raised in the Objections. To the extent that an Objection or a specific point raised in an Objection is not addressed herein or the Memorandum, the Debtors reserve the right to respond to such Objection up to and at the Confirmation Hearing.

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| | | | iii. The Amended Plan improperly uses the Carr Plaintiffs' PPP Loans as collateral in satisfaction of the Reserve Bank's claims. To the extent the Carr Plaintiffs' PPP Loans are transferred to Reserve Bank and/or the Wind Down Estate, it should be done without any release or waiver of claims by Carr Plaintiffs. | iii. To the extent a PPP Loan was originated by the Debtors using funds from the PPPLF, such PPP Loan was pledged to the PPPLF and is part of the Reserve Bank's collateral. *See Memorandum* ¶ 151; *Cash Collateral Order* § D(v); *Loan Servicing Motion* ¶ 19. For the avoidance of doubt, any consensual releases provided to the Reserve Bank and the Wind Down Estates would not impact or prejudice the Carr Plaintiffs' ability, if any, to seek forgiveness of their PPP Loans from the Small Business Administration. *See Memorandum* ¶ 149. Notwithstanding this, the Carr Plaintiffs have objected to the releases provided under the Amended Plan. *See Voting Decl.* Ex. D (Opt-Out Report). |
| | | | b) Plan is not "fair and equitable" as to Class 4 (General Unsecured Claims) as required by section 1129(b)(2)(B) of the Bankruptcy Code:<br><br>i. Amended Plan unfairly discriminates between similarly situated claims by prioritizing Reserve Bank's GUC Pool Class A Interests over Carr Plaintiffs' GUC Pool Class B Interests; | b) The Plan satisfies the "cram down" requirements for plan confirmation pursuant to section 1129(b) of the Bankruptcy Code. *See Memorandum* § I.J.<br><br>i. The Amended Plan does not unfairly discriminate between the Reserve Bank Claims and the Carr Plaintiff's claims. The Reserve Bank Claims are either secured claims or, to the extent not secured, entitled to priority under section 507(a)(2) of the Bankruptcy Code. The Debtors stipulated to the amount and treatment of the Reserve Bank Claims, as memorialized by the Cash Collateral Order, and such stipulation was subject to a challenge period that has lapsed and the stipulations are now binding on parties in interest. *See Cash Collateral Order*; *Memorandum* ¶ 148, 153. |

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| | | | ii. Reserve Bank should not receive distributions from Avoidance Actions because its pre-petition liens would not have attached to such causes of action; | ii. As part of the cash collateral stipulations, the Debtors granted the Reserve Bank adequate protection in the form of, among other things, replacement liens on all the Debtors' unencumbered property and assets. Even if the adequate protection liens did not extend to potential proceeds of avoidance actions, the Reserve Bank Priority Clams have priority over the General Unsecured Claims as to all property of the estate, which would include avoidance proceeds. *See Memorandum* ¶ 151, 155; *Cash Collateral Order* § D(v). |
| | | | iii. Carr Plaintiffs, as General Unsecured Creditors, have no rights in decisions regarding pursuit of Avoidance Actions, as the Amended Plan designates this decision to the Wind Down Officer (with certain consultation rights to other parties); | iii. The Carr Plaintiffs are not entitled to consent or consultation rights, nor is this fact relevant to a section 1129(b)(2)(B) analysis. *See Memorandum* ¶ 156, 159. |
| | | | iv. Debtors provide no basis for allowance of Reserve Bank's allowed Claim (as it is yet an unknown amount), nor do they set a process in place to challenge Reserve Bank's claim; | iv. As noted, the amount and priority of Reserve Bank Claims was stipulated to in the Cash Collateral Order. Further, the Debtors' Wind Down Officer owes fiduciary duties to all parties in interests in these Chapter 11 Cases, and per the Amended Plan, has the ability to object to Reserve Bank Priority Claims if they are improper. *See Cash Collateral Order* § D(ii); *Memorandum* ¶ 154, 203. |
| | | | v. The Amended Plan does not provide an adequate liquidation analysis and contains improper releases that burden General Unsecured Creditors. | v. The Debtors have demonstrated the appropriateness and consensual nature of the Third Party Releases provided under the Amended Plan, including their compliance with applicable law. *See Memorandum* ¶¶ 48-55; 163. The Carr Plaintiffs have objected to the releases provided under the Amended Plan. *See Voting Decl.* Ex. D (Opt-Out Report). |

