**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | ) ) | Chapter 11 |
| KABBAGE, INC. d/b/a KSERVICING et al.,[1] | ) ) ) ) | Case No. 22-10951 (CTG) |
| Debtors. | ) ) ) ) | (Jointly Administered)<br>Re: Docket No. 670 |

**DECLARATION OF TAMICA M. WILLIAMS IN FURTHER SUPPORT OF DEBTORS' REPLY IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF AN ORDER ENFORCING THE SETTLEMENT ORDER AND THE SETTLEMENT AGREEMENT BETWEEN KSERVICING AND CUSTOMERS BANK**

I, Tamica M. Williams, declare pursuant to 28 U.S.C. § 1746, under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Corporate Controller of Kabbage, Inc. d/b/a KServicing (the "**Company**" or "**KServicing**") and its affiliated debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), as debtors and debtors-in-possession (collectively, the "**Debtors**"). I have served as the Corporate Controller since November 2021. As Corporate Controller, I establish and implement financial policies and controls, supervise all accounting and financial functions, and prepare financial statements.

2. I submit this reply declaration ("**Williams Reply Declaration**") in further support of the *Debtors' Reply in Support of Motion of Debtors for Entry of an Order Enforcing the Settlement Order and the Settlement Agreement Between KServicing and Customers Bank* filed

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

contemporaneously herewith (the "**Reply**"). I am knowledgeable about and familiar with KServicing's calculation of the final Settlement Payment owed by Customers Bank ("**CB**") pursuant to the *Settlement and Release Agreement*, dated October 27, 2022 [Docket No. 232] (the "**Settlement Agreement**"), as well as the Disputed KServicing Remittance Holdbacks as defined in the Settlement Agreement.[2] Except as otherwise indicated, the facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents and databases that are prepared, maintained and utilized by KServicing in the ordinary course of its business, as well as information provided to me by employees working under my supervision. If called upon to testify, I would testify to the facts set forth in this declaration.

**Current Dispute with CB and the Settlement Agreement**

3. I have already provided extensive detail regarding the Settlement Agreement and the methodology by which KServicing arrived at its Settlement Payment in my first declaration submitted on December 7, 2022.[3]

4. Since then, I have participated in discussions between representatives of CB and the Company to attempt to resolve issues relating to the Settlement Payment owed to the Company. Following those discussions, the only issue remaining concerns the appropriate calculation of "Disputed KServicing Remittance Holdbacks," and, in particular, the amount of funds collected from borrowers that KServicing is required to remit to CB. I referred to funds collected from borrowers that KServicing is required to remit to CB in my prior declaration as the

---

[2] Capitalized terms not defined herein shall have the same meaning as those in the Motion of Debtors for Entry of an Order Enforcing the Settlement Order and the Settlement Agreement Between KServicing and Customers Bank, dated December 7, 2022 ("**Motion**") [Docket No. 340] and the Debtors' Reply, filed contemporaneously herewith.

[3] *Declaration of Tamica M. Williams in Support of Motion of Debtors for Entry of an order Enforcing the Settlement Order and the Settlement Agreement Between KServicing and Customers Bank*, dated December 7, 2022 ("**Williams Declaration**") [Docket No. 341].

2

"Borrower Remittance" amount. Williams Decl. ¶ 19; Settlement Agreement § 1(E). As I understand, the parties have resolved all of the disputes as to the Settlement Payment calculation other than the calculation of the Borrower Remittance amount, which is extensively addressed in my prior declaration at paragraphs 19 through 24.

5. The dispute revolves around the following: In the early stages of the reconciliation process, the Company sent to CB two spreadsheets on November 4, 2022 that contained, among other things, a preliminary list of loans where KServicing had collected money from borrowers that still needed to be returned to CB. This amount of Borrower Remittances was to be deducted from the $58 million Settlement Amount because KServicing was holding (and would return to CB as part of the Settlement) amounts paid by Borrowers that still needed to be paid to CB.

6. It is clear from the declaration submitted by Alyssa White with CB's opposition papers that CB took the Borrower Remittance amount in its calculation straight from these November 4, 2022 spreadsheets. White Decl. ¶ 11(b) ("Customers Bank accepted those figures and the Reconciliation Summary at Exhibit 1 uses both of those figures in reaching the line item 'Total Borrower Remittance Payments (P&I).'"); White Decl., Ex. 1.

7. As set forth in my prior declaration, however, it is now clear that the preliminary list of loans for which KServicing had collected money from borrowers that still needed to be returned to CB needed to be updated to reflect that KServicing had already paid CB back with respect to five (5) loans. Those repayment amounts were not reflected in the November 4, 2022 spreadsheets because we were not aware of the repayment at the time, as I indicated in my prior declaration. In total, the amount previously paid back to CB (and for which CB needs to increase its Settlement Payment) is $1,555,656.

