## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------- x

In re                         :      **Chapter 11**

KABBAGE, INC. d/b/a KSERVICING, *et al.*,  :      **Case No. 22-10951 (CTG)**

                            :      **(Jointly Administered)**

         Debtors.[1]       :      Re: Docket No. 670

-------------------------------------------------------- x

### DECLARATION OF DONNA R. EVANS IN FURTHER SUPPORT OF DEBTORS' REPLY IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF AN ORDER ENFORCING THE SETTLEMENT ORDER AND THE SETTLEMENT AGREEMENT BETWEEN KSERVICING AND CUSTOMERS BANK

I, Donna R. Evans, declare pursuant to 28 U.S.C. § 1746, under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am the Vice President of Operations of Kabbage, Inc. d/b/a KServicing (the "**Company**" or "**KServicing**") and its affiliated debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), as debtors and debtors-in-possession (collectively, the "**Debtors**"). I started working with KServicing in August 2021. Starting on October 25, 2021, I served in the role of Senior Director of Operations. On September 30, 2022, my title changed to Vice President of Operations.

2.      I submit this declaration in support of the Debtors' motion to enforce the settlement agreement with Customers Bank ("**CB**").[2] I am knowledgeable about, and familiar

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] Capitalized terms not defined herein shall have the same meaning as those in the Motion of Debtors for Entry of an Order Enforcing the Settlement Order and the Settlement Agreement Between KServicing and Customers Bank, dated December 7, 2022 [Docket No. 340] (the "**Motion**") and the Debtors' reply in support of the Motion, filed contemporaneously herewith.

with, the Settlement Agreement and the subsequent reconciliation process.  Except as otherwise indicated, the facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents and databases, as well as information provided to me by employees working under my supervision or direction.  If called upon to testify, I would testify to the facts set forth in this declaration.

### Loan Trial Balances

3.    I have reviewed and am familiar with the opposition of CB to the Motion and the accompanying declaration of Alyssa White. *See Opposition of Customers Bank to Debtor's Motion for an Order Enforcing the Settlement Order and Settlement Agreement Between KServicing and Customers Bank*, (Dec. 21, 2022) [Docket No. 356] (the "**Opposition**"); *Declaration of Alyssa White in Support of Opposition of Customers Bank to Debtor's Motion for an Order Enforcing the Settlement Order and Settlement Agreement Between KServicing and Customers Bank*, (Dec. 21, 2022) [Docket No. 358] (the "**White Declaration**"). CB states in its Opposition that, "[i]n determining the Settlement Payment, Customers Bank considered not just the calculation of borrower remittances and cancelled loans in isolation, but also in terms of the entire trial balance of its portfolio of loans that the Debtor is servicing." *See* Opposition, ¶ 26. I have also reviewed the White Declaration with respect to this supposed "trial balance" analysis as well as a one-page document provided by CB concerning this analysis. *See* White Decl. ¶¶ 23-24. It is entirely unclear from the papers filed by CB what analysis was performed and what information CB considered in performing such an analysis. To my knowledge, none of the underlying support for this work was provided to the Company for our review.

4.    While it is unclear what "trial balances" were used by CB, it appears that CB may be using certain trial balance reports provided to CB directly from American Express

("**AmEx**"). As explained below, these AmEx trial balance reports are not reliable, require significant reconciliation, and cannot be blindly relied upon. This is not a new issue. I have spoken with various individuals at CB, including prior to this dispute, about why those trial balance reports are not accurate and require further data and reconciliation.

5.      Prior to the merger transaction between Kabbage, Inc. and AmEx (the "**AmEx Transaction**"), CB relied on automatically generated reports of loan trial balances that reflected the total PPP portfolio that was being serviced by Kabbage for CB.  Prior to the AmEx Transaction, these trial balance reports were generated by Kabbage.

6.      Following the AmEx Transaction, the trial balance reports were maintained by AmEx, over which KServicing has no control. Unfortunately, our experience has been that these post-transaction reports generated by AmEx are inaccurate in various ways. For example, these reports do not include a large number of transactions and some of the transactions they do include are not properly identified with the accurate transaction codes.

7.      This issue of the unreliability of the AmEx reports has been the subject of numerous discussions between CB and KServicing, particularly in weekly meetings during September and October 2022. Indeed, at these meetings, CB representatives have recognized the flaws in the AmEx reports and have worked with KServicing representatives, including myself, to determine whether there was a way to implement an automated update that would layer KServicing data on top of the AmEx trial balances. However, we determined that combining systems between AmEx and KServicing would be either impossible or impractical.

8.      CB's recognition that the AmEx data needs to be reconciled and corrected was also reflected in the "Servicing Plan Reports" described in Exhibit A to the Settlement Agreement. That Exhibit A states that

Daily Trial Balance Reports will continue to be generated automatically each business day from the CoreCredit system of record maintained by American Express in the format such reports are current[ly] prepared. A supplemental report will be provided each business day for the entire originated portfolio that provides the bank total balance reflecting all payment types (*i.e.*, remittance, guaranty, forgiveness, return, fraud recovery, etc.). KServicing will perform reconciliation and implement appropriate controls to ensure data sets are harmonized.  Settlement Agreement, Ex. A, ¶ 2.

9.     Thus, while it is unclear what information has been used by CB to perform its "trial balance" analysis set forth in Alyssa White's declaration, if CB used the AmEx data as the basis for such an analysis, any such analysis would be inherently inaccurate and unreliable.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: March 13, 2023
         Atlanta, Georgia

/s/ Donna R. Evans
Donna R. Evans