## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

CRAIG T. GOLDBLATT  
JUDGE



824 N. MARKET STREET  
WILMINGTON, DELAWARE  
(302) 252-3832

March 15, 2023

**VIA CM/ECF**

  Re: *In re Kabbage Inc.*, No. 22-10951

Dear Counsel:

  The debtors in these bankruptcy cases operated an online loan servicing business. The debtors sold most of their assets to American Express in October 2020. In these bankruptcy cases, they have largely sought to wind down their remaining assets, the largest portion of which were loans issued to small businesses under the Paycheck Protection Program.

  This Court held a confirmation hearing on March 13, 2023. On account of the parties' very good work, all of the objections to confirmation filed by creditors were resolved prior to the hearing. The U.S. Trustee, however, objected to confirmation on the ground that the plan improperly granted a discharge to a liquidating debtor in violation of 11 U.S.C. § 1141(d)(3). Following a bench ruling by this Court, the debtors agreed to modify the plan so that it provides for a temporary injunction that only remains in place so long as the post-confirmation entities hold assets. Once it is clear that those entities are empty shells, the temporary injunction will terminate. Such a temporary injunction does not violate § 1141(d)(3). The parties submitted a form of plan and confirmation order that conformed to this ruling. The Court has entered that order.[1] This letter ruling is intended to supplement the reasoning set forth in the Court's bench ruling.

  While the plan provides for the liquidation of the debtors, it does not create a separate post-confirmation liquidating trust that would be eligible to take free and clear title to the debtors' assets under § 1141(c). Instead, those assets remain with

---

[1] D.I. 680 (the "Confirmation Order").

the legal entities that consisted of the prepetition debtors, which are referred to after the effective date of the plan as the Wind Down Estates. Those entities are directed by the Wind Down Officer.

Because the legal entities that made up the prepetition debtors will not end up as corporate shells upon the effective date but will instead hold assets that are intended to be distributed to creditors under the plan, the parties had good reason to protect the debtors and the Wind Down Estates from the holders of prepetition claims who might seek to defeat the operation of the plan by taking action against the post-bankruptcy entities on account of their prepetition claims.

As originally drafted, § 10.3(b) of the plan sought to guard against that risk by providing that "all Entities who have held, hold, or may hold Claims against or Interests in the Debtors … are permanently enjoined, on and after the Effective date" from, among other things, "commencing, conducting, or continuing … any suit … of any kind … against or affecting the Debtors, the Wind Down Estates, or the Wind Down Officer, as applicable."[2] The difficulty with this language, however, is that (as § 10.3(f) acknowledged) the debtors are liquidating and thus ineligible for a discharge under § 1141(d)(3). Accordingly, the plan states that nothing therein shall "grant the Debtors a discharge pursuant to section 1141(d) of the Bankruptcy Code."[3]

The U.S. Trustee objected to confirmation, correctly pointing out that the language of the plan injunction was materially identical to the language of § 524(a)'s discharge injunction and was thus the functional equivalent of the discharge to which the debtors were not entitled.[4] In response, the debtors acknowledged that they are ineligible for a discharge under § 1141(d) but argued that the provisions of their plan, operate as an injunction rather than a discharge. As such, the debtors argued (pointing to a handful of bench rulings in prior cases), the injunction was appropriate even if it amounted to a "de facto" discharge.[5]

This Court has serious concerns about the propriety of granting relief that is the functional equivalent of a discharge to a debtor that is ineligible for a discharge on the ground that the parties affixed a different label to it. The heart of the equitable authority of bankruptcy courts, Justice Douglas taught in *Pepper v. Litton*, is "that

---

[2] D.I. 627 § 10.3(b).

[3] *Id.* § 10.3(f).

[4] D.I. 590.

[5] D.I. 637 at 74-77.

substance will not give way to form."[6] Otherwise put, bankruptcy law will treat as a duck that which quacks like a duck.

More fundamentally, though, this was a problem to which there was a ready solution that would avoid doing any violence to bankruptcy principles. *Collier*'s explains that the reason § 1141(d)(3) prohibits a liquidating debtor from receiving a discharge is that corporate debtors in chapter 7 do not receive a discharge, and § 1141(d)(3) prevents "debtors from avoiding the operation of section 727(a)(1) through the use of a liquidating plan under chapter 11 instead of a chapter 7 liquidation."[7] And the "policy behind [§ 727(a)(1)] is the prevention of trafficking in corporate shells…. A corporation may obtain relief from its debts through dissolution. But it does not need relief if it no longer has any assets."[8]

The debtors here, of course, do not need injunctive protection once they no longer have any assets. Their only concern was preventing creditors from acting against the post-effective date entities while they *do* have assets. The debtors have no interest in "trafficking in corporate shells." Once the entities have distributed their assets in accordance with the plan, and are reduced to corporate shells, there is no longer any need to protect them.

The readily available solution, therefore, is to afford those entities not *permanent* injunctive relief, but rather *temporary* injunctive relief that will remain in effect only as long as those entities hold assets. Counsel for the U.S. Trustee agreed (appropriately) that if the injunctive relief enjoyed by the debtors and the Wind Down Estates is temporary rather than permanent, it is not the functional equivalent of a discharge, and the granting of such relief would not run afoul of § 1141(d)(3) or the purposes it serves.

The plan has thus been revised to so provide that the relief afforded to the debtors and the Wind Down Estates is temporary rather than permanent. The Court is satisfied that this is precisely the type of interstitial, gap-filling authority that § 105(a) was intended to authorize. To be sure, the Supreme Court made clear in *Law v. Siegel* that § 105(a) did not grant bankruptcy courts the authority to grant relief that directly contradicted the express text of the Bankruptcy Code.[9] And the

---

[6] *Pepper v. Litton*, 308 U.S. 295, 305 (1939).

[7] 8 *Collier on Bankruptcy* ¶ 1141.05[4] (16th ed. 2022).

[8] 6 *Collier on Bankruptcy* ¶ 727.01[3] (16th ed. 2022).

[9] *Law v. Siegel*, 571 U.S. 415, 421 (2014) ("[A] bankruptcy court may not contravene specific statutory provisions. It is hornbook law that § 105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code. Section 105(a) confers authority to carry out the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits.") (internal citations omitted).

*In re Kabbage, Inc.*, No. 22-10951
March 15, 2023
Page 4 of 4

import of *Jevic* is that bankruptcy courts' equitable discretion is limited not only by what the Bankruptcy Code says expressly, but also by reasonable inferences that one might draw about Congress' intent from the Bankruptcy Code's language, structure and principles.[10] But there is neither an express nor implicit prohibition on imposing a temporary injunction against actions by creditors that would undermine the operation of the plan. Because the injunction will expire once the debtors' entities are corporate shells, this injunction is not inconsistent in any way with the underlying purposes of §§ 1141(d)(3) or 727(a). The Court is thus satisfied that the revised injunction provided in § 10.3 of the plan operates to "carry out" the provisions of the Bankruptcy Code and is thus a proper exercise of the authority provided in 11 U.S.C. § 105(a). The Court has thus entered the Confirmation Order as revised.

                                    Sincerely,

                                    Craig T. Goldblatt
                                    United States Bankruptcy Judge

---

[10] *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464-469 (2017).