**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------------- x
In re                                                                       :     Chapter 11
                                                                                :
**KABBAGE, INC. d/b/a KSERVICING,** *et al.*,        :     Case No. 22-10951 (CTG)
                                                                                :
                                                                                :     **(Jointly Administered)**
**Debtors.**[1]                                                        :     Hearing: April 13, 2023 at 10:00 a.m.
---------------------------------------------------------------- x     Obj. Deadline: April 6, 2023 at 4:00 p.m.

**DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING AND APPROVING THE LOAN TRANSFER
AGREEMENT BETWEEN KSERVICING, LENDISTRY SBLC, LLC, AND THE
FEDERAL RESERVE BANK OF SAN FRANCISCO; (II) AUTHORIZING DEBTORS
TO TAKE ALL ACTIONS TO FACILITATE TRANSFER OF CERTAIN SERVICING
RIGHTS AND OBLIGATIONS; AND (III) GRANTING RELATED RELIEF**

Kabbage, Inc. d/b/a KServicing (the "**Company**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully move and represent as follows in support of this motion (this "**Motion**"):[2]

**Preliminary Statement**

1. This Motion seeks relief necessary to implement the Plan, which was confirmed by order of this Court [Docket No. 680] (the "**Confirmation Order**") on March 15, 2023. The relief requested herein was also contemplated by the Confirmation Order, including paragraph 7 thereof, which provides that the Debtors are to transfer the title of the Pledged PPPLF Loans that have not been fully forgiven or guarantee repurchased by the U.S. Small Business

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] Capitalized terms used and not defined herein have the meanings given to them in the *Amended Joint Chapter 11 Plan of Kabbage, Inc. (d/b/a KServicing) and Its Affiliated Debtors* [Docket No. 627] (as may be amended, modified, supplemented, or restated, the "**Plan**") or the Loan Transfer Agreement (as defined herein), as applicable.

Administration (the "**SBA**") or fully repaid by the borrower (the "**Active Pledged PPPLF Loans**" or the "**Transferred Loans**") to a third party loan servicer selected by the Reserve Bank.[3]

2. Throughout the course of the Chapter 11 Cases, the Company has engaged in negotiations with the Federal Reserve Bank of San Francisco (the "**Reserve Bank**" or "**FRB-SF**") regarding the transfer of the Active Pledged PPPLF Loans (the "**PPPLF Transfer**" or the "**Transfer**") and the transition of their associated servicing obligations to an alternate, third-party servicer (the "**PPPLF Transition**," and together with the PPPLF Transfer, the "**Transaction**"). After the Reserve Bank selected Lendistry SBLC, LLC ("**Lendistry**," and together with the Company and the Reserve Bank, the "**Parties**") as an alternate servicer in February 2023, the Parties engaged in iterative, arm's-length negotiations to document the transfer of the title. These negotiations culminated in documenting terms and conditions of the Transaction in the Loan Transfer Agreement (the "**Loan Transfer Agreement**") attached to the Proposed Order (as defined below) as **Exhibit 1**.

3. The Company worked closely with its advisors throughout the negotiation of the Loan Transfer Agreement, which facilitates a complete and orderly transfer of the Active Pledged PPPLF Loans[4] and a smooth transition of their ongoing servicing. The continued servicing of the Active Pledged PPPLF Loans is of critical importance to the small businesses to which the PPPLF Loans were issued (collectively, the "**Borrowers**"). Accordingly, the relief requested herein is essential to ensure the Active Pledged PPPLF Loans will continue to be

---

[3] For the avoidance of doubt, this Motion does not seek to transfer any Pledged PPPLF Loans that have been fully forgiven or guarantee repurchased by the SBA, fully repaid by the borrower, pre-paid in full by KServicing, or KS Direct PPP Loans (i.e., "inactive" loans), which ultimately will be transferred to the SBA.

[4] The Active Pledged PPPLF Loans to be transferred pursuant to the Loan Transfer Agreement are listed on Exhibit A of the Servicing Agreement (as defined in the Loan Transfer Agreement), which exhibit may be amended prior to the Closing Date.

