UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------------ x
: 
In re : Chapter 11
:
KABBAGE, INC. d/b/a KSERVICING, *et al.*, : Case No. 22-10951 (CTG)
:
Debtors.[1] : (Jointly Administered)
:
: Re: Docket No. 721
:
------------------------------------------------------------ x

DECLARATION OF SALIM KAFITI
IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING AND APPROVING THE LOAN TRANSFER AGREEMENT
BETWEEN KSERVICING, LENDISTRY SBLC, LLC, AND THE FEDERAL RESERVE
BANK OF SAN FRANCISCO; (II) AUTHORIZING DEBTORS TO TAKE ALL
ACTIONS TO FACILITATE TRANSFER OF CERTAIN SERVICING RIGHTS AND
OBLIGATIONS; AND (III) GRANTING RELATED RELIEF

I, Salim Kafiti, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Deputy General Counsel and Assistant Secretary of Kabbage, Inc. d/b/a KServicing ("**KServicing**")[2] and its debtor affiliates in the above-captioned Chapter 11 Cases (collectively, the "**Debtors**"), and have held this position since February 2022. I have more than 20 years of experience serving in legal counsel roles, including as a consultant and attorney supporting the SVP Managing Counsel and Global Contract Team at ADP, Inc.; as Senior

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Amended Plan (defined herein), the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Liquidation of Kabbage, Inc. (d/b/a KServicing) and its Affiliated Debtors* (Docket No. 467) (the "**Disclosure Statement**"), or the concurrently filed *Debtors' (I) Memorandum of Law in Support of Confirmation of Amended Joint Chapter 11 Plan of Liquidation of Kabbage, Inc. (d/b/a KServicing) and Its Affiliated Debtors and (II) Omnibus Reply to Objections Thereto* (the "**Memorandum**"), as applicable.

Associate General Counsel at Electrolux, where I worked for more than 13 years and also held the roles of interim Vice President and General Counsel, Associate General Counsel, Assistant General Counsel and Assistant Secretary; and as an attorney at Jones Day. I hold a Juris Doctor from Case Western Reserve University School of Law. I have also studied business administration at Miami University in Ohio and the University of North Carolina at Charlotte.

2. I submit this declaration (the "**Declaration**") in support of the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Loan Transfer Agreement Between KServicing, Lendistry SBLC, LLC, and the Federal Reserve Bank of San Francisco; (II) Authorizing Debtors to Take All Actions to Facilitate Transfer of Certain Servicing Rights and Obligations; and (III) Granting Related Relief* (the "**Motion**," and the agreement for which the Motion seeks approval, the "**Loan Transfer Agreement**") [Docket No. 721].[3] I have reviewed, and I am generally familiar with, the provisions of the Loan Transfer Agreement.

3. In my capacity as Deputy General Counsel, I am knowledgeable and familiar with the Debtors' day-to-day operations and business affairs, books and records, and these Chapter 11 Cases. Except as otherwise indicated, all facts set forth herein (or incorporated by reference herein) are based upon my personal knowledge, my review of relevant documents and other information, including relevant historical business records of the Debtors and information provided to me by employees and contractors hired by the Debtors and working under my supervision, my duties and responsibilities as Deputy General Counsel for the Debtors, my familiarity with the Debtors' business operations, as well as my discussions with the Debtors'

---

[3] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the *Amended Joint Chapter 11 Plan of Kabbage, Inc. (d/b/a KServicing) and Its Affiliated Debtors* [Docket No. 627] (as may be amended, modified, supplemented, or restated, the "**Plan**"), the Motion, or the Loan Transfer Agreement, as applicable.

board of directors (the "**Board**"), management team ("**Management**"), and advisors. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

4. One essential component of the Plan and Confirmation Order is the PPPLF Transition—the transfer of the Debtors' PPPLF Loan servicing obligations to the Reserve Bank's selected third party servicer, Lendistry, to continue servicing the PPPLF Loans. For consummation of the Plan, the PPPLF Transition must be performed to the satisfaction of the Reserve Bank. A corresponding component of the Plan and Confirmation Order is the PPPLF Transfer—the transfer of title to the Active Pledged PPPLF Loans to the Reserve Bank's designee, Lendistry.

