**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------------ x
: 
In re : Chapter 11
:
KABBAGE, INC. d/b/a KSERVICING, *et al.*, : Case No. 22-10951 (CTG)
:
Debtors.¹ : (Jointly Administered)
:
: **Obj. Deadline: May 12, 2023, at 4:00 p.m. (ET)**
: **Hearing Date: May 25, 2023, at 10:00 a.m. (ET)**
:
------------------------------------------------------------ x

**SECOND MOTION OF DEBTORS PURSUANT TO**
**11 U.S.C. § 1121(d) FOR ENTRY OF AN ORDER (I) EXTENDING**
**THE DEBTORS' EXCLUSIVE PERIODS AND (II) GRANTING RELATED RELIEF**

Kabbage, Inc. d/b/a KServicing and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):²

**Preliminary Statement**

1. After months of hard work and extensive negotiations with their key stakeholders, on March 15, 2023, the Debtors achieved a significant milestone when this Court entered the *Order Confirming Amended Joint Chapter 11 Plan of Liquidation of Kabbage, Inc. (d/b/a KServicing) and its Affiliated Debtors* [Docket No. 680] (the "**Confirmation Order**"), confirming the *Amended Joint Chapter 11 Plan of Liquidation of Kabbage, Inc. (d/b/a KServicing)*

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

² Capitalized terms used in this Motion but not defined herein shall have the meanings ascribed to such terms in the Plan (as defined herein) or the First Day Declaration (as defined herein), as applicable.

*and its Affiliated Debtors* [Docket No. 627] (the "**Plan**"). Following confirmation of the Plan, the Debtors have been focused on transitioning their loan servicing obligations, a process which is near completion, to facilitate the wind down of their business in accordance with the terms of the Plan.

2. Although the Debtors are confident that they will be able to satisfy all of the conditions precedent for the effective date of the Plan (the "**Effective Date**") to occur within the next few weeks, given the complexities of the transition of the Debtors' loan servicing obligations, including external factors such as third-party cooperation that are outside of the Debtors' control and impact the timing of emergence, in an abundance of caution, the Debtors are seeking an additional 90-day extension of the exclusive periods under title 11 of the United States Code (the "**Bankruptcy Code**") to file a chapter 11 plan (the "**Exclusive Filing Period**") and to solicit acceptance thereof (the "**Exclusive Solicitation Period**" and together with the Exclusive Filing Period, the "**Exclusive Periods**"). The Debtors respectfully submit that it is reasonable and appropriate to afford them the limited extension of their Exclusive Periods as they continue to work towards implementing the Plan in an orderly manner.

## Jurisdiction

3. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of

the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

4. On October 3, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors are authorized to continue to operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

5. Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Chapter 11 Cases are being jointly administered under the above captioned case.

6. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Deborah Rieger-Paganis in Support of the Chapter 11 Petitions and First-Day Pleadings* [Docket No. 13] (the "**First Day Declaration**").

7. On February 15, 2023, the Court entered the *Order (I) Extending the Debtors' Exclusive Periods, and (II) Granting Related Relief* [Docket No. 539], granting the Debtors' first request for a 90-day extension of the Exclusive Periods to May 1, 2023 and July 3, 2023, respectively.

8. On March 15, 2023, the Court entered the Confirmation Order, confirming the Plan. The Debtors expect the Effective Date to occur in the next few weeks.

**Relief Requested**

9. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan. *See* 11 U.S.C. § 1121(b) ("Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter."). Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day Exclusive Filing Period, it has a 180-day period from its petition date to solicit acceptance of its plan. 11 U.S.C. § 1121(c)(3). Section 1121(d) of the Bankruptcy Code permits the Bankruptcy Court to extend the Exclusive Periods for "cause".

10. By this Motion, pursuant to section 1121(d) of the Bankruptcy Code, the Debtors request entry of an order (i) extending their Exclusive Periods through and including July 31, 2023 and October 2, 2023, respectively, without prejudice to the Debtors' right to seek additional extensions of such periods, and (ii) granting related relief.

11. A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

**Basis for Relief**

12. Pursuant to section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods "for cause", and debtors may seek extensions of the Exclusive Periods at any time before their expiration.[3] *See* 11 U.S.C. § 1121(d) ("[O]n the request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day

---

[3] The Debtors' current Exclusive Filing Period and Exclusive Solicitation Period are set to expire on May 1, 2023, and July 3, 2023, respectively. This Motion was filed prior to the expiration of the Debtors' current Exclusive Periods; accordingly, such periods are automatically extended until the Court has an opportunity to consider the relief requested in this Motion. *See* Local Rule 9006-2.

