# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KABBAGE, INC. d/b/a KSERVICING, *et al.*,[1] | Case No. 22-10951 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: July 26, 2023 at 9:00 a.m. (ET)** |

## FIRST POST-CONFIRMATION STATUS REPORT

The post-confirmation Debtors, operating as the Wind Down Estates as defined in, and under terms of, the *Amended Joint Chapter 11 Plan of Liquidation of Kabbage, Inc. (d/b/a KServicing) and Its Affiliated Debtors*, dated March 9, 2023 ("Plan") [Docket No. 627], file this first post-confirmation status report to apprise the Court and material stakeholders of key developments and issues associated with implementation and consummation of the Plan. Unless otherwise defined in this status report, capitalized terms retain the definition give to them in the Plan.

## POST-EFFECTIVE DATE ACTIVITY

1.    On March 15, 2023, this Court entered the Confirmation Order[2] confirming the Debtor's Plan. The Plan became effective on June 20, 2023.[3]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] *Order Confirming Amended Joint Chapter 11 Plan of Liquidation of Kabbage, Inc. (d/b/a KServicing) and its Affiliated Debtors* [Docket No. 680].

[3] *Notice of (I) Entry of Order Confirming Amended Joint Chapter 11 Plan of Liquidation of Kabbage, Inc. (d/b/a KServicing) and its Affiliated Debtors and (II) Effective Date* [Docket No. 870].

2. Since the Effective Date, the Debtors have undertaken actions authorized and contemplated under the Plan, including (but not limited to):

- Preparing and implementing amendments to the Debtors' corporate organizational documents reflecting changes in corporate governance contemplated under the Plan, changes to the Debtor entity names, and termination of dormant subsidiary entities;

- Transferring and preserving documents relevant to investigation and prosecution of Estate Causes of Action, and begun investigating and analyzing the Estate Causes of Action (including the American Express Transaction);

- Meeting with the Department of Justice, the SBA, and CRB concerning possible resolutions for their respective claims;

- Implementing various expense reduction measures including reducing employee headcount, terminating certain consulting engagements, and transitioning work to lower-cost professionals;

- Assisting with reconciliation and transfer of loan portfolios related to SBA, Lendistry, Customer's Bank, and CRB;

- Developing alternative collection and recovery strategies related to Legacy Loan portfolio;

- Initiating closure of inactive bank accounts, credit card accounts, and 401(k) accounts;

- Initiating the Claims reconciliation process;

- Negotiating possible terms for early release of Restricted Cash; and

- Conferring with the Reserve Bank concerning Post-Effective Date wind down activities.

12. The Debtors continue to prioritize and undertake other actions necessary and appropriate to implement the wind down contemplated under the Plan.

**DISPUTE RELATED POST-EFFECTIVE DATE SERVICING OF LEGACY LOANS**

13. Consistent with the Plan, and in consultation with the Reserve Bank, the Debtors elected to continue servicing the Legacy Loan Portfolio post-Effective Date. To that end, on May 2, 2023 the Debtors entered into a third-party *Servicing Agreement* ("Servicing Agreement")

with Vervent Inc. ("Vervent") under which Vervent would service the Legacy Loan Portfolio for the benefit of the wind down estates.

14. Consistent with the Servicing Agreement, the Debtors provided Vervent with the loan files for the Legacy Loan Portfolio, including copies of the supporting promissory notes and other documentation more than adequate to continue servicing the portfolio. Notably, the Legacy Loan Portfolio comprises loans that have been in active payment status for years and loans which are not the subject of investigation by any third parties.

15. Despite having ample opportunity to conduct due diligence related to the Legacy Loan Portfolio prior to entering into the Service Agreement, Vervent sent notice to the Debtors on June 27, 2023—only after onboarding the Legacy Loan Portfolio and after the Plan's Effective Date—purporting to unilaterally terminate the Service Agreement. Vervent alleges that, despite the active payment status of the Legacy Loan Portfolio, gaps exist in the loan documentation and that such gaps constitute cause for termination of the Service Agreement.

16. The Debtors' dispute there is any cause for Vervent to terminate the Service Agreement. There were extensive disclosures (both publicly as part of the Debtors' bankruptcy and directly as part of negotiations with Vervent) regarding the Debtors' prepetition underwriting practices, lack of possession of certain historical data that was held by third parties outside of the Debtors' control, disputes with respect to the loan portfolios, and related matters, that suggest Vervent knew (or should have known) the risks associated with the Legacy Loan Portfolio and assumed such risks at the time Vervent entered into the Service Agreement.

17. Despite the Debtors' numerous efforts to address Vervent's concerns and issues, at this time Vervent continues to refuse to honor its obligations under the Service Agreement. The Debtors feel it necessary to flag this issue for the Court and other stakeholders as Vervent's actions

are negatively affecting implementation of the Plan. Among other things, Verven's actions have caused delay in servicing the Legacy Loan Portfolio (which may result in missed borrower payments) and have forced the Debtors to procure a replacement servicer at higher cost to the estate. Accordingly, the Debtors wish to advise the Court and other stakeholders (as Debtors have advised Vervent) that the Debtors reserve all rights and claims related to Vervent, including the ability to recover all costs and expenses incurred in the expectation and preparation of Vervent's performance, as well as damages proximately caused by Vervent's breach . (including costs the estate will incur extending access to the existing American Express platform beyond the previously expected onboarding date that was articulated to American Express).

Dated: July 24, 2023

**MORRIS JAMES LLP**

*/s/ Eric J. Monzo*
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
Tara C. Pakrouh (DE Bar No. 6192)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
E-mail: bkeilson@morrisjames.com
E-mail: tpakrouh@morrisjames.com

and

**PERKINS COIE LLP**
Bradley A. Cosman, Esq. (admitted *pro hac vice*)
Kathleen Allare, Esq. (admitted *pro hac vice*)
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
E-mail: BCosman@perkinscoie.com
E-mail: KAllare@perkinscoie.com

and

John D. Penn, Esq. (admitted *pro hac vice*)
500 North Akard Street, Suite 3300
Dallas, TX 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799
E-mail: JPenn@perkinscoie.com

*Counsel to the Post-Confirmation Debtors, operating as the Wind Down Estates*