## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>**KABBAGE, INC. d/b/a KSERVICING,** *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-10951 (CTG)<br><br>(Jointly Administered)<br><br>**RE: D.I. 870** |

## REQUEST FOR ALLOWANCE AND PAYMENT
## OF ADMINISTRATIVE EXPENSES

American Express Kabbage Inc. and American Express Travel Related Services Company, Inc. (collectively, "American Express")[2] hereby submit this request (the "Request"), pursuant to section 503 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), for allowance and payment of an administrative expense claim in an amount not less than $16,903.00 (the "Postpetition Debt") for services rendered between the Petition Date and June 20, 2023 (the "Effective Date"). In support of this Request, American Express incorporates by reference its *Objection to the Joint Motion of Cross River Bank and Customers Bank for An Order Authorizing Rule 2004 Examination* (D.I. 683) (the "2004 Objection") and the *Declarations of Regina Sorin* (D.I. 684) (the "Sorin Declaration") and *Amanda Flug Davidoff* (D.I.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Kabbage, Inc. d/b/a KServicing (3937) ("Kabbage"); Kabbage Canada Holdings, LLC (N/A); Kabbage Asset Securitization LLC (N/A); Kabbage Asset Funding 2017-A LLC (4803); Kabbage Asset Funding 2019-A LLC (8973); and Kabbage Diameter, LLC (N/A). Kabbage is a trademark of American Express used under license; Kabbage, Inc. d/b/a KServicing is not affiliated with American Express. The Debtors' mailing and service address is 925B Peachtree Street NE, Suite 383, Atlanta, GA 30309.

[2] Capitalized terms used but not defined herein are defined in the *Amended Joint Chapter 11 Plan of Liquidation of Kabbage, Inc., (d/b/a KServicing) and Its Affiliated Debtors* (D.I. 627) (the "Plan").

685) (the "Davidoff Declaration") in support of the 2004 Objection and respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Request under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On October 3, 2022, Kabbage, Inc. d/b/a KServicing ("Kabbage") and the above-captioned debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

3.      Prior to its bankruptcy filing, Kabbage was an online loan-servicing company founded in 2008 that sold many of its operating assets to affiliates of American Express in October 2020 (the "Acquisition"). Disclosure Statement at 3 (D.I. 467); Sorin Decl. Ex. 1 at 1. Post-Acquisition, Kabbage retained servicing obligations for Kabbage's loan portfolio and the portfolios of the Partner Banks, which were not included in the Acquisition. *See* Disclosure Statement at 3, 30; Sorin Decl. Ex. 1 at 1. Kabbage's loan portfolio consisted primarily of small business loans issued under the Paycheck Protection Program ("PPP") in 2020 (before the Acquisition) with an aggregate outstanding principal amount of approximately $1.3 billion as of October 3, 2022, as well as other loans originated by Kabbage prior to the Acquisition. Disclosure Statement at 3.

4.      As part of the Acquisition, Kabbage and American Express entered into that certain Transition Services Agreement, dated October 16, 2020 (the "TSA") to govern the services and data American Express would make accessible to Kabbage as Kabbage transitioned

servicing to itself or third-party vendors.  Sorin Decl. at ¶ 4.  The TSA gave Kabbage the right to access materials, records and legacy software Kabbage needed to service the loans in Kabbage's and the Partner Banks' loan portfolios.  Disclosure Statement at 35.

5.	Since the commencement of the chapter 11 cases, American Express has been and is continuing to provide services to Kabbage, including hosting and providing access to LegacyCo Platform (as defined in the TSA).  The LegacyCo Platform enables system processes that support the loan servicing and collection of borrower payments for Kabbage's legacy loan portfolio.  Such system processes have been provided pursuant to the TSA and include, without limitation, use of Kore, the customer-facing dashboard, and CoreCredit/CoreCard.

6.	Throughout the duration of the chapter 11 cases, American Express has been issuing invoices to the Debtors for American Express's provision of postpetition services.[3]  The Debtors confirmed their agreement to pay American Express's postpetition invoices on account of such services by virtue of an email agreement on June 12, 2023 (the "Postpetition Agreement").[4]  Kabbage has paid some, but not all, of the outstanding invoices.

7.	On June 20, 2023, the Debtors filed the *Notice of (I) Entry of Order Confirming Amended Joint Chapter 11 Plan of Liquidation of Kabbage, Inc. (d/b/a KServicing) and its Affiliated Debtors and (II) Effective Date* (D.I. 870) ("Effective Date Notice") notifying all creditors and interested parties that the plan of liquidation (the "Plan") had gone effective.

