**EXHIBIT B**

**SBA Forgiveness Rule**

16962472/1

# Rules and Regulations

**Federal Register**

Vol. 86, No. 23

Friday, February 5, 2021

This section of the FEDERAL REGISTER contains regulatory documents having general applicability and legal effect, most of which are keyed to and codified in the Code of Federal Regulations, which is published under 50 titles pursuant to 44 U.S.C. 1510.

The Code of Federal Regulations is sold by the Superintendent of Documents.

## BUREAU OF CONSUMER FINANCIAL PROTECTION

### 12 CFR Part 1026

[Docket No. CFPB–2020–0028]

RIN 3170–AA98

### Qualified Mortgage Definition Under the Truth in Lending Act (Regulation Z): Seasoned QM Loan Definition; Correction

**AGENCY:** Bureau of Consumer Financial Protection.

**ACTION:** Final rule; correction.

**SUMMARY:** The Bureau of Consumer Financial Protection (Bureau) recently published ''Qualified Mortgage Definition Under the Truth in Lending Act (Regulation Z): Seasoned QM Loan Definition,'' which appeared in the **Federal Register** on December 29, 2020. This document corrects a scrivener's error in an amendatory instruction in that document.

**DATES:** Effective March 1, 2021.

**FOR FURTHER INFORMATION CONTACT:** Amanda Quester, Senior Counsel, Office of Regulations, at (202) 435–7700. If you require this document in an alternative electronic format, please contact *CFPB_Accessibility@cfpb.gov.*

**SUPPLEMENTARY INFORMATION:** In FR Doc. 2020–27571 appearing on page 86402 in the **Federal Register** of Tuesday, December 29, 2020, the following correction is made:

### § 1026.43   [Corrected]

■ On page 86452, in the second column, in amendment 2, the instruction ''Amend § 1026.43 by revising paragraphs (e)(1) and (e)(2) introductory text and adding paragraph (e)(7) to read as follows: '' is corrected to read: ''Amend § 1026.43 by revising the headings for paragraphs (e) and (e)(1) and paragraphs (e)(1)(i) and (e)(2) introductory text and adding paragraph (e)(7) to read as follows:''.

Dated: January 15, 2021.

**Grace Feola,**

*Federal Register Liaison, Bureau of Consumer Financial Protection.*

[FR Doc. 2021–01387 Filed 2–4–21; 8:45 am]

**BILLING CODE 4810–AM–P**

## SMALL BUSINESS ADMINISTRATION

### 13 CFR Part 120

[Docket Number SBA–2021–0006]

RIN 3245–AH65

## DEPARTMENT OF THE TREASURY

RIN 1505–AC75

### Business Loan Program Temporary Changes; Paycheck Protection Program—Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act

**AGENCY:** U.S. Small Business Administration; Department of the Treasury.

**ACTION:** Interim final rule.

**SUMMARY:** This interim final rule implements changes related to the forgiveness and review of loans made under the Paycheck Protection Program (PPP), which was originally established under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) to provide economic relief to small businesses nationwide adversely impacted by the Coronavirus Disease 2019 (COVID–19). On December 27, 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) was enacted, extending the authority to make PPP loans through March 31, 2021, revising certain PPP requirements, and permitting second draw PPP loans. This interim final rule consolidates prior rules related to forgiveness and reviews of PPP loans and incorporates changes made by the Economic Aid Act, including with respect to forgiveness of second draw PPP loans.

**DATES:**

*Effective date:* Unless otherwise specified in the Economic Aid Act, the provisions of this interim final rule are effective February 3, 2021.

*Applicability date:* This interim final rule applies to Paycheck Protection Programs loans for which a loan forgiveness payment had not been remitted by SBA as of December 27, 2020. Parts IV.6.c., IV.7 and V of this interim final rule, Paycheck Protection Program SBA Loan Review Procedures and Related Borrower and Lender Responsibilities, apply to all Paycheck Protection Program loans.

*Comment date:* Comments must be received on or before March 8, 2021.

**ADDRESSES:** You may submit comments, identified by number SBA–2021–0006 through the Federal eRulemaking Portal: *http://www.regulations.gov.* Follow the instructions for submitting comments.

SBA will post all comments on *www.regulations.gov.* If you wish to submit confidential business information (CBI) as defined in the User Notice at *www.regulations.gov,* please send an email to *ppp-ifr@sba.gov.* All other comments must be submitted through the Federal eRulemaking Portal described above. Highlight the information that you consider to be CBI and explain why you believe SBA should hold this information as confidential. SBA will review the information and make the final determination whether it will publish the information.

**FOR FURTHER INFORMATION CONTACT:** A Call Center Representative at 833–572–0502, or the local SBA Field Office; the list of offices can be found at *https://www.sba.gov/tools/local-assistance/districtoffices.*

**SUPPLEMENTARY INFORMATION:**

### I. Background Information

On March 13, 2020, President Trump declared the ongoing Coronavirus Disease 2019 (COVID–19) pandemic of sufficient severity and magnitude to warrant an emergency declaration for all States, territories, and the District of Columbia. With the COVID–19 emergency, many small businesses nationwide continue to experience economic hardship as a direct result of the Federal, State, and local public health measures that continue to be taken to minimize the public's exposure to the virus. In addition, based on the advice of public health officials, other voluntary measures continue to be observed, resulting in a decrease in economic activity as the public avoids malls, retail stores, and other businesses.

On March 27, 2020, the President signed the Coronavirus Aid, Relief, and

**8284**    **Federal Register**/ Vol. 86, No. 23 / Friday, February 5, 2021 / Rules and Regulations

Economic Security Act (the CARES Act) (Pub. L. 116–136) to provide emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic. The Small Business Administration (SBA) received funding and authority through the CARES Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID–19 emergency.

Section 1102 of the CARES Act temporarily permitted SBA to guarantee 100 percent of 7(a) loans under a new program titled the ''Paycheck Protection Program,'' pursuant to section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)). Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the Paycheck Protection Program (PPP). On April 24, 2020, the President signed the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116–139), which provided additional funding and authority for the Paycheck Protection Program.

On June 5, 2020, the President signed the Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116–142), which changed provisions of the PPP relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans. On July 4, 2020, Public Law 116–147 extended the authority for SBA to guarantee PPP loans to August 8, 2020.

On December 27, 2020, the President signed the Economic Aid to Hard-Hit Small Businesses, Nonprofits and Venues Act (Economic Aid Act) (Pub. L. 116–260), which reauthorizes lending under the PPP through March 31, 2021, and among other things, modifies the PPP, including provisions relating to forgiveness of PPP loans. The Economic Aid Act added a new temporary section 7(a)(37) to the Small Business Act, which authorizes SBA to guarantee additional PPP loans to eligible borrowers under generally the same terms and conditions available under section 7(a)(36) of the Small Business Act through March 31, 2021. The Economic Aid Act also redesignates section 1106 of the CARES Act as section 7A and transfers that section to the Small Business Act, to appear after section 7 of the Small Business Act.[1]

As described below, this interim final rule (1) provides borrowers and lenders

with guidance on requirements governing forgiveness of PPP loans, and (2) informs borrowers and lenders of SBA's process for reviewing loan applications and loan forgiveness applications. SBA is incorporating and restating the prior interim final rules relating to loan forgiveness and loan reviews and making revisions to conform these prior interim final rules to the amendments made by the Economic Aid Act, including for PPP loans made under section 7(a)(37) of the Small Business Act. The prior interim final rules relating to loan forgiveness and loan reviews that are incorporated in this interim final rule are: The first interim final rule on loan forgiveness (85 FR 33004) (June 1, 2020); the first interim final rule on SBA loan review procedures and related borrower and lender responsibilities (85 FR 33010) (June 1, 2020); the interim final rule incorporating Flexibility Act Amendments (85 FR 38304) (June 26, 2020); the interim final rule on Treatment of Owners and Forgiveness of Certain Nonpayroll Costs (85 FR 52881) (August 27, 2020); and the interim final rule on Additional Revisions to Loan Forgiveness and Loan Review Procedures Interim Final Rules (85 FR 66214) (October 19, 2020). The rule also incorporates the forgiveness portions of the interim final rules regarding individuals with self-employment income (85 FR 21747 (April 20, 2020) and 85 FR 36997 (June 19, 2020)) and fishing boat owners (85 FR 39066) (June 30, 2020).

This rule should be interpreted consistently with the sets of Frequently Asked Questions (FAQs) regarding the PPP that are posted on SBA's and the Department of the Treasury's (Treasury) websites, the consolidated interim final rule implementing updates to the Paycheck Protection Program (86 FR 3692 (January 14, 2021)) and the interim final rule on second draw PPP loans (86 FR 3712 (January 14, 2021)); however, the Economic Aid Act overrides any conflicting guidance in the FAQs, and SBA will be revising the FAQs to fully conform to the Economic Aid Act as quickly as feasible.

Most of this document restates existing regulatory provisions to provide PPP lenders and new and existing PPP borrowers a single regulation to consult on loan forgiveness and loan review requirements and processes. To enhance the readability of this document, SBA has not reproduced the policy and legal justifications for existing regulatory provisions restated here, except to the extent that those justifications may be helpful to the borrower or lender. However, those justifications from the

original interim final rules are adopted here.

Six provisions of this interim final rule are an exercise of rulemaking authority by Treasury either jointly with SBA or by Treasury alone: (1) The additional reference period option provided for seasonal employers, (2) the *de minimis* exemption provided with respect to certain offers of rehire, (3) the *de minimis* exemption from the full-time equivalent employee reduction penalty when an employee is, for example, fired for cause, (4) the *de minimis* exemption from the full-time equivalent employee reduction penalty when the borrower eliminates reductions by December 31, 2020 or, for a PPP loan made after December 27, 2020, the last day of the loan's covered period, (5) the *de minimis* exemption from the full-time equivalent (FTE) employee reduction penalty for certain PPP loans of $50,000 or less, and (6) the *de minimis* exemption from the employee salary and wages reduction penalty for certain PPP loans of $50,000 or less. Otherwise, all provisions in this rule are an exercise of rulemaking authority by SBA alone.

## II. Comments and Immediate Effective Date

This interim final rule is being issued without advance notice and public comment because section 303 of the Economic Aid Act authorizes SBA to issue regulations to implement the Economic Aid Act without regard to notice requirements. In addition, this rule is being issued to allow for immediate implementation of this program. The intent of both the CARES Act and the Economic Aid Act is that SBA provides relief to America's small businesses expeditiously. The Economic Aid Act provided that several of the changes relating to loan forgiveness are effective as if included in the CARES Act and apply to any loan made pursuant to section 7(a)(36) of the Small Business Act before, on, or after December 27, 2020, including forgiveness of such a loan. Accordingly, loans that were made in 2020 but for which SBA has not yet remitted forgiveness to the lender will be forgiven based on changes made in the Economic Aid Act, as implemented in this interim final rule. Given the urgent need to provide borrowers that are eligible for loan forgiveness with timely relief, the Administrator in consultation with the Secretary has determined that it is impractical and not in the public interest to provide a 30-day delayed effective date. An immediate effective date will allow SBA to continue remitting forgiveness payments to

---

[1] Because section 1106 of the CARES Act is now codified as section 7A of the Small Business Act, any reference to section 1106 of the CARES Act in the rules that are being restated herein will refer to section 7A.

lenders without disruption and in accordance with the amendments made by the Economic Aid Act. This good cause justification also supports waiver of the 60-day delayed effective date for major rules under the Congressional Review Act at 5 U.S.C. 808(2). Although this interim final rule is effective immediately, comments are solicited from interested members of the public on all aspects of the interim final rule.

These comments must be submitted on or before March 8, 2021. SBA will consider these comments and the need for making any revisions as a result of these comments.

## III. Paycheck Protection Program—Loan Forgiveness and Loan Review Procedures as Amended by Economic Aid Act

### Overview

The CARES Act was enacted to provide immediate assistance to individuals, families, and organizations affected by the COVID–19 emergency. Among the provisions contained in the CARES Act are provisions authorizing SBA to temporarily guarantee loans under the Paycheck Protection Program (PPP). Loans under the PPP will be 100 percent guaranteed by SBA, and the full principal amount of the loans may qualify for loan forgiveness.