RLF1 28712487V.1

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| 2. | 590 | United States Trustee ("**U.S. Trustee**") | The U.S. Trustee objected, on a limited basis, to confirmation of the Amended Plan on grounds that the Third Party Releases and Injunction Provision provided under the Amended Plan constitute an impermissible discharge by a liquidating debtor, in violation of section 1141(d)(3) of the Bankruptcy Code. | **Pending.** The Third Party Releases and Injunction Provision provided in the Amended Plan do not violate section 1141(d)(3) and should be approved. The Third Party Releases are consensual and do not amount to a discharge. The Injunction Provision is critical to the effectiveness of the Amended Plan, and prevents depletion of the limited estate. Even if the Third Party Releases and Injunction Provision combine to create a *de facto* discharge, that does not preclude their approval, as each is appropriate in its own right. *See Memorandum* ¶ 166. |
| 3. | 591 | Paul Pietschner ("**Pietschner**"), a plaintiff in a False Claims Act proceeding currently stayed in the United States District Court for the Eastern District of Texas, Case No. 4:21-cv-110 (the "**FCA Action**") | Pietschner objected to confirmation of the Amended Plan on grounds that: | |
| | | | a) the injunction and release provisions provided under the Amended Plan are overbroad, such that they would prohibit Pietschner from liquidating his Claims by releasing Debtors from liability under FCA suit and enjoining Pietschner from further prosecution of the Debtors in connection with the FCA suit—thereby constituting an impermissible discharge by the Debtors in violation of section 1141(d)(6)(A) of the Bankruptcy Code. | **Pending**. The Injunction Provision and Releases provided under the Amended Plan do not constitute a discharge for purposes of 1141(d)(6)(A). *See Memorandum* ¶ 163. Additionally, the Debtors included proposed procedures in the Confirmation Order that provides Pietschner with the ability to prosecute the FCA Action in the Texas Court if his claims are nondischargeable, while also protecting other creditors from the harm that would occur if Pietschner could pursue the Wind Down Estates outside of the confines of the Amended Plan before there has been a determination that the holders of Allowed General Unsecured Creditors will receive a Distribution. *See Proposed Confirmation Order* ¶ 32; *Memorandum* ¶ 170. |
| | | | b) Pietschner informally objected to the Third-Party Releases provided under the Amended Plan. | **Resolved**. *See Voting Decl*. Ex. D (Opt-Out Report), reflecting the same. |
| 4. | 592 | Cross River Bank ("**CRB**") | CRB objected, on a limited basis, to confirmation of the Amended Plan on grounds that: | **Pending**. |
| | | | a) the Plan violates the feasibility requirement under section 1129(a)(11) of the Bankruptcy Code and fails to provide for "adequate means for implementation" pursuant to section 1123(a)(5) because the Debtors have not demonstrated their ability to transfer servicing obligations with respect to CRB's PPP Loans to a new servicer, nor the related Servicing Files to CRB. | a) The Amended Plan satisfies the feasibility requirement and provides for adequate means of implementation. *See Memorandum* ¶ 28; 99-101; 113, 176-201. Per the evidence and testimony on the record, the Debtors have demonstrated with reasonably probability that the Amended Plan may be performed—the Debtors will have sufficient funds to implement the Amended Plan, conditions precedent will be satisfied, and the Debtors have undertaken substantial, good |