8. This issue is straightforward. As discussed below, the five (5) loans at issue are expressly contained in the November 4, 2022 spreadsheet that CB used for its Borrower Remittance amount, but were reflected as not having been paid to CB. Yet, we now know that the money received from borrowers with respect to these loans was already paid to CB. If the Court were to adopt CB's Settlement Payment calculation, CB would receive the $1,555,656 twice: once when it was paid in the usual course of business back in October 2020 and once in connection with the Settlement Payment.

**Borrower Remittances Paid to CB from KServicing's Former Wells Fargo Account**

9. On November 4, 2022, as part of the reconciliation process, KServicing sent to CB two spreadsheets related to the borrower remittance holdback issue: (1) Synovus account analysis_11.4.22 (the "**Synovus Repayment File**") and (2) Customers Bank remittance file Kservice 10.3.22_11.4.22 (the "**CB Remittance File**").

10. The Synovus Repayment File is actually an excel workbook titled "Synovus account analysis_11.4.22." In her Declaration, Ms. White refers to this Synovus excel workbook as the "Synovus account analysis." White Decl. ¶ 11(b).[4] The complete "Synovus account analysis_11.4.22" workbook is attached as **Exhibit A** hereto.

11. The Synovus Repayment File shows in its Summary tab "Borrower repayments per remittances file" of $26,608,962. That $26,608,962 figure, as noted in the Summary tab, came directly from the CB Remittance File sent to CB on the same day.

12. The "CB Remittance File" is another excel workbook titled "Customers Bank remittance file Kservice 10.03.22_11.4.22," and is attached as **Exhibit B** hereto. KServicing

---

[4] Ms. White attached two tabs from the workbook as Exhibit 3A to her Declaration, *see* White Decl., Ex. 3A, although the Synovus workbook includes three tabs.

sent the CB Remittance File to CB, including Ms. White, in an email dated November 4, 2022 at 7:49 PM and is attached as **Exhibit C** hereto. The CB Remittance File contains the list of loans that the Company believed at the time had amounts paid to the Company but were not yet sent to CB. The amount paid by borrowers on these loans as set forth in the CB Remittance File is $26,608,962**.** From the CB Remittance File (which is a typical excel spreadsheet), the total amount of $26,608,962 can be separated into two categories: Borrower Principal Repayments and Returns per Remittance File ($25,578,633) and the Interest Collected ($1,030,328).

13.    In CB's calculation of the Settlement Payment (Exhibit 1 to Ms. White's Declaration), CB simply copied the "Borrower Principal Repayments and Returns per Remittance File – $25,578,633" and the "Interest Collected – $1,030,328." *See* White Decl., Ex. 1; White Decl. ¶ 10. In other words, CB's Settlement Payment calculation took these numbers directly from the CB Remittance File. Below are the highlighted categories from CB's Settlement Payment calculation attached as Exhibit 1 to the White Declaration:

| | |
|---|---:|
| Reurned/Cancelled Loans | $3,617,304 |
| Reurned/Cancelled Loans in Remittance Report | ($426,258) |
| Additional Loans not Disbursed (per Danny) | $35,899 |
| **Adjusted Returned/Canceled Loans** | **$3,226,945** |
| | |
| Borrower Principal Repayments and Returns per Remittance File | $25,578,633 |
| Interest Collected | $1,030,328 |
| Reported Remittance Account Variance | $497,900 |
| **Total Borrower Remittance Payments (P&I)** | **$27,106,862** |
| | |
| Adjusted Returned/Cancelled Loans | $3,226,945 |
| Total Borrower Remittance Payments (P&I) | $27,106,862 |
| Fees Owed to SBA (Borrower Overpayments) | ($1,150,513) |
| **Disputed KServicing Remittance Holdbacks** | **$29,183,294** |
| | |
| **Disputed KServicing Fee Holdbacks** | **$8,317,023** |
| | |
| Disputed KServicing Remittance Holdbacks | $29,183,294 |
| Disputed KServicing Fee Holdbacks | $8,317,023 |
| **Disputed KServicing Holdbacks** | **$37,500,317** |
| | |
| Negotiated Receivable | $58,000,000 |
| Disputed KServicing Holdbacks | ($37,500,317) |
| **Settlement Payment** | **$20,499,683** |

5

RLF1 28733970v.1

14.     However, as I discussed above and in my prior declaration, certain payments received from borrowers with respect to five (5) loans listed in the CB Remittance File (with amounts showing as owed to CB) had already been paid to CB in an earlier payment back in October 2020. *See* Williams Reply Decl., Ex. B, at pp. 3, row 7213; *id*. at pp. 4, rows 10775, 10780; *id*. at pp. 5, rows 18411, 18413, 18414.