RLF1 28774214v.1

serviced with minimal interruption by transferring them to another servicer as contemplated by the confirmed Plan and the Confirmation Order.

## Relief Requested

4. By this Motion, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"):

   a. approving the Loan Transfer Agreement and authorizing the Debtors to enter into such agreement;

   b. authorizing the Debtors to take any actions reasonably necessary to immediately begin to facilitate the Transaction in accordance with the Loan Transfer Agreement;

   c. authorizing consummation of the Loan Transfer Agreement on a date mutually agreed to by the Parties; and

   d. granting related relief.

5. In support of the relief requested herein, the Debtors have filed the *Declaration of Salim Kafiti in Support of Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Loan Transfer Agreement Between KServicing, Lendistry SBLC, LLC, and the Federal Reserve Bank of San Francisco; (II) Authorizing Debtors to Take All Actions to Facilitate Transfer of Certain Servicing Rights and Obligations; and (III) Granting Related Relief* (the "**Loan Transfer Agreement Declaration**") contemporaneously herewith.

## Jurisdiction and Venue

6. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy

3

RLF1 28774214v.1

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

7. On October 3, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors are authorized to continue to operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

8. Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), these Chapter 11 Cases are being jointly administered under the above captioned case.

9. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Deborah Rieger-Paganis in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 13] (the "**First Day Declaration**") and the Disclosure Statement.

10. On March 15, 2023, the Court entered the Confirmation Order, thereby confirming the Plan. The Plan provides for an orderly transfer of the Debtors' PPP Loan servicing obligations and final wind down of the Debtors' estates for the benefit of all stakeholders.

11. In furtherance of the Plan and the Confirmation Order, the Debtors have determined, in their business judgment, to enter into the Loan Transfer Agreement and to transfer

the Transferred Loans and their associated servicing obligations to Lendistry—the Reserve Bank's chosen alternative servicer in accordance with the Loan Transfer Agreement.

12. As contemplated in the Plan, the Debtors have already undertaken significant efforts to effectuate the transition of all the Debtors' servicing obligations (the "**Transition**"). *See Declaration of Laquisha Milner in Support of Confirmation of Amended Joint Chapter 11 Plan of Liquidation of Kabbage, Inc. (d/b/a Kservicing) and Its Affiliated Debtors* [Docket No. 636]. These efforts are ongoing, and the Debtors continue to make strides in effectuating the Transition.

13. For the Plan to go effective, the PPPLF Transition must be performed to the satisfaction of the Reserve Bank. Plan § 9.1(g). The PPPLF Transition is an essential part of the overall Transition and the Debtors' wind down and consummation of the Plan; any delay of the PPPLF Transition could put the consummation of the Plan at risk. Accordingly, the Debtors respectfully request the authority to continue to effectuate the PPPLF Transition consistent with the Plan, in furtherance of the Confirmation Order, and pursuant to the Loan Transfer Agreement.

**Basis for Relief**

**I.  Entering into the Loan Transfer Agreement Represents the Exercise of Sound Business Judgment by the Debtors and Should Be Approved.**

14. Section 363 of the Bankruptcy Code authorizes a debtor to engage in transactions other than in the ordinary course of business and provides, in relevant part: "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1). To the extent entry into the Loan Transfer Agreement constitutes a transaction outside the ordinary course of the Debtors' business or a transfer by the Debtors of their assets, the Debtors seek authority under section 363 of the Bankruptcy Code to consummate the Loan Transfer Agreement.

15. Courts approve transactions pursuant to section 363 of the Bankruptcy Code if the transaction represents the reasonable and sound business judgment of the debtor. *See, e.g., In re Dura Automotive Sys., Inc.*, Case No. 06-11202 (KJC), 2007 WL 7728109, at *92 (Bankr. D. Del. Aug. 15, 2007) ("[B]ankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor."); *In re Decora Indus., Inc.*, Case No. 00-4459 (JJF), 2002 WL 32332749, at * 2 (Bankr. D. Del. May 20, 2002) ("Generally, a debtor may sell assets outside the ordinary course of business when it has demonstrated that the sale of such assets represents the sound exercise of business judgment."); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith.").