5. As stated above, the Plan was designed to implement a wind down of the Debtors' businesses, and the Debtors' intent, in accordance with the Plan and Confirmation Order, is to discontinue servicing the PPP Loans post-Effective Date. Given the Reserve Bank's first-priority liens on the PPPLF Collateral and the desire of the parties—both the Debtors and the Reserve Bank—to transfer the title to the Active Pledged PPPLF Loans to the Reserve Bank's designee, Lendistry, the Debtors' intent is to effectuate such PPPLF Transfer as part of the larger PPPLF Transition, in accordance with the Plan, Confirmation Order, and applicable bankruptcy law. Put simply, the Plan sets forth the Transaction, and the Loan Transfer Agreement memorializes the Transaction; thus, the Loan Transfer Agreement is an extension of the Plan and Confirmation Order. The Debtors' entry into the Loan Transfer Agreement is in compliance with the Plan and Confirmation Order and is an action in furtherance thereof.

6. Throughout the course of the Chapter 11 Cases, the Company has engaged in negotiations with the Reserve Bank and Lendistry to document the Transaction. These negotiations culminated in documenting terms and conditions of the Transaction in the Loan

Transfer Agreement. No fraud or collusion occurred or has been alleged in connection with the Loan Transfer Agreement and no common identity of directors or controlling stockholders exists between the Debtors and Lendistry. Further, there were no agreements among potential bidders to control the consideration agreed to by the Parties in the Loan Transfer Agreement, and the overall exchange in the Loan Transfer Agreement is fair, reasonable, and in the Debtors' best interests. The Debtors worked closely with their advisors throughout the negotiation of the Loan Transfer Agreement, and are entering into the Loan Transfer Agreement after consideration of viable alternatives and extensive good-faith, arm's-length discussions with Lendistry and the Reserve Bank.

7. Given the purpose and court-approval of the Plan, and the Loan Transfer Agreement being in furtherance of the Plan and Confirmation Order, the Debtors have determined, in their business judgment, to enter into the Loan Transfer Agreement. The Loan Transfer Agreement establishes the terms and conditions of the Transaction and represents a critical step toward satisfying the conditions precedent to Plan consummation. All parties in interest to the Chapter 11 Cases were made aware of the Transaction as it was expressly provided for in the Plan and Confirmation Order, and without the Transaction, the Debtors cannot achieve the conditions precedent. Further, the Debtors believe that the Reserve Bank is the only holder of a lien, claim, or interest in the Transferred Loans and the Reserve Bank consents to the Transfer. If the Debtors are not able to consummate the Plan, the alternative at this time would likely be a possible chapter 7 liquidation, which would be value destructive for all.

8. Additionally, the Loan Transfer Agreement contemplates a reversionary interest in favor of the Wind Down Estates. The Plan Reversion Interest is explicitly not transferred by the Loan Transfer Agreement and remains with the Wind Down Estates. In the

event the Reserve Bank Claims are paid in full in cash, the Wind Down Estates retain interests to receive the residual value from the PPPLF Collateral, if any. Entering into the Loan Transfer Agreement, and effectuating the Transaction pursuant thereto, will minimize liabilities of and maximize value for the Debtors' estates and stakeholders, while to the extent possible, protecting and prioritizing the Borrowers.

9. Based on the foregoing and my professional experience and involvement in the Chapter 11 Cases, I believe that the Loan Transfer Agreement is consistent with the Plan and Confirmation Order, and is the best available option to effectuate the Transaction in accordance therewith. Accordingly, I believe that entry into the Loan Transfer Agreement and the consummation of the Transaction is in the best interests of the Debtors' estates and should be approved.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: March 23, 2023

Charlotte, North Carolina

/s/ *Salim Kafiti*
Name: Salim Kafiti
Title: Deputy General Counsel
Kabbage, Inc. d/b/a KServicing