4

period referred to in this section."); *see also* Local Rule 9006-2 ("[I]f a motion to extend the time to take any action is filed before the expiration of the period prescribed by the [Bankruptcy Code, Bankruptcy Rules, Local Rules] or Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order."); *In re Matter of CPM Energy Sys., Inc.*, 103 B.R. 508, 508 (Bankr. D. Del. 1989) (noting that an extension request made on the 119th day of the original 120–day period established by statute was timely).

13. The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension of the Exclusive Periods. The legislative history of section 1121 of the Bankruptcy Code indicates, however, that "cause" is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

14. In exercising its broad discretion to determine whether "cause" exists, courts are often guided by a variety of factors. *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying nine factors courts have relied on in determining whether cause exists to extend or terminate exclusivity); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying factors used by courts to determine whether cause exists to extend exclusivity); *see also In re Express One*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (identifying all of the nine factors as relevant in determining whether cause exists to extend exclusivity); *see also In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding

that the debtor showed cause to extend the debtor's Exclusive Periods based upon certain of the nine factors). Those factors include, without limitation:

    i. the size and complexity of the debtor's case;

    ii. the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

    iii. the existence of good faith progress towards reorganization;

    iv. the fact that the debtor is paying its bills as they become due;

    v. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    vi. whether the debtor has made progress in negotiations with its creditors;

    vii. the amount of time which has elapsed in the case;

    viii. whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

    ix. whether an unresolved contingency exists.

15. While the above are relevant factors that courts have historically considered in determining whether to extend a debtor's Exclusive Periods, it is well established that not all of the factors are relevant in every case, and a finding that any one of the factors exist may justify extending a debtor's Exclusive Periods. *See In re Express One Int'l, Inc.*, 194 B.R. at 100 (finding only some of the factors relevant in determining whether cause exists to extend exclusivity); *In re Interco, Inc.*, 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992) (same); *see also In re Dow Corning Corp.*, 208 B.R. 662, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors.").

16. The Exclusive Periods established by Congress were incorporated in the Bankruptcy Code to afford a full and fair opportunity for a debtor to propose a chapter 11 plan and

solicit acceptances of such plan without the deterioration and disruption of a debtor's business that might be caused by the filing of multiple competing plans. Having confirmed the Plan with the support of their key stakeholders, the Debtors are well on their way towards emergence and require only a limited extension of the Exclusive Periods (in an abundance of caution) to allow them a full and fair opportunity to implement and consummate the Plan. Application of the above relevant factors to these Chapter 11 Cases demonstrates that ample cause exists to grant the limited extension of the Exclusive Periods requested herein. Accordingly, an extension of the Exclusive Periods in these Chapter 11 Cases is appropriate, in the best interest of the Debtors' stakeholders, and consistent with the intent and purpose of chapter 11 of the Bankruptcy Code.

I.      **The Debtors' Cases Are Large And Complex**

17.     The size and complexity of a debtor's case alone may constitute cause to extend the Exclusive Periods. The legislative history of section 1121(d) of the Bankruptcy Code provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 208 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963. Similarly, "[t]he large size of the debtor and the consequent difficulty in formulating a plan . . . for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods." *In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987). *See also In re Borders Group, Inc.*, 2011 WL 9155779, *3 (Bankr. S.D.N.Y. June 2, 2011) (citing *In re Texaco, Inc.*, 76 B.R. at 326 and granting an extension of the Exclusivity Periods for 120 days); *In re Adelphia Commc'ns Corp.*, 352 B.R. at 674 (noting that factors constituting "cause" for extension of the Exclusive Periods include "the size and complexity of the case" and "the

necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan.").

18. As discussed in the First Day Declaration, the *Motion of Debtors for Entry of an Order (I) Extending the Debtors' Exclusive Periods and (II) Granting Related Relief* [Docket No. 503], and the Disclosure Statement, the Debtors are an online loan service provider authorized by the Small Business Administration (the "**SBA**") to originate and service certain small business loans under the SBA's Paycheck Protection Program ("**PPP**"). On the Petition Date, the Debtors' loan portfolio contained approximately 48,000 PPP loans with an aggregate outstanding amount of approximately $1.3 billion. The Debtors initiated these Chapter 11 Cases as a company already in wind down after substantially all of their business was purchased by American Express in October 2020. The Debtors' involvement in the PPP and their 2020 transaction with American Express led to a series of highly complex and challenging disputes between the Debtors and numerous parties, including but not limited to, their Partner Banks, the Department of Justice (the "**DOJ**"), the SBA, and American Express. Since the Petition Date, the Debtors have faced multiple government investigations; numerous demands for information; contentious litigation arising from their settlement agreement with Customers Bank ("**CB**"); and complications relating to accessing and transferring certain loan data and documents that are stored across multiple third-party platforms and are integral to the transition of their servicing obligations. In order to develop and ultimately obtain confirmation of the Plan, which the Debtors accomplished in only six months, the Debtors expended significant efforts to bridge competing views, negotiate with their key stakeholders, address a multitude of alleged claims brought by the

DOJ and the SBA, among others, and obtain cooperation from other third-parties to ensure a smooth transfer of their loan servicing obligations.