8.	Pursuant to that Effective Date Notice and in accordance with the Plan, the Debtors set an Administrative Expense Claims Bar Date for July 25, 2023.  Plan, § 2.1.

---

[3]	Attached hereto as **Exhibit B** are copies of outstanding invoices for postpetition services rendered in March, April and May of 2023.

[4]	Attached hereto as **Exhibit C** is a copy of the Postpetition Agreement between the Debtors and American Express to pay any outstanding invoices on account of postpetition services.

**BASIS FOR RELIEF REQUESTED**

9. Section 503(b) of the Bankruptcy Code states in pertinent part that "there shall be allowed administrative expenses . . . including—(1)(A) the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b). Entitlement to an administrative claim is determined by a two-part test: "(1) the transaction must be between the creditor and the debtor; and (2) the estate must receive a benefit from the transaction." *In re Muma Servs.*, 279 B.R. 478, 489 (Bankr. D. Del. 2002) (citing *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 532–533 (3d Cir. 1999)).

10. Further, section 503 was designed to induce entities to do business with a debtor after bankruptcy by ensuring that those entities receive payment for services rendered. Thus, if a non-debtor party confers a benefit on a bankruptcy estate after the petition date pursuant to an executory contract, the non-debtor counterparty to that contract holds an administrative expense claim to the extent of the post-petition benefit conferred on the estate. *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 818-19 (3d Cir. 2010) ("We . . . note that when third parties are induced to supply goods or services to the debtor-in-possession pursuant to a contract that has not been rejected, the purposes of administrative claims plainly require that their claims be afforded priority.") (quoting *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976)) (internal quotation marks omitted); *In re Waste Sys. Int'l, Inc.*, 280 B.R. 824, 826 (Bankr. D. Del. 2002) ("In the context of executory contracts, a non-debtor party to an executory contract is entitled to an administrative expense claim equal to the value of any post-petition benefit conferred on the estate prior to assumption or rejection of that contract.") (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531(1984) and *In re BCE West, L.P.*, 264 B.R. 578, 584 (B.A.P. 9th Cir. 2001)). *See also In re Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir. 1984).

11. Here, there can be no question that the postpetition transitional services arose out of a postpetition agreement between the Debtors and American Express and that those transitional services have allowed Kabbage to wind down and offload the servicing of its loan portfolio to third-party vendors, thereby constituting actual and necessary costs and expenses of preserving the Debtors' estates. Moreover, the Debtors specifically agreed to pay for any postpetition services rendered under the TSA pursuant to the Postpetition Agreement. As a result, American Express is entitled to an administrative expense claim on account of the Postpetition Debt incurred by the Debtors and subsequently the Post-Confirmation Debtors, operating as the Wind-Down Estates.

## **RESERVATION OF RIGHTS**

12. The filing of this Request for an administrative expense claim shall not be construed as a waiver or release of any claims, rights, or remedies. American Express further reserves the right to supplement or amend this Request, in any manner and for any purpose, including without limitation to assert additional administrative expenses for any period. Additionally, American Express reserves any rights of setoff or recoupment it may have.

13. American Express further reserves its rights to cease providing transitional services to the Post-Confirmation Debtors, operating as the Wind-Down Estates, if its postpetition invoices are not timely paid in accordance with the terms of the TSA and the Postpetition Agreement.

## **NOTICE**

14. Notice of this Request has been or will be provided to the following parties: (i) counsel to the Post-Confirmation Debtors, operating as the Wind Down Estates; (ii) the Office of the United States Trustee for the District of Delaware; and (iii) all parties who have filed requests for notice in these chapter 11 cases pursuant to rule 2002 of the Federal Rules of

Bankruptcy Procedure. Given the nature of the relief requested, American Express submits that no further notice is required under the circumstances.

## **CONCLUSION**

WHEREFORE, American Express respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) allowing an administrative claim on the Postpetition Debt, and (ii) granting such other and further relief as is just and proper.

| | |
|---|---|
| Dated: July 25, 2023<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br>*/s/ Jonathan M. Weyand*<br>Derek C. Abbott (No. 3376)<br>Jonathan M. Weyand (No. 6959)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>dabbott@morrisnichols.com<br>jweyand@morrisnichols.com<br><br>*-and-*<br><br>**SULLIVAN & CROMWELL LLP**<br><br>James L. Bromley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004-2498<br>Telephone: (212) 558-4000 Email:<br>bromleyj@sullcrom.com<br><br>Amanda Flug Davidoff (admitted *pro hac vice*)<br>1700 New York Avenue, N.W. Suite 700<br>Washington, D.C. 20006-5215<br>Telephone: (202) 956-7500<br>davidoffa@sullcrom.com<br><br>*Counsel to American Express* |