Under the CARES Act, as amended by the Economic Aid Act, SBA is authorized to guarantee loans under the PPP, a new temporary 7(a) program, through March 31, 2021. PPP loans made under section 7(a)(36) of the Small Business Act may be referred to as ''First Draw PPP Loans,'' and PPP loans made under section 7(a)(37) of the Small Business Act may be referred to as ''Second Draw PPP Loans.'' (Any reference to ''PPP loans'' or ''PPP loan'' herein refers to both First Draw PPP Loans and Second Draw PPP Loans.) The intent of the CARES Act and the Economic Aid Act is that SBA provide relief to America's small businesses expeditiously, which is expressed in the CARES Act by giving all lenders delegated authority and streamlining the requirements of the regular 7(a) loan program. This intent is also expressed in the Economic Aid Act through the statutory deadlines requiring that the Administrator issue certain guidance and regulations within 10 days of enactment.[2]

The Small Business Act authorizes the Administrator to conduct investigations to determine whether a recipient or participant in any assistance under a 7(a) program,

including the PPP, is ineligible for a loan, or has violated section 7(a), or any rule, regulation or order issued thereunder.[3] Additionally, under section 7(a), the Administrator is empowered to make loans in cooperation with lenders through agreements to participate on a deferred (guaranteed) basis.[4] Further, the Administrator may make such rules and regulations as deemed necessary and take any and all actions determined to be necessary or desirable with respect to 7(a) loans.[5] Pursuant to these provisions of the Small Business Act, SBA has issued regulations establishing the standards by which it will investigate whether a loan met program requirements and the circumstances under which SBA will be released from liability on a guarantee for such a loan.[6] Additionally, section 7A(l)(1)(E) of the Small Business Act expressly provides that SBA may review and audit PPP loans of $150,000 or less and access any records the borrower is required to retain.

In light of the structure of the PPP program established by the CARES Act and the PPP Interim Final Rules, in which loans and loan forgiveness are provided based on the borrower's certifications and documentation provided by the borrower, the Administrator, in consultation with the Secretary of the Treasury (Secretary), previously determined that it was appropriate to adopt additional procedures and criteria through which SBA will review whether an action by the borrower has resulted in its receipt of a PPP loan that did not meet program requirements.[7] SBA's review of borrower certifications and representations regarding the borrower's eligibility for a PPP loan and loan forgiveness, and the borrower's use of PPP loan proceeds, is essential to ensure that PPP loans are directed to the entities Congress intended, and that PPP loan proceeds are used for the purposes Congress required, including the CARES Act's and the Economic Aid Act's central purposes of keeping workers paid and employed.

---

[3] 15 U.S.C. 634(b)(11).
[4] 15 U.S.C. 636(a).
[5] 15 U.S.C. 634(b)(6) and (b)(7).
[6] 13 CFR 120.524.
[7] This interim final rule is an exercise of SBA's rulemaking authority under 15 U.S.C. 634(b), 15 U.S.C. 633(d), and 5 U.S.C. App., Reorg. Plan No. 4 of 1965, 11(b), 13(a) (abolishing Loan Policy Board and transferring functions to the Administrator); sections 1106(k) (now section 7A(k) of the Small Business Act) and 1114 of the CARES Act, and section 307 of the Economic Aid Act.

[2] See, *e.g.,* section 303 of the Economic Aid Act; section 7(a)(37)(M) of the Small Business Act.

*Table of Contents*

IV. Paycheck Protection Program Loan Forgiveness Requirements
  1. General
  a. What amounts are eligible for forgiveness?
  b. For borrowers that are individuals with self-employment income who file a Form 1040, Schedule C or F, what amounts are eligible for forgiveness?
  2. Loan Forgiveness Process
  a. What is the general process to obtain loan forgiveness?
  b. When must a borrower apply for loan forgiveness or start making payments on a loan?
  3. Payroll Costs Eligible for Loan Forgiveness
  a. When must payroll costs be incurred and/or paid to be eligible for forgiveness?
  b. Are salary, wages, or commission payments to furloughed employees; bonuses; or hazard pay during the covered period eligible for loan forgiveness?
  c. Are there caps on the amount of loan forgiveness available for owner-employees and self-employed individuals' own payroll compensation?
  d. Are any individuals with an ownership stake in a PPP borrower exempt from application of the PPP owner-employee compensation rule when determining the amount of their compensation that is eligible for loan forgiveness?
  e. May a fishing boat owner include as payroll costs in its application for loan forgiveness any compensation paid to a crewmember who received his or her own PPP loan and is seeking forgiveness for amounts of compensation the crewmember received for performing services described in Section 3121(b)(20) of the Internal Revenue Code with respect to that owner's fishing boat?
  4. Nonpayroll Costs Eligible for Loan Forgiveness
  a. When must nonpayroll costs be incurred and/or paid to be eligible for forgiveness?
  b. Are advance payments of interest on mortgage obligations eligible for loan forgiveness?
  c. Are amounts attributable to the business operation of a tenant or sub-tenant of the PPP borrower or, in the context of home-based businesses, household expenses, eligible for forgiveness?
  d. Are rent payments to a related party eligible for loan forgiveness?
  5. Reductions to Loan Forgiveness Amount
  a. Will a borrower's loan forgiveness amount be reduced if the borrower reduced the hours of an employee, then offered to restore the reduction in hours, but the employee declined the offer?
  b. What effect does a reduction in a borrower's number of full-time equivalent (FTE) employees have on the loan forgiveness amount?
  c. What does ''full-time equivalent employee'' mean?
  d. How should a borrower calculate its number of FTE employees?
  e. What effect does a borrower's reduction in employees' salary or wages have on the loan forgiveness amount?

f. How should borrowers seeking loan forgiveness account for the reduction based on a reduction in the number of employees (section 7A(d)(2)) relative to the reduction relating to salary and wages (section 7A(d)(3))?

g. If a borrower restores reductions made to employee salaries and wages or FTE employees, can the borrower avoid a reduction in its loan forgiveness amount?

h. Will a borrower's loan forgiveness amount be reduced if an employee is fired for cause, voluntarily resigns, or voluntarily requests a schedule reduction?

i. Is a borrower with a loan of $50,000 or less exempt from any reductions to the loan forgiveness amount?

6. Documentation Requirements

a. What must borrowers submit for forgiveness of their PPP loans?

b. What documentation must borrowers who are individuals with self-employment income who file a Form 1040, Schedule C or F, submit to their lender with their request for loan forgiveness?

c. What additional documentation must a borrower submit when the President of the United States, Vice President of the United States, the head of an Executive department, or a Member of Congress, or the spouse of any of the preceding, directly or indirectly holds a controlling interest in the borrower?

7. Lender Hold Harmless

V. Paycheck Protection Program SBA Loan Review Procedures and Related Borrower and Lender Responsibilities

1. SBA Reviews of Individual PPP Loans

a. Will SBA review individual PPP loans?

b. What borrower representations and statements will SBA review?

c. When will SBA undertake a loan review?

d. Will I have the opportunity to respond to SBA's questions in a review?

e. If SBA determines that a borrower is ineligible for a PPP loan, can the loan be forgiven?

f. May a borrower appeal SBA's determination that the borrower is ineligible for a PPP loan or ineligible for the loan amount or the loan forgiveness amount claimed by the borrower?

2. The Loan Forgiveness Process for Lenders

a. What should a lender review?

b. What is the timeline for the lender's decision on a loan forgiveness application?

c. What should a lender do if it receives notice that SBA is reviewing a loan?

d. What should a lender do if a borrower submits documentation of eligible costs that exceed a borrower's PPP Loan Amount?

3. Lender Fees

## IV. Paycheck Protection Program Loan Forgiveness Requirements

### 1. General

a. What amounts are eligible for forgiveness?[8]

Section 7A(b) of the Small Business Act provides that, subject to several important limitations, borrowers shall be eligible for forgiveness of their PPP loan in an amount equal to the sum of the following costs incurred and payments made during the covered period (as described in section IV.3. below).

(1) Payroll costs.[9] Payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care or group life, disability, vision, or dental insurance, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation. Payroll costs that are qualified wages taken into account in determining the Employer Retention Credit are not eligible for loan forgiveness.[10]

(2) Interest payments on any business mortgage obligation on real or personal property that was incurred before February 15, 2020 (but not any prepayment or payment of principal).

(3) Payments on business rent obligations on real or personal property under a lease agreement in force before February 15, 2020.

[8] This subsection was originally published at 85 FR 33004, section III.1. (June 1, 2020) and has been modified to conform to section 304 of the Economic Aid Act.

[9] "Payroll costs" has the same meaning as in subsections III.B.4.g. and h. of the consolidated interim final rule implementing updates to the Paycheck Protection Program. 86 FR 3692, 3702 (Jan. 14, 2021).

[10] Section 7(a)(37)(J)(iii) of the Small Business Act provides these amounts are not eligible for forgiveness for Second Draw PPP Loans. This provision similarly provides that these amounts are not eligible for forgiveness for First Draw PPP Loans in order to provide consistent treatment and to prevent a borrower from receiving forgiveness for amounts for which the borrower will also receive a tax credit.

(4) Business utility payments for the distribution of electricity, gas, water, transportation, telephone, or internet access for which service began before February 15, 2020.

(5) Covered operations expenditures. A covered operations expenditure is a payment for any business software or cloud computing service that facilitates business operations, product or service delivery, the processing, payment, or tracking of payroll expenses, human resources, sales and billing functions, or accounting or tracking of supplies, inventory, records and expenses.[11]

(6) Covered property damage costs. A covered property damage cost is a cost related to property damage and vandalism or looting due to public disturbances that occurred during 2020 that was not covered by insurance or other compensation.[12]

(7) Covered supplier costs. A covered supplier cost means an expenditure made by a borrower to a supplier of goods for the supply of goods that—(A) are essential to the operations of the borrower at the time at which the expenditure is made; and (B) is made pursuant to a contract, order, or purchase order—(i) in effect at any time before the covered period with respect to the applicable covered loan; or (ii) with respect to perishable goods, in effect before or at any time during the covered period with respect to the applicable covered loan.[13]

(8) Covered worker protection expenditures. A covered worker protection expenditure:

(A) Means an operating or a capital expenditure to facilitate the adaptation of the business activities of an entity to comply with requirements established or guidance issued by the Department of Health and Human Services, the Centers for Disease Control, or the Occupational Safety and Health Administration, or any equivalent requirements established or guidance issued by a State or local government related to the maintenance of standards for sanitation, social distancing, or any other worker or customer safety requirement related to COVID–19, during the period beginning on March 1, 2020 and ending the date on which the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 *et seq.*) with respect to the Coronavirus Disease 2019 (COVID–19) expires;

(B) may include—

[11] This eligible nonpayroll cost was added by section 304 of the Economic Aid Act.

[12] This eligible nonpayroll cost was added by section 304 of the Economic Aid Act.

[13] This eligible nonpayroll cost was added by section 304 of the Economic Aid Act.

(i) the purchase, maintenance, or renovation of assets that create or expand—

(I) a drive-through window facility;

(II) an indoor, outdoor, or combined air or air pressure ventilation or filtration system;

(III) a physical barrier such as a sneeze guard;

(IV) an expansion of additional indoor, outdoor, or combined business space;

(V) an onsite or offsite health screening capability; or

(VI) other assets relating to the compliance with the requirements or guidance described in subsection (A), as determined by the Administrator in consultation with the Secretary of Health and Human Services and the Secretary of Labor; and

(ii) the purchase of—

(I) covered materials described in § 328.103(a) of title 44, Code of Federal Regulations, or any successor regulation;

(II) particulate filtering facepiece respirators approved by the National Institute for Occupational Safety and Health, including those approved only for emergency use authorization; or

(III) other kinds of personal protective equipment, as determined by the Administrator in consultation with the Secretary of Health and Human Services and the Secretary of Labor; and

(C) does not include residential real property or intangible property.[14]

This interim final rule uses the term "nonpayroll costs" to refer to the payments described in (2)–(8) above. Eligible nonpayroll costs cannot exceed 40 percent of the loan forgiveness amount.[15] A borrower may receive forgiveness for the nonpayroll costs described in (5), (6), (7) and (8) only if SBA had not yet remitted a forgiveness payment on the borrower's loan to the borrower's PPP lender as of December 27, 2020 (the date of the Economic Aid Act's enactment).

b. For borrowers that are individuals with self-employment income who file a Form 1040, Schedule C or F, what amounts are eligible for forgiveness?[16]

The amount of loan forgiveness can be up to the full principal amount of the loan plus accrued interest. The actual amount of loan forgiveness will depend, in part, on the total amount spent during the covered period (as described in section IV.3 below)[17] on:

i. Payroll costs including salary, wages, and tips, up to $100,000 of annualized pay per employee, as prorated for the period during which the payments are made or the obligation to make the payments is incurred (maximum per individual is $100,000 prorated for the covered period, *e.g.,* for an 8-week covered period a maximum of $15,385 and for a 24-week covered period a maximum of $46,154),[18] as well as covered benefits for employees (but not owners), including health care expenses, retirement contributions, and state taxes imposed on employee payroll paid by the employer (such as unemployment insurance premiums), but excluding any qualified wages taken into account in determining the Employer Retention Credit;

ii. owner compensation replacement, calculated based on 2019 or 2020[19] net profit[20] as described in subsection 3.c. below; forgiveness of such amounts is limited to either (a) the prorated portion of 2019 or 2020 net profit for a covered period up to 2.5 months, or (b) 2.5 months' worth (2.5/12) of 2019 or 2020 net profit (up to $20,833) for a covered period greater than 2.5 months,[21] excluding any qualified sick leave equivalent amount for which a credit is claimed under section 7002 of the Families First Coronavirus Response Act (FFCRA) (Pub. L. 116–127) or qualified family leave equivalent amount for which a credit is claimed under section 7004 of FFCRA;

iii. payments of interest on mortgage obligations on real or personal property incurred before February 15, 2020, to the extent they are deductible on Form 1040 Schedule C or F (business mortgage payments);

iv. rent payments on lease agreements in force before February 15, 2020, to the extent they are deductible on Form 1040 Schedule C or F (business rent payments);

v. utility payments under service agreements dated before February 15, 2020 to the extent they are deductible on Form 1040 Schedule C or F (business utility payments);

vi. any covered operations expenditures to the extent they are deductible on Form 1040 Schedule C or F;[22]

vii. any covered property damage costs to the extent they are deductible on Form 1040 Schedule C or F;[23]

viii. Any covered supplier costs to the extent they are deductible on Form 1040 Schedule C or F;[24] and

ix. any covered worker protection expenditures to the extent they are deductible on Form 1040 Schedule C or F.[25]

A borrower may receive forgiveness for the new nonpayroll costs described in vi., vii., viii., and ix. only if SBA had not yet remitted a forgiveness payment on the borrower's loan to the borrower's PPP lender as of December 27, 2020.