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| | | | | faith, commercially reasonable efforts to effectuate the transfer of its loan servicing obligations to alternate servicers. *See Memorandum* ¶ 102-106; 179-181; *Rieger-Paganis Decl.* ¶ 16, 19, 26; *Kafiti Decl.* ¶ 6, 8. |
| | | | b) Due to the Debtors' inability to transfer servicing obligations and related documentation, CRB will file a substantial Administrative Expense Claim, which must be paid in full at the Effective Date, making the Amended Plan infeasible. | b) CRB's assertion of an Administrative Expense Claim is baseless: further, CRB carries the burden to prove such a claim. Even assuming, *arguendo*, that CRB was owed an Administrative Expense Claim that would only create an issue as to the timing of the Effective Date and should not prevent confirmation of the Amended Plan. Section 1129(a)(9) is satisfied by the express terms of the Amended Plan. *See Memorandum* ¶ 198-99. |
| | | | c) The Debtors have failed to comply with sections 1129(a)(5) and 1123(a)(7) of the Bankruptcy Code due to the fact that they have not selected a Wind Down Officer nor provided justifications for their proposed selection. | c) The identity of the Wind Down Officer has been disclosed, as well as the nature of their disinterestedness and compensation, all as required by section 1129(a)(5). *See Memorandum* ¶ 202; *Plan Supplement* Ex. D. The Debtors' selected Wind Down Officer complies with the standards often considered by courts when assessing whether section 1123(a)(7) has been met, i.e., the Wind Down Officer is competent, experienced, and independent. *See Memorandum* ¶ 203; *Plan Supplement* Ex. D. |
| 5. | 594 | Customers Bank ("**CB**") | CB filed a joinder to the limited objection of CRB and objected to confirmation of the Amended Plan on grounds that: | **Pending**. |
| | | | a) the Plan violates the feasibility requirement under section 1129(a)(11) of the Bankruptcy Code because the Debtors have not demonstrated their ability to transfer servicing obligations and related documentation with respect to CB's PPP loans.<br>  i. CB argues that (i) the CB Agreements, including the Court-approved settlement between the Debtors and CB (*see* Docket Nos. 172 & 232), obligates the Debtors to perform servicing until transfer of servicing is effectuated. | a) The Amended Plan satisfies the feasibility requirement and provides for adequate means of implementation. *See Memorandum* ¶ 28; 99-101; 113, 176-201.<br><br>  i. Per the evidence and testimony on the record, the Debtors have used and continue to use commercially reasonable efforts to continue servicing the CB PPP Loans, as required by the Amended Plan and the CB Settlement Agreement. However, the Debtors are not required to continue servicing beyond March 31, 2023 nor are they required to transfer servicing obligations by a certain timeline. *See Memorandum* ¶ 212, 215, 221. |

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| | | | ii. Due to the Debtors' inability to transfer servicing obligations and related documentation, CB will likely file a substantial Administrative Expense Claim, which must be paid in full at the Effective Date, making the Amended Plan not feasible. | ii. CB's assertion of a possible Administrative Expense Claim is baseless: further, CB carries the burden to prove such a claim. The Debtors never agreed to transfer their servicing obligations to CB, nevertheless, have demonstrated commercially reasonable efforts to do so. Additionally, even assuming, *arguendo*, that CB has a likely Administrative Expense Claim, it would not preclude confirmation. Section 1129(a)(9) is satisfied by the express terms of the Amended Plan. *See Memorandum* ¶ 214-217. |
| | | | b) The Amended Plan was not proposed in good faith, and therefore does not comply with section 1129(a)(3) of the Bankruptcy Code, because it does not serve a "legitimate and honest purpose to reorganize the debtor" and allows the Debtors to shirk transition obligations post-Effective Date while the unsecured creditors are left with the prospect of uncertain recoveries. | b) The Debtors have complied with section 1129(a)(3). The Amended Plan seeks to maximize value for the benefit of stakeholders and the Debtors have worked diligently and with the honest purpose to engage in a constructive and cooperative manner with all parties in interest to achieve consensus with respect to the Amended Plan and the orderly wind down of the Estates. *See Memorandum* ¶ 72, 220. CB does not have standing to object to the treatment nor recoveries of the General Unsecured Creditors under the Amended Plan. CB is not itself an unsecured creditor, given that CB has released all prepetition Claims against the Debtors, including contract rejection damages, pursuant to the CB Settlement Agreement. *See CB Settlement Agreement* § 9(c); *Memorandum* ¶ 218, 222. |
| 6. | 593 | United States of America Department of Justice (Civil Division) (the "**DOJ**") on behalf of itself and the U.S. Small Business Administration ("**SBA**") | The DOJ and SBA objected, on a limited basis, to confirmation of the Amended Plan on grounds that: | **Resolved**. |
| | | | a) the Amended Plan cannot unilaterally settle claims held by the DOJ and SBA, and to the extent that it does, the Amended Plan is in violation of section 1123(b)(3)(A) of the Bankruptcy Code and should be amended to clarify settlement provisions; | a) **Resolved**. The Amended Plan, as drafted, does not contemplate any unilateral settlement of the DOJ/SBA's Claims. Clarifying language was added to the Confirmation Order. *See Proposed Confirmation Order* ¶ 32. |
| | | | b) the DOJ and SBA object to and opt out of the Third-Party Releases provided under the Amended Plan; | b) **Resolved**. The United States and SBA are reflected on the Debtors' opt-out report. *See Voting Decl.* Ex. D (Opt-Out Report), reflecting the same. |
| | | | c) the injunction provisions provided under the Amended Plan constitute an impermissible discharge by a | c) **Resolved**. Clarifying language was added to the proposed Confirmation Order. *See* ¶ 32. |