15.     As I described in the Williams Declaration, after KServicing sent the two files to CB on November 4, 2022, I learned on November 10, 2022 that the company's former CFO, Mr. Eidson, had already paid these amounts to CB. These payments were reflected in a file prepared by the former CFO. This was not a "secret" file as CB asserts, but instead one that was sent to CB over two years ago.  Specifically, Mr. Eidson sent an email to CB on October 21, 2020 that attached that file, along with a wire transfer record from the Company's Wells Fargo account, that showed that on October 21, 2020 KServicing paid to CB an amount that included $1,555,656 on account of the five (5) specific loans that are listed in Exhibit 5 to the Williams Declaration. This file lists payments on the same five (5) loans that are reflected in the CB Remittance File as highlighted below. For clarification, there are only four (4) rows highlighted in Mr. Eidson's file (*see* Williams Decl., Ex. 2), pictured below, but the CB Remittance File includes two line items for one SBALoanID number (*see* Ex. B, at pp. 5, rows 18413, 18414).

| Key-AcctID + SBA Loan | SBALoanI | OriginationDa | LoanAmount | AccountID | OutstandingPrincipa | OutstandingPrincipa | Master Bal by SBA Loan | var | Iter | Amt Returne |
|---|---|---|---|---|---|---|---|---|---|---|
| 18366618634997301 | 8634997301 | 5/1/2020 | 1,250,925.00 | 1836661 | - | - | 1,250,925.00 | 1,250,925.00 | 1 | 1,250,925.00 |
| 17980749151577707 | 9151577707 | 5/8/2020 | 1,146,133.00 | 1798074 | 41,791.27 | 41,791.27 | 1,146,133.00 | 1,104,341.73 | 1 | 1,108,235.45 |
| 22449592948317901 | 2948317901 | 6/12/2020 | 360,202.00 | 2244959 | 917.77 | 917.77 | 360,202.00 | 359,284.23 | 1 | 360,202.00 |
| 19377479351437302 | 9351437302 | 5/3/2020 | 266,708.00 | 1937747 | 219.21 | 219.21 | 266,708.00 | 266,488.79 | 1 | 266,708.00 |
| 18811542052838004 | 2052838004 | 6/23/2020 | 121,531.00 | 1881154 | - | - | 121,531.00 | 121,531.00 | 1 | - |
| 17732149034347709 | 9034347709 | 5/4/2020 | 99,574.00 | 1773214 | - | - | 99,574.00 | 99,574.00 | 1 | - |
| 14139319024317707 | 9024317707 | 5/4/2020 | 85,251.00 | 1413931 | - | - | 85,251.00 | 85,251.00 | 1 | 85,251.00 |
| 17975939237017704 | 9237017704 | 5/10/2020 | 82,054.00 | 1797593 | 139.38 | 139.38 | 82,054.00 | 81,914.62 | 1 | 82,054.00 |
| 20894032507857403 | 2507857403 | 5/16/2020 | 79,625.00 | 2089403 | 21,950.00 | 21,950.00 | 79,625.00 | 57,675.00 | 1 | 57,675.00 |
| 17747428999147710 | 8999147710 | 5/5/2020 | 78,739.00 | 1774742 | 133.75 | 133.75 | 78,739.00 | 78,605.25 | 1 | 78,739.00 |
| 18815252310827401 | 2310827401 | 5/6/2020 | 73,163.00 | 1881525 | 20,513.00 | 20,513.00 | 73,163.00 | 52,650.00 | 1 | 52,650.00 |
| 17835516710777908 | 6710777908 | 6/17/2020 | 72,587.00 | 1783551 | - | - | 72,587.00 | 72,587.00 | 1 | - |
| 21409436126077410 | 6126077410 | 5/15/2020 | 64,203.00 | 2140943 | - | - | 64,203.00 | 64,203.00 | 1 | 64,203.00 |
| 21820233322887802 | 3322887802 | 6/10/2020 | 62,500.00 | 2182023 | - | - | 62,500.00 | 62,500.00 | 1 | - |
| 22985727842537902 | 7842537902 | 6/18/2020 | 59,867.00 | 2298572 | - | - | 59,867.00 | 59,867.00 | 1 | 59,867.00 |
| 19386756981777910 | 6981777910 | 6/17/2020 | 58,659.00 | 1938675 | - | - | 58,659.00 | 58,659.00 | 1 | 18,131.00 |
| 18823097554967908 | 7554967908 | 6/18/2020 | 56,124.00 | 1882309 | - | - | 56,124.00 | 56,124.00 | 1 | - |
| 17731726981697910 | 6981697910 | 6/18/2020 | 45,354.00 | 1773172 | - | - | 45,354.00 | 45,354.00 | 1 | - |
| 17443266915157903 | 6915157903 | 6/20/2020 | 41,182.00 | 1744326 | - | - | 41,182.00 | 41,182.00 | 1 | - |
| 17716629014817700 | 9014817700 | 5/4/2020 | 37,299.00 | 1771662 | - | - | 37,299.00 | 37,299.00 | 1 | 37,299.00 |
| 18761876912327900 | 6912327900 | 6/17/2020 | 34,179.00 | 1876187 | - | - | 34,179.00 | 34,179.00 | 1 | 20,235.00 |
| 17799557111337200 | 7111337200 | 5/9/2020 | 33,481.00 | 1779955 | - | - | 33,481.00 | 33,481.00 | 1 | 33,481.00 |
| 18913876024507309 | 6024507309 | 5/6/2020 | 33,056.00 | 1891387 | - | - | 33,056.00 | 33,056.00 | 1 | 33,056.00 |