16. If a valid business justification exists for a transaction, as it does here, a debtor's decision enjoys a strong presumption "that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Therefore, any party objecting to the Debtors' proposed transfer must make a showing of "bad faith, self-interest, or gross negligence." *In re Integrated Res., Inc.*, 147 B.R. at 656 (citing *Smith v. Van Gorkom*, 488 A.2d at 872–73); *see also Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

17. Here, there is a valid business justification to enter into the Loan Transfer Agreement and transfer the Transferred Loans and such determination is in the reasonable and sound business judgment of the Debtors. Most saliently, the Loan Transfer Agreement implements the Plan and Confirmation Order and is part and parcel thereof.

18. The Transaction is contemplated by, and in furtherance of, the Plan and Confirmation Order. Plan §§ 4.3(c) and 5.3(d);[5] Confirmation Order ¶ 7.[6] All parties in interest to the Chapter 11 Cases were made aware of the Transaction as it was expressly provided for in the Plan and Confirmation Order, and without this transfer, the Debtors' ability to consummate the Plan is at risk.

19. Additionally, the Loan Transfer Agreement contemplates a reversionary interest in favor of the Wind Down Estates. The "Plan Reversion Interest"[7] is explicitly not transferred by the Loan Transfer Agreement and remains with the Wind Down Estates. In the event the Reserve Bank Claims are paid in full in cash, the Wind Down Estates retain interests to receive the residual value from the PPPLF Collateral, if any. This mechanism of the Loan Transfer Agreement is incorporated in, and in furtherance of the Plan, which provides,

> For the avoidance of doubt, (x) the Reserve Bank shall not receive Cash in excess of the Reserve Bank Claims and any amounts in excess of the Reserve Bank Claims paid in Cash to the Reserve Bank on account of the Allowed Reserve Bank Claims shall revert to the Wind Down Estates and (y) any Liens on the Pledged PPPLF

---

[5] "In the event the Debtors (or, post-Effective Date, the Wind Down Officer) and the Reserve Bank agree that the PPPLF Collateral will be transferred to the Reserve Bank or its designee in furtherance of Section 4.3(c) hereof, the Debtors or the Wind Down Officer, as applicable, shall enter into, execute and deliver any instruments, documents and agreements that may be reasonably necessary or desirable in order to implement, or otherwise in connection with, the transferring of title to the PPPLF Collateral." Plan § 5.3(d).

[6] "The Debtors shall use commercially reasonable efforts to assist the Reserve Bank . . . to transfer the title to the Pledged PPPLF Loans that as of the date of the transfer shall not have been fully forgiven or guarantee repurchased by the SBA or fully repaid by the borrower in furtherance of such transfer of servicing." Confirmation Order ¶ 7,

[7] "'Plan Reversion Interest' means the interests of the Wind Down Estates (as defined in the Plan) pursuant to Section 4.3(c)(iii) of the Plan to receive cash in excess of the Reserve Bank Claims paid in cash to FRB-SF on account of the Reserve Bank Claims." Loan Transfer Agreement § 1.01.

7

Loans granted to or held in favor of the Reserve Bank shall remain in place and continue on and after the Effective Date.

Plan section 4.3(c)(iii).

## II. The Transfer Should Be Approved "Free and Clear" and with No Successor Liability

20. Under section 363(f) of the Bankruptcy Code, a debtor may sell property "free and clear of any interest in such property of an entity other than the estate" if (i) applicable nonbankruptcy law permits the sale of such property free and clear of such interest; (ii) such entity consents; (iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such interest is in bona fide dispute; or (v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f); *see also In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) [of the Bankruptcy Code] is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *In re P.K.R. Convalescent Ctrs., Inc.*, 189 B.R. 90, 94 (Bankr. E.D. Va. 1995) ("[Section] 363 covers more situations than just sales involving liens . . . Section 363(f) addresses sales free and clear of any interest. . . .").