19. In addition to the foregoing, for the Effective Date to occur the Debtors must complete certain conditions precedent, which include, among other things, the transition of their loan servicing obligations to the satisfaction of the Federal Reserve Bank of San Francisco (the "**Reserve Bank**") and executing certain agreements between multiple different parties. While the Debtors have made substantial progress on completion of the conditions precedent, certain open items remain. Specifically, the transition of the loan servicing obligations requires that the Debtors devote significant time and resources to identify tens of thousands of loan files that are necessary for the transition and identify the location of the loan files. As noted previously, the required loan data is stored on either the Company's platforms or on other third-parties' platforms that are outside of the Debtors' control and require the third-parties' cooperation for the transfer. After identifying the data, the Debtors must separately transfer the files to the alternate servicers to each of the servicers' satisfaction and unique specifications. The Debtors have been committed to working with the transition parties to achieve an efficient transfer process and have held multiple meetings a week to verify the transfer of data and information, worked with the transition parties through various technological challenges, responded to numerous inquiries regarding the loan data and its locations, and corresponded with all necessary third-parties to facilitate the transfer of the data within such parties' control.

20. Accordingly, the Debtors submit that although they satisfy the remaining applicable *Adelphia* factors, the size and complexity of these Chapter 11 Cases alone, as well as the breadth and depth of legal, operational, financial, and regulatory issues involved, justifies the limited requested extension of the Exclusive Periods.

9

## II. The Debtors Have Made Progress In Negotiations With Their Creditors And Are Not Pressuring Creditors By Requesting An Extension Of The Exclusive Periods

21. The Debtors are not seeking an extension of the Exclusive Periods as a negotiation tactic, to artificially delay the conclusion of these Chapter 11 Cases, or to unduly pressure any of their creditors. To the contrary, the Debtors expect the Effective Date to occur in the near term and have been in regular communication with their key stakeholders to transition the loan servicing obligations. Although the Debtors do not believe it is a constructive or likely outcome, if the Exclusive Periods expire and a party files a competing plan, that plan would only interfere with the momentum the Debtors have already built towards the transition of the loan servicing obligations and would derail the wind down of the business embodied in the Plan that enjoys support from all key stakeholders. Accordingly, the Debtors submit that this factor weighs in favor of granting an extension of the Exclusive Periods.

## III. The Debtors Are Paying Their Debts As They Come Due

22. In determining whether to grant an extension of exclusivity, courts also assess a debtor's liquidity and whether the debtor continues to pay its debts as they become due. *See In re Adelphia Commc'ns Corp.*, 352 B.R. at 587.

23. The Debtors continue to manage their estates as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors continue to pay all ongoing, ordinary course expenses and remain focused on assuring that all administrative expenses are paid on time. The Debtors are committed to monitoring their liquidity closely and are confident that sufficient funding will be available to continue meeting their financial obligations. To achieve this goal, the Debtors and the Reserve Bank have negotiated a budget that permits the Debtors to

Case 22-10951-CTG    Doc 796    Filed 04/28/23    Page 11 of 15

use the Reserve Bank's cash collateral through the Effective Date. Accordingly, this factor weighs in favor of granting an extension of the Exclusive Periods.

### IV. The Debtors Have Made Substantial Good-Faith Progress

24. The Debtors have made significant and material progress in these Chapter 11 Cases and utilized the first extension of their Exclusive Periods judiciously. Specifically, during the first extension of the Exclusive Periods, the Debtors (i) focused on their claims reconciliation process and obtained entry of two orders reclassifying certain misclassified claims filed against the Debtors; (ii) filed three plan supplements, which included, among other things, a schedule of certain contracts to be assumed on the Effective Date, a schedule of certain contracts to be rejected on the Effective Date, a form Wind Down Agreement, and a Wind Down Budget; (iii) conducted a robust selection process for the Wind Down Officer role and identified a Wind Down Officer; (iv) filed an amended Plan, brief in support of the Plan, and related declarations; (v) achieved confirmation of the Plan; (vi) negotiated three separate agreements with Cross River Bank, CB, and the Reserve Bank for the transition of the parties' loan documents and transitioned all of the loan data in the Company's control by the agreed upon deadlines; (vii) made substantial progress on negotiations with the SBA and DOJ regarding a potential settlement agreement; and (viii) after a hearing in front of this Court, obtained an additional $1.55 million in disputed funds that CB owed to the Debtors pursuant to the parties' settlement agreement.