*2. Loan Forgiveness Process*

a. What is the general process to obtain loan forgiveness?[26]

To receive loan forgiveness on either a First Draw PPP Loan or a Second Draw PPP Loan, a borrower must complete and submit the Loan Forgiveness Application[27] to its lender (or to the lender servicing its loan). For Second Draw PPP Loans in excess of $150,000, the borrower must submit its loan forgiveness application for the First Draw PPP Loan before or simultaneously with the loan forgiveness application for the Second Draw PPP Loan, even if the calculated amount of forgiveness on the First Draw PPP Loan is zero.[28]

---

[14] This eligible nonpayroll cost was added by section 304 of the Economic Aid Act.

[15] *See* section 7A(d)(8) of the Small Business Act.

[16] This subsection was originally published at 85 FR 21747, subsection III.1.f. (Apr. 20, 2020) and has been modified to conform to subsequent rules or guidance and sections 306, 313, and 344 of the Economic Aid Act.

[17] The Economic Aid Act amended the definition of the forgiveness covered period.

[18] Due to the amended definition of forgiveness covered period in the Economic Aid Act, this calculated amount has changed.

[19] For First Draw PPP loans made in 2020, borrowers use 2019. For First Draw PPP loans made in 2021 and Second Draw PPP Loans, borrowers use the year (2019 or 2020) that was used to calculate the borrower's loan amount.

[20] For self-employed borrowers that file Form 1040, Schedule F and have no employees, gross income may be used instead of net profit throughout this calculation. For self-employed borrowers that file Schedule F and have employees, the difference between gross income and employee payroll costs may be used instead of net profit throughout this calculation. *See* section 313 of the Economic Aid Act.

[21] Section 306 of the Economic Aid Act allows the borrower to select a covered period between 8 weeks and 24 weeks.

[22] This eligible nonpayroll cost was added by section 304 of the Economic Aid Act.

[23] This eligible nonpayroll cost was added by section 304 of the Economic Aid Act.

[24] This eligible nonpayroll cost was added by section 304 of the Economic Aid Act.

[25] This eligible nonpayroll cost was added by section 304 of the Economic Aid Act.

[26] This subsection was originally published at 85 FR 33004, section III.2. (June 1, 2020) and was amended by 85 FR 38304, subsection III.2.a. (June 26, 2020) and 85 FR 66214, subsections III.2.a. and b. (Oct. 19, 2020) and has been modified to conform to section 307 of the Economic Aid Act.

[27] SBA Form 3508, 3508EZ, 3508S, as applicable, or lender equivalent. Loan Forgiveness Application forms were amended to conform to the Economic Aid Act, including section 307, which requires a simplified forgiveness application for loans of not more than $150,000. The Simplified Forgiveness Application is SBA Form 3508S (as amended).

[28] This requirement is necessary to provide information relevant to the borrower's eligibility for the Second Draw PPP Loan and loan forgiveness. A borrower is eligible for a Second Draw PPP Loan
Continued

As a general matter, the lender will review the application and make a decision regarding loan forgiveness. The lender has 60 days from receipt of a complete application to issue a decision to SBA. If the lender determines that the borrower is entitled to forgiveness of some or all of the amount applied for under the statute and applicable regulations, the lender must request payment from SBA at the time the lender issues its decision to SBA. SBA will, subject to any SBA review of the borrower's loan(s) or loan application(s), remit the appropriate forgiveness amount to the lender, plus any interest accrued through the date of payment, not later than 90 days after the lender issues its decision to SBA. The EIDL Advance Amount received by the borrower will not reduce the amount of forgiveness to which the borrower is entitled and will not be deducted from the forgiveness payment amount that SBA remits to the Lender.[29] If SBA determines in the course of its review that the borrower was ineligible for the PPP loan under the statute, the SBA rules or guidance available at the time of the borrower's loan application, or the terms of the borrower's PPP loan application (for example, because the borrower lacked an adequate basis for the certifications that it made in its PPP loan application), the loan will not be eligible for loan forgiveness. The lender must notify the borrower of the forgiveness amount. If only a portion of the loan is forgiven, or if the forgiveness request is denied, any remaining balance due on the loan must be repaid by the borrower on or before the maturity date of the loan. The lender must notify the borrower of remittance by SBA of (i) the loan forgiveness amount (or that SBA determined that no amount of the loan is eligible for forgiveness), and (ii) the date on which the borrower's first payment is due, if applicable. If SBA determines that the full amount of the loan is eligible for forgiveness and remits the full amount of the loan to the lender, the lender

must mark the PPP loan note as "paid in full" and report the status of the loan as "paid in full" on the next monthly 1502 report filed by the lender.[30]

The general loan forgiveness process described above applies only to loan forgiveness applications that are not reviewed by SBA prior to the lender's decision on the forgiveness application. Part V of this interim final rule describes SBA's procedures for reviewing PPP loan applications and loan forgiveness applications.

b. When must a borrower apply for loan forgiveness or start making payments on a loan?[31]

A borrower may submit a loan forgiveness application any time on or before the maturity date of the loan if the borrower has used all of the loan proceeds for which the borrower is requesting forgiveness, except that a borrower applying for forgiveness of a Second Draw PPP Loan that is more than $150,000 must submit the loan forgiveness application for its First Draw PPP Loan before or simultaneously with the loan forgiveness application for its Second Draw PPP Loan.[32] If the borrower does not apply for loan forgiveness within 10 months after the last day of the maximum covered period of 24 weeks,[33] or if SBA determines that the loan is not eligible for forgiveness (in whole or in part), the PPP loan is no longer deferred and the borrower must begin paying principal and interest. If this occurs, the lender must notify the borrower of the date the first payment is due. The lender must report that the loan is no longer deferred to SBA on the next monthly SBA Form 1502 report filed by the lender.

### 3. Payroll Costs Eligible for Loan Forgiveness

a. When must payroll costs be incurred and/or paid to be eligible for forgiveness?[34]

In general, payroll costs paid or incurred during the covered period are eligible for forgiveness. For purposes of loan forgiveness, the covered period is the period beginning on the date the lender disburses the PPP loan and ending on a date selected by the borrower that occurs during the period (i) beginning on the date that is 8 weeks after the date of disbursement, and (ii) ending on the date that is 24 weeks after the date of disbursement.[35] The covered periods for a First Draw PPP Loan and a Second Draw PPP Loan cannot overlap; the borrower must use all proceeds of the First Draw PPP Loan for eligible expenses before disbursement of the Second Draw PPP Loan.

Payroll costs are considered paid on the day that paychecks are distributed or the borrower originates an ACH credit transaction. Payroll costs incurred during the borrower's last pay period of the covered period are eligible for forgiveness if paid on or before the next regular payroll date; otherwise, payroll costs must be paid during the covered period to be eligible for forgiveness. Payroll costs generally are incurred on the day the employee's pay is earned (*i.e.,* on the day the employee worked). For employees who are not performing work but are still on the borrower's payroll, payroll costs are incurred based on the schedule established by the borrower (typically, each day that the employee would have performed work).

b. Are salary, wages, or commission payments to furloughed employees; bonuses; or hazard pay during the covered period eligible for loan forgiveness?[36]

Yes. The CARES Act defines the term "payroll costs" broadly to include compensation in the form of salary, wages, commissions, or similar compensation. If a borrower pays furloughed employees their salary,

---

if they have used, or will use, the full amount of its First Draw PPP Loan (including the amount of any increase on such First Draw PPP Loan) on authorized uses on or before the expected date on which the Second Draw PPP Loan will be disbursed. *See* interim final rule on Second Draw PPP Loans. 86 FR 3712, 3717 (Jan. 14, 2021). This requirement does not apply to Second Draw PPP Loans of $150,000 or less that use the simplified forgiveness application (SBA Form 3508S).

[29] Section 333 of the Economic Aid Act repealed the CARES Act provision requiring SBA to deduct EIDL Advance Amounts received by borrowers from the forgiveness payment amounts remitted by SBA to the lender. Any EIDL Advance Amounts previously deducted from a borrower's forgiveness amount will be remitted to the lender, together with interest through the remittance date.

[30] Although the note is marked "Paid in Full," the forgiven amount is considered canceled indebtedness under section 7A(c)(1) of the Small Business Act.

[31] This subsection was originally published at 85 FR 38304, section III.1.c. (June 26, 2020) and has been modified to conform to sections 306 and 307 of the Economic Aid Act.

[32] Because section 306 of the Economic Aid Act allows the borrower to select a covered period between 8 weeks and 24 weeks, there is no longer a need to allow a borrower to apply for forgiveness "before the end of the covered period" and that text has been deleted.

[33] The Economic Aid Act is silent on what covered period applies for a borrower who does not apply for forgiveness, so SBA will apply the longest available covered period to such borrowers.

[34] This subsection was originally published at 85 FR 38304, subsection III.3.a. (June 1, 2020) and amended by 85 FR 38304, subsection III.1.d. (June 26, 2020) and has been modified to conform to section 306 of the Economic Aid Act and for readability.

[35] Amended to conform to the section 306 of Economic Aid Act change to definition of covered period. The option to elect an alternative covered period has been removed because the Economic Aid Act provided borrowers flexibility to choose the end of their covered period.

[36] This subsection was originally published at 85 FR 33004, subsection III.3.b. (June 1, 2020) and has been modified to conform to section 344 of the Economic Aid Act.

wages, or commissions during the covered period, those payments are eligible for forgiveness as long as they do not exceed an annual salary of $100,000, as prorated for the period during which the payments are made or the obligation to make the payments is incurred. The Administrator, in consultation with the Secretary, has also determined that, if an employee's total compensation does not exceed $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, the employee's hazard pay and bonuses are eligible for loan forgiveness because they constitute a supplement to salary or wages, and are thus a similar form of compensation.

c. Are there caps on the amount of loan forgiveness available for owner-employees and self-employed individuals' own payroll compensation? [37]

Yes. Forgiveness is capped at 2.5 months' worth (2.5/12) of an owner-employee or self-employed individual's 2019 or 2020 [38] compensation (up to a maximum $20,833 per individual in total across all businesses). The individual's total compensation may not exceed $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred. For example, for borrowers that elect to use an eight-week covered period, the amount of loan forgiveness requested for owner-employees and self-employed individuals' payroll compensation is capped at eight weeks' worth (8/52) of 2019 or 2020 compensation (*i.e.,* approximately 15.38 percent of 2019 or 2020 compensation) or $15,385 per individual, whichever is less, in total across all businesses. For borrowers that elect to use a ten-week covered period, the cap is ten weeks' worth (10/52) of 2019 or 2020 compensation (approximately 19.23 percent) or $19,231 per individual, whichever is less, in total across all businesses. For a covered period longer than 2.5 months, the amount of loan forgiveness requested for owner-employees and self-employed individuals' payroll compensation is capped at 2.5 months' worth (2.5/12) of 2019 or 2020

compensation (up to $20,833) in total across all businesses.

In particular, C-corporation owner-employees are capped by the prorated amount of their 2019 or 2020 [39] employee cash compensation and employer retirement and health, life, disability, vision and dental insurance contributions made on their behalf. S-corporation owner-employees are capped by the prorated amount of their 2019 or 2020 [40] employee cash compensation and employer retirement contributions made on their behalf. However, employer health, life, disability, vision and dental insurance contributions made on their behalf cannot be separately added; those payments are already included in their employee cash compensation. Schedule C or F filers are capped by the prorated amount of their owner compensation replacement, calculated based on 2019 or 2020 net profit.[41] General partners are capped by the prorated amount of their 2019 or 2020 net earnings from self-employment (reduced by claimed section 179 expense deduction, unreimbursed partnership expenses, and depletion from oil and gas properties) multiplied by 0.9235. For self-employed individuals, including Schedule C or F filers and general partners, retirement and health, life, disability, vision or dental insurance contributions are included in their net self-employment income and therefore cannot be separately added to their payroll calculation. LLC members are subject to the rules based on their LLC's tax filing status in the reference year used to determine their loan amount.

d. Are any individuals with an ownership stake in a PPP borrower exempt from application of the PPP owner-employee compensation rule when determining the amount of their compensation that is eligible for loan forgiveness? [42]

Yes, owner-employees with less than a 5 percent ownership stake in a C- or S-corporation are not subject to the owner-employee compensation rule in subsection IV.3.c. above.