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| | | | liquidating debtor, in violation of section 1141(d)(3) of the Bankruptcy Code; | |
| | | | d) the Confirmation Order may not: (i) prohibit or enjoin the DOJ and SBA from engaging in their police and regulatory powers post-confirmation; and (ii) prohibit or enjoin the DOJ and SBA from exercising their setoff and recoupment rights, as such rights are not extinguished by confirmation of a plan if timely asserted. | d) **Resolved**. Clarifying language was added to the proposed Confirmation Order. *See* ¶ 32. |
| | | | The DOJ and SBA requested certain language to be added to the Amended Plan, not cited in their filed Objection. | **Pending**. The Debtors are continuing to work with the DOJ and SBA to reflect agreed-to language in the Amended Plan and Confirmation Order. |
| 7. | N/A | Vaco LLC ("**Vaco**") and Morgan Franklin Consulting LLC ("**Morgan Franklin**") (informal objection) | Vaco and Morgan Franklin requested the following language to be included in the Confirmation Order to preserve the parties' rights under the contracts pending assumption by the Debtors:<br>a) Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, the Debtors agree and stipulate that: (i) Kabbage, Inc. is assuming the executory contract with Vaco LLC ("**Vaco**") identified in the Plan Supplement (including all amendments, modifications, and supplements thereto, the "**Vaco Contract**"); (ii) Kabbage, Inc. is assuming the executory contract with Morgan Franklin Consulting LLC ("**Morgan Franklin**") identified in the Plan Supplement (including all amendments, modifications, and supplements thereto, the "**Morgan Franklin Contract**"); (iii) pursuant to 11 U.S.C. § 365, upon the occurrence of the Effective Date, Kabbage, Inc. shall be deemed to have assumed all rights, benefits, and liabilities under the Vaco Contract and Morgan Franklin Contract, regardless of the date of accrual thereof, including without limitation any contingent or unliquidated liabilities; (iv) Kabbage, Inc. reserves all defenses to any claims under the Vaco Contract, Morgan Franklin Contract, and applicable law; and (v) Kabbage, Inc. shall pay all of its obligations under the Vaco Contract or Morgan Franklin Contract in the ordinary course of business without the necessity of | **Resolved**. Agreed-to language was added to the proposed Confirmation Order. *See* ¶ 29. |

RLF1 28712487V.1

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| | | | Vaco or Morgan Franklin filing any application for an administrative expense claim. | |
| **II.** | **Cure Objections (Regarding Cure and Assumption Only)**[2] | | | |
| 1. | 607 | Insperity PEO Services, L.P. ("**Insperity**") | Insperity objects, on a limited basis, to the potential assumption of the Insperity Agreement on grounds that the Debtors are prohibited from assuming the Insperity Agreement under section 365(c)(1) of the Bankruptcy Code without Insperity's consent, as the Insperity Agreement is a personal services contract. If the Court finds that the Insperity Agreement is not a personal services contract, Insperity requests that the limited Objection serve as the requisite writing to cancel the Insperity Agreement, with the 30-day requirement provided in the Insperity Agreement being calculated upon the date of service of the limited Objection. | **Adjourned**. |

---

[2] The Objections contemplated in this section relate solely to the Debtors' assumption of certain contracts or unexpired leases and the cure amounts associated therewith. While the Debtors are not addressing such Objections at this time, they will continue to work with the respective counterparties to resolve such Objections in the ordinary course pursuant to § 8 of the Amended Plan.