16.     Moreover, the amount shown as paid on the Wells Fargo transfer confirmation is the same amount as the total of the loans in the file sent by Mr. Eidson to CB on October 21, 2020. In other words, there is no doubt that these amounts on these five (5) loans were paid to CB.

17.     Following my review of the Company's bank statements, the Synovus Repayment File, and wire transfer records (including certain Wells Fargo transfer records), I determined that this October 21, 2020 payment to CB included an amount of $1,555,656 on account of borrower payments associated with these five specific loans. Those payments were not reflected in the Synovus Repayment File nor in the CB Remittance File that were sent to CB on November 4, 2022. *See* Williams Decl. ¶ 22; Williams Decl., Exs. 3–5.[5]

18.     Therefore, to properly calculate the Settlement Payment, the $1,555,656 already paid to CB on these five (5) loans must be deducted from the Disputed KServicing Remittance Holdback because it was no longer owed to CB. A reconciliation of CB's calculation

---

[5] The CB Remittance File improperly reflects that the Company CB still owed to CB an amount of $1,614,611.83 on account of borrower payments on these same five (5) loans. As a result of the October 21, 2020 payment to CB of $1,555,656, KServicing then only owed CB the $58,955.83 for those five loans. *See* Williams Decl., Ex. 5.

and the proper calculation is set forth as **Exhibit D**. It shows that the amount still owed by CB on the Settlement Payment is **$1,555,656.**

## Other Issues

19. There are a few other issues raised in CB's opposition that I would like to address relating to the Settlement Payment. CB appears to argue that because the payments on the five (5) loans discussed above were made out of a Wells Fargo account instead of the Synovus account they somehow do not count. I am perplexed by this assertion. The fact that the Company remitted to CB the amounts paid by borrowers on these five (5) loans (which loans were included by CB as part of its Borrower Remittance calculation as not having been remitted) from a Wells Fargo account does not change the fact that the money was paid to CB.

20. Indeed, the payments on these five (5) loans occurred before the Synovus account was being used. Soon after the closing of the AmEx Transaction (and as a result of that transaction), KServicing terminated its relationship with Wells Fargo and opened new accounts with Synovus Bank, which KServicing maintains today. KServicing therefore only began using the Synovus Bank account in November 2020. Prior to that transition, the Wells Fargo bank account was the operating account for KServicing.

21. I also want to address the work conducted by Ms. White as set forth in paragraphs 23 and 24 of her declaration. She appears to describe an analysis of comparing what she refers to as a loan balance with something she refers to as the "trial balance". I have two observations and comments on Ms. White's analysis. First, nothing in Ms. White's analysis alters the loan-by-loan calculation of the Borrower Remittance amount that CB <u>admittedly used</u> in its Settlement Payment calculation and the fact that payments by borrowers with respect to five (5) of the loans reflected on that list were already paid by the Company to CB.

22. Second, I am unable to understand from paragraphs 23 and 24 of the White declaration what analysis was performed or what information was used to conduct this analysis. After asking CB for support, CB only provided a one-page demonstrative of its calculation without any backup or other information from which we can re-create or understand what analysis was actually performed. Even though CB provided the one-page demonstrative that appears to be an excerpt from an excel file, CB has not provided any detail or backup to aid in the understanding of what it says is a trial balance calculation. I understand that CB has not provided any additional information about this calculation, such as, for example, the trial balance record that CB continues to reference or any of the sources listed on its one-page calculation.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: March 13, 2023
       Atlanta, Georgia

                                               /s/ *Tamica M. Williams*
                                               Tamica M. Williams