21. Under section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

22. The approval of the Transfer "free and clear" under section 363(f) of the Bankruptcy Code is appropriate here. The protections and benefits of section 363(f) are integral to the Transfer; as Lendistry and the Reserve Bank would not enter into the Loan Transfer Agreement if the Transfer was not free and clear of all liens, claims, and interests (other than the FRB-SF Interests and the Plan Reversion Interests). The Debtors satisfy the standards for a "free

and clear" transfer under section 363(f).  The Debtors believe that the Reserve Bank is the only holder of a lien, claim, or interest in the Transferred Loans and the Reserve Bank consents to the Transfer.  Accordingly, section 363(f)(2) is satisfied.

### III. Lendistry is Entitled to "Good Faith Purchaser" Protections and the Transfer is Not Subject to Avoidance or Recovery

23. Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith. . . ." 11 U.S.C. § 363(m).

24. The Loan Transfer Agreement contemplates that the Proposed Order will include a finding that Lendistry is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code.  Neither the Bankruptcy Code nor the Bankruptcy Rules attempt to define "good faith," however, "the requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings." *In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986).  The Debtors are entering into the Loan Transfer Agreement after good-faith, arm's-length discussions with Lendistry and the Reserve Bank.  No fraud or collusion occurred or has been alleged in connection with the Loan Transfer Agreement and no common identity of directors or controlling stockholders exists between the Debtors and Lendistry.  Accordingly, the Debtors believe that Lendistry should be entitled to all protections of a "good faith" purchaser under section 363(m) of the Bankruptcy Code.

25. Section 363(n) of the Bankruptcy Code provides that "[t]he trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the

value of the property sold exceeds the price at which such sale was consummated. . . ." 11 U.S.C. § 363(n).

26.     There were no agreements among potential bidders to control the consideration agreed to by the Parties in the Loan Transfer Agreement, and the avoidance and recovery mechanisms of section 363(n) are in no way applicable to the Loan Transfer Agreement. The value of the consideration for the Transfer was negotiated among the Parties and reflects the compromise reached by the Parties, and the Debtors believe the overall exchange of value in the Loan Transfer Agreement is fair, reasonable, and in their best interests.

27.     The Debtors submit that the facts described above, and in the Loan Transfer Agreement Declaration and the First Day Declaration, the Plan, and the record supporting confirmation of the Plan, all support the Transfer of the Transferred Loans in order to provide for the orderly wind down of the estates, maximize value for the estates, and ensure continued servicing of such loans for the benefit of the Borrowers, all of which provide a strong business justification for the transfer.  Therefore, the Debtors believe that it is in the best interests of their estates to enter into the Loan Transfer Agreement and consummate the Transaction contemplated thereby.

28.     For the foregoing reasons, the Debtors submit that the approval of the Loan Transfer Agreement and the Transaction contemplated thereby is appropriate and warranted under section 363 of the Bankruptcy Code.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

29.     To successfully implement the foregoing, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a)

and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h), to the extent such stay applies.

### Notice

30. Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) the Reserve Bank; (d) Customers Bank; (e) Cross River Bank; (f) the United States Department of Justice; (g) the Federal Trade Commission; (h) the Small Business Administration; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the United States Attorney's Office for the District of Delaware; (l) Lendistry; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002. In addition, the Debtors will provide notice of this Motion to the Borrowers of the Transferred Loans in accordance with the *Order (I) Authorizing* the *Debtors to (A) File and Maintain Consolidated Creditor Lists, and (B) Redact Certain Personal Identification Information for Individuals, (II) Approving Special Electronic Noticing Procedures, and (III) Granting Related Relief* [Docket No. 77]. The Debtors believe that no further notice is required.

### No Prior Request

31. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[remainder of page intentionally left blank]*

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: March 23, 2023
Wilmington, Delaware

*/s/ Amanda R. Steele*
RICHARDS, LAYTON & FINGER, P.A.
Daniel J. DeFranceschi (No. 2732)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
E-mail: defranceschi@rlf.com
steele@rlf.com
shapiro@rlf.com
milana@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Candace M. Arthur (admitted *pro hac vice*)
Natasha S. Hwangpo (admitted *pro hac vice*)
Chase A. Bentley (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8000
E-mail:   ray.schrock@weil.com
candace.arthur@weil.com
natasha.hwangpo@weil.com
chase.bentley@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*