### V. Relatively Little Time Has Elapsed Since These Chapter 11 Cases Were Commenced

25. The Debtors' request for a second extension of their Exclusive Periods comes approximately seven months into these Chapter 11 Cases, and the Debtors are only requesting a further limited extension of the Exclusive Periods to allow themselves sufficient time to implement and consummate the Plan. Courts in this district have routinely granted multiple

11

RLF1 28920478V.1

requests by debtors to extend their Exclusive Periods. *See In re Pack Liquidating, LLC et al.,* No. 22-10797 (CTG) (Bankr. D. Del. Apr. 10, 2023) [Docket No. 688] (initially granting the debtors' request for a 90-day extension of their Exclusive Periods and subsequently granting the debtors' second request for a 60-day extension of their Exclusive Periods)*; In re Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP), et al.,* No. 22-10239 (MFW) (Bankr. D. Del. Dec. 5, 2022) [Docket No. 551] (initially granting the debtors' request for a 120-day extension of their Exclusive Periods and subsequently granting the debtors' second request for a 60-day extension of their Exclusive Periods after confirmation of the debtors' chapter 11 plan); *In re Ruby Pipeline, L.L.C.,* No. 22-10278 (CTG) (Bankr. D. Del. July 19, 2022) [Docket No. 288] (initially granting the debtor's request for a 120-day extension of their Exclusive Periods and subsequently granting the debtor's second request for a 180-day extension of their Exclusive Periods); *In re Mallinckrodt plc, et al.*, No. 20-12522 (JTD) (Bankr. D. Del. Mar. 25, 2022) [Docket No. 6941] (initially granting the debtors' request for a 180-day extension of their Exclusive Periods and subsequently granting a fourth extension request for a 35-day extension of their Exclusive Periods after confirmation of the debtors' chapter 11 plan); *In re Permian Holdco 1, Inc., et al.*, No. 20-11822 (MFW) (Bankr. D. Del. Mar. 4, 2021) [Docket No. 478] (initially granting the debtors' request for a 90-day extension of their Exclusive Periods, and subsequently granting the debtors' second request for a 90-day extension of their Exclusive Periods after confirmation of the debtors' plan).

### VI.    The Requested Extension Is In The Best Interests Of The Debtors' Estates

26.    As discussed above, the Debtors have proceeded with these Chapter 11 Cases in an orderly and expeditious fashion.  Indeed, in the short span of time since the Petition Date, the Debtors are expecting the Effective Date to occur in the near term and are seeking a short

extension in an abundance of caution. Introduction of a competing plan at this stage would likely impair the Debtors' ability to finalize the loan transition process and delay the anticipated Effective Date to the detriment of all parties in interest. This request is intended to provide a sufficient, flexible window in which the Debtors can complete the transition of their loan servicing obligations and complete all of the conditions precedent necessary for the Effective Date to occur. Based on the foregoing, the Debtors respectfully submit that the requested extension is in the best interests of the Debtors' estates.

## Conclusion

27. The Debtors' Chapter 11 Cases are moving towards a successful conclusion and the Debtors are diligently working to complete all of the conditions precedent under the Plan for the Effective Date to occur as soon as possible. The extension will allow this process to continue in an efficient manner, preserve estate resources, and provide the Debtors with a fair and reasonable opportunity to complete the transition of their loan servicing obligations. Given the circumstances and the ample facts supporting a finding of "cause" to extend the Exclusive Periods, the intent and purpose of section 1121 of the Bankruptcy Code will be squarely met if the Court grants the relief requested herein.

28. For all of the foregoing reasons, the Debtors respectfully submit that sufficient cause exists in these Chapter 11 Cases to extend the Exclusive Periods by 90 days.

## Notice

29. Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) the Federal Reserve Bank; (d) Customers Bank; (e) Cross River Bank; (f) the United States Department of Justice; (g) the Federal Trade Commission; (h) the Small Business Administration; (i) the Internal Revenue Service; (j) the

Securities and Exchange Commission; (k) the United States Attorney's Office for the District of Delaware; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"). The Debtors respectfully submit that no further notice is required.

## No Previous Request

30. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: April 28, 2023
      Wilmington, Delaware

/s/ Matthew P. Milana
RICHARDS, LAYTON & FINGER, P.A.
Daniel J. DeFranceschi (No. 2732)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
E-mail: defranceschi@rlf.com
       steele@rlf.com
       shapiro@rlf.com
       milana@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Candace M. Arthur (admitted *pro hac vice*)
Natasha S. Hwangpo (admitted *pro hac vice*)
Chase A. Bentley (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
E-mail:      ray.schrock@weil.com
              candace.arthur@weil.com
              natasha.hwangpo@weil.com
              chase.bentley@weil.com

*Attorneys for Debtors and Debtors in Possession*