---

[39] Use whichever year was used to calculate the borrower's loan amount.

[40] Use whichever year was used to calculate the borrower's loan amount.

[41] For self-employed borrowers that file Form 1040, Schedule F and have no employees, gross income may be used instead of net profit. For self-employed borrowers that file Schedule F and have employees, the difference between gross income and employee payroll costs may be used instead of net profit. *See* section 313 of the Economic Aid Act.

[42] This subsection was originally published at 85 FR 52881, section III.1. (Aug. 27, 2020) and has been modified for readability.

e. May a fishing boat owner include as payroll costs in its application for loan forgiveness any compensation paid to a crewmember who received his or her own PPP loan and is seeking forgiveness for amounts of compensation the crewmember received for performing services described in Section 3121(b)(20) of the Internal Revenue Code with respect to that owner's fishing boat? [43]

No. If a fishing boat crewmember obtains his or her own PPP loan during the fishing boat owner's covered period and seeks forgiveness of that loan based in part on compensation from a particular fishing boat owner, the fishing boat owner cannot also obtain PPP loan forgiveness based on compensation paid to that same crewmember. This restriction applies only if the crewmember is performing services described in section 3121(b)(20) of the Internal Revenue Code for the particular fishing boat owner. The fishing boat owner is responsible for determining whether any of its crewmembers received their own PPP loans during the fishing boat owner's loan forgiveness covered period.

*4. Nonpayroll Costs Eligible for Loan Forgiveness*

a. When must nonpayroll costs be incurred and/or paid to be eligible for forgiveness? [44]

A nonpayroll cost is eligible for forgiveness if it was:
  i. Paid during the covered period; or
  ii. incurred during the covered period and paid on or before the next regular billing date, even if the billing date is after the covered period.

*Example:* A borrower that received a loan before June 5, 2020 uses a 24-week covered period that begins on June 1 and ends on November 15. The borrower pays its electricity bills for June through October during the covered period and pays its November electricity bill on December 10, which is the next regular billing date. The borrower may seek loan forgiveness for its June through October electricity bills, because they were paid during the covered period. In addition, the borrower may seek loan forgiveness for the portion of its November electricity bill through November 15 (the end of the covered period), because it was

---

[43] This subsection was originally published at 85 FR 39066, subsection III.2. (June 30, 2020) and has been modified for consistency with the Economic Aid Act.

[44] This subsection was originally published at 85 FR 33004, subsection III.4.a. (June 1, 2020) and amended by 85 FR 38304, subsection III.1.e (June 26, 2020) and has been modified for readability.

---

[37] This subsection was originally published at 85 FR 33004, subsection III.3.c. (June 1, 2020) and amended by 85 FR 38304, subsection III.1.d (June 26, 2020) and has been modified to conform to sections 308 and 344 of the Economic Aid Act and for readability.

[38] For First Draw PPP loans made in 2020, borrowers use 2019. For First Draw PPP loans made in 2021 and Second Draw PPP loans, borrowers use the year (2019 or 2020) that was used to calculate the borrower's loan amount.

**8290**    **Federal Register**/ Vol. 86, No. 23 / Friday, February 5, 2021 / Rules and Regulations

incurred during the covered period and paid on the next regular billing date.

b. Are advance payments of interest on mortgage obligations eligible for loan forgiveness? [45]

No. Advance payments of interest on a covered mortgage obligation are not eligible for loan forgiveness because the CARES Act's loan forgiveness provisions regarding mortgage obligations specifically exclude ''prepayments.'' Principal on mortgage obligations is not eligible for forgiveness under any circumstances.

c. Are amounts attributable to the business operation of a tenant or sub-tenant of the PPP borrower or, in the context of home-based businesses, household expenses, eligible for forgiveness? [46]

No, the amount of loan forgiveness requested for nonpayroll costs may not include any amount attributable to the business operation of a tenant or sub-tenant of the PPP borrower or, for home-based businesses, household expenses. The examples below illustrate this rule.

*Example 1:* A borrower rents an office building for $10,000 per month and sub-leases out a portion of the space to other businesses for $2,500 per month. Only $7,500 per month is eligible for loan forgiveness.

*Example 2:* A borrower has a mortgage on an office building it operates out of, and it leases out a portion of the space to other businesses. The portion of mortgage interest that is eligible for loan forgiveness is limited to the percent share of the fair market value of the space that is not leased out to other businesses. As an illustration, if the leased space represents 25% of the fair market value of the office building, then the borrower may only claim forgiveness on 75% of the mortgage interest.

*Example 3:* A borrower shares a rented space with another business. When determining the amount that is eligible for loan forgiveness, the borrower must prorate rent and utility payments in the same manner as on the borrower's 2019 tax filings, or if a new business, the borrower's expected 2020 tax filings.

*Example 4:* A borrower works out of his or her home. When determining the amount of nonpayroll costs that are eligible for loan forgiveness, the borrower may include only the share of covered expenses that were deductible

on the borrower's 2019 tax filings, or if a new business, the borrower's expected 2020 tax filings.

d. Are rent payments to a related party eligible for loan forgiveness? [47]

Yes, as long as (1) the amount of loan forgiveness requested for rent or lease payments to a related party is no more than the amount of mortgage interest owed on the property during the covered period that is attributable to the space being rented by the business, and (2) the lease and the mortgage were entered into prior to February 15, 2020.[48] Any ownership in common between the business and the property owner is a related party for these purposes. The borrower must provide its lender with mortgage interest documentation to substantiate these payments. While rent or lease payments to a related party may be eligible for forgiveness, mortgage interest payments to a related party are not eligible for forgiveness.

*5. Reductions to Loan Forgiveness Amount*

Section 7A of the Small Business Act specifically requires certain reductions in a borrower's loan forgiveness amount based on reductions in full-time equivalent employees or in employee salary and wages. It includes an important statutory exemption for borrowers that have eliminated the reduction on or before December 31, 2020 (or, for a PPP loan made on or after December 27, 2020, not later than the last day of the loan's covered period).[49] Section 7A(d)(7) of the Small Business Act also allows exemptions from reductions in loan forgiveness amounts based on employee availability and business activity. In addition, SBA and Treasury have adopted regulatory exemptions to the reduction rules for borrowers that (1) have offered to restore employee hours at the same salary or wages, even if the employees have not accepted, (2) fired an employee for cause or have an employee that voluntarily resigns or voluntarily requests a schedule reduction, (3) eliminate reductions by December 31, 2020 or, for a PPP loan made after December 27, 2020, the last day of the

loan's covered period, or (4) have a PPP loan of $50,000 or less. The instructions to the loan forgiveness applications and the guidance below explain how the statutory forgiveness reduction formulas work.

a. Will a borrower's loan forgiveness amount be reduced if the borrower reduced the hours of an employee, then offered to restore the reduction in hours, but the employee declined the offer? [50]

No. In calculating the loan forgiveness amount, a borrower may exclude any reduction in full-time equivalent employee headcount that is attributable to an individual employee if:

i. The borrower made a good faith, written offer to restore the reduced hours of such employee;

ii. the offer was for the same salary or wages and same number of hours as earned by such employee in the last pay period prior to the reduction in hours;

iii. the offer was rejected by such employee; and

iv. the borrower has maintained records documenting the offer and its rejection.

b. What effect does a reduction in a borrower's number of full-time equivalent (FTE) employees have on the loan forgiveness amount? [51]

In general, a reduction in FTE employees during the covered period reduces the loan forgiveness amount by the same percentage as the percentage reduction in FTE employees. For both First Draw PPP Loans and Second Draw PPP Loans, the borrower must first select a reference period: (i) February 15, 2019 through June 30, 2019; (ii) January 1, 2020 through February 29, 2020; or (iii) in the case of a seasonal employer,[52] either of the two preceding methods or a consecutive 12-week period between February 15, 2019 and February 15, 2020.[53] If the average number of FTE employees during the covered period is less than during the

---

[45] This subsection was originally published at 85 FR 33004, subsection III.4.b. (June 1, 2020).

[46] This subsection was originally published at 85 FR 52881, subsection III.2.a. (Aug. 27, 2020).

[47] This subsection was originally published at 85 FR 52881, subsection III.2.b. (Aug. 27, 2020) and has been modified for readability.

[48] In this context, the related party itself would not also be eligible to request forgiveness for this amount.

[49] This subsection was originally published at 85 FR 33004, subsection III.5. (June 1, 2020) and amended by 85 FR 38304, subsection III.1.f. (June 26, 2020), and has been modified to conform to subsequent rules or guidance and section 311 of the Economic Aid Act.

[50] This subsection was originally published at 85 FR 33004, subsection III.5.a. (June 1, 2020) and amended by 85 FR 38304, section III.5. (June 26, 2020) and has been modified for readability.

[51] This subsection was originally published at 85 FR 33004, subsection III.5.b. (June 1, 2020) and amended by 85 FR 38304, section III.f. (June 26, 2020) and has been modified to conform to sections 306, 311 and 336 of the Economic Aid Act and for readability.

[52] The term ''seasonal employer'' is defined in section 7(a)(36)(A)(xiii) of the Small Business Act.

[53] This decision to permit seasonal employers to use, as a reference period, any consecutive 12-week period between February 15, 2019 and February 15, 2020 is an exercise of the Secretary's rulemaking authority under section 1109 of the CARES Act. This reference period is consistent with section 336 of the Economic Aid Act, which amends the calculation of the maximum loan amount for seasonal employers.

reference period, the total eligible expenses available for forgiveness is reduced proportionally by the percentage reduction in FTE employees. For example, if a borrower had 10.0 FTE employees during the reference period and this declined to 8.0 FTE employees during the covered period, the percentage of FTE employees declined by 20 percent and thus only 80 percent of otherwise eligible expenses are available for forgiveness.

Borrowers are exempted from the loan forgiveness reduction arising from a proportional reduction in FTE employees during the covered period if the borrower is able to document in good faith the following: (1) An inability to rehire individuals who were employees of the borrower on February 15, 2020; and (2) an inability to hire similarly qualified individuals for unfilled positions on or before December 31, 2020 (or, for a PPP loan made on or after December 27, 2020, not later than the last day of the loan's covered period).[54] Borrowers are required to inform the applicable state unemployment insurance office of any employee's rejected rehire offer within 30 days of the employee's rejection of the offer. The documents that borrowers should maintain to show compliance with this exemption include, but are not limited to, the written offer to rehire an individual, a written record of the offer's rejection, and a written record of efforts to hire a similarly qualified individual.

Borrowers are also exempted from the loan forgiveness reduction arising from a reduction in the number of FTE employees during the covered period if the borrower is able to document in good faith an inability to return to the same level of business activity as the borrower was operating at before February 15, 2020, due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made on or after December 27, 2020, not later than the last day of the loan's covered period)[55] by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention (CDC), or the Occupational Safety and Health Administration related to the maintenance of standards for sanitation, social distancing, or any other worker or

customer safety requirement related to COVID–19 (COVID Requirements or Guidance). Specifically, borrowers that can certify that they have documented in good faith that their reduction in business activity during the covered period stems directly or indirectly from compliance with such COVID Requirements or Guidance are exempt from any reduction in their forgiveness amount stemming from a reduction in FTE employees during the covered period. Such documentation must include copies of applicable COVID Requirements or Guidance for each business location and relevant borrower financial records.

*Example:* A PPP borrower is in the business of selling beauty products both online and at its physical store. During the covered period, the local government where the borrower's store is located orders all non-essential businesses, including the borrower's business, to shut down their stores, based in part on COVID–19 guidance issued by the CDC in March 2020. Because the borrower's business activity during the covered period was reduced compared to its activity before February 15, 2020 due to compliance with COVID Requirements or Guidance, the borrower satisfies the exemption and will not have its forgiveness amount reduced because of a reduction in FTEs during the covered period, if the borrower in good faith maintains records regarding the reduction in business activity and the local government's shutdown orders that reference a COVID Requirement or Guidance as described above.

c. What does "full-time equivalent employee" mean?[56]

Full-time equivalent employee means an employee who works 40 hours or more, on average, each week. The hours of employees who work less than 40 hours are calculated as proportions of a single full-time equivalent employee and aggregated, as explained further below in subsection IV.5.d.

d. How should a borrower calculate its number of FTE employees?[57]

Borrowers seeking forgiveness must document their average number of FTE employees during the covered period and their selected reference period. If applicable, a borrower must perform this calculation for both its First Draw PPP Loan and Second Draw PPP Loan.

For purposes of this calculation, borrowers must divide the average number of hours paid for each employee per week by 40, capping this quotient at 1.0. For example, an employee who was paid 48 hours per week during the covered period would be considered to be an FTE employee of 1.0.

For employees who were paid for less than 40 hours per week, borrowers may choose to calculate the full-time equivalency in one of two ways. First, the borrower may calculate the average number of hours a part-time employee was paid per week during the covered period. For example, if an employee was paid for 30 hours per week on average during the covered period, the employee could be considered to be an FTE employee of 0.75. Similarly, if an employee was paid for ten hours per week on average during the covered period, the employee could be considered to be an FTE employee of 0.25. Second, for administrative convenience, borrowers may elect to use a full-time equivalency of 0.5 for each part-time employee. The Administrator recognizes that not all borrowers maintain hours-worked data, and has decided to afford such borrowers this flexibility in calculating the full-time equivalency of their part-time employees.

Borrowers may select only one of these two methods, and must apply that method consistently to all of their part-time employees for the covered period and the selected reference period. In either case, the borrower shall provide the aggregate total of FTE employees for both the selected reference period and the covered period by adding together all of the employee-level FTE employee calculations. The borrower must then divide the average FTE employees during the covered period by the average FTE employees during the selected reference period, resulting in the reduction quotient.

e. What effect does a borrower's reduction in employees' salary or wages have on the loan forgiveness amount?[58]

Under section 7A(d)(3) of the Small Business Act, a reduction in an employee's salary or wages in excess of 25 percent will generally result in a reduction in the loan forgiveness amount, unless an exception applies. Specifically, for each new employee in 2020 and 2021, as well as each existing employee who was not paid more than the annualized equivalent of $100,000

---

[54] This text was originally published at 85 FR 38304, subsection III.1.f. (June 26, 2020) and has been modified to conform to section 311 of the Economic Aid Act.

[55] This text was originally published at 85 FR 38304, subsection III.1.f. (June 26, 2020) and has been modified to conform to section 311 the Economic Aid Act.

[56] This subsection was originally published at 85 FR 33004, subsection III.5.c. (June 1, 2020) and has been modified for readability.

[57] This subsection was originally published at 85 FR 33004, subsection III.5.d. (June 1, 2020) and has been modified to conform to section 311 of the Economic Aid Act and for readability.

[58] This subsection was originally published at 85 FR 33004, subsection III.5.e. (June 1, 2020) and has been modified to conform to section 306 of the Economic Aid Act and for readability.

in any pay period in 2019, the borrower must reduce the total forgiveness amount by the total dollar amount of the salary or wage reductions that are in excess of 25 percent of base salary or wages of the employee during the most recent full quarter during which the employee was employed before the covered period (the reference period), subject to exceptions for borrowers who restore reduced wages or salaries (see g. below). This reduction calculation is performed on a per employee basis, not in the aggregate. Additionally, this reduction is performed based on the covered period and reference period applicable to the First Draw Loan or Second Draw Loan.

*Example:* A borrower is using a 24-week covered period. This borrower reduced a full-time employee's weekly salary from $1,000 per week during the reference period to $700 per week during the covered period. The employee continued to work on a full-time basis during the covered period, with an FTE of 1.0. In this case, the first $250 (25 percent of $1,000) is exempted from the loan forgiveness reduction. The borrower seeking forgiveness would list $1,200 as the salary/hourly wage reduction for that employee (the extra $50 weekly reduction multiplied by 24 weeks).[59]

*Example:* A borrower has elected to use an eight-week covered period. This borrower reduced a full-time employee's weekly salary from $1,000 per week during the reference period to $700 per week during the covered period. The employee continued to work on a full-time basis during the covered period, with an FTE of 1.0. In this case, the first $250 (25 percent of $1,000) is exempted from the loan forgiveness reduction. The borrower seeking forgiveness would list $400 as the salary/hourly wage reduction for that employee (the extra $50 weekly reduction multiplied by eight weeks).

f. How should borrowers seeking loan forgiveness account for the reduction based on a reduction in the number of employees (section 7A(d)(2)) relative to the reduction relating to salary and wages (section 7A(d)(3))? [60]

To ensure that borrowers are not doubly penalized, the salary/wage reduction applies only to the portion of the decline in employee salary and wages that is *not* attributable to the FTE reduction.

*Example:* An hourly wage employee had been working 40 hours per week during the borrower selected reference period (FTE employee of 1.0) and the borrower reduced the employee's hours to 20 hours per week during the covered period (FTE employee of 0.5). There was no change to the employee's hourly wage during the covered period. Because the hourly wage did not change, the reduction in the employee's total wages is entirely attributable to the FTE employee reduction and the borrower is not required to conduct a salary/wage reduction calculation for that employee.

g. If a borrower restores reductions made to employee salaries and wages or FTE employees, can the borrower avoid a reduction in its loan forgiveness amount? [61]

Yes. Section 7A(d)(5) of the Small Business Act provides that if certain employee salaries and wages were reduced between February 15, 2020 and April 26, 2020 (the safe harbor period) but the borrower eliminates those reductions by December 31, 2020 (or, for a PPP loan made on or after December 27, 2020, by the last day of the loan's covered period), the borrower is exempt from any reduction in loan forgiveness amount that would otherwise be required due to reductions in salaries and wages under section 7A(d)(3) of the Small Business Act. Similarly, if a borrower eliminates any reductions in FTE employees occurring during the safe harbor period by December 31, 2020 (or, for a PPP loan made on or after December 27, 2020, by last day of the loan's covered period), the borrower is exempt from any reduction in loan forgiveness amount that would otherwise be required due to reductions in FTE employees.[62]

This provision implements section 7A(d)(5) of the Small Business Act, which gives borrowers an opportunity to cure reductions in FTEs, salary/wage reductions in excess of 25 percent, or both, using the applicable methodology set forth in section 7A(d)(5). The Small Business Act provides that the reduction in FTEs or the reduction in salary/hourly wages must be eliminated not later than December 31, 2020 (or, for a PPP loan made on or after December 27, 2020, not later than the last day of the loan's covered period). This does not change or affect the requirement that at least 60 percent of the loan forgiveness amount must be attributable to payroll costs.

h. Will a borrower's loan forgiveness amount be reduced if an employee is fired for cause, voluntarily resigns, or voluntarily requests a schedule reduction? [63]

No. When an employee of the borrower is fired for cause, voluntarily resigns, or voluntarily requests a reduced schedule during the covered period (FTE reduction event), the borrower may count such employee at the same full-time equivalency level before the FTE reduction event when calculating the section 7A(d)(2) FTE employee reduction penalty. Borrowers that avail themselves of this *de minimis* exemption shall maintain records demonstrating that each such employee was fired for cause, voluntarily resigned, or voluntarily requested a schedule reduction. The borrower shall provide such documentation upon request.

i. Is a borrower with a loan of $50,000 or less exempt from any reductions to the loan forgiveness amount? [64]

Yes. A borrower with a loan of $50,000 or less, other than any borrower

---

[59] This subsection previously provided that a borrower must account for the salary reduction for the full 24-week covered period if the borrower applies for forgiveness before the end of the covered period. 85 FR 38304, 38308 (June 26, 2020). This text has been removed because section 306 of the Economic Aid Act allows the borrower to select a covered period between 8 and 24 weeks and there is no need to apply for forgiveness before the end of the covered period.

[60] This subsection was originally published at 85 FR 33004, subsection III.5.e. (June 1, 2020) and has been modified for readability.

[61] This subsection was originally published at 85 FR 33004, subsection III.5.g. (June 1, 2020) and has been modified to conform to section 311 of the Economic Aid Act.

[62] In light of the flexibility the Small Business Act provides to borrowers with respect to their selection of the reference time period for any potential

reduction in loan forgiveness, and the statutory authority for SBA and the Treasury to grant *de minimis* exemptions from this requirement, if the borrower meets the requirements for the FTE reduction safe harbor, it will not be subject to any loan forgiveness reduction based on a reduction in FTE employees.

[63] This subsection was originally published at 85 FR 33004, subsection III.5.h. (June 1, 2020) and has been modified to conform to section 304 of the Economic Aid Act and for readability.

[64] This subsection was originally published at 85 FR 66214, subsection III.1.b. (Oct. 19, 2020) and has been modified to conform to sections 304 and 307 the Economic Aid Act and for readability. As described further below in subsection 6.a and 6.b, borrowers with loans up to $150,000 may use SBA Form 3508S. However, only borrowers with loans of $50,000 or less, other than any borrower that together with its affiliates received First Draw Loans totaling $2 million or more or Second Draw Loans totaling $2 million or more, are exempt from any reductions to the loan forgiveness amount. Accordingly, the exemptions in this subsection are

that together with its affiliates received First Draw PPP Loans totaling $2 million or more or Second Draw PPP Loans totaling $2 million or more, is exempt from any reductions in the borrower's loan forgiveness amount based on reductions in FTE employees (section 7A(d)(2) of the Small Business Act) or reductions in employee salary or wages (section 7A(d)(3) of the Small Business Act) that would otherwise apply. As such, subsections IV.5.a. through IV.5.h. above do not apply to qualifying borrowers with loans of $50,000 or less.

*6. Documentation Requirements*

a. What must borrowers submit for forgiveness of their PPP loans? [65]

The loan forgiveness application form details the documentation requirements; specifically, documentation each borrower must submit with its Loan Forgiveness Application (SBA Form 3508, 3508EZ, 3508S as applicable, or lender equivalent), documentation each borrower is required to maintain and make available upon request, and documentation each borrower may voluntarily submit with its loan forgiveness application. An eligible borrower that received a loan of $150,000 or less should use the SBA Form 3508S and shall not, at the time of its application for loan forgiveness, be required to submit any application or documentation in addition to the certification and information required by section 7A(*l*)(1)(A) of the Small Business Act. However, an eligible borrower that received a Second Draw loan of $150,000 or less and is using the SBA Form 3508S must, before or at the time of its application for loan forgiveness, submit documentation sufficient to establish that the borrower experienced a reduction in revenue as provided in subsection (g)(2)(v) of the interim final rule on Second Draw PPP Loans, unless the borrower already provided such documentation at the time of its application for the Second Draw PPP Loan.[66] Such documentation

may include relevant tax forms, including annual tax forms, or, if relevant tax forms are not available, a copy of the applicant's quarterly income statements or bank statements.

For Second Draw PPP Loans, all borrowers must certify on their loan forgiveness application that the borrower used all First Draw PPP Loan amounts on eligible expense prior to disbursement of the Second Draw PPP Loan. For Second Draw PPP Loans in excess of $150,000, the borrower must submit its loan forgiveness application for the First Draw PPP Loan before or simultaneously with the loan forgiveness application for the Second Draw PPP Loan, even if the calculated forgiveness amount for the First Draw PPP Loan is zero.

b. What documentation are borrowers who are individuals with self-employment income who file a Form 1040, Schedule C or F required to submit to their lender with their request for loan forgiveness? [67]

For borrowers that received loans of $150,000 or less that use the SBA Form 3508S, the borrower must submit the certification and information required by section 7A(*l*)(1)(A) of the Small Business Act and, for a Second Draw PPP Loan, revenue reduction documentation if such documentation was not provided at the time of application.[68] All other borrowers must submit the certification required by section 7A(e)(3) of the Small Business Act, and (if the borrower has employees) Form 941 and state quarterly business and individual employee wage reporting and unemployment insurance tax forms or equivalent payroll processor records that best correspond to the covered period (with evidence of any retirement and group health, life, disability, vision, and dental insurance contributions). Whether or not the borrower has employees, the borrower must submit evidence of business rent, business mortgage interest payments on real or personal property, business utility payments, or payments for a covered operations expenditure, covered property damage cost, covered supplier cost, or covered worker protection expenditure during the covered period if the borrower used loan proceeds for those purposes. This documentation may include cancelled checks, payment

receipts, transcripts of accounts, purchase orders, orders, invoices, or other documents verifying payments on nonpayroll costs.

For all loans, the 2019 or 2020 Form 1040 Schedule C or F that the borrower provided at the time of the PPP loan application must be used to determine the amount of net profit allocated to the owner for the covered period.[69]

c. What additional documentation must a borrower submit when the President of the United States, Vice President of the United States, the head of an Executive department, or a Member of Congress, or the spouse of any of the preceding, directly or indirectly holds a controlling interest in the borrower? [70]

For any First Draw PPP loan made before December 27, 2020, if the President of the United States, Vice President of the United States, the head of an Executive department, or a Member of Congress, or the spouse of any such person as determined under applicable common law, directly or indirectly held a controlling interest in the borrower on the date of the loan application, the borrower is required to make certain disclosures following submission of the borrower's application for loan forgiveness.

For purposes of this section, the term "controlling interest" means owning, controlling, or holding not less than 20 percent, by vote or value, of the outstanding amount of any class of equity interest in a borrower. For purposes of making this determination, the securities owned, controlled or held by the individual and spouse shall be aggregated. The term "equity interest" means (1) a share in a borrower, without regard to whether the share is transferable or classified as stock or anything similar, (2) a capital or profit interest in a limited liability company or partnership, or (3) a warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share of interest described in (1) or (2), respectively. The term "Executive department" has the meaning given the term in section 101 of title 5, United States Code. The term "Member of Congress" means a Member of the Senate or House of Representatives, a Delegate to the House of

limited to qualifying borrowers with loans of $50,000 or less. A borrower with a loan greater than $50,000 and up to $150,000 must comply with the requirements under the Paycheck Protection Program, including calculating any reduction in forgiveness amounts based on reductions in FTEs or employee salary or wages.

[65] This subsection was originally published at 85 FR 33004, section III.6. (June 1, 2020) and amended at 85 FR 38304, subsection III.1.g. (June 26, 2020) and has been modified to conform to sections 304 and 307 of the Economic Aid Act and for readability.

[66] *See* interim final rule on Second Draw PPP Loans. 86 FR 3712, 3721 (Jan. 14, 2021). Subsection (g)(2)(v) of the interim final rule on Second Draw PPP Loans implements section 7(a)(37)(J)(v) of the Small Business Act.

[67] This subsection was originally published at 85 FR 21747, subsection III.1.g. (Apr. 20, 2020) and has been modified to conform to sections 304, 307, 308, and 313 of the Economic Aid Act and for readability.

[68] *See* subsection (g)(2)(v) of the interim final rule on Second Draw PPP Loans. 86 FR 3712, 3721 (Jan. 14, 2021).

[69] For self-employed borrowers that file Form 1040, Schedule F and have no employees, gross income may be used instead of net profit. For self-employed borrowers that file Schedule F and have employees, the difference between gross income and employee payroll costs may be used instead of net profit.

[70] This subsection has been added to conform to section 322 of the Economic Aid Act.

Representatives, and the Resident Commissioner from Puerto Rico.

If the borrower submitted a loan forgiveness application to its PPP lender before December 27, 2020, then the principal executive officer, or individual performing a similar function, of the borrower shall submit to its PPP lender an SBA Form 3508D disclosing the controlling interest(s) not later than January 26, 2021. If the PPP lender has already submitted a forgiveness decision to SBA, the lender shall promptly transmit the SBA Form 3508D to SBA. Otherwise, the PPP lender shall transmit the SBA Form 3508D to SBA at the time the lender issues its forgiveness decision to SBA. If the borrower submits a loan forgiveness application to its PPP lender on or after December 27, 2020, then the principal executive officer, or individual performing a similar function, of the borrower shall submit to its PPP lender an SBA Form 3508D disclosing the controlling interest(s) not later than 30 days after submitting the application. The PPP lender shall transmit the SBA Form 3508D to SBA with the PPP lender's forgiveness decision. Alternatively, the PPP lender may transmit the completed Form 3508D to SBA when received.

An entity is prohibited from receiving a PPP loan after December 27, 2020 if a controlling interest is held directly or indirectly by the President of the United States, Vice President of the United States, the head of an Executive department, or a Member of Congress, or the spouse of any of the preceding.[71]

### 7. Lender Hold Harmless[72]

Under what circumstances may a lender rely on a certification or documentation submitted by an eligible PPP borrower that received a PPP loan?

A lender may rely on any certification or documentation submitted by a PPP applicant or an eligible PPP borrower that received a PPP loan that—(a) is submitted pursuant to all applicable statutory requirements, regulations, and guidance related to a PPP loan, including sections 7(a)(36), 7(a)(37), and 7A of the Small Business Act; and (b) attests that the PPP applicant or eligible PPP borrower, as applicable, has accurately provided the certification or documentation to the lender in accordance with the statutory

requirements, regulations, and guidance described in (a). With respect to a lender that relies on a borrower certification or documentation meeting the requirements of this subsection, an enforcement action may not be taken against the lender related to the PPP loan, and the lender shall not be subject to any penalties relating to loan origination or forgiveness of the PPP loan, if:

(i) The lender acts in good faith relating to loan origination or forgiveness of the PPP loan based on that reliance; and

(ii) all other relevant Federal, State, local, and other statutory and regulatory requirements applicable to the lender are satisfied with respect to the PPP loan.[73]

## V. Paycheck Protection Program SBA Loan Review Procedures and Related Borrower and Lender Responsibilities

### 1. SBA Reviews of Individual PPP Loans

#### a. Will SBA review individual PPP loans?[74]

Yes. SBA may review any PPP loan, as the Administrator deems appropriate, as described below.

#### b. What borrower representations and statements will SBA review?[75]

The Administrator is authorized to review the following:

*Borrower Eligibility:* The Administrator may review whether a borrower is eligible for the PPP loan based on the provisions of the CARES Act, the Economic Aid Act, the rules and guidance available at the time of the borrower's PPP loan application, and the terms of the borrower's loan application. See FAQ 17 (posted April 6, 2020).[76] These include, but are not limited to, SBA's regulations under 13 CFR 120.110 (as modified and clarified by the PPP Interim Final Rules) and 13 CFR 121.301(f) and the information, certifications, and representations on the Borrower Application Form (SBA Form 2483, 2483–SD, or lender's equivalent form) and the Loan Forgiveness Application Form (SBA

Form 3508, 3508EZ, 3508S, or lender's equivalent form). With respect to a Second Draw PPP Loan, this may include a review of whether the borrower experienced the 25 percent revenue reduction required under the Economic Aid Act.

*Loan Amounts and Use of Proceeds:* The Administrator may review whether a borrower calculated the loan amount correctly and used loan proceeds for the allowable uses specified in the CARES Act and the Economic Aid Act.

*Loan Forgiveness Amounts:* The Administrator may review whether a borrower is entitled to loan forgiveness in the amount claimed on the borrower's Loan Forgiveness Application (SBA Form 3508, 3508EZ, 3508S, or lender's equivalent form).

#### c. When will SBA undertake a loan review?[77]

For a PPP loan of any size, SBA may undertake a review at any time in SBA's discretion. For example, SBA may review a loan if the loan documentation submitted to SBA by the lender or any other information indicates that the borrower may be ineligible for a PPP loan, or may be ineligible to receive the loan amount or loan forgiveness amount claimed by the borrower.[78] Additionally, section 7A(l)(1)(E) of the Small Business Act expressly provides that SBA may review and audit PPP loans of $150,000 or less and access any records the borrower is required to retain. SBA may, in its discretion, review a borrower's First Draw PPP Loan and Second Draw PPP Loan at the same time or at different times. For loans of more than $150,000, as noted on the loan forgiveness application forms, the borrower must retain PPP documentation in its files for six years after the date the loan is forgiven or repaid in full. For loans of $150,000 and under, the borrower must retain records relevant to the form that prove compliance with the requirements of section 7(a)(36) or 7(a)(37), as applicable, of the Small Business Act— for employment records, for the 4-year period following submission of the loan forgiveness application, and for other records, for the 3-year period following submission of the loan forgiveness application. All borrowers must permit authorized representatives of SBA, including representatives of its Office of Inspector General, to access such files upon request. Additionally, all borrowers must provide documentation

---

[71] *See* subsection III.B.2.a. of the consolidated interim final rule implementing updates to the Paycheck Protection Program, 86 FR 3692, 3698 (Jan. 14, 2021); subsection III.e.6. of the interim final rule for Second Draw PPP loans, 86 FR 3712, 3719 (Jan. 14, 2021).

[72] This section has been added to conform to section 305 of the Economic Aid Act.

[73] This provision is effective as if included in the CARES Act and shall apply to any loan made pursuant to section 7(a)(36) or 7(a)(37) of the Small Business Act before, on, or after the date of enactment of the Economic Aid Act, including forgiveness of such a loan.

[74] This subsection was originally published at 85 FR 33010, subsection III.1.a. (June 1, 2020).

[75] This subsection was originally published at 85 FR 33010, subsection III.1.b. (June 1, 2020) and amended by 85 FR 38304, subsection III.2.a. (June 26, 2020) and 85 FR 66214, subsection III.2.a. (Oct. 19, 2020) and has been modified to conform to section 311 of the Economic Aid Act.

[76] *https://www.sba.gov/document/support—faq-lenders-borrowers.*

[77] This subsection was originally published at 85 FR 33010, subsection III.1.c. (June 1, 2020) and has been modified to conform to sections 307 and 311 of the Economic Aid Act.

[78] 13 CFR 120.524(c).

independently to a lender to satisfy relevant Federal, State, local or other statutory or regulatory requirements or in connection with an SBA loan review.

Lenders must comply with applicable SBA requirements for records retention, which for Federally regulated lenders means compliance with the requirements of their federal financial institution regulator and for SBA supervised lenders (as defined in 13 CFR 120.10 and including PPP lenders with authority under SBA Form 3507) means compliance with 13 CFR 120.461.

d. Will I have the opportunity to respond to SBA's questions in a review? [79]

Yes. If loan documentation submitted to SBA by the lender or any other information indicates that the borrower may be ineligible for a PPP loan or may be ineligible to receive the loan amount or loan forgiveness amount claimed by the borrower, SBA will require the lender to contact the borrower in writing to request additional information. SBA may also request information directly from the borrower. The lender will provide any additional information provided to it by the borrower to SBA. SBA will consider all information provided by the borrower in response to such an inquiry.

Failure to respond to SBA's inquiry may result in a determination that the borrower was ineligible for a PPP loan or ineligible to receive the loan amount or loan forgiveness amount claimed by the borrower.

e. If SBA determines that a borrower is ineligible for a PPP loan, can the loan be forgiven? [80]

No. If SBA determines that a borrower is ineligible for the PPP loan, SBA will direct the lender to deny the loan forgiveness application. An SBA determination that a borrower is ineligible for a First Draw PPP Loan may also result in an SBA determination that the borrower is ineligible for any Second Draw PPP Loan, and SBA may direct the lender to deny any loan forgiveness application submitted for the Second Draw PPP Loan. Further, if SBA determines that the borrower is ineligible for the loan amount or loan forgiveness amount claimed by the borrower, SBA will direct the lender to deny the loan forgiveness application in whole or in part, as appropriate. SBA may also seek repayment of the

outstanding PPP loan balance or pursue other available remedies.

Section 7A(b) of the Small Business Act provides for forgiveness of a PPP loan only if the borrower is an "eligible recipient." The Administrator has determined that to be an eligible recipient that is entitled to forgiveness under section 7A(b), the borrower must be an "eligible recipient" under section 7(a)(36) and section 7(a)(37) of the Small Business Act and rules and guidance available at the time of the borrower's loan application. This requirement promotes the public interest, aligns SBA's functions with other governmental policies, and appropriately carries out the PPP provisions of the CARES Act and the Economic Aid Act, including by preventing evasion of the requirements for PPP loan eligibility and ensuring program integrity with respect to this emergency financial assistance program. It is also consistent with the CARES Act's nonrecourse provision, 15 U.S.C. 636(a)(36)(F)(v), which limits SBA's recourse against individual shareholders, members, or partners of a PPP borrower for nonpayment of a PPP loan only if the borrower is an eligible recipient of the loan.

f. May a borrower appeal SBA's determination that the borrower is ineligible for a PPP loan or ineligible for the loan amount or the loan forgiveness amount claimed by the borrower? [81]

Yes. SBA has issued a separate interim final rule addressing this process.[82]

*2. The Loan Forgiveness Process for Lenders*

a. What should a lender review? [83]

When a borrower submits SBA Form 3508 or lender's equivalent form, the lender shall:

i. Confirm receipt of the borrower certifications contained in the SBA Form 3508 or lender's equivalent form.

ii. Confirm receipt of the documentation the borrower must submit to aid in verifying payroll and nonpayroll costs, as specified in the instructions to the SBA Form 3508 or lender's equivalent form.

iii. Confirm the borrower's calculations on the borrower's SBA Form 3508 or lender's equivalent form, including the dollar amount of the (A) Cash Compensation, Non-Cash Compensation, and Compensation to Owners claimed on Lines 1, 4, 6, 7, 8, and 9 on PPP Schedule A and (B) Business Mortgage Interest Payments, Business Rent or Lease Payments, Business Utility Payments, Covered Operations Expenditures, Covered Property Damage Costs, Covered Supplier Costs, and Covered Worker Protection Expenditures claimed on Lines 2 through 8 on the PPP Loan Forgiveness Calculation Form, by reviewing the documentation submitted with the SBA Form 3508 or lender's equivalent form.

iv. Confirm that the borrower made the calculation on Line 14 of the SBA Form 3508 or lender's equivalent form correctly, by dividing the borrower's Eligible Payroll Costs claimed on Line 1 by 0.60.

When the borrower submits SBA Form 3508EZ or lender's equivalent form, the lender shall:

i. Confirm receipt of the borrower certifications contained in the SBA Form 3508EZ or lender's equivalent form.

ii. Confirm receipt of the documentation the borrower must submit to aid in verifying payroll and nonpayroll costs, as specified in the instructions to the SBA Form 3508EZ or lender's equivalent form.

iii. Confirm the borrower's calculations on the borrower's SBA Form 3508EZ or lender's equivalent form, including the dollar amount of the Payroll Costs, Business Mortgage Interest Payments, Business Rent or Lease Payments, Business Utility Payments, Covered Operations Expenditures, Covered Property Damage Costs, Covered Supplier Costs, and Covered Worker Protection Expenditures claimed on Lines 1 through 8 of the SBA Form 3508EZ or lender's equivalent form, by reviewing the documentation submitted with the SBA Form 3508EZ or lender's equivalent form.

iv. Confirm that the borrower made the calculation on Line 11 of the SBA Form 3508EZ or lender's equivalent form correctly, by dividing the borrower's Eligible Payroll Costs claimed on Line 1 by 0.60.

Providing an accurate calculation of the loan forgiveness amount is the responsibility of the borrower, and the borrower attests to the accuracy of its reported information and calculations on the Loan Forgiveness Application Form. Lenders are expected to perform

---

[79] This subsection was originally published at 85 FR 33010, subsection III.1.d. (June 1, 2020).

[80] This subsection was originally published at 85 FR 33010, subsection III.1.e. (June 1, 2020) and has been modified for readability.

[81] This subsection was originally published at 85 FR 33010, subsection III.1.f. (June 1, 2020) and has been modified to reflect the issuance of the interim final rule on appeals of SBA loan review decisions under the Paycheck Protection Program. 85 FR 52883 (Aug. 27, 2020).

[82] *See* 85 FR 52883 (Aug. 27, 2020).

[83] This subsection was originally published at 85 FR 33010, subsection III.2.a. (June 1, 2020) and amended by 85 FR 38304, subsection III.2.b. (June 26, 2020) and 85 FR 66214, subsection III.2.b. (Oct. 19, 2020) and has been modified to conform to sections 307 and 311 of the Economic Aid Act.

a good-faith review, in a reasonable time, of the borrower's calculations and supporting documents concerning amounts eligible for loan forgiveness. For example, minimal review of calculations based on a payroll report by a recognized third-party payroll processor would be reasonable. By contrast, if payroll costs are not documented with such recognized sources, more extensive review of calculations and data would be appropriate. The borrower shall not receive forgiveness without submitting all required documentation to the lender.

As the First Interim Final Rule [84] and section IV.7 above indicate, lenders may rely on borrower representations. If the lender identifies errors in the borrower's calculation or material lack of substantiation in the borrower's supporting documents, the lender should work with the borrower to remedy the issue. As stated in paragraph III.3.c of the First Interim Final Rule, the lender does not need to independently verify the borrower's reported information if the borrower submits documentation supporting its request for loan forgiveness and attests that it accurately verified the payments for eligible costs.

When a borrower submits SBA Form 3508S or lender's equivalent form, the lender shall:

i. Confirm receipt of the borrower certifications contained in the SBA Form 3508S or lender's equivalent form.

ii. In the case of a Second Draw PPP Loan for which the borrower did not provide documentation of revenue reduction with its application and the lender did not conduct a review of the documentation at the time of application, confirm the dollar amount and percentage of the borrower's revenue reduction by performing a good faith review, in a reasonable time, of the borrower's calculations and supporting documents concerning the borrower's revenue reduction.[85]

If the lender identifies errors in the borrower's calculation or material lack of substantiation in the borrower's supporting documents regarding revenue reduction, the lender should work with the borrower to remedy the issue. Providing an accurate calculation of the loan forgiveness amount is the responsibility of the borrower, and the borrower attests to the accuracy of its reported information and calculations on the Loan Forgiveness Application.

The borrower shall not receive forgiveness without submitting all required documentation to the lender.

As the First Interim Final Rule [86] and section IV.7 above indicate, lenders may rely on borrower representations. As stated in paragraph III.3.c of the First Interim Final Rule, the lender does not need to independently verify the borrower's reported information if the borrower submits documentation supporting its request for loan forgiveness (if required) and attests that it accurately verified the payments for eligible costs.

b. What is the timeline for the lender's decision on a loan forgiveness application? [87]

The lender must issue a decision to SBA on a loan forgiveness application not later than 60 days after receipt of a complete loan forgiveness application from the borrower. That decision may take the form of an approval (in whole or in part); denial; or (if directed by SBA) a denial without prejudice due to a pending SBA review of the loan for which forgiveness is sought. In the case of a denial without prejudice, the borrower may subsequently request that the lender reconsider its application for loan forgiveness, unless SBA has determined that the borrower is ineligible for a PPP loan. The Administrator has determined that this process appropriately balances the need for efficient processing of loan forgiveness applications with considerations of program integrity, including affording SBA the opportunity to ensure that borrower representations and certifications (including concerning eligibility for a PPP loan) were accurate.

When the lender issues its decision to SBA approving the application (in whole or in part), it must include the following:

i. For applications submitted using the SBA Form 3508 or lender's equivalent form:

(1) The PPP Loan Forgiveness Calculation Form;

(2) PPP Schedule A;

(3) the (optional) PPP Borrower Demographic Information Form (if submitted to the lender); and

(4) the SBA Form 3508D, if applicable.

ii. For applications submitted using the SBA Form 3508EZ, 3508S, or lender's equivalent form:

(1) The SBA Form 3508EZ, 3508S, or lender's equivalent form;

(2) the (optional) Borrower Demographic Information Form (if submitted to the lender); and

(3) the SBA Form 3508D, if applicable.

The lender must confirm that the information provided by the lender to SBA accurately reflects lender's records for the loan, that the lender has made its decision in accordance with the requirements set forth in subsection V.2.a., and for a Second Draw PPP Loan of $150,000 or less, if applicable, the lender has reviewed the revenue reduction documentation provided by the borrower and confirmed the dollar amount and percentage of the borrower's revenue reduction. If the lender determines that the borrower is entitled to forgiveness of some or all of the amount applied for under the statute and applicable regulations, the lender must request payment from SBA at the time the lender issues its decision to SBA. SBA will, subject to any SBA review of the borrower's loan(s) or loan application(s), remit the appropriate forgiveness amount to the lender, plus any interest accrued through the date of payment, not later than 90 days after the lender issues its decision to SBA. The EIDL Advance Amount received by the borrower will not reduce the amount of forgiveness to which the borrower is entitled and will not be deducted from the forgiveness payment amount that SBA remits to the Lender.[88] The lender is responsible for notifying the borrower of remittance by SBA of the loan forgiveness amount (or that SBA determined that no amount of the loan is eligible for forgiveness) and the date on which the borrower's first payment is due, if applicable.

When the lender issues its decision to SBA determining that the borrower is not entitled to forgiveness in any amount, the lender must provide SBA with the reason for its denial, together with the following:

i. For applications submitted using the SBA Form 3508 or lender's equivalent form:

(1) The PPP Loan Forgiveness Calculation Form;

(2) PPP Schedule A;

---

[84] 85 FR 20811, 20815–20816 (Apr. 15, 2020).

[85] *See* subsection (h)(2)(i)(D) of the interim final rule on Second Draw PPP Loans. 86 FR 3712, 3721 (Jan. 14, 2021).

[86] 85 FR 20811, 20815–20816 (Apr. 15, 2020).

[87] This subsection was originally published at 85 FR 33010, subsection III.2.b. (June 1, 2020) and amended by 85 FR 38304, subsection III.2.b. (June 26, 2020) and 85 FR 66214, subsection III.2.b. (Oct. 19, 2020) and has been modified to conform to sections 311, 322, and 333 of the Economic Aid Act and for readability.

[88] Section 333 of the Economic Aid Act repealed the CARES Act provision requiring SBA to deduct EIDL Advance Amounts received by borrowers from the forgiveness payment amounts remitted by SBA to the lender. Any EIDL Advance Amounts previously deducted from a borrower's forgiveness amount will be remitted to the lender, together with interest to the remittance date.

(3) the (optional) PPP Borrower Demographic Information Form (if submitted to the lender); and

(4) the SBA Form 3508D, if applicable.

ii. For applications submitted using the SBA Form 3508EZ, 3508S, or lender's equivalent form:

(1) The SBA Form 3508EZ, 3508S, or lender's equivalent form;

(2) the (optional) Borrower Demographic Information Form (if submitted to the lender); and

(3) the SBA Form 3508D, if applicable.

The lender must confirm that the information provided by the lender to SBA accurately reflects lender's records for the loan, and that the lender has made its decision in accordance with the requirements set forth in subsection V.2.a., and for a Second Draw PPP Loan of $150,000 or less, if applicable, the lender has reviewed the revenue reduction documentation provided by the borrower and confirmed the dollar amount and percentage of the borrower's revenue reduction. The lender must also notify the borrower in writing that the lender has issued a decision to SBA denying the loan forgiveness application and provide SBA with a copy of the notice.[89] The notice to the borrower must include the reasons that the lender concluded that the borrower is not entitled to loan forgiveness in any amount and inform the borrower that the borrower has 30 calendar days from receipt of the notification to seek, through the lender, SBA review of the lender's decision.[90] SBA reserves the right to review the lender's decision in its sole discretion. Within 30 days of notice from the lender, a borrower may notify the lender that it is requesting that SBA review the lender's decision in accordance with subsection V.2.c. below. Within 5 days of receipt, the lender must notify SBA of the borrower's request for review. SBA will notify the lender if SBA decides to review the lender's decision or if SBA declines a request for review. If the borrower does not timely request SBA review or SBA declines the request for review, the lender is responsible for notifying the borrower of the date on which the borrower's first payment is due. If SBA accepts a borrower's request for review, SBA will notify the borrower and the lender of the results of the review. If SBA denies forgiveness in whole or in part, the lender is

responsible for notifying the borrower of the date on which the borrower's first payment is due.

c. What should a lender do if it receives notice that SBA is reviewing a loan? [91]

SBA may begin a review of any PPP loan of any size at any time in SBA's discretion. SBA may, in its discretion, review the borrower's First Draw PPP Loan and Second Draw PPP Loan at the same time or at different times. If SBA undertakes such a review, SBA will notify the lender in writing and the lender must notify the borrower in writing within five business days of receipt.

Within five business days of receipt of such notice, the lender shall transmit to SBA electronic copies of the following:

i. The Borrower Application Form (SBA Form 2483, 2483–SD, or lender's equivalent form) and all supporting documentation provided by the borrower, including revenue reduction documentation provided by the borrower on a Second Draw PPP Loan.

ii. The Loan Forgiveness Application (SBA Form 3508, 3508EZ, 3508S, or lender's equivalent form), and all supporting documentation provided by the borrower (if the lender has received such application), including revenue reduction documentation provided by the borrower on a Second Draw PPP Loan of $150,000 or less if not provided at the time of loan application. If the lender receives the borrower's loan forgiveness application after it receives notice that SBA has commenced a loan review, the lender shall transmit electronic copies of the application and all supporting documentation provided by the borrower to SBA within five business days of receipt.

The lender must also request that the borrower provide the lender with the applicable documentation that the instructions to the Loan Forgiveness Application Form (SBA Form 3508, 3508EZ, 3508S, or lender's equivalent) instruct the borrower to maintain but not submit (documentation listed under ''Documents that Each Borrower Must Maintain but is Not Required to Submit'').

For Second Draw PPP Loans of $150,000 or less where a loan forgiveness application has not been submitted by the borrower, the lender must also request that the borrower provide the lender with revenue

reduction documentation, if not previously provided to the lender.

The lender must submit documents received from the borrower to SBA within five business days of receipt from the borrower.

iii. A signed and certified transcript of account.

iv. A copy of the executed note evidencing the PPP loan.

v. Any memorandum or other analysis that the lender prepared in making its decision on the borrower's loan forgiveness application, if applicable.

vi. Any other documents related to the loan requested by SBA.

If SBA has notified the lender that SBA has commenced a loan review, the lender should issue a forgiveness decision to SBA not later than 60 days after receipt of the complete loan forgiveness application from the borrower, unless otherwise directed by SBA.

d. What should a lender do if a borrower submits documentation of eligible costs that exceed a borrower's PPP Loan Amount? [92]

The amount of loan forgiveness that a borrower may receive cannot exceed the principal amount of the PPP loan. Whether a borrower submits SBA Form 3508, 3508EZ, 3508S, or lender's equivalent form, a lender should confirm receipt of the documentation the borrower is required to submit to aid in verifying payroll and nonpayroll costs, and, if applicable (for SBA Form 3508, 3508EZ, or lender's equivalent form), confirm the borrower's calculations on the borrower's Loan Forgiveness Application, up to the amount required to reach the requested Forgiveness Amount. Supporting documentation regarding a borrower's payroll and nonpayroll costs is not required to be submitted to the lender with the SBA Form 3508S.

*3. Lender Fees* [93]

Are lender processing fees subject to clawback if a lender has not fulfilled its obligations under PPP regulations?

A lender is required to repay the processing fee to SBA if a lender is found guilty of an act of fraud in connection with the PPP loan. In such

---

[89] This change has been made so that SBA can determine whether the borrower requested review within the appropriate time frame.

[90] This text has been added to clarify the information that will be provided to borrowers regarding the lender's forgiveness decision.

[91] This subsection was originally published at 85 FR 33010, subsection III.2.c. (June 1, 2020) and amended by 85 FR 38304, subsection III.2.b. (June 26, 2020) and 85 FR 66214, subsection III.2.b. (Oct. 19, 2020) and has been modified to conform to section 311 of the Economic Aid Act and updates to SBA loan review procedures.

[92] This subsection was originally published at 85 FR 66214, subsection III.2.c. (Oct. 19, 2020) and has been modified to conform to section 307 of the Economic Aid Act.

[93] This section was originally published at 85 FR 33010, subsection III.3. (June 1, 2020) and has been modified to conform to section 340 of the Economic Aid Act. Section 340 of the Economic Aid Act provides that a lender may not be required to repay a processing fee unless the lender is found guilty of an act of fraud in connection with the PPP loan.

case, the loan is not eligible for a guaranty.[94]

## VI. Additional Information

SBA may provide further guidance, if needed, through SBA notices that will be posted on SBA's website at *www.sba.gov.* Questions on the Paycheck Protection Program may be directed to the Lender Relations Specialist in the local SBA Field Office. The local SBA Field Office may be found at *https://www.sba.gov/tools/local-assistance/districtoffices.*

*Compliance With Executive Orders 12866, 12988, 13132, 13563, and 13771, the Congressional Review Act, the Administrative Procedure Act, the Paperwork Reduction Act (44 U.S.C. Ch. 35), and the Regulatory Flexibility Act (5 U.S.C. 601–612)*

Executive Orders 12866, 13563, and 13771

This interim final rule is economically significant for the purposes of Executive Orders 12866 and 13563. SBA, however, is proceeding under the emergency provision at Executive Order 12866 section 6(a)(3)(D) based on the need to move expeditiously to mitigate the current economic conditions arising from the COVID–19 emergency. This rule's designation under Executive Order 13771 will be informed by public comment.

This rule is necessary to implement the Economic Aid Act in order to provide economic relief to small businesses nationwide adversely impacted under the COVID–19 Emergency Declaration. We anticipate that this rule will result in substantial benefits to small businesses, their employees, and the communities they serve. However, we lack data to estimate the effects of this rule.

The Administrator of the Office of Management and Budget's Office of Information and Regulatory Affairs (OIRA) has determined that this is a major rule for purposes of Subtitle E of the Small Business Regulatory Enforcement and Fairness Act of 1996 (also known as the Congressional Review Act or CRA) (5 U.S.C. 804(2) *et seq.*). Under the CRA, a major rule takes effect 60 days after the rule is published in the **Federal Register**. 5 U.S.C. 801(a)(3).

Notwithstanding this requirement, the CRA allows agencies to dispense with the requirements of section 801 when the agency for good cause finds that such procedure would be impracticable,

unnecessary, or contrary to the public interest and the rule shall take effect at such time as the agency promulgating the rule determines. 5 U.S.C. 808(2). Pursuant to § 808(2), SBA for good cause finds that a 60-day delay to provide public notice is impracticable and contrary to the public interest. Likewise, for the same reasons, SBA for good cause finds that there are grounds to waive the 30-day effective date delay under the Administrative Procedure Act. 5 U.S.C. 553(d)(3).

As discussed elsewhere in this interim final rule, the Economic Aid Act provided that several of the changes relating to loan forgiveness are effective as if included in the CARES Act and apply to any loan made pursuant to section 7(a)(36) of the Small Business Act before, on, or after December 27, 2020, including forgiveness of such a loan. Accordingly, loans that were made in 2020 but that have not yet received forgiveness will be forgiven based on changes made in the Economic Aid Act, as implemented in this interim final rule. Given the urgent need to provide borrowers that are eligible for loan forgiveness with timely relief, the Administrator in consultation with the Secretary has determined that it is impractical and not in the public interest to provide a delayed effective date. An immediate effective date will allow SBA to continue remitting forgiveness payments to lenders without disruption and in accordance with the amendments made by the Economic Aid Act.

Executive Order 12988

SBA has drafted this rule, to the extent practicable, in accordance with the standards set forth in section 3(a) and 3(b)(2) of Executive Order 12988, to minimize litigation, eliminate ambiguity, and reduce burden. The rule has no preemptive effect but does have some retroactive effect consistent with specific applicability provisions of the Economic Aid Act.

Executive Order 13132

SBA has determined that this rule will not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various layers of government. Therefore, SBA has determined that this rule has no federalism implications warranting preparation of a federalism assessment.

Paperwork Reduction Act, 44 U.S.C. Chapter 35

SBA has determined that this rule will require revisions to existing

recordkeeping or reporting requirements of the Paycheck Protection Program (PPP) information collection (OMB Control Number 3245–0407) as a result of amendments made to the PPP by the Economic Aid Act and implemented in this interim final rule. The revisions will affect the PPP Loan Forgiveness Application Form 3508, PPP Loan Forgiveness Application Form 3508EZ, and PPP Loan Forgiveness Application Form 3508S.

Further, to address the conflict of interest provisions in section 322 of the Economic Aid Act, SBA has developed a new form, Paycheck Protection Program—Borrower's Disclosure of Certain Controlling Interests Form 3508D, which is required for certain borrowers who have disclosure requirements under the Economic Aid Act.

SBA Form 3508S was amended to conform to section 307 of the Economic Aid Act, which requires a simplified forgiveness application for loans of not more than $150,000. SBA Forms 3508, 3508EZ and 3508S were also amended to address the new Second Draw PPP Loan program under section 311 of the Economic Aid Act, include the additional expenses that are eligible for forgiveness under section 304 of the Economic Aid Act, address the changes to the covered period definition in section 306 of the Economic Aid Act, and implement the EIDL advance deduction repeal in section 333 of the Economic Aid Act. SBA Form 3508D will be used by borrowers where a covered individual, as defined in section 322 of the Economic Aid Act, holds a controlling interest in the borrower.

SBA has requested Office of Management and Budget (OMB) emergency approval of the revisions to the information collection to enable borrowers to begin submitting loan forgiveness applications with the Economic Aid Act changes as quickly as possible and to enable borrowers with disclosure requirements to meet the statutory deadline for disclosure.

Regulatory Flexibility Act (RFA)

The Regulatory Flexibility Act (RFA) generally requires that when an agency issues a proposed rule, or a final rule pursuant to section 553(b) of the Administrative Procedure Act or another law, the agency must prepare a regulatory flexibility analysis that meets the requirements of the RFA and publish such analysis in the **Federal Register**. 5 U.S.C. 603, 604.

Rules that are exempt from notice and comment are also exempt from the RFA requirements, including conducting a

---

[94] *See* 13 CFR 120.524.

regulatory flexibility analysis, when among other things the agency for good cause finds that notice and public procedure are impracticable, unnecessary, or contrary to the public interest. SBA Office of Advocacy guide: How to Comply with the Regulatory Flexibility Act, Ch.1. p.9. Since this rule is exempt from notice and comment, SBA is not required to conduct a regulatory flexibility analysis.

**Authority:** 15 U.S.C. 636(a)(36); Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116–136, section 1114 and Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Pub. L. 116–260), section 303.

**Tami Perriello,**
*Acting Administrator, Small Business Administration.*

**Andy P. Baukol,**
*Principal Deputy Assistant Secretary for International Monetary Policy (performing the delegable duties of the Deputy Secretary), Department of the Treasury.*

[FR Doc. 2021–02314 Filed 2–3–21; 11:15 am]

**BILLING CODE P**

---

## DEPARTMENT OF TRANSPORTATION

### Federal Aviation Administration

### 14 CFR Part 39

**[Docket No. FAA–2020–1177; Project Identifier MCAI–2020–01336–R; Amendment 39–21403; AD 2021–02–20]**

### RIN 2120–AA64

### Airworthiness Directives; Hélicoptères Guimbal Helicopters

**AGENCY:** Federal Aviation Administration (FAA), DOT.

**ACTION:** Final rule; request for comments.

**SUMMARY:** The FAA is adopting a new airworthiness directive (AD) for all Hélicoptères Guimbal Model Cabri G2 helicopters. This AD was prompted by a report of a crack in a rotating scissor fitting. This AD requires an initial and repetitive inspections of certain rotating and non-rotating scissor fittings, and depending on the results, replacing the affected assembly. This AD also prohibits installing certain main rotor hubs (MRHs) and swashplate guides unless the initial inspection has been accomplished. The FAA is issuing this AD to address the unsafe condition on these products.

**DATES:** This AD becomes effective February 22, 2021.

The Director of the Federal Register approved the incorporation by reference of certain documents listed in this AD as of February 22, 2021.

The FAA must receive comments on this AD by March 22, 2021.

**ADDRESSES:** You may send comments, using the procedures found in 14 CFR 11.43 and 11.45, by any of the following methods:

• *Federal eRulemaking Portal:* Go to *https://www.regulations.gov.* Follow the instructions for submitting comments.

• *Fax:* (202) 493–2251.

• *Mail:* U.S. Department of Transportation, Docket Operations, M–30, West Building Ground Floor, Room W12–140, 1200 New Jersey Avenue SE, Washington, DC 20590.

• *Hand Delivery:* Deliver to Mail address above between 9 a.m. and 5 p.m., Monday through Friday, except Federal holidays.

For service information identified in this final rule, contact Hélicoptères Guimbal, Basile Ginel, 1070, rue du Lieutenant Parayre, Aérodrome d'Aix-en-Provence, 13290 Les Milles, France; telephone 33–04–42–39–10–88; email *basile.ginel@guimbal.com;* web *https://www.guimbal.com.* You may view this service information at the FAA, Office of the Regional Counsel, Southwest Region, 10101 Hillwood Pkwy., Room 6N–321, Fort Worth, TX 76177. For information on the availability of this material at the FAA, call (817) 222–5110. It is also available at *https://www.regulations.gov* by searching for and locating Docket No. FAA–2020–1177.

### Examining the AD Docket

You may examine the AD docket at *https://www.regulations.gov* by searching for and locating Docket No. FAA–2020–1177; or in person at Docket Operations between 9 a.m. and 5 p.m., Monday through Friday, except Federal holidays. The AD docket contains this final rule, the European Union Aviation Safety Agency (EASA) AD, any comments received, and other information. The street address for Docket Operations is listed above.

**FOR FURTHER INFORMATION CONTACT:** Fred Guerin, Aerospace Engineer, General Aviation & Rotorcraft Section, International Validation Branch, FAA, 2200 South 216th St. Des Moines, WA 98198; telephone (206) 231–3500; email *fred.guerin@faa.gov.*

**SUPPLEMENTARY INFORMATION:**

### Background

The EASA, which is the Technical Agent for the Member States of the European Union, has issued EASA AD No. 2020–0199, dated September 21, 2020, and corrected September 24, 2020 (EASA AD 2020–0199), to correct an unsafe condition for Hélicoptères Guimbal (HG) Model Cabri G2 helicopters. EASA advises of a report of a crack in a rotating scissor fitting discovered during maintenance. According to EASA, the suspected root cause of the crack was corrosion under residual stress. This condition, if not addressed, could result in failure of the rotating or non-rotating scissor fitting on either the MRH or the swashplate guide, and subsequent loss of control of the helicopter.

Accordingly, EASA AD 2020–0199 requires an initial and repetitive inspections of the rotating and non-rotating scissor fittings part number (P/N) G12–00–200 installed on the MRH or swashplate guide, respectively. If a crack is detected, the EASA AD requires replacing the affected MRH or swashplate guide with a serviceable part. The EASA AD prohibits installing certain MRHs and swashplate guides unless the initial inspection has been accomplished. The EASA AD also requires reporting certain information to HG.

### FAA's Determination

These helicopters have been approved by EASA and are approved for operation in the United States. Pursuant to the FAA's bilateral agreement with the European Union, EASA has notified the FAA about the unsafe condition described in its AD. The FAA is proposing this AD after evaluating all known relevant information and determining that the unsafe condition described previously is likely to exist or develop on other helicopters of the same type design.

### Related Service Information Under 1 CFR Part 51

The FAA reviewed Guimbal Service Bulletin SB 20–011, Revision C, and SB 20–012, Revision B, each dated October 5, 2020 (SB 20–011 Rev C and SB 20–012 Rev B). SB 20–012 Rev B specifies removing the bolts connecting the two scissor fittings P/N G12–00–200 and accomplishing a one-time detailed inspection for a crack in certain areas. SB 20–012 Rev B also specifies reassembling the two scissor fittings using correct bolt torque limits, installing new cotter pins, and reporting any findings to HG customer service. SB 20–011 Rev C specifies procedures for a recurring inspection after accomplishment of SB 20–012 Rev B of the same areas of the scissor fittings for a crack as SB 20–012 Rev B, except without removing the bolts which connect the two scissor fittings. SB 20–